No. 19-2706

# In The United States Court Of Appeals For The Third Circuit

## DR. ORIEN L. TULP,

*Plaintiff - Appellant*,

v.

## EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES et al.,

*Defendants - Appellees*.

On Appeal from the Order and Judgment Entered by the
United States District Court for the Eastern District of
Pennsylvania, No. 2:18-cv-05540-WB

## BRIEF OF APPELLEES EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES AND DR. WILLIAM PINSKY

Elisa P. McEnroe
Matthew D. Klayman
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5917
F. 215.963.5001

*Attorneys for Appellees Educational Commission for Foreign Medical Graduates and Dr. William Pinsky*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, Appellee Educational Commission for Foreign Medical Graduates makes the following disclosure:

1)     For nongovernmental corporate parties, please list all parent corporations:

*Educational Commission for Foreign Medical Graduates has no parent corporation.*

2)     For nongovernmental corporate parties, please list all publicly held companies that hold 10% or more of the party's stock:

*No publicly held corporation owns more than 10% of Educational Commission for Foreign Medical Graduates' stock.*

3)     If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

*Educational Commission for Foreign Medical Graduates believes that AIG may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy a possible judgment in the action.*

4)     In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: (1) the debtor, if not identified in the case caption; (2) the

i

members of the creditors' committee or the top 20 unsecured creditors; and, (3) any entity not named in the caption which is an active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

*Not applicable.*

Dated: January 16, 2020

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe

*Attorney for Appellees Educational
Commission for Foreign Medical
Graduates and Dr. William Pinsky*

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................i

TABLE OF AUTHORITIES ..................................................v

STATEMENT OF JURISDICTION.........................................1

STATEMENT OF THE ISSUES........................................2

STATEMENT OF RELATED CASES AND PROCEEDINGS ...........................4

STATEMENT OF THE CASE...........................................5

    I.    The Educational Commission for Foreign Medical Graduates............5

    II.    ECFMG's Policies and Procedures Regarding Irregular Behavior ........................................6

    III.    Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.................................................8

    IV.    Dr. Tulp Received Notice of the Allegations and Evidence of His Irregular Behavior.........................................11

    V.    Dr. Tulp Had an Opportunity to Be Heard Regarding the Allegations and Evidence of His Irregular Behavior ........................12

    VI.    ECFMG Determined Dr. Tulp Engaged in Irregular Behavior .........14

    VII.    The USAT Sponsor Note in the World Directory of Medical Schools ........................................15

    VIII.  Procedural History.........................................16

SUMMARY OF ARGUMENT ...............................................19

STANDARD OF REVIEW ..................................................21

ARGUMENT ..........................................................21

    I.    The District Court Properly Considered ECFMG's Statement of Facts Undisputed for Purpose of Summary Judgment......................21

        A.    The District Court Applied the Correct Legal Standard Under Rule 56. .........................................22

# TABLE OF CONTENTS
(continued)

**Page**

B.    The District Court Did Not Abuse Its Discretion When Enforcing Its Scheduling Order. ...............................................25

C.    Dr. Tulp Cannot Demonstrate That The District Court Erred ...................................................................................27

II.    There Is No Genuine Dispute That Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard ..............29

A.    Dr. Tulp Received Notice of the Allegations and Evidence of Irregular Behavior ................................................30

B.    Dr. Tulp Had Multiple Opportunities to be Heard .................32

C.    Dr. Tulp's Claim That More or Different Procedures Were Necessary Is Unavailing ................................................36

D.    ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation. .........................................38

III.    The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Intervention Is Appropriate ..............40

IV.    Dr. Tulp Is Not Entitled To Legal Or Equitable Relief ....................42

V.    ECFMG Does Not Owe A Common Law Duty of Due Process .......46

CONCLUSION ....................................................................................................50

CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK ................................................................................52

CERTIFICATE OF SERVICE ...........................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
    455 F.3d 195 (3d Cir. 2006) ......................................................................23

*Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*,
    574 F.3d 214 (3d Cir. 2009) ..........................................31, 33, 34, 37

*Blunt v. Lower Merion Sch. Dist.*,
    767 F.3d 247 (3d Cir. 2014) ..............................................................40, 46

*Brown v. Fed'n of State Med. Bds.*,
    No. 82-7398, 1985 WL 1659 (N.D. Ill. May 31, 1985) ......................48

*Chung v. Park*,
    514 F.2d 382 (3d Cir. 1975) ..........................................................36, 37

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985)........................................................................29

*United States v. Dunkel*,
    927 F.2d 955 (7th Cir. 1991) ..........................................................28

*EBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)........................................................................43

*ECRI v. McGraw-Hill, Inc.*,
    809 F.2d 223 (3d Cir. 1987) ...........................................................43

*El v. Southeastern Pa. Transp'n Auth. (SEPTA)*,
    479 F.3d 232 (3d Cir. 2007) ...........................................................23

*In re Energy Future Holdings Corp.*,
    842 F.3d 247 (3d Cir. 2016) ............................................................46

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
    765 F.3d 205 (3d Cir. 2014) ............................................................43

*Ford v. Bureau of Prisons*,
    570 F. App'x 246 (3d Cir. 2014) .....................................................23

v

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Garza v. Citigroup Inc.*,
    881 F.3d 277 (3d Cir. 2018) .................................................................38

*Halsey v. Pfeiffer*,
    750 F.3d 273 (3d Cir. 2014) ...............................................................38

*Heller v. Doe*,
    509 U.S. 312 (1993) ...........................................................................36

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
    882 F.2d 797 (3d Cir. 1989) ...............................................................43

*Kimberg v. Univ. of Scranton*,
    411 F. App'x 473 (3d Cir. 2010) .........................................................30

*Liberty Bell Bank v. Rogers*,
    726 F. App'x 147 (3d Cir. 2018) .........................................................23

*Lujan v. Nat'l Wildlife Fed.*,
    497 U.S. 871 (1990) ...........................................................................28

*Marlboro Corp. v. Ass'n of Indep. Colleges and Schools*,
    556 F.2d 78 (1st Cir. 1977) ................................................................34

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ...........................................................................33

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
    24 F.3d 519 (3d Cir. 1994) .........................................................*passim*

*Nationwide Mut. Ins. Co. v. Buffetta*,
    230 F.3d 634 (3d Cir. 2000) .........................................................21, 46

*O'Connell v. Associated Wholesalers, Inc.*,
    558 F. App'x 286 (3d Cir. 2014) ...................................................21, 26

*Opoku v. ECFMG*,
    574 F. App'x 197 (3d Cir. 2014) .........................................................47

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Osei v. Temple Univ.*,
  518 F. App'x 86 (3d Cir. 2013) ........................................................31

*Santini v. Fuentes*,
  795 F.3d 410 (3d Cir. 2015) .............................................................22

*Sempier v. Johnson & Higgins*,
  45 F.3d 724 (3d Cir. 1995) ...............................................................21

*Staudinger v. ECFMG*,
  No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993)................48

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*,
  No. 17-13708, 2017 WL 6342629 (E.D. Mich. Dec. 12, 2017)..................44, 45

*Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*,
  No. 13-3946, 2015 WL 667077 (E.D. Pa. Feb. 13, 2015).................47

*In re United Corp.*,
  283 F.2d 593 (3d Cir. 1960) .............................................................21

*Wiest v. Tyco Electronics Corp.*,
  812 F.3d 319 (3d Cir. 2016) .........................................................22, 27

*Winter v. Nat. Res. Def. Counsel*,
  555 U.S. 7 (2008).............................................................................44

**State Cases**

*Boehm v. Univ. of Pa. Sch. of Veterinary Med.*,
  573 A.2d 575 (Pa. Super. 1990) ......................................................49

*Elias v. ECFMG*,
  No. C-82-08, 2010 WL 4340640 (N.J. Super. Nov. 4, 2010) ...........47

*Murphy v. Duquesne Univ. of the Holy Ghost*,
  777 A.2d 418 (Pa. 2001)..................................................................47

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Psi Upsilon of Phila. v. Univ. of Pa.*,
    591 A.2d 755 (Pa. Super. 1991) .................................................................*passim*

*Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*,
    309 A.2d 353 (Pa. 1973)........................................................................40, 41, 47

**Federal Statutes**

28 U.S.C. §1291 ....................................................................................................1

28 U.S.C. § 1331 ...................................................................................................1

28 U.S.C. § 1332 ...................................................................................................1

42 U.S.C. § 1983 ...................................................................................................1

**Other Authorities**

Federal Rule of Civil Procedure 56 ...............................................................*passim*

Federal Rule of Civil Procedure 83 .................................................21, 25, 26, 27, 28

## STATEMENT OF JURISDICTION

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Appellant's claims under 42 U.S.C. § 1983.  The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 over Appellant's state law claims because diversity of citizenship exists and the matter in controversy exceeds the jurisdictional amount.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.  The final judgment that is being appealed disposed of all remaining issues in this case and was entered on June 25, 2019.  Appellant timely filed his Notice of Appeal on July 23, 2019.

