No. 19-2706

# In The United States Court Of Appeals For The Third Circuit

---

**DR. ORIEN L. TULP,**

*Plaintiff - Appellant*,

**v.**

**EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES et al.,**

*Defendants - Appellees*.

---

On Appeal from the Order and Judgment Entered by the
United States District Court for the Eastern District of
Pennsylvania, No. 2:18-cv-05540-WB

---

**SUPPLEMENTAL APPENDIX**
**(Volume I of III, pages SAppx0001-0039)**

---

Elisa P. McEnroe
Matthew D. Klayman
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5917
F. 215.963.5001

*Attorneys for Appellees Educational Commission for Foreign Medical Graduates and Dr. William Pinsky*

# TABLE OF CONTENTS FOR SUPPLEMENTAL APPENDIX

**Page**

Notice of Appeal, filed July 23, 2019 ..................................................... SAppx0001

Memorandum Opinion and Order, filed June 25, 2019 .......................... SAppx0005

Memorandum Opinion and Order, filed March 26, 2019 ....................... SAppx0022

District Court Docket Entries for 18-cv-05540-WB ............................. SAppx0040

Complaint, filed December 24, 2018 .................................................... SAppx0045

Defendants' Motion to Dismiss, filed January 22, 2019 ....................... SAppx0080

    Defendants' Memorandum of Law and Proposed Order ............. SAppx0082

Plaintiff's Answer to Defendants' Motion to Dismiss and Proposed Order,
filed February 14, 2019 ........................................................................ SAppx0110

Defendants' Reply in Support of Motion to Dismiss, filed February 21,
2019 ..................................................................................................... SAppx0130

Defendant's Answer to Complaint, filed April 9, 2019 ......................... SAppx0145

Defendant Educational Commission for Foreign Medical Graduates' Motion
    for Summary Judgment,  filed May 3, 2019 ................................. SAppx0166

    Defendant's Memorandum of Law and Proposed Order ............. SAppx0168

    Statement of Undisputed Material Facts ..................................... SAppx0198

    Joint Appendix ........................................................................... SAppx0226

Plaintiff's Answer to Motion for Summary Judgment and Proposed Order,
    filed June 3, 2019 ....................................................................... SAppx0780

    Statement of Disputed Material Facts ......................................... SAppx0797

    Plaintiff's Appendix ................................................................... SAppx0800

Defendant's Reply in Support of Motion for Summary Judgment, filed June
    20, 2019 ...................................................................................... SAppx0954

    Reply Statement of Undisputed Material Facts ........................... SAppx0968

    Supplement to Joint Appendix .................................................... SAppx0975

Scheduling Order, filed January 25, 2019 ............................................ SAppx0982

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                  ATTORNEY FOR PLAINTIFFS

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| | : | CIVIL ACTION NO. 2:18-cv-05540-WB |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| and | : | JURY TRIAL DEMANDED |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Education Commission for | : | |
| Foreign Medical Graduates | : | |

## NOTICE OF APPEAL

Plaintiff, Dr. Orien L. Tulp, appeals to the United States Court of Appeals for the Third

Circuit, the Orders of the Honorable Wendy Beetlestone, granting summary judgment to

defendants (DKT. #36); and the Order granting, in part, the motion to dismiss by defendants

(DKT. #29). A copy of these Orders are attached as Exhibits "A" and "B," respectfully.

Respectfully,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
I.D. # 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
For: Tommy Swate, Esquire

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>    **Plaintiff,** | **CIVIL ACTION** |
| v. | |
| EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>    **Defendants.** | **NO. 18-5540** |

### ORDER

**AND NOW**, this 25th day of June, 2019, upon consideration of Defendant Education

Commission for Foreign Medical Graduates' Motion for Summary Judgment (ECF No. 31), and

Plaintiff's opposition thereto (ECF No. 33), **IT IS HEREBY ORDERED** that Defendant's

Motion is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mark this case as **CLOSED**.

BY THE COURT:

/S/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. ORIEN L. TULP,                              CIVIL ACTION
      **Plaintiff,**

    v.

EDUCATIONAL COMMISSION FOR                      NO. 18-5540
FOREIGN MEDICAL GRADUATES AND
DR. WILLIAM W. PINSKY,
      **Defendants.**

## ORDER

**AND NOW**, this 26th day of March, 2019, upon consideration of Defendants' Motion to

Dismiss and support thereof (ECF Nos. 20 & 25), and Plaintiff's Response in Opposition thereto

(ECF No. 24), it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN**

**PART AND DENIED IN PART**, as follows:

    1. Defendants' Motion to Dismiss Plaintiff's common law due process claim against

       ECFMG is **DENIED**;

    2. Defendants' Motion to Dismiss the remainder of Plaintiff's claims against

       Defendants is **GRANTED**. Such claims are **DISMISSED WITHOUT**

       **PREJUDICE**.

                **BY THE COURT:**

                /s/ Wendy Beetlestone

                _____

                **WENDY BEETLESTONE, J.**



LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                              ATTORNEY FOR PLAINTIFFS

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| | : | CIVIL ACTION NO. 2:18-cv-05540-WB |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| and | : | JURY TRIAL DEMANDED |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Education Commission for | : | |
| Foreign Medical Graduates | : | |

## CERTIFICATE OF SERVICE

I, William C. Reil, Esquire, hereby Certify that on this 23rd day of July, 2019, a true and

correct of the Notice of Appeal was served on the following attorney for all defendants by ECF

electronic service and FedEx:

Elisa P. McEnroe, Esquire
Morgan, Lewis, and Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Dated: July 23, 2019

*William C. Reil*

_____
William C. Reil, Esquire
Attorney for Plaintiff
I.D. # 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
For: Tommy Swate, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. ORIEN L. TULP, | CIVIL ACTION |
| Plaintiff, | |
| | |
| v. | |
| | |
| EDUCATIONAL COMMISSION FOR | NO.  18-5540 |
| FOREIGN MEDICAL GRADUATES AND | |
| DR. WILLIAM W. PINSKY, | |
| Defendants. | |

## MEMORANDUM OPINION

This case is, in effect, Plaintiff Orien Tulp's challenge to the disciplinary action taken by

Defendant Education Commission for Foreign Medical Graduates ("ECFMG") against Plaintiff

for providing false information about the branch campuses of an overseas medical school.  The

Court previously dismissed Plaintiff's various constitutional and common law claims, with the

sole exception of a common law due process claim.  *See Tulp v. Educ. Comm'n for Foreign Med.*

*Graduates*, 2019 WL 1382725, at *1 (E.D. Pa. Mar. 26, 2019).  ECFMG now moves for

summary judgment on this last remaining claim.  For the reasons that follow, ECFMG's motion

will be granted.

## I.    LEGAL STANDARD

Summary judgment must be granted to a moving party if "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010).  A genuine dispute "exists

if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018).

The party opposing the motion for summary judgment must "go beyond the pleadings,"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and demonstrate that "a fact . . . is genuinely

disputed" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."). When the non-movant "fails to properly address [the movant's] assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2); *see, e.g.*, *Payne v. City of Philadelphia*, 2016 WL 1298951, at *2 (E.D. Pa. Apr. 4, 2016).