## STATEMENT OF THE ISSUES

Appellee Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization that promotes quality health care for the public by, among other things, issuing certificates to graduates of international medical schools who satisfy certain minimum criteria so they can pursue graduate medical education in the United States. Appellant Dr. Orien L. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.

Dr. Tulp claims that ECFMG violated his common law due process rights under Pennsylvania law by (a) finding that he made false representations to ECFMG about USAT's unauthorized operations in the United States, and (b) deciding that in light of those false representations, ECFMG would not accept Dr. Tulp's signature on documents submitted to ECFMG.[1] The United States District Court for the Eastern District of Pennsylvania granted summary judgment for ECFMG as to Dr. Tulp's common law due process claim because there was no genuine dispute that Dr. Tulp received all the process due to him. Specifically, there was no genuine dispute that ECFMG took action against Dr. Tulp consistent with its policies and

---

[1] Appellee Dr. William W. Pinsky is the President of ECFMG. The District Court dismissed all claims against Dr. Pinsky before summary judgment. The dismissal of those claims is not at issue in this appeal.

2

only after giving him (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him.  Dr. Tulp's opposition to summary judgment did not demonstrate the existence of any genuine disputes of material fact through citations to particular parts of materials in the record or otherwise.

The issues presented for review are:

1.    Did the District Court appropriately consider ECFMG's account of the facts undisputed for purpose of summary judgment when Dr. Tulp failed to demonstrate the existence of any genuine disputes of material fact through citations to particular parts of materials in the record as required by Federal Rule of Civil Procedure 56 and by order of the District Court?

Suggested Answer:  Yes.

2.    Did the District Court correctly grant summary judgment for ECFMG on Dr. Tulp's common law due process claim when there was no genuine dispute that Dr. Tulp received both notice of the allegations and evidence against him as well as an opportunity to be heard?

Suggested Answer:  Yes.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. Appellees are aware of two related cases that were not identified in Dr. Tulp's brief as required by Third Circuit LAR 28.1(a)(2).

First, in *Dr. Orien L. Tulp et al. v. Educational Commission for Foreign Medical Graduates*, Civ. A. No. 19-02779-WB (E.D. Pa.), Dr. Tulp sued ECFMG for allegedly violating his due process rights based on allegations that are virtually identical to the allegations in this case. That case was dismissed with prejudice pursuant to a joint stipulation of the parties on August 15, 2019.

Second, in *Sujeil Pena-Torres et al. v. University of Science, Arts & Tech et al.*, Civ. A. No. 19-cv-01707-WGY (D.P.R.), first and second year medical students who studied at the "Puerto Rico Branch" of USAT sued USAT and its officers (including Dr. Tulp) alleging a pattern of fraudulent activities.

# STATEMENT OF THE CASE

## I.    The Educational Commission for Foreign Medical Graduates

Appellee Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization that promotes quality health care for the public by, among other things, (i) issuing certificates to graduates of international medical schools (known as international medical graduates or "IMGs") who satisfy certain minimum criteria so they can pursue graduate medical education in the United States, and (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States. SAppx0198-0199, 0229, 0412-0413.  As part of the ECFMG certification process, IMGs must provide ECFMG with records relating to their attendance at a recognized international medical school.  SAppx0199, 0238-0240.

An "international medical school" is "an education facility located in a country **outside of the United States and Canada** with its primary campuses and main operations **located in that country**."  SAppx0199, 0231 (emphasis added).  If an international medical school has a branch campus outside the country where its primary campus is located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education

eligibility requirements for licensure to practice medicine in the branch campus country." SAppx0199, 0231.

Once an IMG's record is complete and the applicant passes certain substantive exams, ECFMG issues the IMG a certificate. SAppx0200, 0238-0240. This certificate signals that the IMG seeking admission to a graduate medical program in the United States has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school. SAppx0200, 0238-0240.

## II.    ECFMG's Policies and Procedures Regarding Irregular Behavior

IMGs and others sometimes try to subvert ECFMG's processes, programs, or services. ECFMG calls that "irregular behavior," which is defined in ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG." SAppx0200, 0257. Examples of irregular behavior include, but are not limited to, failing to comply with an ECFMG policy, procedure and/or rule, or providing false information to ECFMG. SAppx0200-0201, 0257, 0260-0261, 0432.

ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

- Once ECFMG becomes aware of potential irregular behavior, ECFMG staff investigates the situation. SAppx0201-0202, 0258. Depending on the circumstances, that investigation can involve the gathering of additional information. SAppx0201-0202, 0258.

- "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee[,]" a sub-committee of the ECFMG Board of Trustees. SAppx0202, 0258.

- Individuals alleged to have engaged in irregular behavior are "advised in writing of the nature of the alleged irregular behavior and provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*." SAppx0202, 0258, 0427. In practice, they are also provided with a copy of materials supporting the allegation of irregular behavior that will be provided to the Credentials Committee. SAppx0216, 0362, 0443.

- Individuals alleged to have engaged in irregular behavior are also given "an opportunity to provide written explanation and to present other relevant information" to ECFMG. SAppx0202, 0258. They may also "request the opportunity to appear personally" before the Credentials Committee" to testify under oath (with representation by counsel, if desired). SAppx0202-0203, 0258, 0427.

7

- After the Credentials Committee reviews the evidence—including any written explanation, testimony, or other relevant information provided by the individual alleged to have engaged in irregular behavior—the Credentials Committee votes on whether the allegations of irregular behavior are founded.  SAppx0203, 0259.

- If the Credentials Committee determines that the allegations of irregular behavior are founded, it "determine[s] what action(s) will be taken as a result of the irregular behavior," and ECFMG notifies the individual as to the Credentials Committee's decisions.  SAppx0203-0204, 0259.

- Individuals found to have engaged in irregular behavior may appeal the Credentials Committee's finding to ECFMG's Review Committee for Appeals, another sub-committee of the ECFMG Board of Trustees made up of members independent of the Credentials Committee.  SAppx0204, 0259-0260.   They also may petition the Credentials Committee to reconsider its finding.  SAppx0204, 0260.

## III.    Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.

Appellant Dr. Orien L. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  SAppx0205, 0679.  Dr. Tulp testified that despite his title, he has been retired for decades, his income is derived

entirely from pensions, and he has never earned money from USAT.  SAppx0205, 0747-0749.

In mid-2018, ECFMG received information indicating that USAT was operating a campus and providing medical education in Miami, Florida. SAppx0205, 0320-0325.  ECFMG had never received evidence demonstrating that USAT had authorization from the United States or Florida to operate a branch campus in Miami.  SAppx0206, 0326, 0448.

On August 21, 2018, ECFMG sent a letter to Dr. Tulp requesting that Dr. Tulp "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States."  SAppx0205-0206, 0326, 0447, 0484.  ECFMG requested information covering "the whole time period that the USAT Miami branch campus has been in operation."  SAppx0206, 0326, 0448.

Later that day, Dr. Tulp responded to ECFMG via email:

This is incorrect information.  The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. [sic] It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis in its origination.

SAppx0206, 0327, 0488-0490.

In the weeks that followed, ECFMG received additional information suggesting that Dr. Tulp's statement to ECFMG was false and that USAT was actually operating multiple satellite campuses in cities across the United States. SAppx0207, 0330.  ECFMG sent another letter to Dr. Tulp on September 14, 2018, advising him that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements."  SAppx0207, 0330, 0444.  As part of that ongoing review, ECFMG informed Dr. Tulp that it had "reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT" and that "USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG."  SAppx0207, 0330, 0444.  The affidavit asked USAT students and graduates to certify (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  SAppx0208, 0475, 0419, 0451.