In accordance with this Court's policies and procedures, ECFMG submitted a statement of material facts along with its summary judgment motion, supported by citations to the record. Plaintiff's response neither meaningfully addressed ECFMG's assertions of fact nor demonstrated that any of those assertions were genuinely disputed. Instead, Plaintiff recited the allegations contained in the Complaint or else produced conclusory assertions without citation to the record. Accordingly, the Court will consider ECFMG's account of the facts undisputed for purpose of resolving this motion.

Lastly, where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

2

## II.     FACTS & PROCEDURAL HISTORY

### A.  ECFMG's Policies & Procedures

ECFMG is a private, non-profit organization based in Philadelphia that certifies international medical graduates ("IMGs") so that those students can pursue post-graduate medical training in the United States.  Specifically, ECFMG: (1) certifies the readiness of IMGs through an evaluation of their qualifications, (2) verifies IMGs' education credentials, and (3) provides that information to graduate medical programs and other health care providers.  As part of the verification process, ECFMG collects certain documentation from IMGs, including documentation confirming that graduates attended a recognized international medical school.

ECFMG defines an international medical school as "an education facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country."  Where an international medical school operates branch campuses, ECFMG requires confirmation that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."  Only graduates from a bona fide international medical school can obtain ECFMG certification.

To ensure the integrity of its certification process, ECFMG maintains policies to detect and snuff out "irregular behavior."  The policies are set forth in ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior, which define "irregular behavior" as "all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG[.]"

3

"Examples of irregular behavior include . . . submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual," and "falsification of information on applications, submissions, or other materials to ECFMG."  The Policies and Procures make clear that "such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG."

The Policies and Procedures also set out a specific process by which ECFMG investigates suspected irregular behavior, determines whether an individual engaged in irregular behavior, and takes remedial action if a finding of irregular behavior is made:

- After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior.  When indicated and feasible, staff will conduct a follow-up investigation to gather additional information.

- If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee [hereinafter "Credentials Committee].

- [T]he individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior.

- The individual will be given an opportunity to provide written explanation and to present other relevant information.

- The individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes.

- All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the [Credentials Committee].  The [Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior.

4

- If the [Credentials Committee] determines that the individual engaged in irregular behavior, the [Credentials Committee] will determine what action(s) will be taken as a result of the irregular behavior. ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto.

- The [Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the [Credentials Committee] did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the [Credentials Committee]'s decision was clearly contrary to the weight of the evidence before it.

**B. ECFMG's Investigation of Plaintiff**

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a medical school headquartered on the British Overseas Territory of Montserrat. In July and August of 2018, ECFMG received information—including an email from the parent of a USAT student—indicating that USAT was offering classes in Miami, Florida. On August 21, 2018, ECFMG emailed Plaintiff, informing him that "[i]t ha[d] recently come to the attention of [ECFMG] that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida," and requesting Plaintiff produce "documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States." ECFMG never received any such documentation.

Instead, on August 21, 2018, Plaintiff responded to ECFMG's email, as follows:

This is incorrect information. The Miami location is an information and testing site only . . . and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination.

I hope this will clarify your concern.

5

On September 14, 2018, ECFMG's Vice President of Operations, Kara Corrado, sent

Plaintiff a follow-up email, stating that ECFMG "received information USAT is providing

medical education lectures not only at its Miami site, but also at sites in Tampa, FL, and Dallas,

TX." The email ECFMG would "continue[] its review of this matter," and that "as part of its

review, ECFMG has reached out to students and graduates of USAT in order to collect

information from them regarding their attendance at USAT." Corrado continued:

> Effective today, USAT students and graduates seeking services related to
> ECFMG Certification . . . must complete and submit an affidavit attesting to the
> accuracy of the medical school information provided to ECFMG. Services will
> not be provided to individuals who do not complete the affidavit. ECFMG has
> provided instructions about this process directly to the students and graduates.

Consistent with Corrado's email, ECFMG sent affidavits to USAT students and

graduates, asking them to certify their dates of attendance at USAT as well as the location where

they took their basic science courses. More than 300 students submitted affidavits indicating that

they took classes in the United States; none indicated that they took courses in Montserrat.

On September 24, 2018, ECFMG also updated its Sponsor Note for USAT on the World

Directory of Medical School—the directory maintained by ECFMG to inform the public of the

eligibility of a school's graduates to start the process of ECFMG certification. The Sponsor Note

stated that "students and graduates of USAT are subject to enhanced procedures that must be met

in order to be eligible for ECFMG Certification related services[.]"

### C.  ECFMG's Irregular Behavior Proceedings Against Plaintiff

On October 18, 2018, ECFMG sent Plaintiff an email, advising him

> of the allegation that you, individually and in your capacity as an official of the
> University of Science, Arts & Technology (USAT) Faculty of Medicine,
> Montserrat, engaged in irregular behavior in connection with providing false
> information to ECFMG. Specifically, you provided false information to ECFMG
> when you (1) notified ECFMG that USAT does not operate a branch campus in

6

Miami, Florida and (2) certified to the attendance dates of several USAT students
and graduates when ECFMG has information that these students were not
attending USAT during some of the time periods to which you certified.

In addition, the letter summarized the procedure by which the Credential Committee would

review the allegations.  The letter: explained that matter was being referred to the Credential

Committee for review at its November 28, 2018 meeting; advised Plaintiff to review the

Credentials Committee's Policies and Procedures, which were attached to the email; informed

Plaintiff that he had the opportunity to appear before the Credential Committee on November 28,

accompanied by legal counsel; listed the documents the Credential Committee would be

reviewing on that date, which were also attached to the email; and, requested Plaintiff provide a

written response to the allegations by November 1, 2018.  On October 18, ECFMG also updated

USAT's Sponsor Note, as follows: "As of January 1, 2019, students and graduates of this

medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for

ECFMG Certification[.]"

Plaintiff, through counsel, responded to ECFMG's letter on October 23, 2018.[1]  Plaintiff

confirmed that he would attend the November 28 hearing, requested additional documentation

about the allegations, and questioned ECFMG's decision to change USAT's Sponsor Note prior

to the hearing.  On October 26, 2018, Corrado clarified that the allegations of irregular behavior

concerned only Plaintiff's actions, and not USAT more broadly.  Then, on November 14, 2018,

Corrado emailed Plaintiff's counsel, confirming that:

[Plaintiff] is scheduled to appear before the ECFMG Committee with you and Mr.
Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM. . . .  In
accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20
minutes, during which time he will have the opportunity to present his response to
these allegations (either personally or through his counsel) and the ECFMG
Committee members, ECFMG counsel, and staff will have the opportunity to ask
questions.  After that, Dr. Tulp may provide a brief, closing statement.

---

[1] The letter was incorrectly dated September 23, 2018.

SAppx0011

Corrado also provided Plaintiff's counsel with the materials that the Credentials Committee would review at the meeting.  On November 16, 2018, Corrado sent Plaintiff's counsel a follow-up email to "confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for [Plaintiff]."  The same day, Plaintiff's counsel responded, stating that he had received the documents.