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.  SAppx0208, 0403.  There were also a number of affidavits from USAT students where Dr. Tulp had provided

information that conflicted with the affidavit information that ECFMG got from the students.  SAppx0208, 0421.  As a result, ECFMG circulated a second affidavit to USAT students and graduates to solicit information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT.  SAppx0208, 0348-0349.

## IV.    Dr. Tulp Received Notice of the Allegations and Evidence of His Irregular Behavior.

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he engaged in irregular behavior by providing false information to ECFMG.  SAppx0208-0213, 0343-0346, 0488, 0707.  The letter summarized the allegations in the opening paragraph:

> Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.  The details of ECFMG's allegation are set forth below.

SAppx0209, 0343.  The letter went on to describe at length the allegations against Dr. Tulp.  SAppx0209-0212, 0343-0346.

The letter informed Dr. Tulp that ECFMG's Credentials Committee would be meeting on November 28, 2018 to address the allegations of irregular behavior.  SAppx0212, 0345-0346.  The letter also listed and included many of the documents that would be presented to the Credentials Committee in connection with its review

11

of the allegations concerning Dr. Tulp.   SAppx0212, 0345-0346.   All of the documents that would be presented to the Credentials Committee were provided to Dr. Tulp's attorneys before the November 28 meeting.  SAppx 0216, 0362, 0443.

## V.    Dr. Tulp Had an Opportunity to Be Heard Regarding the Allegations and Evidence of His Irregular Behavior.

In the October 18, 2018 letter, ECFMG invited Dr. Tulp to submit a written response to the allegations of irregular behavior and any relevant information that he wanted ECFMG to consider in connection with the allegations of irregular behavior.   SAppx0212, 0345-0346.   ECFMG also invited Dr. Tulp to appear personally and with counsel before the Credentials Committee on November 28, 2018, which Dr. Tulp elected to do.  SAppx0212, 0345-0346.

Before the meeting of the Credentials Committee, Dr. Tulp's counsel communicated with ECFMG about the allegations of irregular behavior and the Credentials Committee.  SAppx0213-0216, 0352-0360, 0362, 0443.  Both before and during the meeting, ECFMG provided Dr. Tulp's counsel with copies of materials that the Credentials Committee would review in connection with the allegations of irregular behavior concerning Dr. Tulp.  SAppx0216, 0362, 0443.

On November 28, 2018, Dr. Tulp appeared before the Credentials Committee along with his two attorneys.   SAppx0217, 0363, 0372, 0749-0750.   ECFMG typically allows only one attorney to attend these meetings on behalf of an individual suspected of irregular behavior, but in this instance, it granted Dr. Tulp's request to

bring both of his attorneys.  SAppx0214, 0355.  One of his attorneys made an opening statement, in which he objected to the Credentials Committee's authority and procedures; he did not present a substantive response to the allegations or evidence of irregular behavior.  SAppx0218-0219, 0373-0383.  He concluded by stating, "That is our opening statement.  If you have any questions, you can address them to me.  **Dr. Tulp will not be answering any questions.**"  SAppx0218-0219, 0382-0383 (emphasis added).  Counsel for ECFMG repeatedly invited Dr. Tulp's counsel (and Dr. Tulp himself) to present a substantive response to the allegations of irregular behavior or the materials provided to Dr. Tulp and his counsel before the meeting.  SAppx0218-0219, 0383-0386, 0390-0391.  After much back and forth, Dr. Tulp's counsel said: "**Dr. Tulp is not going to be talking today.  The next time you hear him talk is going to be in federal court**."  SAppx0219-0220, 0385-0386 (emphasis added).  After several more unsuccessful attempts by counsel for ECFMG to elicit a substantive response from Dr. Tulp and his counsel regarding the allegations and evidence of irregular behavior, counsel for ECFMG adjourned the meeting.  SAppx0219-0220, 0385, 0388, 0390-0392, 0397-0398.  A full read of the transcript gives a complete picture of Dr. Tulp's opportunity (and refusal) to be heard in person.  *See* SAppx0367-0399.

**VI.    ECFMG Determined Dr. Tulp Engaged in Irregular Behavior.**

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Credentials Committee had completed its review and determined that he had engaged in irregular behavior. SAppx0221-0222, 0400-0401. As a result, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SAppx0221-0222, 0400-0401. The action taken by ECFMG does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor or administrator at a medical school because any medical school affiliated with Dr. Tulp could authorize a different official to sign documents for ECFMG. SAppx0222, 0442-0443, 0703-0704. Indeed, USAT may continue to submit documents to ECFMG because it has other "authorized signatories." SAppx0222, 0442-0443, 0703-0704. The limited practical effect of the irregular behavior finding was that ECFMG would not accept representations or certifications by Dr. Tulp in connection with the ECFMG certification process for a period of at least five years.

**VII.   The USAT Sponsor Note in the World Directory of Medical Schools**

The World Directory of Medical Schools is a listing of the world's medical schools.  SAppx0223, 0448-0449.  ECFMG uses a "Sponsor Note" in the World Directory to inform the public generally and students or graduates of international medical schools specifically whether students and graduates from particular schools in particular years are eligible to apply for ECFMG certification.  SAppx0223, 0448-0449.

On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT as follows to reflect the use of affidavits in the certification process:

> Currently students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible for ECFMG Certification related services, including but not limited to:  ECFMG Certification, USMLE examinations that lead to ECFMG certification, and Electronic Residency Application Service (ERAS) Support Services.  ECFMG will provide information and instructions to applicants upon receipt of application.

SAppx0223, 0331-0335, 0778.  ECFMG also advised USAT of the "enhanced procedures" described in the Sponsor Note via letter.  SAppx0223, 0330, 0778.

On or around October 18, 2018, after USAT failed to provide the documentation ECFMG repeatedly requested to prove that its operations in the United States complied with ECFMG policy, ECFMG updated its Sponsor Note for USAT again, this time to reflect ECFMG's decision that beginning on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG

certification unless and until USAT provided satisfactory documentation from U.S.-based authorities allowing USAT to operate branch campuses in the United States:

> As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

SAppx0223-0224, 0350-0351, 0778.  ECFMG also advised USAT of the change to ECFMG's Sponsor Note via letter.  SAppx0224, 0341-0342, 0778.  In that same letter, ECFMG again invited USAT to provide the requested documentation.  *See* SAppx0341-0342.  USAT did not then and has never since provided the requested documentation.  SAppx0206, 0326, 0448.  There is no evidence to suggest that the update to the Sponsor Note had any effect on the Credentials Committee's assessment of Dr. Tulp's irregular behavior.

## VIII.  Procedural History

In December 2018, Dr. Tulp sued ECFMG and its President Dr. William W. Pinsky, alleging that they committed various constitutional and common law torts in the course of investigating and then taking action against Dr. Tulp.  *See* SAppx0045-0079.  Dr. Tulp soon moved for injunctive relief, and following a full hearing in late January 2019 (with live testimony by Dr. Tulp and by a witness on behalf of ECFMG), the District Court denied Dr. Tulp's motion.  *See* SAppx0225, 0534.  In explaining that Dr. Tulp had not proven a likelihood of success on his due process

16

claim, the District Court specifically noted that "[i]n this case, there was notice and an opportunity to be heard."  SAppx0225, 0534.

In March 2019, the District Court granted in part Appellees' Motion to Dismiss and dismissed all of Dr. Tulp's claims, except for a single common law due process claim against ECFMG.  *See* SAppx0039.  In its opinion allowing the common law due process claim to proceed, the District Court focused on Dr. Tulp's allegations regarding his appearance before the Credentials Committee, specifically the allegation that ECFMG ended the hearing "before allowing [Dr. Tulp] an opportunity to present his side of the story."  *See* SAppx0033.

Following the close of discovery, ECFMG moved for summary judgment as to the sole remaining common law due process claim.  Pursuant to an order entered by the District Court at the outset of the case (the "Scheduling Order"), before filing its motion, ECFMG conferred with Dr. Tulp's counsel regarding the development of "a single, joint appendix of all exhibits" to be used for summary judgment. SAppx0982; *see also* SAppx0976-0979.  Pursuant to the Scheduling Order, ECFMG also filed a "Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts as to which [ECFMG] contend[ed] no genuine issue exists."  SAppx0983; *see also* SAppx0198-0225.  In response, Dr. Tulp did not comply with the Scheduling Order and failed to submit "a separate

Statement of Disputed Material Facts, stating in similar paragraph form whether [Dr. Tulp] accepts or rejects that each fact as stated by [ECFMG] is undisputed." SAppx0983.