On November 28, 2018, Plaintiff appeared before the Credential Committee, accompanied by counsel.  At the outset of the hearing, ECFMG again provided Plaintiff with copies of the materials under consideration.  After Corrado summarized the allegations of irregular behavior, Plaintiff's counsel made his opening remarks, stating:

> First, I would like to ask for the—I've asked and I've asked and I've asked for the packet that was presented to the committee members.  I would like a copy of the packet, the information that was submitted to the committee members so that I will know what was considered by the committee before we came here today because you're considering information that I may or may not know about.

Counsel for ECFMG directed Plaintiff's counsel to the printed materials provided at the beginning of the hearing and reiterated that all materials under consideration by the Credential Committee had been provided to Plaintiff and his counsel on several occasions.

Plaintiff's counsel then made a series of legal arguments to the effect that ECFMG: (1) had "no jurisdiction over [Plaintiff]," (2) bore "the sole exclusive burden of proof," (3) had "a duty of presenting . . . evidence . . . before [Plaintiff] has to answer anything," but failed to do so, (4) "co-mingl[ed] . . . the prosecutorial and jury functions," (5) prejudged the matter by taking action against USAT, and (6) failed to provide Plaintiff with the "regulations and protocols for these meetings[.]"  Plaintiff's counsel concluded: "That is our opening statement.  If you have any questions, you can address them to me.  [Plaintiff] will not be answering any questions."

8

Counsel for ECFMG and Plaintiff then engaged in a protracted back-and-forth, in which ECFMG's counsel invited Plaintiff to provide evidence or testimony addressing the allegations of irregular behavior and Plaintiff's counsel declined, arguing ECFMG carried the burden of production. After roughly nine minutes of this back-and-forth, counsel for ECFMG terminated the hearing, by stating: "You're not providing any evidence. So thank you for coming today[.]"

### D. Irregular Behavior Determination

On December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had completed its review and determined that Plaintiff had engaged in irregular behavior. Specifically, the Credential Committee found Plaintiff provided false information when he "notified ECFMG that USAT does not operate a branch campus in Miami, FL" and "certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified."

As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1) refusing, for a minimum of five years, to accept any documents signed and/or certified by Plaintiff; (2) adding to ECFMG's Sponsor Note for USAT that "a certain official of [USAT] engaged in irregular behavior in connection with providing false information to ECFMG;" and, (3) making a permanent annotation in Plaintiff's ECFMG record that he engaged in irregular behavior. ECFMG also informed Plaintiff that he had thirty days to appeal the decision. Plaintiff did not petition for reconsideration of the Credential Committee's determination.

### E. Procedural History

On December 24, 2018, Plaintiff initiated this action against ECFMG and Dr. William

9

Pinsky, the President of ECFMG, and, on January 2, 2019, filed a motion for a preliminary

injunction.  On January 22, 2019, Defendants moved to dismiss the Complaint.  Two days later,

on January 24, 2019, the Court held a hearing on Plaintiff's preliminary injunction motion and

denied the request for preliminary relief for the reasons stated on the record.  On March 26,

2019, the Court granted Defendants' motion to dismiss as to all of Plaintiff's claims against Dr.

Pinsky, and as to all of Plaintiff's claims against ECFMG, with the exception of the common law

due process claim.  *See Tulp*, 2019 WL 1382725 at *1.  ECFMG now moves for summary

judgment on this last claim.

## III.    DISCUSSION

"The touchstone of due process is protection of the individual against arbitrary action[.]"

*Wolf v. McDonnell*, 418 U.S. 539, 5588 (1974).  Many jurisdictions, Pennsylvania included,

recognize a limited common law due process cause of action in addition to the more familiar

constitutional due process cause of action.  *See McKeesport Hosp. v. Accreditation Council for*

*Graduate Med. Educ.*, 24 F.3d 519, 534-35 (3d Cir. 1994) (Becker, J., concurring in the

judgment) (collecting cases); *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic*

*Ass'n*, 309 A.2d 353, 357 (Pa. 1973) (recognizing the existence of a common law duty).

Under Pennsylvania law, "private associations" owe a common law duty of due process

"only under limited circumstances."  *Sch. Dist. of City of Harrisburg*, 309 A.2d at 357.   One

such instance is where a private organization that serves a public function subjects a party to

disciplinary action.  *See Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super.

1991) (holding that the University of Pennsylvania, a private organization, owed a common law

duty of due process to a group of college students that it subjected to disciplinary action); *Boehm*

*v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990) (holding that the

10

University of Pennsylvania owed a common law duty to graduate students disciplined for academic misconduct). The duty "operate[s] as a 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)). Because such "quasi-public" organizations, "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight." *Id.*

"The requirements of common law due process are quite similar to those for constitutional due process[.]" *McKeesport Hosp.*, 24 F.3d at 535. Common law due process requires that the disciplining organization adhere "to those procedural safeguards which the [organization] specifically provides." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where the University "followed its Code of Rights punctiliously"). In addition, those procedural safeguards must accord with "basic principles of . . . fundamental fairness," meaning "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (holding due process met where plaintiff "had notice and an opportunity to be heard"); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (holding due process requirement where disciplined party "was afforded notice of the action taken against it and . . . availed itself

11

of the opportunity to be heard").[2]

The notice requirement is satisfied where the disciplinary body provides "notice of the charges against [the disciplined party] and also of the evidence against [the disciplined party]." *Boehm*, 573 A.2d at 582; *Psi Upsilon*, 591 A.2d at 759 (holding plaintiffs afforded notice where University provided statement laying out charges and reciting factual allegations underpinning charges). As for an opportunity to be heard, the disciplinary body must provide "an opportunity [for the disciplined party] to present his side of the story." *Biliski v. Red Clay Consol. Sch. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)). Thus, due process requires "the opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Id.* (quoting *Loudermill*, 470 U.S. at 542); *Boehm*, 573 A.2d at 508 (explaining that an individual must be provided with the opportunity to "produce either oral testimony or written affidavits of witnesses on his behalf") (quoting *Dixon v. Al. State Bd. of Ed.*, 294 F.2d 150, 158 (5th Cir. 1961)). Where in-person testimony is permitted, such hearings "need not be elaborate," *Biliski*, 574 F.3d at 220 (quoting *FDIC v. Mallen*, 486 U.S. 230, 247 (1988)), "subject to strict rules of judicial procedure," *Psi Upsilon*, 591 A.2d at 761, or have all the trappings of "a full-dress judicial hearing," *Boehm*, 573 A.2d at 508 (quoting *Dixon*, 294 F.2d at 158).

Here, as the Court previously explained, ECFMG is a "quasi-public" private organization because it "exercises significant authority in areas of public concern," *Prof'l Massage Training*

---

[2] When dealing with constitutional due process claims, Pennsylvania courts apply the familiar balancing test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to determine the amount of process due. *Id.* at 335; s*ee, e.g.*, *Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018). But the few Pennsylvania cases to address common law due process claims have not employed the *Matthews v. Eldridge* framework. *See, e.g.*, *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585. Instead, those cases have employed a case-by-case analysis into whether the disciplined party was "given a fair hearing." *Boehm* 573 A.2d at 584. Accordingly, this Court predicts that Pennsylvania law would not require the Court to apply *Matthews v. Eldridge* here, but rather, requires the Court to evaluate whether Plaintiff was "given a fair hearing" by reference to those Pennsylvania cases that have evaluated common law due process claims, and cases concerning due process more generally. *Cf. McKeesport Hosp.*, 24 F.3d at 535 ("The requirements of common law due process are quite similar to those for constitutional due process[.]").