The District Court granted summary judgment for ECFMG on June 25, 2019. In its opinion, the District Court explained:

> ECFMG submitted a statement of material facts along with its summary judgment motion, supported by citations to the record. Plaintiff's response neither meaningfully addressed ECFMG's assertions of fact nor demonstrated that any of those assertions were genuinely disputed. Instead, Plaintiff recited the allegations contained in the Complaint or else produced conclusory assertions without citation to the record. Accordingly, the Court will consider ECFMG's account of the facts undisputed for purpose of resolving this motion.

SAppx0006. The District Court then predicted that the Pennsylvania Supreme Court would hold that ECFMG owed Dr. Tulp a common law duty of due process and held that ECFMG complied with that duty. SAppx0017-0018. Specifically, the District Court determined that there was no genuine dispute that ECFMG adhered to its Policies and Procedures Regarding Irregular Behavior, affording Dr. Tulp notice of the allegations and evidence of his irregular behavior and giving him an opportunity to be heard both in writing and in person.

Though Dr. Tulp's Notice of Appeal lists both the District Court's orders on both Appellees' Motion to Dismiss and Motion for Summary Judgment, the arguments raised in his brief mount challenges only to the District Court's grant of summary judgment.

18

## SUMMARY OF ARGUMENT

The District Court's grant of summary judgment for ECFMG should be affirmed because the District Court applied the correct legal standard, Dr. Tulp failed to demonstrate the existence of any genuine dispute of material fact, and ECFMG is entitled to judgment as a matter of law.

It was not error for the District Court to accept as true ECFMG's statement of facts for purpose of summary judgment for two independently sufficient reasons. **First**, to demonstrate the existence of a genuine dispute of material fact, it was Dr. Tulp's burden to "cit[e] to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1). Dr. Tulp failed to do so. His summary judgment brief (like his appellate brief) featured extensive citations to the allegations of his Complaint and conclusory assertions of fact without citations to the record. Under these circumstances, it is black letter law that the District Court may "consider the fact[s] undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). That is precisely what the District Court did. **Second**, it was not error for the District Court to require the parties to submit separate statements of fact in connection with summary judgment and to accept as true ECFMG's statement of facts when Dr. Tulp failed to comply with that requirement.

19

On the merits, the District Court did not err in granting summary judgment for ECFMG because there are no genuine disputes of material fact and ECFMG is entitled to judgment as a matter of law.  There is no genuine dispute that ECFMG took action only after giving Dr. Tulp (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him. That satisfies any common law due process obligations that ECFMG might have owed to Dr. Tulp and warrants summary judgment for ECFMG.

The District Court's grant of summary judgment also may be affirmed on any of three alternative grounds supported by the record.  **First**, the action taken as to Dr. Tulp is not one of the limited circumstances where judicial intervention in the affairs of a private organization is warranted under Pennsylvania law.  **Second**, Dr. Tulp is not entitled to legal or equitable relief given the complete absence of proof of damages resulting from the alleged due process violation and Dr. Tulp's failure to satisfy the requirements for a permanent injunction.  **Third**, ECFMG does not owe a common law duty of due process to Dr. Tulp under Pennsylvania law.

For these reasons, the District Court's grant of summary judgment should be affirmed.

## STANDARD OF REVIEW

The District Court's exercise of discretion under Federal Rule of Civil Procedure 83(b) in adopting and enforcing a requirement that parties file separate statements of fact in connection with summary judgment is reviewed for abuse of discretion. *O'Connell v. Associated Wholesalers, Inc.*, 558 F. App'x 286, 290-91 (3d Cir. 2014); *see In re United Corp.*, 283 F.2d 593, 596 (3d Cir. 1960) ("The manner and enforcement of such regulations rests in the court's sound discretion and will not be interfered with by an appellate tribunal in the absence of a showing of arbitrariness or fundamental unfairness."). The District Court's prediction that the Pennsylvania Supreme Court would rule that ECFMG owed Dr. Tulp a common law duty of due process is subject to plenary review. *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000). The District Court's grant of summary judgment is also subject to plenary review. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995).

## ARGUMENT

### I.    The District Court Properly Considered ECFMG's Statement of Facts Undisputed for Purpose of Summary Judgment.

The District Court did not err when it considered ECFMG's account of the facts undisputed for purpose of resolving the motion for summary judgment. Pursuant to Rule 56 and the Scheduling Order, ECFMG supported its motion with citations to particular portions of evidence in the record. Dr. Tulp, by contrast, failed

to support his argument with citations to particular portions of evidence in the record as required by Rule 56 and the Scheduling Order. As a result, the District Court appropriately enforced Rule 56 and its Scheduling Order by accepting ECFMG's account of the facts as undisputed for purpose of summary judgment.

## A. The District Court Applied the Correct Legal Standard Under Rule 56.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law. A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"The moving party bears the initial burden to identify 'specific portions of the record that establish the absence of a genuine issue of material fact.'" *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 328 (3d Cir. 2016) (quoting *Santini*, 795 F.3d at 416). "If the moving party satisfies its burden, the burden then 'shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Santini*, 795 F.3d at 416) (internal quotation marks and citations omitted). To defeat summary judgment, the nonmoving party "cannot rest on mere pleadings or allegations; rather it must

22

point to actual evidence in the record on which a jury could decide an issue of fact

its way." *El v. Southeastern Pa. Transp'n Auth. (SEPTA)*, 479 F.3d 232, 238 (3d

Cir. 2007) (internal citation omitted).  "In this respect, summary judgment is

essentially 'put up or shut up' time for the non-moving party: the non-moving party

must rebut the motion with facts in the record and cannot rest solely on assertions

made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp.,*

*Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (internal citation omitted).

Rule 56(c) requires a nonmoving party to cite to "particular parts of materials

in the record" to demonstrate a genuine dispute of fact.  Fed. R. Civ. P. 56(c)(1)(A).

"If a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact as required by Rule 56(c)," the court may "consider

the fact undisputed for purposes of the motion" or "grant summary judgment if the

motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2)-(3).  Courts routinely

consider facts undisputed for purpose of summary judgment when the nonmoving

party fails to support an assertion of fact as required by Rule 56.  *See, e.g.*, *Liberty*

*Bell Bank v. Rogers*, 726 F. App'x 147, 150-51 (3d Cir. 2018) (affirming district

court's grant of partial summary judgment in accordance with 56(e) where non-

movant failed to comply with Rule 56(c))*; Ford v. Bureau of Prisons*, 570 F. App'x

246, 246 n.1 (3d Cir. 2014) (same).

Here, the District Court properly applied Rule 56 to consider ECFMG's statement of facts undisputed for purpose of summary judgment. In compliance with Rule 56(c), ECFMG's summary judgment briefing cited to "particular parts of materials in the record" to establish that Dr. Tulp was given both notice of the allegations and evidence against him and an opportunity to be heard. *See* SAppx0166-0196, SAppx0198-0225, SAppx0968-0974. In response, Dr. Tulp failed to comply with Rule 56(c) because he failed to address ECFMG's assertions of fact with citations to "particular parts of materials in the record." Rather, Dr. Tulp recited the allegations contained in his Complaint and made conclusory assertions without citation to the record. *See* SAppx0780-0795, SAppx0797-0799. Under the circumstances, Rule 56(e) plainly authorized the District Court to consider ECFMG's statement of facts "undisputed for purposes of the motion" and to "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that [ECFMG] is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). That is precisely what the District Court did.

The District Court's opinion confirms that it applied the correct legal standard under Rule 56. The District Court articulated the proper method for evaluating whether a genuine dispute of fact exists, with citations to Rule 56 and controlling cases from this Court and the United States Supreme Court. SAppx0005-0006 (recognizing that a party opposing summary judgment must "go beyond the

pleadings" and "demonstrate that 'a fact . . . is genuinely disputed' by 'citing to particular parts of materials in the record'"). The District Court then explained that Dr. Tulp's summary judgment briefing "neither meaningfully addressed ECFMG's assertions of fact nor demonstrated that any of those assertions were genuinely disputed" through citation to record evidence. SAppx0006. Because Dr. Tulp failed to follow the requirements of Rule 56, the District Court properly determined that ECFMG's properly supported assertions of fact were not genuinely disputed and accepted those assertions of fact as undisputed for purpose of summary judgment. That was an appropriate application of Rule 56.