12

*Ctr.*, 781 F.3d at 169—namely, by certifying IMGs so that those students can pursue post-graduate medical training in the United States and ensuring the integrity of that certification process, *Tulp*, 2019 WL 1382725 at *5-6.  As such, it must "employ fair procedures when making decisions," with regard to individuals—like Plaintiff—that it subjects to disciplinary action.  *McKeesport*, 24 F.3d at 535.  Thus, ECFMG owed Plaintiff a common law duty of due process throughout the irregular behavior investigation.

The undisputed facts demonstrate that ECFMG complied with that duty.  First, its investigation and irregular behavior determination adhered to the procedural safeguards set forth in its publicly-available Policies and Procedures—specifically,

- Whereas the Policies and Procedures provide that "[i]f ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the [Credentials Committee];" here, after an investigation into USAT's Florida-based campuses revealed that Plaintiff provided false information regarding USAT's operations, ECFMG referred the issue to the Credentials Committee for a hearing;

- Whereas the Policies and Procedures provide that "the individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior;" here, on October 18, 2018, ECFMG emailed Plaintiff: a letter advising him of the irregular behavior allegations, a copy of the Policies and Procedures Regarding Irregular Behavior, and copies of the documents provided to the Credentials Committee upon which the allegations were based;

- Whereas the Policies and Procedures provide that "[t]he individual will be given an opportunity to provide written explanation and to present other relevant information;" here, in the October 18 email, ECFMG provided Plaintiff an opportunity to provide a written response to the charges of irregular behavior, and, on October 23, 2018, Plaintiff's counsel provided a written response to the allegations;

- Whereas the Policies and Procedures provide that "[t]he individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes;" here, in the same October 18 email, ECFMG informed Plaintiff of that opportunity, and, on November 28, 2018, Plaintiff was afforded the opportunity to present evidence and testimony to the Credential Committee, accompanied by counsel;

13

- Whereas the Policies and Procedures provide that the "[Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior;" here, after reviewing the documentary evidence and Plaintiff's November 28 presentation, the Credential Committee determined that Plaintiff had engaged in irregular behavior by providing false information about USAT's activities;

- Whereas the Policies and Procedures provide that "ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto;" here, on December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had determined that he engaged in irregular behavior, explained the grounds for that decision, and informed Plaintiff of the disciplinary action being taken against him;

- Whereas the Policies and Procedures provide that the "[Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed;" here, in the December 14 email, ECFMG informed Plaintiff of his ability to appeal the decision.

Thus, ECFMG followed "the procedural safeguards which [it] specifically provide[d]." *Psi Upsilon*, 591 A.2d at 759.

Second, the procedural safeguards ECFMG provided comported with "basic principles of . . . fundamental fairness" because they afforded Plaintiff both notice and an opportunity to be heard. *Id.* As to notice, ECFMG's October 18 email advised Plaintiff of the irregular behavior allegations and provided copies of the documents upon which those allegations were based, satisfying the notice requirement. *Id.*; *Boehm*, 573 A.2d at 582. As for an opportunity to be heard, ECFMG afforded Plaintiff the opportunity to provide a written response to the allegations of irregular behavior and to present oral testimony at the November 28 hearing—opportunities that Plaintiff, through his counsel, took advantage of. Accordingly, Plaintiff was provided "the opportunity to present reasons, [both] in person [and] in writing, why [ECFMG's] proposed action should not be taken," satisfying the opportunity-to-be-heard requirement. *Biliski*, 574

14

F.3d at 221.

Plaintiff arguments to the contrary are scattershot and, at times, difficult to follow.  The gist appears to be that the November 28 hearing was inadequate and therefore deprived Plaintiff of a meaningful opportunity to be heard.[3]  There are several problems with Plaintiff's position.  To start—and putting the November 28 hearing aside for now—Plaintiff was afforded an opportunity to be heard when ECFMG invited him to submit a written reply to the allegations of irregular behavior.  All that due process required here was the "opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken," *Biliski*, 574 F.3d at 220 (emphasis added).  The fact that Plaintiff was invited to present written responses to the allegations of irregular behavior puts paid to the argument that ECFMG deprived him of an opportunity to be heard.

Turning to the November 28 hearing, Plaintiff complains that the hearing was procedurally inadequate—because ECFMG allotted only twenty minutes for it, because ECFMG relied on its documentary evidence and did not present live testimony, and because ECFMG did not allow him to cross-examine witnesses.  But, as already noted, due process does not require the full panoply of procedural protections available in other proceedings.  *See Boehm*, 573 A.2d at 508 (holding due process does not require "a full-dress judicial hearing, with the right to cross-examine witnesses") (internal quotation marks omitted); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (finding due process met where petitioner "offered testimony," at "a regularly scheduled meeting" of the disciplinary body).  Here, all that ECFMG was required to provide was an opportunity for Plaintiff "to present his side of the story," *Biliski*, 574 F.3d at 220 (internal quotation marks omitted), and the November 28 hearing satisfied that requirement.

---

[3] Plaintiff neither appears to argue that ECFMG failed to adhere to the procedural safeguards set forth in the publicly-available Policies and Procedures, nor that ECFMG provided inadequate notice of the allegations against him.

SAppx0019

Lastly, Plaintiff argues that the early termination of the hearing violated his due process rights. The record demonstrates, however, that after delivering his opening statement, Plaintiff declined to provide additional evidence or testimony, and that ECFMG then terminating the hearing. Plaintiff's choice to sit on his hands, however, does not render the November 28 hearing inadequate. *Cf. Psi Upsilon*, 591 A.2d at 760 (holding disciplinary hearing did not violate due process where plaintiffs invoked privilege against self-incrimination, given pending criminal charges, and thus did not testify or present evidence). Thus, Plaintiff was given ample opportunity "to present his side of the story," *Biliski*, 574 F.3d at 220; "if [he] did not make the best use of those opportunities . . . the blame cannot be placed on [ECFMG]," *Marlboro Corp. v. Ass'n of Indep. Colls. & Sch., Inc.,* 556 F.2d 78, 82 (1st Cir. 1977).

In sum, the record demonstrates that ECFMG provided Plaintiff all the process he was due. ECFMG's motion for summary judgment on Plaintiff's common law due process claim will be granted accordingly.

June 25, 2019                                    BY THE COURT:

                                                /s/Wendy Beetlestone, J.

                                                _____
                                                **WENDY BEETLESTONE, J.**

16

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DR. ORIEN L. TULP,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **EDUCATIONAL COMMISSION FOR** | **NO.  18-5540** |
| **FOREIGN MEDICAL GRADUATES AND** | |
| **DR. WILLIAM W. PINSKY,** | |
| **Defendants.** | |

## ORDER

 **AND NOW**, this 25th day of June, 2019, upon consideration of Defendant Education

Commission for Foreign Medical Graduates' Motion for Summary Judgment (ECF No. 31), and

Plaintiff's opposition thereto (ECF No. 33), **IT IS HEREBY ORDERED** that Defendant's

Motion is **GRANTED**.