## B. The District Court Did Not Abuse Its Discretion When Enforcing Its Scheduling Order.

The District Court properly enforced its Scheduling Order regarding the form and substance of summary judgment briefing by accepting ECFMG's statement of facts as undisputed for purpose of summary judgment. Dr. Tulp's brief does not address his failure to comply with the District Court's Scheduling Order, which constitutes an alternative and independently sufficient ground supporting the District Court's decision.

It is black letter law that the District Court may "regulate practice" in any manner consistent with applicable law and may impose a "sanction or other disadvantage" upon a party that does not comply with its requirements despite actual notice of such requirements. Fed. R. Civ. P. 83(b). A requirement to file separate

statements of fact in connection with summary judgment briefing is an appropriate exercise of a District Court's authority under Rule 83(b), and it is not an abuse of discretion for a District Court to accept as undisputed one party's statements of facts as a sanction for another party's failure to comply with such a requirement. *O'Connell*, 558 F. App'x at 290-91.

Here, in accordance with the District Court's Scheduling Order, ECFMG filed "a separate Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts as to which [ECFMG] contend[ed] no genuine issue exists." SAppx0983. In response, Dr. Tulp failed to comply with the District Court's Scheduling Order because he did not submit "a separate Statement of Disputed Material Facts, stating in a similar paragraph form whether [Dr. Tulp] accept[ed] or reject[ed] that each fact as stated by [ECFMG] [wa]s undisputed." SAppx0983.[2] Dr. Tulp had actual notice of the Scheduling Order, as his summary judgment briefing attached the Scheduling Order and discussed its requirements

---

[2] Dr. Tulp insinuates that ECFMG's summary judgment briefing was somehow improper because it included a "Statement of Undisputed Material Facts" to which Dr. Tulp did not agree and a "Joint Appendix" that was provided to him the day before it was filed. Br. 7. But ECFMG's "Statement of Undisputed Material Facts" was filed in compliance with the express terms of the Scheduling Order, and ECFMG conferred with Dr. Tulp's counsel regarding the contents of the "Joint Appendix" prior to filing as required by the Scheduling Order. *See* SAppx0006 (ECFMG's briefing was "[i]n accordance with this Court's policies and procedures"). Any suggestion of impropriety is unfounded.

26

without actually satisfying them.  SAppx0781.  The District Court noted this in its opinion.  *See* SAppx0006 (ECFMG's briefing was "[i]n accordance with this Court's policies and procedures").  Accordingly, the District Court did not abuse its discretion by accepting ECFMG's statement of fact as undisputed for purpose of summary judgment as a consequence of Dr. Tulp's failure to comply with the District Court's Scheduling Order.

## C.    Dr. Tulp Cannot Demonstrate That The District Court Erred.

Nothing in Dr. Tulp's brief demonstrates that the District Court misapplied Rule 56 or abused its discretion under Rule 83(b).  Dr. Tulp claims that the District Court erred by not viewing the facts "in a light most favorable to the non-movant" as required under Rule 56.  Br. 14.  But as a threshold matter, Dr. Tulp failed to support his assertions of fact with specific citations to record evidence as required by both Rule 56(c) and the District Court's Scheduling Order.  Accordingly, there were no properly supported facts capable of withstanding a grant of summary judgment.  *See Wiest*, 812 F.3d at 328.  The only facts properly before the District Court were those set forth in ECFMG's briefing, which demonstrate that ECFMG is entitled to judgment as a matter of law.  *See infra* Section II.  Nor has Dr. Tulp explained how any inferences drawn in his favor would defeat summary judgment.

Dr. Tulp also contends that the District Court disregarded his sworn affidavit as containing only "conclusory assertions without citation to the record."  Br. 14.

That is a mischaracterization of the District Court's opinion. In context, it is clear that the District Court was describing the factual assertions in Dr. Tulp's **summary judgment briefing** as "conclusory assertions without citation to the record" that failed to comply with both Rule 56 and the Scheduling Order. The District Court was **not** discussing Dr. Tulp's affidavit. Indeed, Dr. Tulp cannot even show that he directed the District Court's attention to his affidavit because he did not cite to it in his briefing. Dr. Tulp's failure to cite his 3-page affidavit from his 150-page package of exhibits constitutes yet another failure to comply with the requirements of Rule 56 to "cit[e] to particular parts of materials in the record" and does not constitute error. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Moreover, Dr. Tulp has not explained how his affidavit would create a genuine dispute of material fact, as it contains many factual assertions that are contradicted directly by documentary evidence in the record. *See Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit.").

In sum, the District Court applied the correct legal standards under Rule 56 and Rule 83(b) when it accepted ECFMG's statement of facts as undisputed and determined there were no genuine disputes of fact sufficient to defeat summary judgment.

## II.    There Is No Genuine Dispute That Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard.

Assuming that ECFMG owed a common law duty of due process to Dr. Tulp (which it did not, *see infra* Part V), the District Court's grant of summary judgment should be affirmed because ECFMG in fact afforded Dr. Tulp all the process he was due.  In Pennsylvania, the common law duty of due process emerges from the private school and university context, in which "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides," provided that such procedures are "fundamentally fair."  *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. 1991) (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990)).  Whether procedures are "fundamentally fair" is determined by whether a student being disciplined is given notice of the charges and an opportunity to be heard.  *Id.* at 759-60.  "[T]he requirements of common law due process are quite similar to those for constitutional due process," *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 535 (3d Cir. 1994) (concurring, J. Becker), which similarly focuses on whether there was notice and opportunity for hearing appropriate to the nature of the case, *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

**A.   Dr. Tulp Received Notice of the Allegations and Evidence of Irregular Behavior.**

Dr. Tulp received notice of the allegations and evidence that he engaged in irregular behavior.  Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, on October 18, 2018, ECFMG sent a letter to Dr. Tulp summarizing and describing in detail the allegations of irregular behavior against him.  SAppx0208-0213, 0343-0346, 0488, 0707.  Both before and at the November 28, 2018 meeting of the Credentials Committee, Dr. Tulp's counsel received copies of materials to be considered by the Credentials Committee in reaching a decision regarding irregular behavior.  SAppx0216, 0362, 0443.  Moreover, Dr. Tulp and his counsel received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior.  SAppx0213-0216, 0352-0360, 0362, 0443.  Indeed, ECFMG's Policies and Procedures Regarding Irregular Behavior were both publicly available on the internet and sent to Dr. Tulp in connection with the allegations of irregular behavior.  SAppx0200, 0212, 0257, 0345-0346.  ECFMG's actions complied with its Policies and Procedures Regarding Irregular Behavior.  Because private entities bear "no obligation to afford [plaintiffs] protections in addition to those expressly embodied in" their written policies and procedures, *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010), ECFMG afforded Dr. Tulp due process.

Courts routinely find that similar activities constitute sufficient notice of accusations and the procedures through which the accusations of misconduct may be resolved. *See, e.g.*, *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (holding that a discharged employee was given sufficient notice of the reasons for his dismissal when he was provided with multiple disciplinary memos which described the alleged misconduct and what body would decide whether dismissal was appropriate); *McKeesport Hosp.*, 24 F.3d at 532 (Becker, J., concurring) (defendant accrediting council's use of detailed letters to communicate areas in which plaintiff hospital needed to improve, coupled with allowance of opportunity for hospital to submit additional information to address these concerns, constituted adequate notice of deficiencies before withdrawal of accreditation); *Psi Upsilon of Phila.*, 591 A.2d at 758–59 (holding that University's procedure of sending a statement explaining charges and violations to disciplined fraternity members before a disciplinary hearing was sufficient notice of pending charges); *Osei v. Temple Univ.*, 518 F. App'x 86, 89 (3d Cir. 2013) (holding that even a one-day notice of witness testifying against plaintiff at hearing was sufficient notice in the school discipline context).