 **IT IS FURTHER ORDERED** that the Clerk of Court shall mark this case as **CLOSED**.


 **BY THE COURT:**


/S/Wendy Beetlestone, J.

_____
 **WENDY BEETLESTONE, J.**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>      Plaintiff, | CIVIL ACTION |
| v. | |
| EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>      Defendants. | NO.  18-5540 |

## OPINION

Plaintiff Dr. Orien Tulp brings this suit against Defendants Education Commission for Foreign Medical Graduates ("ECFMG") and Dr. William Pinsky (collectively "Defendants"), alleging Defendants committed various constitutional and common law torts in the course of investigating and then sanctioning Plaintiff for his role in administering an overseas medical school.  Defendants now move to dismiss Plaintiff's Complaint for failing to state a claim upon which relief can be granted.  For the reasons that follow, Defendants' motion will be granted in part and denied in part.

### I.      Background[1]

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a medical school located on the British Overseas Territory of Montserrat.  ECFMG is a private, non-profit organization based in Philadelphia that certifies foreign medical school graduates so that those students can pursue post-graduate medical training in the United States.  Without a certification from ECFMG, graduates of foreign medical schools, like USAT, cannot apply to

---

[1] The following facts come from the allegations in the Complaint and the exhibits attached thereto.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").  To the degree that Plaintiff's exhibits "contradict [his] allegations in the complaint, the exhibits control."  *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir 2018).

medical residency programs in the United States.  Pinsky is the President of ECFMG.

Plaintiff's suit is, in effect, a response to disciplinary action taken by ECFMG against Plaintiff and USAT.  In August of 2018,[2] ECFMG launched an investigation into whether USAT was operating unauthorized medical school campuses in the United States in violation of ECFMG's Policies and Procedures.  ECFMG also inquired into whether Plaintiff had engaged in "irregular behavior" by providing false information to ECFMG about USAT's activities.  As part of the investigation, ECFMG sent current and former USAT students affidavits forms, requesting information about their attendance at USAT.  The affidavit form stated that students were required to provide such information and informed students that ECFMG reserved the right to bring allegations of irregular behavior, if students failed to do so.

On November 28, 2018, ECFMG held a hearing on Plaintiff's alleged misconduct in Philadelphia, Pennsylvania.  ECFMG allotted twenty minutes for the hearing, but "[a]fter a few minutes," the hearing was cut short by ECFMG's counsel.  Plaintiff was not permitted to present testimony or evidence concerning the alleged misconduct.

On December 14, 2018, ECFMG informed Plaintiff that it had completed its investigation.  ECFMG concluded that USAT was operating unauthorized branch campuses within the United States, in violation of ECFMG's Policies and Procedures.  In addition, ECFMG concluded that Plaintiff had provided false information to ECFMG regarding USAT's students' attendance at the Montserrat campus, also in violation of its Policies and Procedures. As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1) refusing, for a minimum of five years, to accept any documents signed and/or certified by Plaintiff for ECFMG on behalf of USAT; (2) adding to ECFMG's Sponsor Note for USAT in the

---

[2] The complaint alleges that ECFMG informed Plaintiff of the investigation on October 18, 2018.  However, an exhibit attached to the complaint indicates that ECFMG informed Plaintiff of the investigation as early as August 21, 2018.

SAppx0023

*World Directory of Medical Schools* a notice that USAT students and graduates would be subject
to enhanced vetting procedures; and, (3) deciding that USAT students with a graduation year of
2019 and later would no longer be eligible to apply for ECFMG certification.  Because students
are no longer able to pursue ECFMG certification, the sanctions effectively closed USAT.

In his suit, Plaintiff alleges that Defendants' conduct constituted constitutional and
common law torts.  Although the Complaint is not entirely clear, read broadly it alleges: (1)
common law tortious interference with contract against ECFMG; (2) a claim pursuant to 42
U.S.C. § 1983 against ECFMG for violating Plaintiff's procedural due process rights as protected
by the Fourteenth Amendment; (3) violation of common law due process against ECFMG; (4)
common law fraud against ECFMG; (5) common law abuse of process against ECFMG; (6)
common law negligent misrepresentation against ECFMG; and, (7) a claim pursuant to 42
U.S.C. § 1983 against both Defendants for violating Plaintiff's procedural and substantive due
process rights as protected by the Fourteenth Amendment.

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim
has facial plausibility when the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "Threadbare"
recitations of the elements of a claim supported only by "conclusory statements" will not suffice.
*Id.* at 683.  Rather, a plaintiff must allege some facts to raise the allegation above the level of
mere speculation.  *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176
(3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555).  When analyzing a motion to dismiss, the

3

Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 211.

Where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

## III.    Discussion

### A.  Constitutional Claims

Plaintiff alleges that Defendants' investigation and disciplinary action violated both his substantive and procedural due process rights as protected by the Fourteenth Amendment to the United States Constitution.[3]

To maintain a Section 1983 claim, Plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue;

---

[3] In passing, Plaintiff avers that Defendants also violated the due process clause of the Pennsylvania Constitution. Pennsylvania law "generally treat[s] the Due Process Clause of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution as coextensive." *Com. v. Moto*, 23 A.3d 989, 1002 (Pa. 2011). Further, Pennsylvania law tracks federal law in holding that "the due process clause applies only to state action and not to private conduct." *Rosenberg v. Holy Redeemer Hosp.*, 506 A.2d 408, 410 (Pa. Super. 1986) (citing *Adler v. Montefiore Hosp. Ass'n of W. Pa.*, 311 A.2d 634, 639 (Pa. 1973)). Accordingly, to the degree that Plaintiff's claims are premised on Defendants' violation of due process rights protected by the Pennsylvania Constitution, those claims fail to state a claim upon which relief can be granted because, as discussed below, Defendants' conduct did not constitute state action.

4

there is no liability under Section 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).[4]  Plaintiff's constitutional claims fail because the Complaint does not contain sufficient factual allegations from which the Court can conclude that Defendants' conduct constituted state action

Plaintiff's state action argument is two-fold.  First, Plaintiff argues that ECFMG, despite its private character, is actually a governmental organization such that any action ECFMG takes constitutes state action.  Second, Plaintiff argues that, even if ECFMG really is a private entity, ECFMG's investigation and disciplinary proceedings constituted state action that deprived Plaintiff of his constitutional rights.[5]  Neither argument is availing.

First, Plaintiff has failed to establish that, despite its private character, ECFMG is in actuality a state actor.  "The nominally private character" of an entity may be "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings" such that "there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  Other courts to address the issue—including the Third Circuit, albeit in a non-precedential decision—have consistently held that ECFMG is not a state actor. *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (finding that as a "private not-for-profit organization," ECFMG is a "private part[y] and not [a]

---

[4] "[I]f defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, that conduct is also action under color of state law and will support a suit under § 1983." *West*, 487 U.S. at 48 (internal quotation marks omitted).  Accordingly, the "under color of state law" inquiry under Section 1983 and the "state action" requirement under the Fourteenth Amendment are "identical in most contexts" and "[f]or convenience [the Court] will use the terms interchangeably." *Groman*, 47 F.3d at 639 n.15.