There is no genuine dispute that Dr. Tulp received a letter from ECFMG detailing the allegations of irregular behavior. SAppx0208-0213, 0343-0346, 0488, 0707. Nor is there any genuine dispute that Dr. Tulp received that letter more than

a month before the meeting of the Credentials Committee and nearly two months before a decision regarding the allegations of irregular behavior. SAppx0217, 0363, 0372, 0749-0750. And there is no genuine dispute that before and during the irregular behavior proceeding, ECFMG provided Dr. Tulp's counsel with the evidence that would be reviewed by the Credentials Committee in connection with the matter. SAppx0216, 0362, 0443. Dr. Tulp's claim that he did not receive "any affidavits from any student" (Br. 15) are belied by the documentary evidence in the record and do not create a genuine dispute of material fact. *See* SAppx0216, 0362-0363, 0419-0420, 0443-0444. This, along with the entire record of ECFMG's communications with Dr. Tulp and his counsel, confirms that Dr. Tulp received adequate notice of the allegations and evidence against him.

### B.    Dr. Tulp Had Multiple Opportunities to be Heard.

Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, Dr. Tulp had ample opportunity to be heard in connection with the allegations of his irregular behavior.

**First**, Dr. Tulp had an opportunity to present a written response to the allegations of irregular behavior and provide any relevant information that he wanted the Credentials Committee to consider. SAppx0202, 0212, 0258, 0345-0346. Indeed, ECFMG expressly solicited a written response from Dr. Tulp. SAppx0212, 0345-0346. Because "[t]here is no inexorable requirement that oral testimony must

be heard in every administrative proceeding in which it is tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247-48 (1988)), Dr. Tulp's opportunity to provide a written submission and relevant information in response to the allegations of irregular behavior constitutes an adequate opportunity to be heard. *See Matthews v. Eldridge*, 424 U.S. 319, 334, 344–46 (1976) (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place).

**<u>Second</u>**, Dr. Tulp also had an opportunity to appear personally before the Credentials Committee with two attorneys of his choosing. SAppx0202-0203, 0212, 0217, 0258-0259, 0345-0346, 0363, 0372, 0427 0749-0750. *See, e.g.*, *Psi Upsilon*, 591 A.2d at 759 (presence of legal counsel at hearing speaks to adequacy of process given). Dr. Tulp's counsel made a full opening statement and had the opportunity to present whatever argument or substantive response he wished. SAppx0218-0221, 0373-0386, 0388, 0390-0392, 0397, 0398. Indeed, counsel for ECFMG repeatedly invited Dr. Tulp to give testimony and Dr. Tulp's counsel to address specific parts of the materials presented for the Credentials Committee's consideration. SAppx0218-0221, 0383-0386, 0388, 0390-0392, 0397-0398. It was only after Dr.

Tulp's counsel repeatedly refused to allow Dr. Tulp to testify and refused to address specific documents that the meeting was adjourned.

That Dr. Tulp did not take advantage of his personal appearance before the Credentials Committee to provide evidence or argument in his favor does not change the fact that he had an opportunity to be heard on the allegations of irregular behavior consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior. If a party is "given ample opportunity to present its position by written submission and to argue it orally," and fails to "make the best use of those opportunities . . . the blame cannot be placed on the Commission." *Marlboro Corp. v. Ass'n of Indep. Colleges and Schools*, 556 F.2d 78, 82 (1st Cir. 1977). Here, Dr. Tulp failed to make the best use of his opportunities to present his case to the Credentials Committee in that he failed to provide any substantive response to the allegations of irregular behavior. That does not mean he was denied due process.

Nor does the due process analysis change simply because no witnesses were called to testify. For starters, "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." *Biliski*, 574 F.3d at 223 (quoting *Mallen*, 486 U.S. at 247-48). Moreover, counsel for ECFMG repeatedly invited Dr. Tulp to speak or offer evidence, but he refused to do so. *See* SAppx0218-0220, 0382-0386, 0390-0391. In *Psi Upsilon of Philadelphia*, members of a disciplined fraternity argued that they were denied a fair

opportunity to be heard at a disciplinary hearing because they invoked their privilege against self-incrimination given pending criminal charges and thus did not testify or present evidence. 591 A.2d at 760. The court there found this contention to be without merit. *Id.* Similarly, Dr. Tulp's failure to testify at his own hearing or present any evidence, even though he was given multiple opportunities to do so, does not mean that he was denied a fair opportunity to be heard.

Dr. Tulp argues that he was denied a meaningful opportunity to be heard because ECFMG supposedly "presented no evidence" to the Credentials Committee and supposedly failed to "describe the general nature of the hearing" in its policies and procedures. Br. 9, 11. Dr. Tulp offers no record citations in support of these assertions because these assertions are inconsistent with the evidence. ECFMG's Policies and Procedures Regarding Irregular Behavior provide an adequate summary of the nature of the proceedings before the Credentials Committee. *See* SAppx0257-0261. And there is no genuine dispute that ECFMG provided the Credentials Committee with the same materials that were provided to Dr. Tulp's counsel both before and at the hearing. Indeed, elsewhere in his brief, Dr. Tulp concedes that "documents gathered by the ECFMG [were] submitted to" the Credentials Committee. Br. 25.

Because Dr. Tulp had an opportunity to be heard by the Credentials Committee, both in writing and in person, he was afforded an opportunity to be heard

35

consistent with his common law due process rights.  A full read of the transcript gives a complete picture of Dr. Tulp's opportunity (and refusal) to be heard in person.  *See* SAppx0367-0399.

## C. Dr. Tulp's Claim That More or Different Procedures Were Necessary Is Unavailing.

Dr. Tulp contends that certain procedures found in other cases should have been applied here.  Br. 23-25. But due process is a flexible concept that may differ from circumstance to circumstance.  *See Heller v. Doe*, 509 U.S. 312, 332 (1993) ("[F]lexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.").  "The difference in the nature of the interests implicated affects the procedural requisites for the hearing." *Chung v. Park*, 514 F.2d 382, 387 n. 8 (3d Cir. 1975) (citing *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)).  ECFMG's decision to not accept as valid paperwork with Dr. Tulp's signature given his unrebutted misrepresentations to ECFMG was an action reflecting ECFMG's determination that it could not trust information provided by Dr. Tulp.  Such a decision is based on ECFMG's discretion, dissimilar from the university sanctions imposed on a student fraternity in *Psi Upsilon of Philadelphia v. University of Pennsylvania*, which were based on violations of specific obligations under the fraternity's charter.  Accordingly, the irregular behavior proceeding reflected many of the processes afforded in that case, but it need not reflect all the

36

process afforded in that case, given the discretionary nature of ECFMG's action.  *See Chung*, 514 F.2d at 387 n. 8 (recognizing that process required is more lenient in circumstances where the decision is based on the discretion of the sanctioning entity, rather than whether a sanctioned party met a set of statutory or administrative conditions that would entitle it to a particular property or liberty interest).  Dr. Tulp cites no authority calling into question that fundamentally, due process requires only an "opportunity to present reasons, **either in person or in writing**, why proposed action should not be taken." *Biliski*, 574 F.3d at 220 (quoting *Loudermill*, 470 U.S. at 545-46).

Dr. Tulp also argues that the term "irregular behavior" is "void for vagueness" and that ECFMG had "no basis to exercise jurisdiction over Dr. Tulp."  Br. 22. Neither of those arguments is sufficient to withstand summary judgment.  There is no genuine dispute that the term "irregular behavior" is specifically defined (with examples) in ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior.  SAppx0200, 0257.  Nor is there any genuine dispute that Dr. Tulp received notice of the specific conduct that allegedly constituted irregular behavior.  *See supra* Part II.A.  The term "irregular behavior" is not so vague as to deny Dr. Tulp due process.  Similarly, there is no genuine dispute that ECFMG decided, following its own investigation and a hearing, that it would no longer accept Dr. Tulp's signature as valid authentication for purposes of the ECFMG certification

process. That is not a question of jurisdiction, but rather a question of whether ECFMG must believe Dr. Tulp notwithstanding its finding that he lied to ECFMG. The notion of ECFMG's "jurisdiction" over Dr. Tulp is a red herring.

**D.      ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation.**

Dr. Tulp argues that the District Court erred by not concluding that the updates to ECFMG's Sponsor Note for USAT in the World Directory of Medical Schools created a genuine dispute of material fact as to whether the Credentials Committee's assessment of Dr. Tulp's irregular behavior was impartial.