[5] Whether ECFMG is a state actor or undertook state action dictates whether Pinsky, as President of ECFMG, is a state actor or undertook state action. *See Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (dismissing claim against employee of ECFMG on grounds that ECFMG was not a state actor); *see West*, 487 U.S. at 50 ("[S]tate employment is generally sufficient to render the defendant a state actor").

5

state actor[]"); *Thomas v. NBME-Nat'l Bd. of Med. Examiners*, 2015 WL 667077, at *4 (E.D. Pa.

Feb. 13, 2015) ("Because . . . ECFMG is [not] a state actor, Plaintiff cannot prevail on this

[constitutional claim]"); *Staudinger v. Educ. Comm'n for Foreign Med. Graduates*, 1993 WL

138954, at *2 (S.D.N.Y. Apr. 28, 1993) (concluding ECFMG is not a state actor).

 While state medical boards rely on ECFMG's certification of foreign medical graduates

in determining whether to permit such graduates to begin the medical certification process in the

United States, it does not follow that these state entities are so entwined in the "composition and

workings" of ECFMG to transform ECFMG into a state actor. *Brentwood Acad.*, 531 U.S. at

298. Plaintiff does not allege, for example, that ECFMG is managed by public institutions or

officials; nor does he allege that ECFMG is publicly financed; nor does he allege that ECFMG's

standards are set by public institutions or officials. *McKeesport Hosp. v. Accreditation Council

for Graduate Med. Educ.*, 24 F.3d 519, 525 (3d Cir. 1994) (finding the Accreditation Council for

Graduate Medical Education was not a state actor because the organization was "self-governed

and financed, and its standards are independently set"). Thus, Plaintiff has failed to allege

sufficient facts to warrant a conclusion that ECFMG, despite its private character, is a state actor.

 Second, Plaintiff has failed to establish that the specific actions complained of—namely,

ECFMG's investigation and disciplinary action—constituted state action. Where "the actors are

not state or municipal officials, but are private individuals or associations . . . their activity can

nevertheless be deemed to be under color of [state] law." *Groman*, 47 F.3d at 638. The Supreme

Court has identified several "tests" for when private action constitutes state action. *P.R.B.A.

Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 224 (3d Cir. 2015). Thus, private action may

transform into state action when: "the private party has acted with the help of or in concert with

state officials," "the private party has been delegated a power traditionally exclusively reserved

SAppx0027

to the State," or "there is a sufficiently close nexus between the State and the challenged action

of the private entity so that the action of the latter may fairly be treated as that of the State itself."

*McKeesport*, 24 F.3d at 525 (internal citations and quotations omitted).  The Complaint does not

contain sufficient factual allegations to establish that ECFMG's conduct constituted state action

under any of the applicable tests.

      First, there are no allegations that Defendants acted with the help of or in concert with

state actors during the investigation and disciplinary proceedings.  "Private persons, jointly

engaged with state officials in the challenged action," act under color of state law for purposes of

Section 1983 claims.  *Dennis v. Sparks*, 449 U.S. 24, 28 (1980).  State officials must provide

"overt, significant assistance," to transform private action into state action.  *McKeesport*, 24 F.3d

at 525; *Opoku*, 574 F. App'x at 201 (noting that Section 1983 "[l]iability would only attach if

[ECFMG] conspired with a state actor").  The Complaint, however, contains no allegations that

Defendants acted jointly with state officials; indeed, it does not allege that any state actor was

involved in investigating the allegations of misconduct or participating in the November 28

hearing.  Notably, no public officials were named as defendants in the action.  *Flagg Bros., Inc.

v. Brooks*, 436 U.S. 149, 157 (1978).

      Second, ECFMG's investigation and sanctions are not functions "traditionally

exclusively reserved to the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).  The

public function test covers only a narrow band of private action because "[w]hile many functions

have been traditionally performed by governments, very few have been 'exclusively reserved by

the State.'"  *Flagg Bros.*, 436 U.S. at 158; *see, e.g.*, *Terry v. Adams*, 345 U.S. 461, 470 (1953)

(holding that running an election is a public function that has been traditionally the exclusive

prerogative of the State).  Because "[t]he evaluation and accreditation of medical education in

7

this country is neither a traditional nor an exclusive state function," investigating and sanctioning foreign medical schools are not public functions "traditionally exclusively reserved to the State." *McKeesport*, 24 F.3d at 525.

Finally, no nexus is alleged between ECFMG and a state actor such that ECFMG's action may fairly be treated as that of the State itself. "The connection between the state and a specific decision of a private entity"—such as ECFMG's decision to investigate and then discipline Plaintiff—"may render that decision chargeable to the state . . . only 'when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private decision] must in law be deemed that of the State.'" *Id.* at 525 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "'[M]ere approval of or acquiescence' in the decision is not enough." *Id.* (quoting *Blum*, 457 U.S. at 1004). In *McKeesport*, for example, a hospital argued that a decision of the Accreditation Council for Graduate Medical Education ("ACGME") to withdraw the hospital's accreditation constituted state action because the Pennsylvania State Board of Medicine withdrew its accreditation based on ACGME's decision. *Id.* The Third Circuit held that ACGME's decision was not state action because no state actor "control[led] or regulate[d] the ACGME's standard-setting or decision-making process." *Id.* "That the [Board of Medicine] base[d] its approval of medical residency programs on ACGME accreditation d[id] not turn the ACGME's decisions into state action." *Id.* at 525-26.

The same reasoning applies with equal force to ECFMG's decision to investigate and sanction Plaintiff. There are no allegations that a state actor controlled or regulated ECFMG's standard-setting or decision-making process; indeed, Plaintiff's claim is that ECFMG sanctioned him for failing to comply with ECFMG's internal policies. Further, that state medical boards base their approval of foreign medical graduates on ECFMG's certification does not turn

8

ECFMG's decision into state action.  Thus, Defendant's motion to dismiss Plaintiff's Section 1983 claims will be granted.

### B.  Common Law Claims

The Complaint contains sufficient factual allegations to support a claim that ECFMG violated a common law duty of due process owed to Plaintiff. [6]  However, Plaintiff's claims for common law fraud, negligent misrepresentation, abuse of process, and tortious interference with contract will be dismissed.[7]

### 1.  Common Law Due Process Claim

Pennsylvania law recognizes that, in disciplinary proceedings, certain private organizations owe a limited common law duty of due process to those subject to disciplinary action. *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973) ("[J]udicial interference in the affairs of private associations . . . is appropriate only under limited circumstances").  An example is *Psi Upsilon of Philadelphia v. University of Pennsylvania*, 591 A.2d 755 (Pa. Super. 1991), where a group of college students challenged the University of Pennsylvania's disciplinary action against them on the grounds that it violated due process.  *Id.* at 758.  The Pennsylvania Superior Court noted that, because the University was a private institution, "'students who [were] being disciplined [were] entitled only to those procedural safeguards which the school specifically provides.'"  *Id.* (quoting *Boehm v. Univ. of Pa. School of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990)).  Nevertheless, those "disciplinary procedures established by the institution must be fundamentally fair,"

---

[6] That ECFMG is not a state actor does not doom Plaintiff's common law due process claim because "unlike [a] constitutional due process cause of action, the common law due process cause of action has no state action requirement."  *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in judgment).