**First**, the argument was never raised in the District Court and was thereby waived. *See Garza v. Citigroup Inc.*, 881 F.3d 277, 284 (3d Cir. 2018).

**Second**, Dr. Tulp points to no evidence in the record—and there is no evidence—to suggest that the Sponsor Note had any effect on the Credentials Committee's determination that Dr. Tulp had lied to ECFMG and thereby engaged in irregular behavior warranting a sanction. Dr. Tulp's argument depends on mere speculation that would have had no place at summary judgment (if he had raised it then, which he did not). *See Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014) ("an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.") (quoting *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

To the contrary, there is no genuine dispute that ECFMG updated its Sponsor Note for USAT so that it would accurately reflect steps taken by ECFMG to validate that USAT students and graduates attended a *bona fide* international medical school and were thus eligible for ECFMG certification. In September 2018, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know to expect that additional procedures would be necessary to secure ECFMG certification. In October 2018, after USAT failed to provide the documentation ECFMG repeatedly requested to prove that its operations in the United States complied with ECFMG policy, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know that starting on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG certification unless and until USAT proved it was in compliance with ECFMG policy. Neither of these updates to the USAT Sponsor Note violated Dr. Tulp's common law right to any form of due process or suggest any predetermination as to the Credentials Committee's evaluation of Dr. Tulp's alleged irregular behavior. Indeed, to the extent ECFMG notified Dr. Tulp of its intent to update the USAT Sponsor Note to reflect that Dr. Tulp had been found to have engaged in irregular behavior, that intent was made clear only **<u>after</u>** the finding of irregular behavior had been made, and the language was not incorporated into the USAT Sponsor Note. SAppx0221-0222, 0225, 0400-0401, 0618-0619, 0776, 0778. Thus, updates to the USAT Sponsor Note

39

do not create any genuine dispute of material fact as to whether Dr. Tulp was denied due process.

## III.  The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Intervention Is Appropriate.

Pennsylvania recognizes that "judicial interference in the affairs of private associations . . . is appropriate only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional advantages or fundamental constitutional rights." *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973); *see also Psi Upsilon of Phila.*, 591 A.2d at 760 ("[C]ourts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present."). This is a case in which judicial interference in the affairs of ECFMG, a private organization, would not be appropriate, and the grant of summary judgment for ECFMG may be affirmed on those grounds. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (holding that this Court "may affirm the District Court on any grounds supported by the record, even if the District Court did not rely on those grounds").

There is no genuine dispute that ECFMG took action as to Dr. Tulp by deciding it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years . . .  thereafter, the prohibition shall end only upon a petition to ECFMG

40

conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SAppx0221-0222, 0400-0401. This action does not deprive Dr. Tulp of a substantial economic or professional advantage or a fundamental constitutional right. It does not prevent Dr. Tulp from operating a medical school or otherwise serving as a professor of medicine. Indeed, there is no genuine dispute that USAT has other authorized signatories, and there is no evidence to suggest that Dr. Tulp needs to serve as an authorized signatory in order for him or USAT to succeed. SAppx0222, 0442-0443, 0703-0704. Moreover, Dr. Tulp testified that he has never derived income from USAT, SAppx0205, 0747-0749, so any interference with Dr. Tulp's ability to fulfil his duties as President of USAT could not possibly result in substantial economic harm to Dr. Tulp. Accordingly, ECFMG's action does not deprive Dr. Tulp of "substantial economic or professional advantages" or a "fundamental constitutional right[]," and judicial intervention is thus not appropriate here. *See Sch. Dist. of City of Harrisburg*, 309 A.2d at 357; *see also McKeesport Hosp.*, 24 F. 3d at 534 (Becker, J., concurring) ("Courts must pay special deference to a professional accreditation organization's substantive decisions in light of the special expertise required to determine professional competency.").

**IV.   Dr. Tulp Is Not Entitled To Legal Or Equitable Relief.**

Even if Dr. Tulp could establish a common law due process violation (and he cannot), ECFMG is also entitled to summary judgment because the record confirms that Dr. Tulp is not entitled to legal or equitable relief.

Dr. Tulp is not entitled to recover damages because there is no evidence properly in the record to support a damages award.  Dr. Tulp testified that he never earned any money from USAT and that his income for many years has been derived entirely from other sources.  SAppx0205, 0747-0749.  ECFMG requested that Dr. Tulp produce any and all documents he would use to support a damages award; no such documents were produced.  SAppx0225, 0641, 0644-0655.  In opposition to summary judgment, Dr. Tulp submitted previously undisclosed documents purporting to support his claim for damages.  SAppx0913-SAppx0915.  But even those documents provide no basis for calculating damages because they constitute hearsay evidence only of alleged changes in USAT enrollment.  They do not reflect alleged changes in USAT revenue.  Accordingly, Dr. Tulp presented no competent evidence to substantiate a damages award, and summary judgment in favor of ECFMG is warranted on any claim for damages.

Nor is Dr. Tulp entitled to equitable relief in the form of an injunction that would require ECFMG to grant an exception to its policies and procedures, which are in place to promote the public health.  In addition to demonstrating **<u>actual</u>**

42

success on the merits (which Dr. Tulp cannot do), Dr. Tulp would only be entitled to permanent injunctive relief if he demonstrates that "(1) [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *EBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[3] Here, ECFMG is entitled to summary judgment on Dr. Tulp's claim for injunctive relief because the undisputed facts show that Dr. Tulp cannot satisfy any of these requirements.

**First**, to make a showing of irreparable harm, the requisite feared injury or harm must not be merely serious or substantial, but rather "must be of a peculiar nature so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Dr. Tulp can present no evidence whatsoever of irreparable injury, which alone is grounds for denying injunctive relief. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989); *see also* SAppx0537 (concluding following the injunction hearing that Dr. Tulp had "not shown immediate irreparable injury resulting from ECFMG's action"). To the

---

[3] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

extent Dr. Tulp suggests that he would be irreparably harmed absent injunctive relief by virtue of his "removal . . . as a medical educator," SAppx0050, this argument fails as a matter of fact and law. Contrary to his naked allegations, the evidence shows that ECFMG's limited action did not cause his "removal . . . as a medical educator" for any period of time. SAppx0221-0222, 0400-0401, 0442. Notwithstanding ECFMG's actions, Dr. Tulp remains free to teach medicine at USAT in Montserrat or elsewhere. Indeed, Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands. SAppx0222, 0499-0500, 0502, 0683. As a matter of law, any injury to Dr. Tulp's reputation is not irreparable and would not be avoided through injunctive relief because ECFMG's finding of irregular behavior has already been made public, at the very least through Dr. Tulp having filed this lawsuit without filing under seal. Dr. Tulp "is free to try to mitigate any reputational injury" as he sees fit, but it does not rise to the level of irreparable harm. *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, No. 17-13708, 2017 WL 6342629, at *4 (E.D. Mich. Dec. 12, 2017).

**<u>Second</u>**, Dr. Tulp cannot point to evidence showing that an injunction would be in the public interest. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008). Here, it would be contrary to the public interest for this Court to mandate

44

that ECFMG continue to credit Dr. Tulp's signature when it has concluded, following a thorough investigation and hearing process, that Dr. Tulp lied to ECFMG. ECFMG determined that Dr. Tulp made false statements to ECFMG about USAT, and Dr. Tulp has failed to present any evidence to alleviate ECFMG's concerns. *See* SAppx0220, 0398. ECFMG endeavors to promote the health of the public through application of its policies and procedures, *see* SAppx0198-0199, 0229, 0412-0413, and an end-run around them would be adverse to the public interest.

**Third**, the balance of harms weighs against injunctive relief. As to Dr. Tulp, ECFMG only restricted his authority to sign documents to be relied upon by ECFMG in connection with the ECFMG certification process. SAppx0221-0222, 0400-0401, 0442. This does not interfere with his ability to earn a living, teach medicine, or work at a medical school. By contrast, ECFMG would suffer **substantial** harm if it were forced to accept Dr. Tulp's signature on documents used in the ECFMG certification process notwithstanding his record of falsehoods. Interference with a certification process like that of ECFMG poses a serious risk of harm to the certifying body and weighs against injunctive relief. *See, e.g.*, *Thomas M. Cooley Law Sch.*, 2017 WL 6342629, at *4 (refusing to grant injunction interfering with the ABA's decision to sanction a law school because doing so would harm the ABA by preventing it from executing its duties).