[7] Plaintiff suggests in passing that ECFMG violated the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g.  To the degree that Plaintiff seeks to recover for ECFMG's alleged breach of FERPA, that claim fails because FERPA does not provide a private cause of action.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).

SAppx0030

acknowledging that the University owed a general, common law duty of due process to the students subject to disciplinary action.  *Id.*

Beyond the private university context, "[m]any courts have [also] recognized a state or common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *McKeesport*, 24 F.3d at 534-35 (Becker, J., concurring in the judgment) (collecting cases).  The duty "operate[s] as 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'"  *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)).  Because such "quasi-public" organizations "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight."  *Id.*  In line with those decisions, the Pennsylvania Supreme Court, in *School District of City of Harrisburg*, indicated that Pennsylvania law recognizes a common law duty owed by private organizations to prospective members, where the private organization serves a public function.  309 A.2d at 357 n.3 (citing approvingly a New Jersey Supreme Court case, *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791, 800 (N.J. 1961), which held that a private medical association owed a common law duty to a prospective member because the organization served a public function).

Reading the Complaint in the light most favorable to the Plaintiff it contains sufficient factual allegations to plausibly conclude that ECMFG serves a public function by certifying foreign medical school graduates so that those students can pursue post-graduate medical training in the United States and investigating the foreign medical schools that those students

10

attend. *Cf. Falcone*, 170 A.2d at 800. In furtherance of that public function, ECFMG disciplines individuals affiliated with foreign medical schools, like Plaintiff, that run afoul of ECFMG's Policies and Procedures. Thus, ECFMG—like professional membership organizations and accreditation associations—is a "quasi-public" private organization because it "exercises significant authority in areas of public concern." *Prof'l Massage Training Ctr*, 781 F.3d at 169. As such, it must "employ fair procedures when making decisions," *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in the judgment), with regard to individuals—like Plaintiff—that are subject to ECFMG disciplinary action. Put differently, the Court predicts that the Pennsylvania Supreme Court would hold that ECFMG owes a common law duty of due process to Plaintiff.

The next question is what such a duty entails, and correspondingly whether ECFMG's conduct at the November 28, 2018 hearing breached that duty. Although Pennsylvania courts have not fully fleshed out the contours of the common law due process duty, in *Psi Upsilon*, the Pennsylvania Superior Court indicated that "basic principles of due process and fundamental fairness were adhered to where" the disciplined party was afforded "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where plaintiff "had notice and an opportunity to be heard"); *cf. School District of City of Harrisburg*, 309 A.2d at 358 (holding due process met where disciplined party "was afforded notice of the action taken against it and has availed itself of the opportunity to be heard"). Accordingly, the Court predicts that the Pennsylvania Supreme Court would hold that common law due process required ECMFG to afford Plaintiff notice of the disciplinary action and an opportunity to be heard.

The Complaint contains sufficient factual allegations to make out a viable claim that ECFMG did not provide Plaintiff an opportunity to be heard before taking disciplinary action

SAppx0032

against him.  The Complaint alleges that ECFMG allotted twenty minutes to the disciplinary

hearing, but that "[a]fter a few minutes," ECFMG's counsel unilaterally terminated the hearing

before Plaintiff could present testimony or evidence.  When construed in the light most favorable

to the Plaintiff, the Complaint plausibly alleges that ECMFG deviated from "basic principles of

due process and fundamental fairness" by ending the hearing before allowing Plaintiff an

opportunity to present his side of the story.  *Cf. Psi Upsilon*, 591 A.2d at 759 (finding disciplined

parties afforded an opportunity to be heard where they "were afforded the opportunity to present

evidence . . . cross-examine all witnesses[, and] gave closing arguments").  Accordingly, the

Complaint adequately states a claim that ECFMG's conduct at the November 29, 2018 hearing

breached a common law duty of due process owed to Plaintiff because ECFMG did not "employ

fair procedures" before subjecting Plaintiff to disciplinary action.

### 2.  Fraud

To maintain a common law fraud claim, Plaintiff must establish: (1) ECFMG made a

representation; (2) which was material to the transaction at hand; (3) falsely, with knowledge of

its falsity or recklessness as to whether it was true or false; (4) with the intent of misleading

Plaintiff into relying on it; (5) Plaintiff justifiably relied on the misrepresentation; and, (6) the

resulting injury was proximately caused by the reliance.  *Gibbs v. Ernst,* 647 A.2d 882, 889 (Pa.

1994).  Plaintiff alleges that ECFMG engaged in fraudulent conduct by (1) holding itself out as a

government agency in the affidavit form it sent to USAT students, and (2) placing misleading

information about USAT in ECFMG's Sponsor Note in the *World Directory of Medical Schools*.

Neither allegation plausibly supports a claim for fraud.

First, with respect to the affidavit form, Plaintiff does not specify where ECFMG holds

itself out as a governmental agency, and the Court, on its own review, finds no such

SAppx0033

representation.[8]  As for the Sponsor Note's statement that USAT students and graduates would

be subject to enhanced vetting procedures, Plaintiff again fails to identify any falsity in that

statement.  While Plaintiff contests ECFMG's decision to subject USAT students to enhanced

vetting procedures, there is no allegation that ECFMG's statement in the *World Directory of

Medical Schools* is in any way untrue.  Thus, Plaintiff fails to identify any false representation

made by ECFMG that would support a fraud claim.

Plaintiff's fraud claim also fails on the reliance prong because the Complaint contains no

allegations that Plaintiff relied on a representation from ECFMG to his detriment.  Instead,

Plaintiff alleges that non-parties relied on ECFMG's purportedly false statements, but Plaintiff

can not maintain a claim for fraud based on others' reliance.  *Klemow v. Time Inc.*, 352 A.2d 12,

16 n.17 (Pa. 1976) ("The successful maintenance of a cause of action for fraud includes, inter

alia, a showing that *the plaintiff* acted in reliance on the defendant's misrepresentations.")

(emphasis added); *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa.

2009) (same).  Thus, Plaintiff's fraud claim will also be dismissed because Plaintiff fails to

allege that he relied on ECFMG's purportedly false statements to his detriment.

### 3.  Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim suffers from the same faults as his fraud

claim.  To bring a claim for negligent representation, Plaintiff must establish: (1) ECFMG made

a misrepresentation of a material fact; (2) that ECFMG knew or should have known that the

misrepresentation was false; (3) ECFMG intended the representation to induce Plaintiff to act on

it; and (4) Plaintiff was injured by acting in justifiable reliance on the misrepresentation.  *Gibbs*,

647 A.2d at 890.  As the Pennsylvania Supreme Court has explained, "negligent

misrepresentation differs from intentional misrepresentation"—that is, fraud—"in that to commit

---

[8] A copy of both the affidavit form and the Sponsor Note were attached to Plaintiff's compliant.