45

## V.     ECFMG Does Not Owe A Common Law Duty of Due Process

While the District Court correctly granted summary judgment for ECFMG because there is no genuine dispute that Dr. Tulp was afforded due process, ECFMG is also entitled to judgment as a matter of law because ECFMG did not owe Dr. Tulp a common law duty of due process under Pennsylvania law.  ECFMG cannot be liable for breaching a duty it did not owe, so Dr. Tulp's common law due process claim against ECFMG fails as a matter of law, and the District Court's grant of summary judgment for ECFMG may be affirmed on this independently sufficient basis supported by the record.  *See Blunt*, 767 F.3d at 265.

When a federal court is interpreting Pennsylvania law, it must follow the Pennsylvania Supreme Court.  *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016).  If the law is unclear and there is no controlling precedent issued by the Pennsylvania Supreme Court, it must "predict" how the Pennsylvania Supreme Court would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts."  *Nationwide Mut. Ins. Co.*, 230 F.3d at 637.

Here, the District Court predicted that the Pennsylvania Supreme Court would rule that ECFMG owed Dr. Tulp a common law duty of due process, but that prediction lacks support from the relevant case law.  The Pennsylvania Supreme Court has never imposed a common law duty of due process on a private organization like ECFMG that is not engaged in state action.  To the contrary, the

Pennsylvania Supreme Court has reprimanded lower courts for importing notions of due process into actions involving private conduct. *See Murphy v. Duquesne Univ. of the Holy Ghost*, 777 A.2d 418, 428 (Pa. 2001) (rejecting focus on due process in contract dispute with private university because there is "no principled basis for reviewing a breach of contract action that involves private conduct according to principles that arise out of the Fourteenth Amendment, and which govern state action."). That is a far cry from recognizing that Pennsylvania may impose due process obligations on private organizations as a matter of common law.

The only Pennsylvania Supreme Court case cited by the District Court in support of imposing a common law duty of due process on private organizations involved a high school athletic association engaged in **state action**. *See Sch. Dist. of City of Harrisburg*, 309 A.2d at 358. Even then, the Pennsylvania Supreme Court did not recognize a common law duty of due process and declined to interfere in the organization's affairs. *Id.* at 358. ECFMG, by contrast, is not a state actor and its functions do not constitute state action. *See* SAppx0026-0029; *see also, e.g.*, *Opoku v. ECFMG*, 574 F. App'x 197, 201 (3d Cir. 2014) ("Grese and ECFMG, a private not-for-profit organization, are private parties and not state actors."); *Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim."); *Elias v. ECFMG*, No. C-82-08, 2010 WL 4340640,

at *1 (N.J. Super. Nov. 4, 2010) (finding insufficient evidence "to establish that the ECFMG is a state actor"); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing § 1983 claims because ECFMG is not a state actor and does not act under the color of state law). Nor are ECFMG's actions "fairly attributable" to the state such that they constitute state action. *McKeesport Hosp.*, 24 F.3d at 524. *See* SAppx0026-0029; *see also, e.g.*, *Brown v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) (holding that ECFMG is "not [a] state agenc[y]" and "do[es] not participate in a state activity" because "[t]he actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests" and "[t]he state boards are at most [ECFMG's] consumers"). Rather, ECFMG's actions were limited sanctions tied to its role in assessing the qualifications of IMGs, which is not a power exclusive to the state. *See Staudinger*, 1993 WL 138954, at *4; *see also McKeesport Hosp.*, 24 F.3d at 525 ("The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state action."). The Pennsylvania Supreme Court's willingness to consider interfering in the affairs of a high school athletic association engaged in state action does not indicate that it is likely to hold that ECFMG owed a common law due process duty to Dr. Tulp.

48

The remaining cases that led the District Court to predict that the Pennsylvania Supreme Court would recognize a common law due process duty in this case are similarly inapposite. Two are 30-year-old decisions from Pennsylvania's intermediate appellate court involving challenges by students to discipline imposed in the private school and university context. *See Psi Upsilon of Phila.*, 591 A.2d at 758; *Boehm*, 573 A.2d at 579. Neither case involved a private certification organization like ECFMG or its relationship to an independent school administrator like Dr. Tulp who was responsible for providing information in connection with the certification process but was not himself seeking ECFMG certification. In the decades since those decisions, the Pennsylvania Supreme Court has not endorsed the notion of a common law due process duty owed by private organizations.

The District Court also relied on *dicta* from a 25-year-old concurrence to a decision of this Court suggesting that there "appears to exist" under Pennsylvania law a "common law duty on the part of 'quasi-public' private professional organizations or accreditations associations to employ fair procedures when making decisions affecting their members." *McKeesport Hosp.*, 24 F.3d at 534-35 (Becker, J., concurring). In the 25 years since that concurrence, there has been no indication—let alone a holding—from this Court or the Pennsylvania Supreme Court that such a common law due process duty exists. Moreover, Dr. Tulp is not a "member" of ECFMG and thus falls outside the scope even of the duty posited by

the concurrence.  Finally, the District Court relied on several decisions from state and federal courts outside Pennsylvania, but there is no reason to believe that the Pennsylvania Supreme Court would follow them in imposing due process obligations on private organizations as a matter of Pennsylvania common law.

In sum, neither Dr. Tulp nor the District Court have identified any case in which the Pennsylvania Supreme Court expressed a willingness to impose a common law duty of due process on any entity, let alone a private entity not engaged in state action, and the other cases cited by the District Court are distinguishable. There is not a strong basis to predict that the Pennsylvania Supreme Court would impose such a duty on ECFMG with respect to Dr. Tulp.  Accordingly, this Court should predict that the Pennsylvania Supreme Court would not impose such a duty and affirm the District Court's grant of summary judgment for ECFMG because ECFMG is entitled to judgment as a matter of law.  But even if ECFMG owed a common law duty of due process to Dr. Tulp (which it did not), the District Court's grant of summary judgment should be affirmed because ECFMG in fact afforded Dr. Tulp all the process he was due.  *See supra* Part II.

## CONCLUSION

For these reasons, the decision of the District Court granting summary judgment for ECFMG should be affirmed.

Dated: January 16, 2020               */s/ Elisa P. McEnroe*
                                         Elisa P. McEnroe
                                         Matthew D. Klayman
                                         MORGAN, LEWIS & BOCKIUS LLP
                                         1701 Market Street
                                         Philadelphia, PA 19103
                                         T. 215.963.5917
                                         F. 215.963.5001

                                         *Attorneys for Appellees Educational*
                                         *Commission for Foreign Medical*
                                         *Graduates and Dr. William Pinsky*

## CERTIFICATE OF BAR MEMBERSHIP, COMPLIANCE WITH TYPE-VOLUME LIMITATION AND TYPEFACE REQUIREMENTS, AND VIRUS CHECK

I, Elisa P. McEnroe, counsel for Appellees Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky, certify, pursuant to Local Appellate Rule 28.3(d), that I am a member in good standing of the Bar of this Court. I further certify, pursuant to Federal Rules of Appellate Procedure 32(a)(5)-(7), and Local Appellate Rules 31.1(c) and 32.1(c), that the foregoing Brief of Appellee is proportionately spaced and has a typeface of 14-point Times New Roman, contains 11,800 words, and that the text of the electronic brief is identical to the text of the paper copies. I further certify, pursuant to Local Appellate Rule 31.1(c), that McAfee Endpoint Security, version 10.7, did not detect a virus.

Dated: January 16, 2020                    */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe

                                            *Attorney for Appellees Educational Commission for Foreign Medical Graduates and Dr. William Pinsky*

52

## CERTIFICATE OF SERVICE

I, Elisa P. McEnroe, counsel for Appellees Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky, certify that, on January 16, 2020, a copy of the foregoing Brief of Appellee was filed electronically through the appellate CM/ECF system with the Clerk of the Court. All counsel of record in this case are registered CM/ECF users. Pursuant to Local Appellate Rule 31.1, as amended by the April 29, 2013 order, seven copies of this brief were sent to the Clerk of the Court for delivery.


Dated: January 16, 2020                    */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe

                                            *Attorney for Appellees Educational*
                                            *Commission for Foreign Medical*
                                            *Graduates and Dr. William Pinsky*