13

the former, the speaker need not know his or her words are untrue, but must have failed to make

reasonable investigation of the truth of those words." *Id.*

Plaintiff's negligent misrepresentation claim, like his fraud claim, fails because the

Complaint fails to identify any false representations made by ECFMG and does not allege that

Plaintiff, as opposed to some other party, relied on those purportedly false representations.

### 4.    Abuse of Process

To maintain his abuse of process claim, Plaintiff must allege facts that plausibly establish

ECFMG: (1) used a legal process against him; (2) primarily to accomplish a purpose for which

the process was not designed; and, (3) harm was caused to Plaintiff. *Shiner v. Moriarty*, 706

A.2d 1228, 1236 (Pa. Super. 1998). As the Pennsylvania Supreme Court has explained "[t]he

gist of an action for abuse of process is the improper use of process after it has been issued, that

is, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987). Thus, "there is no

liability where the defendant has done nothing more than carry out the process to its authorized

conclusion, even though with bad intentions." *Hart v. O'Malley*, 647 A.2d 542, 171 (Pa. Super.

1994) (internal quotation marks omitted).

Plaintiff contends that ECFMG engaged in abusive process by sending affidavit forms to

USAT students in order to gather information about Plaintiff's alleged irregular behavior, and

that the forms intimidated students into not attending USAT. Those allegations, however, are

not sufficient to support an abuse of process claim. For one, "[n]either correspondence nor an

affidavit is legal process." *Rockman v. Aciukewicz*, 2014 WL 10937492, at*6 (Pa. Super. Apr. 1,

2014). Second, even if sending affidavit forms constituted use of legal process, Plaintiff fails to

allege ECFMG abused that legal process because, according to Plaintiff, ECFMG used the forms

to gather information about USAT students, which is the purpose for which the process was

14

designed. *See Affidavit*, Black's Law Dictionary (10th ed. 2014) ("A voluntary declaration of facts written down and sworn to by a declarant . . . before an officer authorized to administer oaths"). Even crediting Plaintiff's allegation that the affidavit forms were designed to intimidate USAT students, Plaintiff has failed to state a claim because liability cannot be premised on ECFMG's bad intentions. *Hart*, 647 A.2d at 171.

Defendants' motion to dismiss Plaintiff's abuse of process claim will be granted because Plaintiff has failed to allege facts sufficient to establish a plausible claim for relief.

### 5. Tortious Interference with Contract

Finally, Plaintiff seeks to recover on a claim of tortious interference with contract. To prevail on the claim, Plaintiff must establish: (1) the existence of a contractual or prospective contractual or economic relationship between Plaintiff and a third party; (2) purposeful action by ECFMG specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of ECFMG; and, (4) legal damage to Plaintiff as a result of ECFMG's conduct. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Plaintiff alleges ECFMG's investigation and sanctions harmed his contractual relations with current and prospective USAT students.[9]

Plaintiff's tortious interreference claim fails because he has not adequately alleged that ECFMG lacked a justification for interfering with Plaintiff's existing and prospective contractual relations. Under Pennsylvania law, the absence of a privilege or justification "is not an affirmative defense, rather . . . an element of the cause of action which must be pleaded and proven by the plaintiff." *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122-23 (Pa. Super. 1974).

---

[9] Plaintiff alleges that USAT students contracted with him directly, rather than with the school, an allegation that, at this point, the Court must take as true.

SAppx0036

Because "in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff," in determining whether a privilege or justification exists "a line must be drawn and the interests evaluated."  *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971).  Although "not susceptible of precise definition," *id.*, Pennsylvania courts make the justification determination in accordance with the factors listed in Section 767 of the Restatement of Torts:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

*Phillips v. Selig*, 959 A.2d 420, 429-30 (Pa. Super. 2008) (quoting Restatement (Second) of Torts § 767).  The gravamen of the inquiry is whether "the defendant's actions were improper under the circumstances presented."  *Id.*

Here, ECFMG's interest in investigating Plaintiff's purported failure to comply with the organization's Policies and Procedures outweighs Plaintiff's alleged contractual interest with current and prospective USAT students.  "[A]ction is not improper when the interference in contractual relations fosters a social interest of greater public import than is the social interest invaded."  *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3d Cir. 1988) (internal quotation marks omitted).  In *Brownsville*, the Third Circuit held that a nursing home operator could not bring a claim for tortious interference with contractual relations against defendants that caused the operator to lose its license, on the grounds that "there can be no impropriety in pursuing administrative actions which cause the loss of license or certification of a facility which has been adjudged to have been in serious violation of its statutory and regulatory obligations."  *Id.*

16

The Third Circuit's reasoning in *Brownsville* dictates the same outcome here. ECFMG's interest in ensuring the proper certification of foreign medical graduates "fosters a social interest of greater public import than" Plaintiff's interest in freedom of contract. And while Plaintiff may challenge the grounds of ECFMG's decision to impose sanctions against him, "administrative actions which cause[d] [USAT's] loss of license or certification" cannot be the grounds for liability. *Id*. Indeed, Plaintiff cites no authority that holds a party may recover on a tortious interference with contract claim for failing to abide by the regulations of a professional organization or accrediting agency. *See Brownsville*, 839 F.2d at 159 ("[Defendant] cites absolutely no authority in Pennsylvania or elsewhere that holds that action designed to bring a facility's noncompliance with applicable regulations to the attention of the appropriate authorities and to stimulate public interest in the matter can be the basis for a damage action.").

Thus, ECFMG's interest in regulating foreign medical graduates justifies its interference in Plaintiff's contractual relations with USAT students. Crediting Plaintiff's factual allegations, ECFMG's conduct was not "improper under the circumstances presented." *Phillips*, 959 A.2d at 429. Accordingly, Plaintiff's tortious interference claim fails because it does not adequately plead an absence of privilege or justification on the part of ECFMG.

An appropriate order follows.


**May 26, 2019**                                    **BY THE COURT:**


                                                    **/s/ Wendy Beetlestone**
                                                    _____
                                                    **WENDY BEETLESTONE, J.**


17

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. ORIEN L. TULP,                                    CIVIL ACTION
         **Plaintiff,**

    **v.**

EDUCATIONAL COMMISSION FOR                            NO.  18-5540
FOREIGN MEDICAL GRADUATES AND
DR. WILLIAM W. PINSKY,
         **Defendants.**

## ORDER

    **AND NOW**, this 26th day of March, 2019, upon consideration of Defendants' Motion to

Dismiss and support thereof (ECF Nos. 20 & 25), and Plaintiff's Response in Opposition thereto

(ECF No. 24), it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN**

**PART AND DENIED IN PART**, as follows:

    1.  Defendants' Motion to Dismiss Plaintiff's common law due process claim against

        ECFMG is **DENIED**;

    2.  Defendants' Motion to Dismiss the remainder of Plaintiff's claims against

        Defendants is **GRANTED**.  Such claims are **DISMISSED WITHOUT**

        **PREJUDICE**.


                **BY THE COURT:**


                /s/ Wendy Beetlestone

                _____

                **WENDY BEETLESTONE, J.**