No. 19-2706

# In The United States Court Of Appeals For The Third Circuit

### DR. ORIEN L. TULP,

*Plaintiff - Appellant*,

v.

### EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES et al.,

*Defendants - Appellees*.

On Appeal from the Order and Judgment Entered by the United States District Court for the Eastern District of Pennsylvania, No. 2:18-cv-05540-WB

## SUPPLEMENTAL APPENDIX
## (Volume II of III, pages SAppx0040-0510)

Elisa P. McEnroe
Matthew D. Klayman
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5917
F. 215.963.5001

*Attorneys for Appellees Educational Commission for Foreign Medical Graduates and Dr. William Pinsky*

# TABLE OF CONTENTS FOR SUPPLEMENTAL APPENDIX

**Page**

Notice of Appeal, filed July 23, 2019 ..................................................... SAppx0001

Memorandum Opinion and Order, filed June 25, 2019 .......................... SAppx0005

Memorandum Opinion and Order, filed March 26, 2019 ....................... SAppx0022

District Court Docket Entries for 18-cv-05540-WB ............................. SAppx0040

Complaint, filed December 24, 2018 ..................................................... SAppx0045

Defendants' Motion to Dismiss, filed January 22, 2019 ....................... SAppx0080

    Defendants' Memorandum of Law and Proposed Order ............. SAppx0082

Plaintiff's Answer to Defendants' Motion to Dismiss and Proposed Order, filed February 14, 2019 ........................................................................ SAppx0110

Defendants' Reply in Support of Motion to Dismiss, filed February 21, 2019 ...................................................................................................... SAppx0130

Defendant's Answer to Complaint, filed April 9, 2019 ......................... SAppx0145

Defendant Educational Commission for Foreign Medical Graduates' Motion for Summary Judgment,  filed May 3, 2019 ................................. SAppx0166

    Defendant's Memorandum of Law and Proposed Order ............. SAppx0168

    Statement of Undisputed Material Facts ..................................... SAppx0198

    Joint Appendix ............................................................................ SAppx0226

Plaintiff's Answer to Motion for Summary Judgment and Proposed Order, filed June 3, 2019 ................................................................................. SAppx0780

    Statement of Disputed Material Facts ......................................... SAppx0797

    Plaintiff's Appendix .................................................................... SAppx0800

Defendant's Reply in Support of Motion for Summary Judgment, filed June 20, 2019 ...................................................................................... SAppx0954

    Reply Statement of Undisputed Material Facts ........................... SAppx0968

    Supplement to Joint Appendix ................................................... SAppx0975

Scheduling Order, filed January 25, 2019 ............................................ SAppx0982

CLOSED,APPEAL,SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:18-cv-05540-WB

TULP v. EDUCATIONAL COMMISSION FOR FOREIGN
MEDICAL GRADUATES et al
Assigned to: HONORABLE WENDY BEETLESTONE
related Case: 2:19-cv-02779-WB
Case in other court: USCA, 19-02706
Cause: 28:1332 Diversity-Other Contract

Date Filed: 12/24/2018
Date Terminated: 06/25/2019
Jury Demand: Plaintiff
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**DR. ORIEN L. TULP**
*PRESIDENT OF THE UNIVERSITY OF
SCIENCE, ARTS, AND TECHNOLOGY*

represented by **TOMMY SWATE**
403 WILD PLUM
HOUSTON, TX 77013
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**WILLIAM C. REIL**
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES**

represented by **ELISA P. MCENROE**
MORGAN LEWIS BOCKIUS LLP
1701 MARKET ST
PHILADELPHIA, PA 19103-2921
215-963-5917
Email: emcenroe@morganlewis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW DANIEL KLAYMAN**
MORGAN, LEWIS & BOCKIUS LLP
1701 MARKET STREET
PHILADELPHIA, PA 19103
215-963-5000
Fax: 215-963-5001
Email:
matthew.klayman@morganlewis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**DR. WILLIAM W. PINSKY**
*PRESIDENT AND CEO EDUCATIONAL*
*COMMISSION FOR FOREIGN MEDICAL*
*GRADUATES*

represented by **ELISA P. MCENROE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW DANIEL KLAYMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/24/2018 | 1 | COMPLAINT against EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY ( Filing fee $ 400 receipt number 189872.), filed by ORIEN L. TULP. (Attachments: # 1 Civil Cover Sheets)(ahf) (Entered: 12/26/2018) |
| 12/24/2018 | | Summons Issued as to EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. 2 Forwarded To: Counsel on 12/26/2018 (ahf) (Entered: 12/26/2018) |
| 12/24/2018 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 by ORIEN L. TULP.(ahf) (Entered: 12/26/2018) |
| 12/24/2018 | | DEMAND for Trial by Jury by ORIEN L. TULP. (ahf) (Entered: 12/26/2018) |
| 01/02/2019 | 3 | First MOTION for Permanent Injunction , First MOTION for Preliminary Injunction filed by ORIEN L. TULP.Memorandum of Law. (Attachments: # 1 Text of Proposed Order Order, # 2 Memorandum Memo of Law)(REIL, WILLIAM) (Entered: 01/02/2019) |
| 01/03/2019 | 4 | SUMMONS Returned Executed by ORIEN L. TULP re: James Davis served Summons and Complaint upon EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY by Personal Service. EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES served on 1/2/2019, answer due 1/23/2019; WILLIAM W. PINSKY served on 1/2/2019, answer due 1/23/2019. (fdc, ) (Entered: 01/03/2019) |
| 01/03/2019 | 5 | Praecipe to Attach Certificate of Service by ORIEN L. TULP. (Attachments: # 1 Memorandum, # 2 Certificate of Service Cert of Service)(REIL, WILLIAM) (Entered: 01/03/2019) |
| 01/03/2019 | 6 | APPLICATION for Admission Pro Hac Vice of Tommy Swate by ORIEN L. TULP.. (REIL, WILLIAM) (Entered: 01/03/2019) |
| 01/04/2019 | 7 | AMENDED DOCUMENT by ORIEN L. TULP. Amendment to 6 Application for Admission Pro Hac Vice . (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(REIL, WILLIAM) (Entered: 01/04/2019) |
| 01/04/2019 | 8 | ORDER THAT THE APPLICATION OF TOMMY SWATE, ESQ. TO PRACTICE IN THIS COURT PURSUANT TO LRCP 83.5.2(B) IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/4/19. 1/4/19 ENTERED AND COPIES MAILED AND E-MAILED. COPIES MAILED TO UNREPS. ECF APPLICATION MAILED TO SWATE. (fdc) (Entered: 01/04/2019) |
| 01/04/2019 | 9 | ORDER THAT A HEARING ON PLAINTIFF'S FIRST MOTION FOR PERMANENT INJUNCTION (ECF # 3 ) SHALL TAKE PLACE ON FRIDAY, 1/11/2019 AT 10:00 AM IN COURTROOM 3B OF 601 MARKET STREET, PHILADELPHIA, PA 19106. SIGNED BY HONORABLE WENDY BEETLESTONE ON 01/04/2019. 01/04/2019 |

SAppx0041

| | | |
|---|---|---|
| | | ENTERED AND COPIES MAILED, E-MAILED.(nd, ) Modified on 1/4/2019 (nd, ). (Entered: 01/04/2019) |
| 01/04/2019 | [10](#) | AFFIDAVIT of Service by Theresa DeTommaso re: served Summons & Complaint upon Educational Commission for Foreign Medical Graduates, Dr. William W. Pinsky by Personal Service on 12/31/18. (fdc) (Entered: 01/07/2019) |
| 01/08/2019 | [11](#) | NOTICE of Appearance by ELISA P. MCENROE on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY with Certificate of Service(MCENROE, ELISA) (Entered: 01/08/2019) |
| 01/10/2019 | [12](#) | RESPONSE in Opposition re [3](#) First MOTION for Permanent Injunction First MOTION for Preliminary Injunction *with Certificate of Service* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (Attachments: # [1](#) Text of Proposed Order Proposed Order, # [2](#) Exhibit Exhibit 1, # [3](#) Exhibit Exhibit 2, # [4](#) Exhibit Exhibit 3, # [5](#) Exhibit Exhibit 4, # [6](#) Exhibit Exhibit 5, # [7](#) Exhibit Exhibit 6, # [8](#) Exhibit Exhibit 7, # [9](#) Exhibit Exhibit 8, # [10](#) Exhibit Exhibit 9, # [11](#) Exhibit Exhibit 10, # [12](#) Exhibit Exhibit 11, # [13](#) Exhibit Exhibit 12, # [14](#) Exhibit Exhibit 13, # [15](#) Exhibit Exhibit 14, # [16](#) Exhibit Exhibit 15, # [17](#) Exhibit Exhibit 16)(MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | [13](#) | MOTION to Quash *Subpoena for the Appearance of Dr. William W. Pinsky* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY.Memorandum, Declaration, Certificate of Service. (Attachments: # [1](#) Memorandum of Law, # [2](#) Text of Proposed Order, # [3](#) Exhibit A, # [4](#) Exhibit B, # [5](#) Exhibit C, # [6](#) Exhibit D, # [7](#) Exhibit E)(MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | [14](#) | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | [15](#) | AFFIDAVIT of Service by National Association of Professional Process Servers re: served Praecipe to Attach upon Education Commission for Foreign Medical Graduates, Dr. William W. Pinsky by Personal Service on 1/4/19 (fdc, ) (Entered: 01/10/2019) |
| 01/10/2019 | 16 | NOTICE OF RESCHEDULED HEARING ON PRELIMINARY INJUNCTION - HEARING HAS BEEN RESCHEDULED UNTIL THURSDAY, JANUARY 24, 2019 AT 2:00 P.M. IN COURTROOM 3B. PLEASE MAKE NOTE OF THIS CHANGE IN DATE AND TIME. THANK YOU. (amw, ) (Entered: 01/10/2019) |
| 01/10/2019 | [17](#) | NOTICE of Appearance by MATTHEW DANIEL KLAYMAN on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY with Certificate of Service(KLAYMAN, MATTHEW) (Entered: 01/10/2019) |
| 01/15/2019 | [18](#) | NOTICE OF CONFERENCE FOLLOWING HEARING: PRETRIAL CONFERENCE SET FOR 1/24/2019 04:00 PM FOLLOWING SCHEDULED PRELIMINARY INJUNCTION HEARING IN COURTROOM 3B BEFORE HONORABLE WENDY BEETLESTONE. (Attachments: # [1](#) Electronic Discovery Order, # [2](#) Joint Report of Rule 26(f) Meeting and Proposed Discovery Plan)(amw, ) (Entered: 01/15/2019) |
| 01/18/2019 | [19](#) | Report Of *Rule 26(f) Meeting and Proposed Discovery Plan* by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (KLAYMAN, MATTHEW) (Entered: 01/18/2019) |
| 01/22/2019 | [20](#) | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY.Certificate of Service. (Attachments: # [1](#) Memorandum of Law, # [2](#) Proposed Order)(MCENROE, ELISA) (Entered: 01/22/2019) |

SAppx0042

| 01/25/2019 | 21 | SCHEDULING ORDER. ORDER THAT ALL FACT DISCOVERY IS DUE BY 4/19/19, ANY MOTIONS FOR SUMMARY JUDGMENT SHALL BE FILED BY 5/3/19. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/24/19. 1/25/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 01/25/2019) |
|---|---|---|
| 01/25/2019 | 22 | ORDER THAT PLAINTIFF'S 3 MOTION FOR A PERMANENT AND PRELIMINARY INJUNCTION IS DENIED. IT IS FURTHER ORDERED THAT DEFENDANTS' 13 MOTION TO QUASH SUBPOENA FOR THE APPEARANCE OF DR. WILLIAM W. PINSKY IS DISMISSED AS MOOT. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/24/19.1/25/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 01/25/2019) |
| 01/25/2019 | 23 | Minute Entry for proceedings held before HONORABLE WENDY BEETLESTONE. Preliminary Pretrial Conference & Injunction Hearing held on 1/24/19 Court Reporter: ESR. (fdc) (Entered: 01/28/2019) |
| 02/14/2019 | 24 | RESPONSE in Opposition re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *with Memorandum of Law, Proposed Order, and Certificate of Service* filed by ORIEN L. TULP. (REIL, WILLIAM) (Entered: 02/14/2019) |
| 02/21/2019 | 25 | REPLY to Response to Motion re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (MCENROE, ELISA) (Entered: 02/21/2019) |
| 02/25/2019 | 26 | TRANSCRIPT of Preliminary Injunction Hearing held on 1/24/19, before Judge Beetlestone. Court Reporter/Transcriber Chris Hwang. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 3/18/2019. Redacted Transcript Deadline set for 3/28/2019. Release of Transcript Restriction set for 5/28/2019. (fdc) (Entered: 02/25/2019) |
| 02/25/2019 | 27 | Notice of Filing of Official Transcript with Certificate of Service re 26 Transcript - PDF, 2/25/19 Entered and Copies Emailed and Mailed. (fdc) (Entered: 02/25/2019) |
| 03/26/2019 | 28 | MEMORANDUM AND OPINION. SIGNED BY HONORABLE WENDY BEETLESTONE ON 3/26/19. 3/26/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 03/26/2019) |
| 03/26/2019 | 29 | MEMORANDUM AND ORDER THAT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMMON LAW DUE PROCESS CLAIM AGAINST ECFMG IS DENIED; DEFENDANTS' MOTION TO DISMISS THE REMAINDER OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IS GRANTED. SUCH CLAIMS ARE DISMISSED WITHOUT PREJUDICE. SIGNED BY HONORABLE WENDY BEETLESTONE ON 3/26/19. 3/26/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 03/26/2019) |
| 04/09/2019 | 30 | ANSWER to 1 Complaint *and Affirmative Defenses* by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.(MCENROE, ELISA) (Entered: 04/09/2019) |
| 05/03/2019 | 31 | MOTION for Summary Judgment filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Proposed Order, # 3 Statement of Undisputed Material Facts, # 4 Joint Appendix)(MCENROE, ELISA) (Entered: 05/03/2019) |
| 05/17/2019 | 32 | STIPULATION AND ORDER THAT PLAINTIFF WILL RECEIVE A 10-DAY EXTENSION (UNTIL JUNE 3, 2019) OF THE DEADLINE TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 31 . SIGNED BY |

SAppx0043

| | | |
|---|---|---|
| | | HONORABLE WENDY BEETLESTONE ON 5/14/19. 5/17/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 05/17/2019) |
| 06/03/2019 | 33 | Answer to defendants' re 31 MOTION for Summary Judgment filed by ORIEN L. TULP. Memorandum of law, Statement of Disputed Facts, Certificate of service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Statement of Disputed Material Facts, # 4 Appendix-Table of Contents, # 5 Plaintiff's Appendix, # 6 Certificate of Service)(REIL, WILLIAM) Modified on 6/5/2019 (afm, ). (Entered: 06/03/2019) |
| 06/20/2019 | 34 | REPLY to Response to Motion re 31 MOTION for Summary Judgment *with Certificate of Service* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (Attachments: # 1 Reply Statement of Undisputed Material Facts, # 2 Supplement to Joint Appendix and Table of Contents)(MCENROE, ELISA) (Entered: 06/20/2019) |
| 06/25/2019 | 35 | MEMORANDUM AND OPINION. SIGNED BY HONORABLE WENDY BEETLESTONE ON 6/25/19. 6/25/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 06/25/2019) |
| 06/25/2019 | 36 | MEMORANDUM AND ORDER THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 33 IS GRANTED. IT IS FURTHER ORDERED THAT THE CLERK OF COURT SHALL MARK THIS CASE AS CLOSED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 6/25/19. 6/25/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 06/25/2019) |
| 07/23/2019 | 37 | NOTICE OF APPEAL by ORIEN L. TULP. Filing fee $ 505, receipt number 0313-13687584. Copies to Judge, Clerk USCA, Appeals Clerk and Appeal Record due by 7/25/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(REIL, WILLIAM) (Entered: 07/23/2019) |
| 07/26/2019 | 38 | NOTICE of Docketing Record on Appeal from USCA re 37 Notice of Appeal (Credit Card Payment), filed by ORIEN L. TULP. USCA Case Number 19-2706 (dmc, ) (Entered: 07/29/2019) |

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## COMPLAINT – CIVIL ACTION

## PARTIES

1.   The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO 80033. At all times material herein, plaintiff was President of the University of Science, Arts, and Technology ("USAT"), and had an ownership interest in the University. USAT is located in Montserrat, but its US administrative office is located at the address in the caption, and students take classes in Montserrat and the US via a distance education format.

2.   A defendant is the Educational Commission for Foreign Medical Graduates, hereafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their mission statement, the ECFMG is an organization which purports to certify medical school students and graduates to practice medicine in the United States.

3.    A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG, whose address for service of process is indicated in the caption. *See* Exhibit A, attached and incorporated herein.

4.    ECFMG is an organization sponsored by various medical organizations, including the Federation of State Medical Boards. Through the ECFMG's certification process, it gives medical students and medical graduates a certification of eligibility (essentially a license) to apply for a ACGME [Accreditation Council for Graduate Medical Education] certified residency program of postgraduate specialty training that can lead to medical licensure of the applicant. A residency program is a certified program that trains students who have graduated from a medical school and taken a series of examinations or tests administered by way of the United States Medical Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

5.    The action of the ECFMG is in granting authority to apply for a residency program is state action. The ECFMG's authority, which is in essence a license to apply for a residency program, has a close nexus to the various state medical boards. Without the ECFMG certificate, the ACGME postgraduate programs will not permit the applicant to start the training that will in essence allow the gate to be closed to obtaining a medical residency and eventual license to practice medicine in the USA. Without the residency training, the medical graduate cannot obtain a full unrestricted medical license. The state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure. State action is established because of this delegation of screening power. *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351.

6.    The ECFMG has placed itself in a position of interdependence with the state medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG reports to the state medical boards but also reports to the National Practitioner Data Bank. The ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority*, 365 U.S. 715, 725 (1961).

7.    Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

### <u>JURISDICTION AND VENUE</u>

8.    The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

9.    Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

## SUMMARY

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

## GENERAL ALLEGATIONS

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". *See* Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of

alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

## FIRST CAUSE OF ACTION
## Plaintiff v. ECFMG

21. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

22. This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

23. The Board allegedly refused to release scores of necessary medical exams to students and graduates of USAT, de facto, closing the University.

24. The Board published, in the World Directory of Medical Schools, a warning to students that it would not recognize USAT with respect to necessary medical qualifying examinations after January 1, 2019. *See* Exhibit B.

25. The Board sent illegal "affidavits" to students in an attempt to intimidate them from continuing as students at USAT. These alleged affidavits threatened medical students with perjury, as well as "irregular behavior", and also directed the students to provide certain documentary evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process, and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena duces tecum" without first having a legal proceeding. The Board had no power to issue these so-called affidavits. These affidavits are also a violation of Federal Education Records Protection Act (FERPA). Students are predominantly US citizens and are entitled to such protection under FERPA.

26. The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as President of the University by discouraging students from registering or continuing their education at USAT, including verbal recommendations from ECFMG case workers. The Board issued "affidavits" and threatened to find students of USAT guilty of "irregular behavior".

27. There was no hearing before the students of USAT were sent emails by the ECFMG telling them that they may have been assigned "irregular behavior" and that their scores would not be released to medical institutions to be accepted for residency applications or other ECFMG services.

28. ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity

29. As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

30. Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

32. This cause of action is for violation of due process by the ECFMG (the Board).

33. The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

34. The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination  for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

35. The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

36. The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of

affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Com., State Bd. Of Medicine* 529 Pa. 535 (1992).

37. ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

38. The Board has acted as a governmental entity, and is estopped from denying the same.

39. When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

40. Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

41. The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

42. As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

44. This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

45. As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

(a) representing itself as an official governmental agency;
(b) distributing affidavits to intimidate USAT students, which affidavits did not have a disclaimer or conform to law;
(c) placing misleading information about USAT into the World Directory of Medical Schools without notice, and which was designed to intimidate students and to effectively force closure of USAT;
(d) using illegal affidavits whose purpose was to gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp, all of which was in violation of FERPA, the Family Educational Rights and Privacy Act;
(e) violating FERPA by not receiving the requisite consent of students to their educational records.

46. As indicated in the prior counts, the Board has held itself out as a governmental agency. The Board has never indicated to those that it dealt with, in particular the students, that it is not an official governmental agency.

47. Accordingly, the Board is estopped by its conduct to deny that it is required to show due process, as if it were a governmental entity.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

49. This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky, which is attached and incorporated as Exhibit A.

50. Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG, heretofore described.

51. On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing him as Professor and President of USAT at its main location in Montserrat.

52. In this letter, Dr. Pinsky indicated, *inter alia*, essentially, that the ECFMG Committee had determined that, for a minimum period of five years, from the date of the letter, that Dr. Tulp was banned from submitting any documents or having any dealings with the ECFMG on behalf of USAT or otherwise.

53. This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

54. This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

55. This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

56. Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

57. The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

58. The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

(a) banning Dr. Tulp without a proper hearing;
(b) banning Dr. Tulp without an evidentiary basis;
(c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
(d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
(e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
(f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
FOR: Tommy Swate, Esquire
Attorneys for Plaintiff
File I.D. No. WCR1962
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

December 24, 2018

# EXHIBIT A



ECFMG®

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

December 14, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

SAppx0056

Case 2:18-cv-05540-WB   Document 19-1 Filed 12/24/18   Page 13 of 32

Dr. Orien L. Tulp
December 14, 2018
Page 2 of 2

> In 2018, ECFMG determined that a certain official of the University of Science
> Arts & Technology engaged in irregular behavior in connection with providing
> false information to ECFMG.

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

Sincerely,

William W. Pinsky, MD FAAP FACC
President and CEO

CC: Tommy Swate, Esq. swatemd@aol.com
William Reil, Esq. billreillaw@gmail.com

Encl: As noted.

# EXHIBIT B

# University of Science, Arts & Technology (USAT) Faculty of Medicine

Montserrat

School Details    Contact Information    Program Details    **Sponsor Notes**

The information below has been provided by the World Directory's sponsoring organizations.

- Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certification and for examination, provided that:
    - For medical school students officially enrolled in this school, the graduation years are listed below as "current".
    - For graduates of this medical school, their graduation year is included in the graduation years listed below.
        Graduation Years:
            2003 - 2018
    - All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detailed information.

- **Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**

- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

# EXHIBIT C



AN AGREEMENT

BETWEEN

THE GOVERNMENT OF MONTSERRAT

AND

MEDICAL COLLEGE OF

LONDON (MCL),

UNIVERSITY OF SCIENCE, ARTS

AND

TECHNOLOGY

(MONTSERRAT) LTD. (USAT)

MONTSERRAT

A.D.   2003

A G R E E M E N T

THIS AGREEMENT made the ......2¼ day of .....September....2003 between:

THE GOVERNMENT OF MONTSERRAT (hereinafter referred to as "the
Government" which expression shall where the context so admits include its
assigns and successors) whose address for service is THE CHIEF MINISTER'S
OFFICE, BRADES, MONTSERRAT and MEDICAL COLLEGE OF LONDON
(MCL), UNIVERSITY OF SCIENCE, ARTS AND TECHNOLOGY (Montserrat)
LTD (USAT), a duly incorporated company (hereinafter referred to as 'the MCL-
USAT' which expression shall where the context so admits include its assigns
and successors) whose address is BRADES, Montserrat.

WITNESSETH AS FOLLOWS: -

1.    DEFINITIONS

In this agreement the following expressions shall have the meaning herein
ascribed to them.

"Agreement Period" means a period of 20 years commencing with the
date on which this agreement is executed.  The MCL-USAT will have the
option to review and renew the Agreement.

"Contributions" means a contribution payable to the Social Security Fund.

"Expatriate Staff" means staff recruited from overseas who are not citizens
of Montserrat or are not ordinarily resident in Montserrat for tax purposes.

"USAT" means UNIVERSITY OF SCIENCE, ART AND TECHNOLOGY
(MONTSERRAT) LTD.

2.    TAX EXEMPTIONS

(1)

6.    WORK PERMIT FOR EXPATRIATE EMPLOYEES

6.1    MCL-USAT will at the beginning of each year of the agreement
period provide a list of names of its academic and administrative
staff requiring work permits and in addition shall supply all relevant
information needed for the processing of the work permits.

6.2    Government of Montserrat shall issue the necessary work permits
and visas to enable MCL-USAT staff, students and families to
remain on island for the period of their employment or study subject
to the significance of any information provided on Police Records.

3

SAppx0062

7.2   MCL-USAT will ensure that income tax is paid in respect of each of its employees.

8.   GENERAL

8.1   The Government undertakes to establish a registry to record certification obtained by medical graduates of MCL-USAT.

8.2   The Government of Montserrat will at the request of MCL-USAT request the listing of MCL-USAT with the World Directory of Medical Schools published by WHO, Geneva, Switzerland.

4

8.13   MCL-USAT agrees to maintain operations in Montserrat with regard to its Medical and other Programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not affect any permission granted to the MCL-USAT by the Government of Montserrat.

8.14   The MCL-USAT may grant academic and professional degrees to duly qualified students of the institution and commensurate with an institution of higher education who have completed the academic and professional requirements of the degree for which they have been considered, and who have been recommended for such by the faculty and directors of MCL-USAT. The specific degrees authorized shall include Doctor of Philosophy (PH.D.), the Doctor of Medicine (M.D.) or Bachelor of Surgery (M.B.B.S), Bachelor of Dental Surgery (B.D.S.), the Master of Public Health (M.P.H.), the Master of Science (M.Sc.), the Master of Arts (M.A.), the Bachelor of Science (B.Sc.) and the Bachelor of Arts (B.A.).

IN WITNESS whereof the parties or the duly authorised representative of the parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Dr. Orien L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Esco Henry-Greer
Attorney General

Before and in the presence of:

Esco Henry-Greer
Attorney General

7

9.5   At the end of the agreement period MCL-USAT shall have the option to extend the agreement for a further period to be determined by MCL-USAT and GOM.

9.6   Notwithstanding the above, the offer included in this agreement shall be valid for a period of one (1) year from the date of this agreement after which the terms and conditions may be subject to re-negotiation however, if MCL-USAT makes any substantial property investment or undertakes any major contractual obligation referable to and in reliance on this Agreement, then the terms set out shall become final and binding on the Government.

IN WITNESS whereof the parties or the duly authorised representative of the parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Dr.  Orien L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Esco Henry-Greer
Attorney General

Before and in the presence of:

Esco Henry-Greer
Attorney General

7

17/2003
COMPANY NO.

# COMPANIES ACT OF MONTSERRAT

## CERTIFICATE OF INCORPORATION

UNIVERSITY OF SCIENCE, ARTS
AND TECHNOLOGY (MONTSERRAT) LTD.

### NAME OF COMPANY

I hereby certify that the above-mentioned Company, the Articles of Incorporation of

which are attached, was incorporated under the Montserrat Companies Act 1998,

Registrar of Companies

18th September, 2003
Date of Incorporation

# EXHIBIT D

Case 2:18-cv-05540-WB    Document 191    Filed 12/24/18    Page 29 of 92

**ECFMG**®                    EDUCATIONAL COMMISSION FOR
                              FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

# AFFIDAVIT ATTESTING TO MEDICAL SCHOOL ATTENDANCE

I, _____

                    *ECFMG Applicant Name*                               *ECFMG ID Number*

hereby declare, under penalty of perjury under the laws of all applicable jurisdictions, including the United States of America, and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations, that:

## Section 1: Attendance Dates at University of Science, Arts & Technology (USAT) Faculty of Medicine

I attended University of Science, Arts & Technology (USAT) Faculty of Medicine located in Montserrat during the following dates:

| From (Month/Year) | To (Month/Year) |
|---|---|
|  |  |

## Section 2: Dates and Location of Basic Sciences Courses Taken in **Montserrat**

I was physically present and took basic sciences courses in Montserrat, during the following dates and at the following location *(If you did not complete your basic sciences course work at a facility located in Montserrat, complete Section 3)*:

| | Dates of Basic Sciences Courses Taken while Physically Located In Montserrat | |
|---|---|---|
| | (Do not include dates if you were not physically present in Montserrat. Do not include breaks in time where you were not physically located in Montserrat. Only list the beginning and end date for when you were physically present in Montserrat attending basic sciences courses.) | |
| **From (Month/Year)** | **To (Month/Year)** | **Address of Facility Where Basic Sciences Classes Were Held** |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

While I took my basic sciences classes in Montserrat, I resided at the following location(s):

| Residence Address in Montserrat | Residence Dates in Montserrat | |
|---|---|---|
| | From (Month/Year) | To (Month/Year) |
|  |  |  |
|  |  |  |

I am attaching the following documentation to demonstrate my physical presence in Montserrat during the time I was taking basic sciences classes at University of Science, Arts & Technology (USAT) Faculty of Medicine. *(check all that apply)*:

☐ My passport, showing travel to Montserrat and visas for Montserrat      ☐ My lease, utility bills, etc. for my housing

☐ My airline tickets/boarding passes documenting travel to Montserrat      ☐ Other (please specify)

## Section 3: TO BE COMPLETED ONLY IF YOU CANNOT COMPLETE SECTION 2

I did ***not*** take basic sciences courses at a facility located in Montserrat because:

I also declare that this information is comprehensive, complete and accurate as of the date of my signature.

_____        _____   _____   _____
*Signature of Applicant*                                          *(day)*      *(month)*      *(year)*

### Certification by Official

I certify that on the date set forth below the individual named above did appear personally before me and that the statements in this document are subscribed and sworn to before me by the individual on this _____ day, of the month of _____ in the year _____ .

_____
*Signature of Notary Public*

_____
*Printed Name of Offical*

|  |
|---|
| Official Seal |

SAppx0067

WHAT YOU NEED TO DO

Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification, including registration for the United States Medical Licensing Examination (USMLE), release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, you must complete the attached affidavit, attesting to the accuracy of your medical school attendance information to ECFMG's satisfaction. Completion of the affidavit is required and will facilitate ECFMG's review.

The affidavit must also be notarized by NotaryCam, which provides secure on-line notarization of documents. To use NotaryCam, go to https://www.notarycam.com/ecfmg-affidavit/ and follow NotaryCam's instructions. NotaryCam will e-mail your affidavit to ECFMG directly.

YOU MUST COMPLETE AND SUBMIT THIS AFFIDAVIT NO LATER THAN NOVEMBER 1, 2018.

Please allow two to four weeks processing time after the above-described affidavit has been submitted to ECFMG. ECFMG will notify you in writing after your affidavit has been processed.

ECFMG reserves the right to bring allegations of irregular behavior against you, in accordance with its policies and procedures, should ECFMG obtain information that indicates that you have engaged in irregular behavior with respect to any documentation submitted as part of this process.

If you have any questions, please contact MECCsupport@ecfmg.org and you will be assigned a Case Manager. If you prefer, you may call 215-386-5900 and ask to be transferred to a Case Manager for USAT.

Sincerely,

ECFMG

# EXHIBIT E

**ECFMG®**   EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

VIA EMAIL: swatemd@aol.com

November 21, 2018

Mr. Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013

Dear Mr. Swate:

Thank you for the email confirmation on November 16, 2018 that you received the complete file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") in the matter related to Dr. Orien Tulp. As previously communicated, Dr. Tulp is scheduled to make a personal appearance (accompanied by you and Mr. Reil, his attorneys) before the ECFMG Committee on Wednesday, November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, PA 19103. Please arrive with Dr. Tulp at 8:45 AM.

I am writing in response to your letter dated November 13, 2018, which is rife with misstatements. There are two important issues of concern which require clarification at this time: (1) ECFMG's authority to conduct its activities, including the ECFMG Certification program and making allegations of irregular behavior pertaining to Dr. Tulp; and (2) the "activity of the ECFMG in regards to the USAT" related to ECFMG's update of USAT's *World Directory of Medical Schools* ECFMG Sponsor Note.

***Concern (1): ECFMG's Authority to Conduct the ECFMG Certification Program & Irregular Behavior***

In your letter, you request ECFMG to "identify by what legal authority [ECFMG] has to claim and report that Dr. Tulp - engaged in 'irregular behavior'." For some additional context regarding ECFMG's responsibility and its mission to protect the public, ECFMG (formally the Evaluation Service for Foreign Medical Graduates) was established as a private, non-profit organization in 1956 by the Federation of State Medical Boards (FSMB), the American Hospital Association (AHA), the Association of American Medical Colleges (AAMC), and the American Medical Association (AMA). It was established to validate medical credentials, assess basic medical knowledge and determine English language proficiency for graduates of international medical schools. As you may already know, medical licensing authorities in the United States require that international medical graduates (IMGs) be certified by ECFMG, among other requirements, to obtain an unrestricted license to practice medicine.

In support of its mission to protect the public, individuals that have or have attempted to subvert ECFMG's policies and procedures are subject to ECFMG's Policies and Procedures on Irregular Behavior. These were previously shared with you and are also available on ECFMG's web-site at https://www.ecfmg.org/programs/irregular-behavior.html. As communicated in our prior correspondence, it is under these policies that Dr. Tulp is charged with irregular behavior for providing false information to ECFMG. I trust that the files you received on November 16 help clarify the charges and evidence of irregular behavior.

ECFMG® is an organization committed to promoting excellence in international medical education.

Mr. Tommy Swate
November 21, 2018
Page 2 of 2

**_Concern (2):  ECFMG's Update to USAT's World Directory ECFMG Sponsor Note_**

As previously communicated to you, ECFMG's update to USAT's World Directory Sponsor note is **_not_** related to a charge of irregular behavior for Dr. Tulp.

ECFMG updated its sponsor note on October 18, 2018 because ECFMG learned that USAT was operating a medical school campus located in the United States.  Before taking this action, ECFMG had requested USAT to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school campuses and educational programs in the United States.   To date, USAT has failed to deliver such documentation.

It appears from the information gathered from you (e.g. your statement that USAT has conducted classes "in locations other than Montserrat _for 15 years_ without incident…") and corroborated by USAT students that USAT has primarily operated and conducted its educational activities in the United States.  Based on this information, USAT may not even be an international medical school.  However, as previously communicated, if you are able to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will consider this information.

Also, in your letter dated November 13, 2018 you state "ECFMG has taken the position that ECFMG has the right to accredit a medical school."  We must clarify for you that ECFMG is not an accrediting agency and does not purport to accredit international medical schools.

Please contact me if you have any additional questions regarding our ECFMG Committee meeting scheduled next week.

Sincerely,

Ms. Kara Corrado, JD
Vice President for Operations

# EXHIBIT F

**ECFMG®**    EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

October 18, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to advise you of the allegation that you, individually and in your
capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of
Medicine, Montserrat, engaged in irregular behavior in connection with providing false
information to ECFMG. Specifically, you provided false information to ECFMG when
you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida
and (2) certified to the attendance dates of several USAT students and graduates when
ECFMG has information that these students were not attending USAT during some of
the time periods to which you certified. The details of ECFMG's allegation are set forth
below.

**Details of Allegation**
*False Information Regarding U.S. Branch Campuses*
On August 21, 2018, ECFMG advised you that we had become aware that USAT
was operating a "branch" campus in Miami, Florida. We advised you that in order for
students and graduates of an international medical school, such as USAT, to have
eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from
the appropriate government authority in the branch campus country that the branch
campus is authorized to operate as a medical school in such branch campus country.
Therefore, we requested that USAT provide documentation from the United States
Department of Education and/or the Florida Department of Education confirming that
USAT's Miami branch campus is authorized to operate as a medical school in the
United States. We indicated that this documentation should cover the whole time period
that the USAT Miami branch campus has been in operation.

In response to ECFMG's August 21, 2018 letter, you replied:

"This is incorrect information. The Miami location is an information and testing
site only, where a pre-usmle examination [an NBME] may administered, and an
Orientation for new students is conducted prior to their traveling to the

ECFMG® is an organization committed to promoting excellence in medical education.

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 4

Caribbean.. It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas.  We note that there are no lectures scheduled for Montserrat.  We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only,  where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original].  Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT.  This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

Dr. Orien L. Tulp
October 18, 2018
Page 3 of 4

agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

***Certification of False Information Regarding Students Attendance Dates***

During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.

It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior*. See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*. Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG. ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.

The review into the matters described in this letter are ongoing. ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

**ECFMG Medical Education Credentials Committee Review of this Allegation**

This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*.

You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;

Dr. Orien L. Tulp
October 18, 2018
Page 4 of 4

- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

**Please provide a response to ECFMG by November 1, 2018.** In your response, please note whether you wish to make a personal appearance before the ECFMG Committee. All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org. If you have any questions, please do not hesitate to call me at (215) 883-7318.

Sincerely,

Lisa L. Cover
Senior Vice President for Business
Development and Operations

Encl: As noted.

JS 44 (Rev 08/18)   WB

# CIVIL COVER SHEET

18   5540

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**18   5540**

**(b)** County of Residence of First Listed Plaintiff ___Colorado___
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ___Philadelphia___
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1  U.S. Government Plaintiff
- ❒ 3  Federal Question *(U.S. Government Not a Party)*
- ❒ 2  U.S. Government Defendant
- ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated or Principal Place of Business In This State | ❒ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ❒ 2 | Incorporated and Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 625 Drug Related Seizure of Property 21 USC 881 | ❒ 422 Appeal 28 USC 158 | ❒ 375 False Claims Act |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 365 Personal Injury - | ❒ 690 Other | ❒ 423 Withdrawal 28 USC 157 | ❒ 376 Qui Tam (31 USC 3729(a)) |
| ❒ 130 Miller Act | ❒ 315 Airplane Product Liability | Product Liability | | | ❒ 400 State Reapportionment |
| ❒ 140 Negotiable Instrument | ❒ 320 Assault, Libel & | ❒ 367 Health Care/ Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ❒ 410 Antitrust |
| ❒ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ❒ 820 Copyrights | ❒ 430 Banks and Banking |
| ❒ 151 Medicare Act | ❒ 330 Federal Employers' Liability | ❒ 368 Asbestos Personal Injury Product | | ❒ 830 Patent | ❒ 450 Commerce |
| ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❒ 340 Marine | Liability | | ❒ 835 Patent - Abbreviated New Drug Application | ❒ 460 Deportation |
| | ❒ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ❒ 840 Trademark | ❒ 470 Racketeer Influenced and Corrupt Organizations |
| ❒ 153 Recovery of Overpayment of Veteran's Benefits | ❒ 350 Motor Vehicle | ❒ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ❒ 480 Consumer Credit |
| ☒ 160 Stockholders' Suits | ❒ 355 Motor Vehicle Product Liability | ❒ 371 Truth in Lending | ❒ 710 Fair Labor Standards Act | ❒ 861 HIA (1395ff) | ❒ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ❒ 360 Other Personal Injury | ❒ 380 Other Personal Property Damage | ❒ 720 Labor/Management Relations | ❒ 862 Black Lung (923) | ❒ 490 Cable/Sat TV |
| ❒ 195 Contract Product Liability | ❒ 362 Personal Injury - Medical Malpractice | ❒ 385 Property Damage Product Liability | ❒ 740 Railway Labor Act | ❒ 863 DIWC/DIWW (405(g)) | ❒ 850 Securities/Commodities/ Exchange |
| ❒ 196 Franchise | | | ❒ 751 Family and Medical Leave Act | ❒ 864 SSID Title XVI | ❒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 790 Other Labor Litigation | ❒ 865 RSI (405(g)) | ❒ 891 Agricultural Acts |
| ❒ 210 Land Condemnation | ❒ 440 Other Civil Rights | **Habeas Corpus:** | ❒ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❒ 893 Environmental Matters |
| ❒ 220 Foreclosure | ❒ 441 Voting | ❒ 463 Alien Detainee | | ❒ 870 Taxes (U.S. Plaintiff or Defendant) | ❒ 895 Freedom of Information Act |
| ❒ 230 Rent Lease & Ejectment | ❒ 442 Employment | ❒ 510 Motions to Vacate Sentence | | ❒ 871 IRS—Third Party 26 USC 7609 | ❒ 896 Arbitration |
| ❒ 240 Torts to Land | ❒ 443 Housing/ Accommodations | ❒ 530 General | | | ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❒ 245 Tort Product Liability | ❒ 445 Amer. w/Disabilities - Employment | ❒ 535 Death Penalty | **IMMIGRATION** | | ❒ 950 Constitutionality of State Statutes |
| ❒ 290 All Other Real Property | ❒ 446 Amer. w/Disabilities - Other | **Other:** ❒ 540 Mandamus & Other | ❒ 462 Naturalization Application | | |
| | ❒ 448 Education | ❒ 550 Civil Rights ❒ 555 Prison Condition ❒ 560 Civil Detainee - Conditions of Confinement | ❒ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
___Diversity___

Brief description of cause:
___Injunctive Relief and Damages for "Particular Release"___

## VII. REQUESTED IN COMPLAINT:

❒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P

DEMAND $ ___None At This___

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ❒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*   JUDGE _____   DOCKET NUMBER _____

DATE ___12/21/18___

SIGNATURE OF ATTORNEY OF RECORD ___Will Reil___

DEC 24 2018

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**18    5540**

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 4288 Youngfield Street Wheat Ridge, CO 80033

Address of Defendant: 3624 Market Street Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Philadelphia

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 12/24/18    _____ *Attorney at Law / Pro Se Plaintiff*    26833 *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    Federal Question Cases:**

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
       *(Please specify)* _____

**B.    Diversity Jurisdiction Cases:**

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)* _____
☒ 7. Products Liability
☐ 8. Products Liability – Asbestos
☒ 9. All other Diversity Cases
       *(Please specify)* Injunctive Relief
       "Irregular Behavior"

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, William C Reil, counsel of record or pro se plaintiff, do hereby certify

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DEC 24 2018

DATE: 12/21/18    _____ *Attorney-at-Law / Pro Se Plaintiff*    26833 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ 609 (5/2018)



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

TuLiP

       v.

ECFMG, et al

:
:
:
:
:

CIVIL ACTION

**18**    **5540**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
  . and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)        (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.  ( )

| 12/24/18 | William C. Reil | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-564-1635 | 215-564-4292 | billreillaw@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Clv. 660) 10/02

**DEC 24 2018**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:18-cv-05540-WB |
| ) | |
| v. ) | Hon. Wendy Beetlestone |
| ) | |
| EDUCATIONAL COMMISSION FOR ) | |
| FOREIGN MEDICAL GRADUATES and ) | |
| DR. WILLIAM W. PINSKY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

For the reasons set forth in the attached memorandum of law, Defendants Educational

Commission for Foreign Medical Graduates ("ECFMG") and Dr. William W. Pinsky, by and

through their undersigned counsel, move to dismiss Plaintiff's Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6) for failure to state any claim against ECFMG or Dr. Pinsky.

Dated: January 22, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:     +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates and Dr. William*
*W. Pinsky*

### CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or U.S. mail:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiff*

DATED:  January 22, 2019                    */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EDUCATIONAL COMMISSION FOR ) <br> FOREIGN MEDICAL GRADUATES and ) <br> DR. WILLIAM W. PINSKY, ) <br> ) <br> Defendants. ) <br> ) | Case No. 2:18-cv-05540-WB <br><br> Hon. Wendy Beetlestone |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

January 22, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

# TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................ 1

II.  Background ................................................................................................. 1

    A.   The Educational Commission for Foreign Medical Graduates ............................. 1

    B.   Dr. Orien L. Tulp and USAT ............................................................... 2

    C.   ECFMG Investigates Allegations of Unauthorized USAT Operations in the United States. ................................................................................ 2

    D.   ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools. ................................................................................ 4

    E.   Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded .......... 5

    F.   Dr. Tulp Sues ECFMG and Moves for Injunctive Relief. ................................ 6

III. Legal Standard ............................................................................................. 6

IV.  Argument .................................................................................................... 7

    A.   Dr. Tulp Has Not Stated A Claim for Tortious Interference. .............................. 7

    B.   Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent Misrepresentation. ............................................................................... 10

    C.   Dr. Tulp Has Not Stated A Claim for Abuse of Process. ................................. 13

    D.   Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for Deprivation of Due Process. ................................................................. 15

    E.   Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky. .............................. 19

V.   Conclusion ................................................................................................ 20

SAppx0083

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................................6, 7

*Bahleda v. Hankison Corp.*,
    323 A.2d 121 (Pa. Super. 1974)..........................................................................9

*Barnum v. Milbrook Care Ltd. Partnership*,
    850 F. Supp. 1227 (S.D.N.Y. 1994)....................................................................7

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)............................................................................................17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................6

*Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*,
    574 F.3d 214 (3d Cir. 2009)..........................................................................18, 19

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*,
    946 F. Supp. 2d 402 (E.D. Pa. 2013) ................................................................8

*Brown v. Fed'n of State Med. Bds.*,
    No. 82-7398, 1985 WL 1659 (N.D. Ill. May 31, 1985)....................................17

*Byers v. Intuit, Inc.*,
    No. 07-4753, 2009 WL 948651 (E.D. Pa. March 18, 2009)..............................7

*Elias v. ECFMG*,
    No. C-82-08, 2010 WL 4340640 (N.J. Super. Nov. 4, 2010).................15, 17, 18

*Fed. Deposit Ins. Corp. v. Mallen*,
    486 U.S. 230 (1988)............................................................................................19

*Feingold v. State Farm Mutual Ins. Co.*,
    No. 1573 EDA 2015, 2016 WL 4690712 (Pa. Super. June 24, 2016)..............14

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)......................................................................1, 6, 8

*Gibbs v. Ernst*,
    647 A.2d 882 (Pa. 1994)....................................................................................10

# TABLE OF AUTHORITIES

<div align="right"><b>Page(s)</b></div>

*Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*,
119 A.3d 1070 (Pa. Super. 2015)................................................................11, 13

*Gonzaga Univ. v. Doe*,
536 U.S. 2731 (2002).......................................................................................13

*Grayson v. Mayview State Hospital*,
293 F.3d 103 (3d Cir. 2002)...........................................................................20

*Joyce v. Erie Ins. Exchange*,
74 A.3d 157 (Pa. Super. 2013)........................................................................12

*Klemow v. Time Inc.*,
352 A.2d 12 (Pa. 1976)...................................................................................12

*LeDonne v. Kessler*,
389 A.2d 1123 (Pa. Super. 1978)....................................................................12

*Lerner v. Lerner*,
954 A.2d 1229 (Pa. Super. 2008)....................................................................13

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
983 A.2d 652 (Pa. 2009)................................................................................12

*Loftus v. SEPTA*,
843 F. Supp. 981 (E.D. Pa. 1994)...................................................................16

*Lum v. Bank of America*,
361 F.3d 217 (3d Cir. 2004).............................................................................7

*Matthews v. Eldridge*,
424 U.S. 319 (1976)...................................................................................18, 19

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*,
24 F.3d 519 (3d Cir. 1994)........................................................................16, 17

*Neopart Transit, LLC v. CBM N.A. Inc.*,
314 F. Supp. 3d 628 (E.D. Pa. 2018)................................................................9

*Nicholas v. Pa. State Univ.*,
227 F.3d 133 (3d Cir. 2000)...........................................................................15

*Opoku v. ECFMG*,
574 F. App'x 197 (3d Cir. 2014) ................................................................15, 16

*Osei v. Temple Univ.*,
518 F. App'x. 86 (3d Cir. 2013) .....................................................................19

SAppx0085

## TABLE OF AUTHORITIES

<div align="right">**Page(s)**</div>

*Phillips v. Selig,*
   959 A.2d 420 (Pa. Super. 2008)..............................................................8, 9

*Plasko v. City of Pottsville,*
   852 F. Supp. 1258 (E.D. Pa. 1994) ...............................................7, 11, 13

*Rendell-Baker v. Kohn,*
   457 U.S. 830 (1982)...............................................................................15, 20

*Rockman v. Aciukewicz,*
   No. 1434 MDA 2013, 2014 WL 10937492 (Pa. Super. Apr. 1, 2014) ....................................14

*Santiago v. Warminster Twp.,*
   629 F.3d 121 (3d Cir. 2010)...................................................................20

*Schmoltze v. County of Berks,*
   No. 99-cv-1069, 2000 WL 62600 (E.D. Pa. January 14, 2000)...............14

*Shiner v. Moriarty,*
   706 A.2d 1228 (Pa. Super. 1998).......................................................13, 14

*Simply Snackin, Inc. v. S-L Distributors,*
   No. 17-cv-0381, 2017 WL 6039734 (M.D.Pa. Dec. 6, 2017) ...................9

*Staudinger v. ECFMG,*
   No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) ......................16

*Synthes, Inc. v. Emerge Med., Inc.,*
   No. 11-1566, 2014 WL 2616824 (E.D.Pa June 11, 2014).........................9

*Thomas v. NBME-Nat'l Bd. of Medical Examin'rs,*
   No. 13-3946, 2015 WL 667077 (E.D. Pa. Feb. 13, 2015) ......................15

*In re Thorne's Estate,*
   25 A.2d 811 (Pa. 1942) ..........................................................................12

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,*
   20 A.3d 468 (Pa. 2011) ......................................................................9, 10

*West v. Atkins,*
   487 U.S. 42 (1988)..................................................................................20

*Winer Family Trust v. Queen,*
   503 F.3d 319 (3d Cir. 2007)......................................................................7

**Statutes and Rules**

42 U.S.C. § 1983.................................................................................15, 20

SAppx0086

# TABLE OF AUTHORITIES

**Page(s)**

Federal Education Records Protection Act, 20 U.S.C. § 1232g ....................................................13

Federal Rule of Civil Procedure 8 .............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 6, 7, 20

**Other Authorities**

U.S. Const. amend. XIV ........................................................................................................15, 18

Restatement (Second) of Torts § 772, cmt. b..............................................................................10

5B Wright & Miller, Federal Practice and Procedure, § 1357 (3d 2004).......................................7

SAppx0087

## I.    INTRODUCTION

Plaintiff Dr. Orien L. Tulp sued the Educational Commission for Foreign Medical Graduates ("ECFMG")—a private non-profit organization that certifies whether international medical graduates ("IMGs") have met minimum requirements to be eligible for residency programs in the United States—and ECFMG's President and CEO Dr. William W. Pinsky. Through this lawsuit, Dr. Tulp is trying to force ECFMG to recognize the University of Science, Arts and Technology ("USAT") of Montserrat—a school owned and run by Dr. Tulp—as a legitimate *foreign* medical school, despite ECFMG's findings that USAT provided medical education at unauthorized satellite locations *in the United States* and that Dr. Tulp lied to ECFMG about those locations.

Though Dr. Tulp is apparently frustrated with the actions taken by ECFMG as a consequence of his own misconduct, that does not mean that he has stated any viable claim against ECFMG or Dr. Pinsky.  To the contrary, Dr. Tulp's Complaint is deficient as a matter of law and cannot be resuscitated through amendment; Dr. Tulp fails to allege facts supporting key elements of his claims and many of the allegations in the Complaint are plainly and directly contradicted by the documents attached to the Complaint as exhibits or referenced therein.

Because Dr. Tulp has failed to state any claim against ECFMG or Dr. Pinsky, this Court should dismiss Plaintiff's Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    BACKGROUND[1]

### A.    The Educational Commission for Foreign Medical Graduates

ECFMG is a private not-for-profit corporation that promotes quality health care for the

---

[1] In ruling on a motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

public by certifying physicians who received their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical education. Compl. ¶ 4. At times the Complaint mistakenly conflates ECFMG Certification with a license to practice medicine. *See id.* But ECFMG Certification is merely a necessary precursor to admission into many U.S. graduate medical education programs. ECFMG Certification signals to directors of accredited residency and fellowship programs that an IMG has satisfied certain minimum eligibility requirements; it is not a license for an IMG to practice medicine in the United States. *See id.* (recognizing that ECFMG Certification allows an IMG to "start the process of being licensed as a physician in the United States"). ECFMG is not an accrediting agency and does not purport to accredit international medical schools. *See* Compl. Ex. E.

Dr. Pinsky is the President and CEO of ECFMG.

**B.      Dr. Orien L. Tulp and USAT**

Dr. Orien L. Tulp is the President and CEO of the University of Science, Arts, and Technology ("USAT"), which is alleged to be located in Montserrat. Compl. ¶¶ 1, 10. It is alleged that he has an ownership interest in USAT. *Id.* ¶¶ 1, 10. USAT has its administrative office in the United States and allegedly offers courses to students in both Montserrat and the United States. *Id.* ¶ 1.

**C.      ECFMG Investigates Allegations of Unauthorized USAT Operations in the United States.**

On August 21, 2018, ECFMG advised Dr. Tulp of allegations that USAT was operating a

---

210–11 (3d Cir. 2009). Accordingly, the "Background" set forth herein assumes the truth of Plaintiff's "well-pleaded facts" and does not accept as true the allegations in the Complaint that constitute no more than "legal conclusions." Defendants' Opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction (ECF No. 12) sets forth a more detailed description of the factual background that does not assume the truth of Plaintiff's allegations.

SAppx0089

campus in Miami and that ECFMG had no documentation from the proper U.S.-based authorities authorizing such a campus. *See* Compl. ¶ 12 & Ex. F. ECFMG advised Dr. Tulp that "in order for students and graduates of an international medical school, such as USAT to have eligibility to apply for ECFMG Certification," ECFMG policy requires confirmation that the appropriate government authority in the branch campus country authorized the operation of that medical school. Compl. Ex. F. Consistent with its policy, ECFMG requested that USAT "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States." *Id.*

> Later that day, Dr. Tulp responded to ECFMG via email:

> This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination.

*See* Compl. ¶ 13 & Ex. F.

On October 18, 2018, in light of additional information ECFMG received confirming USAT's unauthorized campuses in the United States, ECFMG advised Dr. Tulp that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements." *See* Compl. Ex. F. As part of the ongoing review, ECFMG informed Dr. Tulp that it had contacted USAT students and graduates to collect information on their attendance at USAT and that ECFMG "would require USAT students and graduates [seeking ECFMG services] to complete an affidavit,

3

attesting to the accuracy of the medical school information provided to ECFMG."  *Id*.  ECFMG provided the affidavit only to those USAT students and graduates who submitted a formal application to ECFMG to engage in the ECFMG Certification process.  *See* Compl. Ex. D ("Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification . . . you must complete the attached affidavit . . . .").  The affidavit asked the USAT students and graduates to certify under penalty of perjury and under penalty of a finding of "irregular behavior" (a designation in ECFMG's policies for conduct subversive to ECFMG) (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  *Id*.  Many USAT students submitted affidavits to ECFMG indicating that they took USAT classes in the United States.  Compl. Ex. F.  ECFMG also received a copy of the 2018 USAT Lecture Conference Schedule showing lectures occurring in Florida and Texas, with graduation to occur in Miami, Florida.  *See id*.  There were no lectures or graduations scheduled for Montserrat. *Id*.

During the investigation into USAT's activities in the United States, ECFMG also discovered that Dr. Tulp had provided false information to ECFMG regarding the attendance dates of some USAT students in connection with their United States Medical Licensing Examination ("USMLE") applications.  *Id*.

### D.    ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools.

As ECFMG continued to receive additional information confirming that USAT was operating campuses in the United States without disclosing those campuses to ECFMG and without proof of authority from the proper authorities, ECFMG announced that students graduating from USAT as of January 1, 2019 or later would no longer be eligible for ECFMG Certification or to register for USMLE examinations as a step toward ECFMG Certification.  *See* Compl. Ex.

SAppx0091

B.  This information was published as a Sponsor Note in the World Directory of Medical Schools.  *See id.*

### E. Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded.

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he individually and in his capacity as an official at USAT engaged in irregular behavior by providing false information to ECFMG.  *See* Compl. Ex. F.  The letter advised Dr. Tulp that the ECFMG Medical Education Credentials Committee, a sub-committee of ECFMG's Board of Trustees, would hold a hearing to address the allegations of irregular behavior on November 28, 2018.  *Id.*  Before the hearing, Dr. Tulp and his counsel were sent the file that was to be reviewed by the Credentials Committee.  *See* Compl. Ex. E.  Dr. Tulp was also notified that he was permitted to make a personal appearance before the Credentials Committee and to submit additional documents for consideration.  Compl. Exs. E, F.

At the hearing, Dr. Tulp offered no testimony, no witnesses, and no evidence whatsoever.  Compl. ¶ 15.  Dr. Tulp admits that he presented no evidence at the hearing, but he does ***not*** allege that he was denied the opportunity to present evidence or argument to the Credentials Committee.  The hearing was adjourned shortly after it began, with Dr. Tulp having failed to provide any evidence explaining or clarifying why the evidence previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular behavior.

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior.  *See* Compl. Ex. A.  As a result, and consistent with its policies, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the

ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." *Id.*

### F.    Dr. Tulp Sues ECFMG and Moves for Injunctive Relief.

On December 24, 2018, Dr. Tulp filed suit against ECFMG and Dr. Pinsky, alleging various tort claims and violations of due process.  The crux of Plaintiff's Complaint is his allegation that ECFMG has attempted to shutdown USAT by sanctioning Dr. Tulp, refusing to allow USAT students to take necessary medical examinations, and refusing to release test scores for students who have already paid for such examinations.  Compl. ¶ 10.

Dr. Tulp also filed a Motion for Preliminary and/or Permanent Injunction on January 2, 2019, and Defendants filed their Opposition on January 10, 2019.  Presently, ECFMG moves to dismiss Dr. Tulp's case in its entirety with prejudice pursuant to Rule 12(b)(6).

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*  Rather, to survive a motion to dismiss, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  The Court thus must conduct a two-part analysis. *Fowler*, 578 F.3d at 210.  The Court must first accept Plaintiff's factual allegations as true, and disregard legal conclusions or mere recitations of the elements. *Id.* at 210–11.  The Court must then determine whether the facts alleged make out a "plausible" claim for relief. *Id.* at 211.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and

SAppx0093

documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004); *see Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also* 5B Wright & Miller, Federal Practice and Procedure, § 1357 (3d 2004) (noting that courts have ignored a pleading's "legal conclusions," "unsupported conclusions," "unwarranted inferences," "unwarranted deductions," or "sweeping legal conclusions cast in the form of factual allegations."). Similarly, "[w]hen allegations in a complaint are contradicted by the materials appended to or referenced in the complaint, 'the document controls and the court need not accept as true the allegations of the complaint.'" *Byers v. Intuit, Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. March 18, 2009) (citing *Barnum v. Milbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)); *see also Plasko v. City of Pottsville*, 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable . . . where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves."). The pleading standard of Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## IV.    ARGUMENT

Plaintiff's efforts to attack in federal court both the Credentials Committee's decision and ECFMG's policies—tailored to address the public interest in accurately assessing the qualifications of IMGs—fall far short of stating any viable claim against ECFMG or Dr. Pinsky. The Complaint consists largely of unsupported legal conclusions and exaggerated characterizations. It should be dismissed in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A.    Dr. Tulp Has Not Stated A Claim for Tortious Interference.

Dr. Tulp alleges that ECFMG tortiously interfered with "the educational contract between

SAppx0094

the students of USAT, the University, and Dr. Tulp" by sending blank affidavits to USAT students

as part of the ECFMG Certification process and by updating the ECFMG Sponsor Note for USAT

in the World Directory of Medical Schools.  Compl. ¶¶ 10, 20, 22.  Dr. Tulp's tortious interference

claim fails.

 To prove tortious interference with an existing or prospective contract, a plaintiff must

establish:

> (1) the existence of a contractual relationship or prospective contractual relationship
> between the plaintiff and another party; (2) an intent on the part of the defendant to harm
> the plaintiff by interfering with that contractual relationship or preventing the relationship
> from occurring; (3) the absence of privilege or justification on the part of the defendant;
> and (4) the occasioning of actual damage as a result of defendant's conduct.

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing

*Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)).  Dr. Tulp's tortious interference claim

should be dismissed because he has not plausibly pleaded the existence of an existing or

prospective contractual relationship and has not pleaded the absence of a justification or privilege.

 ***First***, Dr. Tulp has alleged no facts supporting the conclusory allegation that he has existing

or prospective contractual relationships with USAT students.   Compl. ¶¶ 20, 22; *see also Fowler*,

578 F.3d at 210 (directing Courts to disregard formulaic recitation of the elements of a cause of

action).  Because Dr. Tulp is the plaintiff in this lawsuit, he can only bring a claim for tortious

interference based on a contract to which he is (or expects to be) a party.  *BP Envtl. Servs.*, 946 F.

Supp. 2d at 412 ("To satisfy this first element, a plaintiff must show that it is reasonably probable

that, but for the wrongful acts of the defendant, ***the plaintiff*** would have had a contractual

relationship with a third party" (emphasis added)).  Other than Dr. Tulp's conclusory allegations

regarding his contracts with ***unidentified USAT students***, the Complaint contains no allegations

or exhibits demonstrating the existence of any such relationship.  Moreover, it is implausible that

a medical school President would enter into separate contractual relationships with its students,

SAppx0095

when the students presumably contract with the school itself on issues such as tuition, fees, and services. A prospective contractual relationship is "something less than a contractual right, [yet] something more than mere hope." *Phillips*, 959 A.2d at 428. Dr. Tulp has not alleged that his purported contractual relationship with USAT students extends beyond a mere hope. *See Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 639 (E.D. Pa. 2018) (dismissing tortious interference claim when allegations on whether there was a prospective contractual relationship was based solely on historical relationship with clients and optimism that plaintiff could win prospective clients through bidding process).

**Second**, Dr. Tulp has not sufficiently alleged that ECFMG lacked a privilege or justification to act as it did, *i.e.*, that its actions "were improper under the circumstances presented." *Phillips*, 959 A.2d at 429. In determining whether alleged interference was "improper or not," consideration is given to numerous factors, including:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 (Pa. 2011). Dr. Tulp fails to allege that ECFMG had no privilege or justification and fails to address the factors enumerated above. This is fatal to his claim, as the absence of a privilege or justification "is an element of the cause of action which must be pleaded" by the plaintiff. *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 WL 2616824, at *19 (E.D.Pa June 11, 2014) (quoting *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122–23 (Pa. Super. 1974)); *see also Simply Snackin, Inc. v. S-L Distributors*, No. 17-cv-0381, 2017 WL 6039734, at *7 (M.D.Pa. Dec. 6, 2017) (dismissing claim because "merely stating that Defendant's conduct was 'without justification'" was insufficient). Indeed, the allegations and exhibits of the Complaint demonstrate that ECFMG's actions were ***proper*** in light

9

of ECFMG's well-supported findings that USAT has not proven it is a *bona fide* international medical school and that Dr. Tulp lied to ECFMG about USAT's operations in the United States. Compl. ¶¶ 10, 12; Compl. Exs. A, D, E, F.

**Third**, the information contained in the Sponsor Note about USAT and the affidavits sent to USAT students is true—Plaintiff has not alleged otherwise as discussed in Section IV.D—and "[t]here is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another." Restatement (Second) of Torts § 772, cmt. b. Indeed, "courts in a majority of states"—including Pennsylvania—"have held that an action for tortious interference may not be based on truthful statements." *Walnut St. Assocs.*, 20 A.3d at 479 & n.13. Because the Sponsor Note and the affidavits contain only **truthful** information (*e.g.*, that beginning on January 1, 2019, USAT students and graduates would not be eligible for ECFMG Certification), they cannot constitute tortious interference. *Id.*

## B. Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent Misrepresentation.

Dr. Tulp alleges that ECFMG is liable for fraudulent or negligent misrepresentation because it supposedly (a) misrepresented itself as a government agency, and (b) placed misleading information about USAT in the World Directory of Medical Schools. Compl. ¶ 45. Plaintiff again fails to support these claims with sufficient factual allegations, requiring dismissal.

To prevail on a claim for fraudulent misrepresentation, Dr. Tulp must demonstrate:

(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (internal citations omitted). To prevail on a claim for negligent misrepresentation, he must prove "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known its falsity; (3) with an intent

10

to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015). Dr. Tulp has failed to state a claim against ECFMG for either fraudulent or negligent misrepresentation.

**First**, Dr. Tulp has failed to allege any actionable misrepresentation. This alone is a basis to dismiss his claims of fraudulent and negligent misrepresentation. Regarding his contention that ECFMG misrepresented itself as a government agency, none of the ECFMG correspondence Dr. Tulp attaches to his Complaint reflect any representation by ECFMG that it is a government agency. *See* Compl. Exs A, D, E, F; *see also Plasko v. City of Pottsville,* 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable . . . where no facts are alleged to support or ***where the allegations are contradiccted by the facts themselves***.") (emphasis added). Moreover, the absence of a disclaimer in ECFMG's correspondence and affidavit that ECFMG is a private party—a disclaimer Plaintiff implausibly alleges was necessary—certainly does not constitute a representation that ECFMG *is* a governmental entity. Regarding the second alleged misrepresentation—the Sponsor Note published in the World Directory of Medical Schools—Dr. Tulp has not alleged how it was false. The Sponsor Note said only that: "As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations as a step toward ECFMG Certification," and that some USAT students and graduates would be subject to enhanced procedures in order to be eligible for ECFMG Certification related services. *See* Compl. Ex. B. There is nothing untrue or false about this statement.

*Second*, Dr. Tulp has not alleged that (a) he, personally, relied on ECFMG's alleged misrepresentations to his detriment, or (b) the alleged misrepresentations were made knowingly or with the intent to mislead him.  As "[t]he successful maintenance of a cause of action for fraud includes, *inter alia*, a showing that **the plaintiff** acted in reliance **on the defendant's misrepresentations**," the Court should dismiss these misrepresentation claims.  *Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) (emphasis added); *see Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009) (same).  Even on a generous reading of the Complaint, the only reliance on alleged misrepresentations that is potentially alluded to is that of **USAT students or prospective students**, which is insufficient as a matter of law for **Dr. Tulp** to state a misrepresentation claim.  *See Joyce v. Erie Ins. Exchange*, 74 A.3d 157, 167 (Pa. Super. 2013) (dismissing misrepresentation claim for failure to "allege that the recipient of the misrepresentation was the individual or entity damaged as a proximate result of reasonable reliance upon the misrepresentation").  And even if Dr. Tulp could claim that he relied on any alleged misrepresentations, which he does not, his claims would still fail because such reliance could not possibly be reasonable or justifiable.  *See, e.g.*, *LeDonne v. Kessler*, 389 A.2d 1123, 1129–30 (Pa. Super. 1978) (ruling that a plaintiff's reliance on a representation cannot be justifiable if the plaintiff had personal knowledge that the representation was false).  It is not plausible that the President and CEO of a medical school, with vast exposure to the ECFMG Certification process, would believe any of the alleged misrepresentations—especially when correspondence shows he received information about ECFMG's background and status as a private, non-profit organization and was familiar with ECFMG's investigation of USAT.  Compl. Ex. E; *see also In re Thorne's Estate*, 25 A.2d 811, 816 (Pa. 1942) ("No one is deceived by a declaration he disbelieves.").

12

***Third***, Dr. Tulp has not sufficiently alleged that ECFMG failed to make a reasonable investigation, as is necessary to establish liability under Dr. Tulp's negligent misrepresentation claim. *See Gongloff Contracting*, 119 A.3d at 1076. Dr. Tulp alleges ECFMG has "never requested any curricula, student records, or any documentation from USAT." Compl. ¶ 17. This is plainly contrary to the allegations of Dr. Tulp's own Complaint and contrary to the wealth of correspondence referenced by the Complaint. *See* Compl. ¶¶ 36, 45(d) & Exs A, D, E, F. Accordingly, the Court can disregard Dr. Tulp's contradictory allegation and dismiss his negligent misrepresentation claim. *See Plasko,* 852 F. Supp. at 1262.

### C.    Dr. Tulp Has Not Stated A Claim for Abuse of Process.

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)). Dr. Tulp has not alleged any of these elements, so his abuse of process claim must also be dismissed.[2]

Dr. Tulp has not alleged that ECFMG used any legal process against him. At most, Dr. Tulp characterizes the blank affidavits sent to USAT students as part of their application for ECFMG Certification as "tantamount to a subpoena duces tecum without first having a legal proceeding." Compl. ¶ 25. As the text of the affidavit shows, the affidavit was intended for USAT students and graduates "seeking a service or services related to ECFMG certification." Compl.

---

[2] Dr. Tulp also alleges in conclusory fashion that ECFMG is liable for violating the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g. This baseless allegation fails for a number of reasons, including that the U.S. Supreme Court has held that private parties like Dr. Tulp may not sue to enforce that statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 29091 (2002). Defendants do not read Plaintiff's Complaint as alleging a claim based on FERPA, and if this Court finds otherwise (and finds that claim is somehow sufficient), Defendants would respectfully request an opportunity to present argument to the Court.

SAppx0100

Ex. D.  Further, the affidavit made clear to USAT students and graduates seeking ECFMG Certification that "attesting to the accuracy of [their] medical school attendance . . .  will facilitate ECFMG's review" of their application.  *Id.*  Requesting that an applicant complete a notarized form as part of an application is not the use—let alone abuse—of legal process.  *See Rockman v. Aciukewicz*, No. 1434 MDA 2013, 2014 WL 10937492, at *6 (Pa. Super. Apr. 1, 2014) ("Neither correspondence nor an affidavit is legal process," especially when the affidavit is never used in litigation); *see also Schmoltze v. County of Berks*, No. 99-cv-1069, 2000 WL 62600, at *8 (E.D. Pa. January 14, 2000) ("[T]he word 'process' as used in the tort of abuse of process encompasses the entire range of procedures incident to the ***litigation*** process.") (emphasis added) (citing *Shiner*, 706 A.2d at 1237).

Furthermore, Dr. Tulp has not alleged how ECFMG's use of the affidavit (1) differs from the purpose for which it was designed, or (2) or has caused him harm.  It is implausible that ECFMG's primary purpose in sending out these affidavits was anything other than to make sure it had adequate, truthful information to certify foreign medical school graduates for study in the United States—a purpose Dr. Tulp acknowledges.  *See* Compl. ¶ 2.  Determining the "accuracy of [their] medical school attendance" was necessary to help ECFMG ascertain whether certification of these applicants would be proper, especially in light of the false information Dr. Tulp was providing to ECFMG about USAT's locations and the attendance dates of USAT students and graduates.  Compl. Ex. A, Ex. D.  Dr. Tulp has not sufficiently alleged that the use of this affidavit deviated from this intended purpose.  *See Feingold v. State Farm Mutual Ins. Co.*, No. 1573 EDA 2015, 2016 WL 4690712, at *6 (Pa. Super. June 24, 2016) (affirming dismissal of abuse of process claim despite plaintiff's allegations that pleadings and motions were filed to "harass and vex" plaintiff when there was no explanation on how the challenged documents "were used to

14

accomplish anything they were not designed for"). Finally, although he contends that the affidavits were distributed "to intimidate USAT students," "coerce information from students," and "gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp," such contentions do not identify any actionable harm. Compl. ¶¶ 10, 45(b), 45(d).

### D. Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for Deprivation of Due Process.

In Counts Two and Four of the Complaint, Dr. Tulp identifies a list of alleged procedural deficiencies in how ECFMG conducted Dr. Tulp's irregular behavior hearing and alleges that ECFMG violated Dr. Tulp's and USAT students' due process rights.[3] *See* Compl. ¶¶ 35, 36, 41, 58. Dr. Tulp has not, however, stated a viable § 1983 claim against Defendants for three reasons.

***First***, ECFMG is not a state actor, and the due process requirements of the Fourteenth Amendment apply only to state actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). Multiple courts, including the Third Circuit and Courts in this District have previously held that ***ECFMG is not a state actor*** and that its functions ***do not constitute state action***. *See, e.g.*, *Opoku v. ECFMG*, 574 F. App'x 197, 201 (3d Cir. 2014) ("Grese and ECFMG, a private not-for-profit organization, are private parties and not state actors."); *Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim."); *Elias v. ECFMG*, No. C-82-08, 2010 WL 4340640, at *1 (N.J. Super. Nov. 4, 2010) (finding insufficient evidence "to

---

[3] Dr. Tulp refers in passing, without any explanation, to an alleged violation of "substantive due process." Compl. ¶ 58. He has not identified how ECFMG's actions implicate a fundamental right subject to this protection. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) ("Whether a certain property interest [is worthy of protection under the substantive due process clause] . . . depends on whether that interest is 'fundamental' under the United States Constitution."). Absent some effect on a fundamental right, the action at issue "is entirely outside the ambit of substantive process." *Id.* at 142.

15

establish that the ECFMG is a state actor"); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing § 1983 claims because ECFMG is not a state actor and does not act under the color of state law).

As ECFMG is a private actor, based on this overwhelming authority, the next question is whether ECFMG's actions can be viewed as state actions because they are "fairly attributable" to the state. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994). The U.S. Supreme Court has identified only three possible ways for private action to be attributable to the state and therefore constitute state action: (1) "if the private party acted with the help of or in concert with state officials," (2) "when the private party has been 'delegated a power traditionally exclusively reserved to the State,'" or (3) "if 'there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may be fairly treated as the state itself.'" *Id.* (internal citations omitted).

ECFMG's actions do not meet any of these tests, despite Dr. Tulp's conclusory allegations that they do. *See* Compl. ¶¶ 4–7. ECFMG did not act or conspire with a state actor to carry out its actions. *See Opoku*, 74 F. App'x at 201 ("Liability would only attach if a private party conspired with a state actor" and vague allegations of conspiracy between ECFMG and a state actor are not sufficient); *Loftus v. SEPTA*, 843 F. Supp. 981, 983–84 (E.D. Pa. 1994). Nor were ECFMG's actions delegations of "a power traditionally exclusively reserved to the State." *McKeesport Hosp.*, 24 F.3d 519 at 525. Rather, its actions were limited sanctions tied to ECFMG's role in assessing the qualifications of IMGs and certifying their readiness to enter the U.S. graduate medical education system, which is not a power exclusive to the state. *See Staudinger*, 1993 WL 138954, at *4; *see also McKeesport Hosp.*, 24 F.3d at 525 ("The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state action."). And

16

despite Dr. Tulp's contention that there is a sufficiently close nexus between ECFMG's actions and state medical boards to establish state action, this is not the case. "ECFMG is not a subdivision of or affiliated with any governmental entity, its Board of Trustees receives no funding from any governmental entity . . . and it sets its own standards for an [IMG]'s eligibility to take the United States Medical Licensing Examination (USMLE)." *Elias*, 2010 WL 4340640, at *1; *see McKeesport Hosp.*, 24 F.3d at 525 ("The ACGME is self-governed and financed, and its standards are independently set; the state Board simply recognizes and relies upon its expertise."). That state medical boards rely on ECFMG Certifications does not render ECFMG a state actor. *See Brown v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) (holding that ECFMG is "not [a] state agenc[y]" and "do[es] not participate in a state activity" because "[t]he actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests" and "[t]he state boards are at most [ECFMG's] consumers").[4]

**Second**, even if ECFMG's actions constituted state actions, which they do not, Dr. Tulp's due process claims also fail because he has not identified a sufficient liberty or property interest of which he has been deprived. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). ECFMG's

---

[4] Dr. Tulp's suggestion that ECFMG is "estopped from denying that it is a government or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect [sic] was placed on the affidavits sent to thousands of USAT students" is baseless. Compl. ¶¶ 37–38. ECFMG sent affidavits only to those USAT students and graduates who were "seeking a service or services related to ECFMG Certification." Compl. Ex. D. Such students are familiar with the role ECFMG certification plays for IMGs seeking to enter U.S. graduate medical education and have had prior access to ECFMG's resources. ECFMG never presented itself as a government or quasi-governmental entity.

SAppx0104

decision not to accept documents signed by Dr. Tulp, especially given Dr. Tulp's history of falsehoods, does not implicate any liberty or property concerns which would trigger due process protections. Nor do USAT students have any property right to ECFMG Certification. *See Elias*, 2010 WL 4340640, at *3 (applicant for ECFMG certification did not have a right to a medical license as "a protected right in a professional license comes into existence only after a license has been obtained").

*Third*, even if ECFMG actions were state actions and did implicate interests protected by the Fourteenth Amendment—again, they do not—Dr. Tulp would still not succeed on his due process claims because he was afforded due process, as is clear from the allegations of Dr. Tulp's Complaint and the materials attached thereto. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citations omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

Dr. Tulp received prior notification of the allegations against him and concerns about USAT. *See* Compl. Exs. E, F. Dr. Tulp and USAT were both invited to submit whatever explanation or evidence they thought were necessary to address ECFMG's concerns regarding the irregularities concerning USAT's operations in the United States and Dr. Tulp's misrepresentations regarding same. *See id.* Dr. Tulp also received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior, was provided with copies of ECFMG's policies and procedures, and was sent a copy of the materials to be reviewed by the Credentials Committee in assessing the allegations against him. *See* Compl. Exs. A, E, F. This constitutes ample notice of the accusations made against him and how they would be resolved. *See, e.g.*, *Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 221–

18

22 (3d Cir. 2009) (holding that a discharged employee was given "constitutionally sufficient notice of the reasons" his dismissal was sought when he was provided with multiple disciplinary memos which described the bad conduct and what body would decide whether dismissal was appropriate).

Moreover, Dr. Tulp had an opportunity to appear personally before the Credentials Committee with an attorney of his choosing. *See* Compl. Exs. A, E, & F; *see also Matthews*, 424 U.S. at 334, 344–346 (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place). And even if Dr. Tulp had not been given a hearing, there is no constitutional right to present oral responses at a formal hearing. *See Biliski*, 574 at 222 ("There is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247–48 (1988))).

Process was afforded to Dr. Tulp. For this reason, and because Dr. Tulp has not identified a valid liberty or property interest or alleged facts establishing that ECFMG is a state actor, dismissal of Dr. Tulp's due process claims is warranted. *See also Osei v. Temple Univ.*, 518 F. App'x 86, 88–89 (3d Cir. 2013) (affirming dismissal of due process claim when allegations showed Plaintiff was given "notice of the charges," "an explanation of the evidence" against him, and "an opportunity to present his side of the story.")

### E. Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky.

Dr. Tulp's sole claim against Dr. Pinsky is for a due process violation. For the reasons set forth above, Dr. Tulp has failed to state a due process claim against either Defendant, and Count 4 should be dismissed. With respect to Dr. Pinsky, Dr. Tulp's allegations are especially deficient and dismissal is particularly warranted. Dr. Tulp has made no allegations that Dr. Pinsky is a state actor, that Dr. Pinsky acted under color of state law, or that Dr. Pinsky's actions constituted state

SAppx0106

action as is required for § 1983 liability based on a violation of due process.  *See West v. Atkins*, 487 U.S. 42, 48–49 (1988); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

Moreover, Dr. Tulp's own description of Dr. Pinsky's actions demonstrate that there is no viable claim against Dr. Pinsky.  Dr. Tulp alleges that Dr. Pinsky sent a letter on December 14, 2018 in which Dr. Pinsky communicated the determination of the ***Credentials Committee*** that Dr. Tulp "was banned from submitting any documents or having any dealings with the ECFMG on behalf of behalf of USAT or otherwise."  Compl. ¶¶ 51–52. There are ***no*** allegations that the letter announcing the Credentials Committee's decision is in itself a due process violation.  To the extent that Plaintiff alleges that "Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG," this is not sufficient to show § 1983 liability. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131–34 (3d Cir. 2010) (affirming dismissal of § 1983 claim as allegation that an individual developed and authorized actions taken against plaintiff without more was a conclusory assertion that was "not entitled to the assumption of truth").  Accordingly, given the limited scope of Dr. Pinsky's involvement as alleged in the Complaint, even if some claim remains against ECFMG, Plaintiff has failed to show that he is entitled to relief from Dr. Pinsky, and dismissal of this sole claim against Dr. Pinsky is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dr. Tulp's Complaint does not state any claim upon which relief can be granted.  Moreover, because the defects in the Complaint cannot be cured by amendment, Defendants ask that the dismissal be with prejudice.  *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

SAppx0107

Dated: January 22, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates and Dr. William*
*W. Pinsky*

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. ORIEN L. TULP,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES and<br>DR. WILLIAM W. PINSKY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-cv-05540-WB<br><br>Hon. Wendy Beetlestone |

**[PROPOSED] ORDER**

**AND NOW**, this __ day of _____ 2019, upon consideration of Defendants' Motion to Dismiss Plaintiff's Complaint, **IT IS HEREBY ORDERED** that the Motion to Dismiss Plaintiff's Complaint is **GRANTED**.  The Complaint is **DISMISSED with prejudice**.

BY THE COURT:

_____

Beetlestone, J.

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## <u>ORDER</u>

NOW, on this ____day of _____, 2019, upon consideration of

Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6), and

Plaintiff's Response thereto, it is hereby ORDERED and DECREED that Defendants'

Motion to Dismiss Plaintiff's Complaint is DENIED.

By the Court:

_____
Honorable Wendy Beetlestone
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                    ATTORNEY FOR PLAINTIFF

| DR. ORIEN L. TULP, | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## **PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

For the reasons set forth in the attached memorandum of law, Plaintiff Dr. Orien

L. Tulp, by his undersigned counsel, moves to deny Defendants' Motion to Dismiss

Plaintiff's Complaint.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

1

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                    ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Plaintiff, Dr. Orien L. Tulp, through his undersigned counsel, submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, under F.R.C.P. 12(b)(6), and in support thereof, it is averred as follows:

### CASE OVERVIEW

Preliminarily, it should be noted that defendants did not file a motion with numbered averments for plaintiff to answer individually, but filed a Memorandum of Law requesting dismissal of plaintiff's complaint under F.R.C.P. 12(b)(6).

An overview of the case can be found in paragraph 10 of the complaint, titled "Summary", and in paragraphs 11 through 20, titled "General Allegations". They read as follows:

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical

2

examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

SAppx0113

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

In the complaint, the first cause of action deals with tortious interference of

contract by the ECFMG with regard to Dr. Tulp. The second cause of action is for

violation of due process, including fundamental fairness with respect to the rights of Dr.

Tulp by the ECFMG. The third cause of action deals with state torts, including fraudulent

misrepresentation, abuse of process, and misrepresentation by defendant. It should be

noted that there is a dual basis for jurisdiction here, based on diversity and on violation of

plaintiff's civil rights. The fourth cause of action is titled "plaintiff v. all defendants",

including Dr. Pinsky, and incorporates the prior averments. Instructive is paragraph 58

which reads:

> The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a
> violation of procedural and substantive due process, as follows:
> (a) banning Dr. Tulp without a proper hearing;
> (b) banning Dr. Tulp without an evidentiary basis;
> (c) forcing closure of USAT and causing its students to be dismissed in an
>     arbitrary and capricious manner;
> (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof
>     and allotting 20 minutes for the hearing;
> (e) terminating the hearing on 11/28/18 without receiving any evidence from
>     Dr. Tulp;
> (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and
>     due process, and effectively forcing closure of USAT College of
>     Medicine without legal process, and constructively dismissing the students
>     of USAT in violation of the law.

## EVIDENTIARY STANDARD FOR A MOTION TO DISMISS

A court should only dismiss a suit under F.R.C.P. 12(b)(6) if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, (1957).

Similarly, "The district court must construe the complaint in a light most favorable to the

plaintiff, accept all the factual allegations as true, and determine whether the plaintiff

undoubtedly can prove no set of facts in support of his claims that would entitle him to

relief. … When an allegation is capable of more than one inference, it must be construed

in the plaintiff's favor. … Hence, a judge may not grant a Rule 12(b)(6) motion based on

a disbelief of a complaint's factual allegations." *Columbia Nat Resources, Inc. v. Tatum*,

58 F.3d 1101, 1109 (6th Cir.1995)."

The *Conley* standard above was replaced by the United States Supreme Court in

SAppx0115

the case of *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 (2007). *Twombly*
is somewhat more restrictive, but it still requires that the Court take the well-pled
allegations of the complaint as true, along with any reasonable inferences thereof. The
Court is required to determine whether the complaint alleges facts which give rise to
relief, as opposed to mere speculation.

Plaintiff argues that the complaint is sufficiently specific to apprise defendants of
the nature of this lawsuit and enunciates plausible claims sufficient to overcome a motion
to dismiss. A plaintiff is not required to plead all the evidence necessary to prove their
case in the complaint. *H.M. Bickford Company V. Speigle*, 120 A.2d 167, 384 Pa. 227
(1956). While *Bickford* is a state case, it is averred that federal law, with respect to a
motion to dismiss, is substantially the same.

A defendant moving to dismiss under F.R.C.P. 12(b)(6) bears the burden of
proving that the plaintiff has failed to state a claim for relief. See F.R.C.P. 12(b)(6);
see also, e.g., *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a
Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as
true, to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678
(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible
"when the plaintiff pleads factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.
*Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.*, Civil
Action 14-6978 (E.D.Pa. 05/04/2015). As such, "[t]he touchstone of the pleading
standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

6

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, meaning enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of "each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)." The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679, 129 S.Ct. 1937.

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," F.R.C.P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. Supreme Court. *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346 (2014).

### PLAUSIBLE CLAIMS AND WELL-PLEADED ALLEGATIONS

Among the plausible claims asserted by the complaint with its exhibits, are the following:

1. A decision was made by the ECFMG to find Dr. Tulp guilty of "irregular behavior", with a mandate that he be barred as a medical educator for at least five years. "Irregular behavior" is a permanent sanction. Importantly, before any hearing occurred with the ECFMG, it already found Dr. Tulp guilty of "irregular behavior". *See* complaint at paragraph 58(a) and Exhibit "A". The exhibit from the WDOMS was published on the Internet at the behest of the ECFMG well before the 11/28/18 hearing. *See* Exhibit "B" to the complaint.

SAppx0117

2. Virtually no hearing was given to Dr. Tulp after the ECFMG extended an invitation to him to attend a hearing on 11/28/18. *See* complaint at paragraph 15. This is underscored by the fact that there is no evidence or witnesses cited by defendants that took place at the so-called "hearing". In point of fact, plaintiff alleges that no evidence was introduced at the hearing even though the Board or Credentials Committee was represented by the main defense counsel in this case. Dr. Tulp never addressed the ECFMG Board before the hearing was terminated by defense counsel. The ECFMG charged Dr. Tulp with "irregular behavior" and put the burden of proof on him to show his innocence.

Also, defendants never assert a failure to exhaust administrative remedies on appeal, because there was no evidence of any kind admitted at Dr. Tulp's hearing. There is a factual issue as to what occurred at the hearing, or even if an evidentiary hearing took place. Dr. Tulp was not afforded even the most rudimentary due process, which would apply to ECFMG, whether it be deemed a state actor in this particular instance, or a private actor. ECFMG, by extending an invitation for a hearing to Dr. Tulp, assumed a duty that such a hearing would not be a sham.

3. There was an abuse of process when the ECFMG issued affidavits to hundreds of students at USAT, the university that Dr. Tulp founded and owned half of its assets. *See* complaint at paragraph 10. This so-called "affidavit" (Exhibit "D" to the complaint), concocted by the ECFMG, requested documents, including passports of students, and threatened "irregular behavior" if they did not comply. A reasonable USAT student could believe they had to cooperate with the ECFMG, attempting to pose as a governmental agency, or put their desire for a United States medical license in permanent jeopardy. No

8

disclaimer that the ECFMG was a private entity was ever communicated to a USAT student or on the WDOMS Internet site.

The abuse of process arises from what is termed an "affidavit" by defendants, but what is actually more akin to a subpoena duces tecum, or a grand jury subpoena. It is averred that this document was designed to portray ECFMG as a governmental body and to undermine Dr. Tulp with the students of his university.

4. Dr. Pinsky wrote in his letter of 12/14/18 that "in 2018, the ECFMG determined that a certain individual of the University of Science, Art, and Technology engaged in "irregular behavior" with providing false information to the ECFMG." Similar postings by the ECFMG in sponsor notes on the WDOMS (Internet) sufficiently identified and defamed plaintiff, even before his alleged due process hearing. *See* complaint Exhibits "A" and "B".

5. The charges of "irregular behavior" against Dr. Tulp exceeded the authority of the ECFMG, and were vague and overbroad. "Irregular behavior", in reality, amounts to any actions by one who opposes the authority of the ECFMG or even does something of which the organization disapproves. "It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs, or services of ECFMG to be *irregular behavior*." See Exhibit "F", letter of Lisa L. Cover, Senior Vice President for Business Development and Operations.

Generally, the complaint must set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); *Pennsylvania ex. Rel. Zimmerman v. Pepsico, Inc.*, 836 F. 2d 173, 179 (3d Cir. 1988). The court can

SAppx0119

dismiss plaintiff's complaint **"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."** *Hishon v. King & Spalding*, 467 U.S. 69 (1984). (emphasis supplied)

**AFFIRMATIVE DEFENSES**

Defendants have asserted a variety of affirmative defenses, such as a privilege to defame, as well as truth as a defense to Dr. Tulp's defamation claim against Dr. Pinsky and ECFMG. These are affirmative defenses, and not the subject of the 12(b)(6) inquiry. In addition, the voluminous exhibits that defendants have attached from the injunction hearing to their motion to dismiss should not be considered.

Under Federal Rules of Civil Procedure, an 8(a) complaint need not anticipate or overcome affirmative defenses. Thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004).

The District Court in *Robinson* erred in considering certain documents attached to defendants' Rule 12(b)(6) motions. Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir 2002).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. V. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 199); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d. Cir. 2010).

10

**ACTIONS OF ECFMG IMPLICATE DUE PROCESS IN THIS CASE**

Plaintiff argues that the abuse of authority by the ECFMG in this case creates a sufficient nexus with state action to render the organization a state actor.

1. The "affidavit" is an abuse of authority designed to make the ECFMG appear like a governmental agency. *See* Exhibit "D".

2. The ECFMG sponsor notes in the World Directory of Medical Schools were designed for viewing by USAT students, and it already implied that Dr. Tulp was guilty well before his hearing date. It is suggested that the Court may take judicial notice of a matter of public notice that the ECFMG and the WDOMS have the same address: 3624 Market Street.

3. The actions of the ECFMG violate FERPA ("Family Educational Rights and Privacy Act") with respect to its "homemade" affidavit designed to illegally coerce private information from USAT students.

**CIVIL RIGHTS CLAIM**

The ECFMG is liable for plaintiff's injuries under Section 1983, as set forth in plaintiff's complaint, because defendants' employees or agents executed a governmental policy that directly resulted in the deprivation of plaintiff's civil rights. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). If a city official causes a deprivation of life or liberty upon another because he was following a city policy reflecting the policymakers' deliberate indifference to constitutional rights, then the city is directly liable under Section 1983 for causing a violation of plaintiff's Fourteenth Amendment rights. *Fagan v. City of Vineland*, 22 F.3d at 17 (3d Cir. 1993) Liability may be based on actions of an official with final policy-making authority, which is then

11

attributed to the municipality, and even a *single action* by the policymaker may be
enough to trigger municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.
Ct. 1292 (1986).  (emphasis supplied)

It is not required to find that individual defendants violated the rights of plaintiff
to find that the government bodies and corporate entities named in plaintiff's complaint
had a policy whose implementation violated those civil rights. *Pembaur*, *supra*;
*Tennessee v. Guiner*, S. Ct. 1694 (1985); *Simmons v. City of Philadelphia*, 947 F. 2d
1042 (3rd Cir. 1991). In his excellent analysis at p. 28–45 of *Simmons v. Philadelphia*,
*supra*, Judge Becker rejects the City's argument that an employee must have primary
liability for a constitutional violation. The Supreme Court in both *Pembaur* and *Guiner*,
*supra*, considered civil rights liability of the municipality alone, where all individual
defendants had been dismissed.

In order to state a valid claim under Section 1983, plaintiff must allege the
following: (1) that the conduct complained of was committed by a person acting under
the color of state law; and (2) the conduct deprived plaintiff of rights, privileges or
immunities secured by the United States Constitution. *Coates v. Jeffers*, 822 F. Supp.
1189 (E.D. Pa. 1993) citing *Parratt v. Taylor*, 451 U.S. 527, 535 101 S. Ct. 1908, 1912,
68 L. Ed.2d 420 (1980).

A deprivation of a property interest without due process of law is a violation of 42
U.S.C. 1983. *Bradshaw v. Pennsylvania State University,* Eastern District, 10-4839. The
complaint delineates that plaintiff had a one-half property interest in the university and
was its founder.

12

**ECFMG FUNCTION**

ECFMG is an organization sponsored by state medical organizations, including the federation of state medical boards. Through its process, it gives students what is a license to apply for a residency program. A residency program is a certified program that trains students who have graduated from medical school and who have taken a series of tests known as the United States Medical Licensing Examination. The various state boards have given the power to test and certify international medical graduates as competent to undertake residency training. New Jersey requires a foreign medical graduate to demonstrate to the New Jersey State Board of Medical Examiners that he or she holds a certificate issued by the ECFMG which was granted following the attainment of a passing score on an acceptable examination and verification of his or her credentials by the ECFMG.

ECFMG issues a de facto license (certification) which renders a foreign medical graduate eligible to apply for admission to a residence program in the United States. Without this license, a foreign medical graduate can not apply for a residency program. Without training in a residency program, the foreign medical graduate can not obtain a state medical license.

The actions of the ECFMG should be considered state actions under the circumstances. The ECFMG's procedure in granting, what is the initial license to eventually obtain a full medical license, has a significantly close nexus to the various state medical boards. Without the ECFMG certificate, the gate is closed to obtaining a medical residency. The state medical boards have granted the power to the ECFMG to

13

screen foreign medical students for licensure. State action is established. *Jackson v. Metro Edison Co*. 419 u.s.345, 351.

The ECFMG has insinuated itself into a position of interdependence with the state medical boards. The ECFMG can not be considered to be purely private. Not only does the ECFMG report to state medical boards, it also reports to the National Physician Data Bank. The ECFMG would not exist if it was not delegated powers by the state medical boards. *Burton v. Wilmington Parkway Authority* 365 U.S. 715, 725 (1961).

Because the ECFMG actions in this case should be treated as state actions, the ECFMG violated both procedural and substantial Fourteenth Amendment procedures and substantive due process rights.

Procedural due process rights were violated because at a minimum, a right to notice of the charges of "irregular behavior" and a right to present evidence to refute the charges is required by the Fourteenth Amendment. Neither notice of charges nor the right to present evidence was allowed by the ECFMG.

State action determination is necessarily a fact-bound inquiry. *McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519 (3d Cir. 05/17/1994). The point is that while ECFMG has often been found to be a private party (in cases mostly involving *pro se* medical students), the facts in this case indicate that ECFMG exceeded its authority and acted as if it were a governmental entity.

When the ECFMG chose to portray itself to USAT students, through threats of "irregular behavior", coercive affidavits, and misuse of social media, as an apparent governmental agency in this case, it abnegated the ability to defend against liability by donning the mantle of a private entity.

**AMENDED COMPLAINT**

Plaintiff requests the Court to allow amendment of the complaint, if necessary. If the complaint is insufficient due to a dearth of factual allegations, then there is a strong policy favoring the allowance of an amended complaint. "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). In *Grayson*, The District Court did not follow these principles. Before it dismissed the case, the Court should have--absent inequity or futility of amendment--specifically advised Grayson that he could amend his complaint and given him a chance to do so. Neither inequity nor futility of amendment is present. *Grayson v. Mayview State Hospital*, 3rd Cir. Crt. Of Appeals (2002).

**DEFENDANTS' BRIEF**

Defendants cited in the table of authorities, two Third Circuit cases to support that ECFMG is a private party. These are *Opoku* and *Osei*. Both are non-precedential and thus not allowed to be cited. In the instant case, a core issue is whether the ECFMG overstepped its authority, and acted with apparent governmental authority.

**AUTHORITY OF ECFMG OVER DR. TULP**

There is no basis to exercise jurisdiction over Dr. Tulp if ECFMG is a private party, as defendants argue. There is no contractual relationship between the parties and defendants claim there is no state action. If that is true, there is no basis to exercise jurisdiction over Dr. Tulp. He is not a medical student, nor did he ever enter into an agreement with the ECFMG. Defendants can not with one hand proclaim that ECFMG has jurisdiction over Dr. Tulp, but with the other hand, assert that it is a private party.

**TORTIOUS INTERFERENCE WITH CONTRACT**

Plaintiff alleges in the first cause of action of the complaint that defendants

tortiously interfered with contract. This is more broadly known as intentional interference

with contractual relations. Pennsylvania Standard Suggested Jury Instructions, Section

17.280 Civil, in pertinent part states: "One who intentionally induces or otherwise

intentionally prevents another from performing a contract with a third person or makes

the performance of the contract more expensive is responsible to the other for the loss he

or she suffered as a result of the prevention or interference with the contract. The

intentional tort of interference with contractual relations has been recognized by the

Pennsylvania Supreme Court." *Caskie v. Philadelphia Rapid Transcit Co*., 184 A. 17 (Pa.

1936); *Capecci v. Liberty Corp*., 176 A.2d 664 (Pa. 1962).

The contention in plaintiff's first cause of action involves the efforts by the

ECFMG to destroy the medical education career of Dr. Tulp and close his university,

USAT. Dr. Tulp had a property interest in USAT, and as stated in the complaint

(paragraphs 1 and 10), he was not only the founder, but also had a significant property

interest in the university. Dr. Tulp had a contract as the President and CEO with USAT,

his university. Furthermore, the students at USAT had implied contracts with the

university and Dr. Tulp arising out of their payment of tuition.

It is alleged that the efforts by ECFMG to illegally find that Dr. Tulp committed

"irregular behavior", to use a so-called "affidavit" and the threat of "irregular behavior"

to bully students into cooperation, as well as the relationship between the World

Directory of Medical Schools and the ECFMG, which share a common address, indicate

an illegal and duplicitous attempt to interfere with the contract between Dr. Tulp and the

SAppx0126

USAT, by destroying the man and his university. *See* complaint exhibits "A", "B", and

"D".

### SUMMARY AND CONCLUSION

The Court should not dismiss the complaint under Rule 12(b)(6), since there are

plausible claims by plaintiff which support viable causes of action.

1. There was no hearing at all and the decision on Dr. Tulp was made before the
purported hearing, as indicated in the WDOMS website, Exhibit "D". The hearing was a
sham, which was arbitrary and capricious. This is evidenced by the fact that defendants
did not claim that plaintiff did not try to exhaust his administrative remedies on appeal to
the administrative body, because there was nothing to appeal in the record. The three
salient points here are: A decision was made and posted on the WDOMS before the
hearing; no evidence was presented at the hearing; and Dr. Tulp was given no
opportunity to be heard or to present evidence, as indicated in the transcript.

2. Defendants violated the right to due process, and to a fair hearing even if
defendants were private actors. In this particular instance, the ECFMG overstepped its
authority and essentially acted as an agent of the state medical boards. The ECFMG has a
monopoly, in the sense that no foreign medical student can practice medicine in the U.S.
without the ECFMG certifying them. The ECFMG is essentially a kind of gatekeeper. If
the ECFMG is seen to be a private actor, it did not even achieve the minimum standard of
notice and a hearing. If the ECFMG affords a hearing, then it has assumed a duty to
provide a fair hearing. If it indeed has authority to charge Dr. Tulp with "irregular
behavior" (a permanent sanction), then the abuse of that authority is a violation of Dr.
Tulp's civil rights.

3. There are state tort actions based on diversity of jurisdiction, as well as pendent
jurisdiction, including defamation, the abuse of process and misrepresentation. Liability
for Dr. Pinsky is indicated because he is the President, CEO, and a policymaker for the
organization. Under diversity jurisdiction, the doctrine of respondeat superior applies.
The abuse of process claim flows from the misuse of the affidavits, which were
essentially used as subpoenas, and appeared to be issued by a state actor.

Dr. Tulp has a property interest in the USAT. The nexus between ECFMG and the

state medical boards makes ECFMG a gatekeeper which has a monopoly on the

admission of any foreign medical student to practice in the United States. If the ECFMG

was a state actor, then there are rights of due process. If ECFMG was a private actor that

extended a hearing, then the hearing may not be a sham. Interestingly, defendants do not

raise failure to exhaust administrative remedies for appeal, because there is no evidence in the record from which to appeal.

Respectfully submitted,

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was

served upon all other parties or their counsel of record by:

                           Regular First Class Mail

                           Facsimile

                           Certified Mail

                           Hand-Delivered

X         Electronic Filing

X         Email

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

19

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

February 21, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates and Dr. William
W. Pinsky*

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................. 1

II.     ARGUMENT ......................................................................................................... 1

        A.      Dr. Tulp Mischaracterizes the Allegations and Exhibits of the Complaint ........... 1

        B.      Nothing In the Opposition Changes That Dr. Tulp's Allegations Fail ................. 4

                1.      Dr. Tulp's Due Process Claims Fail as a Matter of Law ........................... 4

                2.      Dr. Tulp's Misrepresentation Claims Fail as a Matter of Law ................. 7

                3.      Dr. Tulp's Abuse of Process Claims Fail as a Matter of Law .................. 7

                4.      Dr. Tulp's Tortious Interference Claims Fail as a Matter of Law ............ 8

        C.      Dr. Tulp Should Not Be Granted Leave to File an Amended Complaint.............. 9

III.    CONCLUSION ..................................................................................................... 10

SAppx0131

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................................4

*Barnum v. Milbrook Care Ltd. Partnership,*
    850 F. Supp. 1227 (S.D.N.Y. 1994)..............................................................1

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007).......................................................................................4

*Biliski v. Red Clay Consol. School Dist. Bd. Of Educ.,*
    574 F.3d 214 (3d Cir. 2009)...........................................................................5

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.,*
    946 F. Supp. 2d 402 (E.D. Pa. 2013) .............................................................8

*Budhun v. Reading Hosp. & Med. Ctr.,*
    765 F.3d 245 (3d Cir. 2014)............................................................................3

*Byers v. Intuit, Inc.,*
    No. 07-4753, 2009 WL 948651 (E.D. Pa. Mar. 18, 2009) .............................1

*Gonzaga Univ. v. Doe,*
    536 U.S. 290 (2002).......................................................................................8

*Grayson v. Mayview State Hospital,*
    293 F.3d 103 (3d Cir. 2002)...........................................................................9

*Hawksbill Sea Turtle v. FEMA,*
    126 F.3d 461 (3d Cir. 1997)...........................................................................5

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984).........................................................................................4

*McKeesport Hospital v. Accreditation Council for Graduate Medical Education,*
    24 F.3d 519 (3d Cir. 1994)..............................................................................6

*McTernan v. City of York, Pennsylvania,*
    577 F.3d 521 (3d Cir. 2009)...........................................................................5

*Monell v. Dep't of Soc. Servs. of the City of New York,*
    436 U.S. 658 (1978).......................................................................................4

SAppx0132

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Opoku v. ECFMG*,
  574 F. App'x 197 (3d Cir. 2014) ...............................................................6

*Rockman v. Aciukewicz*,
  No. 1434 MDA 2013, 2014 WL 10937492 (Pa. Super. Apr. 1, 2014), and (2) ......................7

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010)......................................................................7

*Sciarra v. Reliance Standard Life Ins. Co.*,
  No. 97-1363, 1998 WL 564481 (E.D. Pa. Aug. 26, 1998) ......................................6

*Smith v. NCAA*,
  139 F.3d 180 (3d Cir. 1998)......................................................................9

*Snyder v. Baxter Healthcare, Inc.*,
  393 F. App'x. 905 (3d Cir. 2010) ...............................................................3

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*,
  20 A.3d 468 (Pa. 2011) ...........................................................................9

**Statutes**

42 Pa. Cons. Stat. § 8343(b)(1).......................................................................3

42 U.S.C. § 1983.........................................................................................7

Federal Education Records Protection Act ......................................................8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .........................................................1, 7, 10

Restatement (Second) of Torts § 772, cmt..........................................................9

-iii-

## I.      INTRODUCTION

Dr. Tulp's Opposition does not meaningfully address any of the arguments raised in Defendants' Motion to Dismiss.  He cites inapplicable legal standards and mischaracterizes both the allegations and claims purportedly set forth in the Complaint, but he fails to explain away the deficiencies in his pleading that Defendants identified in the Motion to Dismiss.  Because those deficiencies are fatal to each of Dr. Tulp's claims, Dr. Tulp has failed to state any claim against ECFMG or Dr. Pinsky, and this Court should dismiss the Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.      ARGUMENT

### A.      Dr. Tulp Mischaracterizes the Allegations and Exhibits of the Complaint.

As an initial matter, Dr. Tulp's Opposition contains numerous factual assertions that are belied by the actual allegations and exhibits of the Complaint.  Those mischaracterizations – described in detail below – should be rejected.  *See Byers v. Intuit, Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. Mar. 18, 2009) ("When allegations in a complaint are contradicted by the materials appended to or referenced in the complaint, 'the document controls and the court need not accept as true the allegations of the complaint.'" (quoting *Barnum v. Milbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)).

Dr. Tulp mischaracterizes the limited sanction ECFMG imposed on him after it found that he engaged in irregular behavior.  Dr. Tulp was not, as he claims, "barred" by ECFMG from serving "as a medical educator for at least five years."  Opp. 7.  Nor was Dr. Tulp subjected to a "permanent sanction" as he contends in the Opposition.  *Id.*  Rather, per the letter from ECFMG attached to the Complaint and on which Dr. Tulp relies, ECFMG's only action with respect to Dr. Tulp was to decide that it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today;

thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." Compl. Ex. A. The Complaint and its exhibit thus undermine the unsupported assertions in the Opposition that Dr. Tulp is facing a "permanent sanction" and that ECFMG has "barred" Dr. Tulp from serving as a medical educator.

In support of Dr. Tulp's mischaracterization of the limited sanction, Dr. Tulp contends that ECFMG has "no basis to exercise jurisdiction over Dr. Tulp" and act as it did. Opp. 15. This mischaracterizes ECFMG's action. As is clear from the Complaint and its exhibits, ECFMG decided, following its own investigation and a hearing, that it would no longer accept his signature. That is not a question of jurisdiction, but rather a question of whether ECFMG must believe Dr. Tulp notwithstanding its finding that he lied to ECFMG. The notion of "jurisdiction" is a red herring.

Dr. Tulp also mischaracterizes the timing of ECFMG's decision to punish Dr. Tulp and the extent to which ECFMG's limited sanction on him was made public. In the Opposition, Dr. Tulp relies on an October 2018 update to the ECFMG Sponsor Note about USAT in the World Directory of Medical Schools to argue that ECFMG decided to punish him before his November 2018 hearing. *See* Opp. 7. But the Sponsor Note, attached to the Complaint, makes **no** reference to Dr. Tulp whatsoever. *See* Compl. Ex. B. To the extent Dr. Tulp relies on his mischaracterization of the Sponsor Note to argue that ECFMG prejudged Dr. Tulp's case and decided he was guilty of irregular behavior before the November 2018 hearing, the argument is – again – directly contradicted by Dr. Tulp's own pleading.

Dr. Tulp also mischaracterizes the content of the affidavits issued by ECFMG, claiming that ECFMG threatened USAT students who failed to complete affidavits with "irregular

SAppx0135

behavior." Opp. 16. This, again, is directly contradicted by Dr. Tulp's own pleading. The affidavit, which Dr. Tulp attached to his Complaint, contains a warning that any student who included **false information** on an affidavit could face allegations of "irregular behavior." Compl. Ex. D. The claim that ECFMG forced students to complete affidavits under threat of "irregular behavior" is thus belied by the affidavit itself.

Dr. Tulp further contends that "neither notice of charges nor the right to present evidence was allowed by the ECFMG" at Dr. Tulp's irregular behavior hearing. Opp. 14. That is contrary not just to the allegations in the Complaint, but also to the Court's findings at the preliminary injunction hearing, which are preclusive on this issue. *See infra.*

Beyond mischaracterizing the facts, Dr. Tulp's Opposition also misstates his own claims. Dr. Tulp suggests repeatedly that the Complaint contains a defamation claim. *See* Opp. 10, 17. But the Complaint does not purport to state a defamation claim[1], and Dr. Tulp cannot try to overcome Defendants' Motion to Dismiss based on a claim not alleged in the Complaint. *See Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x. 905, 907 n. 4 (3d Cir. 2010) ("[A] motion to dismiss attacks claims contained by the four corners of the complaint.").

---

[1] Even if Dr. Tulp had included a defamation claim in his Complaint, such a claim would fail based on the factual allegations already asserted. In Pennsylvania, truth is an affirmative defense to a defamation claim and may be raised at the motion to dismiss stage if it is true on the face of the Complaint. 42 Pa. Cons. Stat. § 8343(b)(1); *see Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245,259 (3d Cir. 2014). As laid out in Defendants' Memorandum of Law, Dr. Tulp has failed to identify any falsehood or misrepresentation ECFMG made: (1) none of the ECFMG correspondence attached to the Complaint supports Plaintiff's contention that ECFMG held itself out as a government agency; and (2) the Sponsor Note at issue is completely accurate in that it describes ECFMG's process for considering USAT students and graduates after January 1, 2019, and Dr. Tulp has not alleged how it is inaccurate. Defs.' MOL 11. As the Complaint does not allege an untrue statement, had Plaintiff brought a defamation claim it would fail.

-3-

**B.      Nothing In the Opposition Changes That Dr. Tulp's Allegations Fail.**

In his Opposition, Dr. Tulp urges the Court to dismiss his Complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69 (1984). After *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*, however, this is no longer the applicable standard for evaluating the adequacy of a pleading. 550 U.S. 554, 563 (2007) (explaining that the "no set of facts" standard "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."). Accordingly, the Court shall dismiss all of Dr. Tulp's claims against ECFMG because they fail under the appropriate standard: Dr. Tulp does not state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**1.      Dr. Tulp's Due Process Claims Fail as a Matter of Law.**

The arguments set forth in Dr. Tulp's Opposition do not save his due process claims from dismissal for several reasons.

*First*, the Court ruled at the preliminary injunction hearing that ECFMG is not a state actor. *See* Jan. 24, 2019 Hr'g Tr. 131: 2–4 ("While the lack of state action ultimately dooms Plaintiff's constitutional claims, it if far from the only problem with the § 1983 clai[m]s.").[2] **That ruling has preclusive effect and Dr. Tulp's due process claims should therefore be dismissed.** The Third Circuit has held that a district court's findings and conclusions on a preliminary injunction motion may "have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to

_____

[2] Although Plaintiff now cites *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978) as a way that ECFMG can be held liable for the actions of its employers, *Monell* is not applicable here given that ECFMG is neither a municipal corporation nor a local government unit.

be litigated again." *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997).  Where

the issues in a motion to dismiss and a motion for preliminary injunction are "exactly the same"

and the plaintiff "had a full opportunity to present their arguments at the hearing on the preliminary

injunction, . . . there is no reason to prolong the inquiry." *McTernan v. City of York, Pennsylvania*,

577 F.3d 521, 531 (3d Cir. 2009).

    Here, at the preliminary injunction hearing, the Court heard extensive testimony[3] and

received numerous documents into evidence, ultimately ruling that Dr. Tulp was unlikely to

succeed on the merits of his due process claim because, *inter alia*, Defendants were not state actors

and even if they were Dr. Tulp received ample procedural protections, including notice and an

opportunity to be heard.[4]  *See* Jan. 24, 2019 Hr'g Tr. 129:18–131:1 (mentioning that the Third

Circuit "has held that as a private not-for-profit organization, ECFMG is a private party and not a

state actor" and that none of the circumstances apply under which a private actor can be found to

engage in state action); 131:10–11 ("In this case, there was notice and an opportunity to be

heard.").  Nothing in the Opposition suggests that the inquiry at the motion-to-dismiss stage would

be any different or that the Court's ruling should be set aside.  It therefore has preclusive effect,

and Dr. Tulp's due process claims should be dismissed with prejudice.

---

[3] *See, e.g.*, Jan. 24, 2019 Hr'g Tr. 9:21–10:3 (receiving testimony from K. Corrado that ECFMG "is a nonprofit, private organization," that is not an accrediting agency); 10:11–15 (receiving testimony from K. Corrado that "Generally, the licensing boards in the United States will require ECFMG certification for international medical students, but it's the discretion of each state board who they license.").

[4] In the Opposition, Dr. Tulp contends that there was "virtually no hearing." Opp. 8.  As laid out in the exhibits attached to the Complaint and as found by the Court at the preliminary injunction hearing, Dr. Tulp was given repeated notice of the charges against him, the policies and procedures that would guide the Medical Credentials Committee's decision, and his opportunity to be heard. Compl. Exs. A, E, & F.  This was more than adequate process, especially since "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered."  *Biliski v. Red Clay Consol. School Dist. Bd. Of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009).

-5-

**Second**, even absent the Court's ruling, Dr. Tulp's contention that ECFMG was delegated powers by state medical boards – and that its actions should therefore be deemed that of a state actor – is contrary to Third Circuit case law regarding entities analogous to ECFMG in the medical education field.  Opp. 14.  As already discussed in Defendants' Memorandum of Law, in *McKeesport Hospital v. Accreditation Council for Graduate Medical Education*, "the evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state action," so such actions are not delegations of state power.  24 F.3d 519, 524 (3d Cir. 1994). Accordingly, ECFMG's limited role in graduate medical education – a step removed from accreditation – does not rise to the level of an entity exercising a delegated state power which would subject it to the requirements of the Fourteenth Amendment.  Dr. Tulp has not identified a single case in which ECFMG or its executives have been held to be state actors.  Nor has Dr. Tulp articulated a compelling justification for rejecting the many cases from numerous jurisdictions – including the Third Circuit – holding that ECFMG is not a state actor.[5]  Absent the existence of any delegation of a state power and/or authority, ECFMG could not have exceeded a state authority in these circumstances, despite Plaintiff's multiple attempts to argue so.

**Third**, Dr. Tulp has failed to respond to Defendants' arguments that the absence of allegations against Dr. Pinsky makes dismissal of the claim against him especially appropriate. Dr. Tulp briefly argues that liability is appropriate under the doctrine of *respondeat superior* that applies to state tort actions.  *See* Opp. 3.  But Dr. Tulp has not brought any state tort claims **against**

---

[5] Indeed, the Court relied on the Third Circuit's decision in *Opoku v. ECFMG*, 574 F. App'x 197 (3d Cir. 2014) when denying Dr. Tulp's preliminary injunction motion and holding that Defendants are not state actors.  Jan. 24, 2019 Hr'g 129:18–23.  Although district courts are not bound by the Third Circuit's unpublished opinions, there is no bar to citing to such opinions and many courts do so, finding such opinions "instructive," particularly where the ruling involves the same party and issue.  *Sciarra v. Reliance Standard Life Ins. Co.*, No. 97-1363, 1998 WL 564481, at *8 n.7 (E.D. Pa. Aug. 26, 1998).

SAppx0139

**Dr. Pinsky**.  Rather, Dr. Tulp summarizes the fourth cause of action – the only cause of action against Dr. Pinsky – "as violation of procedural and substantive due process."  Opp. 5. Accordingly, liability is controlled by 42 U.S.C. § 1983, and Dr. Pinsky cannot be held liable for a constitutional violation on a theory of *respondeat superior*.  *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131-34 (3d Cir. 2010).

### 2.   Dr. Tulp's Misrepresentation Claims Fail as a Matter of Law.

The Opposition includes no arguments in connection with Dr. Tulp's claims for fraudulent and/or negligent misrepresentation.  As noted in Defendants' Memorandum of Law, Dr. Tulp has failed to allege any misrepresentations.  Defs.' MOL 11.  The closest Dr. Tulp comes to addressing this deficiency in his misrepresentation claims is his argument that the absence of a misrepresentation is really an "affirmative defense" that is "not the subject of the 12(b)(6) inquiry." Opp. 10.  But the existence of misrepresentation is an element of the *prima facie* case of fraudulent or negligent misrepresentation, and for the reason set forth in Defendants' Memorandum of Law, Dr. Tulp simply has not plausibly alleged a false statement by Defendants.  Defs.' MOL 10-11. Nor did Dr. Tulp address the arguments in Defendants' Memorandum of Law that his misrepresentation claims must be dismissed for failure to allege reliance, fraudulent intent, or failure to make a reasonable investigation.

### 3.   Dr. Tulp's Abuse of Process Claims Fail as a Matter of Law.

In support of his claim for abuse of process, Dr. Tulp relies on the conclusory allegation that ECFMG was "attempting to pose as a governmental agency" in the affidavits it issued to USAT students, despite the absence of any factual basis in the Complaint to support such a conclusion.  Opp. 8; *see also* Defs.' MOL 13–14.  Similarly, Dr. Tulp's Opposition fails to address (1) Pennsylvania case law stating that an affidavit does not constitute "legal process" to trigger an abuse of process claim, *see Rockman v. Aciukewicz*, No. 1434 MDA 2013, 2014 WL 10937492,

-7-

at *6 (Pa. Super. Apr. 1, 2014), and (2) direction from the Supreme Court that private parties like Dr. Tulp may not sue to enforce the Federal Education Records Protection Act ("FERPA"), thus weakening his reliance on FERPA as a basis for his abuse of process claim, *see Gonzaga Univ. v. Doe*, 536 U.S. 290–91 (2002).  The Opposition does not explain how the bare allegations in the Complaint are sufficient to set forth a claim for abuse of process claim.  As a result, that claim should be dismissed.

### 4.    Dr. Tulp's Tortious Interference Claims Fail as a Matter of Law.

The Opposition also does nothing to rectify the glaring deficiencies in Dr. Tulp's claims for tortious interference.  In the Opposition, Dr. Tulp asserts without any citation to the Complaint that he "had a contract as the President and CEO with USAT, his university."  Nowhere in the Complaint does Dr. Tulp allege that he has a contractual relationship with USAT or that his interference claim is premised on that contractual relationship.  Next, Dr. Tulp argues that "the students at USAT had implied contracts with the university and Dr. Tulp arising out of their payment of tuition."  Opp. 16.  The Complaint makes no mention of any alleged implied contracts and, as explained in Defendants' MOL, it is implausible to believe that Dr. Tulp had a contractual relationship with USAT students when the students presumably contract with the school itself.

Dr. Tulp also ignores entirely the argument in Defendants' MOL that it is plain on the face of the Complaint that ECFMG was privileged and justified to act as it did.  To the extent Dr. Tulp tries to argue that such privilege or justification is an affirmative defense not proper at the motion to dismiss stage, he misunderstands Pennsylvania law because "the absence of privilege or justification" is an element of his *prima facie* case.  *See BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013).  And as was the case with respect to the misrepresentation claims, Dr. Tulp has not alleged that any information provided by Defendants was false, and "[t]here is of course no liability for interference with a contract . . . on the part of

-8-

one who merely gives truthful information to another." Restatement (Second) of Torts § 772, cmt. b; *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 479 & n.13 (Pa. 2011).

### C.    Dr. Tulp Should Not Be Granted Leave to File an Amended Complaint.

A district court may deny leave to amend on the ground that an amendment would be futile. *See Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998). An amendment is considered futile "if the pleading, as amended, would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Id.* Here, granting Dr. Tulp's request for an opportunity to amend his Complaint would be futile for at least two reasons.

*First*, Dr. Tulp has given no indication as to how any of the allegations in the Complaint would be amended to successfully state a claim when the Complaint in its current form fails to state any claims for relief. Thus, for example, it has already been ruled that ECFMG is not a state actor, and it would be futile to permit Dr. Tulp a renewed opportunity to allege a due process claim when ECFMG's status as a private actor under the circumstances is fatal to that claim.

*Second*, the Court has already heard testimony and evidence from Dr. Tulp in the context of a preliminary injunction hearing, which hearing resulted in a ruling that Dr. Tulp is unlikely to succeed on the merits of his due process claim. Dr. Tulp had every opportunity to present some evidence to successfully state a claim against Defendants and he failed to do so. Unlike the *pro se* plaintiff who was granted leave to amend in *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002), Dr. Tulp is represented by counsel and still has not made any efforts to cure his admitted "dearth of factual allegations." Opp. 16. There is no reason to believe that given an opportunity to replead, Dr. Tulp would set forth sufficient facts now to state a claim against Defendants.

Dr. Tulp's deficient Complaint is not merely an "imperfect statement of the legal theor[ies] supporting the claim[s] asserted," as he contends, *see* Opp. 7; he has not and will not be able to

SAppx0142

include sufficient factual allegations in his pleading to support key elements of the constitutional and tort claims he has sought to bring against Defendants.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice and without leave to file an amended complaint.


Dated: February 21, 2019                          Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:     +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

SAppx0143

Case 2:18-cv-05540-WB   Document 25   Filed 02/21/19   Page 15 of 15

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

> TOMMY SWATE
> 403 WILD PLUM
> HOUSTON, TX 77013
>
> WILLIAM C. REIL
> 1515 MARKET ST SUITE 1200
> PHILADELPHIA, PA 19102
> 215-564-1635
> Fax: 215-564-4292
> Email: billreillaw@gmail.com
>
> *Attorneys for Plaintiff*

DATED:  February 21, 2019                    */s/ Elisa P. McEnroe*
                                             Elisa P. McEnroe

SAppx0144

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG"),[1] by and

through its undersigned counsel, hereby answers the Complaint filed by Dr. Orien L. Tulp in

accordance with the numbered paragraphs thereof as follows:

## PARTIES

1.      The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult
individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO
80033. At all times material herein, plaintiff was President of the University of Science, Arts, and
Technology ("USAT"), and had an ownership interest in the University. USAT is located in
Montserrat, but its US administrative office is located at the address in the caption, and students
take classes in Montserrat and the US via a distance education format.

**ANSWER**:      ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. Orien L. Tulp is the plaintiff in this lawsuit.  ECFMG denies that USAT

students "take classes in Montserrat and the US via a distance education format."  ECFMG lacks

---

[1] On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky.  As a result,
this filing is made by and on behalf of ECFMG only, the sole remaining defendant.

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of this paragraph and they are, therefore, denied.

2.    A defendant is the Educational Commission for Foreign Medical Graduates, hereinafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their mission statement, the ECFMG is an organization which purports to certify medical school students and graduates to practice medicine in the United States.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that is headquartered at 3624 Market Street, Philadelphia, PA 19104.  ECFMG

further admits that, among other things, it certifies that foreign medical graduates have met certain

minimum criteria for entry into graduate medical education in the United States.  ECFMG denies

that it is an unincorporated association and that it "certif[ies] medical school students and graduates

to practice medicine in the United States."   ECFMG denies the remaining allegations of this

paragraph.

3.    A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG, whose address for service of process is indicated in the caption. *See* Exhibit A, attached and incorporated herein.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. William W. Pinsky is the President and CEO of ECFMG and that ECFMG

is headquartered at 3624 Market Street, Philadelphia, PA 19104.  ECFMG denies that Dr. Pinsky

is a defendant in this lawsuit because the Court has dismissed all claims against Dr. Pinsky.

ECFMG denies the remaining allegations of this paragraph.

4.    ECFMG is an organization sponsored by various medical organizations, including the Federation of State Medical Boards. Through the ECFMG's certification process, it gives medical students and medical graduates a certification of eligibility (essentially a license) to apply for a ACGME [Accreditation Council for Graduate Medical Education] certified residency program of postgraduate specialty training that can lead to medical licensure of the applicant. A residency program is a certified program that trains students who have graduated from a medical school and taken a series of examinations or tests administered by way of the United States Medical Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency

SAppx0146

training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that, among other things, it certifies that foreign medical graduates have met certain minimum criteria for entry into graduate medical education in the United States. ECFMG further admits that ACGME has elected to require foreign medical graduates who enter ACGME-accredited programs to be certified by ECFMG. ECFMG specifically denies that "[t]he state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency training in the USA." ECFMG denies the remaining allegations of this paragraph.

5.    The action of the ECFMG is in granting authority to apply for a residency program is state action. The ECFMG's authority, which is in essence a license to apply for a residency program, has a close nexus to the various state medical boards. Without the ECFMG certificate, the ACGME postgraduate programs will not permit the applicant to start the training that will in essence allow the gate to be closed to obtaining a medical residency and eventual license to practice medicine in the USA. Without the residency training, the medical graduate cannot obtain a full unrestricted medical license. The state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure. State action is established because of this delegation of screening power. *Jackson v. Metro Edison Co.,* 419 U.S. 345, 351.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that ACGME has elected to require foreign medical graduates who enter ACGME-accredited programs to be certified by ECFMG. ECFMG specifically denies that "[t]he state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure." ECFMG denies the remaining allegations of this paragraph.

6.    The ECFMG has placed itself in a position of interdependence with the state medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG reports to the state medical boards but also reports to the National Practitioner Data Bank. The

3

ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority,* 365 U.S. 715, 725 (1961).

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

7.     Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

9.     Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG admits that it is headquartered and conducts business in the Eastern District of Pennsylvania.

## SUMMARY

10.     In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular

SAppx0148

behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit DI to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

     **ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. Moreover, the allegations of this paragraph refer to written documents that speak for themselves, and Plaintiff's characterization of them is, therefore, denied. To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that it imposed a limited sanction on Plaintiff after finding that he engaged in "irregular behavior" (as defined by and consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior), which finding was made after Plaintiff was given notice of the allegations of "irregular behavior," copies of ECFMG's Policies and Procedures Regarding Irregular Behavior and documentary evidence considered making the finding of "irregular behavior," and an opportunity to be heard at an in-person hearing before ECFMG's Medical Education Credentials Committee. ECFMG further admits that it sent blank affidavit forms to USAT students applying to ECFMG for services to gather information about their medical school coursework. ECFMG denies that it "has refused to allow students of USAT to take necessary medical examinations." ECFMG denies that it "has effectively closed USAT, by refusing to release scores for students who paid for the examinations." ECFMG denies that "[d]octors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification." ECFMG denies that the blank affidavits sent to USAT students were "misleading," "threatened" students with "irregular behavior," were sent "to sanction Dr. Tulp and force closure of" USAT. ECFMG lacks knowledge or information

SAppx0149

sufficient to form a belief about the truth of the allegation that Plaintiff "is President, CEO, and an

equal owner of" USAT. ECFMG specifically denies that Plaintiff was denied due process.

ECFMG denies the remaining allegations of this paragraph.

## GENERAL ALLEGATIONS

11.    ECFMG sent to USAT a letter implying that the school would be closed on or about
01/01/19 because the Board would no longer recognize the scores of its students in taking the
three-part United States Medical Licensing Examination. This action prohibits applicants from
sitting for the USMLE, which is required for unrestricted medical licensure.

**ANSWER**:    The allegations of this paragraph refer to a letter that is a written document

that speaks for itself, and Plaintiff's characterization of it is, therefore, denied. To the extent that

a response is required, ECFMG denies the allegations of this paragraph.

12.    On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent
a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its
medical education program amounted to "irregular behavior" because USAT had not been certified
by a governmental entity in the United States, and 2) the allegation that USAT was operating
medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a
Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that
he engaged in "irregular behavior". *See* Exhibit F.

**ANSWER**:    The allegations of this paragraph refer to letters that are written documents

that speaks for themselves, and Plaintiff's characterization of them is, therefore, denied. To the

extent that a response is required, ECFMG admits in part and denies in part the allegations of this

paragraph. ECFMG admits that Kara Corrado, the ECFMG Vice President of Operations, sent a

letter to counsel for Plaintiff on November 21, 2018 that, *inter alia*, (i) confirmed Plaintiff would

make personal appearance with his attorneys at a hearing before the ECFMG Medical Education

Credentials Committee on November 28, 2018 in connection with allegations of "irregular

behavior" against Plaintiff, (ii) corrected numerous misstatements set forth in a letter from counsel

for Plaintiff dated November 13, 2018, and (iii) as ECFMG had already done multiple times,

invited Plaintiff and USAT to provide evidence to ECFMG that USAT's operations in the United

SAppx0150

States were authorized.  ECFMG further admits that Lisa Cover, the ECFMG Senior Vice President for Business Development and Operations, sent a letter to Plaintiff on October 18, 2018, which (i) gave Plaintiff notice of the allegations of "irregular behavior" against Plaintiff, (ii) enclosed numerous documents supporting the allegations of "irregular behavior" against Plaintiff, and (iii) invited Plaintiff to make a personal appearance before the ECFMG Medical Education Credentials Committee at a hearing regarding the allegations of "irregular behavior" against Plaintiff, pursuant to the Committee's policies and procedures.  ECFMG denies the remaining allegations of this paragraph.

13.    USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

**ANSWER**:    The allegations of this paragraph refer to a written document that speaks for itself, and Plaintiff's characterization of it is, therefore, denied.  To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph.  ECFMG admits that before ECFMG learned of USAT's unauthorized operations in the United States, ECFMG treated USAT as a foreign medical school located in Montserrat based on authorization by Montserrat to operate there.  ECFMG lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph and they are, therefore, denied.

14.    Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

SAppx0151

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that a finding of "irregular behavior" results in a permanent annotation of that finding in ECFMG's records.  ECFMG denies the remaining allegations of this paragraph.

15.    The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that a hearing about the allegations of "irregular behavior" against Plaintiff was held on November 28, 2018 before ECFMG's Medical Education Credentials Committee pursuant to the Committee's policies and procedures.  ECFMG admits that it allotted 20 minutes for the hearing (consistent with ECFMG's ordinary practice) and that the hearing concluded sooner because Plaintiff (through his counsel) refused to engage and became argumentative.  ECFMG denies the remaining allegations of this paragraph.

16.    There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

17.    The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

**ANSWER**:    ECFMG denies the allegations of this paragraph.

SAppx0152

18.     The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

19.     There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

20.     The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

### FIRST CAUSE OF ACTION
### Plaintiff v. ECFMG

21.     Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:     ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

22.     This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

9

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

23.    The Board allegedly refused to release scores of necessary medical exams to students and graduates of USAT, de facto, closing the University.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

24.    The Board published, in the World Directory of Medical Schools, a warning to students that it would not recognize USAT with respect to necessary medical qualifying examinations after January 1, 2019. *See* Exhibit B.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

25.    The Board sent illegal "affidavits" to students in an attempt to intimidate them from continuing as students at USAT. These alleged affidavits threatened medical students with perjury, as well as "irregular behavior", and also directed the students to provide certain documentary evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process, and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena duces tecum" without first having a legal proceeding. The Board had no power to issue these so-called affidavits. These affidavits are also a violation of Federal Education Records Protection Act (FERPA). Students are predominantly US citizens and are entitled to such protection under FERPA.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

26.    The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as President of the University by discouraging students from registering or continuing their education at USAT, including verbal recommendations from ECFMG case workers. The Board issued "affidavits" and threatened to find students of USAT guilty of "irregular behavior".

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

27.    There was no hearing before the students of USAT were sent emails by the ECFMG telling them that they may have been assigned "irregular behavior" and that their scores would not be released to medical institutions to be accepted for residency applications or other ECFMG services.

SAppx0154

**ANSWER**:     The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

28.     ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity.

**ANSWER**:     The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

29.     As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

**ANSWER**:     The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

30.     Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

**ANSWER**:     The Court dismissed Plaintiff's First Cause of Action, and thus no response to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**     The Court dismissed Plaintiff's First Cause of Action, and thus no response to this WHEREFORE clause is required.

11

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

32.    This cause of action is for violation of due process by the ECFMG (the Board).

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

33.    The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

34.    The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

35.    The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

12

36.    The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Corn., State Bd. of Medicine* 529 Pa. 535 (1992).

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

37.    ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia,* because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

38.    The Board has acted as a governmental entity, and is estopped from denying the same.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

39.    When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

40.    Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

SAppx0157

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

41.    The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

42.    As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    In response to this WHEREFORE clause, ECFMG denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever, including the relief requested in this WHEREFORE clause.  ECFMG denies the remaining allegations of this paragraph.

### THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

SAppx0158

44.    This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response

to this paragraph is required.

45.    As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

(a)    representing itself as an official governmental agency;

(b)    distributing affidavits to intimidate USAT students, which affidavits did not have a disclaimer or conform to law;

(c)    placing misleading information about USAT into the World Directory of Medical Schools without notice, and which was designed to intimidate students and to effectively force closure of USAT;

(d)    using illegal affidavits whose purpose was to gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp, all of which was in violation of FERPA, the Family Educational Rights and Privacy Act;

(e)    violating FERPA by not receiving the requisite consent of students to their educational records.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response

to this paragraph and its subparts is required.

46.    As indicated in the prior counts, the Board has held itself out as a governmental agency. The Board has never indicated to those that it dealt with, in particular the students, that it is not an official governmental agency.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response

to this paragraph is required.

47.    Accordingly, the Board is estopped by its conduct to deny that it is required to show due process, as if it were a governmental entity.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response

to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing

SAppx0159

for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this WHEREFORE clause is required.

## FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

49.    This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky, which is attached and incorporated as Exhibit A.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

50.    Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG, heretofore described.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

51.    On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing him as Professor and President of USAT at its main location in Montserrat.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

52.    In this letter, Dr. Pinsky indicated, *inter alia,* essentially, that the ECFMG Committee had determined that, for a minimum period of five years, from the date of the letter, that Dr. Tulp was banned from submitting any documents or having any dealings with the ECFMG on behalf of USAT or otherwise.

16

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.

53.    This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

54.    This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

55.    This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

56.    Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

**ANSWER**:    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

57.    The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the

17

actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no

response to this paragraph is required. To the extent that a response is required, ECFMG denies

the allegations of this paragraph.

58. The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

       (a)    banning Dr. Tulp without a proper hearing;

       (b)    banning Dr. Tulp without an evidentiary basis;

       (c)    forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;

       (d)    requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;

       (e)    terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;

       (f)    finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no

response to this paragraph and its subparts is required. To the extent that a response is required,

ECFMG denies the allegations of this paragraph and its subparts.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

SAppx0162

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this WHEREFORE clause is required.   To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiff, and expressly denying any and all wrongdoing, ECFMG alleges the following affirmative defenses.   ECFMG presently has insufficient knowledge or information to form a belief as to whether there are additional defenses than those stated below.   Therefore, ECFMG expressly reserves the right to assert additional defenses.

1.    The Complaint fails to state a due process claim upon which relief may be granted.

2.    Plaintiff's due process claim fails because ECFMG afforded Plaintiff due process.

3.    Plaintiff's due process claim fails because Plaintiff had notice and an opportunity to be heard.

4.    Plaintiff's due process claim is barred because Plaintiff has not suffered any actual injury or damage.

5.    Plaintiff is not entitled to relief under the doctrine of unclean hands.

6.    Plaintiff failed to mitigate his purported damages.

19

Respectfully submitted,

DATED:  April 9, 2019

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates*

SAppx0164

**CERTIFICATE OF SERVICE**

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiffs*

DATED:  April 9, 2019                  */s/ Elisa P. McEnroe*_____
                                       Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:18-cv-05540-WB |
| | ) |
| v. | ) Hon. Wendy Beetlestone |
| | ) |
| EDUCATIONAL COMMISSION FOR | ) |
| FOREIGN MEDICAL GRADUATES and | ) |
| DR. WILLIAM W. PINSKY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth in the attached memorandum of law, Defendant Educational

Commission for Foreign Medical Graduates ("ECFMG"), by and through its undersigned counsel,

moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.

Dated: May 3, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document and its attachments to be served via electronic filing upon the following counsel of

record using the ECF system and/or via email:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiff*

DATED:  May 3, 2019                              */s/ Elisa P. McEnroe*
                                                  Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' MOTION FOR SUMMARY JUDGMENT

Dated: May 3, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

        A.      The Educational Commission for Foreign Medical Graduates.............................. 2

        B.      ECFMG's Policies and Procedures Regarding Irregular Behavior ...................... 3

        C.      Dr. Tulp Provided False Information to ECFMG During Its Investigation
                of USAT's Unauthorized Operations in the United States. .................................. 5

        D.      ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior............. 7

        E.      Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of
                His Irregular Behavior. ....................................................................................... 7

        F.      ECFMG Determined Dr. Tulp Engaged in Irregular Behavior. ........................... 9

        G.      The USAT Sponsor Note in the World Directory of Medical Schools ................ 9

        H.      Procedural History .............................................................................................. 10

III.    LEGAL STANDARD ......................................................................................... 11

IV.     ARGUMENT ...................................................................................................... 12

        A.      Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity
                to Be Heard. ...................................................................................................... 12

                1.      This Court Already Ruled Dr. Tulp Was Afforded Notice and an
                        Opportunity to Be Heard ......................................................................... 13

                2.      Dr. Tulp Received Notice of the Irregular Behavior Allegations............. 14

                3.      Dr. Tulp Had Multiple Opportunities to be Heard................................... 15

                4.      ECFMG's Updates to the USAT Sponsor Note Cannot Establish A
                        Due Process Violation ............................................................................. 17

        B.      The Action Taken as to Dr. Tulp Is Not One Of The Limited
                Circumstances Where Judicial Interference Is Appropriate. .............................. 19

        C.      Dr. Tulp Is Not Entitled To Legal Or Equitable Relief. .................................... 20

V.      CONCLUSION................................................................................................... 23

SAppx0169

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970).........................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................................11

*Biliski v. Red Clay Consol. Sch.Dist. Bd. of Educ.*,
  574 F.3d 214 (3d Cir. 2009).................................................................14, 16, 17

*Boehm v. Univ. of Pa. Sch. of Veterinary Med.*,
  573 A.2d 575 (Pa. Super. Ct. 1990)................................................................13

*Brewer v. Quaker State Oil Ref. Corp.*,
  72 F.3d 326 (3d Cir. 1995).......................................................................... 11-12

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985).........................................................................................13

*Celotex Corp. v. Caltrett*,
  477 U.S. 317 (1986).........................................................................................11

*David v. Neumann Univ.*,
  177 F. Supp. 3d 920 (E.D. Pa. 2016)..............................................................14

*EBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006).................................................................................... 20-21

*ECRI v. McGraw–Hill, Inc.*,
  809 F.2d 223 (3d Cir. 1987)............................................................................21

*Fed. Deposit Ins. Corp. v. Mallen*,
  486 U.S. 230 (1988).........................................................................................17

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*,
  765 F.3d 205 (3d Cir. 2014)............................................................................21

*Fireman's Ins. Co. of Newark v. Du Fresne*,
  676 F.2d 965 (3d Cir. 1982)............................................................................12

*Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*,
  No. 3:18-cv-00621-BJD-JBT, ECF No. 39 (M.D. Fla. July 9, 2018)....................22

SAppx0170

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Guttenberg v. Emergy,*
 26 F. Supp. 3d 88 (D.D.C. 2014) ...........................................................................22

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*
 882 F.2d 797 (3d Cir. 1989) ..................................................................................21

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,*
 909 F.2d 1524 (3d Cir. 1990) ................................................................................11

*Kimberg v. Univ. of Scranton,*
 411 F. App'x 473 (3d Cir. 2010) ...........................................................................14

*Marlboro Corp. v. Ass'n of Indep.Colleges and Schools,*
 556 F.2d 78 (1st Cir. 1977) ...................................................................................16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986) ..............................................................................................12

*Matthews v. Eldridge,*
 424 U.S. 319 (1976) ..............................................................................................16

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,*
 24 F.3d 519 (3d Cir. 1994) .........................................................................13, 15, 20

*Osei v. Temple Univ.,*
 518 F. App'x 86 (3d Cir. 2013) .............................................................................15

*Pallante v. Those Certain Underwriters at Lloyd's, London,*
 311 F. Supp. 3d 692(E.D. Pa. 2018) ......................................................................21

*Psi Upsilon of Phila. v. Univ. of Pa.,*
 591 A.2d 755 (Pa. Super. Ct. 1991) ................................................................ *passim*

*Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n,*
 309 A.2d 353 (Pa. 1973) ..................................................................................19, 20

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n,*
 No. 17-13708, 2017 WL 6342629 (E.D. Mich. Dec. 12, 2017) .......................22, 23

*Whitmore v. Liberty Mut. Fire Ins. Co.,*
 No. 07-5162, 2008 WL 4425227 (E.D. Pa. Sept. 30, 2008) ...................................12

*Winter v. Nat. Res. Def. Counsel, Inc.,*
 555 U.S. 7 (2008) ..................................................................................................22

SAppx0171

Case 2:18-cv-05540-WB    Document 39-1    Filed 05/09/19    Page 5 of 29

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

**Rules**

Fed. R. Civ. P. 56(a) ....................................................................................................11

Fed. R. Civ. P. 56(c)(1)(A) .........................................................................................11

SAppx0172

## I.   **INTRODUCTION**

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") moves for summary judgment as to Plaintiff Dr. Orien L. Tulp's common law due process claim, the sole claim remaining in this action, because the undisputed material facts confirm that Dr. Tulp was afforded due process and he is not entitled to any relief.[1]

In his Complaint, Dr. Tulp alleges that ECFMG violated his due process rights by deciding not to accept documents signed by Dr. Tulp after finding that he made false representations to ECFMG in violation of ECFMG's policies and procedures. But it is undisputed that ECFMG took action as to Dr. Tulp after giving Dr. Tulp (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him. Indeed, following a lengthy hearing earlier in this case on Dr. Tulp's Motion for a Preliminary and/or Permanent Injunction (which was denied) and considering the facts here, this Court already concluded that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 79. Discovery confirms that the Court's conclusion cannot genuinely be disputed. Moreover, discovery established that Dr. Tulp is entitled to neither legal nor equitable relief given the complete absence of proof of damages resulting from the alleged due process violation and Dr. Tulp's failure to satisfy the requirements for a permanent injunction.

Accordingly, there remain no genuine issues of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim. This Court should grant summary

---

[1]    On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky. *See* ECF No. 29. As a result, the Motion for Summary Judgment is brought by and on behalf of ECFMG only, the sole remaining defendant.

1

judgment in favor of ECFMG on Dr. Tulp's common law due process claim, dismissing the remainder of Dr. Tulp's case in its entirety.

## II.    BACKGROUND

### A.    The Educational Commission for Foreign Medical Graduates

ECFMG is a private non-profit organization that promotes quality health care for the public by certifying physicians who receive their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical education.  SOF ¶¶ 1-2.  ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for entry into graduate medical education and health care systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, and (iii) verifying credentials and providing other services to health care professionals worldwide.  SOF ¶ 3.

To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school.  SOF ¶ 4.  An "international medical school" is "an education facility located in a country *outside of the United States and Canada* with its primary campuses and main operations *located in that country*."  SOF ¶ 5 (emphasis added).  If an international medical school has a branch campus outside the country where its primary campus is located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."  SOF ¶ 6.

2

Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate. SOF ¶ 7. This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school. SOF ¶ 8.

**B.    ECFMG's Policies and Procedures Regarding Irregular Behavior**

ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior define irregular behavior as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG." SOF ¶ 9. Examples of irregular behavior include, but are not limited to, failing to comply with an ECFMG policy, procedure and/or rule, or providing false information to ECFMG. SOF ¶ 10.

ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

- Once ECFMG becomes aware of potential irregular behavior, ECFMG staff investigates the situation. SOF ¶ 13(a). Depending on the specific circumstances of the potential irregular behavior, that investigation can involve the gathering of additional information. SOF ¶ 13(a).

- "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee[,]" a sub-committee of the ECFMG Board of Trustees. SOF ¶ 13(b).

- Individuals alleged to have engaged in irregular behavior are "advised in writing of the nature of the alleged irregular behavior and provided with a copy of the *Policies and*

3

*Procedures Regarding Irregular Behavior*."  SOF ¶ 13(c).  In practice, they are also provided with a copy of materials supporting the allegation of irregular behavior that are to be provided to the Medical Education Credentials Committee.  SOF ¶ 45.

- Individuals alleged to have engaged in irregular behavior are also given "an opportunity to provide written explanation and to present other relevant information" to ECFMG.  SOF ¶ 13(d).  They "may also request the opportunity to appear personally before the Medical Education Credentials Committee" to testify under oath (with representation by counsel, if desired) about the allegations of irregular behavior.  SOF ¶ 13(e).

- After the Medical Education Credentials Committee reviews the evidence—including any written explanation, testimony, or other relevant information provided by the individual alleged to have engaged in irregular behavior—the Medical Education Credentials Committee votes on whether the allegations of irregular behavior are founded.  SOF ¶ 13(h).

- If the Medical Education Credentials Committee determines that the allegations of irregular behavior are founded, "the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior," and ECFMG notifies the individual as to the Medical Education Credentials Committee's decisions.  SOF ¶ 13(h)-(i).

- Individuals found to have engaged in irregular behavior may appeal the Medical Education Credentials Committee's finding to ECFMG's Review Committee for Appeals, another sub-committee of the ECFMG Board of Trustees made up of members independent of the Medical Education Credentials Committee.  SOF ¶ 13(j).

4

They also may petition the Medical Education Credentials Committee to reconsider its finding.  SOF ¶ 14.

**C.   Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.**

Plaintiff Dr. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  SOF ¶ 15.  Even though Dr. Tulp is affiliated with USAT, he testified in this case that he has never earned money from USAT.  SOF ¶¶ 18-19.  Rather, he has been retired for decades and his income is derived entirely from pensions.  SOF ¶ 20.

In mid-2018, ECFMG received information indicating that USAT was operating a campus and providing medical education in Miami, Florida.  SOF ¶ 21.  ECFMG had never received evidence demonstrating that USAT had authorization from the United States or Florida to operate a branch campus in Miami.  SOF ¶ 23.

Accordingly, on August 21, 2018, ECFMG sent a letter to Dr. Tulp requesting that Dr. Tulp "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States."  SOF ¶ 22.  ECFMG requested information covering "the whole time period that the USAT Miami branch campus has been in operation."  SOF ¶ 23.

Later that day, Dr. Tulp responded to ECFMG via email:

This is incorrect information.  The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. [sic] It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis in its origination.

5

SOF ¶ 24.

In the weeks that followed, ECFMG received additional information suggesting that Dr. Tulp's statement to ECFMG regarding USAT purportedly not providing education in the United States was false and that USAT was actually operating multiple satellite campuses in cities across the United States. SOF ¶ 25. In light of the additional information confirming that Dr. Tulp's representations to ECFMG were false, ECFMG sent another letter to Dr. Tulp on September 14, 2018, advising him that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements." SOF ¶ 26. As part of that ongoing review, ECFMG informed Dr. Tulp that it had "reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT" and that "USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG." SOF ¶ 26. The affidavit asked USAT students and graduates to certify (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses. SOF ¶ 27.

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat. SOF ¶ 28. There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students." SOF ¶ 29. As a result, ECFMG circulated a second affidavit to USAT students and graduates, in which ECFMG sought information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT. SOF ¶ 30.

6

**D.    ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior.**

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that

he engaged in irregular behavior by providing false information to ECFMG.  SOF ¶¶ 31-36.  The

letter summarized the allegations in the opening paragraph as follows:

> Specifically, you provided false information to ECFMG when you (1) notified ECFMG
> that USAT does not operate a branch campus in Miami, Florida and (2) certified to the
> attendance dates of several USAT students and graduates when ECFMG has information
> that these students were not attending USAT during some of the time periods to which you
> certified.  The details of ECFMG's allegation are set forth below.

SOF ¶ 32.  The letter went on to describe at length the allegations against Dr. Tulp.  SOF ¶¶ 33-

35.

The letter informed Dr. Tulp that ECFMG's Medical Education Credentials Committee

would be meeting on November 28, 2018 to address the allegations of irregular behavior against

him.  SOF ¶ 35.  The letter also listed and included many of the documents that would be presented

to the Medical Education Credentials Committee in connection with their review of the allegations

concerning Dr. Tulp.  SOF ¶ 35.  All of the documents that would be presented to the Medical

Education Credentials Committee were provided later to Dr. Tulp's attorneys before the November

28 meeting.  SOF ¶¶ 45-46.

**E.    Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of His
        Irregular Behavior.**

In its October 18, 2018 letter, ECFMG invited Dr. Tulp to submit to ECFMG a written

response to the allegations of irregular behavior and any relevant information that he wanted

ECFMG to consider in connection with the allegations of irregular behavior.  SOF ¶ 35.  It also

invited Dr. Tulp to appear personally and with counsel before the Medical Education Credentials

Committee on November 28, 2018, which Dr. Tulp elected to do.  SOF ¶ 35.

7

Before the meeting of the Medical Education Credentials Committee, Dr. Tulp's counsel communicated with ECFMG about the allegations of irregular behavior and the Medical Education Credentials Committee. SOF ¶¶ 37-46. ECFMG also provided Dr. Tulp's counsel with copies of materials that the Medical Education Credentials Committee would review in connection with the allegations of irregular behavior concerning Dr. Tulp. SOF ¶¶ 45-46.

On November 28, 2018, Dr. Tulp appeared before the Medical Education Credentials Committee along with his two attorneys. SOF ¶ 47. ECFMG typically allows only one attorney to attend these meetings on behalf of an individual suspected of irregular behavior, but in this instance, it granted Dr. Tulp's request to bring both of his attorneys. SOF ¶ 39. One of his attorneys made an opening statement, in which he objected to the Medical Education Credentials Committee's authority and procedures; he did not present a substantive response to the allegations of irregular behavior. SOF ¶¶ 51-54. He concluded by stating, "That is our opening statement. If you have any questions, you can address them to me. ***Dr. Tulp will not be answering any questions.***" SOF ¶ 54 (emphasis added). Counsel for ECFMG repeatedly invited Dr. Tulp's counsel (and Dr. Tulp himself) to present a substantive response to the allegations of irregular behavior or the materials provided to Dr. Tulp and his counsel before the meeting. SOF ¶ 55. After much back and forth, Dr. Tulp's counsel stated on the record, "***Dr. Tulp is not going to be talking today. The next time you hear him talk is going to be in federal court.***" SOF ¶ 56 (emphasis added). After several more unsuccessful attempts by counsel for ECFMG to elicit a substantive response from Dr. Tulp and his counsel regarding the allegations of irregular behavior, counsel for ECFMG adjourned the meeting. SOF ¶¶ 57-62. A full read of the transcript gives a complete picture of Dr. Tulp's opportunity (and refusal) to be heard. *See* JA0139-JA0171.

SAppx0180

**F.     ECFMG Determined Dr. Tulp Engaged in Irregular Behavior.**

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Medical Education

Credentials Committee had completed its review and determined that Dr. Tulp had engaged in

irregular behavior.  SOF ¶ 63.  As a result, ECFMG decided it would "not accept any documents

signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a

minimum of five years from today; thereafter, the prohibition shall end only upon a petition to

ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity

with, and willingness to adhere to, ECFMG policies."  SOF ¶ 63.  The action taken by ECFMG

does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as

a professor or administrator at a medical school because any medical school affiliated with Dr.

Tulp could authorize a different official to sign documents for ECFMG.  SOF ¶¶ 64-65.  Indeed,

USAT may continue to submit documents to ECFMG because it has other "authorized

signatories."  SOF ¶ 65.  Thus, the limited practical effect of the irregular behavior finding is that

ECFMG will not accept representations or certifications ***by Dr. Tulp*** as valid in connection with

the ECFMG's certification process (at least for a period of five years).

**G.     The USAT Sponsor Note in the World Directory of Medical Schools**

The World Directory of Medical Schools is a listing of the world's medical schools.  SOF

¶ 69.  ECFMG uses a "Sponsor Note" in the World Directory to inform the public generally and

students or graduates of the school specifically whether students and graduates from particular

schools in particular years are eligible to apply for ECFMG certification.  SOF ¶ 69.

On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT to reflect

the use of affidavits in the certification process as follows:

> Currently students and graduates of USAT are subject to enhanced procedures that must
> be met in order to be eligible for ECFMG Certification related services, including but not
> limited to:  ECFMG Certification, USMLE examinations that lead to ECFMG certification,

SAppx0181

and Electronic Residency Application Service (ERAS) Support Services. ECFMG will
provide information and instructions to applicants upon receipt of application.

SOF ¶ 70. USAT was given notice of the "enhanced procedures" described in the Sponsor Note

via letter from Ms. Corrado. SOF ¶ 71.

Then, as ECFMG's investigation continued into USAT's authorization (or lack thereof) to

operate as it had, on or around October 18, 2018, ECFMG updated its Sponsor Note for USAT

again, this time to reflect ECFMG's decision that beginning on January 1, 2019, future USAT

students and graduates would not be eligible for ECFMG certification unless and until USAT

provided satisfactory documentation from U.S.-based authorities allowing USAT to operate

branch campuses in the United States. SOF ¶ 72. Accordingly, ECFMG updated its Sponsor Note

to include the following language:

> Note: As of January 1, 2019, students and graduates of this medical school with a
> graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG
> Certification, which also renders them ineligible to apply to ECFMG for the United States
> Medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

SOF ¶ 72. USAT was given notice of the change to ECFMG's Sponsor Note via letter from Ms.

Corrado. SOF ¶ 73. In that same letter, Ms. Corrado again invited USAT to provide the requested

documentation. *See* JA0113-JA0114. USAT did not then and has never since provided the

requested documentation. SOF ¶ 23.

ECFMG's Sponsor Note for USAT currently has both the language added in September

2018 and the language added in October 2018. SOF ¶ 74. ECFMG did not update its Sponsor

Note for USAT to reflect the finding of irregular behavior against Dr. Tulp. SOF ¶ 75.

### H. Procedural History

On December 24, 2018, Dr. Tulp sued ECFMG and its President, Dr. William W. Pinsky,

alleging that they committed various constitutional and common law torts in the course of

investigating and then taking action against Dr. Tulp. *See* ECF No. 1. Dr. Tulp moved for

10

injunctive relief on January 2, 2019, and following a full hearing on the motion on January 24, 2019, this Court denied Dr. Tulp's motion. *See* SOF ¶ 78. In explaining that Dr. Tulp had not proven a likelihood of success on his constitutional due process claim, the Court specifically noted that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 78.

On March 26, 2018, the Court granted in part Defendants' Motion to Dismiss and dismissed all of Dr. Tulp's claims against ECFMG and Dr. Pinsky, except for a single common law due process claim against ECFMG. *See* ECF No. 29. In its opinion allowing the common law due process claim to proceed, the Court focused on Dr. Tulp's allegations regarding his appearance before the Medical Education Credentials Committee, specifically his allegation in the Complaint that ECFMG ended the hearing "before allowing [Dr. Tulp] an opportunity to present his side of the story." *See* ECF No. 28 at 12. Presently, ECFMG moves for summary judgment on this sole remaining claim.

## III.   **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Then, the nonmoving party has the burden of showing there is a genuine issue for trial by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) (holding that once the movant discharges its burden, the non-movant "must establish the existence of each element on which it bears the burden of proof") (citing *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir.

SAppx0183

1995) (recognizing that a genuine issue exists solely if the nonmoving party "provides sufficient evidence to allow a reasonable jury to find for him at trial").

The party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine dispute. *Fireman's Ins. Co. of Newark v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[t]he party opposing summary judgment must support each essential element of that party's opposition with concrete evidence in the record. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. This requirement upholds the underlying purpose of summary judgment which is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." *Whitmore v. Liberty Mut. Fire Ins. Co.*, No. 07-5162, 2008 WL 4425227, at *1 (E.D. Pa. Sept. 30, 2008) (citations and internal punctuation omitted).

## IV.   ARGUMENT

### A.   Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard.

Assuming for purposes of this Motion that ECFMG owes common law due process obligations to Dr. Tulp,[2] Dr. Tulp cannot succeed on his common-law due process claim because there is no genuine dispute that he was afforded due process. In Pennsylvania, the common law

---

[2]      Indeed, it is not clear that Dr. Tulp in fact pleaded a due process claim under the common law as opposed to under the United States Constitution. At the injunction hearing on January 24, 2019, this Court asked Dr. Tulp's counsel to confirm "exactly what causes of action are being asserted." SOF ¶ 76. When the Court twice described Dr. Tulp's due process claim as "a § 1983 claim alleging that ECFMG violated [Dr.] Tulp's procedural and substantive due process rights as protected by the 14th Amendment," Dr. Tulp's counsel twice responded, "Yes, Your Honor." SOF ¶ 77. Because Dr. Tulp failed to plead a common law due process claim in the Complaint, summary judgment in favor of ECFMG is also warranted on that basis.

SAppx0184

duty of due process emerges from the private school and university context, in which "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides," provided that such procedures are "fundamentally fair." *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991) (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 577 (Pa. Super. Ct. 1990)).  Whether procedures are "fundamentally fair" is determined by whether a student being disciplined was given notice of the charges and an opportunity to be heard. *Id.* at 759–60.

"[T]he requirements of common law due process are quite similar to those for constitutional due process, and most courts treat them interchangeably." *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 535 (3d Cir. 1994) (concurring, J. Becker).  Constitutional due process similarly focuses on whether there was notice and opportunity for hearing appropriate to the nature of the case. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### 1. *This Court Already Ruled Dr. Tulp Was Afforded Notice and an Opportunity to Be Heard.*

In denying Dr. Tulp's request for injunctive relief in this case, this Court concluded that ECFMG's disciplinary hearing met the requirements of constitutional due process and that there was notice and opportunity to be heard. *See* SOF ¶ 78; JA0306 (Injunction Hr'g Tr. 131:5-11 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))).  Indeed, the Court specifically stated in its ruling that "*[i]n this case, there was notice and an opportunity to be heard.*"  SOF ¶ 78 (emphasis added).  This is confirmed by the facts discussed below, *see infra*, and Dr. Tulp can point to no evidence or disputes of material fact to disturb the Court's prior

13

conclusion.  Thus, Dr. Tulp's irregular behavior proceeding also satisfies the notice and opportunity to be heard requirements of the common law duty of due process.[3]

### 2.   *Dr. Tulp Received Notice of the Irregular Behavior Allegations.*

Dr. Tulp received notice of the allegations that he engaged in irregular behavior. Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, on October 18, 2018, ECFMG sent a letter to Dr. Tulp summarizing and describing in detail the allegations of irregular behavior against him.  SOF ¶¶ 31-36.  Prior to the November 28, 2018 meeting of the Medical Education Credentials Committee, Dr. Tulp's counsel received copies of materials to be considered by the Medical Education Credentials Committee in reaching a decision regarding irregular behavior.  SOF ¶¶ 45-46.  Moreover, Dr. Tulp and his counsel received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior. SOF ¶¶ 37-46.  Indeed, ECFMG's Policies and Procedures Regarding Irregular Behavior are both publicly available on the internet and were sent to Dr. Tulp in connection with the allegations of irregular behavior.[4]  SOF ¶¶ 9, 35.

Courts routinely find that similar activities constitute sufficient notice of accusations and the procedures through which the accusations of misconduct may be resolved.  *See, e.g.*, *Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (holding that a discharged employee was given sufficient notice of the reasons for his dismissal when he was

---

[3]     ECFMG met these requirements despite the fact that "[p]rivate institutions need not endow their students with the constitutional due process protections that state [entities] are obliged to provide."  *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 926 (E.D. Pa. 2016) (quoting *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010)).

[4]     ECFMG's actions complied with its Policies and Procedures Regarding Irregular Behavior. Because private entities bear "no obligation to afford [plaintiffs] protections in addition to those expressly embodied in" their written policies and procedures, *Kimberg v. Univ. of* Scranton, 411 F. App'x 473, 481 (3d Cir. 2010), ECFMG afforded Dr. Tulp due process.

SAppx0186

provided with multiple disciplinary memos which described the alleged misconduct and what body would decide whether dismissal was appropriate); *McKeesport Hosp.*, 24 F.3d at 532 (defendant accrediting council's use of detailed letters to communicate areas in which plaintiff hospital needed to improve, coupled with allowance of opportunity for hospital to submit additional information to address these concerns, constituted adequate notice of deficiencies before withdrawal of accreditation) (Becker, J., concurring); *Psi Upsilon of Phila.*, 591 A.2d at 758–59 (holding that University's procedure of sending a statement explaining charges and violations to disciplined fraternity members before a disciplinary hearing was sufficient notice of pending charges); *Osei v. Temple Univ.*, 518 F. App'x 86, 89 (3d Cir. 2013) (holding that even a one-day notice of witness testifying against plaintiff at hearing was sufficient notice under the school disciplinary context and constituted due process).

It cannot be disputed that Dr. Tulp received a letter from ECFMG detailing the allegations of irregular behavior.  SOF ¶¶ 31-36.  It also cannot be disputed that Dr. Tulp received that letter more than a month before the meeting of the Medical Education Credentials Committee and nearly two months before a decision regarding the allegations of irregular behavior.  SOF ¶ 47.  This, along with the entire record of ECFMG's communications with Dr. Tulp and his counsel, confirms that Dr. Tulp received adequate notice of the allegations against him.

### 3. *Dr. Tulp Had Multiple Opportunities to be Heard.*

Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, Dr. Tulp had ample opportunity to be heard in connection with the allegations of his irregular behavior.

*First*, Dr. Tulp had an opportunity to present a written response to the allegations of irregular behavior and provide any relevant information that he wanted the Medical Education Credentials Committee to consider.  SOF ¶¶ 13(d), 35.  Because "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is

15

tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247-48 (1988)), Dr. Tulp's opportunity to provide a written submission and relevant information in response to the allegations of irregular behavior constitute an adequate opportunity to be heard. *See Matthews v. Eldridge*, 424 U.S. 319, 334, 344–46 (1976) (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place).

**Second**, Dr. Tulp also had an opportunity to appear personally before the Credentials Committee with two attorneys of his choosing. SOF ¶ 13(e)-(f), 35, 47. *See, e.g.*, *Psi Upsilon*, 591 A.2d at 759 (presence of legal counsel at hearing speaks to adequacy of process given). Dr. Tulp's counsel made a full opening statement and had the opportunity to present whatever argument or substantive response he wished. SOF ¶¶ 51-62. Indeed, counsel for ECFMG repeatedly invited Dr. Tulp to give testimony and Dr. Tulp's counsel to address specific parts of the materials presented for the Committee's consideration. SOF ¶ 55-61. It was only after Dr. Tulp's counsel refused to allow Dr. Tulp to testify and refused to address specific documents that the meeting was adjourned.

That Dr. Tulp did not take full advantage of his personal appearance before the Medical Education Credentials Committee to provide evidence or argument in his favor, does not change the fact that he had an opportunity to be heard on the allegations of irregular behavior. If a plaintiff is "given ample opportunity to present its position by written submission and to argue it orally," and fails to "make the best use of those opportunities . . . the blame cannot be placed on the Commission." *Marlboro Corp. v. Ass'n of Indep.Colleges and Schools*, 556 F.2d 78, 82 (1st Cir. 1977). Here, Dr. Tulp failed to make the best use of his opportunities to present his case to the

16

Medical Education Credentials Committee in that he failed to provide any substantive response to the allegations of irregular behavior, let alone "make best use of those opportunities" to be heard. That failure does not mean he was denied due process.

Nor does the due process analysis change simply because no witnesses were called to testify. For starters, "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247 – 48 (1988)). Moreover, counsel for ECFMG repeatedly invited Dr. Tulp to speak or offer evidence, but he refused to do so. *See* SOF ¶¶ 54-56. In *Psi Upsilon of Philadelphia*, members of a disciplined fraternity argued that they were denied a fair opportunity to be heard at a disciplinary hearing because they invoked their privilege against self-incrimination given pending criminal charges, and thus did not testify or present evidence. 591 A.2d at 760. The court there found this contention to be without merit. *Id.* Similarly, Dr. Tulp's failure to testify at his own hearing or present any evidence, even though he was given multiple opportunities to do so, does not mean that he was denied a fair opportunity to be heard.

Because Dr. Tulp had an opportunity to be heard by the Medical Education Credentials Committee, both in writing and in person, he was afforded an opportunity to be heard consistent with his common law due process rights.

### 4. *ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation.*

It is expected that Dr. Tulp may argue that the timing of ECFMG's updates to its Sponsor Note for USAT in the World Directory of Medical Schools somehow demonstrates that Dr. Tulp was denied due process. Not so. At all times, ECFMG updated its Sponsor Note to accurately reflect steps taken by ECFMG to validate that USAT students and graduates attended a *bona fide*

17

international medical school and were thus eligible for ECFMG certification. At no point was the Sponsor Note updated in violation of Dr. Tulp's common law due process rights.

In September 2018, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know to expect that additional procedures would be necessary to secure ECFMG certification. In October 2018, after USAT failed to provide the documentation ECFMG repeatedly requested to prove that its operations in the United States complied with ECFMG policy, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know that starting on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG certification unless and until USAT proved it was in compliance with ECFMG policy. Neither of these updates to the USAT Sponsor Note violated Dr. Tulp's common law right to any form of due process.

Indeed, to the extent ECFMG notified Dr. Tulp of its intent to update the USAT Sponsor Note to reflect that Dr. Tulp had been found to have engaged in irregular behavior, that intent was made clear only *after* the finding of irregular behavior had been made, and the language was not been incorporated into the USAT Sponsor Note. SOF ¶¶ 63, 75. Thus, updates to the USAT Sponsor Note do not create any genuine dispute of material fact as to whether Dr. Tulp was denied due process and any argument to the contrary would be unavailing.

\*     \*     \*

As this Court previously concluded, Dr. Tulp was afforded notice of the allegations and evidence of irregular behavior, as well as an opportunity to be heard. This satisfies his common law right to due process in proceedings before the ECFMG and warrants summary judgment in favor of ECFMG on the sole remaining claim in this case.

18

**B.     The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Intervention Is Appropriate.**

Pennsylvania recognizes that "judicial interference in the affairs of private associations . . . is appropriate only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional advantages or fundamental constitutional rights." *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973); *see also Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 760 (Pa. Super. Ct. 1991) ("[C]ourts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present."). This is a case in which judicial interference in the affairs of ECFMG, a private association, would not be appropriate.

There is no dispute that ECFMG took action as to Dr. Tulp by deciding it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years . . . thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SOF ¶ 63. This does not deprive Dr. Tulp of a substantial economic or professional advantage or a fundamental constitutional right. It does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor of medicine. Indeed, it is undisputed that USAT has other authorized signatories, and there is no evidence to suggest that Dr. Tulp needs to serve as an authorized signatory in order for him or USAT to succeed. SOF ¶¶ 64-65. Moreover, Dr. Tulp has never derived income from USAT, SOF ¶¶ 18-20, so any interference with Dr. Tulp's ability to fulfil his duties as President of USAT could not possibly result in substantial economic harm to Dr. Tulp. Accordingly, ECFMG's action does not deprive Dr. Tulp of "substantial economic or professional advantages" or a "fundamental constitutional right[]," and judicial intervention is thus not appropriate here.

19

*See Sch. Dist. of City of Harrisburg*, 309 A.2d at 357; *see also McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F. 3d 519, 534 (3d Cir. 1994) (Becker, J., concurring) ("Courts must pay special deference to a professional accreditation organization's substantive decisions in light of the special expertise required to determine professional competency.").

### C.      Dr. Tulp Is Not Entitled To Legal Or Equitable Relief.

Even if Dr. Tulp could establish a common law due process violation (and, as explained above, he cannot), ECFMG is also entitled to summary judgment because the undisputed material facts confirm that Dr. Tulp is not entitled to legal or equitable relief.

Dr. Tulp is not entitled to recover damages because there is no evidence in the record to support a damages award. ECFMG requested that Dr. Tulp produce any and all documents he would use to support a damages award; no such documents were produced. SOF ¶ 79. To the contrary, Dr. Tulp testified that he never earned any money from USAT and that his income is derived entirely from pensions and has been for many years. SOF ¶¶ 18-20. Dr. Tulp has no evidence to substantiate a damages award, so summary judgment in favor of ECFMG is warranted on any claim for damages resulting from Dr. Tulp's common law due process claim.

Nor is Dr. Tulp entitled to equitable relief in the form of an injunction that would require ECFMG to grant an exception to its policies and procedures, which are in place to protect the health of the U.S. public. In addition to demonstrating ***actual*** success on the merits (which Dr. Tulp cannot do), Dr. Tulp would only be entitled to permanent injunctive relief if he demonstrates that "(1) [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *EBay Inc. v. MercExchange,*

SAppx0192

*L.L.C.*, 547 U.S. 388, 391 (2006).[5] Here, ECFMG is entitled to summary judgment on Dr. Tulp's claim for injunctive relief because the undisputed facts show that Dr. Tulp cannot satisfy any of these requirements.

***First***, to make a showing of irreparable harm, the requisite feared injury or harm must not be merely serious or substantial, but rather "must be of a peculiar nature so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). In denying Dr. Tulp's Motion for Preliminary and/or Permanent Injunction, this Court concluded that Dr. Tulp had "not shown immediate irreparable injury resulting from ECFMG's action . . . ." JA0309 (Injunction Hr'g Tr. 134:2-4). The evidence gathered in discovery confirms that conclusion. Dr. Tulp can present no evidence whatsoever of irreparable injury, which alone is grounds for denying injunctive relief. *See Pallante v. Those Certain Underwriters at Lloyd's, London*, 311 F. Supp. 3d 692, 695 n.3 (E.D. Pa. 2018) (denying injunction where movant "filed no relevant affidavit or verified pleading showing immediate and irreparable injury, loss, or damage"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

The types of harm allegedly suffered by Dr. Tulp are not irreparable as a matter of law. To the extent Dr. Tulp suggests that he would be irreparably harmed absent injunctive relief by virtue of his "removal . . . as a medical educator under the cloud of an indefinite sentence of 'irregular behavior' for a duration of not less than 5 years," Compl. ¶ 29, this argument fails as a matter of fact and law. Contrary to his naked allegations, the evidence shows that ECFMG's limited action did not cause the "removal of Dr. Tulp as a medical educator" for any period of time. SOF ¶¶ 63-

---

[5]    "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the expception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

SAppx0193

64.  Notwithstanding ECFMG's actions, Dr. Tulp remains free to teach medicine, and ECFMG has no say over whether Dr. Tulp continues to teach medicine at USAT in Montserrat or elsewhere. Indeed, Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands.  SOF ¶ 66.  Moreover, as a matter of law, any injury to Dr. Tulp's reputation is not irreparable and would not be avoided through injunctive relief.  ECFMG's finding of irregular behavior has already been made public, at the very least through Dr. Tulp having filed this lawsuit without filing under seal, and Dr. Tulp "is free to try to mitigate any reputational injury" as he sees fit, but it does not rise to the level of irreparable harm.  *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, No. 17-13708, 2017 WL 6342629, at *4 (E.D. Mich. Dec. 12, 2017); *Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*, No. 3:18-cv-00621-BJD-JBT, ECF No. 39, at 14 (M.D. Fla. July 9, 2018) (removal of information that "is already published and available to the public and has been for nearly two months . . . will not undo whatever harm [movant] claims has already occurred"); *Guttenberg v. Emergy*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014) ("As for injury to reputation, that chicken has already flown the coop. . . . Any adverse effects on [movant's] professional life . . . can be redressed through monetary compensation—if he is entitled to any—and hence that harm is by definition not irreparable.").

    ***Second***, Dr. Tulp cannot point to evidence showing that an injunction would be in the public interest.  *See, e.g.*, *Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.").  It would be contrary to the public interest for this Court to mandate that ECFMG continue to credit Dr. Tulp's signature when it has concluded, following a thorough investigation and hearing process, that Dr. Tulp made misrepresentations to ECFMG.  ECFMG has determined that Dr. Tulp made false statements to

<div align="center">22</div>

ECFMG about USAT, and Dr. Tulp has failed to present any evidence to alleviate ECFMG's concerns. *See* SOF ¶ 62. ECFMG endeavors to protect the health of the public through application of its policies and procedures, *see* SOF ¶¶ 1-3, and an end-run around them would be adverse to the public interest.

*Third*, the balance of harms weighs against injunctive relief. As to Dr. Tulp, ECFMG only restricted his authority to sign documents to be relied upon by ECFMG in connection with ECFMG's certification process. SOF ¶¶ 63-64. This does not interfere with his ability to earn a living, teach medicine, or work at a medical school. By contrast, ECFMG would suffer *substantial* harm if it were forced to accept Dr. Tulp's signature on documents notwithstanding his record of falsehoods. Numerous courts have held that orders interfering with a certification process like that of ECFMG poses a serious risk of harm to the certifying body and weighs against injunctive relief. *See, e.g.*, *Thomas M. Cooley Law Sch.*, 2017 WL 6342629, at *4 (refusing to grant injunction interfering with the ABA's decision to sanction a law school because doing so would harm the ABA by preventing it from executing its duties).

## V.    CONCLUSION

There remains no genuine issue of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim. Accordingly, ECFMG respectfully requests that the Court grant ECFMG's Motion for Summary Judgment and enter an Order in the form attached.

SAppx0195

Dated: May 3, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates*

24

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## [PROPOSED] ORDER

**AND NOW**, this __ day of _____ 2019, upon consideration of Defendant Educational Commission for Foreign Medical Graduates' ("ECFMG's") Motion for Summary Judgment and any response thereto, **IT IS HEREBY ORDERED** that ECFMG's Motion for Summary Judgment is **GRANTED**. The Clerk of the Court shall enter judgment in favor of Defendant ECFMG and against Plaintiff with respect to Plaintiff's remaining claim.

BY THE COURT:

_____

Beetlestone, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, ) <br><br> Plaintiff, ) <br><br> v. ) <br><br> EDUCATIONAL COMMISSION FOR ) <br> FOREIGN MEDICAL GRADUATES and ) <br> DR. WILLIAM W. PINSKY, ) <br><br> Defendants. ) | Case No. 2:18-cv-05540-WB <br><br> Hon. Wendy Beetlestone |

## STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' MOTION FOR SUMMARY JUDGMENT

**I.     The Educational Commission for Foreign Medical Graduates**

1.      Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization based in Philadelphia, Pennsylvania.  *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html, Dkt. No. 12-2).

2.      ECFMG promotes quality health care for the public by, among other things, certifying physicians who received their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into graduate medical education in the United States.  *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG,  https://www.ecfmg.org/about/statement-of-values.html,  Dkt. No. 12-2); *see also* JA0184-JA0185 (Tr. of Jan. 24, 2019 Preliminary Injunction Hearing (hereinafter "Injunction Hr'g. Tr.") 9:21-10:1).

SAppx0198

Case 2:18-cv-05549-WB   Document 319   Filed 05/03/19   Page 2 of 20

3.      ECFMG's responsibilities include (among other things):  (i) certifying the readiness of IMGs for entry into graduate medical education and healthcare systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, and (iii) verifying credentials and providing other services to health care professionals world wide.  *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html, Dkt. No. 12-2).

4.      To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school.  *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

5.      An "international medical school" is "an education facility located in a country **outside of the United States and Canada** with its primary campuses and main operations **located in that country**."  JA0003 (ECFMG Medical School Policy, Dkt. No. 12-3) (emphases added).

6.      If an international medical school has a branch campus outside the country where its primary campus is purportedly located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country."  JA0003 (ECFMG Medical School Policy, Dkt. No. 12-3).

2

7.      Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate.  *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

8.      This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school.  *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

**II.     ECFMG's Policies and Procedures Regarding Irregular Behavior**

9.      ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior define "irregular behavior" to include:

> all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG.  Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG.

JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

10.     ECFMG's Policies and Procedures Regarding Irregular Behavior provide: "Examples of irregular behavior include, but are not limited to, ***submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual***; failing to comply with United States Medical Licensing Examination or ECFMG policies, procedures, and/or rules; ***falsification of information on applications, submissions, or other materials to ECFMG***; taking an examination when not

3

eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals." JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4) (emphases added); *see* JA0032-JA0033 (ECFMG, *2019 Information Booklet* 27-28 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4) (irregular behavior includes providing false information or documents to ECFMG)); *see also* JA0204 (Injunction Hr'g Tr. 29:9-14).

11.     Irregular behavior charges can be brought against any individuals who are involved in the process of application for ECFMG certification or "any other person that would or could subvert the examination, certification or other processes programs or services of ECFMG," including medical school officials. JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0351-JA0352, JA0355-JA0356 (Tr. of Deposition of Dr. William W. Pinsky (hereinafter "Pinsky Dep.") 41:24-42:3, 45:22-46:7).

12.     ECFMG's Policies and Procedures Regarding Irregular Behavior describe ECFMG's process for investigating suspected irregular behavior, determining whether an individual engaged in irregular behavior, and taking appropriate action if a finding of irregular behavior is made. *See* JA0029-JA0033 (ECFMG, *2019 Information Booklet* 24-28 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

13.     ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

    a.   "After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and

<div align="center">4</div>

feasible, staff will conduct a follow-up investigation to gather additional information." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

b. "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

c. The individual who may have engaged in irregular behavior "will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0199 (Injunction Hr'g Tr. 24:10-17).

d. "The individual will be given an opportunity to provide written explanation and to present other relevant information. Any such written explanation or other relevant information must be received by ECFMG by the deadline set forth in ECFMG's writing to the individual. Submissions received after the deadline will be considered by the Medical Education Credentials Committee at its discretion." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

e. "The individual may also request the opportunity to appear personally before the Medical Education Credentials Committee, and may be represented by legal

5

counsel, if the individual so wishes." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0199 (Injunction Hr'g Tr. 24:10-17).

f.   "In instances in which the individual appears personally before the Medical Education Credentials Committee, a stenographic or audio recording will be made of that portion of the proceedings during which the individual is in attendance. Any statements made by the individual during a personal appearance before the Medical Education Credentials Committee will be under oath." JA0030-JA0031 (ECFMG, *2019 Information Booklet* 25-26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

g.   "All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the Medical Education Credentials Committee. The Medical Education Credentials Committee, based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior." JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

h.   "If the Medical Education Credentials Committee determines that the individual engaged in irregular behavior, the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior." JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

6

     i.    "ECFMG will notify the individual whether the Medical Education Credentials Committee determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto."  JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

     j.    "The Medical Education Credentials Committee's determination of irregular behavior and any action(s) taken pursuant thereto (a 'decision' of the Medical Education Credentials Committee) may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the Medical Education Credentials Committee did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the Medical Education Credentials Committee's decision was clearly contrary to the weight of the evidence before it.  The notice of appeal must be received by ECFMG within thirty (30) days of the date on which the notification advising the individual of the Medical Education Credentials Committee's decision was mailed to the individual.  The appeal of a decision of the Medical Education Credentials Committee is governed by the Rules of Appellate Procedure."  JA0031-JA0032 (ECFMG, *2019 Information Booklet* 26-27 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

14.    ECFMG's Policies and Procedures Regarding Irregular Behavior also allow individuals to submit petitions for reconsideration of a decision of the Medical Education Credentials Committee.  *See* JA0032 (ECFMG, *2019 Information Booklet* 27 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

SAppx0204

III.    **Dr. Orien L. Tulp**

15.     Plaintiff Dr. Orien L. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  JA0451 (Tr. of Deposition of Dr. Orien L. Tulp (hereinafter "Tulp Dep.") 24:2-6).

16.     For years, Dr. Tulp was an "authorized signatory" for USAT, meaning that ECFMG would accept his signature on submissions to ECFMG made on behalf of USAT.  *See* JA0474-JA0477 (Tulp Dep. 47:16-50:13).

17.     Dr. Tulp was one of several "authorized signatories" for USAT.  *See* JA0474-JA0475 (Tulp Dep. 47:16-48:23); *see also* JA0212-JA0213 (Injunction Hr'g Tr. 37:2-16).

18.     Dr. Tulp has never earned money from USAT.  JA0519 (Tulp Dep. 92:21-23).

19.     Dr. Tulp is not, and has not previously been, paid by USAT.  JA0519 (Tulp Dep. 92:10-15).

20.     Dr. Tulp retired 20 years ago, and his income is derived entirely from pensions, including a military pension, Social Security, and a teacher's retirement pension.  JA0519-0521 (Tulp Dep. 92:16-94:10).

IV.    **Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.**

21.     In July and August of 2018, ECFMG received information indicating that USAT was offering classes in Miami, Florida.  *See* JA0092 (Aug. 8, 2018 email to ECFMG); JA0093-JA0097 (Aug. 14, 2018 email from C. Ostwalt to S. Mealy).

22.     On August 21, 2018, D. Scott Mealey, ECFMG's Manager of Medical Education Resources & Operations Support, sent a letter to Dr. Tulp via email, which stated:

SAppx0205

Dear Dr. Tulp,

It has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida.

In order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country.

In light of this, ECFMG requests that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

JA0098; *see* JA0219 (Injunction Hr'g Tr. 44:9-18); JA0256, (Injunction Hr'g Tr. 81:4-82:11 (Dr. Tulp testifying that he received the August 21, 2018 letter)).

23.    The letter asked Dr. Tulp to provide the requested documentation "confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States" by September 3, 2018. JA0098. ECFMG never received documentation showing that USAT is authorized to conduct education in the United States. JA0220 (Injunction Hr'g Tr. 45:6-9).

24.    Later on August 21, 2018, Dr. Tulp responded to Mr. Mealey via email, writing:

Dear Mr. Mealey

This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination.

I hope this will clarify your concern.

JA0099; *see* JA0260-JA0262 (Injunction Hr'g Tr. 85:16-87:8 (Dr. Tulp testifying that he sent this email)).

SAppx0206

25.    Between August 21, 2018 and September 14, 2018, ECFMG received information that USAT was providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida and Dallas, Texas.  *See* JA0102 (Sept. 14, 2018 letter from K. Corrado to Dr. O. Tulp).

26.    On September 14, 2018, Kara Corrado, ECFMG's Vice President for Operations, sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp:
>
> This is a follow-up to our August 21, 2018 letter in which ECFMG requested information from you about the University of Science, Arts & Technology (USAT) Faculty of Medicine's satellite (or branch) campus in Miami, FL.  In response, you indicated, 'The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may [be] administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.  It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.'  We thank you for your quick reply.'
>
> ECFMG has since received information that USAT is providing medical education lectures not only at its Miami site, but also at sites in Tamp, FL, and Dallas, TX.
>
> It is critical that ECFMG ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements.  Therefore, ECFMG continues its review of this matter.  This letter is to advise you that, as part of its review, ECFMG has reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT.
>
> Effective today, USAT students and graduates seeking services related to ECFMG Certification, including registration for USMLE examinations, release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG.  Services will not be provided to individuals who do not complete the affidavit.  ECFMG has provided instructions about this process directly to the students and graduates.

JA0102; *see* JA0216 (Injunction Hr'g Tr. 41:5-13 ("We had had information that USAT was operating a campus in the United States in Florida.  And Dr. Tulp had indicated that that was not correct.  So we still were getting information contrary to that.  So we decided to send the affidavit to the students to get information from the students about where they actually did their basic sciences.")).

10

27.     ECFMG sent an affidavit to USAT students and graduates seeking ECFMG services, asking them to certify under penalty of perjury and under penalty of a finding of irregular behavior (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  *See* JA0119 (Affidavits Attesting to Medical School Attendance and Education Received at USAT); *see also* JA0191, JA0223 (Injunction Hr'g Tr. 16:1-6, 48:2-8 ("Essentially, in order to receive ECFMG services, they need to complete that affidavit and submit to ECFMG. And once ECFMG has reviewed it and accepted it, then we will continue to provide services to those graduates and students.")).

28.     More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.  *See* JA0175 (Jan. 10, 2019 Declaration of K. Corrado ¶ 4, Dkt. No. 12-10).

29.     There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students." JA0193 (Injunction Hr'g Tr. 18:7-16).

30.     A second affidavit was later circulated to USAT students and graduates, in which ECFMG sought information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT.  JA0120-JA0121 (Affidavits Attesting to Medical School Attendance and Education Received at USAT).

## V.     ECFMG Initiated Irregular Behavior Proceedings Concerning Dr. Tulp.

31.     On October 18, 2018, Lisa Cover, ECFMG's Senior Vice President for Business Development and Operations, sent a letter to Dr. Tulp advising him of allegations that he

SAppx0208

individually and in his capacity as an official at USAT engaged in irregular behavior by providing

false information to ECFMG.  *See* JA0115-JA0118 (Oct. 18, 2018 letter from L. Cover to Dr. O.

Tulp).

      32.      At the beginning of the letter, Ms. Cover detailed the allegations of irregular

behavior as follows:

> Dear Dr. Tulp:
>
> I am writing to advise you of the allegation that you, individually and in your capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG.  Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.  The details of ECFMG's allegation are set forth below.

JA0115.

      33.      The letter included a section entitled "**Details of Allegation**" that summarized the

allegation of "*False Information Regarding U.S. Branch Campuses*" as follows:

**Details of Allegation**
*False Information Regarding U.S. Branch Campuses*
     On August 21, 2018, ECFMG advised you that we had become aware that USAT was operating a "branch" campus in Miami, Florida.  We advised you that in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country.  Therefore, we requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States.  We indicated that this documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

    In response to ECFMG's August 21, 2018 letter, you replied:

    "This is incorrect information.  The Miami location is an information and testing site only,  where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the

SAppx0209

Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas. We note that there are no lectures scheduled for Montserrat. We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original]. Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

SAppx0210

> agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

JA0115-JA0117.

      34.      The letter then summarized the allegation of "***Certification of False Information***

***Regarding Students Attendance Dates***" as follows:

> **Certification of False Information Regarding Students Attendance Dates**
>
>       During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.
>
>       It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior*. See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*. Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG. ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.
>
>       The review into the matters described in this letter are ongoing. ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

JA0117.

14

35.     The letter concluded by summarizing the forthcoming "**ECFMG Medical Education Credentials Committee Review of this Allegation**" as follows:

**ECFMG Medical Education Credentials Committee Review of this Allegation**

This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures.*

You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;

- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

**Please provide a response to ECFMG by November 1, 2018.** In your response, please note whether you wish to make a personal appearance before the ECFMG Committee. All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org. If you have any questions, please do not hesitate to call me at (215) 883-7318.

JA0117-JA0118.

15

36.     The letter was sent to o.tulp@usat.edu, which is one of the email addresses used by Dr. Tulp.  *See* JA0115; JA0260 (Injunction Hr'g Tr. 85:16-19); JA0479 (Tulp Dep. 52:12-16).

37.     In the time period between Ms. Cover's October 18, 2018 letter and the November 28, 2018 meeting of the Medical Education Credentials Committee, counsel for Dr. Tulp exchanged numerous letters with ECFMG relating to the allegations of irregular behavior against Dr. Tulp and the November 28, 2018 irregular behavior proceeding.  *See, e.g.*, JA0124-JA0126 (Oct. 23, 2018 letter from T. Swate to K. Corrado, incorrectly dated Sept. 23, 2018); JA0127-JA0129 (Oct. 26, 2018 letter from K. Corrado to T. Swate); JA0130-JA133 (emails between K. Corrado ECFMG and counsel for Dr. Tulp dated Nov. 9-14, 2018); JA0134-JA0136 (emails between ECFMG and counsel for Dr. Tulp dated Nov. 9-16, 2018).

38.     On October 23, 2018, ECFMG received a letter from attorney Tommy Swate dated September 23, 2018.  *See* JA0124-JA0126 (letter from T. Swate to K. Corrado, incorrectly dated Sept. 23, 2018); JA0127 (letter from K. Corrado confirming receipt on Oct. 23, 2018 of letter from T. Swate dated Sept. 23, 2018).  In that letter, Mr. Swate explained that he represented USAT and would attend the November 28, 2018 proceeding described in Ms. Cover's October 18, 2018 letter to Dr. Tulp.  He also sought to confirm that Ms. Cover's October 18, 2018 letter to Dr. Tulp contained all the allegations to be discussed at the November 28, 2018 proceeding and requested the complete file to be reviewed by the Medical Education Credentials Committee at that proceeding.  JA0124-JA0126.

16

39. On October 26, 2018, Ms. Corrado responded to Mr. Swate in a letter sent via email,

writing:

Dear Mr. Swate:

I am writing in response to your letters dated September 15, 2018 and September 23, 2018. These letters were received at ECFMG on October 16, 2018 and October 23, 2018 respectively. We understand from your letters that you have been retained as counsel for University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat. Your letters appear to conflate the issue that USAT is operating branch campuses in the United States without appropriate documentation with the allegations of irregular behavior for Dr. Tulp. We take this opportunity to clarify these issues for you.

**Allegations of Irregular Behavior for Dr. Orien Tulp**
ECFMG has *not* alleged irregular behavior on the part of USAT (the institution). The allegations of irregular behavior are specific to Dr. Tulp, both individually and in his capacity as an official of USAT. Therefore, before providing you with any materials relating to allegations of irregular behavior concerning Dr. Tulp, we ask that you advise ECFMG whether you also represent Dr. Tulp individually, in addition to USAT. We will be happy to share the entire case file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") with you once you have officially advised that you are Dr. Tulp's legal counsel.

Please note that only Dr. Tulp is entitled to request a personal appearance at the ECFMG Committee hearing, with his legal counsel, as outlined in ECFMG's Policies and Procedures for Irregular Behavior. ECFMG will not permit any other person or official, from USAT or otherwise, to appear instead of Dr. Tulp at his hearing. If you are Dr. Tulp's legal counsel, Dr. Tulp has the right for you to appear with him at the hearing. There is no right or need for "local counsel" or "paralegals" to attend; therefore, they will not be permitted to attend Dr. Tulp's hearing.

Further, in your September 23, 2018 letter, you indicate that "a decision has already been made regarding October 18, 2018 allegations because the ECFMG has posted on various websites warning to USAT students that after January 1, 2018 USAT students will no longer be eligible to apply for the various Step tests." This is incorrect. No decision regarding the allegations against Dr. Tulp has been made as the ECFMG Committee has not yet reviewed these allegations. ECFMG carefully follows its policies and procedures, maintaining fairness and integrity throughout its processes. We trust this information disabuses you of the notion that ECFMG's "proceedings are not neutral."

JA0127.

17

40.     On November 9, 2018, Ms. Corrado emailed Mr. Swate and William Reil, another

attorney who had communicated with ECFMG on behalf of Dr. Tulp and USAT, writing:

> Gentleman:
>
> I am following up on ECFMG's October 26, 2018 letter to you regarding USAT. We understand that you both are counsel for USAT.
>
> As you know, ECFMG will review the allegations of irregular behavior for Dr. Tulp on November 28, 2018.   Dr. Tulp has a right to a personal appearance at that meeting with his legal counsel.
>
> Please reply to this email by November 14, 2018 and indicate:
> If you are representing Dr. Tulp in this matter; and
> If Dr. Tulp plans to attend the meeting in person (and if so, which of his attorneys will be present).
>
> If we do not receive a reply from you on or before November 14, 2018, we will assume that Dr. Tulp is not making a personal appearance.  Dr. Tulp's case is scheduled to be reviewed on November 28, 2018 whether or not he makes a personal appearance.

JA0132.

41.     Later that day, Mr. Swate responded via email and wrote, in part:  "Mr. Riel [sic] and I will represent Dr. Tulp at the hearing on October [sic] 28th.  Please send a copy of the October [sic] 28 agenda and written policy and procedure to my attention at swatemd@aol.com. Please forward copies of all documents submitted to the committee members prior to the hearing." JA0131.

42.     On November 14, 2018, Ms. Corrado responded via email and wrote, "Thank you for your email. As we understand that you and Mr. Reil are representing Dr. Tulp in the matter related to the allegations of irregular behavior, I am sending the materials that the ECFMG Committee will review when considering these allegations. I will send the attachments in 5

SAppx0215

separate emails, as they are quite large. Please let me know if you have not received them. Please note that this email will also be provided to the Committee." JA0130.

43.     In the email, Ms. Corrado also wrote, "**Dr. Tulp is scheduled to appear before the ECFMG Committee with you and Mr. Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, PA 19103.  Please arrive by 8:45 AM.**  In accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20 minutes, during which time he will have the opportunity to present his response to these allegations (either personally or through his counsel) and the ECFMG Committee members, ECFMG counsel, and staff will have the opportunity to ask questions.  After that, Dr. Tulp may provide a brief, closing statement." JA0130 (emphasis in original).

44.     On November 14, 2018, ECFMG emailed to Tommy Swate the materials that the Medical Education Credentials Committee would review at its meeting on November 28, 2018 relating to the allegations of irregular behavior concerning Dr. Tulp.  JA0134.

45.     On November 16, 2018, Ms. Corrado emailed Dr. Tulp's counsel and wrote, "I am writing to confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for Dr. Tulp." JA0134.  Ms. Corrado also wrote, "All documents were emailed to you on Wednesday, November 14, 2018.  I have also sent the documents to you via Federal Express today."  JA0134.  *See* JA 0215 (Injunction Hr'g Tr. 40:10-15 ("Yes, so we provide the materials to individuals prior to the hearing.  Those materials were sent via email to Dr. Tulp's counsel.")).

46.     That same day, Mr. Swate responded, "Thank you.  I have received documents[.]" JA0134.

19

## VI.    Dr. Tulp and His Counsel Appeared Before the Medical Education Credentials Committee.

47.    On November 28, 2018, Dr. Tulp appeared before the Medical Education Credentials Committee.  *See* JA0144 (Tr. of Medical Education Credentials Committee Hr'g Regarding Dr. Orien L. Tulp (hereinafter "MECC Hr'g Tr.") 6:18-22); JA0521-JA0522 (Tulp Dep. 94:17-95:20).   He was accompanied by his attorneys, Mr. Swate and Mr. Reil.   JA0135 (ECFMG00000506).

48.    Dr. Tulp and his counsel were again provided with a copy of the materials that would be considered by the Medical Education Credentials Committee.  *See* JA0145-JA0148 (MECC Hr'g Tr. 7:13-8:15, 8:19-24, 9:24-10:4); *see also* JA0361-JA0362, JA0365-JA0363 (Pinsky Dep. 51:24-52:3, 55:17-56:8 ("[T]he board received the same documents that had been sent to Dr. Tulp and his attorneys.  The board had that material and they reviewed that prior to coming to the committee meeting.")); JA0134 (Nov. 16, 2018 email from T. Swate confirming receipt of documents from ECFMG).

49.    At the outset of the hearing, the members of the Medical Education Credentials Committee and ECFMG's representatives introduced themselves to Dr. Tulp and his counsel. JA0142-JA0143 (MECC Tr. 4:6-5:23).

50.    Ms. Corrado then summarized the allegations of irregular behavior for the Committee as follows:  "The allegation is that Dr. Orien Tulp, professor and president of USAT engaged in irregular behavior in connection with providing false information to ECFMG, specifically that Dr. Tulp provided false information to ECFMG regarding USTAT's [sic] United States branch campuses and certifying to the attendance dates of several USTAT [sic] students and graduates when ECFMG has information that these students were not attending USTAT [sic]." JA0144 (MECC Tr. 6:1-22).

20

51.     Mr. Swate then made an opening statement on behalf of Dr. Tulp.  He began by stating, "I've asked and I've asked and I've asked for the packet that was presented to the committee members.  I would like a copy of the packet, the information that was submitted to the committee members so that I will know what was considered by the committee before we came here today because you're considering information that I may or may not know about."  JA0145-JA0146 (MECC Tr. 7:14-8:1).

52.     Counsel for ECFMG directed Mr. Swate to the copy of the materials printed for him and reminded Mr. Swate that the materials had been provided to him "on more than one occasion prior to this proceeding, which is our usual practice even without you asking."  JA0146 (MECC Tr. 8:10-14); *see* JA0147-JA0148 (MECC Tr. 9:24-10:4 (explaining that the materials were sent by email on November 14 and by Federal Express)).

53.     Mr. Swate then presented a series of arguments on behalf of Dr. Tulp, including that (a) ECFMG lacked jurisdiction over Dr. Tulp, (b) ECFMG had no written contract with Dr. Tulp, (c) ECFMG should have the "sole and exclusive burden of proof," and (d) ECFMG appeared to be "co-mingling . . . the prosecutorial and jury functions."  JA0149-JA0155 (MECC Tr. 11:17-17:2).

54.     Mr. Swate concluded, "That is our opening statement.  If you have any questions, you can address them to me.  ***Dr. Tulp will not be answering any questions.***"  JA0154-JA0155 (MECC Tr. 16:22-17:2) (emphasis added).

55.     Counsel for ECFMG repeatedly invited Dr. Tulp and his counsel to present a substantive response or statement regarding the charges of irregular behavior against Dr. Tulp.  *See, e.g.*, JA0155-JA0158, JA0162-JA0163 (MECC Tr. 17:3-7; 18:5-8, 17-21; 19:9-14; 19:23-20:2; 20:18-21; 24:9-25:1; 25:11-16).

SAppx0218

56.     At one point during the proceeding, counsel for ECFMG asked whether "USTAT [sic] provide[d] any student with any medical school basic science education in the United States." JA0157-JA0158 (MECC Tr. 19:23-20:2).  Mr. Swate responded, "Well, yes, it did," but counsel for ECFMG noted for the record that Dr. Tulp was "shaking his head, no, and you [Mr. Swate] just said, yes.  So maybe you should let your client speak to respond."  JA0158 (MECC Tr. 20:3-8).  In response, Mr. Swate stated, "***Dr. Tulp is not going to be talking today.  The next time you hear him talk is going to be in federal court.***"  JA0158 (MECC Tr. 20:9-12).

57.     Counsel for ECFMG specifically asked for clarification of what Dr. Tulp meant when he used the word "campus" in his email to ECFMG, but Dr. Tulp and his counsel refused to provide any clarification.  JA0162-JA0164 (MECC Tr. 24:16-26:11).

58.     Indeed, Dr. Tulp's counsel also refused to answer questions, stating, "I'm not a witness.  So you don't get to cross-examine me."  JA0160 (MECC Tr. 22:12-14).

59.     Mr. Swate repeatedly stated that he was "prepared to go through every page" of the evidence presented to the Medical Education Credentials Committee.  JA0161 (MECC Tr. 23:17-18); *see* JA0162 (MECC Tr. 24:6-7); JA0169 (MECC Tr. 31:10-11).  But when asked by counsel for ECFMG to explain how the materials showed that Dr. Tulp did not provide false information to ECFMG, Mr. Swate responded repeatedly that he did not bear the burden of proof.  *See, e.g.*, JA0157 (MECC Tr. 19:7-17); JA0161-JA0162 (MECC Tr. 23:19-24:1).

60.     Toward the end of the hearing, in response to Mr. Swate again referencing his "ability to go through" the materials, counsel for ECFMG again asked Mr. Swate whether "there [was] anything in particular you [Mr. Swate] want to go through." JA0164 (MECC Tr. 26:20-22).

61.     When counsel for ECFMG finally attempted to terminate the hearing, Mr. Swate said, "ECFMG is terminating this prior to us presenting our evidence."  JA0169 (MECC Tr. 31:2-

22

4).  In response, counsel for ECFMG stated, "We asked you to present evidence, and all you did was present legal argument.  What's your offer of proof? What would you like to provide?"  JA0169 (MECC Tr. 31:5-9).  Mr. Swate responded, "We'll go through every page of this."  JA0169 (MECC Tr. 31:10-11).  But when counsel for ECFMG asked Mr. Swate to identify specifically the evidence he wanted to address, Mr. Swate responded, "I'm asking your evidence.  You're the one presenting the evidence and I'm asking what it is?"  JA0169-JA0170 (MECC Tr. 31:23-32:2).

62.     Counsel for ECFMG then adjourned the hearing.  Dr. Tulp refused to testify or present any evidence explaining or clarifying why the evidence previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular behavior.  JA0170 (MECC Tr. 32:3-10).

23

## VII.   ECFMG Determines that Dr. Tulp Engaged in Irregular Behavior.

63.     On December 14, 2018, ECFMG notified Dr. Tulp that the Medical Education Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior, writing:

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the World Directory of Medical Schools (World Directory) will be updated as follows:

SAppx0221

> In 2018, ECFMG determined that a certain official of the University of Science Arts & Technology engaged in irregular behavior in connection with providing false information to ECFMG.
>
> This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.
>
> Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.
>
> As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

JA0172-JA0173.

64.     The action taken regarding Dr. Tulp in connection with the finding of irregular behavior was limited to Dr. Tulp's role as an authorized signatory on behalf of USAT. *See* JA0214 (Injunction Hr'g Tr. at 39:7-14).

65.     The action does not disqualify USAT from having an authorized signatory. *See* JA0214-JA0215 (Injunction Hr'g Tr. at 39:24-40:1); *see also* JA0475-JA0476 (Tulp Dep. 48:24-49:11). Excluding Dr. Tulp, USAT has two authorized signatories who can sign documents submitted to ECFMG on behalf of USAT. JA0476 (Tulp Dep. 48:24-49:11).

66.     Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands. JA0271-JA0272, JA0274 (Injunction Hr'g Tr. 96:15-97:4, 99:3-12); JA0455 (Tulp Dep. 28:21-24).

67.     Dr. Tulp never appealed from the decision of the Medical Education Credentials Committee as permitted by ECFMG's Policies and Procedures Regarding Irregular Behavior. JA0549 (May 2, 2019 Declaration of K. Corrado ¶ 3).

25

68.     Dr. Tulp never petitioned for reconsideration of the Medical Education Credentials Committee's decision as permitted by ECFMG's Policies and Procedures Regarding Irregular Behavior.  JA0549-JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 4).

**VIII.    The ECFMG Sponsor Note for USAT in the World Directory of Medical Schools**

69.     The World Directory of Medical Schools is a listing of the world's medical schools. ECFMG uses "a sponsor note in the World Directory on a medical school to indicate to the public and to the students and graduates of that school whether or not those students and graduates are eligible to apply to ECFMG for certification.  So it's the way in which [ECFMG] communicate[s] publicly the eligibility, if you will, of the school's graduates to start the process of ECFMG certification."  JA0220-JA0221 (Injunction Hr'g Tr. 45:17-46:6).

70.     On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT to include the following language:

> Currently students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible for ECFMG Certification related services, including but not limited to:  ECFMG Certification, USMLE examinations that lead to ECFMG certification, and Electronic Residency Application Service (ERAS) Support Services.  ECFMG will provide information and instructions to applicants upon receipt of application.

JA0103-JA0107 (ECFMG00000498-ECFMG00000502); JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 5).

71.     USAT was given notice of the "enhanced procedures" described in the Sponsor Note via letter from Ms. Corrado dated September 14, 2018.  JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 6); *see* JA0102 (Sept. 14, 2018 letter from K. Corrado to Dr. O. Tulp).

72.     On or around October 18, 2018, ECFMG updated its Sponsor Note for USAT again, to include the following language:

26

Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 7); *see* JA0122-JA0123 (Oct. 18, 2018 email from C. Bede to S. Mealey and K. Corrado).

73.     USAT was given notice of the change to the Sponsor Note via letter from Ms. Corrado dated October 18, 2018.  JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 8); *see* JA0113-JA0114 (Oct. 18, 2018 letter from K. Corrado to Dr. O. Tulp).

74.     ECFMG's Sponsor Note currently has both the language added in September 2018 and the language added in October 2018.  *See* JA0548.

75.     ECFMG did not update its Sponsor Note for USAT to reflect the finding of irregular behavior against Dr. Tulp.  JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 9); *see* JA0548; JA0390-JA0391 (Pinsky Dep. 80:17-81:4).

**IX.     Procedural History**

76.     At the injunction hearing on January 24, 2019, the Court asked Dr. Tulp's counsel to confirm "exactly what causes of action are being asserted."  JA0180 (Injunction Hr'g Tr. 5:3-7).

77.     The Court twice described Dr. Tulp's due process claim as "a § 1983 claim" alleging that ECFMG violated Dr. Tulp's "procedural due process" or "procedural and substantive due process" rights "as protected by the 14th Amendment," and Dr. Tulp's counsel twice responded, "Yes, Your Honor."  JA0180 (Injunction Hr'g Tr. 5:18-22); JA0181 (Injunction Hr'g Tr. 6:5-11).

SAppx0224

78.     The Court denied Dr. Tulp's Motion for a Preliminary and/or Permanent Injunction at the conclusion of the January 24, 2019 hearing.  In explaining its decision, the Court specifically noted that "[i]n this case, there was notice and an opportunity to be heard."  JA0306 (Injunction Hr'g Tr. 131:5-11).

79.     ECFMG served discovery requests on Dr. Tulp asking him to describe in detail his alleged damages and produce any and all documents he would use to support a damages award, but Dr. Tulp provided no such description or documents.   JA0413 (ECFMG Request for Production No. 37 seeking "[a]ll documents and communications relating to the remedies you seek, including each element of damages or other relief to which you allegedly are entitled"); JA0409 (ECFMG Interrogatory No. 10 asking Dr. Tulp to "[d]escribe in detail any and all remedies that you seek in connection with this lawsuit"); JA0416-JA0427 (Dr. Tulp's discovery responses).

Dated: May 3, 2019                                Respectfully submitted,

                                                  */s/ Elisa P. McEnroe*
                                                  Elisa P. McEnroe, PA Bar No. 206143
                                                  Matthew D. Klayman, PA Bar No. 319105
                                                  MORGAN, LEWIS & BOCKIUS, LLP
                                                  1701 Market Street
                                                  Philadelphia, PA  19103-2921
                                                  Telephone:     +1.215.963.5917
                                                  Facsimile:     +1.215.963.5001
                                                  elisa.mcenroe@morganlewis.com
                                                  matthew.klayman@morganlewis.com

                                                  *Attorneys for the Educational Commission for*
                                                  *Foreign Medical Graduates*

28

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. ORIEN L. TULP, )<br><br>Plaintiff, )<br><br>v. )<br><br>EDUCATIONAL COMMISSION FOR )<br>FOREIGN MEDICAL GRADUATES and )<br>DR. WILLIAM W. PINSKY, )<br><br>Defendants. )<br>) | Case No. 2:18-cv-05540-WB<br><br>Hon. Wendy Beetlestone |

**JOINT APPENDIX – TABLE OF CONTENTS**

| Tab | Document | Page(s) |
|---|---|---|
| 1. | *About ECFMG: Statement of Values, Mission, and Purposes, ECFMG*, https://www.ecfmg.org/about/statement-of-values.html | JA0001-JA0002 |
| 2. | ECFMG Medical School Policy | JA0003 |
| 3. | ECFMG, *2019 Information Booklet* (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf | JA0004-JA0089 |
| 4. | *University of Science, Arts & Technology (USAT), Montserrat: Not Accredited*, CAAM-HP | JA0090 |
| 5. | 2018 USAT Lecture Conference Schedule | JA0091 |
| 6. | Email to ECFMG (Aug. 8, 2018) | JA0092 |
| 7. | Email from C. Ostwalt to S. Mealy (Aug. 14, 2018) | JA0093-JA0097 |
| 8. | Letter from S. Mealey to Dr. O. Tulp (Aug. 21, 2018) | JA0098 |

| Tab | Document | Page(s) |
|-----|----------|---------|
| 9. | Email from Dr. O. Tulp to S. Mealy & C. Konyk (Aug. 21, 2018) | JA0099-JA0100 |
| 10. | Email to S. Mealey (Aug. 22, 2018) | JA0101 |
| 11. | Letter from K. Corrado to Dr. O. Tulp (Sept. 14, 2018) | JA0102 |
| 12. | Emails between S. Mealey to C. Bede (Sept. 21-24, 2018) | JA0103-JA0107 |
| 13. | Letter from T. Swate to K. Corrado (Oct. 15, 2018) | JA0108-JA0112 |
| 14. | Letter from K. Corrado to Dr. O. Tulp (Oct. 18, 2018) | JA0113-JA0114 |
| 15. | Letter from L. Cover to Dr. O. Tulp (Oct. 18, 2018) | JA0115-JA0118 |
| 16. | Affidavits Attesting to Medical School Attendance and Education Received at USAT | JA0119-JA0121 |
| 17. | Email from C. Bede to S. Mealey and K. Corrado (Oct. 18, 2018) | JA0122-JA0123 |
| 18. | Letter from T. Swate to K. Corrado (dated Sept. 23, 2018) | JA0124-JA0126 |
| 19. | Letter from K. Corrado to T. Swate (Oct. 26, 2018) | JA0127-JA0129 |
| 20. | Emails between K. Corrado, W. Reil, C. Konyk, F. Katz, and T. Swate (Nov. 9-14, 2018) | JA0130-JA0133 |
| 21. | Emails between K. Corrado, W. Reil, C. Konyk, F. Katz, and T. Swate (Nov. 9-16, 2018) | JA0134-JA0136 |
| 22. | Email from K. Corrado to Dr. O. Tulp, W. Reil, and T. Swate (Jan. 10, 2019) | JA0137-JA0138 |

| Tab | Document | Page(s) |
|-----|----------|---------|
| 23. | Nov. 28, 2018 Tr. of Dr. Tulp Irregular Behavior Proceeding before the Medical Education Credentials Committee | JA0139-JA0171 |
| 24. | Letter from Dr. W. Pinsky to Dr. O. Tulp (Dec. 14, 2018) | JA0172-JA0173 |
| 25. | Jan. 10, 2019 Declaration of Kara Corrado | JA0174-JA0175 |
| 26. | Jan. 24, 2019 Tr. of Preliminary Injunction Hrg before the Hon. Wendy Beetlestone | JA0176-JA0310 |
| 27. | Feb. 6, 2019 Tr. of Dep. Dr. William Pinsky | JA0311-JA0403 |
| 28. | Feb. 19, 2019 Defendants' First Interrogatories and Requests for Production to Dr. O. Tulp | JA0404-JA0415 |
| 29. | Mar. 27, 2019 Dr. Tulp's Responses to Defendants' First Interrogatories and Requests for Production | JA0416-JA0427 |
| 30. | Apr. 17, 2019 Tr. of Dep. Dr. Orien Tulp | JA0428-JA0547 |
| 31. | Apr. 19, 2019 Sponsor Note | JA0548 |
| 32. | May 2, 2019 Declaration of Kara Corrado | JA0549-JA0551 |

# About ECFMG

Overview | Statement of Values, Mission, and Purposes | Board of Trustees | ECFMG Leadership | Initiatives | History | Careers at ECFMG

## Statement of Values, Mission, and Purposes

### Values

The values of ECFMG are expressed in its vision statement:

"Improving world health through excellence in medical education in the context of ECFMG's core values of collaboration, professionalism and accountability."

### Mission

The charge of ECFMG is expressed in its mission statement:

"The ECFMG promotes quality health care for the public by certifying international medical graduates for entry U.S. graduate medical education, and by participating in the evaluation and certification of other physicians and care professionals nationally and internationally. In conjunction with its Foundation for Advancement of Interna Medical Education and Research (FAIMER), and other partners, it actively seeks opportunities to promote medic education through programmatic and research activities."

### Purposes

The purposes (goals) that actuate and accomplish ECFMG's mission are to:

- Certify the readiness of international medical graduates for entry into graduate medical education and healt systems in the United States through an evaluation of their qualifications.
- Provide complete, timely, and accessible information to international medical graduates regarding entry into graduate medical education in the United States.
- Assess the readiness of international medical graduates to recognize the diverse social, economic and cultura needs of U.S. patients upon entry into graduate medical education.
- Identify the needs of international medical graduates to become acculturated into U.S. health care.
- Verify credentials and provide other services to health care professionals worldwide.
- Provide international access to testing and evaluation programs.
- Expand knowledge about international medical education programs and their graduates by gathering data, conducting research, and disseminating the findings.
- Improve international medical education through consultation and cooperation with medical schools and oth institutions relative to program development, standard setting, and evaluation.
- Improve assessment through collaboration with other entities in the United States and abroad.
- Improve the quality of health care by providing research and consultation services to institutions that evalua international medical graduates for entry into their country.
- Enhance effectiveness by delegating appropriate activities in international medical education to FAIMER.

SAppx0229

A0002

Last updated December 16, 2011.

® Registered in the US Patent and Trademark Office.

Copyright © 1996-2018 by the Educational Commission for Foreign Medical Graduates. All rights reserved.



EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900  |  215-966-3124 Fax
www.ecfmg.org

## ECFMG MEDICAL SCHOOL POLICY

### International Medical School Definition

An "International Medical School" is an educational facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country.

### Additional Criteria for a Medical School's Students and Graduates to Be Eligible to Apply to ECFMG for ECFMG Certification

In addition to meeting ECFMG's current eligibility requirements for ECFMG Certification, in order for students and graduates of a medical school to be eligible to apply to ECFMG for ECFMG Certification, the following criteria must be met:

(1) ECFMG must have, among other things, confirmation from the appropriate government authority of the medical school country that:

(a.) the medical school is recognized as a medical school and permitted to operate by the government; *and*

(b.) the medical school meets governmental accreditation requirements if they apply; *and*

(c.) the degree awarded to graduates of that medical school meet the medical education eligibility requirements for licensure to practice medicine in the medical school country; *and*

(d.) the medical school is an educational facility located in that country with its primary campuses and main operations located in that country.

(2) If the medical school has a branch campus in another country, ECFMG may require confirmation from the appropriate government authority in the branch campus country that:

(a.) the branch campus is authorized to operate as a medical school in the branch campus country;

(b.) the medical school awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country.

(3) The medical school must, upon request, be able to demonstrate that it has the staff, policies / procedures, and facilities necessary for the school's students and graduates to fulfill ECFMG's requirements to become ECFMG Certified. This includes, but is not limited to, having an authorized signatory in place to accurately primary source verify diplomas, or be otherwise acceptable to ECFMG.

**ECFMG, in its reasonable discretion, may apply the following additional criterion to medical schools whose students and graduates are not currently eligible to apply to ECFMG for ECFMG Certification:**

(4) The medical school must be accredited by an organization recognized by the World Federation for Medical Education.

*Page 1 of 1*
*Approved by Board of Trustees, August 2018*



EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

# Information Booklet



# ECFMG
## CERTIFICATION
### 2019



## Visit www.ecfmg.org to

**Get updates** on ECFMG Certification and related policies and services.

**Complete** the Application for ECFMG Certification using the Interactive Web Applications (IWA).

**Apply** for Step 1 and Step 2 (Clinical Knowledge and Clinical Skills) of the United States Medical Licensing Examination® (USMLE®) using IWA.

**Subscribe** to The ECFMG® Reporter for important updates on ECFMG Certification and entry into graduate medical education in the United States.

**Access your information** using the On-line Applicant Status and Information System (OASIS).

**Educational Commission for Foreign Medical Graduates**
3624 Market Street, Philadelphia, PA 19104-2685 USA
www.ecfmg.org

Download the mobile app!





SAppx0232

Form 100s. September 13, 2018

# TABLE OF CONTENTS

**About the ECFMG Information Booklet and Application Materials** ........................1

**ECFMG Certification**
About ECFMG Certification ............................4
Requirements for ECFMG Certification ..........5
Standard ECFMG Certificate......................... 8

**Your ECFMG Record**
USMLE/ECFMG Identification Number .......10
Your Name.....................................................12
Changing Your Name ..................................14
Contact Information ......................................16

**Your ECFMG Financial Account**
Fees..............................................................18
Payment ........................................................19
Methods of Payment.....................................20
Refunds .........................................................22
Forfeiture of Funds .......................................23

**Irregular Behavior......................................24**

**Application for ECFMG Certification ........29**

**Examinations for ECFMG Certification**
Examination Requirements ...........................31
Time Limit for Completing
   Examination Requirements .......................33

**Eligibility for Examination**
Medical School Students...............................35
Medical School Graduates ...........................37
Reverification of Eligibility............................39

**The United States Medical Licensing Examination (USMLE)**
About USMLE.................................................40
Registration and Test Delivery Entities.........41
Applying for Examination..............................43
Scheduling the Examination.........................47
Preparing for Examination............................50
Taking the Examination ................................51
USMLE Program and Irregular Behavior......54
Examination Results......................................56
Reexamination and Reapplication................59

**Medical Education Credentials**
Medical Education
   Credential Requirements...........................62
Transfer Credits ............................................64
Credentials for ECFMG Certification ...........66
Final Medical Diploma and Transcript ..........68
Transcript(s) to Document
   Transferred Credits....................................70
Name on Medical Diploma
   and Transcript(s)........................................71
English Translations .....................................74
Verification of Credentials.............................76

**Related ECFMG Services**
Confirming ECFMG Certification
   to Third Parties ..........................................78
Electronic Residency Application
   Service (ERAS®) Support Services ...........80
J-1 Visa Sponsorship....................................82
ECFMG Certificate Holders Office................84

® The terms ECFMG® and CSA® are registered in the U.S. Patent and Trademark Office.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved. Portions reprinted, with permission, from the USMLE 2019 *Bulletin of Information*, copyright © 2018 by the Federation of State Medical Boards of the United States, Inc., and the National Board of Medical Examiners® (NBME®).

A0006

# About the ECFMG Information Booklet and Application Materials

The ECFMG *Information Booklet* contains detailed information on ECFMG's program of certification. The information contained in this booklet pertains only to the ECFMG certification process and related applications and services. This booklet should not be used as a guide to ECFMG's other programs and services, such as the Electronic Portfolio of International Credentials (EPIC$^{SM}$). Please visit the ECFMG website for information on ECFMG's programs and services. You also can access this publication, the Application for ECFMG Certification, and the application for Step 1 and Step 2 (Clinical Knowledge and Clinical Skills components) of the United States Medical Licensing Examination$^®$ (USMLE$^®$) on the ECFMG website.

Applicants for examination must use the applicable edition of the *Information Booklet*. The 2019 *Information Booklet* pertains to eligibility periods in 2019. If your eligibility period extends into 2020 and you test in 2020, you must become familiar with and will be subject to the policies and procedures detailed in the 2020 *Information Booklet*. The 2020 *Information Booklet* is expected to be available in September 2019. See the information on eligibility periods under *Applying for Examination* in *The United States Medical Licensing Examination (USMLE)* section of this booklet.

The USMLE *Bulletin of Information* provides information about the USMLE, a three-step examination for medical licensure in the United States. In the event that information about the USMLE in the ECFMG *Information Booklet* differs from the corresponding information in the USMLE *Bulletin of Information*, the information in the USMLE *Bulletin of Information* controls.

> ## IMPORTANT
>
> **Applicants for examination are required to read and become familiar with the information contained in and referenced in both the ECFMG *Information Booklet* and the USMLE *Bulletin of Information*.** The USMLE *Bulletin of Information* is available on the USMLE website. Exam applicants should also carefully read the exam application overview and instructions available in ECFMG's Interactive Web Applications (IWA). Applicants should review and be familiar with the *Policies and Procedures Regarding Irregular Behavior*.

Although current at the time of publication, the information contained in the 2019 *Information Booklet* is subject to change. If changes occur, information will be posted on

SAppx0234

A0007

the [ECFMG website](#). You must obtain the most recent information to understand current policies and procedures.

ECFMG provides important updates on ECFMG Certification and entry into graduate medical education in the United States via an e-mail newsletter called *The ECFMG®️ Reporter* and via Facebook and Twitter. ECFMG encourages applicants to [subscribe](#) to *The ECFMG®️ Reporter* and follow ECFMG on [Facebook](#) and [Twitter](#).

The *Information Booklet* describes deadlines related to exam applications, scheduling, and other services. Unless otherwise indicated, deadlines are calculated using Eastern Time in the United States.

Consistent with ECFMG's Privacy Notice, ECFMG may share the information contained in your application, or that otherwise may become available to ECFMG, with any federal, state or local governmental department or agency, with any hospital or with any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information. This may include reporting determinations of irregular behavior to the USMLE Committee for Individualized Review, Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information. For further information regarding ECFMG's data collection and privacy practices, please refer to our [Privacy Notice](#).

ECFMG strives to ensure proper processing of applications for ECFMG Certification and examination, other service requests related to ECFMG Certification and examination, and the information contained in such applications and requests. In the unlikely event that an error occurs in the processing of applications, requests, or associated materials, ECFMG will make reasonable efforts to correct the error, if possible, or permit you either to reapply at no additional fee or to receive a refund. These are the exclusive remedies available to applicants for errors in processing applications and other service requests related to ECFMG Certification, examination, and the other programs described in this booklet.

**Please note that ECFMG will not provide services of any kind if doing so would be considered violative of any applicable federal, state, or local laws or regulations. Additionally, ECFMG may delay provision of services while investigating whether the services or surrounding circumstances violate such laws, regulations, or ECFMG's policies and procedures.**

A0008

® The terms ECFMG® and CSA® are registered in the U.S. Patent and Trademark Office.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

Portions reprinted, with permission, from the USMLE 2019 Bulletin of Information, copyright © 2018 by the Federation of State Medical Boards of the United States, Inc., and the National Board of Medical Examiners® (NBME®).

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# ECFMG Certification

About ECFMG Certification | Requirements for ECFMG Certification | Standard ECFMG Certificate

## About ECFMG Certification

The Educational Commission for Foreign Medical Graduates (ECFMG), through its program of certification, assesses whether international medical graduates are ready to enter residency or fellowship programs in the United States that are accredited by the Accreditation Council for Graduate Medical Education (ACGME). ACGME requires international medical graduates who enter ACGME-accredited programs to be certified by ECFMG.

ECFMG Certification assures directors of ACGME-accredited residency and fellowship programs, and the people of the United States, that international medical graduates have met minimum standards of eligibility to enter such programs. ECFMG Certification does not, however, guarantee that these graduates will be accepted into programs; the number of applicants each year exceeds the number of available positions.

ECFMG Certification is also one of the eligibility requirements for international medical graduates to take Step 3 of the three-step United States Medical Licensing Examination (USMLE). Medical licensing authorities in the United States require that international medical graduates be certified by ECFMG, among other requirements, to obtain an unrestricted license to practice medicine.

ECFMG defines an international medical graduate as a physician who received his/her basic medical degree or qualification from a medical school located outside the United States and Canada*. Citizens of the United States who have completed their medical education in schools outside the United States and Canada are considered international medical graduates; non-U.S. citizens who have graduated from medical schools in the United States and Canada are not considered international medical graduates.


* The United States and Canada refer to the geographic locations where citizens are issued passports by the governments of either the United States or Canada.


Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# ECFMG Certification

About ECFMG Certification | Requirements for ECFMG Certification | Standard ECFMG Certificate

## Requirements for ECFMG Certification

To be eligible for certification by ECFMG, international medical graduates must meet the following requirements.

## Medical School Requirements

The physician's medical school must meet requirements established by ECFMG. Schools that meet all requirements will be listed in the *World Directory of Medical Schools* as meeting eligibility requirements for their students and graduates to apply to ECFMG for ECFMG Certification and examination. To confirm that your medical school meets ECFMG's requirements, access the *World Directory* at www.wdoms.org. Medical schools that meet ECFMG's requirements will have an ECFMG note stating this in the schools' *World Directory* listing. The ECFMG note also will include the graduation years for which the school meets these requirements. Since ECFMG is a sponsor of the *World Directory*, the ECFMG note is located on the "Sponsor Notes" tab of the medical school listing. If there is no ECFMG note on the Sponsor Notes tab of your medical school's listing, you are not eligible to apply to ECFMG for ECFMG Certification and examination. For tips, see the quick guide on how to confirm that a medical school meets eligibility requirements.

> **Important Note:** Beginning in 2023, to be eligible for ECFMG Certification, ECFMG will require that applicants graduate from a medical school that has been appropriately accredited. To satisfy this requirement, medical schools must be accredited by an agency that has been recognized by the World Federation for Medical Education through its *Programme for Recognition of Accrediting Agencies*. ECFMG is in the process of establishing policies and procedures for implementing this requirement and will publish updates, as they become available, on the ECFMG website. International medical students and graduates interested in ECFMG Certification should monitor the ECFMG website for the latest information.

## Application for ECFMG Certification

International medical students/graduates who wish to pursue ECFMG Certification must submit an Application for ECFMG Certification. The Application for ECFMG Certification consists of an on-line application and the Certification of Identification Form (Form 186)

available through ECFMG's Interactive Web Applications (IWA). The Application for ECFMG Certification requires applicants to confirm their identity, contact information, and graduation from or enrollment in a medical school that is listed in the *World Directory* as meeting ECFMG eligibility requirements. See *Medical School Requirements*. As part of the application, international medical students/graduates must also confirm their understanding of the purpose of ECFMG Certification and release certain legal claims. See *Application for ECFMG Certification*.

## Examination Requirements

The examination requirements for ECFMG Certification include passing Step 1 and Step 2 of the USMLE. The Step 2 exam has two separately administered components, the Clinical Knowledge (CK) component and the Clinical Skills (CS) component.

To meet the examination requirements for ECFMG Certification, applicants must:

**1. Satisfy the medical science examination requirement.**
Step 1 and Step 2 CK of the USMLE are the exams currently administered that satisfy this requirement.

**2. Satisfy the clinical skills requirement.**
Step 2 CS of the USMLE is the exam currently administered that satisfies this requirement.

ECFMG has established time limits for completing the examinations required for ECFMG Certification.

For detailed information, including information on time limits and using a passing performance on former exams to satisfy these requirements, see *Examinations for ECFMG Certification*.

## Medical Education Credential Requirements

The physician's graduation year must be included in the ECFMG note in the medical school's *World Directory* listing. See *Medical School Requirements*. International medical graduates must have been awarded credit for at least four credit years (academic years for which credit has been given toward completion of the medical curriculum) by a medical school that is listed in the *World Directory* as meeting ECFMG eligibility requirements. There are restrictions on credits transferred to the medical school that awards an applicant's medical degree that can be used to meet this requirement. See *Transfer Credits* in *Medical Education Credentials*.

A0012

Applicants must document the completion of all requirements for, and receipt of, the **final medical diploma**. ECFMG verifies every applicant's medical school diploma with the appropriate officials of the medical school that issued the diploma and requests that the medical school provide the **final medical school transcript**. Verification by ECFMG with the issuing school may also be required for transcripts that are submitted to document transferred credits. See *Medical Education Credentials*.

> **Important Note:** Submitting falsified or altered documents may result in a finding of irregular behavior and permanent annotation of your ECFMG record. For more information and potential consequences, see *Policies and Procedures Regarding Irregular Behavior*.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAA0013

# ECFMG Certification

About ECFMG Certification | Requirements for ECFMG Certification | Standard ECFMG Certificate

## Standard ECFMG Certificate

The Accreditation Council for Graduate Medical Education (ACGME) requires international medical graduates who enter ACGME-accredited programs of graduate medical education in the United States to be certified by ECFMG.

ECFMG issues the Standard ECFMG Certificate to applicants who meet all of the requirements for certification. International medical graduates must also pay any outstanding charges on their ECFMG financial accounts before their certificates are issued. Standard ECFMG Certificates are issued to applicants approximately two weeks after all of these requirements have been met. The date that the Standard ECFMG Certificate is issued is the date an international medical graduate is considered certified by ECFMG. Currently, ECFMG sends the Standard ECFMG Certificate to the applicant's address of record by Federal Express. For tips, see the quick guide on how to ensure you receive your ECFMG Certificate as soon as possible.

The Standard ECFMG Certificate includes:

- The name of the applicant;
- The certificate number;
- The dates that the examination requirements were met; and
- The date that the certificate was issued.

## Confirming ECFMG Certification to Third Parties

ECFMG offers the Certification Verification Service (CVS) to provide primary-source confirmation of the ECFMG certification status of international medical graduates. ECFMG will confirm your certification status when a request is received from a U.S. medical licensing authority, residency program director, hospital, or other organization that, in the judgment of ECFMG, has a legitimate interest in such information. For status reports sent to medical licensing authorities, the request can also be made by you. For more information, see *Confirming ECFMG Certification to Third Parties* in *Related ECFMG Services*.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0015

# Your ECFMG Record

USMLE/ECFMG Identification Number | Your Name | Changing Your Name | Contact Information

## USMLE/ECFMG Identification Number

Before you can submit an Application for ECFMG Certification or apply to ECFMG for an exam, you must obtain a USMLE/ECFMG Identification Number. You can obtain a USMLE/ECFMG Identification Number by accessing Interactive Web Applications (IWA). Please allow approximately five business days to receive your Identification Number.

**The information you provide during the process of obtaining a USMLE/ECFMG Identification Number will become a part of your permanent ECFMG record.** If you fail to provide your correct and current legal name, you will be required to submit acceptable documentation, as described in *Changing Your Name* in *Your ECFMG Record*, to change the name in your ECFMG record. If ECFMG determines that the biographic information you submit is inaccurate, not complete, or insufficient to assign a USMLE/ECFMG Identification Number to you, your request for the USMLE/ECFMG Identification Number will not be processed.

Once ECFMG informs you of your number, you must include it on all communications, applications, medical education credentials, request forms, and payments that you send to ECFMG. You will also need your USMLE/ECFMG Identification Number to use ECFMG's on-line services.

Your USMLE/ECFMG Identification Number cannot be changed. If you forget or lose your USMLE/ECFMG Identification Number, you can obtain it by accessing IWA or by contacting ECFMG. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website. To protect the privacy of applicants, ECFMG will not provide USMLE/ECFMG Identification Numbers by telephone.

**Important Note:** As part of the process of obtaining an Identification Number, you will be asked if you previously submitted an application to ECFMG for examination. You also will be asked if you were previously assigned a USMLE Identification Number. If you were previously assigned a USMLE Identification Number or have submitted a prior exam application to ECFMG, you must answer "Yes" to the applicable question(s), even if you submitted the prior application under a different name or did not take the exam for which you applied. You must answer "Yes" regardless of whether you submitted an on-line application or a paper application. If you were previously assigned a USMLE Identification Number or have submitted an application to ECFMG but indicate that you

A0016

were not previously assigned a number or have not applied previously, this may result in a finding of irregular behavior and permanent annotation of your ECFMG record. See *Policies and Procedures Regarding Irregular Behavior*.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0244

SAppx0017

# Your ECFMG Record

USMLE/ECFMG Identification Number | Your Name | Changing Your Name | Contact Information

## Your Name

You must ensure that the name in your ECFMG record is your correct and current name. This name will appear on your Standard ECFMG Certificate once you have met all requirements for certification. You must use this name consistently in all communications you send to ECFMG, including applications and requests for other services. Failure to use the name in your ECFMG record consistently in all communications with ECFMG may delay exam registration. It may also prevent you from taking an exam for which you are registered and scheduled.

You can check the name in your ECFMG record on-line using OASIS or the MyECFMG mobile app. If you legally change your name, you must submit acceptable documentation to ECFMG to change the name in your ECFMG record. See *Changing Your Name* in *Your ECFMG Record*.

- The name you submit on your exam **application** will appear on your exam **scheduling permit**. Your name, as it appears on your scheduling permit, must exactly match the name on the form(s) of **identification** you present at the test center. Please review your scheduling permit for details and limited exceptions. See information on required identification under *Taking the Examination* in *The United States Medical Licensing Examination (USMLE)*.

  If the name on your **scheduling permit** has been misspelled, contact ECFMG immediately by e-mail, telephone, or fax. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website.

  If you change the name in your ECFMG record while you are registered for an exam, a revised scheduling permit reflecting this change will be issued. ECFMG will send you an e-mail notification when your revised scheduling permit is available. You must present the revised scheduling permit at the test center on your exam date. Name changes must be received **and processed** by ECFMG no later than seven business days before your testing appointment, or you will not be able to test.

  If you have a valid *Certification of Identification Form* (Form 186) on file with ECFMG, it will be invalidated when the name in your ECFMG record is changed, and you will be required to complete a new *Certification of Identification Form* (Form 186) the next time you apply for examination.

A0018

- If the name on your **medical diploma, transcript, or other credential** does not match **exactly** the name in your **ECFMG record**, you must submit documentation, as described in *Verifying Your Name* in *Medical Education Credentials* that **verifies** the name on your medical diploma, transcript, or other credential is (or was) your name. See *Name on Medical Diploma and Transcript(s)* in *Medical Education Credentials* for examples of common name discrepancies that require name **verification**.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Your ECFMG Record

USMLE/ECFMG Identification Number | Your Name | Changing Your Name | Contact Information

## Changing Your Name

If you have legally changed your name and want to request a **change** of name in your ECFMG record, send a completed *Request to Change Applicant Biographic Information (Form 182)* to ECFMG. Form 182 is available in the Resources section of the ECFMG website and from ECFMG, upon request. Form 182 requires you to provide a reason for the name change and must be accompanied by a copy of the appropriate document(s), as defined on Form 182. ECFMG must be able to determine from the document(s) you submit that your name has legally changed from the name currently in your ECFMG record to the name you are requesting to appear in your record and that you are using this new name consistently. This means that it may be necessary for you to submit more than one document to support your name change request. For the purpose of **changing** your name, the document(s) you provide must be **unexpired** (if applicable). These documents may include:

- Passport (including the pages with your photograph and the expiration date)
- Birth certificate
- Marriage certificate
- Official court order
- U.S. Resident Alien Card
- U.S. Naturalization Certificate
- U.S. Passport Card (a one-page document that includes your photograph and the expiration date)

See additional information on documents in Important Notes below.

**Important Notes:** If you change the name in your ECFMG record while you are registered for an exam, a revised scheduling permit reflecting this change will be issued. ECFMG will send you an e-mail notification when your revised scheduling permit is available. You must present the revised scheduling permit at the test center on your exam date. Name changes must be received **and processed** by ECFMG no later than seven business days before your testing appointment, or you will not be able to test.

If you have a valid *Certification of Identification Form* (Form 186) on file with ECFMG, it will be invalidated when the name in your ECFMG record is changed, and you will be

A0020

required to complete a new *Certification of Identification Form* (Form 186) the next time you apply for examination.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Your ECFMG Record

USMLE/ECFMG Identification Number | Your Name | Changing Your Name | Contact Information

## Contact Information

The contact information in your ECFMG record consists of your e-mail address, your address of residence, your telephone number, and your fax number (if applicable). ECFMG will send information on the status of your applications by e-mail. You will also need an e-mail address to use ECFMG's on-line services. Be sure to include a full and complete address for your residence. ECFMG will use your address of residence as your mailing address. Certain ECFMG correspondence, including your Standard ECFMG Certificate, requires a full mailing address.

You should ensure that the contact information in your ECFMG record is current. You can check and update your contact information on-line using OASIS or the MyECFMG mobile app. You cannot submit changes to your contact information to ECFMG by e-mail. ECFMG will not process changes to contact information received from any person other than the applicant.

Changing your e-mail address using OASIS or MyECFMG does not update your e-mail address in your e-newsletter subscription(s). If you are subscribed to one or more of ECFMG's e-mail newsletters, such as *The ECFMG® Reporter* or *ECHO News*, and your e-mail address changes, you must update your e-mail address for **each** e-newsletter. To update your e-mail address in your e-newsletter subscription(s), visit the E-Newsletters page in the Resources section of the ECFMG website, click on the newsletter(s) you receive, unsubscribe your old e-mail address, and subscribe your new e-mail address.

To protect the privacy of applicants, ECFMG will e-mail applicant-specific information only to the e-mail address in the applicant's ECFMG record. If your e-mail inquiry requires a specific response, you must send your inquiry from the e-mail address in your ECFMG record.

All correspondence with ECFMG, including e-mails, will become a part of your permanent ECFMG record.

For further information regarding ECFMG's data collection and privacy practices, please refer to our Privacy Notice.

SA0022

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Your ECFMG Financial Account

Fees | [Payment](#) | [Methods of Payment](#) | [Refunds](#) | [Forfeiture of Funds](#)

## Fees

For a list of fees for ECFMG services that applicants encounter most frequently while pursuing ECFMG Certification and entry into U.S. programs of graduate medical education, see the [Fees](#) page on the ECFMG website. Other fees may apply. All fees are in U.S. dollars and are subject to change without notice.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Your ECFMG Financial Account

Fees | Payment | Methods of Payment | Refunds | Forfeiture of Funds

## Payment

Full payment is due at the time you submit an application or request a service. If your application/request is rejected, any payment received with that application/request will be credited to your ECFMG financial account.

Funds in an applicant's ECFMG financial account will be available for a period of two years to pay for applications/requests. Any funds not used during a two-year period will be forfeited to ECFMG; **this means that the applicant will lose those funds**. See *Forfeiture of Funds* in *Your ECFMG Financial Account*.

**If you owe money to ECFMG** at the time that your application/request is processed, ECFMG will apply the payment included with your application/request to the amount that you owe. Any money that is left after this will be used to pay for the application/request. If there is not enough money remaining to pay for the application/request, your application/request will be rejected.

If you submit a paper request and do not include payment, or if the payment you include is not sufficient to cover all fees, we will use the money in your ECFMG financial account to pay for the request. If the money in your account is not sufficient to cover all fees, your request will be rejected.

You can check the status of your ECFMG financial account and make on-line payments using OASIS or the MyECFMG mobile app. ECFMG's on-line payment is secured using industry-standard encryption technology.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

A0025

# Your ECFMG Financial Account

[Fees](#) | [Payment](#) | Methods of Payment | [Refunds](#) | [Forfeiture of Funds](#)

**Methods of Payment**

If you submit an application or request a service **on-line**, you can pay on-line at the time of application/request by:

- **Credit card** – To use this option, you must have a Visa, MasterCard, Discover, or American Express card with a security code.
- **Electronic check** – To use this option, you must have a checking account at a U.S. bank and either a U.S. Social Security Number or U.S. driver's license. Checks returned for insufficient funds will be subject to a $10 processing fee.

You can also pay in advance using one of the payment methods described above by accessing OASIS on the ECFMG website or using the MyECFMG mobile app.

You can also send payment in advance to ECFMG using *Payment for Service(s) Requested* (Form 900), available in the Resources section of the ECFMG website. If you submit payment using Form 900, you can pay by:

- **Credit card** – Visa, MasterCard, Discover, or American Express.
- **Check, bank draft, or money order** made payable to the Educational Commission for Foreign Medical Graduates (or ECFMG). All payments must be made in U.S. funds through a U.S. bank. **You must write your full name and USMLE/ECFMG Identification Number, if one has been assigned to you, on your payment.**

If you pay in advance, you should verify that the payment has been received and credited to your ECFMG financial account before you begin the application or request process. You can verify the status of your ECFMG financial account on-line using OASIS or the MyECFMG mobile app.

> **Important Note:** If you need to make multiple credit card transactions to pay for an application/request, you must make these payments to your ECFMG financial account in advance using OASIS, the MyECFMG mobile app, or by submitting multiple copies of Form 900.

Do **not** send payments in cash.

SA0026

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Your ECFMG Financial Account

Fees | Payment | Methods of Payment | Refunds | Forfeiture of Funds

## Refunds

If you have money in your ECFMG financial account, you may request a refund. Refund requests must be made in writing and should be sent via e-mail to finance@ecfmg.org. If the money in your account was a payment for an exam application that was rejected (because you were not eligible or the application was incomplete or otherwise deficient), your refund will be subject to a $100 processing fee. Approved refunds typically will be issued using the same method as the original payment. For example, if an applicant submits a payment using a credit card, then the refund will be made to the same card.

**Important Note:** You should consider carefully the timing of your exam application, eligibility period, and test date. Once registered, you cannot cancel or postpone your registration. If you do not schedule and take the exam, you will not receive a refund or credit of your exam fee(s), and you will be required to reapply, including payment of all applicable fees, if you wish to take the exam.

Although you cannot cancel or postpone your registration, there are options that provide registered applicants with flexibility. All registered applicants may change their scheduled test date and/or center, subject to availability. Applicants registered for Step 1/Step 2 CK may request extension of their eligibility periods. Applicants registered for Step 1/Step 2 CK also may request to change their testing region. See information on rescheduling under *Scheduling the Examination* in *The United States Medical Licensing Examination (USMLE)*. Applicants registered for Step 2 CS who are unable to obtain the appropriate visa to enter the United States to take the exam may request a full refund of the exam fee. Other requests for exceptions from Step 2 CS applicants are considered on a case-by-case basis. ECFMG will consider requests for exceptions only after the applicant's eligibility period has expired.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAA0028

# Your ECFMG Financial Account

[Fees](#) | [Payment](#) | [Methods of Payment](#) | [Refunds](#) | Forfeiture of Funds

## Forfeiture of Funds

Funds in an applicant's ECFMG financial account will be available for a period of two years to pay for applications submitted or services requested. Any funds not used during a two-year period will be forfeited to ECFMG; **this means that the applicant will lose those funds**. The two-year period is calculated from the date of last transactional activity in the account.

It is your responsibility to monitor the status of your ECFMG financial account. You can check the status of your account, including dates on which payments were made to your account, using [OASIS](#) or the MyECFMG mobile app. A refund request should be made to claim any funds that will not be used prior to the expiration of the two-year period. See [Refunds](#) in *Your ECFMG Financial Account*.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Irregular Behavior

**Policies and Procedures Regarding Irregular Behavior**

**A. Policies Regarding Irregular Behavior**

1. *Irregular behavior* includes all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG. Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG. Examples of irregular behavior include, but are not limited to, submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual; failing to comply with United States Medical Licensing Examination® (USMLE®) or ECFMG policies, procedures, and/or rules; falsification of information on applications, submissions, or other materials to ECFMG; taking an examination when not eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals.

2. The Medical Education Credentials Committee's determination of irregular behavior is sufficient cause for ECFMG to bar an individual from future examinations, to bar an individual from other ECFMG programs and services, to withhold and/or invalidate the results of an examination, to withhold an ECFMG Certificate, to revoke an ECFMG Certificate, or to take other appropriate actions for a specified period of time or permanently. ECFMG may report the Medical Education Credentials Committee's determination of irregular behavior to the USMLE Committee for Individualized Review, Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

3. If the Medical Education Credentials Committee determines that an individual engaged in irregular behavior, a permanent annotation to that effect will be included in the individual's ECFMG record. This annotation will appear on the ECFMG Certification Verification Service (CVS) and ECFMG Status Reports for the individual. If the individual

has an EPIC Portfolio, a permanent annotation will be included on all EPIC Reports with respect to that individual. Additional information explaining the basis for the determination of irregular behavior and the resulting action(s) will accompany every ECFMG Status Report, CVS Report, and EPIC Report, and may also be provided to legitimately-interested entities; this additional information may be provided, regardless of the date of the conduct or activity that comprises the irregular behavior. Notice of the Medical Education Credentials Committee's determination of irregular behavior is periodically reported to the ECFMG Board of Trustees.

## B. Procedures Regarding Irregular Behavior

1. After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and feasible, staff will conduct a follow-up investigation to gather additional information.

2. If the individual is an examinee and the review referenced above will not be concluded until after the typical period for the reporting of exam scores, the examinee will be notified that the reporting of the exam scores in question is being delayed.

3. If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee. ECFMG may withhold services from the individual pending a determination from the Medical Education Credentials Committee. If the individual is an examinee, the examinee's exam scores will be withheld, if not already released, and the examinee may not be permitted to sit for subsequent examinations, nor will applications for examination be processed.

4. Using the individual's last known address, the individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*. If the alleged irregular behavior is related to a shared ECFMG and USMLE policy, the USMLE Program will also be advised of the allegation. The individual will be given an opportunity to provide written explanation and to present other relevant information. Any such written explanation or other relevant information must be received by ECFMG by the deadline set forth in ECFMG's writing to the individual. Submissions received after the deadline will be considered by the Medical Education Credentials Committee at its discretion. The individual may also request the opportunity to appear personally before the Medical Education Credentials Committee, and may be represented by legal counsel, if the individual so wishes. In instances in which the individual appears personally before the

Medical Education Credentials Committee, a stenographic or audio recording will be made of that portion of the proceedings during which the individual is in attendance. Any statements made by the individual during a personal appearance before the Medical Education Credentials Committee will be under oath.

5. Individuals who have been charged with irregular behavior who wish to request a deferral of the ECFMG Committee's review of the allegation must (1) submit the request in writing and (2) provide the reason for the request. If ECFMG staff determine that the granting of the request could have a material impact on the individual's opportunity to refute the allegation then staff, at its discretion, can grant the request and defer an ECFMG action for up to six (6) months. Unless the individual can demonstrate compelling circumstances, ECFMG staff should not grant more than two deferral requests. Notwithstanding the foregoing, if the individual charged with irregular behavior is ECFMG Certified, a candidate for residency, or practicing medicine, ECFMG staff will only grant the request for deferral if, in its sole discretion, ECFMG believes that public health and safety is not at risk. If the deferral request is granted, ECFMG will notify appropriate institutions and authorities of the individual's pending irregular behavior charge.

6. All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the Medical Education Credentials Committee. The Medical Education Credentials Committee, based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior. If the Medical Education Credentials Committee determines that the individual engaged in irregular behavior, the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior. ECFMG will notify the individual whether the Medical Education Credentials Committee determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto.

7. The Medical Education Credentials Committee's determination of irregular behavior and any action(s) taken pursuant thereto (a "decision" of the Medical Education Credentials Committee) may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the Medical Education Credentials Committee did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the Medical Education Credentials Committee's decision was clearly contrary to the weight of the evidence before it. The notice of appeal must be received by ECFMG within thirty (30) days of the date on which the notification advising the individual of the Medical Education Credentials Committee's decision was mailed to

SAppx0259

Case 2:18-cv-05540-WB    Document 33-4    Filed 05/03/19    Page 35 of 58

the individual. The appeal of a decision of the Medical Education Credentials Committee is governed by the Rules of Appellate Procedure.

8. Petitions for reconsideration of a decision of the Medical Education Credentials Committee will be reviewed by the Medical Education Credentials Committee only in extraordinary cases. Any such petition must first be considered by ECFMG staff, who, after discussion with the Medical Education Credentials Committee Chair, may deny the request or place it on the agenda for consideration by the full Medical Education Credentials Committee at a regularly scheduled meeting. Absent the submission of newly discovered material evidence not previously available to the petitioner and, therefore, not available to the Medical Education Credentials Committee, petitions for reconsideration typically will be denied.

## C. Representative Examples of Irregular Behavior

Representative examples of allegations of irregular behavior and actions taken by the ECFMG Medical Education Credentials Committee include, but are not limited to, the following:

- **Providing false information on an application submitted to ECFMG**

  The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who provided false information on an application submitted to ECFMG as part of the certification process. In that application, the individual certified he was a student enrolled in medical school when, in fact, he previously had been dismissed from medical school and, therefore, was no longer a student.

  Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

- **Providing false information to ECFMG as part of the ECFMG On-line Authentication Process, which is a prerequisite to submitting an application for examination**

  The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who provided false information to ECFMG as part of the ECFMG On-line Authentication Process, which is used to obtain a USMLE/ECFMG Identification Number and is a prerequisite to submitting an application for examination. During the on-line authentication process, the individual certified he had

SA0033

not previously submitted an application for examination to ECFMG when he had not only previously applied for, but had taken examinations.

Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

- **Submitting a fraudulent medical diploma and providing false information on an application submitted to ECFMG**

The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who submitted a fraudulent medical diploma and provided false information on an application submitted to ECFMG.

Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Application for ECFMG Certification

To be eligible for ECFMG Certification, you must complete an Application for ECFMG Certification. The Application for ECFMG Certification consists of an on-line application available through ECFMG's Interactive Web Applications (IWA) and the Certification of Identification Form (Form 186) that must be completed and notarized using NotaryCam. Instructions on how to complete Form 186 using NotaryCam are included with the form. You must have your _USMLE/ECFMG Identification Number_ before you can begin the Application for ECFMG Certification. For the current fee for submitting an Application for ECFMG Certification, see the _Fees_ page of the ECFMG website.

As part of the Application for ECFMG Certification, you will be asked to confirm the name, date of birth, and gender in your ECFMG record. If this information is incorrect, you must have the information in your ECFMG record changed to reflect your correct name, date of birth, and/or gender before you can complete the Application for ECFMG Certification. Instructions for how to correct this information will be provided at the time of application.

If you are a medical school **student**, you will be asked to confirm that you are officially enrolled in a medical school located outside the United States and Canada that is listed in the _World Directory of Medical Schools (World Directory)_ as meeting ECFMG eligibility requirements, and that the "Graduation Years" in the ECFMG note in your medical school's _World Directory_ listing are listed as "Current." If you are a medical school **graduate**, you will be asked to confirm that you are a graduate of a medical school located outside the United States and Canada that is listed in the _World Directory_ as meeting ECFMG eligibility requirements, and that your graduation year is included in the ECFMG note in your school's _World Directory_ listing. See _Medical School Requirements_.

The Application for ECFMG Certification also will require you to confirm your understanding of the purpose of ECFMG Certification and release certain legal claims.

**The information submitted in your Application for ECFMG Certification will become a part of your permanent ECFMG record.**

An Application for ECFMG Certification will not be considered complete until ECFMG receives and processes both the on-line part of the application and the notarized Form 186 from NotaryCam. A notification will be sent to the e-mail address in your ECFMG record confirming receipt of the on-line part of your Application for ECFMG Certification. Once your Application for ECFMG Certification, including Form 186, has

A0035

been accepted by ECFMG, it typically remains valid throughout the certification process. If you are a student when you submit your Application for ECFMG Certification, you do not need to submit another one when you graduate. You can use OASIS or the MyECFMG mobile app to confirm that you have submitted an Application for ECFMG Certification and have a valid Form 186 on file.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Examinations for ECFMG Certification

Examination Requirements | [Time Limit for Completing Examination Requirements](#)

## Examination Requirements

To be eligible for ECFMG Certification, you must satisfy both the medical science examination and clinical skills requirements. To satisfy these requirements, you must pass Step 1 and Step 2 of the United States Medical Licensing Examination (USMLE). Step 2 of the USMLE has two separately administered components, the Clinical Knowledge (CK) component and the Clinical Skills (CS) component. Refer to the USMLE *Bulletin of Information* for more information. ECFMG has established time limits for completing the examination requirements for ECFMG Certification. See *Time Limit for Completing Examination Requirements* in *Examinations for ECFMG Certification*.

Passing performance on certain formerly administered examinations can be used to meet these requirements as described below.

## Medical Science Examination Requirement

Step 1 and Step 2 CK of the USMLE are the exams currently administered that satisfy the medical science examination requirement. There are time limits for completing these examinations for ECFMG Certification. See *Time Limit for Completing Examination Requirements* in *Examinations for ECFMG Certification*.

ECFMG also accepts a passing performance on the following **former** examinations to satisfy the medical science examination requirement for ECFMG Certification: ECFMG Examination, Visa Qualifying Examination (VQE), Foreign Medical Graduate Examination in the Medical Sciences (FMGEMS), and the Part I and Part II Examinations of the National Board of Medical Examiners (NBME).

Combinations of exams are also acceptable. Specifically, if you have passed only part of the former VQE, FMGEMS, or the NBME Part I or Part II, you may combine a passing performance on the basic medical science component of one of these exams or USMLE Step 1 with a passing performance on the clinical science component of one of the other exams or USMLE Step 2 CK, provided that the components are passed within the period specified for the exam program.

Additionally, ECFMG accepts a score of 75 or higher on each of the three days of a single administration of the former Federation Licensing Examination (FLEX), if taken prior to June 1985, to satisfy this requirement.

SA0037

## Clinical Skills Requirement

Step 2 CS of the USMLE is the exam currently administered that satisfies the clinical skills requirement. There are time limits for completing this examination for ECFMG Certification. See *Time Limit for Completing Examination Requirements* in *Examinations for ECFMG Certification*.

International medical students/graduates who have **both** passed the former ECFMG Clinical Skills Assessment (CSA®) **and** achieved a score acceptable to ECFMG on an English language proficiency test (such as the TOEFL exam or the former ECFMG English Test) can use these passing performances to satisfy the clinical skills requirement for ECFMG Certification.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Examinations for ECFMG Certification

Examination Requirements | Time Limit for Completing Examination Requirements

## Time Limit for Completing Examination Requirements

ECFMG policy requires that international medical students/graduates pass the USMLE Steps and Step Components required for ECFMG Certification within a seven-year period. This means that once you pass a Step or Step Component, you will have seven years to pass all of the other Step(s) or Step Component(s) required for ECFMG Certification. This seven-year period begins on the exam date of the first Step or Step Component passed and ends **exactly seven years from that exam date**.

If you do not pass all required Steps and Step Components within a maximum of seven years, your earliest USMLE passing performance will no longer be valid for ECFMG Certification. **It is your responsibility to track your progress toward meeting the exam requirements for ECFMG Certification. ECFMG will not notify you of upcoming deadlines to meet the seven-year requirement and will not notify you if one (or more) of your passing performances becomes invalid for ECFMG Certification because you failed to meet the seven-year requirement.**

> **Example:** An international medical graduate took Step 1 on October 1, 2012 and passed. He has through October 1, 2019 to take and pass Step 2 CK and Step 2 CS, satisfying the remaining exam requirements for ECFMG Certification. If he does not take and pass Step 2 CK and Step 2 CS on or before October 1, 2019, his passing performance on Step 1 would no longer be valid for ECFMG Certification.

Under this policy, more than one USMLE passing performance can become invalid for ECFMG Certification.

> **Example:** An international medical graduate passed Step 1 on April 1, 2011, and passed Step 2 CK on May 1, 2012. She had through April 1, 2018 (seven years from her Step 1 passing performance) to pass Step 2 CS, satisfying the remaining exam requirements for ECFMG Certification. She did not pass Step 2 CS by April 1, 2018, so her passing performance on Step 1 is no longer valid for ECFMG Certification. Her earliest USMLE passing performance that is valid for ECFMG Certification is now the Step 2 CK passing performance on May 1, 2012. She now has through May 1, 2019 (seven years from her Step 2 CK passing performance) to pass Step 1 and Step 2 CS, satisfying the remaining exam requirements for ECFMG Certification. If she does not pass Step 1 and Step 2 CS

by May 1, 2019, her passing performance on Step 2 CK will no longer be valid for ECFMG Certification.

There are exceptions to this policy:

- This seven-year limit does **not** apply to the former ECFMG CSA because the CSA was not a USMLE Step or Step Component. International medical students/graduates who satisfied the clinical skills requirement for ECFMG Certification by passing the CSA are required to pass only Step 1 and Step 2 CK within seven years of each other for ECFMG Certification. For these individuals, the seven-year period begins on the exam date of the first USMLE Step or Step Component passed, regardless of when the CSA was passed.

- If your earliest USMLE passing performance that is valid for ECFMG Certification took place before June 14, 2004, you are required to pass only Step 1 and Step 2 CK within seven years of each other for ECFMG Certification; if required for ECFMG Certification, Step 2 CS can be passed outside the seven-year period.

If you have passed a Step or Step Component but this passing performance is no longer valid for ECFMG Certification, you may request an exception to retake the previously passed exam that is no longer valid. The USMLE program limits to six the total number of times an examinee can take the same Step or Step Component. See *Reexamination and Reapplication* in *The United States Medical Licensing Examination (USMLE)*.

**Important Notes:** Time limits to complete the USMLE for the purpose of U.S. medical licensure are established by state medical licensing authorities and may require completion of all Steps or Step Components (including Step 3, which is not required for ECFMG Certification) within a certain number of years. Information regarding specific state requirements can be obtained on the *Federation of State Medical Boards website*.

Applicants who retake a previously passed Step or Step Component to comply with a time limit should understand the implications of a failing retake performance on their Step 3 eligibility. See *Retaking Previously Passed Steps* in the *USMLE Bulletin of Information*.

A passing performance that is no longer valid for ECFMG Certification will still appear on a USMLE transcript.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Eligibility for Examination

Medical School Students | [Medical School Graduates](#) | [Reverification of Eligibility](#)

The eligibility requirements for examination differ depending on whether you are a medical school **student** or a medical school **graduate**.

## Medical School Students

**To be eligible for Step 1, Step 2 CK, and Step 2 CS**, you must be officially enrolled in a medical school located outside the United States and Canada that is listed in the *World Directory* as meeting ECFMG eligibility requirements, both at the time that you apply for examination and on your test day. In addition, the "Graduation Years" in the ECFMG note in your medical school's *World Directory* listing must be "Current" at the time you apply and on your test day. See [Medical School Requirements](#). An authorized official of your medical school must certify your current enrollment status; instructions will be provided at the time of application for examination.

As soon as you graduate and receive your medical diploma, you must submit a copy of your medical diploma to ECFMG. See *[Final Medical Diploma and Transcript](#)* in *Medical Education Credentials*.

**In addition to being currently enrolled as described above, to be eligible for Step 1, Step 2 CK, and Step 2 CS**, you must have completed at least two years of medical school. This eligibility requirement means that you must have completed the basic medical science component of the medical school curriculum by the beginning of your eligibility period. Although you may apply for and take the examinations after completing the basic medical science component of your medical school curriculum, it is recommended that you complete your core clinical clerkships, including actual patient contact, before taking Step 2 CK and Step 2 CS.

If you have passed the former ECFMG CSA, you are **not** eligible to take Step 2 CS, except under certain, well-defined circumstances. Eligible circumstances include: taking Step 2 CS to permanently validate an expired CSA examination date for the purpose of entering U.S. GME; taking Step 2 CS because your most recent performance on a clinical skills exam (CSA or Step 2 CS) is a failing performance (See *Retaking Previously Passed Steps* in the [USMLE *Bulletin of Information*](#)); and retaking Step 2 CS to meet a time limit (See *[Reexamination and Reapplication](#)* in *The United States Medical Licensing Examination (USMLE)*).

**Important Notes:** If your eligibility for an exam changes after you apply but before you take the exam, you are required to inform ECFMG immediately in writing of this change in your status. Such notification must be sent to ECFMG's Applicant Information Services. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website. Such changes in your eligibility status include, but are not limited to, the following:

- Medical school students who transfer to another medical school after submitting an application for examination must inform ECFMG immediately in writing of this transfer.

- Medical school students who have been dismissed or withdraw(n) from medical school are not eligible for USMLE, even if they are appealing the school's decision to dismiss them or are otherwise contesting their status. Medical school students who have been dismissed or withdraw(n) from medical school must inform ECFMG immediately in writing of their dismissal or withdrawal.

- Medical school students who take a leave of absence should consult with their medical schools about whether they will be considered officially enrolled in medical school during leave. Your medical school may consider a student on leave of absence to be withdrawn from medical school. Medical school students who are not officially enrolled in medical school are not eligible to apply for or take USMLE. Applicants who take a leave of absence after submitting an application for examination to ECFMG must inform ECFMG immediately in writing of this leave.

**Failure to inform ECFMG that you may no longer be eligible to take the examination may result in a finding of irregular behavior and permanent annotation of your ECFMG record. See _Policies and Procedures Regarding Irregular Behavior_.**

If you take a Step or Step Component for which you are not eligible, results for that exam may not be reported or, if previously reported, may be canceled.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

A0042

# Eligibility for Examination

Medical School Students | Medical School Graduates | Reverification of Eligibility

The eligibility requirements for examination differ depending on whether you are a medical school **student** or a medical school **graduate**.

## Medical School Graduates

**To be eligible for Step 1, Step 2 CK, and Step 2 CS**, you must be a graduate of a medical school located outside the United States and Canada that is listed in the *World Directory* as meeting ECFMG eligibility requirements. Your graduation year must be included in the "Graduation Years" listed in the ECFMG note in your medical school's *World Directory* listing. See *Medical School Requirements*. You must have been awarded credit for at least four credit years (academic years for which credit has been given toward completion of the medical curriculum) by a medical school that is listed in the *World Directory* as meeting ECFMG eligibility requirements. An authorized official of your medical school must certify your status as a graduate of the school; instructions will be provided at the time of application for examination.

You must submit a copy of your medical diploma at the time of exam application if your diploma has not been sent to ECFMG previously. See the *Reference Guide for Medical Education Credentials* on the ECFMG website for the exact title of the final medical diploma you must provide. If you have graduated and met all requirements for your medical diploma but your medical diploma has not yet been issued, a letter signed by an authorized official of your medical school must be submitted with your exam application. The letter you submit must be the original document and must be written on your medical school's letterhead. The letter must include the following statement:

> **This is to confirm that [applicant name] has graduated and completed all requirements to receive the [degree title] degree from [medical school/university name]. The degree will be issued [month and year].**

You must then submit a copy of your medical diploma to ECFMG as soon as your diploma is issued. See *Medical Education Credentials*.

All documents that are not in English must be accompanied by an official English translation that meets ECFMG's translation requirements. See *English Translations* in *Medical Education Credentials*.

If you have passed the former ECFMG CSA, you are **not** eligible to take Step 2 CS, except under certain, well-defined circumstances. Eligible circumstances include: taking Step 2 CS to permanently validate an expired CSA examination date for the purpose of entering U.S. GME; taking Step 2 CS because your most recent performance on a clinical skills exam (CSA or Step 2 CS) is a failing performance (See *Retaking Previously Passed Steps* in the USMLE *Bulletin of Information*); and retaking Step 2 CS to meet a time limit (See *Reexamination and Reapplication* in *The United States Medical Licensing Examination (USMLE)*).

> **Important Notes:** If your eligibility for an exam changes after you apply but before you take the exam, you are required to inform ECFMG immediately in writing of this change in your status. Such notification must be sent to ECFMG's Applicant Information Services. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website. **Failure to inform ECFMG that you may no longer be eligible to take the examination may result in a finding of irregular behavior and permanent annotation of your ECFMG record. See *Policies and Procedures Regarding Irregular Behavior*.**
>
> If you take a Step or Step Component for which you are not eligible, results for that exam may not be reported or, if previously reported, may be canceled.
>
> If you have already been granted a physician license by a U.S. medical licensing authority based on other licensure examinations, such as the Federation Licensing Examination (FLEX), the NBME certifying examinations, or the National Board of Osteopathic Medical Examiners COMLEX-USA, you may not be eligible to take the USMLE. Please contact ECFMG if you have questions about your eligibility.

The American Medical Association's Council on Medical Education no longer supports the Fifth Pathway as a mechanism for eligibility to enter ACGME-accredited graduate medical education programs. Additionally, the USMLE Program no longer accepts Fifth Pathway Certificates to meet eligibility requirements to take Step 3. Individuals who hold Fifth Pathway Certificates and wish to apply to ECFMG for examination must apply for ECFMG Certification and meet the requirements for ECFMG Certification established for all medical school graduates.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Eligibility for Examination

Medical School Students | Medical School Graduates | Reverification of Eligibility

## Reverification of Eligibility

ECFMG reserves the right to reverify your eligibility for examination at any time during the application and registration process. If your medical school informs ECFMG that your status has changed, and ECFMG determines you are no longer eligible for examination, your registration will be canceled. **If you have failed to inform ECFMG of this change in your status, it may result in a finding of irregular behavior and permanent annotation of your ECFMG record. See *Policies and Procedures Regarding Irregular Behavior*.**

For medical school students, ECFMG may reverify your status as a student officially enrolled in medical school. When a medical school does not participate in ECFMG Medical School Web Portal (EMSWP) Status Verification, ECFMG's reverification of the status of the school's students may include ECFMG sending a written request for reverification by postal mail to the medical school. If reverification is requested by ECFMG, ECFMG may cancel your registration or withhold your score report until ECFMG has received reverification of your status directly from the medical school. If your registration is canceled, you may be required to reapply.

For medical school graduates, ECFMG may reverify your medical education credentials with the issuing medical school. If such reverification is requested by ECFMG, you will be registered for examination only after ECFMG has received reverification of your credentials directly from the medical school. If reverification is requested by ECFMG after you have been registered for examination, ECFMG may cancel your registration or withhold your score report until ECFMG has received reverification of your medical education credentials directly from the issuing school. If your registration is canceled, you may be required to reapply.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## About USMLE

The USMLE is a three-step examination for medical licensure in the United States. The USMLE provides a common system to evaluate applicants for medical licensure. The USMLE is sponsored by the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME). The USMLE is governed by a committee consisting of representatives of FSMB, NBME, ECFMG, and the American public. If you apply for examination, you are **required** to read the USMLE *Bulletin of Information* for detailed information on the USMLE.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAPPA0046

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## Registration and Test Delivery Entities

## Step 1 and Step 2

ECFMG is the organization that registers international medical students/graduates for Step 1 and Step 2 (CK and CS). This means that ECFMG processes your exam application and payment, verifies your eligibility, and notifies you of the outcome of your application. The NBME serves as the registration entity for students/graduates of U.S. and Canadian medical school programs accredited by the Liaison Committee on Medical Education (LCME) and U.S. medical schools accredited by the American Osteopathic Association (AOA).

For eligible international medical students/graduates applying for Step 1/Step 2 CK, ECFMG forwards registration information to NBME, and NBME issues the exam scheduling permits. ECFMG sends an e-mail notification to these applicants when their scheduling permits are available. Scheduling and test centers for USMLE Step 1 and Step 2 CK are provided by Prometric. Prometric serves as the test delivery entity for all examinees taking Step 1/Step 2 CK. Step 1 and Step 2 CK are delivered at Prometric test centers worldwide.

For eligible international medical students/graduates applying for Step 2 CS, ECFMG issues the exam scheduling permits and sends an e-mail notification to applicants when the scheduling permits are available. The Clinical Skills Evaluation Collaboration (CSEC), a collaboration of ECFMG and NBME, is responsible for delivery of the Step 2 CS exam. Step 2 CS is delivered to all examinees at regional CSEC Centers in the United States.

For all applicants, NBME is responsible for determining the results of USMLE exams and for issuing the score reports. ECFMG sends an e-mail notification to international medical students/graduates when their Step 1, Step 2 CK, and Step 2 CS score reports are available.

## Step 3

The FSMB is the organization that registers all Step 3 applicants. To be eligible for Step 3, international medical graduates must have passed Step 1 and Step 2 (CK and CS) and

must be certified by ECFMG, among other requirements. See *Eligibility for the USMLE* in the USMLE *Bulletin of Information*. If you have not met all eligibility requirements, your application for Step 3 will not be accepted. For detailed information and application procedures for Step 3, contact the FSMB. Scheduling and test centers for Step 3 are provided by Prometric, which serves as the test delivery entity for all Step 3 examinees. USMLE Step 3 is delivered at Prometric test centers in the United States.

For all applicants, NBME is responsible for determining the results of USMLE exams and for issuing the score reports. FSMB notifies examinees when their Step 3 score reports are available.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0275

SA0048

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination |
Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results |
Reexamination and Reapplication

## Applying for Examination

Before applying to ECFMG for examination:

- International medical students/graduates must complete an Application for ECFMG Certification, including the notarized Certification of Identification Form (Form 186). See *Application for ECFMG Certification*.

- ECFMG must accept the Application for ECFMG Certification, including the notarized Form 186.

- International medical students/graduates must read the applicable editions of the ECFMG *Information Booklet* and the USMLE *Bulletin of Information*.

To apply for USMLE Step 1, Step 2 CK, and/or Step 2 CS, use ECFMG's Interactive Web Applications (IWA). A complete application consists of the on-line part, which you complete using IWA; verification of your student or graduate status by your medical school; and any other required documents. You should read the detailed overview and instructions that accompany the application for examination in IWA before you begin working on the application; these resources will help you plan the timing of your application and outline any necessary items (such as official signatures) that require advance planning.

> **Important Note:** You should also consider deadlines imposed by the National Resident Matching Program (NRMP) and graduate medical education (GME) programs. It is solely the responsibility of the applicant to complete the required exams in time to meet deadlines imposed by the NRMP and/or GME programs. Since the number of applicants seeking to complete these exams may exceed the spaces available in time to meet those deadlines, there is no guarantee that sufficient spaces will be available for all applicants to meet deadlines imposed by the NRMP and/or GME programs. ECFMG assumes no liability of any kind if an applicant does not complete the exams in time to have results available to meet NRMP and/or GME program deadlines. See *Examination Results* for information on scoring turnaround times.

## Exam Fees

SAppx0276

For all exams, there is an examination fee. For Step 1 or Step 2 CK, there is an additional international test delivery surcharge, if you choose a testing region other than the United States/Canada. You must pay all applicable fees at the time you apply for examination. For the current exam fees and international test delivery surcharges, see the Fees page on the ECFMG website.

## Eligibility Periods

When you apply for Step 1 or Step 2 CK, you must select a three-month eligibility period, such as January-February-March, February-March-April, etc., during which you would prefer to take the exam. The eligibility period you are assigned will be listed on your scheduling permit. You must take the exam during the eligibility period assigned to you.

If you are unable to take Step 1/Step 2 CK during the three-month eligibility period assigned to you, you may request a one-time, contiguous eligibility period extension (EPEx) using ECFMG's IWA. Refer to the EPEx Overview in IWA for more information and instructions.

**If you do not take Step 1/Step 2 CK during your original or extended eligibility period or if you are unable to extend your eligibility period, you must reapply by submitting a new application and fee(s), if you wish to take the exam.**

When you apply for Step 2 CS, you are assigned a 12-month eligibility period that begins on the date that the processing of your application is completed. Your eligibility period will be listed on your scheduling permit.

Once your Step 2 CS eligibility period has been assigned, it cannot be changed or extended. You can schedule a testing appointment for any available date in your eligibility period, and reschedule a testing appointment within your eligibility period. See *Scheduling the Examination* for more information. **If you do not take Step 2 CS during your assigned eligibility period, you must reapply by submitting a new application and examination fee, if you wish to take the exam.**

## Testing Locations

Step 1 and Step 2 CK are delivered at Prometric test centers worldwide. Prometric's test centers are grouped into defined testing regions. When you apply for Step 1 or Step 2 CK, you must choose the testing region where you want to take the exam. A list of Prometric testing regions is available on the ECFMG website.

Case 2:18-cv-05540-WB    Document 33-42    Filed 05/03/19    Page 53 of 58 SA0050

You can take the exam at any test center in your testing region that offers USMLE, provided there is space available on the date you choose. **The test centers available for USMLE Step 1 and Step 2 CK are subject to change**. To obtain current information on specific test centers, visit the [Prometric website](#) or follow instructions on the scheduling permit for contacting Prometric.

If you are unable to keep your Step 1 or Step 2 CK testing appointment at the test center you select, you can reschedule for a different test center within your testing region, subject to availability. To avoid a rescheduling fee, you must reschedule more than 30 calendar days before your scheduled testing appointment. Refer to your scheduling permit for details.

If you are unable to take Step 1 or Step 2 CK in the testing region you selected, you may request a change to your testing region. For more information, see the *Request to Change USMLE® Step 1/Step 2 CK Testing Region (Form 312)*, available in the Resources section of the ECFMG website and from ECFMG, upon request.

Step 2 CS is administered at six test centers in five cities in the United States. Once you are registered for the exam, you will select a test center, subject to availability, when you schedule your testing appointment. If you are unable to keep your testing appointment at the test center you select, you can reschedule for a different center, subject to availability. To avoid a rescheduling fee, you must cancel or reschedule more than 14 calendar days before your scheduled testing appointment. Access [Step 2 CS Calendar and Scheduling](#) on the ECFMG website for more information.

## Examinees with Disabilities Requesting Test Accommodations

The USMLE program provides reasonable accommodations for examinees with disabilities under the Americans with Disabilities Act (ADA). If you are an individual with such a disability and require test accommodations, visit the [USMLE website](#) before you apply for each Step or Step Component for information regarding test accommodations, including procedures and documentation requirements.

## Examinees Who Require Additional Break Time

Examinees with physical or health conditions, such as lactation (to express breast milk) and diabetes (to monitor/treat blood glucose), may apply for additional break time. See the [USMLE *Bulletin of Information*](#) for more information.

## Personal Item Exceptions (PIE)

Unauthorized possession of personal items while you are in the secure areas of the testing center is prohibited. Exceptions to this policy may be made in certain limited circumstances. See the USMLE *Bulletin of Information* for more information.

**Important Note:** Please note that ECFMG will not provide services of any kind if doing so would be considered violative of any applicable federal, state, or local laws or regulations. Additionally, ECFMG may delay provision of services while investigating whether the services or surrounding circumstances violate such laws, regulations, or ECFMG's policies and procedures.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination |
Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results |
Reexamination and Reapplication

## Scheduling the Examination

Once ECFMG verifies that you are eligible and your registration is complete, your scheduling permit will be issued. If you apply for more than one exam at the same time, you will be issued separate scheduling permits for each exam. Once your scheduling permit is available, ECFMG will send a notification to the e-mail address in your ECFMG record. **You will not receive the scheduling permit or notification by postal mail**.

> **Important Note:** For Step 1 and Step 2 CK, if the beginning of your assigned eligibility period is more than six months in the future, your scheduling permit will not be available and the notification e-mail will not be sent until approximately six months before the beginning of the assigned eligibility period.

**The scheduling permit is a very important document**; it includes your assigned eligibility period, a description of the form(s) of identification you must bring to the test center on your exam date, and instructions for scheduling your testing appointment. You must bring your scheduling permit to the test center on your exam date. Your name, as it appears on your scheduling permit, must exactly match the name on your form(s) of identification. Please review your scheduling permit for details and limited exceptions. **If you do not bring a copy of your scheduling permit (electronic or paper) and required identification on each day of your exam, you will not be allowed to take the exam**. If you are not allowed to take the exam, you must pay a fee to reschedule your exam. Your rescheduled testing appointment must fall within your assigned eligibility period.

If the name listed on your scheduling permit is not correct, contact ECFMG immediately by e-mail, telephone, or fax. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website.

If the name in your ECFMG record is changed while you are registered for an exam, a revised scheduling permit reflecting this change will be issued. ECFMG will send you an e-mail notification when your revised scheduling permit is available. You must bring the revised scheduling permit to the test center. Name changes must be received **and processed** by ECFMG no later than seven business days before your testing appointment, or you will not be able to test. For Step 1 or Step 2 CK, if your eligibility period is extended or your testing region is changed while you are registered, a revised

scheduling permit reflecting this change will be issued. You must bring the revised scheduling permit to the test center.

If you lose your scheduling permit, you can access it through IWA.

## Scheduling

You can schedule your testing appointment as soon as you obtain your exam scheduling permit. Please refer to your scheduling permit for instructions on reviewing available test dates and centers and scheduling a testing appointment. If you do not schedule and take the exam within your eligibility period, you must reapply by submitting a new application and exam fee(s), if you wish to take the exam.

Please refer to the schedule for reporting Step 2 CS results, available on the ECFMG and USMLE websites, **before scheduling a testing appointment if you need your Step 2 CS results by a specific deadline**.

## Rescheduling

If you are unable to keep your Step 1 or Step 2 CK testing appointment, you are permitted to reschedule your appointment within your eligibility period. A fee is charged if a change is made during the 30 calendar days before your scheduled testing appointment. A fee schedule is posted on the USMLE website. Refer to your scheduling permit for details on contacting Prometric to change your appointment.

If you cannot take the Step 1 or Step 2 CK exam during your assigned eligibility period, you may request a one-time, contiguous eligibility period extension (EPEx) using ECFMG's IWA. Refer to the EPEx Overview in IWA for more information and instructions.

If you cannot take the Step 1 or Step 2 CK exam in the testing region you selected, you may request to change your testing region. Refer to the _Request to Change USMLE® Step 1/Step 2 CK Testing Region_ (Form 312) for details. This form is available in the Resources section of the ECFMG website and from ECFMG, upon request.

If you are unable to keep your Step 2 CS testing appointment, you are permitted to reschedule your appointment within your eligibility period. A fee is charged if a change is made during the 14 calendar days before your scheduled appointment. For instructions on canceling and rescheduling a Step 2 CS testing appointment, rescheduling fees, and to cancel or reschedule your appointment, access Step 2 CS Calendar and Scheduling on the ECFMG website.

Step 2 CS eligibility periods cannot be extended. If you do not take the exam within your eligibility period, you must reapply by submitting a new application and examination fee, if you wish to take the exam.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0055

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## Preparing for Examination

For detailed information on test lengths and formats see *The USMLE: Purpose, Test Format, and Test Lengths* in the USMLE *Bulletin of Information*.

Practice materials for all Steps and Step Components are available in the Practice Materials section of the USMLE website.

The NBME offers web-based self-assessments to help medical students and graduates evaluate their readiness for computer-based Steps and Step Components (Step 1, Step 2 CK, and Step 3). For complete information, see NBME Self-Assessment Services on the NBME website.

Practice Sessions for USMLE Step 1, Step 2 CK, and Step 3 are available at Prometric test centers to registered applicants. These sessions are provided primarily to give examinees the opportunity to become familiar with the Prometric test center environment. For more information, see USMLE Computer-based Testing Practice Session on the USMLE website.

> **Important Note:** Test preparation courses and materials are available from individuals and companies not associated with the USMLE. It is unlawful for any test preparation service or program to use, disclose, distribute, or solicit content from recent test takers, or to otherwise provide access to questions or answers from actual USMLE exams. If there is evidence that you enrolled in, participated in, or used any test preparation program or service that distributes, provides access to, or uses USMLE content (questions or answers), or provides a forum for others to share such information, your registration and/or testing may be canceled, your scores on the USMLE may be withheld or canceled, and you may be subject to further sanctions. See *Irregular Behavior* in the USMLE *Bulletin of Information*. ECFMG also regularly reviews allegations of irregular behavior in conjunction with its programs and services. See *Policies and Procedures Regarding Irregular Behavior*, which may apply.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0283

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination |
Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results |
Reexamination and Reapplication

## Taking the Examination

For detailed information on arrival times, and procedures upon arrival and throughout the testing day, see *Examination Day and Testing* in the USMLE *Bulletin of Information*. You should also refer to your scheduling permit for important information.

> **Important Note:** After you start taking an examination, you cannot cancel or reschedule that examination. If you start the examination but do not complete it, the attempt may appear as "incomplete" on your USMLE transcript.

When you arrive at the test center, you must present your **scheduling permit** and the **required identification** as described on your scheduling permit. **If you do not bring a copy of your scheduling permit (electronic or paper) and required identification on each day of your exam, you will not be admitted to the test** and will be required to pay a fee to reschedule your test.

Your name, as it appears on your scheduling permit, must match the name on your form(s) of identification exactly. Please review your scheduling permit for details and limited exceptions. If the name listed on your scheduling permit is not correct, contact ECFMG immediately by e-mail, telephone, or fax. Use the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website.

If the name in your ECFMG record is changed while you are registered for an exam, a revised scheduling permit reflecting this change will be issued. ECFMG will send you an e-mail notification when your revised scheduling permit is available. You must bring this revised scheduling permit to the test center. Name changes must be received **and processed** by ECFMG no later than seven business days before your testing appointment, or you will not be able to test. For Step 1 or Step 2 CK, if your eligibility period is extended or your testing region is changed while you are registered, a revised scheduling permit reflecting this change will be issued. You must bring the revised scheduling permit to the test center.

## Required Identification

Your name, as it appears on your scheduling permit, must exactly match the name on your form(s) of identification. Please review your scheduling permit for details and

limited exceptions. Since your name on the scheduling permit appears in the Latin alphabet (in "English language letters"), the name on your identification must also appear in the Latin alphabet. The spelling of the name on your scheduling permit must match **exactly** the spelling of the name on the form(s) of identification you present at the test center. If the names do not match as described above, you will not be allowed to take the exam. See _Your Name_ in _Your ECFMG Record_.

The form of identification you present must be one of the forms of **unexpired**, government-issued identification listed below that contains your **name in the Latin alphabet**, your **signature**, and your recent **photograph**. The following forms of identification are acceptable, only if they meet all of these requirements:

- Passport
- Driver's license with photograph
- National identity card
- Other form of unexpired, government-issued identification

## Travel Status

Applicants traveling to the United States to take an exam are responsible for making the necessary travel and accommodation arrangements. If you are neither a U.S. citizen nor a U.S. lawful permanent resident, you are responsible for obtaining required travel documents. These documents may include a visa to enter the United States. The requirements of the U.S. Department of Homeland Security (DHS) and U.S. embassies and consulates regarding issuance of visas and travel to and from the United States are subject to change. You should review current requirements before applying for a visa. For additional information, visit the DHS website and the U.S. Department of State website.

Step 2 CS is administered only in the United States. Upon request, ECFMG provides Step 2 CS applicants with a letter that may assist during the process of applying for a visa. The letter indicates that the applicant is registered for Step 2 CS, one of the exams required for ECFMG Certification. The letter also indicates that the applicant is required to travel to the United States to take the exam and provides the date by which the applicant must complete the exam. You can request this letter when you apply for Step 2 CS. After completion of the registration process, ECFMG will issue the letter, and it will be available to you through IWA. If you are unable to obtain the appropriate visa to enter the United States to take Step 2 CS, you may request a full refund of the exam fee. See _Refunds_ in _Your ECFMG Financial Account_.

A0058

If you are traveling from a distant location, you should consider arriving a day or two before the examination in order to be rested.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0286

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## USMLE Program and Irregular Behavior

The USMLE program defines irregular behavior as including, "any action by applicants, examinees, potential applicants, or others that could compromise the validity, integrity, or security of the USMLE process." Test center staff monitor, in person and via video/audio recording, administration of the USMLE Steps and are required to report any violations of the USMLE or test center rules. You must follow instructions from test center staff throughout the examinations; failure to do so may result in a finding that you have engaged in irregular behavior and permanent annotation of your USMLE transcript. See *Testing Regulations and Rules of Conduct* and *Irregular Behavior* in the *USMLE Bulletin of Information*. See ECFMG's *Policies and Procedures Regarding Irregular Behavior*, which also may apply.

> **Important Notes:** Seeking, providing, and/or obtaining information relating to examination content that may give or attempt to give unfair advantage to anyone who may be taking the examination, which includes postings regarding examination content and/or answers on the Internet, is a violation of the USMLE Rules of Conduct.
>
> Evidence of violation of any test administration rule, including the USMLE Rules of Conduct, will result in actions being taken under *USMLE Policies and Procedures Regarding Irregular Behavior*. If you are found to have engaged in irregular behavior, your score report and transcripts will include this finding, you may be barred from taking the USMLE in the future, and your score may be canceled.
>
> Anomalous performance and/or unusual testing history may impact your access to the USMLE. If your performance raises concerns about your readiness to test or your motivation to pass, the USMLE program reserves the right to restrict your future access to its examinations and/or to impose conditions upon future access. Do not test if you are not able or not ready on your scheduled test date. Taking a Step examination to familiarize yourself with the examination format, or for any reason other than to pass, is prohibited and may result in restrictions on your future access to the USMLE.

The above-described conduct may also be considered irregular behavior under ECFMG's *Policies and Procedures Regarding Irregular Behavior*.

SAppx0287

SA0060

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## Examination Results

The USMLE program provides a recommended pass or fail outcome on all Step examinations. For ECFMG Certification, you must obtain at least the USMLE-recommended pass outcome for each required Step or Step Component. See *Examination Requirements* in *Examinations for ECFMG Certification*.

## Score Reporting

Results for Step 1 and 2 CK are typically available three to four weeks after your test date. However, a number of factors may delay score reporting. When selecting your test date and inquiring about results, you should allow at least eight weeks to receive notification that your score report is available. Results for Step 2 CS are available according to the Step 2 CS Schedule for Reporting Results, available on the USMLE and ECFMG websites. For more specific information about potential scoring delays, visit the Announcements section on the home page of the USMLE website.

ECFMG reserves the right to reverify with the medical school the eligibility of medical school students and graduates who are registered for examination. If ECFMG requests reverification of your student/graduate status with your medical school, your score report will be issued only after reverification of your status has been received by ECFMG.

Score reports are issued in electronic format only and can be accessed using ECFMG's OASIS; **you will not receive a paper score report by postal mail**. Once your score report has been issued, ECFMG will send a notification to the e-mail address in your ECFMG record.

Score reports are available for approximately 120 days from the date of e-mail notification. Once the score report is removed from OASIS, your results will be provided to you only in the form of an official USMLE transcript. To obtain a transcript, you will be required to submit a request and pay a fee through the organization that registered you for the examination. Therefore, it is strongly recommended that you print and/or save your score report while it is available.

**Important Note:** ECFMG may provide your medical school with data on your performance on administrations of USMLE Step 1, USMLE Step 2 CK, and USMLE Step 2

CS. Data provided include whether you passed or failed the exam administration, and, for Step 1 and Step 2 CK, your numerical score. You have the option to withhold your exam results from your medical school. See ECFMG's Provision of Performance Data to Medical Schools in [IWA](#) for more information.

See *Score Reporting* in the [USMLE *Bulletin of Information*](#) for additional information. For up-to-date information on minimum passing scores, examination performance data, and general scoring methodology, please visit the [USMLE website](#).

## Score Validity

The USMLE program reserves the right to cancel scores that are at or above the passing level if the USMLE program has a good faith basis for questioning whether they represent a valid measure of knowledge or competence as sampled by the examination. If there are questions related to the validity of your score, your score report may be delayed or withheld pending completion of further review and/or investigation. See *Score Validity* in the [USMLE *Bulletin of Information*](#).

## USMLE Transcripts

To request an official USMLE transcript, you must contact the organization that registered you for the examination. You must contact the Federation of State Medical Boards if you are registered for or have taken Step 3 and/or you want to send your transcript to a U.S. medical licensing authority. In all other cases, submit your transcript request to ECFMG by sending a completed *[Request for Official USMLE® Transcript (Form 172)](#)* and the appropriate fee to ECFMG. Form 172 and additional information are available in the Resources section of the ECFMG website and from ECFMG, upon request. You can use [OASIS](#) to check whether your USMLE transcript has been sent.

If you apply to residency programs through the [Electronic Residency Application Service (ERAS)](#), you may request electronic transmittal of your USMLE transcript to these programs. For additional information, refer to the [ERAS applicant information](#) available in the ERAS Support Services section of the ECFMG website. Information on the status of requests for electronic transmittal of USMLE transcripts via ERAS is not available through OASIS. If the program does not participate in ERAS, you must submit a transcript request using Form 172 and pay the required fee.

> **Important Note:** If you took the former ECFMG CSA, your USMLE transcript will indicate only that you have CSA examination history. It will not provide any additional information on your attempt(s) on the CSA. To request official copies of your CSA

A0063

performance history, you must complete a *Request for an Official ECFMG® CSA® History Chart* (Form 297) and submit it to ECFMG with the appropriate fee. Form 297 is available in the Resources section of the ECFMG website and from ECFMG, upon request. For each attempt on the ECFMG CSA, the Official ECFMG CSA History Chart includes the month and year of the administration and the result of your performance. For additional information, refer to the instructions that accompany Form 297.

## Score Rechecks

For all Steps and Step Components, a rigorous process is used to ensure the accuracy of scores, including a double scoring method involving independent scoring systems. Therefore, a change in your score or in your pass/fail outcome based on a recheck is an extremely remote possibility. To date, the score recheck process has not resulted in a score change. However, a recheck will be performed if you submit a *Request for Recheck of USMLE® Step 1, Step 2 CK, or Step 2 CS Score* (Form 265) and the fee for this service to ECFMG. Form 265 is available in the Resources section of the ECFMG website and from ECFMG, upon request. Your request must be received by ECFMG no later than 90 days after your result was released to you. See *Score Rechecks* in the USMLE *Bulletin of Information* for more information.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAA0064

# The United States Medical Licensing Examination (USMLE)

About USMLE | Registration and Test Delivery Entities | Applying for Examination | Scheduling the Examination | Preparing for Examination | Taking the Examination | USMLE Program and Irregular Behavior | Examination Results | Reexamination and Reapplication

## Reexamination and Reapplication

USMLE policy generally does not allow applicants to retake a Step or Step Component if they have already passed that Step or Step Component. However, there are exceptions for the purpose of complying with a time limit imposed by a U.S. physician licensing authority or another authority recognized by the USMLE program. See 'Time Limit for Completing Examination Requirements' below.

If you fail a Step or Step Component, you must reapply, including payment of the appropriate fee(s), to retake the exam. If you do not take an exam during your assigned eligibility period, you must reapply, including payment of the appropriate fee(s), if you wish to take the exam; **in this event, you may reapply at any time, however, ECFMG cannot begin to process a subsequent application for this exam until at least four weeks after the end of the eligibility period for the exam you did not take**.

## Number of Attempts Allowed

The USMLE program limits to six the total number of times an examinee can take the same Step or Step Component. An examinee is ineligible to take a Step or Step Component after **six or more prior attempts** to pass that Step or Step Component, including incomplete attempts. All attempts at a Step or Step Component are counted toward the limit, regardless of when the exams were taken.

For the purpose of U.S. medical licensure, state medical licensing authorities may limit the number of attempts allowed to pass each Step or Step Component. Information regarding specific state requirements can be obtained on the Federation of State Medical Boards website.

## Time Between Examination Attempts

The USMLE program has established rules on how quickly you can retake the same Step or Step Component. You may not take the same examination more than three times within a 12-month period. Your fourth and subsequent attempts must be at least 12 months after your first attempt at that exam **and** at least six months after your most recent attempt at that exam. This includes incomplete attempts.

**Example:** An examinee took and failed her first attempt at Step 1 on January 15, 2017, her second attempt at Step 1 on April 15, 2017, and her third attempt at Step 1 on September 15, 2017. In January 2018, the examinee applied for a fourth attempt at Step 1, and wanted the March-April-May eligibility period. The earliest date that was both 12 months after her first attempt on January 15, 2017 and six months after her most recent attempt on September 15, 2017 was March 15, 2018. Since the March-April-May eligibility period began before this date, the earliest eligibility period that the applicant could request was April-May-June.

When you reapply, your eligibility period will be adjusted, if necessary, to comply with these rules. You must read the editions of the ECFMG *Information Booklet* and the USMLE *Bulletin of Information* that pertain to the eligibility period in which you take the exam.

## Time Limit for Completing Examination Requirements

For the purpose of ECFMG Certification, you must pass the USMLE Steps and Step Components required for ECFMG Certification within a seven-year period. If you do not pass all Steps and Step Components required for ECFMG Certification within a maximum of seven years, your earliest USMLE passing performance will no longer be valid for ECFMG Certification. See *Time Limit for Completing Examination Requirements* in *Examinations for ECFMG Certification*.

If you have passed a Step or Step Component but this passing performance is no longer valid for ECFMG Certification, you may request an exception to retake the previously passed exam that is no longer valid.

For the purpose of U.S. medical licensure, time limits to complete the USMLE are established by state medical licensing authorities and may require completion of all Steps or Step Components (including Step 3, which is not required for ECFMG Certification) within a certain number of years from the date the first Step is passed. Information regarding specific state requirements can be obtained on the FSMB website. You may request an exception to retake a previously passed exam to comply with the time limit of a U.S. physician licensing authority. Visit the USMLE website for more information.

> **Important Notes:** You may only request an exception at the time that you apply for the previously passed exam. Complete requirements and instructions will be provided at the time of exam application. Exceptions to the reexamination policy are not approved prior to your submitting the exam application.

SAppx0293

A0066

Applicants who retake a previously passed Step or Step Component to comply with a time limit should understand the implications of a failing retake performance on their Step 3 eligibility. See *Retaking Previously Passed Steps* in the USMLE *Bulletin of Information*.

If an applicant's earliest USMLE passing performance that is valid for ECFMG Certification took place before June 14, 2004, the applicant is required to pass only Step 1 and Step 2 CK within seven years of each other for ECFMG Certification; if required for ECFMG Certification, Step 2 CS can be passed outside the seven-year period. See *Time Limit for Completing Examination Requirements* in *Examinations for ECFMG Certification*. If this applicant passes Step 1 and Step 2 CK within a seven-year period, these passing performances will remain valid for ECFMG Certification, regardless of when Step 2 CS is taken and passed. **This applicant will not be eligible to retake Step 1 or Step 2 CK for the purpose of meeting a time limit imposed by a U.S. physician licensing authority until after he or she is certified by ECFMG**.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Medical Education Credentials

Medical Education Credential Requirements | Transfer Credits | Credentials for ECFMG Certification | Final Medical Diploma and Transcript | Transcript(s) to Document Transferred Credits | Name on Medical Diploma and Transcript(s) | English Translations | Verification of Credentials

## Medical Education Credential Requirements

To be eligible for ECFMG Certification, you must have been awarded credit for at least four credit years (academic years for which credit has been given toward completion of the medical curriculum) by a medical school that is listed in the *World Directory of Medical Schools* (*World Directory*) as meeting ECFMG eligibility requirements. Your graduation year must be included in the ECFMG note in your medical school's *World Directory* listing. See *Medical School Requirements*. There are restrictions on credits transferred to the medical school that awards your medical degree that can be used to meet ECFMG's medical education credential requirements.

> **Important Notes:** Graduates not eligible for admission to the exams or for ECFMG Certification include, but are not limited to: Graduates with degrees only in stomatology, ayurvedic or homeopathic medicine, or those awarded only the diploma of Physician-Epidemiologist-Hygienist, Physician-Biochemist, Physician- Cyberneticist, Physician-Biophysicist, Licensed Medical Practitioner, or Assistant Medical Practitioner.

> Beginning in 2023, to be eligible for ECFMG Certification, ECFMG will require that applicants graduate from a medical school that has been appropriately accredited. To satisfy this requirement, medical schools must be accredited by an agency that has been recognized by the World Federation for Medical Education through its *Programme for Recognition of Accrediting Agencies.* ECFMG is in the process of establishing policies and procedures for implementing this requirement and will publish updates, as they become available, on the ECFMG website. International medical students and graduates interested in ECFMG Certification should monitor the ECFMG website for the latest information.

International medical graduates must document the completion of all requirements for, and receipt of, the **final medical diploma**. ECFMG verifies every international medical graduate's final medical diploma with the appropriate officials of the medical school that issued the diploma. When ECFMG requests verification of your medical diploma from your medical school, ECFMG will request the medical school to provide your **final medical school transcript**. Verification by ECFMG with the issuing school may also be required for transcripts that are submitted to document transferred credits. An international medical graduate's credentials are not considered complete until ECFMG

SA0068

receives and accepts verification of the final medical diploma, final medical school transcript, and, if required, transfer credit transcript(s) directly from the issuing school(s).

Please do not send original documents; copies of documents are sufficient. All documents submitted to ECFMG as part of the certification process, including translations, will become part of your permanent ECFMG record and will not be returned to you. Please do not send any credentials not required by ECFMG (such as licenses, certificates of full registration, high school diplomas, academic awards, etc.). Submission of unnecessary documents can delay the processing of your exam application.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

A0069

# Medical Education Credentials

[Medical Education Credential Requirements](#) | Transfer Credits | [Credentials for ECFMG Certification](#) | [Final Medical Diploma and Transcript](#) | [Transcript(s) to Document Transferred Credits](#) | [Name on Medical Diploma and Transcript(s)](#) | [English Translations](#) | [Verification of Credentials](#)

## Transfer Credits

Transfer credits are credits earned for a course taken at one institution (such as a medical school) that are accepted by a medical school toward meeting its degree requirements. For example, a student attends a medical school for one year and earns credits for 12 courses. The student transfers to another medical school, which accepts the credits for those 12 courses toward meeting its degree requirements. The credits for those 12 courses are then referred to as transfer credits.

If you transferred credits to the medical school that awarded or will award your medical degree, you must disclose and document these credits when you apply to ECFMG for examination, **regardless of when the credits were earned**. See *[Credentials for ECFMG Certification](#)* in *Medical Education Credentials*. Failure to disclose and document these credits may have a number of negative consequences, including delaying exam registration and certification by ECFMG, and may result in a finding of irregular behavior and permanent annotation of your ECFMG record. See *[Policies and Procedures Regarding Irregular Behavior](#)*.

Additionally, for the purpose of ECFMG Certification, credits earned on or after January 1, 2008 that are transferred to the medical school that awarded or will award your medical degree must meet **all** of the following criteria:

- If credits for more than eight courses were transferred, all credits must have been transferred from a medical school that is either:
  - located in the United States or Canada and listed in the *World Directory*, or
  - listed in the *World Directory* as meeting ECFMG eligibility requirements.
- Credits must be for courses that were passed at the medical school at which the course was taken.

If your transferred credits do not comply with all the criteria listed above, you will not meet the requirements to be registered by ECFMG for examination or the requirements to be certified by ECFMG. If your transferred credits do not meet **all** the criteria listed

A0070

above, you may request an exception from the ECFMG Medical Education Credentials Committee.

**Important Note:** The requirement that credits must be transferred from a medical school that meets the criteria above does not apply to credits transferred **only to the pre-medical portion of the curriculum** of the medical school that awarded or will award the medical degree. If you transferred credits to the pre-medical portion of the curriculum at the medical school that awarded or will award your medical degree from an institution that does not meet the criteria listed above, you must provide ECFMG with a letter from the medical school that awarded or will award your medical degree confirming that the credits were transferred to the pre-medical portion of the curriculum only. This letter must be on the letterhead of the medical school and be signed by an authorized official of your medical school. This letter must be submitted in conjunction with the application for examination. Applications received without this letter may be rejected. **This letter is in addition to disclosing and documenting all transferred credits as described above.**

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0298

# Medical Education Credentials

Medical Education Credential Requirements | Transfer Credits | Credentials for ECFMG Certification | Final Medical Diploma and Transcript | Transcript(s) to Document Transferred Credits | Name on Medical Diploma and Transcript(s) | English Translations | Verification of Credentials

## Credentials for ECFMG Certification

The credentials required for ECFMG Certification are:

- *Final Medical Diploma and Transcript*
- *Transcript(s) to Document Transferred Credits*, if applicable

All documents that are not in English must be accompanied by an official English translation that meets ECFMG's translation requirements. See *Final Medical Diploma and Transcript*, *Transcript(s) to Document Transferred Credits*, and *English Translations* for complete information on required items.

**Important Note:** You must include your full name and USMLE/ECFMG Identification Number on the **front** of all credentials before sending them to ECFMG.

**If you are a medical school graduate** when you submit your first exam application, your diploma and transcript(s) to document transferred credits (if applicable) must be submitted with this initial exam application. If you have graduated and met all requirements for your medical diploma but your medical diploma has not yet been issued, a letter completed and signed by an authorized official of your medical school must be submitted with your exam application. Each medical school has been requested to provide ECFMG with a list of authorized officials. The letter you submit must be completed and signed by an official on this list. The official must provide his/her name, official title, and the institution name. The official must affix the institution's seal to the letter. The letter also must include the following statement:

**This is to confirm that [applicant name] has graduated and completed all requirements to receive the [degree title] degree from [medical school/university name]. The degree will be issued [month and year].**

You must then submit a copy of your diploma to ECFMG as soon as the diploma is issued.

**If you graduated from medical school and do not submit a copy of your medical diploma or a letter from your medical school, as described above, and these documents have not been received previously by ECFMG, your exam application will be rejected.**

A0072

**If you are a medical school student** when you submit your first exam application, submit copies of your medical education credentials as soon as you graduate and receive them.

You may not submit the credentials required for ECFMG Certification to ECFMG until you apply for an exam. If you send credentials to ECFMG before you apply for an exam, they will not be processed. To submit your credentials at the time of application, follow the instructions for additional documents in the exam application in ECFMG's IWA.

After you have applied for an exam, if you need to send credentials to ECFMG separately from an exam application, you must submit the credentials to ECFMG via the MyECFMG mobile app or via mail at the address below.

Educational Commission for Foreign Medical Graduates (ECFMG)
Attn: Certification Credentials Services
3624 Market St., 4th Floor
Philadelphia, PA 19104-2685
USA

If your credentials are complete, you are generally not required to resend these documents when you apply for subsequent exams.

ECFMG will not accept letters or other deliveries that arrive with postage or other fees due.

When your credentials have been processed, ECFMG will notify you. You can also check the status of your credentials by accessing OASIS or the MyECFMG mobile app. If you have questions or concerns about your credentials, you can contact ECFMG using the contact information for General Inquiries on the Contact ECFMG page of the ECFMG website.

Documents submitted to ECFMG as part of the exam application and certification processes, including translations, will not be returned.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Medical Education Credentials

Medical Education Credential Requirements | Transfer Credits | Credentials for ECFMG Certification | Final Medical Diploma and Transcript | Transcript(s) to Document Transferred Credits | Name on Medical Diploma and Transcript(s) | English Translations | Verification of Credentials

## Final Medical Diploma and Transcript

## Final Medical Diploma

ECFMG requires all medical school graduates to submit a copy of their final medical diploma to ECFMG. Do not send an original diploma. You must submit the copy of your diploma to ECFMG via the MyECFMG mobile app or via mail or courier service. The exact degree title of the final medical diploma you must provide is listed in the *Reference Guide for Medical Education Credentials* on the ECFMG website. The *Reference Guide* lists these medical credential qualifications by country of medical school. Although this *Reference Guide* is based upon information that was current at the time of publication, this information is subject to change.

If you are mailing a copy of your medical diploma, the photocopy **must be 216 mm x 279 mm (8½ in x 11 in). If the document is larger than 216 mm x 279 mm (8½ in x 11 in), you must send a reduced photocopy that is 216 mm x 279 mm (8½ in x 11 in).**

You must submit the copy of the final medical diploma in the original language, containing the issue date and all of the appropriate signatures of the medical school and/or university officials. Documents that are not in English must be accompanied by an official English translation. ECFMG will not accept a copy of a medical diploma that is not in English without an official English translation. Likewise, ECFMG will not accept an English translation of a diploma without a copy of the original language document from which the English translation was prepared. See *English Translations* in *Medical Education Credentials*.

Do not submit professional evaluations of your final medical diploma. ECFMG does not accept such evaluations in lieu of your final medical diploma.

If you are submitting the copy of your medical diploma with an exam application, follow the instructions for additional documents in the exam application in ECFMG's IWA.

The name on your medical diploma must match **exactly** the name in your ECFMG record. If the name on your diploma does not match the name in your ECFMG record, you must submit documentation that **verifies** the name on your diploma is (or was) your name. See *Name on Medical Diploma and Transcript(s)* in *Medical Education Credentials*.

SAppx0301

## Final Medical School Transcript

When ECFMG requests verification of your medical diploma from your medical school, ECFMG will request the medical school to provide your final medical school transcript. If ECFMG is unable to obtain your final medical school transcript directly from your medical school, ECFMG will contact you and provide detailed instructions.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 70 of 384

# Medical Education Credentials

Medical Education Credential Requirements | Transfer Credits | Credentials for ECFMG Certification | Final Medical Diploma and Transcript | Transcript(s) to Document Transferred Credits | Name on Medical Diploma and Transcript(s) | English Translations | Verification of Credentials

## Transcript(s) to Document Transferred Credits

If you have transferred credits to the medical school that awarded or will award your medical degree, you must document these credits when you apply for examination, regardless of when the credits were earned. You must send to ECFMG a copy of an official transcript issued by the school or institution at which the course was taken. You must submit the copy of your transcript to ECFMG via the MyECFMG mobile app or via mail or courier service.

If you are mailing a copy of the transcript, the photocopy **must be 216 mm x 279 mm (8½ in x 11 in). If the document is larger than 216 mm x 279 mm (8½ in x 11 in), you must send a reduced photocopy that is 216 mm x 279 mm (8½ in x 11 in).**

You must submit the copy of the transcript in the original language. Documents that are not in English must be accompanied by an official English translation. ECFMG will not accept a copy of a transcript that is not in English without an official English translation. Likewise, ECFMG will not accept an English translation of a transcript without a copy of the original language document from which the English translation was prepared. See *English Translations* in *Medical Education Credentials*.

Do not submit professional evaluations of your transcript. ECFMG does not accept such evaluations in lieu of your transcript.

To submit the transcript to ECFMG, follow the instructions for additional documents in the exam application in ECFMG's IWA.

The name on your transcript(s) to document transferred credits must match **exactly** the name in your ECFMG record. If the name on your transcript does not match the name in your ECFMG record, you must submit documentation that **verifies** the name on your transcript is (or was) your name. See *Name on Medical Diploma and Transcript(s)* in *Medical Education Credentials*.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Medical Education Credentials

Medical Education Credential Requirements | Transfer Credits | Credentials for ECFMG Certification | Final Medical Diploma and Transcript | Transcript(s) to Document Transferred Credits | Name on Medical Diploma and Transcript(s) | English Translations | Verification of Credentials

## Name on Medical Diploma and Transcript(s)

Your name as it appears on **all** credentials sent to ECFMG must be consistent.

The name on your medical diploma and transcript(s) must match **exactly** the name in your ECFMG record. If the names do not match exactly, you must submit documentation that **verifies** the name on your medical diploma/transcript(s) is (or was) your name. The documentation must show your name exactly as it appears on your medical diploma/transcript(s). See *Your Name* in *Your ECFMG Record* and *Verifying Your Name*.

**If the name on your credentials does not match the name in your ECFMG record and you do not submit acceptable documentation that verifies the name on your credentials is (or was) your name, your exam application will be rejected.**

An example of a discrepancy that requires such verification would be if your ECFMG record lists your married name, but your medical diploma/transcript(s) lists your maiden name.

Other examples of discrepancies that require such verification include, but are not limited to, the following:

- Use of initials for the first name or last name (surname) on the medical diploma/transcript(s)
  **Example:** "Mary Smith" in your ECFMG record, but "M. Smith" or "Mary S." on your medical diploma/transcript(s).

- Difference in the sequence of names
  **Example:** "Pravin Chandra Patel" in your ECFMG record, but "Pravin Patel Chandra" or "Chandra Pravin Patel" on your medical diploma/transcript(s).

- Hyphenations and separations in names
  **Example:** "Alice Al Quigley" in your ECFMG record, but "Alice Al-Quigley" or "Alice Alquigley" on your medical diploma/transcript(s).

## Verifying Your Name

If the name in your ECFMG record is correct but this name does not match **exactly** your name as listed on your medical diploma, transcript, or other credential, you must **verify** that the name on these documents is (or was) your name. To verify your name, submit to ECFMG a copy of one of the documents listed below that verifies the name on your medical diploma, transcript, or other credential. The name in your ECFMG record will not be changed if you are verifying your name.

For the purpose of verifying your name, the document(s) you may submit include:

- Passport (including the pages with your photograph and the expiration date)
- Birth certificate
- Marriage certificate
- Official court order
- U.S. Resident Alien Card
- U.S. Naturalization Certificate
- U.S. Passport Card (a one-page document that includes your photograph and the expiration date)

As an alternative to one of the documents listed above, ECFMG will accept for purposes of verifying your name a letter from an authorized official of your medical school that verifies that the name on your medical diploma, transcript, or other credential is (or was) your name. If you choose to submit a letter from your medical school to verify the name on your medical diploma, transcript, or other credential, the letter must be completed and signed by an authorized official of your medical school. Each medical school has been requested to provide ECFMG with a list of authorized officials. The letter you submit must be completed and signed by an official on this list. The official must provide his/her name, official title, and the institution name. The official must affix the institution's seal to the letter. The letter also must include the following statement:

**This certifies that the names [name on document] and [name in ECFMG record] belong to one and the same person.**

The document(s) you send must show your name exactly as it appears on your medical diploma/transcript.

See additional important information on documents below.

## Important Information on Documents for Changing or Verifying Your Name

A0078

- Attestations and affidavits are **not** acceptable as documentation to change or verify your name.

- Please do not submit an original document; a copy of the document is sufficient.

- All documents submitted to change or verify your name that are not in English must be accompanied by an official English translation that meets ECFMG's translation requirements. See *English Translations* in *Medical Education Credentials*.

- All documents submitted to change or verify your name, including translations, will become a part of your permanent ECFMG record and will not be returned to you.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0306

SAppx0079

# Medical Education Credentials

[Medical Education Credential Requirements](#) | [Transfer Credits](#) | [Credentials for ECFMG Certification](#) | [Final Medical Diploma and Transcript](#) | [Transcript(s) to Document Transferred Credits](#) | [Name on Medical Diploma and Transcript(s)](#) | English Translations | [Verification of Credentials](#)

## English Translations

Any document submitted to ECFMG that is not in English must be accompanied by an English translation that meets ECFMG's translation requirements.

**ECFMG strongly encourages you to obtain translations from its recommended translation service.** Translations from this service meet ECFMG's requirements and will not be rejected due to translation errors. See the [Translation Service](#) page in the Resources section of the ECFMG website.

Translations from other services may not meet ECFMG's requirements. If you obtain a translation from another service, the translation must:

- be a word-for-word translation of the original language document. An abstract or summary translation of the document is not acceptable.

- be prepared from the original document or a photocopy of the original document. ECFMG will not accept a translation prepared from a transcription (transcribed version) of the document.

- be prepared by a government official (for example, a Consular Officer), medical school official (for example, a Dean or Registrar), or a professional translation service.

- include a statement from the government or medical school official or representative of the translation service certifying that the word-for-word translation is correct.

- bear the signature and title of the government or medical school official or representative of the translation service and, if there is one, the seal of the government official, medical school, or translation service.

- appear on letterhead. If the translation service is a private company, the letterhead must identify the company as a translation service.

An English language certificate issued by the medical school that is not a word-for-word English language version of the degree, transcript, or other document in the original language is not acceptable as a translation. English translations that do not meet the requirements above will not be accepted. Examples of unacceptable translations include, but are not limited to:

- translations prepared by a notary who is not a government or medical school official or representative of a professional translation service.

- a translation that was not signed by the translator or official or representative of the translation service, and

- a translation that is not a word-for-word translation of the original language document.

Additionally, applicants are not permitted to translate their own documents.

Documents submitted to ECFMG as part of the exam application and certification processes, including translations, will not be returned.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

SAppx0081

# Medical Education Credentials

[Medical Education Credential Requirements](#) | [Transfer Credits](#) | [Credentials for ECFMG Certification](#) | [Final Medical Diploma and Transcript](#) | [Transcript(s) to Document Transferred Credits](#) | [Name on Medical Diploma and Transcript(s)](#) | [English Translations](#) | Verification of Credentials

## Verification of Credentials

ECFMG verifies every international medical graduate's final medical diploma with the appropriate officials of the medical school that issued the diploma and requests the medical school to provide the final medical school transcript. Verification by ECFMG with the issuing school may also be required for transcripts that are submitted to document transferred credits. You will not fulfill the ECFMG medical education credential requirements until verification of your final medical diploma, final medical school transcript, and, if required, transfer credit transcript(s) is received directly from the issuing school(s) and accepted by ECFMG.

In some instances, the verification process can be lengthy due to the processing time required by the institutions and, for verifications done by mail, prevailing postal conditions. ECFMG will notify you when your diploma has been sent to your medical school for verification. As part of the verification process, ECFMG also may provide the medical school with other documents, including a copy of your *Certification of Identification Form* (Form 186), to aid in identification. If ECFMG does not receive a response from your medical school, ECFMG will follow up with your medical school. ECFMG will notify you after receiving and evaluating the verification from your medical school. You can check the status of your medical education credentials on-line using [OASIS](#).

ECFMG reserves the right to reverify with the medical school the eligibility of medical school graduates who apply for examination. This may include reverification of the graduate's medical education credentials with the issuing medical school. If such reverification is requested by ECFMG, the graduate will be registered for examination only after ECFMG has received reverification of the graduate's credentials directly from the medical school. If reverification is requested by ECFMG after the graduate has been registered for examination, ECFMG may cancel the graduate's registration or withhold the graduate's score report until ECFMG has received reverification of the graduate's medical education credentials directly from the issuing school. If your registration is canceled, you may be required to reapply.

**Important Notes:** Applicants are responsible for any fees associated with the verification of the final medical diploma, final medical school transcript, and transcript(s)

A0082

to document transferred credits. If your medical school charges a fee for the verification of your diploma and/or transcript, ECFMG will advise you to contact your medical school directly regarding the fee and the method of payment.

If the final medical school transcript provided by your medical school is not in English or if an acceptable English translation is not provided by the medical school at the time of verification, ECFMG will have the transcript translated into English by an independent translation service, will charge your ECFMG financial account for the translation, and will notify you of the charge. ECFMG will not notify you before sending the document for translation. For information on the translation fee, see the Fees page in the Resources section of the ECFMG website. See *Methods of Payment* in *Your ECFMG Financial Account* for information on how to make a payment to your ECFMG financial account.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Related ECFMG Services

Confirming ECFMG Certification to Third Parties | Electronic Residency Application Service (ERAS) Support Services | J-1 Visa Sponsorship | ECFMG Certificate Holders Office

## Confirming ECFMG Certification to Third Parties

ECFMG's Certification Verification Service (CVS) provides primary-source confirmation of the ECFMG certification status of international medical graduates. The Joint Commission, the organization that evaluates and accredits U.S. health care organizations and programs, has determined that direct verification with ECFMG of a physician's certification status satisfies The Joint Commission's requirement for primary-source verification of medical school completion for graduates of international medical schools.

ECFMG will confirm your certification status when a request is received from a U.S. medical licensing authority, residency program, hospital, or other organization that, in the judgment of ECFMG, has a legitimate interest in such information. For status reports sent to **medical licensing authorities**, the request can also be made by you. Requesting organizations must normally secure and retain your signed authorization to obtain certification information. Please note that there may be a fee for this service.

Requests for confirmation must contain your name, date of birth, USMLE/ECFMG Identification Number, and name and address of the organization to which the confirmation should be sent. To obtain the appropriate request form or to make an on-line request, visit the CVS section of the ECFMG website at www.ecfmg.org/cvs. Confirmations are sent to the requesting organization within approximately two weeks. Confirmations are not sent to applicants directly.

If the requesting organization requests to receive a paper report but does not receive the report, ECFMG will honor requests for duplicate reports at no additional cost up to 90 days after the date that the original report was processed.

If you apply to residency programs through the Electronic Residency Application Service (ERAS), ECFMG will transmit an electronic ECFMG Status Report automatically to the ERAS application, where it can be accessed by all of the programs to which you apply. If your ECFMG certification status changes during the ERAS application season, ECFMG will transmit an updated status report automatically to the ERAS application, where it can be accessed by all of the programs to which you apply.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Related ECFMG Services

Confirming ECFMG Certification to Third Parties | Electronic Residency Application Service (ERAS) Support Services | J-1 Visa Sponsorship | ECFMG Certificate Holders Office

## Electronic Residency Application Service (ERAS®) Support Services

The Accreditation Council for Graduate Medical Education (ACGME) requires that international medical graduates who wish to enter ACGME-accredited graduate medical education programs in the United States be certified by ECFMG. ECFMG Certification does not, however, guarantee that an international medical graduate will be accepted into a graduate medical education program; the number of applicants for residency and fellowship programs each year exceeds the number of available positions.

The Association of American Medical Colleges (AAMC) established the Electronic Residency Application Service (ERAS) to allow medical students and graduates to apply electronically for residency positions in accredited U.S. programs of graduate medical education. Most U.S. graduate medical education programs participate in ERAS. If you apply to participating programs, you must submit your residency application using ERAS.

Since ERAS was established, ECFMG has served as the designated Dean's office for students and graduates of international medical schools, assisting these individuals with the ERAS application process for first- and second-year (PGY-1 and PGY-2) residency positions.

International medical students and graduates who apply to programs that participate in ERAS must request an ERAS Token, a unique identification number, from ECFMG. The Token allows applicants to access AAMC's MyERAS website, where they can complete their residency application, select the programs to which they will apply, and assign supporting documents to these programs.

As the designated Dean's office, ECFMG receives supporting documents for the ERAS application, such as medical student performance evaluations (MSPEs), medical school transcripts, and photographs from applicants and their medical schools. ECFMG then transmits these documents to the ERAS application. ECFMG also transmits to the ERAS application the applicant's ECFMG Status Report, which includes the applicant's ECFMG certification status and, if requested by the applicant, his/her USMLE transcript. Once supporting documents have been received by the ERAS application, they can be accessed by the programs to which the applicant has applied.

For detailed, up-to-date information on ERAS Support Services at ECFMG, visit the ERAS section of the ECFMG website at www.ecfmg.org/eras.

**Important Note About U.S. State Medical Licensure Requirements:** In the United States, medical licensure requirements vary by individual state medical licensing authorities. You should be aware that:

- A training or restricted license may be required to participate in programs of graduate medical education. Participants in graduate medical education programs may also be required to obtain an unrestricted medical license by a certain point in their training in order to progress in the program.

- Some states have established additional criteria with respect to international medical schools for the purpose of eligibility for licensure. When you plan to apply to residency programs, consult the state's medical licensing board to determine if graduates of your medical school are eligible for licensure in that state.

- If you are certified by ECFMG based on **former** medical science exams (such as the Visa Qualifying Examination [VQE] or the Foreign Medical Graduate Examination in the Medical Sciences [FMGEMS]), you should be aware that these exams may not be acceptable for the purpose of eligibility for a training license.

**ECFMG does not create or control the medical licensure requirements for any jurisdiction and does not create or control the eligibility requirements for any graduate medical education program. Additionally, ERAS does not preclude any students or graduates from participating in ERAS, based on their eligibility for licensure.** Before applying to residency programs in a given state, it is your responsibility to become familiar with that state's licensure requirements and to ensure that you meet any licensure requirements to enter and complete residency training in that state. For a directory of U.S. state medical licensing authorities, visit the Federation of State Medical Boards website.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Related ECFMG Services

Confirming ECFMG Certification to Third Parties | Electronic Residency Application Service (ERAS) Support Services | J-1 Visa Sponsorship | ECFMG Certificate Holders Office

## J-1 Visa Sponsorship

Foreign national physicians who seek entry into U.S. programs of graduate medical education or training must obtain an appropriate visa that permits clinical training activities. One visa commonly used by foreign national physicians is the J-1, a temporary nonimmigrant visa reserved for participants in the Exchange Visitor Program. As a public diplomacy initiative of the U.S. Department of State, the Exchange Visitor Program was established to enhance international educational and cultural exchange between the people of the United States and other nations. In keeping with the program's goals for international education, exchange visitor (J-1) physicians are required to return home for at least two years following their training before being eligible for certain U.S. visas.

The U.S. Department of State has designated ECFMG as the visa sponsor for all exchange visitor (J-1) physicians who participate in clinical training programs. ECFMG sponsorship is also available for physicians' eligible dependents. As the visa sponsor, ECFMG processes applications for J-1 visa sponsorship and, for eligible applicants, issues a document that the applicant can use to apply for the J-1 visa. ECFMG is responsible for ensuring that exchange visitor (J-1) physicians and host institutions meet the federal requirements for participation throughout the duration of sponsorship. ECFMG does not sponsor physicians for other U.S. visa types.

All initial applicants for ECFMG J-1 sponsorship are advised that sponsorship eligibility should not be presumed and cannot be determined until a complete review of an individual's U.S. visa history has been conducted.

For detailed, up-to-date information on J-1 visa sponsorship by ECFMG, visit the Exchange Visitor Sponsorship Program (EVSP) section of the ECFMG website at www.ecfmg.org/evsp.

**Important Note:** Foreign national physicians who are international medical graduates and are seeking ECFMG J-1 visa sponsorship to enroll in graduate medical education programs must, among other requirements, have passed USMLE Step 1 and Step 2 CK; or the former Visa Qualifying Examination (VQE), National Board of Medical Examiners (NBME) Part 1 and Part 2, or Foreign Medical Graduate Examination in the Medical Sciences (FMGEMS) examinations; or an acceptable combination thereof. The former

JA0088

one-day ECFMG Examination and three-day Federation Licensing Examination (FLEX) do **not** meet the requirements for J-1 visa sponsorship.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Related ECFMG Services

Confirming ECFMG Certification to Third Parties | Electronic Residency Application Service (ERAS) Support Services | J-1 Visa Sponsorship | ECFMG Certificate Holders Office

## ECFMG Certificate Holders Office

The ECFMG Certificate Holders Office (ECHO$^{SM}$) provides career planning resources for physicians pursuing ECFMG Certification and graduate medical education (GME) in the United States.

**Be connected.**

Use ECHO to stay connected with ECFMG and its expertise, programs, and services for international physicians. ECHO also provides connections to information from other organizations and experts. Through ECHO's IMG Advisors Network (IAN), you also can connect with ECFMG-certified physicians to ask questions about U.S. GME and about living and working in the United States. Subscribe to *ECHO News*, a free e-newsletter, to receive updates on resources, important deadlines, and more.

**Be heard.**

Your ideas are important to us. Let us know what you think about ECHO — what you like, what you don't like, what you want to see more of, what we can do to make ECHO a better resource for ECFMG-certified physicians. Contact ECHO using our feedback form.

**Be informed.**

Successfully navigating the application process for U.S. GME can be difficult. You need to interact with multiple organizations, each with its own roles, requirements, processes, and deadlines. ECHO provides resources that you can use when applying to U.S. GME programs as well as resources that address the practical challenges of relocating to the United States and adjusting to the U.S. GME and health care systems.

For more information, visit the ECHO section of the ECFMG website at www.ecfmg.org/echo.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

**Appendix J**

# University of Science, Arts & Technology (USAT), Montserrat
## *Not Accredited*

---

## June 2012 Determination: *Not Accredited*

Following the submission of documents to the CAAM-HP – unsolicited – and a request for accreditation, a visit was carried out in October 2011.  Team members were:

1. Professor Renn Holness
2. Dr. Rhonda Sealey-Thomas

**Decision:**   The CAAM-HP at its meeting held June 22-23, 2012 received and considered the report of reviewers Professor Renn Holness and Dr Rhonda Sealey-Thomas on the site visit of October 7, 2011 to the campus of the University of Science, Arts and Technology (USAT) in Montserrat.

Following discussions of the reviewers' report CAAM-HP determined that the school had not provided sufficient evidence to indicate that teaching activities were actually taking place in Montserrat. Furthermore, CAAM-HP's requirements for adequate resources had not been satisfied. Consequently, CAAM-HP determined that there was not sufficient evidence to merit reversal of its initial decision of May 2007 not to grant initial provisional accreditation to USAT.

---

## February 2007 Determination: *Not Accredited*

Application for initial provisional accreditation was received from the University of Science, Arts and Technology (USAT) for the establishment of an offshore medical school on the island of Montserrat. In February 2007, a review was done by the following persons:

1. Dr. David Hawkins
2. Dr. George Mahy
3. Professor Phyllis Pitt-Miller

**Decision:**   The CAAM-HP after examination of the reports determined that it could not grant provisional accreditation for the programme as presented.

www.caam-hp.org/assessedprogrammes.html

Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 94 of 554

# 2018  University of Science, Arts and Technology
## LECTURE CONFERENCE SCHEDULE

| 2018 | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa | Su | M | T | W | Th | F | Sa |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jan | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | *11t | *12t | *13t | *14t | 15 | 16 | 17 | 18m | 19m | 20m | 21m | 22 | 23 | 24 | 25d | 26d | 27d | 28d | 29 | 30 | 31 | | | |
| Feb | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8t | 9t | 10t | 11t | 12 | 13 | 14 | 15m | 16m | 17m | 18m | 19 | 20 | 21 | 22d | 23d | 24d | 25d | 26 | 27 | 28 | | | |
| Mar | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8t | 9t | 10t | 11t | 12 | 13 | 14 | 15m | 16m | 17m | 18m | 19 | 20 | 21 | 22d | 23d | 24d | 25d | 26 | 27 | 28 | 29 | 30 | 31 |
| Apr | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12t | 13t | 14t | 15t | 16 | 17 | 18 | 19M | 20m | 21m | 22m | 23 | 24 | 25 | 26d | 27d | 28d | 29d | 30 | | | | | |
| May | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10t | 11t | 12t | 13t | 14 | 15 | 16 | 17m | 18m | 19m | 20m | *21 | *22 | 23 | 24d | 25d | 26d | 27d | 28 | 29 | 30 | 31 | | |
| Jun | | | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7t | 8t | 9t | 10t | 11 | 12 | 13 | 14m | 15m | 16m | 17m | 18 | 19 | 20 | 21d | 22d | 23d | 24d | 25 | 26 | 27 | 28 | 29 | 30 |
| Jul | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12t | 13t | 14t | 15t | 16 | 17 | 18 | 19m | 20m | 21m | 22m | 23 | 24 | 25 | 26d | 27d | 28d | 29d | 30 | 31 | | | | |
| Aug | | | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9t | 10t | 11t | 12t | 13 | 14 | 15 | 16m | 17m | 18m | 19m | 20 | 21 | 22 | 23d | 24d | 25d | 26d | 27 | 28 | 29 | 30 | 31 | |
| Sep | | | | | | | 1 | 2 | 3 | 4 | 5 | *6t | *7t | *8t | *9t | 10 | 11 | 12 | 13m | 14m | 15m | 16m | 17 | 18 | 19 | 20d | 21d | 22d | 23d | 24 | 25 | 26 | 27 | | |
| Oct | | 1 | 2 | 3 | 4t | 5t | 6t | 7t | 8 | 9 | 10 | 11m | 12m | 13m | 14m | 15 | 16 | 17 | 18d | 19d | 20d | 21d | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | | | |
| Nov | | | | | 1t | 2t | 3t | 4t | 5 | 6 | 7 | 8m | 9m | 10m | 11m | 12 | 13 | 14 | 15d | 16d | 17d | 18d | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | |
| Dec | | | | | | Nov-30t | 1t | 2t | 3 | 4 | 5 | 6m | 7m | 8m | 9m | 10 | 11 | 12 | 13d | 14d | 15d | 16d | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | | |

**Legend:**
- TAMPA (green)
- MIAMI (yellow)
- DALLAS (blue)
- MUST SIGN-UP AND PREPAY FOR ANATOMY LAB (purple)
- GRADUATION IN MIAMI (red)

**Tampa, FL Location = t**
DoubleTree Tampa Airport Westshore
4500 West Cypress Street
Tampa, FL 33607
Reservations: 813-879-4800

**Miami, FL Location = m**
Hilton Garden Miami Airport West Doral
3550 NW 74th Avenue
Miami, FL 33122
Reservations: 305-629-7701

**Dallas, TX Location = d**
Hilton Garden DFW North
205 W. State Hwy 114
Grapevine, TX 76051
Reservations: 817-421-1172

**The Tampa site in January will be at the Hilton Westshore 2225 N. Lois Ave (813)877-6688**
**There is NO Anatomy Lab in May**
**The Tampa site in September will be at the Hilton Westshore 2225 N. Lois Ave (813)877-6688**

Class times are: Thursday 1300 - 1800 / Friday 0800 - 1800 / Saturday 0800 - 1800 (testing from 0900-1000) / Sunday 0800 - 1800

**Appendix 5**

**From:** REDACTED
**Sent:** Wednesday, August 08, 2018 3:32 PM
**To:** Info
**Subject:** Medical Scool in Montserrat

**External Email. Please Proceed with Caution.**

Dear Sirs

I have been in contact with USAT a medical university in Montserrat that is currently conducting classes in Miami. I have been told that USAT is approved to hold classes in Miami because of the volcano in Montserrat. I would like something in writing from the ECFMG that states my son will be eligible to take the USMLE exams if he attends USAT in Miami.

Regards

REDACTED

CASE Meeting of the ECFMG Medical Education Credentials Committee CC: USAT REVIEW OF SOA0093

**Appendix 1**

**From:** Ostwalt, Cally [mailto:Cally.Ostwalt@fldoe.org]
**Sent:** Tuesday, August 14, 2018 11:12 AM
**To:** Mealey, Scott
**Cc:** Collins, Sara <Sara.Collins@fldoe.org>
**Subject:** RE: question about foreign medical schools having a US campus in FL

**External Email. Please Proceed with Caution.**

Hello Mr. Mealey,

The matter has been brought to CIE's attention. I am including Mrs. Sara Collins on this e-mail as Mrs. Collins is the primary contact regarding foreign medical schools/clinical clerkships in Florida. She is aware of the concern and is continuing to address the matter. Please direct any further questions to her attention.

Regards,

*Cally Ostwalt*

Program Specialist IV
Commission for Independent Education
P: 850.245.3200
F: 850.245.3233
E: cally.ostwalt@fldoe.org



Please note that Florida has a very broad public records law. Most written communications to or from state officials are public records available to the public and media upon request.

**From:** Mealey, Scott [mailto:SMealey@ECFMG.org]
**Sent:** Tuesday, August 14, 2018 8:00 AM
**To:** Ostwalt, Cally <Cally.Ostwalt@fldoe.org>
**Subject:** RE: question about foreign medical schools having a US campus in FL

Ms. Ostwalt – I am wondering if I should forward this matter to the U.S. Department of Education. We are still hearing from parents of USAT students that the school is telling them USAT is approved to hold classes in Miami because of the volcano in Montserrat many years ago. I know of no such authorization.

Please let me know the status.

Best regards,

D. Scott Mealey, CPMSM, CPCS
Manager
Medical Education Resources & Operations Support

CONFIDENTIAL

ECFMG00000453

Educational Commission for Foreign Medical Graduates



3624 Market Street
Philadelphia, PA, USA 19104
(T) 001-215-823-2285
(F) 001-215-386-9767
SMealey@ECFMG.org

**From:** Ostwalt, Cally [mailto:Cally.Ostwalt@fldoe.org]
**Sent:** Monday, August 14, 2017 11:52 AM
**To:** Mealey, Scott
**Subject:** RE: question about foreign medical schools having a US campus in FL

**This Email originated from an external sender. Please proceed with caution opening any attachments and clicking on any links.**

Mr. Mealey,

Thank you for bringing the operations of USAT to CIE's attention. This matter is being looked into by the Commission for any violation of Florida law.



Program Specialist IV
Commission for Independent Education
P: 850.245.3200
F: 850.245.3233
E: cally.ostwalt@fldoe.org

Please note that Florida has a very broad public records law. Most written communications to or from state officials are public records available to the public and media upon request.

**From:** Mealey, Scott [mailto:SMealey@ECFMG.org]
**Sent:** Monday, August 14, 2017 10:47 AM
**To:** Ostwalt, Cally <Cally.Ostwalt@fldoe.org>
**Subject:** RE: question about foreign medical schools having a US campus in FL

Hello Ms. Ostwalt – any update?

**From:** Ostwalt, Cally [mailto:Cally.Ostwalt@fldoe.org]
**Sent:** Monday, July 31, 2017 10:12 AM
**To:** Mealey, Scott
**Subject:** RE: question about foreign medical schools having a US campus in FL

CONFIDENTIAL

ECFMG00000454

Case: 19-2706    Document: 45-2    Page: 286    Date Filed: 01/16/2020
Case 2:18-cv-05530-JHS Document 38-10 Filed 06/06/19 Page 190 of 394
Meeting of the ECFMG Medical Education Credentials Committee--01- USAT REVIEW
A0095

**This Email originated from an external sender. Please proceed with caution opening any attachments and clicking on any links.**

Mr. Mealey,

I will need to discuss this with my supervisor. He is out of the office until next week. However, I will get back to you once I am able to speak with him.

*Cally Ostwalt*

Program Specialist IV
Commission for Independent Education
P: 850.245.3200
F: 850.245.3233
E: cally.ostwalt@fldoe.org



Please note that Florida has a very broad public records law. Most written communications to or from state officials are public records available to the public and media upon request.

**From:** Mealey, Scott [mailto:SMealey@ECFMG.org]
**Sent:** Thursday, July 20, 2017 9:36 AM
**To:** Ostwalt, Cally <Cally.Ostwalt@fldoe.org>
**Subject:** RE: question about foreign medical schools having a US campus in FL

We are not sure what the operations are; that is what we thought should be investigated if such a thing is not allowed. We think USAT is exploiting a loophole and stating the main campus is in Montserrat, when the vast majority of their operations (classes, graduations) are in FL.

**From:** Ostwalt, Cally [mailto:Cally.Ostwalt@fldoe.org]
**Sent:** Monday, July 17, 2017 8:54 AM
**To:** Mealey, Scott
**Subject:** RE: question about foreign medical schools having a US campus in FL

**This Email originated from an external sender. Please proceed with caution opening any attachments and clicking on any links.**

Mr. Mealey,

Please elaborate on "satellite campuses". In order to answer any questions you may have, I need clarification on what the operations in Florida are/would be.

*Cally Ostwalt*

Program Specialist IV
Commission for Independent Education
P: 850.245.3200
F: 850.245.3233
E: cally.ostwalt@fldoe.org



Please note that Florida has a very broad public records law. Most written communications to or from state officials are public records available to the public and media upon request.

**From:** Mealey, Scott [mailto:SMealey@ECFMG.org]
**Sent:** Monday, July 17, 2017 8:44 AM
**To:** Ostwalt, Cally <Cally.Ostwalt@fldoe.org>
**Subject:** RE: question about foreign medical schools having a US campus in FL

Hi Ms. Ostwalt,

The school in question does not list an actual address in FL on their website. I did however find a business license and address from the DOS website.  The school's website mentions they have US satellite campuses, and videos posted on their website and youtube show classes and graduation ceremonies at the Intercontinental hotel in Miami.

The school is the University of Science, Arts & Technology (USAT) from Montserrat.  Thanks for looking into this.

Scott

**From:** Ostwalt, Cally [mailto:Cally.Ostwalt@fldoe.org]
**Sent:** Monday, July 17, 2017 8:29 AM
**To:** Mealey, Scott
**Subject:** RE: question about foreign medical schools having a US campus in FL

**This Email originated from an external sender. Please proceed with caution opening any attachments and clicking on any links.**

Good Morning Mr. Mealey,

This e-mail is in response to your inquiring regarding having a satellite campus in Florida. Where is the school currently located? Can you provide more information on the institution's

Case: 19-2706   Document: 45-2   Page: 288   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 43-9   Filed 05/23/19   Page 140 of 304
Meeting of the ECFMG Medical Education Credentials Committee - G. USApgxVIEW
0097

proposed operations for Florida? Is the institution planning to enroll students from Florida? Will there be any classrooms, programs offered, administrative functions, etc. at this proposed location? Please elaborate.

Thank you,

*Cally Ostwalt*

Program Specialist IV
Commission for Independent Education
P: 850.245.3200
F: 850.245.3233
E: cally.ostwalt@fldoe.org



Please note that Florida has a very broad public records law. Most written communications to or from state officials are public records available to the public and media upon request.

**From:** Mealey, Scott <SMealey@ECFMG.org>
**Sent:** Thursday, July 13, 2017 3:48:26 PM
**To:** Smith, Joey
**Subject:** question about foreign medical schools having a US campus in FL

Hello Mr. Smith,

We are inquiring if it were possible for a foreign medical school to have a US satellite campus in FL?  If so, would they need to be licensed in some manner? and how would that work?

Thank you for any information you can provide.

Best regards,

Scott
D. Scott Mealey, CPMSM, CPCS
Manager
Medical Education Resources & Operations Support
Educational Commission for Foreign Medical Graduates



3624 Market Street
Philadelphia, PA, USA 19104
(T) 001-215-823-2285
(F) 001-215-386-9767
SMealey@ECFMG.org

Case: 19-2706   Document: 45-2   Page: 289   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 44-32   Filed 03/31/19   Page 33 of 34
ECFMG00000098
Meeting of the ECFMG Medical Education Credentials Committee - G. USAT REVIEW

**Appendix 6**



EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

August 21, 2018

VIA EMAIL: usat.edu@gmail.com

Orien Tulp, President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston, MONTSERRAT

Dear Dr. Tulp,

It has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida.

In order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country.

In light of this, ECFMG requests that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

Thank you in advance for your assistance with this inquiry. Please provide this documentation by September 3, 2018. Feel free to contact me at smealey@ecfmg.org should you have any questions.

Best Regards,

D. Scott Mealey, CPCS, CPMSM
Manager, Medical Education Resources & Operations Support

ECFMG® is an organization committed to promoting excellence in international medical education.

CONFIDENTIAL

ECFMG00000471

**Appendix E**

**From:** Orien Tulp [mailto:o.tulp@usat.edu]
**Sent:** Tuesday, August 21, 2018 11:01 AM
**To:** Mealey, Scott; Carla Konyk - Director/Student Accounts
**Subject:** Re: ECFMG notice regarding U.S. satellite campus

**External Email. Please Proceed with Caution.**

Dear Mr Mealey

This is incorrect information.  The Miami location is an information and testing site only,  where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies. .

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT  has students on island on a year round basis since its origination.

I hope this will clarify your concern.

Kindest Regards,


Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Motserrat


Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210

On Tue, Aug 21, 2018 at 6:13 AM, Mealey, Scott <SMealey@ecfmg.org> wrote:

Dr. Tulp,

Please see the attached letter regarding the USAT U.S. satellite campus.

Best regards,

D. Scott Mealey, CPMSM, CPCS
Manager
Medical Education Resources & Operations Support
Educational Commission for Foreign Medical Graduates



3624 Market Street
Philadelphia, PA, USA 19104
(T) 001-215-823-2285
(F) 001-215-386-9767
SMealey@ECFMG.org

**Disclaimer**

The information contained in this communication from **ECFMG® / Educational Commission for Foreign Medical Graduates** is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd.**

Case: 19-2706   Document: 45-2   Page: 292   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 44-3   Filed 05/23/19   Page 101 of 394   USATRev View
Meeting of the ECFMG Medical Education Credentials Committee - G. USATRevView

**From:** REDACTED
**Sent:** Wednesday, August 22, 2018 11:33 AM
**To:** Mealey, Scott
**Subject:** Re: RE: FW: REDACTED

External Email. Please Proceed with Caution.

Hello Scott,
Here is the latest release from the President of USAT:

<carla.konyk@gmail.com>

**Please do NOT use the phrase "CAMPUS'  WHEN REFERRING TO THE US SITES, as that implies approval from the US Dept of Education or the State Dept of Education which isn't possible or likely as an Interntional Medical School.   Someone reported to the ECFMG that we have a Miami Campus.   It is an administrative site, where we do interviews, orientations, and pre-USMLE proctored examinations.**


Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210


They refer to all the sites as campuses (Tampa, Miami and Dallas).  These are called lecture sites where students attend from Thursday - Sunday.  I would also like to mail you a package if I could please get your information.


REDACTED

**Appendix G**



EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

VIA E-MAIL: usat.edu@gmail.com

September 14, 2018

Orien Lee Tulp, PhD, CNS
President and Dean of Academic Affairs
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

This is a follow-up to our August 21, 2018 letter in which ECFMG requested information from you about the University of Science, Arts & Technology (USAT) Faculty of Medicine's satellite (or branch) campus in Miami, FL. In response, you indicated, "The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." We thank you for your quick reply.

ECFMG has since received information that USAT is providing medical education lectures not only at its Miami site, but also at sites in Tampa, FL, and Dallas, TX.

It is critical that ECFMG ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements. Therefore, ECFMG continues its review of this matter. This letter is to advise you that, as part of its review, ECFMG has reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT.

Effective today, USAT students and graduates seeking services related to ECFMG Certification, including registration for USMLE examinations, release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG. Services will not be provided to individuals who do not complete the affidavit. ECFMG has provided instructions about this process directly to the students and graduates.

Should your students and graduates approach you with questions about this process, please advise them to contact ECFMG directly.

Sincerely,

*kcorrado*

Ms. Kara Corrado, J.D.
Vice President for Operations

ECFMG® is an organization committed to promoting excellence in international medical education.

| | |
|---|---|
| **From:** | Mealey, Scott <SMealey@ECFMG.org> |
| **Sent:** | Thursday, April 18, 2019 9:53 AM |
| **To:** | Corrado, Kara |
| **Subject:** | FW: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT |

Email chain below

**From:** Mealey, Scott
**Sent:** Monday, September 24, 2018 8:24 AM
**To:** Bede, Carole
**Subject:** RE: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

Thanks!

**From:** Bede, Carole
**Sent:** Monday, September 24, 2018 8:23 AM
**To:** Mealey, Scott
**Subject:** RE: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

Fixed.  I had put a period after the HTML code

Best Regards,

*Carole Bede*

Ms. Carole Bede
Regional Coordinator, Medical Education Resources



Educational Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104
USA
Email:  cbede@ecfmg.org

**From:** Mealey, Scott
**Sent:** Friday, September 21, 2018 5:52 PM
**To:** Bede, Carole
**Subject:** FW: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

I missed the extra black period at the very end.

**From:** Mealey, Scott
**Sent:** Friday, September 21, 2018 4:17 PM
**To:** Bede, Carole
**Subject:** RE: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

1

Proceed. Thanks!

**From:** Bede, Carole
**Sent:** Friday, September 21, 2018 4:16 PM
**To:** Mealey, Scott
**Subject:** RE: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

Screen print for approval:

> **Sponsor Notes**
>
> The information below has been provided by the World Directory's sponsoring organizations.
>
> **Educational Commission for Foreign Medical Graduates (ECFMG), United States of America**
> - Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certifica
>   examination, provided that:
>   - For medical school students officially enrolled in this school, the graduation years are listed
>     "current".
>   - For graduates of this medical school, their graduation year is included in the graduation yea
>     Graduation Years:
>       2003 - Current
>   - All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detaile
> - **Currently, students and graduates of USAT are subject to enhanced procedures that must b**
>   **order to be eligible to apply for ECFMG Certification related services, including but not limit**
>   **ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic**
>   **Application Service (ERAS®) Support Services. ECFMG will provide information and instru**
>   **applicants upon receipt of application..**

Best Regards,

*Carole Bede*

Ms. Carole Bede
Regional Coordinator, Medical Education Resources

 **ECFMG™**

Educational Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104
USA
Email:  cbede@ecfmg.org

**From:** Mealey, Scott
**Sent:** Friday, September 21, 2018 4:10 PM

2

**To:** Bede, Carole
**Subject:** FW: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

Carole – can you add this in Red/bold to USAT's sponsor note?

**Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services.  ECFMG will provide information and instructions to applicants upon receipt of application.**

---

**From:** Katz, Francine
**Sent:** Friday, September 21, 2018 2:41 PM
**To:** Corrado, Kara
**Cc:** Cover, Lisa; Mealey, Scott
**Subject:** RE: Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

PRIVILEGED

---

**From:** Corrado, Kara
**Sent:** Friday, September 21, 2018 2:33 PM
**To:** Katz, Francine
**Cc:** Cover, Lisa; Mealey, Scott
**Subject:** Privileged and Confidential - Draft ECFMG Sponsor Note for USAT

PRIVILEGED

CONFIDENTIAL

ECFMG00000500

PRIVILEGED

CONFIDENTIAL

ECFMG00000501

**Sponsor Notes**

The information below has been provided by the World Directory's sponsoring organizations.

**Educational Commission for Foreign Medical Graduates (ECFMG), United States of America**

- Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certification and for examination, provided that:
    - For medical school students officially enrolled in this school, the graduation years are listed below as "current".
    - For graduates of this medical school, their graduation year is included in the graduation years listed below.
      Graduation Years:
            2003 - Current
    - All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detailed information.
- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application..**

**Appendix M**

Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013
713-377-4860
swatemd@aol.com

September 15, 2018

Ms. Kara Corrado, J.D.
Vice President of Operations
Education Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104-2685

Re: Letter of September 14, 2018

Dear Ms. Corrado:

I will be representing the University of Science, Art and Technology College of Medicine (USAT) regarding your September 14, 2018 letter. The letter appeared to terminate USAT's recognition by ECFMG's as a medical school. The letter has caused confusion and great anxiety for USAT's because the administration does not know how to advise its past students, present students and future students regarding ECFMG's policy regarding reporting test results, allowing test applications and the effect of ECFMG's policy on licensure, past and present. Would you please clarify ECFMG's position regarding the recognition of USAT as a medical school?  Particularly, please clarify the effect of your September 14, 2018 letter on six groups of previous, current and future students:

1.  Past students that have passed all three USMLE step examinations and are licensed by a United States Medical Board,
2.  Past students that have past all three examinations and are seeking residencies,
3.  Past students that have passed all three examinations and are currently in a residency program,
4.  Present students who have taken some but not all of the USMLE Step tests,

1

5. Present students who have not applied to take the USMLE Step tests, but anticipate applying to take the examinations,
6. Potential students that may enrolled at USAT.

The administration of USAT had a good faith belief that USAT was in full compliance with ECFMG's recognition requirements based on the following facts. The University of Science, Arts and Technology College of Medicine, is an institution granted full recognition by the Government of Montserrat, a British Overseas Territory, on September 26, 2003 to provide medical education and grant the M.D. degree. USAT is legally authorized under Montserrat law to provide a medical education program. As a result of this legal authorization, USAT is included in the International Medical Directory (the "IMED" list) in the USA, CAPER(Canada) and WDOMS. Accordingly, students and graduates of the University may apply for and sit for all components of the United States Licensing Examination (USMLE, Steps I, II, and III).

IMED listing is required for ECFMG certification. IMED listing and recognition determination is not a part of the ECFMG's mandate. IMED requires in order to be listed and the school's students being eligible to take the USMLE examinations that USAT be recognized in the country where USAT is located. Accreditation is not required. USAT is recognized by the Montserrat's government, and graduates of USAT MD program have met the requirements for Montserrat medical registration.

As a recognized school, USAT is granted authority by the Montserrat's government to deliver an educational program and grant allowed degrees. Recognition is different from accreditation in that accreditation is a process of quality assurance. The Caribbean Accreditation Authority for Education in Medicine and other Health Professions (CAAM-HP) accreditation will be mandatory beginning in 2023.

Until 2023 USAT is only required to be recognized in order for its students to be allowed to take the USMLE Step I, Step II, and Step III examinations. USAT is Institutionally accredited in the United Kingdom by the Accreditation System for International Schools, Colleges and Universities [ASIC-UK] in their division of International Institutions. Montserrat is a dependent UK overseas territory.

As part of the agreement between the Government of Montserrat and USAT, USAT agrees to maintain operations in Montserrat unless natural

CONFIDENTIAL

ECFMG00000367

disasters arise. If a natural disaster arises USAT is allowed to relocate to an area of convenience and safety. USAT's student safety is the prior concern of any school's administration. The right to relocate to a safe location does not affect recognition as granted to USAT by the Government of Montserrat. Montserrat government's licensing agreement Paragraph 8.*13* allows USAT to move classes off shore in the event of a natural disaster. A volcanic eruption is a natural disaster.

Montserrat's Licensing Agreement Paragraph 8.13 was invoked when the *Soufriere* Hills Volcano on Montserrat started producing volcanic ash as a result of pyroclastic flows. The volcanic ash that results from pyroclastic flows produces a serious threat to human and animal health, and has cost numerous lives. American University of the Caribbean [AUC] was able to relocate due to volcanic activity in 1996, and to date has not returned to Montserrat. As a result of the volcanic hazard USAT has been forced to conduct classes outside of Montserrat, almost entirely due to a development of a state-of-the-art online option that protects students from harm's way.

The ECFMG has allowed other Caribbean medical school to locate their classes away from the original accredited site without obtaining a license for the alternative site. Ross University School of Medicine was allowed to relocate to a cruise ship off the island of St. Kitts due to a natural disaster, and now to a campus in the state of Tennessee. The ECFMG allowed Ross to established a temporary campus off St. Kitts's shores and in the USA. The online option developed by USAT does not require a fixed US campus.

The arbitrary withholding of USAT's students test scores or refusing permission for USAT's student to take the USMLE examinations is in effect allowing the ECFMG to act as an accrediting body. The ECFMG does not have authority to accredit medical schools. The only authority ECFMG has is to determine if a medical school is recognized.

USAT meets the recognition requirement. Very few Caribbean medical schools have been accredited by CAAM-HP to date, *the only body that accredits Caribbean medical schools*. CAAM-HP Accreditation is not mandatory until 2023. Not all Caribbean jurisdictions have accepted the CAAM-HP as an accrediting body to date, *and* Montserrat only accepted the CAAM-HP in 2018.

3

USAT has established a record that is the envy of both offshore and United States Medical school in the percentage of USAT students passing the various examinations on the first attempt. Over ninety percent of USAT student have passed all examinations on the first attempt. USAT graduates have been very successful in obtaining residencies and completing residencies. USAT graduates have established successful medical practices servicing United States citizens. If the ECFMG testing procedure is valid, USAT teaching programs are valid as measured by USMLE tests. The USAT's student results are a measure of the quality of USAT's teaching programs.

USAT test results provides assurances that USAT graduates exhibit general professional competencies that are appropriate for participating in United States post graduate medical programs. USAT student performance on both formal tests and residency programs demonstrate that USAT education program provides students with a solid foundation for proficient medical care. Indeed, some USAT graduates have become medical faculty members at United States Medical Schools.

The only possible ECFMG complaint is not the quality of USAT's program, but appears to be the definition of "recognition". USAT students and graduates have no knowledge of the definition of "recognition". Fairness and justice are not served by punishing innocent parties when there is a legitimate dispute over interpretation of recognition status. Neither USAT medical students nor USAT's administration had a "reason to know" or "should have known" the ECFMG's position on "recognition", which appears to have not have changed over the past 15 years. USAT has been licensed and operating successfully for the past 15 years without a blemish.

Prior to a right or property being taken from USAT there is a fundamental requirement of due process or in the alternative enforceable contract terms. Fundamental fairness requires either "due process" or "contract enforcement". Adequate notice and an opportunity to be heard before a fair and impartial hearing body is required before ECFMG can take USAT valuable recognition right or USAT students' rights to have ECFMG open the gateway to United States licensing and training. In order for the ECFMG to effectively deny USAT recognition, ECFMG's decision must be conducted by a fair decision-making body following defined rules. Fairness requires internal separation between advocate and decisions makers to preserve neutrality.

4

The essence of due process is a requirement that USAT be given the reason for the ECFMG's decision regarding recognition or non-recognition and an opportunity to defend its students, if necessary. Ex-parte communication by unknown USAT employees and unknown administrative procedures leads to property deprivation without a fair hearing. The ECFMG is asked not to *utilize* ex-parte evidence and unknown rules and procedures to take away valuable rights. USAT has a fundamental right to know what evidence is being used to deny it recognition as a medical school and what procedures are used to make the recognition determination.

It is well settled United States law that a medical license is property that cannot be taken without due process. USAT's right to operate a medical school is a valuable property right, also. Operation as a medical school is a property right that is essentially being taken away without operation of law. if USAT students cannot be admitted to licensing examinations which entry is controlled by the ECFMG then the valuable right to operate as a medical school has been denied USAT.

On behalf of USAT I request that the ECFMG reassure USAT students and graduates attending USAT prior to September 14, 2018, that they will not be penalized for attending USAT under a good faith belief that the school was recognized and allowed to conduct classes in locations other than Montserrat *for 15 years* without incident prior to the current issue. If the ECFMG has concerns about the location or format of classes, USAT is requesting the opportunity to address any concerns and remedy any agreed deficiencies. Plus, USAT requests the ECFMG to  state its position on students enrolled after September 14, 2018? A response prior to  October 31, 2018 would be greatly appreciated so that USAT's students can be properly advised based on the ECFMG's position?

Yours truly,

Tommy Swate

5



**ECFMG**®  EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

**Appendix 11**

3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

October 18, 2018

VIA EMAIL: usat.edu@gmail.com

Orien Tulp, President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston, MONTSERRAT

Dear Dr. Tulp,

This is a follow-up to my August 21 and September 14, 2018 letters to you. As you know, it has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida. ECFMG also understands that USAT is operating satellite campuses in Texas and Puerto Rico.

As I previously advised you, in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country, among other requirements.

In light of this policy, ECFMG requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the entire time period during which the USAT Miami branch campus has been in operation. To date, ECFMG has no record of receipt of such documentation from you or USAT.

**Therefore, effective today, ECFMG's Sponsor Note in the *World Directory of Medical Schools* (*World Directory*) for USAT has been updated to reflect that 2019 and later graduates of USAT are no longer eligible to apply for ECFMG Certification or USMLE examinations as a step toward ECFMG Certification.**

ECFMG is also writing to your current students to advise them that, if they graduate from USAT in 2019 or later, they will be ineligible for ECFMG Certification and ineligible to register for USMLE examinations as a step toward ECFMG Certification after December 31, 2018. We are also letting them know that in order to become eligible for ECFMG Certification (or to register for USMLE examinations as a step toward ECFMG Certification) on or after January 1, 2019, the United States Department of Education and/or the Departments of Education for Florida, Texas, and Puerto Rico

ECFMG® is an organization committed to promoting excellence in international medical education.

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 2

must provide ECFMG with documentation that USAT is authorized to operate as a medical school in the United States. Otherwise, the students must transfer to and/or be officially enrolled in a medical school that is listed in the *World Directory* as meeting eligibility requirements for ECFMG Certification. In addition, the "Graduation Years" in the ECFMG note on the Sponsor Notes tab of the *World Directory* listing for the student's medical school must be listed as "Current" at the time he/she applies and on his/her test day.

USAT's 2018 and earlier graduates will continue to remain eligible to apply to ECFMG for ECFMG Certification.

Should the United States Department of Education and/or the Departments of Education for Florida, Texas, and Puerto Rico provide ECFMG with documentation that USAT is authorized to operate as a medical school in the United States, ECFMG will be happy to review USAT's eligibility for an ECFMG Sponsor Note in the *World Directory.*

Sincerely,

Ms. Kara Corrado, JD
Vice President for Operations

ECFMG® is an organization committed to promoting excellence in international medical education.

CONFIDENTIAL

ECFMG00000495

**Appendix L**

 EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

October 18, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to advise you of the allegation that you, individually and in your capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified. The details of ECFMG's allegation are set forth below.

**Details of Allegation**
***False Information Regarding U.S. Branch Campuses***
On August 21, 2018, ECFMG advised you that we had become aware that USAT was operating a "branch" campus in Miami, Florida. We advised you that in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country. Therefore, we requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. We indicated that this documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

In response to ECFMG's August 21, 2018 letter, you replied:

"This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the

ECFMG® is an organization committed to promoting excellence in medical education.

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 4

Caribbean.. It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas.  We note that there are no lectures scheduled for Montserrat.  We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only,  where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original].   Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT.  This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

Dr. Orien L. Tulp
October 18, 2018
Page 3 of 4

agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

***Certification of False Information Regarding Students Attendance Dates***

During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.

It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior*. See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*. Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG. ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.

The review into the matters described in this letter are ongoing. ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

<u>**ECFMG Medical Education Credentials Committee Review of this Allegation**</u>

This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*.

You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;

Dr. Orien L. Tulp
October 18, 2018
Page 4 of 4

- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

**Please provide a response to ECFMG by November 1, 2018.**  In your response, please note whether you wish to make a personal appearance before the ECFMG Committee.  All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org.  If you have any questions, please do not hesitate to call me at (215) 883-7318.

Sincerely,

*Lisa L. Cover*

Lisa L. Cover
Senior Vice President for Business
Development and Operations

Encl: As noted.



**EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES**

3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

# AFFIDAVIT ATTESTING TO MEDICAL SCHOOL ATTENDANCE

I, _____

<p style="text-align:center">ECFMG Applicant Name           ECFMG ID Number</p>

hereby declare, under penalty of perjury under the laws of all applicable jurisdictions, including the United States of America, and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations, that:

**Section 1: Attendance Dates at University of Science, Arts & Technology (USAT) Faculty of Medicine**

I attended University of Science, Arts & Technology (USAT) Faculty of Medicine located in Montserrat during the following dates:

| From (Month/Year) | To (Month/Year) |
|---|---|
|  |  |

**Section 2: Dates and Location of Basic Sciences Courses Taken in Montserrat**

I was physically present and took basic sciences courses in Montserrat, during the following dates and at the following location *(If you did not complete your basic sciences course work at a facility located in Montserrat, complete Section 3)*:

| Dates of Basic Sciences Courses Taken while Physically Located In Montserrat | | |
|---|---|---|
| *(Do not include dates if you were not physically present in Montserrat. Do not include breaks in time where you were not physically located in Montserrat. Only list the beginning and end date for when you were physically present in Montserrat attending basic sciences courses.)* | | |
| From (Month/Year) | To (Month/Year) | Address of Facility Where Basic Sciences Classes Were Held |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

While I took my basic sciences classes in Montserrat, I resided at the following location(s):

| Residence Address in Montserrat | Residence Dates in Montserrat | |
|---|---|---|
|  | From (Month/Year) | To (Month/Year) |
|  |  |  |
|  |  |  |

I am attaching the following documentation to demonstrate my physical presence in Montserrat during the time I was taking basic sciences classes at University of Science, Arts & Technology (USAT) Faculty of Medicine. (check all that apply):

☐ My passport, showing travel to Montserrat and visas for Montserrat      ☐ My lease, utility bills, etc. for my housing

☐ My airline tickets/boarding passes documenting travel to Montserrat      ☐ Other (please specify)

**Section 3: TO BE COMPLETED ONLY IF YOU CANNOT COMPLETE SECTION 2**

I did *not* take basic sciences courses at a facility located in Montserrat because:

I also declare that this information is comprehensive, complete and accurate as of the date of my signature.

_____      _____ _____ _____

*Signature of Applicant*                        *(day)*    *(month)*    *(year)*

<p style="text-align:center"><b>Certification by Official</b></p>

I certify that on the date set forth below the individual named above did appear personally before me and that the statements in this document are subscribed and sworn to before me by the individual on this _____ day, of the month of _____ in the year _____.

_____

*Signature of Notary Public*                                  Official Seal

*Printed Name of Offical*

CONFIDENTIAL               ECFMG00000475

**Appendix 9**

| | |
|---|---|
| **From:** | MECCSupport |
| **Subject:** | IMPORTANT INFORMATION FROM ECFMG / ACTION REQUIRED |
| **Date:** | Monday, October 15, 2018 2:46:38 PM |
| **Attachments:** | 2nd USAT Affidavit - FINAL.pdf |

Dear Doctor:

Our records indicate that you have listed University of Science, Arts & Technology (USAT) Faculty of Medicine in Montserrat as the medical school from which you will graduate or have already graduated and that you are participating in the 2019 Electronic Residency Application Service (ERAS).

As you know, ECFMG is currently conducting a review of its records to ensure that information provided to ECFMG regarding international medical schools and their students/graduates complies with ECFMG policies and requirements. As part of this review, on September 18, 2018, we sent you an affidavit to be completed attesting to your medical school attendance information.

In addition to the previous affidavit, we are also requiring you to submit the attached affidavit which provides additional information to ECFMG about your attendance at USAT.

WHAT YOU NEED TO DO
Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification, including registration for the United States Medical Licensing Examination (USMLE), release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, you must complete the attached affidavit, attesting to the education you received at USAT. Completion of the affidavit is required and will facilitate ECFMG's review.

**NOTE: FAILURE TO COMPLETE AND SUBMIT THIS AFFIDAVIT BY NOVEMBER 1, 2018 MAY RESULT IN YOU BEING UNABLE TO PARTICPATE IN THE NATIONAL RESIDENT MATCHING PROGRAM (NRMP) "THE MATCH."**

The affidavit must also be notarized by NotaryCam, which provides secure on-line notarization of documents. To use NotaryCam, go to https://www.notarycam.com/ecfmg-affidavit/ and follow NotaryCam's instructions. NotaryCam will e-mail your affidavit to ECFMG directly.

**YOU MUST COMPLETE AND SUBMIT THIS AFFIDAVIT NO LATER THAN NOVEMBER 1, 2018**.

Please allow two to four weeks processing time after the above-described affidavit has been submitted to ECFMG. ECFMG will notify you in writing after your affidavit has been processed.

ECFMG reserves the right to bring allegations of irregular behavior against you, in accordance with its policies and procedures, should ECFMG obtain information that indicates that you have engaged in irregular behavior with respect to any documentation submitted as part of this process.

If you have any questions, please contact MECCsupport@ecfmg.org and you will be assigned a Case Manager. If you prefer, you may call 215-386-5900 and ask to be transferred to a Case Manager for USAT.

Sincerely,

ECFMG

Case 2:18-cv-54554 Meeting of the ECFMG Medical Education Credentials Committee -G-0USAT-REVIEW of 3/10121



**EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES**

3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

## AFFIDAVIT ATTESTING TO EDUCATION RECEIVED AT
## UNIVERSITY OF SCIENCE, ARTS & TECHNOLOGY (USAT) FACULTY OF MEDICNE, MONTSERRAT

I, _____     ☐–☐☐☐–☐☐☐–☐

*ECFMG Applicant Name*                                            *ECFMG ID Number*

hereby declare, under penalty of perjury under the laws of all applicable jurisdictions, including the United States of America, and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations, that (**initial all that apply**):

(1)  I did **not** receive "advanced standing" at USAT or was otherwise exempted from taking courses at USAT for credits I earned at other educational institutions or their programs, including but not limited to other medical schools or allied health schools (nursing schools, chiropractic schools, physician assistant programs, etc.).      _____ *Initials*

(2)  I did **not** receive "advanced standing" at USAT or was otherwise exempted from taking courses at USAT for previous work or life experience (e.g. employment as a physician assistant, chiropractor, or nurse practitioner).      _____ *Initials*

(3)  I was **not** exempted from taking courses required for graduation from USAT.      _____ *Initials*

(4)  **All** of the credits that I earned at USAT for my basic sciences courses (as listed on my USAT transcript) were earned for completion of courses taken at USAT, administered by USAT faculty or staff.      _____ *Initials*

(5)  **All** of the credits that I earned at USAT for my clinical rotations (as listed on my USAT transcript) were earned for completion of rotations that were facilitated by USAT for me.      _____ *Initials*

I cannot certify to statement 1 above because:

I cannot certify to statement 2 above because:

I cannot certify to statement 3 above because:

I cannot certify to statement 4 above because:

I cannot certify to statement 5 above because:

I also declare that this information is comprehensive, complete, and accurate as of the date of my signature.

_____     _____ _____ _____
*Signature of Applicant*                              *(day)      (month)      (year)*

**Certification by Official**

I certify that on the date set forth below that the individual named above did appear personally before me and that the statements in this document are subscribed and sworn to before me by the individual on this _____ day, of the month of January _____ in the year _____ .

_____     ┌─────────────────────┐
*Signature of Notary Public*                   │ Official Seal       │
                                               │                     │
_____     │                     │
*Printed Name of Offical*                      └─────────────────────┘

CONFIDENTIAL                                                    ECFMG00000477

| **From:** | Bede, Carole <CBede@ECFMG.org> |
| **Sent:** | Thursday, October 18, 2018 8:24 AM |
| **To:** | Corrado, Kara; Mealey, Scott |
| **Subject:** | RE: text for USAT - 10:30am |

I'm glad I mentioned it then.  I will keep both notes.

Best Regards,

*Carole Bede*

Ms. Carole Bede
Regional Coordinator, Medical Education Resources



Educational Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104
USA
Email:  cbede@ecfmg.org

---

**From:** Corrado, Kara
**Sent:** Thursday, October 18, 2018 8:00 AM
**To:** Mealey, Scott; Bede, Carole
**Subject:** RE: text for USAT - 10:30am

Correct, both notes should appear with the 2019 Sponsor Note one being fist.

---

Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273
kcorrado@ecfmg.org I www.ecfmg.org

---

**From:** Mealey, Scott
**Sent:** Thursday, October 18, 2018 7:58 AM
**To:** Bede, Carole
**Cc:** Corrado, Kara
**Subject:** RE: text for USAT - 10:30am

I think we want both notes to still appear – Kara? With the new one on top.

The new note is below and the current note is

CONFIDENTIAL                                                                    ECFMG00000503

**Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

**From:** Bede, Carole
**Sent:** Thursday, October 18, 2018 7:56 AM
**To:** Mealey, Scott
**Subject:** RE: text for USAT - 10:30am

Ok, I'm ready with the HTML codes and text, I will just have to remove the old note and put this one in.

Best Regards,

*Carole Bede*

Ms. Carole Bede
Regional Coordinator, Medical Education Resources



Educational Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104
USA
Email: cbede@ecfmg.org

**From:** Mealey, Scott
**Sent:** Thursday, October 18, 2018 7:52 AM
**To:** Bede, Carole
**Subject:** text for USAT - 10:30am

**Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**

CONFIDENTIAL

ECFMG00000504

**Appendix N**

Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013
713-377-4860
swatemd@aol.com

September 23, 2018

Ms. Kara Corrado, J.D.
Vice President of Operations
Education Commission for Foreign Medical Graduates
3624 Market Street
Philadelphia, PA 19104-2685

Re: Letter of October 18, 2018

Dear Ms. Corrado:

This letter is notice that USAT will be represented at the November 28, 2018 hearing by Tommy Swate, Chris Blinn and a USAT representative. I have already given you notice that I am USAT's counsel. Also, local counsel will all so attend the hearing. Chris Blinn is my paralegal. USAT has not made a decision as to what person will be representing the school.

I assume ECFMG's October 18, 2018 letter to Dr. Tulp contains all the allegations that will be discussed at the November 28, 2018 meeting. If any further allegations are to be considered, please inform me of the allegations at least 10 days prior to the meeting. If any further evidence is to be presented at the meeting other than what is listed in your October 18 letter, please forward this information to me 10 days prior to the November 28th meeting. At this time I am requesting the complete file regarding each allegation. What the ECFMG may consider evidence and what USAT may consider exculpatory evidence may certainly be disputed. Thus, in order to defend USAT, I am requesting the complete file be made available to USAT's counsel.

It is my understanding that the ECFMG Medical Education Credentials Committee(MECC) is the entity tasked with making a decision regarding the ECFMG's October 18, 2018 allegations. The MECC is charged, I

believe, with making a decision based on a preponderance of the evidence standard. However, it has been brought to my attention that apparently a decision has already been made regarding October 18, 2018 allegations because the ECFMG has posted on various websites warning to USAT students that after January 1, 2018 USAT students will no longer be eligible to apply for the various Step tests. Of course, I appreciate the fact that ECFMG has given the students until January 1, 2019 the benefit of previous test scores and education. However, by ECFMG rules the only entity that is charged with making a decision regarding USAT is the MECC and only after hearing evidence. The administrative staff could not have based its decision to post the unfortunate statements on a preponderance of evidence standard because no evidence has been heard.

The ECFMG actions in placing notation on various websites suggest that the ECFMG proceedings are not neutral. The posting suggest that the ECFMG administrative staff has made a decision and is just going through the motions to have the MECC ratify the administrative staffs' decision. Plus the administrative staff is have ex parte communication with the MECC that USAT is not privy to the communication. I am requesting all communication with the MECC members regarding these allegations be disclosed.

Please remove the comments posted by the ECFMG administrative staff until after the November 28, 2018 hearing. I am requesting a copy of the rules governing the removal of a Caribbean medical school's physical location to another location based on a natural disaster? What rule or rules were applied to Ross University when it move its whole school to the United States after a natural disaster. What are the time frames allowed for the physical relocation? What time frame is allowed any school to correct any deficiency found by the ECFMG? When did the MECC meet and give permission for the UCFMG to send out its September 14, 2018 letter? Under what authority was the letter mailed? Did the MEEC authorized the unfortunate comments on the internet regarding USAT?

On behalf of USAT, we look forward to the November 28, 2018 hearing to discuss these serious allegations. As requested above, USAT's counsel needs to know all the facts in order to advise the USAT administration on the proper action to take. USAT cannot crafted a solution without knowing the rules governing its actions and all the facts concerning the allegations . Fundamental fairness requires disclosure of rules and facts.

CONFIDENTIAL
ECFMG00000372

Please respond to my request no later than 10 days before the November 28, 2018 hearing.

Yours truly,

Tommy Swate
Counsel for USAT



**Appendix O**

**ECFMG®**   EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900  |  215-386-9767 Fax
www.ecfmg.org

VIA EMAIL: swatemd@aol.com

October 26, 2018

Mr. Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013

Dear Mr. Swate:

I am writing in response to your letters dated September 15, 2018 and September 23, 2018.  These letters were received at ECFMG on October 16, 2018 and October 23, 2018 respectively. We understand from your letters that you have been retained as counsel for University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat.  Your letters appear to conflate the issue that USAT is operating branch campuses in the United States without appropriate documentation with the allegations of irregular behavior for Dr. Tulp.  We take this opportunity to clarify these issues for you.

### Allegations of Irregular Behavior for Dr. Orien Tulp

ECFMG has *not* alleged irregular behavior on the part of USAT (the institution).  The allegations of irregular behavior are specific to Dr. Tulp, both individually and in his capacity as an official of USAT.  Therefore, before providing you with any materials relating to allegations of irregular behavior concerning Dr. Tulp, we ask that you advise ECFMG whether you also represent Dr. Tulp individually, in addition to USAT.  We will be happy to share the entire case file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") with you once you have officially advised that you are Dr. Tulp's legal counsel.

Please note that only Dr. Tulp is entitled to request a personal appearance at the ECFMG Committee hearing, with his legal counsel, as outlined in ECFMG's Policies and Procedures for Irregular Behavior.  ECFMG will not permit any other person or official, from USAT or otherwise, to appear instead of Dr. Tulp at his hearing.  If you are Dr. Tulp's legal counsel, Dr. Tulp has the right for you to appear with him at the hearing.  There is no right or need for "local counsel" or "paralegals" to attend; therefore, they will not be permitted to attend Dr. Tulp's hearing.

Further, in your September 23, 2018 letter, you indicate that "a decision has already been made regarding October 18, 2018 allegations because the ECFMG has posted on various websites warning to USAT students that after January 1, 2018 USAT students will no longer be eligible to apply for the various Step tests."  This is incorrect.  No decision regarding the allegations against Dr. Tulp has been made as the ECFMG Committee has not yet reviewed these allegations. ECFMG carefully follows its policies and procedures, maintaining fairness and integrity throughout its processes.  We trust this information disabuses you of the notion that ECFMG's "proceedings are not neutral."

### USAT's Operation of Branch Campuses in the United States

ECFMG's update to USAT's ECFMG Sponsor Note in the *World Directory of Medical Schools* is a wholly separate matter from the allegations against Dr. Tulp.  Our letters of August

ECFMG® is an organization committed to promoting excellence in international medical education.

Mr. Tommy Swate
October 26, 2018
Page 2 of 3

21, 2018, September 14, 2018, and October 18, 2018 (enclosed for your reference) are related to the issue surrounding USAT's operation of branch campuses in the United States. Through these correspondences, ECFMG advised USAT of ECFMG's policy regarding branch campuses operating in countries outside the main campus country. To reiterate: in order for students and graduates of an international medical school to have eligibility to apply for ECFMG Certification, ECFMG policy requires (among other things) confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in the branch campus country.

When ECFMG became aware that USAT was operating a campus in Miami, FL, United States, ECFMG requested USAT to provide ECFMG with the documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the entire time period during which the USAT Miami branch campus has been in operation. To date, ECFMG has no record of receipt of such documentation from USAT.

As a result, ECFMG updated its ECFMG's Sponsor Note in the *World Directory of Medical Schools* (*World Directory*) for USAT to reflect that 2019 and later graduates of USAT are no longer eligible to apply for ECFMG certification. ECFMG also provided USAT students with this information and guidance on how this information impacted them. If USAT students still have questions about this, they should contact ECFMG directly as outlined in ECFMG's message to them.

ECFMG does not dispute that USAT's charter has a provision in which the government of Montserrat permits USAT to "relocate to an area of convenience" if faced with "natural disaster or unforeseen circumstances." The charter indicates "This would not affect any permission granted to the MCL-USAT by the Government of Montserrat." However, the government of Montserrat is not in a position to authorize the establishment of a medical school campus or conduction of other educational activity in another country. Thus, this section of USAT's charter is irrelevant to the matter of the United States' recognition of USAT's activities within its sovereign borders.

In reference to your question regarding ECFMG's temporary relocation of some medical schools impacted by natural disasters, it is not appropriate for ECFMG to disclose its communication with other medical school officials. However, we can assure you that the safety of students and school officials is of the highest priority to ECFMG and ECFMG has and will continue to be supportive of and flexible with students and medical schools during periods of temporary relocation and operational recovery. ECFMG is not aware of any recent natural disasters impacting the island of Montserrat that would require a temporary relocation of USAT.

ECFMG now understands that in addition to Florida, USAT operates campuses in Texas, Puerto Rico, and Maryland. Should the United States Department of Education and/or the Departments of Education for Florida, Texas, Puerto Rico, and Maryland provide ECFMG with documentation that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will be happy to review USAT's eligibility for an ECFMG Sponsor Note in the *World Directory.* Until that time, USAT's ECFMG Sponsor Note for USAT will remain as is.

Mr. Tommy Swate
October 26, 2018
Page 3 of 3

Finally, we note that your letter indicates that USAT has conducted classes "in locations other than Montserrat *for 15 years* without incident…" [emphasis in original].  This is troubling to ECFMG, as ECFMG defines an international medical graduate as a physician who received his/her basic medical degree or qualification from a medical school located **_outside_** the United States and Canada. If USAT has not conducted any medical education in Montserrat for the entirety of its existence, but instead has done so at facilities in the United States, then its graduates, by definition, are not international medical graduates and therefore are not eligible for ECFMG Certification.  As a US medical school, we understand that USAT would be subject to accreditation by the Liaison Committee on Medical Education (LCME) which is the U.S. Department of Education-recognized accrediting body for programs leading to the M.D. degree in the United States.  ECFMG is not aware that USAT has been so accredited by LCME.

Sincerely,

Ms. Kara Corrado, JD
Vice President for Operations

Encl: As noted.

Case: 19-2706    Document: 45-2    Page: 321    Date Filed: 01/16/2020    0130

Meeting of the ECFMG Medical Education Credentials Committee re: ALLEGATIONS OF IRREGULAR BEHAVIOR (PERSONAL APPEARANCE)

**Appendix R**

| | |
|---|---|
| **From:** | Corrado, Kara |
| **To:** | "swatemd" |
| **Cc:** | "carla.konyk@gmail.com"; "billreillaw@gmail.com"; Katz, Francine |
| **Subject:** | RE: Hearing for Dr. Tulp -- Response Required |
| **Date:** | Wednesday, November 14, 2018 3:19:00 PM |

Dear Mr. Swate,

Thank you for your email. As we understand that you and Mr. Reil are representing Dr. Tulp in the matter related to the allegations of irregular behavior, I am sending the materials that the ECFMG Committee will review when considering these allegations. I will send the attachments in 5 separate emails, as they are quite large. Please let me know if you have not received them. Please note that this email will also be provided to the Committee.

ECFMG's Medical Education Credentials Committee is comprised of members of ECFMG's Board of Trustees and ECFMG's President and CEO. ECFMG staff and legal counsel will also be present at the meeting. These individuals will introduce themselves to you and Dr. Tulp at the meeting; thus it is not necessary for ECFMG to give you the names of these individuals in advance of the meeting. Further, it is not appropriate for ECFMG to give you the addresses of these individuals, either now or at the meeting.

Again, and as stated in my October 26, 2018 letter, we clarify for you that ECFMG's update to its *World Directory of Medical Schools* Sponsor Note for USAT is unrelated to the allegations of irregular behavior for Dr. Tulp. ECFMG's update to USAT's Sponsor Note is related to its branch campus activities in the United States. ECFMG requested USAT to provide ECFMG with the documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. To date, ECFMG has no record of receipt of such documentation from USAT. Should the United States Department of Education and/or the Departments of Education for Florida, Texas, Puerto Rico, and Maryland (where ECFMG understand USAT has branch campuses) provide ECFMG with documentation that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will be happy to review USAT's eligibility for an ECFMG Sponsor Note in the *World Directory*. Until that time, USAT's ECFMG Sponsor Note for USAT will remain as is.

Since ECFMG has not alleged irregular behavior against USAT (the institution) there is no need for a hearing for USAT. Nor is there any right to a hearing with ECFMG for USAT for any matter. ECFMG will not entertain any request to review the actions it has taken with respect to USAT's Sponsor Note at Dr. Tulp's irregular behavior hearing.

**Dr. Tulp is scheduled to appear before the ECFMG Committee with you and Mr. Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square , Philadelphia, PA 19103 . Please arrive at 8:45 AM.** In accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20 minutes, during which time he will have the opportunity to present his response to these allegations (either personally or through his counsel) and the ECFMG Committee members, ECFMG counsel, and staff will have the opportunity to ask questions. After that, Dr. Tulp may provide a brief, closing statement.

Sincerely,

Kara Corrado

_____

Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)

3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273
kcorrado@ecfmg.org l www.ecfmg.org

**From:** swatemd@aol.com [mailto:swatemd@aol.com]
**Sent:** Friday, November 09, 2018 6:28 PM
**To:** Corrado, Kara; carla.konyk@gmail.com
**Subject:** Re: Hearing for Dr. Tulp -- Response Required

**External Email. Please Proceed with Caution.**

Mr. Riel and I will represent Dr. Tulp at the hearing on October 28th. Please send a copy of the
October 28 agenda and written policy and procedure to my attention at swatemd@aol.com. Please
forward copies of all documents submitted to the committee members prior to the hearing.

I did not receive your letter of October 26 until this afternoon by e mail. I am requesting the names
and addresses of the committee members plus the individuals other than the committee members that
will be at the hearing. Also, please send me ALL the evidence that will be presented at the hearing so
that Dr. Tulp  can prepare for the hearing.

I represent both Dr. Tulp and USAT. I will send a formal demand by certified mail for ECFMG to stop
the tortious  inference with the operation of USAT immediately. The ECFMG has taken action against
USAT without giving USAT the opportunity to respond in a formal setting. To save time and expense, I
am request a hearing on behalf of USAT on October 28, 2018.  Please inform me of the person or
persons who authorized the letters to USATs' students? What person or entity made a decision to
arbitrarily without a hearing block certain USATs' students scores from being disclosed?  Tommy
Swate
-----Original Message-----
From: Corrado, Kara <KCorrado@ecfmg.org>
To: swatemd <swatemd@aol.com>
Sent: Fri, Nov 9, 2018 2:19 pm
Subject: RE: Hearing for Dr. Tulp -- Response Required

Dear Mr. Swate,

I just resent the letter to you. I had emailed it to you on October 26, 2018.  Please let me
know if you have received it.

Please advise if you are representing Dr. Tulp and if Dr. Tulp will be appearing at the
meeting.

Sincerely,

Kara Corrado

_____

Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

CONFIDENTIAL

ECFMG00000381

TEL: +1.215.823.2273
kcorrado@ecfmg.org I www.ecfmg.org

**From:** swatemd [mailto:swatemd@aol.com]
**Sent:** Friday, November 09, 2018 3:03 PM
**To:** Corrado, Kara
**Subject:** Re: Hearing for Dr. Tulp -- Response Required

**External Email. Please Proceed with Caution.**

I have not received a letter dated October 26th from you. Please e mail the LETTER to me .
Both attorrneys will appear on the 28th. I can not respond until I receive your letter. Tommy
Swate

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: "Corrado, Kara" <KCorrado@ecfmg.org>
Date: 11/9/18 1:01 PM (GMT-06:00)
To: swatemd@aol.com, billreillaw@gmail.com
Cc: "Katz, Francine" <fkatz@ECFMG.org>
Subject: Hearing for Dr. Tulp -- Response Required

Gentleman:

I am following up on ECFMG's October 26, 2018 letter to you regarding USAT. We
understand that you both are counsel for USAT.

As you know, ECFMG will review the allegations of irregular behavior for Dr. Tulp on
November 28, 2018.   Dr. Tulp has a right to a personal appearance at that meeting
with his legal counsel.

Please reply to this email by November 14, 2018 and indicate:
 If you are representing Dr. Tulp in this matter; and
 If Dr. Tulp plans to attend the meeting in person (and if so, which of his attorneys will be present).

If we do not receive a reply from you on or before November 14, 2018, we will
assume that Dr. Tulp is not making a personal appearance.  Dr. Tulp's case is
scheduled to be reviewed on November 28, 2018 whether or not he makes a
personal appearance.

Sincerely,

Kara Corrado

_____

Ms. Kara Corrado, J.D.

Vice President for Operations

Educational Commission for Foreign Medical Graduates (ECFMG)

3624 Market Street

Philadelphia, PA 19104


TEL: +1.215.823.2273

kcorrado@ecfmg.org | www.ecfmg.org


**Disclaimer**

The information contained in this communication from **ECFMG® / Educational Commission for Foreign Medical Graduates** is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd.**


**Disclaimer**

The information contained in this communication from **ECFMG® / Educational Commission for Foreign Medical Graduates** is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd.**

| | |
|---|---|
| **From:** | swatemd <swatemd@aol.com> |
| **Sent:** | Friday, November 16, 2018 2:16 PM |
| **To:** | Corrado, Kara |
| **Subject:** | RE: Hearing for Dr. Tulp -- Response Required |

**External Email. Please Proceed with Caution.**

Thank you . I have received documents Tommy Swate

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: "Corrado, Kara" <KCorrado@ecfmg.org>
Date: 11/16/18 1:04 PM (GMT-06:00)
To: swatemd <swatemd@aol.com>
Cc: carla.konyk@gmail.com, billreillaw@gmail.com, "Katz, Francine" <fkatz@ECFMG.org>
Subject: RE: Hearing for Dr. Tulp -- Response Required

Dear Mr. Swate,

I am writing to confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for Dr. Tulp. All documents were emailed to you on Wednesday, November 14, 2018. I have also sent the documents to you via Federal Express today.

Please let us know if you have not received the documents.

Sincerely,

Kara Corrado

_____

Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273
kcorrado@ecfmg.org I www.ecfmg.org

**From:** Corrado, Kara
**Sent:** Wednesday, November 14, 2018 3:19 PM
**To:** 'swatemd'
**Cc:** 'carla.konyk@gmail.com'; 'billreillaw@gmail.com'; Katz, Francine
**Subject:** RE: Hearing for Dr. Tulp -- Response Required

Dear Mr. Swate,

1

Thank you for your email. As we understand that you and Mr. Reil are representing Dr. Tulp in the matter related to the allegations of irregular behavior, I am sending the materials that the ECFMG Committee will review when considering these allegations.  I will send the attachments in 5 separate emails, as they are quite large.  Please let me know if you have not received them.  Please note that this email will also be provided to the Committee.

ECFMG's Medical Education Credentials Committee is comprised of members of ECFMG's Board of Trustees and ECFMG's President and CEO.  ECFMG staff and legal counsel will also be present at the meeting.  These individuals will introduce themselves to you and Dr. Tulp at the meeting; thus it is not necessary for ECFMG to give you the names of these individuals in advance of the meeting.  Further, it is not appropriate for ECFMG to give you the addresses of these individuals, either now or at the meeting.

Again, and as stated in my October 26, 2018 letter, we clarify for you that ECFMG's update to its *World Directory of Medical Schools* Sponsor Note for USAT is unrelated to the allegations of irregular behavior for Dr. Tulp.  ECFMG's update to USAT's Sponsor Note is related to its branch campus activities in the United States.  ECFMG requested USAT to provide ECFMG with the documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. To date, ECFMG has no record of receipt of such documentation from USAT.  Should the United States Department of Education and/or the Departments of Education for Florida, Texas, Puerto Rico, and Maryland (where ECFMG understand USAT has branch campuses) provide ECFMG with documentation that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will be happy to review USAT's eligibility for an ECFMG Sponsor Note in the *World Directory*. Until that time, USAT's ECFMG Sponsor Note for USAT will remain as is.

Since ECFMG has not alleged irregular behavior against USAT (the institution) there is no need for a hearing for USAT.  Nor is there any right to a hearing with ECFMG for USAT for any matter.  ECFMG will not entertain any request to review the actions it has taken with respect to USAT's Sponsor Note at Dr. Tulp's irregular behavior hearing.

**Dr. Tulp is scheduled to appear before the ECFMG Committee with you and Mr. Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square , Philadelphia , PA 19103.  Please arrive at 8:45 AM.**  In accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20 minutes, during which time he will have the opportunity to present his response to these allegations (either personally or through his counsel) and the ECFMG Committee members, ECFMG counsel, and staff will have the opportunity to ask questions.  After that, Dr. Tulp may provide a brief, closing statement.

Sincerely,

Kara Corrado

---

Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273
kcorrado@ecfmg.org l www.ecfmg.org

**From:** swatemd@aol.com [mailto:swatemd@aol.com]
**Sent:** Friday, November 09, 2018 6:28 PM
**To:** Corrado, Kara; carla.konyk@gmail.com
**Subject:** Re: Hearing for Dr. Tulp -- Response Required

**External Email. Please Proceed with Caution.**

---

Mr. Riel and I will represent Dr. Tulp at the hearing on October 28th.  Please send a copy of the October 28 agenda and written policy and procedure to my attention at swatemd@aol.com. Please forward copies of all documents submitted to the committee members prior to the hearing.

CONFIDENTIAL                                                                                                    ECFMG00000506

I did not receive your letter of October 26 until this afternoon by e mail. I am requesting the names and addresses of the committee members plus the individuals other than the committee members that will be at the hearing. Also, please send me ALL the evidence that will be presented at the hearing so that Dr. Tulp can prepare for the hearing.

I represent both Dr. Tulp and USAT. I will send a formal demand by certified mail for ECFMG to stop the tortious inference with the operation of USAT immediately. The ECFMG has taken action against USAT without giving USAT the opportunity to respond in a formal setting. To save time and expense, I am request a hearing on behalf of USAT on October 28, 2018. Please inform me of the person or persons who authorized the letters to USATs' students? What person or entity made a decision to arbitrarily without a hearing block certain USATs' students scores from being disclosed? Tommy Swate
-----Original Message-----
From: Corrado, Kara <KCorrado@ecfmg.org>
To: swatemd <swatemd@aol.com>
Sent: Fri, Nov 9, 2018 2:19 pm
Subject: RE: Hearing for Dr. Tulp -- Response Required

Dear Mr. Swate,

I just resent the letter to you. I had emailed it to you on October 26, 2018. Please let me know if you have received it.

Please advise if you are representing Dr. Tulp and if Dr. Tulp will be appearing at the meeting.

Sincerely,

Kara Corrado

_____
Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273

CONFIDENTIAL                                                                                    ECFMG00000507

| From: | Corrado, Kara <KCorrado@ecfmg.org> |
|---|---|
| Sent: | Thursday, January 10, 2019 10:31 AM |
| To: | Katz, Francine; McEnroe, Elisa P.; Klayman, Matthew D.; Cover, Lisa |
| Subject: | FW: Transcript from Hearing |
| Attachments: | olt112818.pdf |

PRIVILEGED

**From:** Corrado, Kara
**Sent:** Thursday, January 10, 2019 9:44 AM
**To:** o.tulp@usat.edu
**Cc:** billreillaw@gmail.com; 'swatemd@aol.com'
**Subject:** Transcript from Hearing

Dear Dr. Tulp,

Please find attached the transcript of the November 28, 2018 proceedings.

Sincerely,

Kara Corrado

_____
Ms. Kara Corrado, J.D.
Vice President for Operations
Educational Commission for Foreign Medical Graduates (ECFMG)
3624 Market Street
Philadelphia, PA 19104

TEL: +1.215.823.2273
kcorrado@ecfmg.org I www.ecfmg.org

**Disclaimer**

The information contained in this communication from **ECFMG® / Educational Commission for Foreign Medical Graduates** is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

1

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd.**

CONFIDENTIAL SAppx0366 ECFMG00000510

1      MEETING OF THE ECFMG MEDICAL

       EDUCATION CREDENTIALS COMMITTEE

2

                    -   -   -

3

4  RE:  ORIEN L. TULP, USAT

5                   -   -   -

6            NOVEMBER 28, 2018

7                   -   -   -

8        Hearing taken pursuant to notice,

9  was held at RITTENHOUSE HOTEL, 210 West

10 Rittenhouse Square, Philadelphia,

11 Pennsylvania, commencing at 10:00 a.m.,

12 on the above date, before LISA MARIE

13 CAPALDO, RPR, a Registered Professional

14 Reporter and Notary Public in and for the

15 Commonwealth of Pennsylvania.

16

17

18

19

20

           GOLKOW LITIGATION SERVICES

21    877.370.3377 ph | 917.591.5672 fax

              Deps@golkow.com

22

23

24

CONFIDENTIAL                SAppx0367              ECFMG00000511

```
 1     APPEARANCES:

 2     ECFMG STAFF

 3     Mr. William W. Pinsky
       Mr. Dennis M. Donohue

 4     Ms. Kara Corrado
       Ms. Lisa L. Cover

 5     Ms. Svetlana Gridneva
       Mr. Scott Mealey

 6     Ms. Rosemary Carlin

 7

       ECFMG Board Members

 8

       Dr. Maryellen Gusic

 9     Dr. Ronald R. Blanck
       Dr. Barbara Barzansky

10     Dr. Peter Buckley
       Dr. Andrew Filak

11     Dr. Ram Krishna
       Dr. Dotun Ogunyemi

12     Dr. James Pelegano

13

14

15

16

17

18

19

20

21

22

23

24
```

```
 1                        -   -   -

 2                     I N D E X

 3                        -   -   -

 4

 5      Statement of:

 6              ORIEN L. TULP, USAT

 7

 8          By Mr. Swate

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

CONFIDENTIAL                    SAppx0369                    ECFMG00000513

```
1                    -   -   -

2                 PROCEEDING

3                    -   -   -

4     O R I E N  T U L P, Sworn.

5                    -   -   -

6               DR. GUSIC:  We will begin by

7          asking the committee members and

8          the staff to introduce themselves.

9          We will swear in Dr. Tulp and then

10         if there are any opening

11         statements.

12              MS. McENROE:  Elisa McEnroe,

13         outside counsel for ECFMG.

14              MS. KATZ:  I'm Francis Katz.

15         I'm the general counsel at ECFMG.

16              DR. CRAIG:  Steve Craig,

17         board member.

18              DR. OGUNYEMI:  Dr. Ogunyemi,

19         ECFMG board member.

20              DR. BUCKLEY: Peter Buckley,

21         I'm also an ECFMG board member.

22              DR. PELEGANO:  Jim Pelegano,

23         ECFMG board member.

24              DR. KRISHNA:  Dr. Krishna,
```

CONFIDENTIAL                SAppx0370                ECFMG00000514

1         board member.

2              DR. FILIK:  Andy Filik,

3         ECFMG board member.

4              DR. PINSKY:  Bill Pinsky,

5         President and CEO of ECFMG.

6              DR. GUSIC:  Maryellen Gusic,

7         board member and chair of this

8         committee.

9              DR. BLANCK:  Ronald Blanck,

10        chair and board member of this

11        committee.

12             DR. BARZANSKY:  Barbara

13        Barzansky, ECFMG board member.

14             MS. CORRADO:  Kara Corrado,

15        ECFMG staff.

16             MS. COVER:  Lisa Cover,

17        ECFMG staff.

18             MR. DONOHUE:  Dennis

19        Donohue, ECFMG staff.

20             MS. GRIDNEVA:  Svetlana

21        Gridneva, ECFMG staff.

22             MS. CARLIN:  Rosemary

23        Carlin, ECFMG staff.

24             MS. CORRADO:  Just briefly,

CONFIDENTIAL          SAppx0371          ECFMG00000515

November 28, 2018

1       I'm just going to iterate the

2       allegations for the committee.

3       The allegation is that Dr. Orien

4       Tulp, professor and president of

5       USAT engaged in irregular behavior

6       in connection with providing false

7       information to ECFMG, specifically

8       that Dr. Tulp provided false

9       information to ECFMG regarding

10      USTAT's United States branch

11      campuses and certifying to the

12      attendance dates of several USTAT

13      students and graduates when ECFMG

14      has information that these

15      students were not attending USTAT

16      during some of the time periods to

17      which Dr. Tulp certified.

18          Dr. Tulp is here today along

19      with his attorneys to address

20      these allegations and to answer

21      any questions that the committee

22      may have.

23          DR. GUSIC:  Opening

24      statements.

CONFIDENTIAL                    SAppx0372                    ECFMG00000516

1          MR. SWATE:  Thank you.  I

2     asked the name of the officer

3     outside the door, and he refused

4     to give me his name.  Could you

5     tell me who the officer outside

6     the door is?

7          MS. McENROE:  It's a

8     security officer we've brought in

9     for our own protection in case we

10     need it throughout our day's

11     proceedings.  He's an off-duty

12     Philadelphia police officer.

13          MR. SWATE:  First, I would

14     like to ask for the -- I've asked

15     and I've asked and I've asked for

16     the packet that was presented to

17     the committee members.  I would

18     like a copy of the packet, the

19     information that was submitted to

20     the committee members so that I

21     will know what was considered by

22     the committee before we came here

23     today because you're considering

24     information that I may or may not

1    know about.  And that's

2    fundamentally unfair to my client,

3    for my client to have to defend

4    against potential information that

5    we don't have.

6             First, I would ask for a

7    copy of that.

8             MS. McENROE:  There's

9    actually a black binder right in

10   front of you.  We also have

11   provided that on more than one

12   occasion prior to this proceeding,

13   which is our usual practice even

14   without you asking.  That's what

15   we do.

16            MR. SWATE:  Where is the

17   letter that you sent to the

18   committee members addressing this?

19            MS. McENROE:  The materials

20   presented to the committee

21   regarding this circumstance with

22   Dr. Tulp's charges of irregular

23   behavior are presented in that

24   binder to you.

CONFIDENTIAL                SAppx0374                ECFMG00000518

```
 1              MR. SWATE:  I'm asking you
 2         for the letter you sent to the
 3         committee members.
 4              MS. McENROE:  I don't know
 5         what you're talking about.
 6              MR. SWATE:  You didn't send
 7         them a letter explaining what this
 8         was?
 9              MS. McENROE:  We sent those
10         materials.
11              MR. SWATE:  What about the
12         letter that went with the
13         materials?
14              MS. McENROE:  Those are the
15         materials including any
16         correspondence with it.
17              MR. SWATE:  All the
18         correspondence would be included
19         with this material?
20              MS. McENROE:  Correct.
21              MR. SWATE:  I'm sorry.
22         Where is the correspondence that
23         you sent to the committee?
24              MS. McENROE:  This is the
```

CONFIDENTIAL                    SAppx0375                    ECFMG00000519

1    same material that you were

2    provided.  November 14th you got

3    it by e-mail, and November 15th

4    you got it by Federal Express.

5         MR. SWATE:  I'm asking for

6    the letters that you sent to these

7    committee members.  You just

8    didn't send this out to the

9    committee members just blindly.

10        MS. McENROE:  Unfortunate

11   for them, potentially there's a

12   lot of materials they have to

13   review, and they carefully review

14   the materials presented to them as

15   presented to you.  We get an

16   electronic copy, myself included

17   which you were provided by e-mail

18   on November 14th.

19        MR. SWATE:  So you're

20   telling me that you did not send

21   them a letter explaining this

22   material and explaining the

23   allegation to the committee

24   members.

CONFIDENTIAL                    SAppx0376              ECFMG00000520

November 28, 2018

 1          MS. McENROE:  That material
 2     is as presented to the committee.
 3          MR. SWATE:  You're not
 4     answering my question.
 5          MS. McENROE:  I'm not here
 6     to answer your questions, sir.
 7     We're here for your client to
 8     explain to us the charges of
 9     irregular behavior against him.
10          If you have an opening
11     statement you would like to make,
12     we're interested in hearing it.
13     Our committee has questions for
14     your client, and then we will
15     consider the charges of irregular
16     behavior.
17          MR. SWATE:  This committee
18     has no jurisdiction over Dr. Tulp.
19     We showed up today as it stands
20     for negotiation.  You all have no
21     legal jurisdiction to determine
22     anything.
23          So accordingly, please be
24     advised that we're not waiving

CONFIDENTIAL                    SAppx0377                    ECFMG00000521

```
1          because we're here any

2          jurisdictional issues that may be

3          addressed at another forum at

4          another day.

5               Since the ECFMG has made the

6          allegation, it should have the

7          sole and exclusive burden of

8          proof.  So who is presenting the

9          evidence against Dr. Tulp?

10              This is not the U.S.

11         Congress where you can make blind

12         allegations and attempt to have

13         the person prove they are not

14         guilty.  And that's what's

15         occurring here today, just blatant

16         accusations and then assuming he's

17         guilty.  And you have him come

18         here for 20 minutes to explain why

19         he's not guilty.

20              You have a duty of

21         presenting your evidence, credible

22         evidence before Dr. Tulp has to

23         answer anything.  It's your

24         burden.
```

Case 2:18-cv-05540-WB  Document 131  Filed 05/01/19  Page 154 of 390
November 28, 2018

1    Now, you claim you are

2    basing this on the preponderance

3    of evidence.  What evidence are

4    you presenting here today that Dr.

5    Tulp violated anything?  None.

6    Also, there appears to be a

7    co-mingling of the prosecutorial

8    and jury functions.  You are both

9    making the claims and acting as

10   judge and jury.

11   We have asked for discovery

12   of documents, especially any

13   letters or correspondence that

14   have been sent to the committee

15   members.  The claim that you just

16   sent the committee members this

17   without any explanation doesn't

18   meet any kind of test of

19   credibility.

20   The ECFMG is either acting

21   as quasi government entity or

22   acting under a contract basis.

23   Now, you claim that you are a

24   private nonprofit entity.  So the

CONFIDENTIAL                 SAppx0379                 ECFMG00000523

1    only reason that you could be

2    interacting with Dr. Tulp is on

3    the basis of contract.  Where is

4    the contract?

5         Dr. Tulp's doesn't have a

6    contract with you all.  So you

7    have no right to tortuously

8    interfere with his business

9    practices or tortuously interfere

10   with his students.

11        ECFMG has printed and

12   published derogatory information

13   about USAT.  Whether it's true or

14   not true, at least the target of

15   those accusations should have had

16   the opportunity to address those

17   accusations before you go out and

18   attempt to ruin the school, which

19   is what you have done causing

20   probably millions of dollars worth

21   of damages.

22        If you're not a quasi

23   government entity, everybody in

24   this room is going to be liable

CONFIDENTIAL                SAppx0380                ECFMG00000524

November 28, 2018

 1          for whatever damages we can prove.

 2          You've already prejudged the case

 3          by taking action against USAT by

 4          refusing to release documents of

 5          their students.  Totally have

 6          refused to release documents of

 7          students the students are entitled

 8          to have released.

 9               Again, repeating myself,

10          you're either a quasi government

11          agency or you are a private

12          agency.  A private agency you got

13          to have a contract.  Quasi

14          government agency you got to have

15          at least an assemblance of due

16          process which there's none here.

17               I asked for the rules and

18          regulations and the protocols for

19          these meetings.  Apparently, there

20          is none other than what's in the

21          eyes of the beholders of the

22          people who run the ECFMG.

23               What's the protocol?  I

24          asked for the agenda.  I got a

CONFIDENTIAL                    SAppx0381                    ECFMG00000525

```
1        brief statement to show up at
2        8:45.  And here we are at
3        ten o'clock, total disrespectful
4        to my client and myself to have us
5        show up at 8:45 and then be
6        ten o'clock before you have us
7        come in and address you.
8            So we have not received the
9        rules and regulations for the
10       hearing nor have we seen any right
11       that you have other than
12       essentially blackmailing the
13       students and telling the students,
14       well, if you don't send in these
15       forms, we're going to hold your
16       records hostage, which has
17       resulted in students either being
18       accepted for residency and not
19       being able to continue with the
20       residency or not being able to be
21       interviewed for the residency.
22           That is our opening
23       statement.  If you have any
24       questions, you can address them to
```

1    me.  Dr. Tulp will not be

2    answering any questions.

3              MS. McENROE:  Mr. Swate, do

4    you have any substantive response

5    or statement with respect to the

6    charges of irregular behavior

7    against your client?

8              We've heard your procedural

9    concerns.  And just for the

10   purposes of the record, we

11   disagree across the board with

12   your allegations and your

13   statements about the state of

14   affairs.  I think for everybody's

15   time I'm not going to go through

16   them and enumerate each and every

17   single one of them.

18             If and when we ever ended up

19   dealing with these issues in the

20   court of law, we would deal with

21   them then and we feel very

22   confident --

23             MR. SWATE:  I can assure you

24   we're going to end up in federal

November 28, 2018

```
 1              court.
 2                   MS. McENROE:  I let you
 3              speak.  Can you let me speak?
 4                   MR. SWATE:  I'm sorry.
 5                   MS. McENROE:  Do you have
 6              any statement with regard to the
 7              actual substantive allegations of
 8              irregular behavior?
 9                   MR. SWATE:  We can go
10              through this page by page.
11                   MS. McENROE:  I don't mean
12              to go through it page by page.
13              Are you here today saying that --
14              is it Dr. Tulp?  I would say Tulp
15              with an L.
16                   DR. TULP:  It's Tulp.
17                   MS. McENROE:  Are you saying
18              that Dr. Tulp did not provide
19              incorrect information to ECFMG
20              with regard to branch campuses in
21              the United States?
22                   MR. SWATE:  Show me your
23              evidence that he did.
24                   MS. McENROE:  We have e-mail
```

CONFIDENTIAL                  SAppx0384                  ECFMG00000528

1    correspondence from him in all

2    caps saying that there were not

3    campuses in the United States.

4    And we have significant evidence

5    to the contrary.  We were

6    wondering if --

7              MR. SWATE:  What's your

8    definition of campus?

9              MS. McENROE:  Maybe that's

10   something you can illuminate for

11   us about what your client's view

12   is of a campus, whether there was

13   education taking place in the

14   United States for USTAT.

15             MR. SWATE:  The burden of

16   proof is not on Dr. Tulp.  The

17   burden of proof is on the ECFMG.

18             Now, Dr. Tulp is not going

19   to address a nebulous definition

20   of campuses.  You show me your

21   written definition of campuses and

22   we'll address that.

23             MS. McENROE:  Did USTAT

24   provide any student with any

CONFIDENTIAL                    SAppx0385                    ECFMG00000529

1      medical school basic science

2      education in the United States?

3              MR. SWATE:  Well, yes, it

4      did.

5              MS. McENROE:  He's shaking

6      his head, no, and you just said,

7      yes.  So maybe you should let your

8      client speak to respond.

9              MR. SWATE:  Dr. Tulp is not

10     going to be talking today.  The

11     next time you hear him talk is

12     going to be in federal court.

13             MS. McENROE:  So, yes, there

14     was education in the United

15     States?

16             MR. SWATE:  There was no

17     campus in the United States.

18             MS. McENROE:  So my question

19     was, was there any education for

20     basic medical sciences provided in

21     the United States?

22             MR. SWATE:  What do you mean

23     by education?

24             MS. McENROE:  Were there any

CONFIDENTIAL                    SAppx0386                    ECFMG00000530

November 28, 2018

1      live lectures provided in the

2      United States for USAT?

3            MR. SWATE:  My

4      understanding is the lectures were

5      for some extent was prepared by

6      the Internet, that type of thing.

7            MS. McENROE:  That was not

8      responsive to my question.  My

9      question was --

10            MR. SWATE:  You're not

11      cross-examining me, Counsel.

12            MS. McENROE:  Well, I'm

13      asking you questions and trying to

14      be more specific --

15            MR. SWATE:  We can't answer

16      the questions because you haven't

17      defined what campus is.  You

18      haven't defined what the

19      regulations for having an off-site

20      campus where you allowed other

21      schools to have off-site campuses,

22      but you attacked USTAT for some

23      reason.

24            Now, you cannot disagree

CONFIDENTIAL                SAppx0387                ECFMG00000531

November 28, 2018

```
 1          that you have allowed other
 2          schools to have off-site campuses
 3          due to natural problems.  You've
 4          been told what the natural
 5          problems were.
 6               MS. McENROE:  That was not
 7          my question.  My question was,
 8          were there any live lectures
 9          provided to students of USTAT or
10          basic medical sciences in the
11          United States?
12               MR. SWATE:  I'm not a
13          witness.  So you don't get to
14          cross-examine me.
15               MS. McENROE:  I may not be
16          able to ask you questions as a
17          witness.  I would normally ask
18          your client.
19               MR. SWATE:  You're not going
20          to be able to do that because you
21          haven't given me enough
22          information to prepare my client.
23          This star chamber proceedings,
24          he's not going to participate in.
```

CONFIDENTIAL
SAppx0388

November 28, 2018

1        MS. McENROE:  Despite the

2    four inches of paper --

3        MR. SWATE:  Let's go through

4    each of the --

5        MS. McENROE:  You had some

6    concerns that by not taking you

7    exactly at 8:45 when we asked that

8    you be here for a 9:00 hearing

9    until 10:00 was a waste of time.

10   We apologize if you feel that way.

11   That was not at all the intention.

12   This is a busy committee.  We

13   don't have the time or the man

14   with to sit here and go through

15   every single page that we provided

16   you weeks ago.

17       MR. SWATE:  I'm prepared to

18   go through every page of this.

19       MS. McENROE:  Tell me where

20   in there it proves that your

21   client did not provide any medical

22   school education in the United

23   States.

24       MR. SWATE:  He doesn't have

CONFIDENTIAL                    SAppx0389                    ECFMG00000533

Case 2:18-cv-05540-WB   Document 131   Filed 05/08/19   Page 169 of 384
November 28, 2018

```
 1            the burden of proof.
 2                 MS. McENROE:  We're just
 3            going around in circles.  I don't
 4            know that it's going to be much
 5            more helpful to try and proceed.
 6                 MR. SWATE:  I'm willing to
 7            go through every page of this.
 8                 MS. McENROE:  To what end?
 9            You're not answering my questions.
10            What are you hoping to get out of
11            every single page of that?
12                 If you want to sit here and
13            look for something specific, tell
14            me.  We've all read the materials.
15            We can help direct you.
16                 Take a look at Appendix E at
17            the e-mail from your client
18            saying, it is not a campus.  Our
19            only campus is located in
20            Olveston, Montserrat, British West
21            Indies.
22                 My questions are trying to
23            understand whether there was
24            medical school education in the
```

CONFIDENTIAL                    SAppx0390                    ECFMG00000534

November 28, 2018

1      United States.

2           MR. SWATE:  That's not what

3      -- what you're trying to do is ask

4      that question and then leap frog

5      to make like that's the campus.

6           Give me your definition of

7      what a campus is and then give me

8      the cases in which you've allowed

9      campuses to operate outside of

10     their original address.

11          MS. McENROE:  Perhaps your

12     client, if we would be allowed,

13     could provide us an explanation of

14     what he meant by campus in this

15     e-mail because the committee is

16     interested in hearing that.

17          MR. SWATE:  I would like to

18     know what your definition of

19     campus is.

20          MS. McENROE:  He's the one

21     who used the word here.  I'm

22     interested to know what he means

23     by it.

24          MR. SWATE:  I'm asking you,

CONFIDENTIAL              SAppx0391              ECFMG00000535

Case 2:18-cv-05540-WB   Document 134   Filed 05/21/19   Page 167 of 384

1     what's your definition of campus?

2     Secondly, what's the exceptions to

3     having an off-site campus?

4          MS. McENROE:  We appreciate

5     you being here today.  We're

6     working on trying to understand

7     the facts and circumstances in

8     this case.  Apparently, we're

9     going to be left with a cold

10    record because your client is

11    refusing to answer any questions.

12         I think at this time it

13    makes sense, unless there's any

14    closing statement you want to

15    make, that we adjourn.

16         MR. SWATE:  ECFMG is

17    adjourning this without us having

18    the ability to go through their

19    efforts.

20         MS. McENROE:  Is there

21    anything in particular you want to

22    go through?  We provided this to

23    you --

24         MR. SWATE:  I want to go

November 28, 2018

1        through the whole thing.

2              MS. McENROE:  Start on page

3        one.  What is it you want to talk

4        to us about it?

5              MR. SWATE:  The matter has

6        been brought to the CIE's

7        attention.  Where is the letter or

8        whatever information was brought

9        to the attention?

10             MS. McENROE:  We're not here

11       to answer questions, sir.  If you

12       have a closing statement or

13       something specific you want to

14       point out to us so we understand

15       the allegations better that are

16       lodged against your client, that

17       would be helpful.

18             That's why we're here today,

19       the due process you're saying that

20       you wanted.  We're here to try to

21       understand what it is that you're

22       trying to do here.

23             And candidly, I appreciate

24       you advocating on behalf of your

CONFIDENTIAL

1    client.  It's not productive here

2    if we can't understand the

3    underlying facts as your client

4    means them and wants ECFMG to

5    understand them.

6         So if this is your position

7    that you're just going to come

8    here and obstruct, then that's

9    just how it's going to be and

10   we're not wasting this committee's

11   time.  They have a busy agenda,

12   and we've got to keep going.

13        MR. SWATE:  It's a waste of

14   the committee's time when you're

15   going to destroy somebody's good

16   name and good reputation without

17   telling them what you're claiming.

18   At least in Texas, before we

19   execute somebody, we at least tell

20   them what the claim is for

21   executing them.

22        You've refused.  You've

23   stone walled me on the procedures.

24   I've asked for written procedures

1           for this committee.  Apparently,

2           there's none.  It's whatever you

3           want to make them.

4                MS. McENROE:  Sir, you've

5           gotten the policy and procedures

6           on irregular behavior multiple

7           times.  You'd like to say that the

8           record says what you say it says.

9           It just doesn't.

10               We're trying to follow the

11          best procedure we possibly can,

12          and you and your client are

13          obstructing us in being able to

14          collect the information.  At this

15          point, I don't think that it's

16          productive to continue the

17          proceeding.

18               MR. SWATE:  We're entitled

19          to know what procedure this

20          committee is operating under.  You

21          just can't operate under whatever

22          you want to make it.

23               MS. McENROE:  You've gotten

24          the policies and procedures.

CONFIDENTIAL                SAppx0395                ECFMG00000539

1          MR. SWATE:  No, I haven't.

2     I've gotten --

3          MS. McENROE:  They're

4     available on the Internet.

5          MR. SWATE:  I have received

6     broad statements, you can do

7     whatever you want.

8          MS. McENROE:  The record

9     will reflect --

10          MR. SWATE:  And that's not a

11     written policy and procedure.  And

12     that will not stand up under any

13     theory.

14          MS. McENROE:  We've provided

15     them to you in writing and the

16     link to the URL where they are

17     available publically on the

18     Internet.  I don't think at this

19     point there's anything else that's

20     worth us discussing at this

21     moment.  Thank you.

22          MR. SWATE:  You're

23     terminating --

24          MS. McENROE:  Yes, I'm

1    terminating the proceeding.

2         MR. SWATE:  ECFMG is

3    terminating this prior to us

4    presenting our evidence.

5         MS. McENROE:  We asked you

6    to present evidence, and all you

7    did was present legal argument.

8         What's your offer of proof?

9    What would you like to provide?

10        MR. SWATE:  We'll go through

11   every page of this.

12        MS. McENROE:  In particular,

13   what would you like to provide?

14        MR. SWATE:  First, I'd like

15   to know who Ms. Sara Colins is?

16        MS. McENROE:  From the

17   Florida Department of Education?

18        MR. SWATE:  I don't know who

19   this is.

20        MS. McENROE:  So what

21   evidence is that that you are

22   presenting to us?

23        MR. SWATE:  I'm asking your

24   evidence.  You're the one

```
1           presenting the evidence and I'm

2           asking what it is?

3               MS. McENROE:  You're not

4           providing any evidence.  So thank

5           you for coming today, Dr. Tulp.

6           We appreciate it.

7               MR. SWATE:  So you're

8           adjourning the --

9               MS. McENROE:  Yes, I'm

10          adjourning the proceeding.

11                  -   -   -

12              (Whereupon, the hearing

13          concluded at approximately 10:39

14          a.m.)

15                  -   -   -

16

17

18

19

20

21

22

23

24
```

CONFIDENTIAL                     SAppx0398                     ECFMG00000542

```
1                 C E R T I F I C A T E

2

3                    I hereby certify that

4      the witness was duly sworn by me and that

5      the deposition is a true record of the

6      testimony given by the witness.

7

8

9           _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

            LISA CAPALDO
10          Dated:

11

12     (The foregoing certification of this

13     transcript does not apply to any

14     reproduction of the same by any means,

15     unless under the direct control and/or

16     supervision of the certifying shorthand

17     reporter.)

18

19

20

21

22

23

24
```



**EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES**

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

December 14, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

ECFMG® is an organization committed to promoting excellence in international medical education.

SAppx0400

Dr. Orien L. Tulp
December 14, 2018
Page 2 of 2

> In 2018, ECFMG determined that a certain official of the University of Science
> Arts & Technology engaged in irregular behavior in connection with providing
> false information to ECFMG.

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

Sincerely,

William W. Pinsky, MD FAAP FACC
President and CEO

CC: Tommy Swate, Esq. swatemd@aol.com
    William Reil, Esq. billreillaw@gmail.com

Encl: As noted.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DR. ORIEN L. TULP, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:18-cv-05540-WB |
| ) | |
| v. ) | Hon. Wendy Beetlestone |
| ) | |
| EDUCATIONAL COMMISSION FOR ) | |
| FOREIGN MEDICAL GRADUATES and DR. ) | |
| WILLIAM W. PINSKY, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF KARA CORRADO IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY AND/OR PERMANENT INJUNCTION

I, Kara Corrado, declare as follows:

1.      I am currently employed as the Vice President for Operations at the Educational Commission for Foreign Medical Graduates ("ECFMG").  I have been employed in various capacities at ECFMG since 2004.

2.      I make this Declaration in connection with the above-captioned action.  I have personal knowledge of the facts stated herein and if called as a witness could and would testify to those facts.

3.      Beginning in September 2018, students and graduates of University of Science, Arts and Technology ("USAT") seeking services related to ECFMG Certification were required to complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG.

4.      Ultimately, more than 300 USAT students and graduates submitted affidavits to ECFMG indicating that they took classes in the United States.  None of the students indicated that he or she took all of his or her basic science courses in Montserrat.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

EXECUTED:  January 10, 2019

_Kara Corrado_
_____
Kara Corrado

2

1

1          UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF PENNSYLVANIA

3    ORIEN L. TULP,
                                    Case No.  2:18-cv-05540-WB
4          Plaintiff,

5    v.                             Philadelphia, Pennsylvania
                                    January 24, 2019
6    EDUCATIONAL COMMISSION FOR     2:03 p.m.
     FOREIGN MEDICAL GRADUATES, et
7    al,

8          Defendants.

9

            TRANSCRIPT OF PRELIMINARY INJUNCTION HEARING
10          BEFORE THE HONORABLE WENDY BEETLESTONE
               UNITED STATES DISTRICT COURT JUDGE
11

12   APPEARANCES:
     For the Plaintiff:            Tommy Swate, Esquire
13                                 403 Wild Plum
                                   Houston, TX  77013
14
                                   William C. Reil, Esquire
15                                 1515 Market Street, Suite 1200
                                   Philadelphia, PA  19102
16
     For the Defendants:           Elisa P. McEnroe, Esquire
17                                 Matthew D. Klayman, Esquire
                                   Caitlyn Barrett, Esquire
18                                 Morgan Lewis Bockius, LLP
                                   1701 Market Street
19                                 Philadelphia, PA 19103-2921

20
     Court Recorder:               Michael Mani
21
     Transcription Service:        Chris Hwang
22                                 PO Box 223282
                                   Chantilly, Virginia 20153
23

24   Proceedings recorded by electronic sound recording;
     transcript produced by transcription service.
25

2

1                              **INDEX**

2

3                                            Page

Motion, denied                              134

4

5    WITNESSES FOR PLAINTIFF

6                          Direct    Cross    Redirect   Recross

7    Kara Corrado              8       36        59

Orien Tulp                  63      102

8

9

WITNESSES FOR DEFENDANTS

10   Kara Corrado             52       74       (102)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SAppx0405

1                          **INDEX OF EXHIBITS**

2

3      EXHIBITS                                        Marked

       PLAINTIFF'S

4

            C          Agreement                      14

5           E          November 28, 2018 letter       109

6           G          Letters                         110

7

8

       DEFENDANT'S

9

            E          Sponsor Note                    46

10         D-1         Video                           80

11         D-2         Letter                          81

12         D-3         USAT lecture schedule           83

           D-4         Letter                          84

13         D-5         Email                           86

14         D-6         Affidavit                       90

15         D-7         Determination                   93

16          1          Printout ECFMG website          111

17          2          ECFMG school policy             112

            3          ECFMG information booklet       113

18          8          Letter                          114

19         13          Message                         116

20

21

22

23

24

25

Case: 19-2706    Document: 45-2    Page: 370    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 3144    Filed 05/03/19    Page 132 of 340

4

1          (Call to order at 2:03 p.m.)

2                THE COURT RECORDER:  All rise.  Court is now in

3     session, the Honorable Wendy Beetlestone presiding.

4                THE COURT:  Good afternoon, have a seat.

5                MR. REIL:  Good day, Your Honor.

6                THE COURT:  This is the matter of Tulp v.

7     Educational Commission for Foreign Medical Graduates.  It's a

8     hearing on the preliminary injunction.  Can I have some

9     introductions, please?

10               MR. REIL:  I'm William C. Reil for the Plaintiff.

11               You introduce yourself.

12               MR. SWATE:  Tommy Swate for the Plaintiff.

13               THE COURT:  Okay.  This is the Plaintiff Mr. Tulp,

14    Dr. Tulp?

15               MR. TULP:  I'm Orien Tulp, the Plaintiff.

16               THE COURT:  Okay.  Defense?

17               MS. MCENROE:  Good afternoon, Your Honor, Elisa

18    McEnroe for Morgan Lewis on behalf of the Educational

19    Commission for Foreign Medical Graduates and Dr. Pinsky, both

20    of the Defendants.

21               Today with me, I have my colleagues Matt Klayman and

22    Caitlyn Barrett.  I also have the General Counsel for ECFMG

23    Francine Katz here at the table with us.

24               THE COURT:  Okay.

25               MS. MCENROE:  And we have two fact witnesses, who

1    requested to attend as well, Ms. Kara Corrado and Lisa Cover,

2    two executives from ECFMG.

3              THE COURT:  Okay.  So before we begin, I just want to

4    clarify exactly what we're doing here today.  So in looking at

5    the complaint, it is a little unclear to me as exactly what

6    causes of action are being asserted.  And what I glean from it,

7    and Mr. Reil or Mr. Swate, you should tell me if I'm incorrect.

8              The first cause of action is tortiously interfering

9    with the contract between the students of USAT and against

10   ECFMG.  And that is a common law tortious interference with

11   contract claim; is that correct?

12             MR. REIL:  Yes, Your Honor.

13             THE COURT:  Okay.  Next one as I understand it is

14   it's a violation of due process claim against -- do I refer to

15   you as ECFMG or ECF?  Or what's the best way of --

16             MS. MCENROE:  ECFMG would be our preferred acronym,

17   but whatever works for Your Honor.

18             THE COURT:  That's fine.  Okay, violation of due

19   process against ECFMG, which appears to be a §1983 claim

20   alleging that ECFMG violated Tulp's procedural due process

21   rights as protected by the 14th Amendment; is that correct?

22             MR. REIL:  Yes, Your Honor.

23             THE COURT:  And then the third cause of action,

24   fraudulent misrepresentation, abuse of process, and negligent

25   representation against ECFMG appears to be three separate

6

```
 1    common law claims -- common law fraud, common law abuse of

 2    process, and common law negligent misrepresentation.  Is that

 3    correct?

 4              MR. REIL:  Yes, Your Honor.

 5              THE COURT:  And then finally, the fourth cause of

 6    action, a violation of procedural and substantive due process

 7    against all Defendants appears to be a §1983 claim alleging

 8    that Defendants violated Tulp's procedural and substantive due

 9    process rights as protected by the 14th Amendment.  Is that

10    correct?

11              MR. REIL:  Yes, Your Honor.

12              THE COURT:  Okay, and in terms of this hearing today,

13    are you proceeding under each of the causes of action or any

14    particular one?

15              MR. REIL:  I think we're -- I think the emphasis

16    today will be on the lack of due process.  I won't say we're

17    not proceeding on the others, but I think that would be

18    featured as --

19              THE COURT:  So procedural and substantive due

20    process.  So that is the second and the fourth cause of action?

21              MR. REIL:  I think there are -- they'll be our main

22    arguments, yes.

23              THE COURT:  Okay, and if I look at your motion, I

24    believe it is for a preliminary and a permanent injunction.

25              MR. REIL:  Yeah, and/or a permanent.
```

Case: 19-2706   Document: 45-2   Page: 373   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 189 of 340

7

```
 1              THE COURT:  And/or a permanent.  Now obviously, at
 2    this stage, I'm not going to -- it's way too early in the game
 3    for a permanent injunction.  So we are going to proceed under
 4    the preliminary injunction rubric.
 5              MR. REIL:  That's fine.
 6              THE COURT:  Okay, so your first witness, or if you
 7    want to make an argument, up to you.
 8              MR. REIL:  I think, given the time constraints we
 9    have here, maybe we would just call the first witness.  I'd
10    like to -- there's two witnesses here from ECFMG.
11              I'd like to make the motion for sequestration.  I'm
12    going to call Ms. Corrado.  The other witness I believe is Ms.
13    Cover.  I request that she be submit --
14              THE COURT:  Any objection to sequestering Ms. Cover?
15              MS. MCENROE:  No objection.
16              THE COURT:  Ms. Cover, could you please leave the
17    courtroom and wait outside?
18              Ms. Corrado, could you please approach the bench?
19    The witness chair is there.
20              And Mr. Mani, please swear the witness.
21              THE COURT RECORDER:  Please raise your right hand.
22    State and spell your name for the record?
23              THE WITNESS:  Kara Corrado, K-A-R-A C-O-R-R-A-D-O.
24                          KARA CORRADO
25    called as a witness for the Plaintiff, having been duly sworn
```

```
 1    testified as follows:

 2              THE COURT:  Have a seat.

 3              THE WITNESS:  Thank you.

 4              THE COURT:  Mr. Reil, your witness.

 5                        DIRECT EXAMINATION

 6    BY MR. REIL:

 7        Q    Ms. Corrado, I understand you're employed by ECFMG

 8    and I know I'm going to get the initials wrong a couple times.

 9    Sometimes even though I realize I'll refer them as the board,

10    although I know the board is only part of them.

11        All right, can you tell the Court what you do for ECFMG?

12        A    Yes.  I am the vice president for operations at

13    ECFMG.

14        Q    Okay, and what are those -- what are you duties?

15        A    I am primarily responsible for oversight of our ECFMG

16    certificate program, as well as a primary source verification

17    for some of our international clients, and oversight of our

18    special investigations team and medical education resources

19    team.

20        Q    I understand you're an attorney, is that --

21              MR. REIL:  Your Honor, I'd ask -- I didn't -- I'd ask

22    that I be able to use leading questions with this witness.

23    She's a managerial employee of the Defendant and she's sent

24    several letters to the -- involving this case to the Plaintiff?

25              MS. MCENROE:  Your Honor, if I may?  If the request
```

1    is to cross-examine the witness, I have no objection being that

2    it's our witness.  If the request is to be hostile to the

3    witness, I have an objection.

4            MR. REIL:  I'm not going to --

5            THE COURT:  Well --

6            MR. REIL:  -- use the term hostile.

7            THE COURT:  Well, I think we should be clear that in

8    my courtroom, hostility towards a witness is completely

9    forbidden.  Cross -- vigorous cross-examination is allowed.

10           MS. MCENROE:  No objection to that.

11           THE COURT:  And given that there's no objection, you

12   should cross-examine.  And the aim of the allowing you to

13   cross-examine a witness is simply to get things done as quickly

14   as possible.

15           MR. REIL:  I understand.

16   BY MR. REIL:

17       Q    I don't know if I asked you, you're an attorney?

18       A    I have a J.D. from Temple University.

19       Q    Okay, now can you describe for the record briefly

20   what is ECFMG?  I'll call them the board.

21       A    ECFMG is the Educational Commission for Foreign

22   Medical Graduates.  We are a nonprofit, private organization

23   that was established initially to screen international medical

24   graduates, who were coming to the United States seeking

25   residency programs, you know, and turns into graduate medical

10

```
 1   education.
 2        Q    Is ECFMG an accrediting agency?
 3        A    No, sir.
 4             THE COURT:  Did you say no?
 5             THE WITNESS:  No.
 6             THE COURT:  No.
 7   BY MR. REIL:
 8        Q    Okay, am I correct that a foreign medical student
 9   cannot practice as a physician in the United States without
10   certification by ECFMG?  Is that substantially correct?
11        A    Generally, the licensing boards in the United States
12   will require ECFMG certification for international medical
13   graduates, but it's the discretion of each state board who they
14   license.  But generally, yes, they require ECFMG certification.
15        Q    And I -- and we'll probably be using this term a lot,
16   what does that mean ECFMG certification?  What exactly is it
17   that they certify?
18        A    So in order to obtain ECFMG certification, an
19   international medical graduate must meet the requirements for
20   certification.
21        And roughly, there are two such requirements.  There are
22   examination requirements and there are medical education
23   requirements.
24        Q    And ECFMG certifies these things to state medical
25   boards?
```

1    A    So we certify the individuals.  So if the individual

2    meets those requirements, they will issued a certificate.  That

3    certificate is what they can use then as part of the

4    requirements to get into a graduate medical education program

5    and to be able to take Step 3 of the USMLE and then to --

6    ultimately to be licensed.

7    Q    So undergraduates, foreign undergraduate students and

8    even graduates register with the -- ECFMG; is that correct?

9    A    If they are seeking entrance to graduate medical

10   education in the United States, then yes, they would have to

11   come through ECFMG.

12   Q    Now Dr. Tulp had a hearing here in Philadelphia where

13   ECFMG is located at 36th and Market on November 28th of this

14   year, correct?

15   A    The meeting was actually at the Rittenhouse Hotel.

16   Q    Oh, right, it was your -- I stand corrected.

17   A    That's okay.

18   Q    It was the Rittenhouse Hotel that day.  Well, you

19   were present at that immediate meeting?

20   A    Yes, sir.

21   Q    Okay, and Ms. Cover was present at that meeting?

22   A    She was.

23   Q    And Dr. Pinsky --

24   A    Yes.

25   Q    -- was present at that meeting?

1    A    Yes.

2    Q    Okay, now Dr. Tulp, that was a hearing for what's

3  called irregular behavior, correct?

4    A    Yes.

5    Q    Before we talk about that, is Dr. Tulp -- is he a

6  foreign medical student that's registered with the ECFMG?

7    A    No.

8    Q    Well, does he have some sort of a contract with

9  ECFMG?

10   A    Not that I'm aware of.

11   Q    All right.  Did he ever agree to submit himself in

12  any way to ECFMG?

13   A    I don't know if I understand, I'm sorry.  The --

14   Q    Well, did Dr. Tulp ever say I agree that ECFMG has

15  power over me to determine whether I have met irregular

16  behavior?  Is there any documents or verbal agreements like

17  that?

18   A    Not that I'm aware of.

19   Q    I see.  All right.  Is -- to your knowledge, well, I

20  don't want you to speak for your -- to your knowledge, has

21  anyone from ECFMG ever visited the school, which Dr. Tulp is

22  the president of, the USAT?  Has anybody ever visited the

23  school do you know, inspection?

24   A    Not that I'm aware of.

25   Q    Okay, now the school in USAT, am I correct that it's

Case: 19-2706    Document: 45-2    Page: 379    Date Filed: 01/16/2020    0188
Case 2:18-cv-05540-WB    Document 31-49    Filed 05/03/19    Page 199 of 340

13

1    been in existence since about 2003, roughly about 15 years?

2    Were you aware of that?

3         A    I'm aware that we received a copy of a charter for

4    USAT, which shows that it was incorporated in 2003, I believe,

5    yes.

6         Q    A charter from the government of Montserrat?

7         A    Yes, sir.

8              MR. REIL:  Okay, well, maybe with the Court's

9    permission, can I give the witness proposed exhibits that I

10   made, one of the notes?

11             THE COURT:  You may.

12             MR. REIL:  May approach?

13             THE COURT:  You may.

14   BY MR. REIL:

15        Q    Will you take a moment to look at those and I'll have

16   further questions.  And you were talking about, well, why don't

17   you take a look at Exhibit 3 -- Exhibit C --

18        A    Uh-huh.

19        Q    -- on page 5 of the packet that I submitted to you?

20   Tell me when you have it.

21        A    I have it, sir.

22        Q    Okay, now that's several pages and I'm not going to

23   ask you to read through that before.  Do you know whether that

24   is a -- an agreement between -- with the government of

25   Montserrat basically authorizing USAT?

Case: 19-2706    Document: 45-2    Page: 380    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-4    Filed 05/03/19    Page 192 of 304

14

1        A    My understanding is that this --

2             THE COURT:  Wait, wait, hold on a second.  Before you

3    ask substantive questions about a particular document, you must

4    seek to have it admitted.

5             MR. REIL:  Yes, Your Honor, okay.  Let me lay a

6    foundation here.  Are you --

7             THE COURT:  Well, let's see if we can -- would you

8    stipulate to the admissibility of this document?

9             MS. MCENROE:  I would stipulate that this is a

10   document that Dr. Tulp submitted to ECFMG.  I don't know that

11   we have the ability to stipulate to authenticity beyond that.

12            THE COURT:  Would you oppose its admissibility?

13            MS. MCENROE:  For these purposes today, no.

14            THE COURT:  Just for the -- okay, so for the purposes

15   only of this preliminary injunction hearing, it is admitted.

16   You can ask substantive questions.

17       (Plaintiff's Exhibit C admitted into evidence)

18            MR. REIL:  Okay.

19   BY MR. REIL:

20       Q    All right, to your knowledge, is this document

21   essentially a document from the government of Montserrat, where

22   ECFMG has its main presence authorizing ECFMG to operate as a

23   medical college?

24            MS. MCENROE:  Objection, Your Honor.  We would only

25   ask for clarification that in the last question both instances

Case: 19-2706    Document: 45-2    Page: 381    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 314   Filed 05/03/19   Page 199 of 384    A0190

15

1    of use of ECFMG, I don't mean to be presumptuous, but that

2    counsel intended to USAT as opposed to --

3            MR. REIL:  Yes, I did, Your Honor.

4            THE COURT:  Sustained, sustained.  Why don't you

5    repeat the question?

6            MR. REIL:  Okay.

7    BY MR. REIL:

8        Q    All right, have you seen this document before?

9        A    Yes, sir.

10       Q    What is it?

11       A    It is a copy of what appears to be the charter for

12   USAT with the government of Montserrat.

13       Q    Thank you.  All right, I would move that into

14   evidence at this time.

15           THE COURT:  That had been admitted.  You can go

16   ahead.

17   BY MR. REIL:

18       Q    Okay, all right.  Now why don't you take a look, if

19   you would, at what's Exhibit D in the packet and to the

20   complaint at page 10.  Okay, it appears to be an affidavit.  Do

21   you recognize it?

22       A    Yes, sir.

23       Q    Who issued it?

24       A    ECFMG.

25       Q    Okay, and for what purpose?

```
1      A     ECFMG requested the students and graduates of USAT to
2   complete the affidavit attesting to their medical school
3   attendance.
4      Q     I see.
5      A     So we could determine in what location they took
6   their basic sciences.
7      Q     And I see on this affidavit, if you go about
8   two-thirds of the way down, you see where it says I'm attaching
9   the following documentation.  Do you see that?
10     A     Yes.
11     Q     So this is an affidavit that also requests passports,
12  airline tickets, various documents, correct?
13     A     Yes.
14     Q     Okay.  Now at the hearing, when we arrived at the
15  hearing at the Rittenhouse Square in November 28th, we were
16  given a big black book of exhibits.  Are you familiar with the,
17  you know, that that happened?
18     A     Yes.
19     Q     Okay, and we hadn't seen that black book before the
20  hearing, correct?
21     A     No.
22     Q     No.
23     A     That's not correct.
24     Q     All right now, were affidavits in the hearing?  Were
25  affidavits in the black book at the hearing?
```

Case: 19-2706   Document: 45-2   Page: 383   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 199 of 340

17

```
1      A     Yes.

2      Q     Okay, a couple hundred of them, correct?

3      A     Yes.

4      Q     Okay, and many of them were redacted, were they not?

5      A     They were.

6      Q     Okay.  So our -- we were given affidavits purportedly

7  from our students with the names redacted, correct?

8      A     That's correct.

9      Q     Okay.  How are we supposed to investigate what those

10  students said in the affidavit?

11     A     We redacted the names of the students --

12     Q     Uh-huh.

13     A     -- but not the attendance dates information --

14     Q     Okay.

15     A     -- to demonstrate that there was a significant number

16  of students.

17     Q     Well, on a particular affidavit that was redacted,

18  was there any way for Dr. Tulp to contact that student to see

19  if the information was accurate?

20         MS. MCENROE:  Objection, Your Honor.  I just want to

21  -- I wasn't sure if the witness was finished with her last

22  answer before the question began.  I just want to --

23         THE COURT:  Were you finished with your answer?

24         THE WITNESS:  With respect to the affidavits?

25         THE COURT:  Correct.
```

1          THE WITNESS:  Yes.  Sorry.  Yeah, it's okay.

2          MS. MCENROE:  I'm sorry about that.

3   BY MR. REIL:

4      Q    Okay, so these affidavits were used by is it fair to

5   say the board or ECFMG to investigate irregular behavior

6   against Dr. Tulp?

7      A    So the affidavits were presented to the board of

8   trustee -- the redacted affidavits were presented to the board

9   of trustees to demonstrate that a significant number of the

10  students that had returned the affidavits to us indicated that

11  they did not do their basic sciences in Montserrat.

12         There were a number of affidavits that were also included

13  that were not redacted and those were specifically to show the

14  instances where Dr. Tulp has provided information that

15  conflicted with the affidavit information that we got from the

16  students.

17     Q    Did the -- I think there was a board of several

18  doctors if I remember.  Did they receive the affidavits prior

19  to the hearing?

20     A    Yes, they received the same materials that you

21  received.

22     Q    So the affidavits were used as an investigative

23  material by ECFMG to give to the board?

24     A    I mean, they were used as support --

25     Q    Okay.

Case 1:19-2706 Document 45-2 Page 385 Date Filed 01/16/2020
Case 2:18-cv-05540-WB Document 314-9 Filed 05/03/19 Page 199 of 304

SAppx0194

19

1      A    -- to the allegation that we made, yes.

2      Q    All right.  Okay, so ECFMG did the investigation in

3   this case and then they submitted it to the board of ECFMG,

4   correct?

5      A    Yes, ECFMG staff, that's our normal procedure in

6   these types of cases.

7      Q    So that there was no distinction in the way this

8   proceeding went, the proceeding for irregular behavior.  There

9   was distinct between the investigatory and the adjudicatory.

10  It was all ECFMG?  Do you understand my question?

11         MS. MCENROE:  Objection.  Objection, Your Honor, to

12  the extent it calls for a legal conclusion.  I'm not quite sure

13  counsel's getting at with that question.

14         THE COURT:  Sustained.

15  BY MR. REIL:

16     Q    Did ECFMG employ outside investigators?

17     A    I'm sorry?

18     Q    In the -- with reference to the irregular charges

19  against Dr. Tulp, did ECFMG employ outside investigators?

20     A    In our review of the school, yes.

21     Q    Okay, did they visit the school?

22     A    That's my understanding.

23     Q    They did?

24     A    Yes.

25     Q    Okay.  Did we receive at the hearing the identity of

```
 1    those investigators and any report from them?

 2         A    No.

 3         Q    Okay.  Now let me ask you this.  Okay, why don't you

 4    take a look at page 4, if you will, that's Exhibit B.

 5         A    Yes.

 6         Q    Would you tell the Court what that is?

 7         A    This, sir, is a -- appears to be a screenshot of the

 8    listing in the World Directory of Medical Schools for USAT.

 9         Q    Okay, and do you see there where it says, oh, about a

10    little more than a halfway down, note as of January 1st?

11         A    Yes, sir.

12         Q    Would you read that into the record?

13              MR. REIL:  It's short, Your Honor.

14    BY MR. REIL:

15         Q    Just that sentence and I'll have a follow up

16    question.

17         A    Yes.  "Note, as of January 1st, 2019, students and

18    graduates of this medical school with a graduation year of 2019

19    and later are not eligible to apply to ECFMG for ECFMG

20    certification, which also renders them ineligible to apply to

21    ECFMG for the United States medical licensing examinations as a

22    step towards ECFMG certification."

23         Q    Okay, and this went on this World Directory of

24    Medical Schools website?

25         A    I'm -- did you just ask me -- I'm sorry, did you ask
```

Case 1:19-2706 Document 45-2 Page 387 Date Filed 01/16/2020
Case 2:18-cv-05540-WB Document 31-49 Filed 05/03/19 Page 199 of 340

21

1    me if it was present there?

2         Q    Yes?

3         A    Yes.

4         Q    This is where --

5         A    Yes, it is.

6         Q    So students could see this, anybody could see it,

7    right?

8         A    Yes, correct.

9         Q    Okay.  Now the hearing involving irregular behavior

10   was on November 28th of 2018.  This was published, this meaning

11   the document that we just referred to here about the World

12   Directory of Medical Schools, this was put on the website well

13   before the hearing, wasn't it?

14        A    Yes.

15             THE COURT:  Let me clarify that.  When you say this

16   was put on the website, do you mean that the note was included

17   in the website entry or that the entry was included in the

18   website?

19             THE WITNESS:  The note, Your Honor, was published on

20   the entry.

21             THE COURT:  Prior to the hearing?

22             THE WITNESS:  Prior to the hearing, yes.

23   BY MR. REIL:

24        Q    All right.  All right, now let's talk about the

25   hearing on November 28th.  The hearing was supposed to take

1  place over a time span of 20 minutes, correct?

2       A    Yes, that's our usual procedure for --

3       Q    Right, right.

4       A    -- those types of hearings.

5       Q    Did the ECFMG Board of Physicians present any

6  witnesses at the hearing?

7       A    No, that -- we don't normally present witnesses at

8  our hearings.

9       Q    I see, did the ECFMG board present any documents at

10  the hearing?

11       A    No, the documents are always produced before the

12  hearing.

13       Q    Okay, what documents were produced at the hearing?

14       A    So we -- so ECFMG staff, whenever we have allegations

15  irregular behavior and individuals who are coming to make a

16  personal appearance as Dr. Tulp did, as a courtesy to them, we

17  always provide a copy of the materials that we have previously

18  sent to them at the meeting, so that if they are questioned

19  about a document, they can reference it there if they haven't

20  brought it themselves.

21       Q    At this particular point hearing on November 28th,

22  isn't it a fact, Ms. Corrado, that no documents were entered

23  into evidence at the hearing by ECFMG?

24            MS. MCENROE:  Objection, Your Honor.  To the extent

25  it calls for a legal conclusion, the concept of evidence sounds

```
 1    poor and legalish when this was more of an administrative

 2    proceeding by a private not-for-profit entity.

 3              MR. REIL:  If I may, Your Honor, this person's an

 4    attorney.  They've been involved in the situation.  I'm simply

 5    asking, and she was at the hearing, did she observe or did she

 6    acknowledge of any documents being entered into evidence at the

 7    hearing.

 8              THE COURT:  Is there any process whereby documents

 9    get introduced into evidence at such a hearing?

10              THE WITNESS:  No, we don't have a process like that.

11              THE COURT:  So in this case, there was no evidence

12    that was introduced into --

13              THE WITNESS:  No.

14              THE COURT:  -- there were no documents that were

15    introduced into evidence, because there was no process to do

16    that?

17              THE WITNESS:  Correct.

18              THE COURT:  Okay, go ahead.

19    BY MR. REIL:

20        Q    Testimony, Ms. Corrado, you were at the hearing.  Was

21    there any testimony entered -- was there any testimony

22    presented at the hearing?

23        A    No, because my recollection was that counsel would

24    not let Dr. Tulp give any testimony.

25        Q    All right.
```

24

```
1              THE COURT:  As in his counsel?

2              THE WITNESS:  As in his counsel.

3              THE COURT:  As in his counsel.

4    BY MR. REIL:

5         Q    Now in any of the materials that were sent to us from

6    ECFMG, did any of them address Dr. Tulp was being "tried" for

7    irregular behavior, did any -- do any materials from ECFMG

8    indicate which side Dr. Tulp or the board has the burden of

9    proof?

10        A    So our irregular behave -- we have a set of irregular

11   behavior procedures that were sent with the letter that details

12   the allegation.

13        We provided -- we list in the letter all of the

14   information that we have to support the allegation, evidence,

15   if you will and we provide that to the individual.  And then

16   the individual has to provide an explanation and can come to

17   the hearing to provide an explanation if they wish.

18        Q    ECFMG brought charges of irregular behavior against

19   Dr. Tulp.  Did they ever send out any sort of a letter, notice,

20   document to Dr. Tulp or his attorneys indicating who had the

21   burden of proof at the hearing?

22        A    We sent a letter that outlined the allegation and

23   asked for Dr. Tulp's response to that allegation.  We did not

24   use the phrase "you have the burden of proof", but we outlined

25   what the allegation is and asked for a response.
```

Case: 19-2706   Document: 45-2   Page: 391   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 314   Filed 05/03/19   Page 209 of 340

                                                                    25

```
1        Q     Okay.

2        A     And then presented him with an opportunity to appear

3    personally at the hearing to respond to the allegations of

4    irregular behavior and to answer any questions that our board

5    of trustees may have had.

6        Q     But nowhere in its description of the hearing did

7    ECFMG ever indicate that the burden of proof was on ECFMG or on

8    Dr. Tulp?  Do I have that right?

9        A     Yes.

10       Q     All right, now ECFMG sent us a -- sent us the -- Dr.

11   Tulp and his attorneys, they sent us a transcript of the

12   November 28th hearing.  Were you aware of that?

13       A     Yes.

14       Q     Okay, does it indicate anywhere in those 32 pages

15   that any evidence was introduced by ECFMG at the November 28th

16   hearing?

17             MS. MCENROE:  Your Honor, if I may object?  There is

18   a transcript of the proceeding that I would request be entered

19   into evidence to serve as the record of what actually happened

20   in that proceeding as the best evidence.

21             THE COURT:  Oh, you can do that in -- when you take

22   over the witness if you like.

23             MS. MCENROE:  Sure.

24             THE COURT:  You can continue to ask your questions.

25             MR. REIL:  Okay.  I happen to have a copy of the
```

1    transcript here, which I'd like to mark as Exhibit H, with the

2    Court's permission and show it to the witness?

3              THE COURT:  Go ahead.

4    BY MR. REIL:

5         Q    Ms. Corrado --

6              MR. REIL:  Oh, may the record reflect that I've

7    handed the witness the exhibit, that I've handed -- I think it

8    goes the other way around, I've handed the exhibit to the

9    witness, okay.

10   BY MR. REIL:

11        Q    All right, you have the transcript of the hearing

12   there, 32 pages.  Can you point to somewhere in the transcript

13   where ECFMG is offering any evidence against Dr. Tulp?

14             THE COURT:  I need you to ask a more focused

15   question.  You can't ask her to look through 32 pages of

16   transcript at this point.

17             MR. REIL:  Okay, all right.

18   BY MR. REIL:

19        Q    You were at the hearing, correct?

20        A    Yes.

21        Q    Okay, do you have any recollection of ECFMG through

22   its -- ECFMG entering any evidence into the record at the

23   November 28th hearing?

24        A    No, because we don't -- that's not part of our

25   process.  We provide the evidence in advance to both the board

 1    and the individual.

 2         Q    All right, and the hearing was terminated by Ms.

 3    McEnroe, correct?

 4         A    That's correct.

 5         Q    And is it fair to say, based on a administrative

 6    record that contains no evidence, that Dr. Tulp was found

 7    guilty of irregular behavior?

 8         A    I -- there was evidence presented at the meeting.  So

 9    I can't agree to that statement, because we did have evidence

10    presented to the parties before the meeting.

11         Q    At -- I'm talking about evidence in the record at the

12    hearing?  Was --

13         A    We --

14         Q    -- we established there wasn't.

15         A    We don't have a process to enter evidence on a record

16    at our administration meetings.

17         Q    But there's a transcript?

18         A    There's a transcript when an individual makes a

19    personal appearance, we have a court reporter and we will --

20         Q    All right.

21         A    -- transcribe the appearance, yes.

22         Q    All right.  Was Dr. Tulp found guilty, and I'll use

23    the word guilty because it's not a criminal case in quotes, was

24    Dr. Tulp found guilty of irregular behavior on November 28th

25    based on any evidence in the record?  And I'm talking about the

1    transcript.

2            THE COURT:  Let me clarify that, because I don't

3    think it's good to use the term guilty.  What is the term used

4    by --

5            MR. REIL:  Culpable, Your Honor.

6            THE COURT:  -- ECFMG in these contexts?

7            THE WITNESS:  We determined that he engaged in

8    irregular behavior.

9            THE COURT:  Okay.

10           THE WITNESS:  So we made a determination of irregular

11   behavior.

12   BY MR. REIL:

13       Q    My question is, is there anything in the -- from the

14   hearing or in the transcript that you recall that supports

15   that, any evidence in the record in the transcript?

16       A    We don't --

17       Q    I'm sorry.

18       A    In the transcript, no, but the transcript is not the

19   evidence -- it's not all of the evidence that we present.  When

20   someone makes a -- an appearance at the meeting, we take the

21   information that we have already collected.

22       And if they make a personal appearance, the committee can

23   consider the personal appearance that they make and any

24   statements that they make together to make a determination

25   about irregular behavior.

Case: 19-2706    Document: 45-2    Page: 395    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-4    Filed 05/03/19    Page 209 of 304    JA0204

29

1    So the determination was made on the basis of the

2    appearance and the evidence that we provided to the individual

3    and to the board members to review.

4        Q    Did Dr. Tulp say anything at the hearing?

5        A    I don't recall him saying anything at the hearing.

6        Q    We've used the phrase "irregular behavior" several

7    times here.  Can you explain to the Court what irregular

8    behavior is?

9        A    Yes, ECFMG generally defines irregular behavior as

10   any action or attempted action by an individual or on behalf of

11   an individual that could or would subvert the processes of

12   ECFMG.

13       So an example of an irregular behavior is providing false

14   information to ECFMG or providing false documents to ECFMG.

15           MR. REIL:  So if I may have a moment, Your Honor.

16   BY MR. REIL:

17       Q    If you would look at page 12, Exhibit 5.  Do you have

18   that?

19       A    Yes, yes, sir.

20       Q    That's a letter of November 21st from you, Ms.

21   Corrado --

22       A    Yes.

23       Q    -- to my co-counsel Mr. Swate?

24       A    Yes, sir.

25       Q    Okay.  And down I think in the last paragraph, it

1    says in support of its mission.  I'd like to read that and ask

2    you a follow up question.

3         A    Okay.

4         Q    All right.  "In support of its mission to protect the

5    public, individuals that have or have attempted to subvert

6    ECFMG's policies and procedures are subject to ECFMG's policies

7    and procedures on irregular behavior."  Are you defining

8    irregular behavior there?

9         A    In that particular sentence?

10        Q    Yes, generally.

11        A    I mean, we're saying individuals who have attempted

12   to subvert our policies and procedures are subject to the

13   irregular behavior policies and procedures.

14        Q    Okay.

15        A    And then we follow that with a link to the irregular

16   behavior policies and procedures, which has the definition of

17   irregular behavior contained within it.

18        Q    Well, is there something more to the definition of

19   irregular behavior than what I've just read?

20        A    There is a definition of irregular behavior included

21   in the irregular behavior policies and procedures, which is

22   mentioned in the next sentence in the link.

23        Q    Okay.

24        A    That had all the -- had already been provided to

25   counsel prior this November 21st letter.

Case: 19-2706    Document: 45-2    Page: 397    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 314    Filed 05/03/19    Page 209 of 340

31

1    Q    Other than -- what does the link, if you know --

2    A    Uh-huh.

3    Q    -- what does it add to what's in that sentence, what

4  I just read you?

5    A    I don't know it from the top of my head, but it

6  provides all of the definition of irregular behavior and all of

7  our policies and procedures about irregular behavior, what we

8  do when we allege irregular behavior, what the process is, et

9  cetera.

10    Q    Uh-huh.  Now how is an individual supposed to know

11  whether or not they've attempted to subvert ECFMG's policies

12  and procedures?  How is a person supposed to know that?

13          MS. MCENROE:  Objection, Your Honor.  Calls for

14  speculation or a hypothetical.

15          THE COURT:  Sustained.

16  BY MR. REIL:

17    Q    Is that the definition of irregular procedure I just

18  read, give fair notice to an individual of what they're being

19  accused of?

20          MS. MCENROE:  Objection, Your Honor.  Misstates

21  testimony.  I believe the witness just said that he had not

22  provided the whole definition of irregular behavior and she

23  could not recite it off the top of her head.

24          THE COURT:  Sustained.

25  BY MR. REIL:

Case: 19-2706   Document: 45-2   Page: 398   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 216 of 304

32

1    Q    All right.  And you can't tell us -- is there any

2    place where you can tell us if that -- let's strike that.

3         Is that is that definition of irregular behavior in your

4    letter to Dr. Swate, is that inaccurate?

5    A    Is my statement in the letter inaccurate?

6    Q    Yeah, what I just read in support of its mission?

7    A    No, no.

8    Q    Is that inaccurate?

9    A    No.

10   Q    Okay.  Okay, now the -- we went over I think it's

11   Exhibit B, the placement in the World Directory of Medical

12   Schools I'll call it.

13   A    Uh-huh.

14   Q    Was there any indication as to whether or not Dr.

15   Tulp would be allowed to bring that up at his hearing?

16   A    I don't know what Dr. Tulp would have brought up at

17   the hearing if he was --

18   Q    Well, let's put it this way.

19        THE COURT:  Let the witness finish.

20   BY MR. REIL:

21   Q    Yes.

22   A    If he testified, I don't know what he would have

23   brought up.

24   Q    Okay, did you ever indicate that the placement

25   involving the World Directory of Medical Schools was not a

Case: 19-2706   Document: 45-2   Page: 399   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 219 of 340

33

```
 1    subject for the hearing?

 2         A    What I indicated was that the note that we placed in

 3    the World Directory was not related to the allegation of

 4    irregular behavior.

 5         That is, it was related to our request for information

 6    from USAT.  USAT did not provide that information and we placed

 7    that note into the World Directory at that time.  It was not

 8    related to the allegations of irregular behavior.

 9         Q    I see.

10         A    So we did in the letter tell, I think, Mr. Swate.

11         Q    Well, let's look at that letter that you wrote to Mr.

12    Swate.  Would you go to page 23 of my exhibit pack.

13         A    Uh-huh.

14         Q    And I think that's the letter of 11/14/18 --

15         A    Uh-huh.

16         Q    -- to Dr. --

17              MR. REIL:  Yeah, and a lawyer, Your Honor --

18    BY MR. REIL:

19         Q    -- to Dr. Tommy Swate?  It's under Exhibit G.

20         A    Uh-huh.

21         Q    Do you have that?

22         A    I do.

23         Q    Okay, by the way, at this hearing, were any witnesses

24    from the USAT besides Dr. Tulp allowed to be present?

25         A    You mean on behalf of Dr. Tulp or?
```

Case: 19-2706    Document: 45-2    Page: 400    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-9    Filed 05/03/19    Page 215 of 304

34

1        Q    Yes, on the 28th.

2        A    So no.

3        Q    No, okay, all right.  How about students from the

4    USAT?  Were they allowed to be present and testify?

5        A    No, but that's part of our normal process when --

6        Q    I see.

7        A    -- we have an allegation of irregular behavior, we

8    don't let -- we don't typically permit anyone to bring

9    witnesses.

10        Q    Okay, if you take a look at page 23 --

11        A    Uh-huh.

12        Q    -- in the letter of November 14th, 2018 to Mr. Swate?

13        A    Uh-huh.

14        Q    All right, down one, two, three, four paragraphs.

15        A    Uh-huh.

16        Q    Fourth paragraph, the second sentence, all right.

17    Let me read it to you and I'll have a follow up question.

18        A    Okay.

19        Q    It says, you write, "Nor is there any right to a

20    hearing with ECFMG for USAT for any matter."  It's the next

21    sentence I'm interested in.

22        "ECFMG will not entertain any request to review the

23    actions that is taken with respect to USAT's sponsor note at

24    Dr. Tulp's irregular behavior here."  And that's sponsor note,

25    we're talking about the Exhibit B we've already discussed,

Case: 19-2706    Document: 45-2    Page: 401    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-14    Filed 05/03/19    Page 215 of 384

35

```
 1    right?

 2         A    That's correct.

 3         Q    Okay, now that decision to exclude that evidence from

 4    the hearing, did Dr. Tulp have any input in that?

 5         A    Well, I sent it to his attorneys, so.

 6         Q    Okay.  Well, was there a procedure whereby he could

 7    object to that?

 8         A    There's no such procedure.

 9         Q    I see.

10              MR. REIL:  Could I have one moment, Your Honor?

11              THE COURT:  Mike, can you put that computer down on

12    the thing, on the podium?  Put it down, I can't see.

13              MR. REIL:  That's all the questions I have of this

14    witness at this time, Your Honor.

15              THE COURT:  Cross?

16              Not that one.  This one.  This one here.  Thank you.

17    And maybe put the microphone down.

18              MS. MCENROE:  Your Honor, I was actually going to ask

19    if I could approach and approach the witness from the lectern

20    if that's okay with you?

21              THE COURT:  That's fine, that's fine.  I just

22    couldn't see above the computer monitor.

23              MS. MCENROE:  Neither can I.  So thank you.

24         (Counsel confer)

25              MS. MCENROE:  May I approach the lectern, Your Honor?
```

Case: 18-2706    Document: 45-2    Page: 402    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 314-9    Filed 05/03/19    Page 219 of 340

36

```
 1              THE COURT:  You may.
 2                        CROSS-EXAMINATION
 3   BY MS. MCENROE:
 4         Q    Good afternoon, Ms. Corrado.
 5         A    Hi.
 6         Q    You understand I'm counsel for the Educational
 7   Commission for Foreign Medical Graduates and Dr. Pinsky today?
 8         A    Yes.
 9         Q    I'd like to ask you a couple questions about the
10   areas of testimony you were just asked about.
11         A    Yes.
12         Q    First, I'd like to give you a chance to clarify, if
13   you'd like to, about whether or not you are an attorney?
14         A    I am not an attorney.  I have a law degree, so I'm
15   not a practicing attorney.
16         Q    Early on in the questioning from counsel for Dr.
17   Tulp, you were asked to question about the relationship, if
18   any, between ECFMG and Dr. Tulp, do you remember that
19   testimony?
20         A    Yes.
21         Q    In particular, you were asked if there was a contract
22   or any other kind of agreement.  Do you understand that
23   testimony?
24         A    Yes.
25         Q    How is it that ECFMG has interfaced, if at all, with
```

1    Dr. Tulp?

2        A    Dr. Tulp is one of the -- what we refer to as our

3    authorized signatory for USAT.  So he -- I believe, and I'm

4    sorry if I get your title wrong, is the president and the dean

5    of USAT.

6        As such, he can certify documents or he was able to

7    certify documents and information to ECFMG on behalf of the

8    medical school.

9        For international medical schools that we interact with,

10   we will, once the school has established that it meets the

11   requirements for its students and graduates to be eligible for

12   ECFMG certification, we typically communicate with the school

13   officials, collect the information that we need from them in

14   order to be able to process the applications and the

15   certifications of their students.  So in that way, we have

16   communicated with Dr. Tulp since I believe around 2003.

17       Q    So speaking nuts and bolts in terms of Dr. Tulp doing

18   anything --

19       A    Uh-huh.

20       Q    -- that comes to ECFMG --

21       A    Uh-huh.

22       Q    -- can you explain that a little bit more just from a

23   practical standpoint?

24       A    Yes, so the individuals who are students and

25   graduates of international medical schools would apply to ECFMG

Case: 19-2706 Document: 45-2 Page: 404 Date Filed: 01/16/2020
Case 2:18-cv-05540-WB Document 314 Filed 05/03/19 Page 216 of 304

38

1    to take the United States medical licensing examinations and

2    also need to submit their credentials, which includes their

3    final medical diploma and their final medical school

4    transcript.

5        ECFMG has to authenticate that information.  We need to

6    authenticate whether you're actually a student at a school or

7    not.

8        And so Dr. Tulp would sign off on applications, saying to

9    ECFMG essentially this -- yes, this person is a student or is a

10   graduate at USAT and they've completed their basic sciences.

11       In the same way, he would complete forms for diplomas.

12   Yes, this diploma is authentic and fill out the information

13   that we require to verify the credentials of students and

14   graduates.

15       Q    You testified in response to questions from counsel

16   about a finding of irregular behavior as against Dr. Tulp; is

17   that correct?

18       A    That's correct.

19       Q    Could you explain what action, if any, ECFMG took as

20   a result of that finding of irregular behavior against Dr.

21   Tulp?

22       A    Yes, so ECFMG put a sanction on Dr. Tulp for a

23   minimum of five years that we will not accept any documents

24   from -- signed or certified by Dr. Tulp on behalf of USAT or

25   any other medical school for that period of time.

Case: 19-2706    Document: 45-2    Page: 405    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 314-9    Filed 05/03/19    Page 219 of 340

39

```
 1        After that period of time expires, we will consider

 2   accepting Dr. Tulp as a signatory again for medical school if

 3   he meets certain requirements.  And I'm sorry I don't have

 4   them.  I can't remember them off the top of my head, but

 5   basically, that he satisfies the requirements that we have,

 6   conditions that we have, to be able to accept him again.

 7        Q    Is it fair to say that the action taken by ECFMG in

 8   light of the finding of irregular behavior with respect to Dr.

 9   Tulp was limited to his role as an authorized signatory on

10   behalf of USAT to ECFMG?

11        A    Yes, that's correct, I mean, if he still signs

12   transcripts for students, we wouldn't reject a transcript

13   because that's an official document of USAT, but we would need

14   another official from USAT to authenticate it.

15        Q    And really just briefly, what is the process or how

16   hard is it to get somebody else to be, sorry, an authorized

17   official from USAT?

18        A    We -- I mean, it's not that hard.  We would just

19   reach out to the medical school to ask who would be able to

20   sign off for the school --

21        Q    For --

22        A    -- for just our, you know, vice dean, things like

23   that.

24        Q    So USAT would not be disqualified then from having an

25   authorized signatory?
```

Case: 19-2706    Document: 45-2    Page: 406    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-4    Filed 05/03/19    Page 216 of 304 SAppx0215

40

1      A    Correct, that's correct.

2      Q    You were asked some questions about a black binder --

3      A    Yes.

4      Q    -- being given to counsel for Dr. Tulp at a November

5   28th hearing.  Do you remember that?

6      A    Yes.

7      Q    And I couldn't catch it in the testimony about your

8   explanation about whether those materials had been provided to

9   Dr. Tulp prior to the proceeding.  Could you explain that?

10     A    Yes, so we provide the materials to individuals prior

11  to the hearing.  Those materials were sent via email to Dr.

12  Tulp's counsel.

13     And I got an acknowledgement that they were received by

14  email, but I also sent them by a hard copy by Federal Express,

15  too.

16     Q    There was some discussion, sorry, there was some

17  discussion about certain materials being redacted in the

18  materials provided to Dr. Tulp.

19     A    Uh-huh.

20     Q    Can you explain why, please?

21     A    So we put about over 300, I think, affidavits in the

22  materials.  And we redacted their names, the individuals' names

23  on that bundle and their identification numbers, because we

24  wanted to -- we just wanted to make sure that we're protecting

25  the privacy of those students and that there would be no

1   adverse action taken against them for providing the information

2   to ECFMG.

3       Q    And what was the purpose of sending the students

4   those affidavits?

5       A    We sent the affidavits to the students, because we

6   wanted to determine where they had done their basic sciences.

7   We had had information that USAT was operating a campus in the

8   United States in Florida.  And Dr. Tulp had indicated that that

9   was not correct.

10      So we still were getting information contrary to that.  So

11  we decided to send the affidavit to the students to get

12  information from the students about where they actually did

13  their basic sciences.

14      Q    Why, if at all, was it a concern for ECFMG about

15  where the USAT students took their basic sciences?

16      A    So ECFMG has requirements about the medical schools

17  that we will accept and --

18          MR. REIL:  Objection.  Beyond the scope of my

19  examination.

20          THE COURT:  Overruled.

21  BY MS. MCENROE:

22      Q    You may answer.

23      A    Okay, sorry.  So we have requirements around, you

24  know, what international medical school is.

25      In fact, an international medical -- we define an

Case: 19-2706    Document: 45-2    Page: 408    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 314    Filed 05/03/19    Page 226 of 340

42

1    international medical graduate as an individual who has

2    received their education outside of the -- their medical

3    education outside of the United States and Canada.

4            And so we have requirements from the government

5    officials where the school is located that the school has to

6    meet.

7            So the school has -- the government has to say, yes,

8    essentially, I'm sort of oversimplifying, but the government

9    has to say, yes, this is a medical school.  You recognize it as

10   such.  And its graduates are eligible for licensure in our

11   country.  And then ECFMG will recognize that.

12           But if the school has a branch campus outside of that

13   country, we also require the branch campus country to provide

14   that same type of information.  Do you recognize it as a

15   medical school?  And are its graduates eligible to practice in

16   your country?

17           So if you were having only classes in the United

18   States, we would need that documentation from the United

19   States, but also, you might be a United States school.

20   Q    So you were asked some questions about the role and

21   purpose of ECFMG?  At the beginning of your testimony, you

22   remember being asked that?

23   A    Yes.

24   Q    And can you explain a little bit more about why it's

25   concern to ECFMG, for example, if there were to be

1   predominantly education in the United States that you were just

2   talking about?

3       A    So, you know, if the person is educated only in the

4   United States, then they may not be considered an international

5   medical graduate.  So they might not even be eligible or

6   subject to ECFMG certification if they're not an international

7   medical graduate.

8       If they went to medical school in the United States, and

9   my understanding is they would have to go to a school that was

10  accredited by the LCME, which is the Liaison Committee on

11  Medical Education.

12      So we have to make sure that we're not, you know, we are

13  dealing with international medical graduates only because that

14  is our scope.  That is what we are authorized to deal with.

15      Q    Does ECFMG certify U.S.-based medical school

16  graduates?

17      A    No.

18      Q    So you -- ECFMG wouldn't grant a certificate to a

19  Penn Med grad?

20      A    No, correct, we would not.  We could not.

21      Q    There was some discussion, jumping to back to the

22  hearing that you were asked some questions about, you remember

23  the November 28th hearing?

24      A    Yes.

25      Q    There was some discussion about a sponsor note in the

44

1   World Directory.  And I believe you read some -- a note from

2   that language out into the record.  Do you remember that?

3        A    Yes, uh-huh.

4        Q    And there was a question about the sequence of

5   events.  Could you explain a little bit more in terms of the

6   note and the sponsor note, I'm sorry, in the World Directory

7   with regards to USAT vis a vis the irregular behavior

8   proceeding against Dr. Tulp?

9        A    Right.  So when we became aware that there was a

10  possibility that there was a campus in the United States for

11  USAT, we reached out by letter officially to USAT to ask.  We

12  said we understand there's campus in the United States.  Can

13  you please provide us with the documentation from the

14  Department of Education that authorizes you to have a medical

15  school and to conduct your activities in the United States?

16       And we got a response that that was not accurate.  We

17  talked about the affidavit process.  We asked the information

18  from the students.

19       And around, I think it was October 18th, when we had asked

20  for the documentation from USAT about the -- its U.S. branch

21  campuses I had not receive it, then we made a determination

22  that we could not accept students and graduates from that

23  medical school.  That would be effective Jan. 1, 2019.

24       We notified the students.  We put the note in the

25  directory, but that action was related only to not receiving

```
 1      the documentation from the United States officials that the

 2      school was recognized in the United States.

 3           And we offered in a letter, so if you get the

 4      documentation, give us the documentation so we can consider, we

 5      can reconsider the sponsor note.

 6           Q    To date, has ECFMG gotten such documentation

 7      regarding authorization for USAT to conduct education in the

 8      United States?

 9           A    No.

10           Q    Do you have an estimate of how many times ECFMG has

11      asked for such documentation?

12           A    Um --

13           Q    Would it be fair to say multiple times?

14           A    Multiple, yeah, I mean, more than once.

15           Q    What is the purpose of a sponsor note in the World

16      Directory just briefly?

17           A    So the sponsor note, the World Directory of Medical

18      Schools is a listing of the world's medical schools.  And there

19      are over 3,000 medical schools in the world.  We do not accept

20      grad -- you know, we do not accept graduates from all 3,000.

21           There are a subset of those medical schools whose

22      graduates are eligible to apply to ECFMG for certification,

23      which means ultimately, they're allowed to continue to try and

24      practice medicine in the United States.

25           We used a sponsor note in the World Directory on a medical
```

```
1    school to indicate to the public and to the students and

2    graduates of that school whether or not those students and

3    graduates are eligible to apply to ECFMG for certification.

4        So it's the way in which we communicate publicly the

5    eligibility, if you will, of the school's graduates to start

6    the process of ECFMG certification.

7        Q    And I'd like to direct your attention in the packet

8    of exhibits that were given to you by counsel?

9        A    Uh-huh.

10       Q    Back to Exhibit E, which is the sponsor note.

11       A    Uh-huh.

12       Q    Let me know when you have it?

13       A    Okay, I have it.

14       Q    And it's fair to say earlier, you testified this is a

15   copy of the sponsor note for USAT?

16       A    Yes, uh-huh.

17            MS. MCENROE:  Your Honor, I'm not sure that this got

18   admitted into evidence.

19            THE COURT:  It did not.

20            MS. MCENROE:  So I'd like to move for its admission?

21            THE COURT:  Any objection?

22            MR. REIL:  No, Your Honor.

23            THE COURT:  It's admitted.

24       (Defendant's Exhibit E admitted into evidence)

25   BY MS. MCENROE:
```

1    Q    Ms. Corrado, if you could just very briefly, I know

2  you were directed to one portion of this document.  I'd like to

3  direct your attention up a little bit higher.

4    A    Uh-huh.

5    Q    There's a list of graduation -- there's a range from

6  2003 to 2018.

7    A    Uh-huh.

8    Q    What is that indicative of?

9    A    That is the listing of the graduate -- the graduation

10 years for which ECFMG will accept graduates of this school.  So

11 in other words, it's not just that your school is listed in the

12 World Directory with our sponsor note.  Your school has to be

13 listed and your graduation year has to be listed.

14      So if you graduated in 2005, we will still accept the 2005

15 graduate from USAT.  But if you graduated in 2020, currently,

16 we will not accept your application for certification.

17    Q    So I just want to make sure it's clear.  So is it

18 true that today, ECFMG would still accept, for example, 2018

19 USAT grads --

20    A    Yes.

21    Q    -- for certification if they meet all the other

22 requirements?

23    A    Yes.

24    Q    And are there enhanced procedures on USAT applicants?

25    A    There are.

48

1       Q    Can you explain what that means?

2       A    Yes, so the affidavit process that we touched on

3    earlier is a requirement for USAT students and graduates

4    currently.

5       Essentially, in order to receive ECFMG services, they need

6    to complete that affidavit and submit to ECFMG.  And once ECFMG

7    has reviewed it and accepted it, then we will continue to

8    provide services to those graduates and students.

9       Q    So looking back to the November 28th hearing and I'll

10   try to be quick.

11           THE COURT:  Hang on, wait.  So the note talks about

12   students and graduates of this medical school with a graduation

13   year of 2019.  You see that?

14           THE WITNESS:  Yes.

15           THE COURT:  When is -- when would students of USAT

16   normally graduate?  What month in 2019?

17           THE WITNESS:  I don't know, Your Honor, when they

18   would normally graduate.  This note is meant to indicate that

19   as of the first of this year, 2019, we will not accept any

20   graduates.

21           THE COURT:  Do you know whether there have been any

22   graduates of USAT in 2019?

23           THE WITNESS:  I do not know that, Your Honor.

24           THE COURT:  Go ahead.

25           MS. MCENROE:  Thank you, Your Honor.

Case: 19-2706    Document: 45-2    Page: 415    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 229 of 304

49

BY MS. MCENROE:

     Q    So moving back to the November 28th hearing, you were
asked a number of questions about submission into evidence and
other procedural events at the November 28th hearing.

          Just very briefly, can you estimate or how many years have
you been attending or participating in this kind of irregular
behavior proceeding with personal appearances on behalf of
ECFMG?

     A    Sure, 10.

     Q    And so you say 10 years?

     A    10 years, yes, sorry.

     Q    And an estimate of, if you can ballpark, how many of
these kind of proceedings you participated in?

     A    So 30.

     Q    And so, just very briefly, in terms of the process at
the hearing, I know that there was some testimony that it's a
20-minute hearing.  Can you please explain the expected
process --

     A    Sure.

     Q    -- of that type of hearing?

     A    Sure, so when an individual makes a personal
appearance before the board of trustees, we give a very
brief -- staff will give a very brief outline of the allegation
as -- of the irregular behavior.

          The individual will be given approximately 20 minutes to

Case: 19-2706    Document: 45-2    Page: 416    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-9    Filed 05/03/19    Page 226 of 304

50

```
 1    provide a statement, if they will.  Usually, they have an
 2    opening statement.  They can have counsel there with them if
 3    they want.
 4         Once they've concluded their opening statement, then the
 5    board is able to ask questions.  They'll generally ask
 6    questions of the individual.
 7         Once the questioning is finished, the individual's invited
 8    to give a closing statement and then they're excused from the
 9    hearing.
10         Q    In your experience, based just from your view, what
11    is the purpose of that hearing?
12         A    The --
13              MR. REIL:  I'm going to object, Your Honor, to the
14    extent that we're talking about hearings other than Dr. Tulp's
15    hearing, I don't think it's relevant.
16              MS. MCENROE:  That's fair, Your Honor.  I can
17    withdraw the question and ask it a different way.
18              THE COURT:  Go ahead.
19    BY MS. MCENROE:
20         Q    Ms. Corrado, what was the purpose of Dr. Tulp's
21    hearing on November 28th?
22         A    He was -- has a right to a personal appearance, which
23    he elected to take.  And the purpose would be for him to
24    provide his explanation about the allegation and to answer any
25    questions that the committee would have for him.
```

Case: 19-2706    Document: 45-2    Page: 417    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-4    Filed 05/03/19    Page 225 of 340

51

1      Q    We already discussed briefly the materials provided

2   to him in advance of the hearing.  In your view, did you expect

3   that additional evidence would be submitted by ECFMG at that

4   hearing?

5      A    No.

6            MR. REIL:  Objection.

7            THE COURT:  Basis?

8            MR. REIL:  I think, Your Honor, in her personal view

9   here, I'm not sure how that relate -- I don't think it's

10  relevant.

11           THE COURT:  Re-ask the question.

12  BY MS. MCENROE:

13     Q    Sure.

14           THE COURT:  Different way.

15  BY MS. MCENROE:

16     Q    Did it surprise you, based on your experience of

17  having gone to over 30 of these hearings in the past 10 years,

18  that ECFMG did not present any additional materials beyond the

19  black binder --

20     A    No.

21     Q    -- at the hearing of Dr. Tulp?

22     A    No.

23           MR. REIL:  Objection to whether the witness was

24  surprised.  Ask that it be rephrased.

25           THE COURT:  Overruled.

```
 1              Go ahead.

 2              THE WITNESS:  No, I was not surprised.

 3              MS. MCENROE:  Your Honor, I have nothing else on

 4    cross at this time.  I will have additional questions for the

 5    witness.  So it's at your prerogative if you'd rather me have

 6    the witness on the stand once.

 7              THE COURT:  Let's just get, yeah, let's get this --

 8    you now got the witness on direct in your case.

 9              MS. MCENROE:  Great.

10              THE COURT:  Go ahead.

11              MS. MCENROE:  Thank you, Your Honor and I'll be as

12    brief as I can.

13                         DIRECT EXAMINATION

14    BY MS. MCENROE:

15         Q    Ms. Corrado, why did ECFMG change the sponsor note

16    for USAT in the World Directory?

17         A    We changed the sponsor note in the World Directory,

18    so that we could let students know what the status of the

19    school was.

20         And the note was changed because we did not have the

21    documentation from USAT from the Department of Education in

22    Florida or the other states where they were operating that

23    authorized their school in those states.

24         Q    And why did ECFMG allege irregular behavior against

25    Dr. Tulp?
```

1      A      When we asked Dr. Tulp if he had a -- that we -- I'm

2    sorry, we asked -- we advised Dr. Tulp that we understood that

3    he had a -- that USAT had a campus in Miami and we asked for

4    the documentation in a letter on August 21st.

5         And the response that we got from Dr. Tulp was that it is

6    not a campus.  There was not -- education was not occurring

7    there.  It was an administrative site only.

8         So when we got the affidavits from the students that

9    essentially said they all took their classes in Miami or some

10   other location in the United States, and had not gone to

11   Montserrat, that conflicted with the information that Dr. Tulp

12   had given us.  And then in our view, that was providing false

13   information to ECFMG.  So we alleged irregular behavior.

14     Q      Just briefly, could you explain how this concern came

15   to the attention of ECFMG regarding the location of the

16   education for USAT?

17     A      Sure.  In roughly the summer of 2017, ECFMG, we were

18   conducting a project to re-verify a number of medical schools

19   located in the Caribbean.  And we were doing research on them.

20   And we had not gotten any information back from Montserrat

21   regarding USAT.

22        And our team was looking into it and found a number of

23   videos online that seem to indicate that --

24          MR. REIL:  Objection to what the team found.  It's

25   hearsay.

```
 1                 THE COURT:  Sustained.

 2                 MR. REIL:  And --

 3                 THE COURT:  Sustained.

 4                 MR. REIL:  -- I don't think it's -- it's not based on

 5     the witness' personal knowledge.

 6                 THE COURT:  Sustained.

 7                 MR. REIL:  I'm sorry, Your Honor.  I didn't hear.

 8                 THE WITNESS:  So we got an inkling that was some

 9     activity happening in the United States.  We did some research.

10     We -- but ultimately, we got an email on August 8th of 2018

11     from a prospective parent of a USAT student, who said my son is

12     going to --

13                 MR. REIL:  Objection to what a prospective parent

14     said.

15                 THE COURT:  Sustained.  Sustained.

16                 THE WITNESS:  So then, we requested USAT to provide

17     us with documentation about their Miami campus.

18     BY MS. MCENROE:

19         Q    And you mentioned doing some re-verification of

20     schools in the Caribbean?

21         A    Uh-huh.

22         Q    Very briefly, why was ECFMG doing that?

23         A    So ECFMG had done another investigation on another

24     medical school.  And we wanted to reach out to make sure that

25     that medical school still had its -- met the eligibility
```

Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 239 of 304

55

1   requirements.  And at the same time, we decided to do an

2   eligibility requirement for all of the schools in that area.

3       And we are targeting actually different areas of the world

4   moving forward to re-verify information that we previously

5   received for schools.

6       Q    There's been some discussion of the change of the

7   sponsor note and the finding for irregular behavior against Dr.

8   Tulp.

9       We're just wondering what, if any impact, you know of

10  those actions having been on students of USAT, how that's

11  impacted them in any way?

12      A    My -- the students -- if the students did not

13  graduate by December of 2018, then the students would have to

14  transfer to other medical schools if they wanted to continue to

15  take USMLE examinations and to pursue ECFMG certification, but

16  those who had graduated prior are moving through the pipeline.

17      Q    And those students, you said if they wanted to

18  proceed through USAT USMLE examinations, if they had

19  transferred, what if any impact on their prior credits taken on

20  USAT being eligible for ECFMG certification, what impact if any

21  would that have been?

22      A    Well, so they -- their -- they would be able to

23  transfer their prior credits from USAT to whatever their new

24  medical school is.

25      Q    Do you have any understanding of what impact ECFMG's

1    actions vis a vis the sponsor note and the World Directory were

2    -- as to Dr. Tulp would have on the ability for USAT to provide

3    medical education generally to students in Montserrat, who have

4    no inclination of coming to ECFMG?

5        A    Yeah, they --

6             MR. REIL:  Objection to the question.  It's compound

7    and I think there has to be a foundation that the witness has

8    some personal knowledge here.  She's not in as an expert.

9             MS. MCENROE:  I'll withdraw the question then.

10            THE COURT:  Okay.

11   BY MS. MCENROE:

12       Q    Ms. Corrado, we were talking briefly about

13   recertification in the Caribbean.  Do you remember that?

14       A    Uh-huh.

15       Q    And you mentioned another school that had gone

16   through a process of investigation.  What school was that?

17       A    Atlantic University School of Medicine in St. Lucia.

18       Q    And was --

19            THE COURT:  And I'm sorry, in where?

20            THE WITNESS:  In St. Lucia.

21   BY MS. MCENROE:

22       Q    And was there any finding of irregular behavior as to

23   any medical school official in that --

24       A    Yes.

25       Q    -- investigation?

Case: 19-2706  Document: 45-2  Page: 423  Date Filed: 01/16/2020
Case 2:18-cv-05540-WB  Document 31-49  Filed 05/03/19  Page 239 of 340

57

```
 1        A     Yes.

 2        Q     And what was the action or what was the finding, if

 3   any, of the -- ECFMG with respect to that medical school

 4   official?

 5        A     The --

 6              MR. REIL:  Objection to another investigation.

 7   Relevance.

 8              THE COURT:  Relevance?

 9              MS. MCENROE:  Your Honor, I'm just trying to

10   establish there's a precedent here for how ECFMG conducted

11   itself.

12              THE COURT:  Overruled.  Go ahead.

13              THE WITNESS:  So ECFMG found that officials and

14   employees of the university had engaged in irregular behavior.

15   And they were similarly sanctioned in that.

16              They are -- they have been -- we will not accept

17   documents certified by those officials for a minimum of five

18   years after which they have to meet certain requirements if we

19   will consider them again for that school or for any other

20   medical school.

21        Q     We also talked briefly a little earlier when looking

22   at the sponsor note about enhanced procedures on students at

23   USAT.  Do you remember that?

24        A     Yes.

25        Q     And you mentioned that pertained to the affidavit
```

58

1    process; is that correct?

2        A    That's correct.

3        Q    Was -- has ECFMG ever used a similar enhanced

4    procedure on any other medical school?

5        A    Yes, in the case of the Atlantic University School of

6    Medicine for one, but others as well.

7        Q    And in any of those other circumstances when ECFMG

8    has imposed enhanced procedures involving these affidavits, has

9    it ever been that there were then no findings of irregular

10   behavior or no changes to a sponsor note as a result?

11       A    Yes.

12       Q    Has ECFMG ever investigated other medical schools

13   where there was communication with the medical school about a

14   change to a sponsor note and then the medical school was able

15   to provide ECFMG with the information sought?

16       A    Yes, there has.

17       Q    And then in that circumstance, was there any change

18   to the medical school listing the sponsor note?

19       A    Yes, we updated the sponsor note.

20       Q    To reflect?

21       A    To reflect that the graduates were eligible once

22   again for certification.

23       Q    Was it your intention if that information had been

24   provided that was requested from Dr. Tulp with regards to the

25   eligibility -- sorry, authorization to have medical school

education in the United States been provided to ECFMG that ECFMG would do the same thing in this circumstance?

A Yes.

MS. MCENROE: I have no further questions at this time.

THE COURT: Mr. Reil, you have redirect on your own witness and cross on Ms. McEnroe's witness.

MR. REIL: Brief redirect, Your Honor.

THE COURT: Go ahead.

REDIRECT EXAMINATION

BY MR. REIL:

Q You just gave some testimony, Ms. Corrado, concerning the affidavits, Exhibit D, the affidavits of these students filled out that ECFMG sent to them. Would you take a look at that affidavit on page 10? I have a question on it.

A I have it, sir.

Q Okay, did ECFMG in that affidavit threaten the students with irregular behavior if they didn't fill out the affidavit?

A No, sir.

Q If you go to page 11 there. Okay, if you go down on page 11 to I guess the second to the last paragraph, where it says ECFMG reserves the right. Do you see that?

A Uh-huh.

Q Please read it into the record, that sentence.

Case: 19-2706    Document: 45-2    Page: 426    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-49    Filed 05/03/19    Page 238 of 304

60

1    A    "ECFMG reserves the right to bring allegations of

2    irregular behavior against you in accordance with its policies

3    and procedures showing ECFMG obtained information that

4    indicates that you have engaged in irregular behavior with

5    respect to any documentation submitted as part of this

6    process."

7    Q    All right, now what was the purpose of ECFMG putting

8    the -- that language with the affidavit?

9    A    This is to serve as a reminder to those students that

10    they need to provide correct and accurate information to ECFMG.

11    And that if they don't, they could be subject to our irregular

12    behavior procedures.

13    Q    What if they didn't fill out the affidavit?

14    A    There were a number of students that didn't fill out

15    the affidavit.  They -- we just don't -- we won't provide

16    services to them until they fill it out.

17    Q    I see.  All right, when you say you won't provide

18    services to them, if you don't provide services to them, that

19    means they'll never be able to become a practicing physician in

20    the United States, am I correct?

21    A    It means they won't be able to proceed to get ECFMG

22    certification.

23    Q    ECFMG certification is necessary for a foreign

24    medical student to practice as a physician in the United

25    States?

Case: 19-2706   Document: 45-2   Page: 427   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-19   Filed 05/03/19   Page 239 of 304   A0236

61

```
 1            MS. MCENROE:  Objection, Your Honor.  Asked and
 2    answered and also to the extent it purports to seek a legal
 3    conclusion.
 4            MR. REIL:  I'll withdraw the question, Your Honor.
 5    BY MR. REIL:
 6       Q    Okay, there was some testimony that was elicited
 7    before my examination where you were asked about a campus.  Do
 8    you remember that?
 9       A    Yes.
10       Q    Does ECFMG define anywhere in its policies or
11    procedures what a campus is?
12       A    Not to my knowledge.
13            MR. REIL:  That's all I have, Your Honor.
14            THE COURT:  Okay, thank you very much.  You can leave
15    the stand.
16            THE WITNESS:  Thank you, Your Honor.
17         (Witness excused)
18            THE COURT:  We're going to take a five-minute break
19    and get back and have Ms. Cover on the stand ready to go when
20    we get back in.
21            THE COURT RECORDER:  All rise.
22            THE COURT:  Thank you.
23         (Recess at 3:21 p.m., until 3:32 p.m.)
24            THE COURT RECORDER:  All rise.
25            THE COURT:  Okay, Mr. Reil, the witness please?
```

Case: 19-2706   Document: 45-2   Page: 428   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 240 of 304

62

```
 1            THE COURT RECORDER:  Please raise your right hand.
 2     State and spell your name for the record?
 3            THE WITNESS:  Lisa Brenda Cover, L-I-S-A C-O-V-E-R.
 4                          LISA COVER
 5     called as a witness for the Plaintiff, having been duly sworn
 6     testified as follows:
 7            THE COURT:  Have a seat.  Your witness?
 8            MR. REIL:  Your Honor, at this point, we have decided
 9     not to examine Ms. Cover.
10            THE COURT:  Oh, okay.
11            MR. REIL:  With no objection if the Court allows.
12            THE COURT:  Would you -- Ms. McEnroe, would have
13     brought in Ms. Cover in your case in chief?
14            MS. MCENROE:  No questions.
15            THE COURT:  Okay, you can leave the stand.
16            THE WITNESS:  Thank you.
17         (Witness excused)
18            THE COURT:  Okay, let's have -- would you want -- do
19     you want to put Mr. Tulp on -- Dr. Tulp on the stand?
20            MR. REIL:  Yes.  And with the Court's permission,
21     Attorney Swate will examine Dr. Tulp.
22            THE COURT:  Go ahead.
23            THE COURT RECORDER:  Raise your right hand.  State
24     your name for the record?
25            THE WITNESS:  Dr. Orien Lee Tulp.
```

Case: 19-2706    Document: 45-2    Page: 429    Date Filed: 01/16/2020    40238
Case 2:18-cv-05540-WB    Document 31-19    Filed 05/03/19    Page 249 of 304

63

```
 1                         ORIEN TULP

 2    Plaintiff, having been duly sworn testified as follows:

 3              THE COURT:  Have a seat.

 4              Your witness.

 5              MR. SWATE:  If it please the Court.

 6                        DIRECT EXAMINATION

 7    BY MR. SWATE:

 8         Q    Dr. Tulp, what is your professional position

 9    currently?

10         A    I'm president of the University of Science, Art, and

11    Technology.

12         Q    And that's USAT?

13         A    That's USAT.

14         Q    And how long has USAT been in operation?

15         A    15 years, 4 months.

16         Q    All right, are you a part owner of USAT?

17         A    Yes.

18         Q    What credentials that you have, just briefly, to

19    support your position at present?

20         A    There -- I have a Ph.D., two PhDs, an M.D.  And I've

21    been active as a professor for over 40 years.

22         Q    Now for most of your professional life, 43 years, do

23    you -- what, a military officer?

24         A    Yes, I was.  I served in the United States Army,

25    active in Reserve components 43 years, 5 months, and 26 days.
```

Case: 19-2706   Document: 45-2   Page: 430   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 242 of 304

64

1       Q    Did you receive any awards?

2       A    Yes, I have many.

3       Q    Well, just a couple?

4       A    Including the Congressional Award of Regional Merit,

5  including three meritorious service awards, two from the

6  Commonwealth of Pennsylvania, and commendation metals, the

7  Citizenship Medal from the Sons of American Resolution --

8  Revolution.

9       We have many, many awards that I've received over the

10  course of my military career, including the eighth award of the

11  Garde Nationale, the eighth one in history was awarded to me

12  for having a significant academic and professional career and

13  simultaneous to my military career.

14       Q    Have you received any public awards?

15       A    Yes, I've received several presidential voluntary

16  service awards from several presidents of the United States.

17  And I received an exultation from President William Jefferson

18  Clinton in 1986.

19       Q    In the years that you operated in medical school,

20  what has been the experience of your students as far as the

21  results of the testing done by ECFMG and USMLE?

22       A    They've done very well.  We, you know, provide high

23  quality instruction.  The vast majority of our courses, the --

24  the entire, the full first year they can take from Montserrat

25  or they can take from virtually anywhere, because there's --

Case: 19-2706    Document: 45-2    Page: 431    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-9    Filed 05/03/19    Page 249 of 304    SA0240

65

1    we've developed beginning 10 years ago, because of the volcano,

2    we developed something called SPOC, Small Platform Online

3    courses where you have high quality, the best we can find, all

4    U.S. certified instructors all have taught in U.S. medical

5    schools and are all -- were board certified in their fields.

6        They present these courses.  So they can take them pretty

7    from Montserrat, and many, many have over the years, from

8    anywhere in the world.

9        Q    What has been your --

10            THE COURT:  Mr. -- sorry, can you just get to the

11   chase?  I accept that Dr. Tulp has these qualifications and I

12   am for the purposes of this preliminary injunction hearing,

13   that is not what we're talking about.

14            MR. SWATE:  Yes, Your Honor.

15            THE COURT:  Just cut to the chase.

16   BY MR. SWATE:

17       Q    All right, what is required by every state in the

18   union for an international medical graduate to apply for a

19   medical license, whether either restricted or permanent?

20       A    They must have ECFMG certification.  There's the only

21   access that's available to them.

22       Q    Can a medical student United -- international medical

23   student be licensed without that certificate or license?

24       A    Not in the United States of America

25            MS. MCENROE:  Objection, Your Honor.  Foundation.

```
 1              THE COURT:  Basis?  I mean, granted.  Sustained.
 2              MS. MCENROE:  It's been a long afternoon, Your Honor.
 3              THE COURT:  Sustained.
 4              MS. MCENROE:  Thank you.
 5              THE COURT:  You can lay some foundation and perhaps
 6    get there.
 7    BY MR. SWATE:
 8        Q    Well, what -- getting to the chase, what evidence was
 9    presented by ECFMG owned on the 28th that you had committed any
10    kind of bad act?
11        A    None.
12        Q    When did you find out about the notebook with the
13    various evidence that was -- that had been given to the members
14    of the committee that was supposed to hear your case?
15        A    On the 28th of November, it was placed on the table.
16    It had no label.  We didn't know what it was.  It was just a
17    black book that was sitting there.  We had no opportunity to
18    review it in advance.
19        Q    What evidence was produced by the ECFMG at that
20    meeting that support any allegations?
21        A    None.
22        Q    What effect does ECFMG placing that notation on that
23    world list of medical schools have on you personally, and then
24    I'll get to the medical school?
25        A    Well, it certainly blemishes my reputation
```

67

 1    tremendously.  In over 50 years, I've never had a single

 2    complaint from a student, a patient, a board, nothing.  I never

 3    expected this.

 4         Q    When was that notation first placed?

 5         A    Prior to September 11th, 2018.  That was the last

 6    date entered on the sponsor note when it was -- when it

 7    appeared.

 8         Q    Was that note placed prior to any hearing or any

 9    allegations?

10         A    Yes.

11         Q    Now the ECFMG agreed that up until January the 1st,

12    2019, they would accept documentations from the USAT students,

13    correct?

14         A    That is correct.

15              MS. MCENROE:  Your Honor, foundation about what ECFMG

16    was sent.

17              THE COURT:  Sustained.

18              MR. SWATE:  Ma'am?

19              THE COURT:  Sustained, go ahead.  Lay some

20    foundation.

21    BY MR. SWATE:

22         Q    You were given a letter from the ECFMG that stated

23    that up until January the 1st, 2019, documentation would be

24    accepted?

25         A    That is correct.

1    Q    What harm resulted from allowing the USAT to operate

2  until January the 1st, 2019?

3    A    I am unaware of any harm whatsoever.

4    Q    Well, what magically happened at midnight on January

5  the 1st, 2019 or December the 31st, 2018?

6    A    ECFMG would no longer accept --

7         MS. MCENROE:  Objection, Your Honor --

8         THE COURT:  What?  You finish your question.

9         You hold.

10         Finish your question.

11  BY MR. SWATE:

12    Q    What occurred that would cause the ECFMG on December

13  the 31st, 2018 to accept documentation and then after that date

14  not accept documentation, if you know?

15    A    Nothing.

16         THE COURT:  Hold on.  Any objection?

17         MS. MCENROE:  Objection, Your Honor.  Foundation.

18         THE COURT:  Sustained.  Also, compound.

19  BY MR. SWATE:

20    Q    What damages, if any, is occurring while allowing

21  ECFMG to post those notes on that world internet site listing

22  medical schools?

23         MS. MCENROE:  Objection, Your Honor.  Foundation.

24         THE COURT:  Sustained.  Foundation?

25  BY MR. SWATE:

69

1    Q    Are you --

2    A    Yes.

3    Q    Are you aware that the notice has been posted,

4  correct?

5    A    Yes, I'm aware the notice was posted.

6    Q    Do you have any personal knowledge of the effect of

7  posting that notice?

8    A    Yes.

9    Q    What's your knowledge?

10    A    It really eliminates all new applications and it

11  prevents the university from collecting any uncollected

12  tuition.

13    Q    What harm would result from allowing USA -- by

14  allowing ECFMG to continue accepting documents from USAT

15  students until this matter's resolved?

16    A    There is no harm.

17         MS. MCENROE:  Objection, Your Honor.

18         THE COURT:  Basis?

19         MS. MCENROE:  Foundation and also vague.  I'm not

20  sure exactly what he means by harm.

21         THE COURT:  Sustained, sustained.

22         THE WITNESS:  I'm unaware of any harm.

23         THE COURT:  Oh, no, don't.  If I sustain, you don't

24  answer.

25         THE WITNESS:  Okay.

70

1          THE COURT:  Go ahead.

2          THE WITNESS:  I'm sorry, Your Honor.

3    BY MR. SWATE:

4      Q    Are you aware of the results of them posting the

5    information?

6      A    Yes.

7      Q    And what's been the result?

8      A    The result has been that all tuition payments stopped

9    on or before October 1st.  And that has made a major impact on

10   the economy at the university.  We were admitting about 50

11   students per month prior to that.  Since then, not one.

12     Q    And this was prior to any hearing or finding of

13   irregular behavior, correct?

14     A    That is correct.

15     Q    Do you have an opinion of whether it would be a

16   positive event to allow USAT to continue by ECFMG accepting

17   documents until this matter's resolved?

18          MS. MCENROE:  Objection, Your Honor.  Calls for

19   opinion testimony.

20          THE COURT:  Sustained unless you think that this can

21   be fact witness testimony, opinion testimony.  Make that

22   argument.

23          MR. SWATE:  He has specialized knowledge.  He's been

24   an administrator for 15 years.

25          THE COURT:  So you're trying to get him qualified as

Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 249 of 304    0246

71

```
 1    an expert, is that what --

 2              MR. SWATE:  Well, he is an expert.

 3              THE COURT:  Well, he's not until I say he's an

 4    expert.

 5              MR. SWATE:  Well, I understand it, Judge.

 6              THE COURT:  So are you trying to get him qualified as

 7    an expert?

 8              MR. SWATE:  Okay, I understand.  I will attempt to do

 9    that.

10              THE WITNESS:  Okay.

11              THE COURT:  Okay, I'm not suggesting -- I mean, if

12    you want to do it, you can try and do it, but we've got go

13    through the process.  So why don't you do it?

14              MR. SWATE:  Yes, Your Honor.  I understand.

15              THE WITNESS:  Okay, would you repeat that question

16    now that we've had --

17    BY MR. SWATE:

18        Q    You've been a president and professor for USAT for 15

19    years?

20        A    That is correct.

21        Q    Are you familiar with the standards for your students

22    being licensed in the United States?

23        A    Yes.

24        Q    And what's this familiarity based on?

25        A    It's based on experience and study.
```

Case: 19-2706    Document: 45-2    Page: 438    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 259 of 304

72

 1              MR. SWATE:  Your Honor, I would have Dr. Tulp

 2      admitted as an expert in medical administration.

 3              MS. MCENROE:  Your Honor, we oppose.  I don't really

 4      understand what an expert in medical administration is.  I

 5      think that was factual testimony that was just being elicited

 6      about why -- the basis for a line of questioning, which I don't

 7      have an objection to that, but I don't understand him being put

 8      forward as an expert at this time.

 9              THE COURT:  Sustained.

10      BY MR. SWATE:

11          Q    You -- the -- you have familiarity with the history

12      of your students?

13          A    Yes, I do.

14          Q    Do you have familiarity with the history of your

15      students in going into residency programs?

16          A    Yes, we do.

17          Q    And what has been that history?

18          A    That history has been highly successful.  Most

19      successful -- most are successful in obtaining not only

20      residencies, but some medical positions, faculty positions at

21      U.S. medical schools following their board certification.

22          Q    Your student, if you can do this, how would you

23      describe your typical student?

24          A    Our typical students are exceptional.  They're way

25      above -- there is a mix of other international medical schools

1    from the region that we've interacted with.

2        All -- the minimum requirement for most questions coming

3    in is a Master's degree or higher.  And that accounts for about

4    90 percent of the total.

5        Q    What about the age of your students?  Do you have any

6    information about that?

7        A    We have no age restriction.  Our oldest graduate was

8    73.

9        Q    What kind of experience on the average do these

10   students have?

11       A    10 to 20 years of clinical experience prior to coming

12   into the program.  So.

13       Q    Are you making a claim today that you were denied due

14   process by the ECFMG?

15       A    Absolutely.

16           MS. MCENROE:  Objection, Your Honor.  Calls for a

17   legal conclusion.

18           THE COURT:  Sustained.

19           THE WITNESS:  Absolutely.

20           THE COURT:  If I say sustained, you don't answer the

21   question.

22           THE WITNESS:  Oh, I'm so sorry.

23           THE COURT:  Go ahead.

24   BY MR. SWATE:

25       Q    Well, what notice were you given of the charges?

```
 1       A    None.

 2       Q    What evidence was presented at the hearing?

 3       A    None.

 4       Q    Who terminated the hearing?

 5       A    Attorney McEnroe.

 6       Q    Were you allowed to -- were your attorneys allowed to

 7   put on any evidence?

 8       A    No.

 9            MR. SWATE:  Pass the witness.

10            THE COURT:  All right.

11            MS. MCENROE:  May I approach the lectern, Your Honor?

12            THE COURT:  You may.

13            MS. MCENROE:  And per efficiencies, I would ask if

14   it's all right if I go do my cross and my --

15            THE COURT:  Yes.

16            MS. MCENROE:  It's yes?

17            THE COURT:  Yes, that's fine.

18            MS. MCENROE:  Thank you, Your Honor.

19                         CROSS-EXAMINATION

20   BY MS. MCENROE:

21       Q    Hi, Dr. Tulp.

22       A    Good afternoon.

23       Q    Good afternoon.  You were just asked about a hearing

24   on November 28th; is that correct?

25       A    Yes.
```

1        Q      And you heard testimony a little bit earlier today

2    about a transcript of the hearing?

3        A      I heard it, but I haven't read it.

4        Q      Have you received a copy of it?

5        A      No.

6        Q      Do you know if your lawyers have gotten a copy of it?

7        A      I believe our attorneys have received a copy very

8    recently.

9        Q      Does USAT have a campus in the United States?

10       A      No.

11       Q      Have you ever said that you USAT had a campus in the

12   United States?

13       A      No.

14              MS. MCENROE:  Your Honor, if I may, we need a minute

15   for a technical hookup so that we can --

16              THE COURT:  Go --

17              MS. MCENROE:  -- submit some evidence to refresh the

18   witness' recollection.

19              THE COURT:  Go ahead.  How -- when you say a minute,

20   do you mean one minute?

21              MS. MCENROE:  Literally a minute.  I think we have

22   it --

23              THE COURT:  Got it.

24              MS. MCENROE:  And Your Honor, while that's getting

25   queued up, I would like to submit it initially to refresh the

1    witness' recollection.

2            And once the Court gets to see it, I plan to move for

3    its admission on the basis of a statement of a party opponent?

4            THE COURT:  Any objection to submission of the

5    transcript?

6            MS. MCENROE:  I'm sorry, not the transcript, the

7    video that we're about to watch.

8            THE COURT:  The video, okay.  Do you know what video

9    she's talking about?

10           MR. SWATE:  No.  Have we --

11           THE COURT:  Okay, well, we'll take a look and then

12   I'll ask you that question again.

13           MS. MCENROE:  Thank you, Your Honor.

14           Your Honor, I think we're having a volume problem.

15           THE COURT:  Mr. Mani, can you solve that?

16           MR. SWATE:  Judge, we would object to this evidence.

17   It hasn't been authenticated.

18           THE COURT:  Well, we're just about -- we're doing

19   that right now.  That's what we're doing right now.

20           While we're waiting, Dr. Tulp, have there been any

21   2019 graduates of USAT as of yet this year?

22           THE WITNESS:  No, there have not been.

23           THE COURT:  When would be the first graduation or

24   when would have been the first graduation?

25           THE WITNESS:  In June.

Case: 19-2706   Document: 45-2   Page: 443   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 259 of 304

77

```
 1                THE COURT:  Okay.

 2                MS. MCENROE:  Your Honor, while they're working on

 3    that, in the interest of efficiency, I'd be happy to move on

 4    and then circle back if that's all right?

 5                THE COURT:  Go ahead.

 6    BY MS. MCENROE:

 7        Q    Dr. Tulp, you testified a minute ago that you had not

 8    gotten any notice from ECFMG about the allegations against you;

 9    is that correct?

10        A    That is correct.

11                MS. MCENROE:  All right, before I move on, it seems

12    like we got volume, so we'll circle back if we could?

13                THE COURT:  Go ahead.  The -- you'll be showing the

14    video solely for the purposes of determining whether -- its

15    admissibility?

16                MS. MCENROE:  Correct.  Yes, Your Honor.

17                THE COURT:  Okay, go ahead.

18                MS. MCENROE:  And Your Honor, we're only going to put

19    in the first couple minutes.  We're not going to --

20        (Video played at 3:53 p.m.)

21        (Music)

22                UNIDENTIFIED SPEAKER:  Thank you for joining us.  Our

23    guests today are Professor George Einstein of USAT and Dr.

24    Orien Tulp, the president of USAT, the British West Indies-

25    based University of Science, Arts, and Technology.
```

78

1              It is this institution in which dozens of physicians

2    graduate successfully, many from humble beginnings from nations

3    including the United States regardless of race or gender or

4    culture.

5              USAT has created a program of superior excellence and

6    in training physicians and other professionals to meet the

7    demand of scientific and medical needs in this global

8    technological environment.

9              Professor Einstein and Dr. Tulp will tell us more

10   about these achievements following these messages.

11        (Music)

12             With us now is Dr. Orien Tulp, president of USAT, the

13   University of Science, Arts, and Technology, Montserrat.

14   Pleasure and honor to have you back.

15             MR. TULP:  Thank you, sir.  Pleasure to be back.

16             UNIDENTIFIED SPEAKER:  So many things are happening

17   in education worldwide and of course in your part of the world.

18   And you do classes in Miami, Denver, and Montserrat.  What's

19   new with USAT?

20             MR. TULP:  USAT is now fully accredited in the United

21   Kingdom.  We're now preparing for our 2014 commencement, which

22   would be held right here in Miami.

23             We expect to graduate more than 100 students, which

24   is more than any other Caribbean school just by the way.  And

25   we'll have this -- we want family to come.  It's a great

Case: 19-2706    Document: 45-2    Page: 445    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-49    Filed 05/03/19    Page 259 of 340    0254

79

1    opportunity, a great experience.  And it enables those who

2    graduate to experience closure, because now it's another

3    chapter of their career.

4            UNIDENTIFIED SPEAKER:  And USAT is contributing so

5    effectively in the lives and careers of many people in this

6    part of the world.

7            MR. TULP:  Yes, it is.  Yes, it is.  We have a lot of

8    physicians now in the state of Florida.  We have some who are

9    practicing and many more are in residency in their specialty

10   training.

11           It's moving ahead very quickly and very rapidly.

12   We're now the fastest, near as I can see, we are the fastest

13   growing medical school in the Caribbean.

14           UNIDENTIFIED SPEAKER:  So the University of Science,

15   Arts, and Technology also is expanding into other programs, I

16   understand.  Tell us of these?

17           MR. TULP:  Yes, yes we are.  We have a new program we

18   intend to start by September.  This would be medical

19   acupuncture designed for physicians, licensed physicians that

20   wish to add that.

21           We're going to create a unique new program, which

22   will lead to a Master of Science in Medical Acupuncture.

23   That'll be conducted in our Miami campus to start with and

24   probably extend that into some of the other campuses.

25           (Video ended at 3:56 p.m.)

```
 1              MS. MCENROE:  Your Honor, I would make the argument
 2    that Dr. Tulp is appearing here on this video himself, saying
 3    referring to a Miami campus, which goes directly contradictory
 4    to testimony he said that he never uses the word campus to
 5    describe USAT's conduct in the United States.  So I would
 6    submit that it's admissible as an admission of a party
 7    opponent.
 8              THE COURT:  Any objection?
 9              MR. SWATE:  It's not -- part of the controversy is
10    the definition of campus.
11              THE COURT:  We're not talking about the -- that
12    particular issue.  We're only talking about the admissibility
13    of this tape.  So tell me why you oppose its admission?
14              MR. SWATE:  I don't.
15              THE COURT:  Okay, it's admitted.
16         (Defendant's Exhibit D-1 admitted into evidence)
17              MS. MCENROE:  Thank you, Your Honor.
18    BY MS. MCENROE:
19         Q    Dr. Tulp, you were testifying just a minute ago about
20    not having notice from ECFMG with respect to the issues on
21    going with USAT; is that correct?
22         A    That is correct.
23              MS. MCENROE:  Your Honor, may I approach the witness?
24              THE COURT:  You may.
25              MS. MCENROE:  And Your Honor, I have a copy for you
```

Case 19-2706    Document 45-2    Page 447    Date Filed 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 255 of 304

81

1   as well if you'd like me to hand that up if that's all right.

2            THE COURT:  Yes, please.

3   BY MS. MCENROE:

4        Q    Dr. Tulp, do you recognize this document?

5        A    I do.

6        Q    What is it?

7        A    I recognize it, yes.

8        Q    Okay, and this is a letter directed to you, correct?

9        A    That is correct.

10       Q    Did you get this letter?

11       A    I received it by email.

12            MS. MCENROE:  Your Honor, I would move for the

13   admission of this letter?

14            THE COURT:  Any objection?

15            MR. SWATE:  No objection.

16            THE COURT:  It's admitted.  What would you like to

17   label this as?  We'll label the video as D-1.

18       (Defendant's Exhibit D-2 admitted into evidence)

19            MS. MCENROE:  Great.  And how about we make this D-2?

20            THE COURT:  Got it.

21            MS. MCENROE:  Thank you, Your Honor.

22   BY MS. MCENROE:

23       Q    So starting from the top, and it's a brief letter, so

24   I'm going to try not to go too long on it, but it's from August

25   21st, 2018.  And it starts out saying, "It has recently come to

1    the attention of the Educational Commission for Foreign Medical

2    Graduates that USAT in Montserrat is operating a satellite or

3    branch campus in Miami, Florida."  Do you see that?

4         A    I see that.

5         Q    Then it was explained that, "In order for students

6    and graduates of an international medical school such as USAT

7    to have eligibility to apply for ECFMG certification, ECFMG

8    policy requires confirmation from the appropriate government

9    authority in the branch campus country that the branch campus

10   is authorized to operate as a medical school in such branch

11   campus country."  Do you see that?

12        A    Yeah, I see that, uh-huh.

13        Q    Have you ever provided such information to ECFMG

14   about the operation of education in the United States from

15   USAT?

16        A    No, because when I contacted the Florida Department

17   of Education, they said it was unnecessary based on what our

18   activities actually were.  The bulk of our program was online,

19   about 80 percent of it.  And we have previously told you that.

20             MS. MCENROE:  Your Honor, may I approach the witness?

21             THE COURT:  You may.

22             MS. MCENROE:  And the bench, Your Honor.

23   BY MS. MCENROE:

24        Q    Dr. Tulp, do you know what this document is?

25        A    Yes.

Case: 19-2706   Document: 45-2   Page: 449   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-19   Filed 05/03/19   Page 269 of 304

83

```
 1        Q    What is it?

 2        A    It's a site support and schedule.

 3        Q    And it says -- you see it says lecture conference

 4   schedule at the top?

 5        A    It does that.

 6        Q    And this is from University of Science, Arts, and

 7   Technology; is that correct?

 8        A    Yes, it is.

 9             MS. MCENROE:  Your Honor, I would move for this

10   admission of D-3, please?

11             THE COURT:  Any objection?

12             MR. SWATE:  No, Your Honor.

13             THE COURT:  It's admitted.

14        (Defendant's Exhibit D-3 admitted into evidence)

15             THE WITNESS:  I have one question if I'm allowed to

16   ask?

17             THE COURT:  You're not.

18             MS. MCENROE:  At this juncture, you are --

19             THE COURT:  You are not.

20             THE WITNESS:  Okay.

21   BY MS. MCENROE:

22        Q    So you mentioned when you were questioned by counsel

23   about the notice of the allegations of irregular behavior

24   against you; is that correct?

25        A    That's correct.
```

84

```
 1         Q    And you indicated you didn't have any notice of the
 2    claims of irregular behavior against you?
 3         A    I did not have notice.
 4              MS. MCENROE:  May I approach, Your Honor?
 5              THE COURT:  You may.
 6              MS. MCENROE:  And the bench, Your Honor?
 7              THE COURT:  You may.
 8    BY MS. MCENROE:
 9         Q    Dr. Tulp, have you seen this letter before?
10         A    I've seen this letter before, yes, I have.
11              MS. MCENROE:  Your Honor, I would move for admission
12    as D-4.
13              THE COURT:  Any objection?  Any objection?
14              MR. SWATE:  No.
15              THE COURT:  It's admitted.
16         (Defendant's Exhibit D-4 admitted into evidence)
17    BY MS. MCENROE:
18         Q    So Dr. Tulp, I'm going to direct you to a couple
19    parts of this letter in particular, but I don't want to belabor
20    the point or take too much time, but I'm just going to start
21    from the beginning.
22         That it's addressed to you and it says, "I'm writing to
23    advise you of the allegation that you individually and your
24    capacity as an official of the USAT faculty of medicine
25    Montserrat engaged in irregular behavior in connection with
```

85

```
 1    providing false information to ECFMG."  Do you see that?

 2         A    I see that.

 3         Q    And it goes on to say, "Specifically, you provided

 4    false information to ECFMG when you notified ECFMG that USAT

 5    does not operate a branch campus in Miami, Florida, and two,

 6    certified to the attendance dates of several USAT students and

 7    graduates when ECFMG has information that these students were

 8    not attending USAT during some the of time periods which you

 9    certified."  Do you see that?

10         A    Yes, I see that.

11              MS. MCENROE:  May I approach, Your Honor?

12              THE COURT:  You may.

13              MS. MCENROE:  And the bench, Your Honor?

14              THE COURT:  You may.

15    BY MS. MCENROE:

16         Q    Dr. Tulp, this on its face is an email from you at

17    the top.  Do you see that from Orien Tulp?  Is that your email

18    address, o.tulp@usat.edu?

19         A    It is.

20         Q    Do you recognize this email?

21         A    I do.

22              MS. MCENROE:  Your Honor, I'd like to move for its

23    admission as D-5?

24              THE COURT:  Any objection?

25              MR. SWATE:  No.
```

1          THE COURT:  It's admitted.

2       (Defendant's Exhibit D-5 admitted into evidence)

3    BY MS. MCENROE:

4       Q    This is an email from you to Scott Mealey.  Do you

5    know who Scott Mealey is?

6       A    No.

7       Q    Do you know whether or not he works at the ECFMG?

8       A    I -- according to a signature block, he does.

9       Q    Okay, do you have any reason to believe otherwise?

10      A    I have no reason to believe otherwise.

11      Q    And this email down below from Scott Mealey to you

12   says, "Please see the attached letter regarding USAT U.S.

13   satellite campus."  Do you see that?

14      A    I see that.

15      Q    And then up above, you wrote, "Dear Mr. Mealey."  Do

16   you see where I am?

17      A    I see that.

18      Q    And is this an email you wrote?

19      A    This is incorrect information.

20      Q    Correct, you're reading the beginning of the email,

21   right?

22      A    Right.

23      Q    This is correct information?  Did you write this

24   email?

25      A    I did.

87

1        Q     And it says, like you were reading, "This is

2    incorrect information.  The Miami location is an information

3    and testing site only where a pre USMLE examination and MDME

4    may administered and an orientation for new students is

5    conducted prior to the travelling to the Caribbean.  It is NOT

6    a campus.  Our only campus is located in Olveston, Montserrat,

7    British West Indies."  Is that what you wrote?

8        A     That is exactly correct.

9        Q     Is it your position that USAT has done no educational

10   services for students in the United States?

11       A     We have an online program.  They can take that

12   program from anywhere in the world.  Our most distant graduate

13   was from Thailand.

14            MS. MCENROE:  Your Honor, I'd move to strike as

15   nonresponsive.

16            THE COURT:  Overruled.

17   BY MS. MCENROE:

18       Q     Do you have any students who have gotten medical

19   education in the United States?

20       A     They received a review lecture, which is part of the

21   orientation.  We like to showcase our faculty because our

22   faculty are pretty strong and I like to showcase them.

23       Q     If you --

24       A     So we'll -- yes, we fly a couple of faculty in to

25   give a demonstration before you join our schools, here's what

 1    you're going to get.  The lectures are delivered online.

 2         Q    Do USAT students dissect cadavers in connection with

 3    their medical education?

 4         A    Yes, we have an agreement with the Miami Anatomic

 5    Research Center, who provides that service for us.

 6         Q    So USAT students dissect dead human bodies in the

 7    United States, correct?

 8         A    Cadavers.

 9         Q    Yeah, the same thing, right? I just want to make

10    sure.

11         A    Cadavers.

12         Q    I'm sorry, I'm not a medical doctor, I'm just making

13    sure.

14         A    Yeah.

15         Q    But there is dissection of human remains, cadavers --

16         A    That is --

17         Q    -- in the United States by USAT students?

18         A    There is.  There we also have an anatomage machine,

19    which they do a computerized dissection prior to that.

20         Q    In your view, is the dissection of human cadavers not

21    education?

22         A    That is education that is provided by the Miami

23    Anatomic Research Center at their location on their campus.

24         Q    To USAT students in the United States?

25         A    The USAT students are in the United States attending

89

 1   that, as do students from around the world attending that same,

 2   very same anatomic research center for educational purposes.

 3       Q    Dr. Tulp, did you instruct the students at USAT about

 4   how to fill out the affidavits requested by the Educational

 5   Commission for Medical Graduates?

 6       A    Not specifically.  But if they asked me for guidance,

 7   I would provide to guide it, -- but haven't seen the affidavits

 8   until recently.

 9              MS. MCENROE:  Your Honor, may I approach?

10              THE COURT:  You may.

11              MS. MCENROE:  And the bench, Your Honor?

12              THE COURT:  you may.

13   BY MS. MCENROE:

14       Q    Dr. Tulp, I'd like to direct your attention

15   specifically to the bolded text in the middle.

16       A    Uh-huh, uh-huh.

17       Q    That's followed by your signature block.  Do you see

18   that?

19       A    Right, I see that.

20       Q    Is this a message that you wrote?

21       A    It -- apparently I did.

22       Q    And who is Carla (phonetic) and I'm going to say this

23   wrong I'm sorry, Cognier (phonetic)?

24       A    Carpanich (phonetic) is the vice president of the

25   university.

Case: 18-2706   Document: 45-2   Page: 456   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 266 of 504 0265

90

 1              MS. MCENROE:  Your Honor, I would move for this

 2     admission -- admission of this document as D-6?

 3              THE COURT:  Any objection to admit it?

 4              MR. SWATE:  No, Your Honor.

 5              THE COURT:  Admitted.

 6         (Defendant's Exhibit D-6 admitted into evidence)

 7     BY MS. MCENROE:

 8         Q    And Dr. Tulp, this message says, "Please do NOT use

 9     the phrase 'campus' when referring to the U.S. sites as that

10     implies approval from the U.S. Department of Education or the

11     State Department of Education, which isn't possible or likely

12     as an international medical school.

13         Someone reported to the ECFMG that we have a Miami campus.

14     It is an administrative site where we do interviews,

15     orientations, and pre USMLE proctored examinations."  Did I

16     read that correctly?

17         A    You did.

18         Q    Do you know if this message was disseminated to USAT

19     students to not use the phrase campus?

20         A    I do not know if it was or not.

21         Q    Is USAT accredited by CAAM-HP?

22         A    No, it is not required to be.

23         Q    Can you explain --

24         A    It is accredited in the United Kingdom.  We're a

25     British school.

Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 269 of 304

91

```
 1        Q     Where is the headquarters of USAT?

 2        A     Montserrat, Olveston, Montserrat.

 3        Q     And I had to get my crib sheet for all the acronyms

 4   in this case.  Is it correct that CAAM-HP is the Caribbean

 5   accreditation authority for education in medicine and other

 6   health professionals?

 7        A     It's an emerging accrediting body.  It is accredited

 8   --

 9        Q     You understand --

10        A     It has accredited --

11        Q     Go ahead, I'm sorry.

12        A     It's accredited maybe four schools so far.

13              MS. MCENROE:  Your Honor, may I approach?

14              THE COURT:  You may.

15              MR. SWATE:  Your Honor, I'll object to this evidence.

16   We don't know where it came from.  We don't know how it was

17   generated.  We don't know whether it's changed or not.

18              MS. MCENROE:  Your Honor, I'm going to ask some

19   questions to try and establish that.

20              THE COURT:  Okay, ask him foundational questions.

21              MS. MCENROE:  Thank you, Your Honor.

22   BY MS. MCENROE:

23        Q     Dr. Tulp, has USAT tried to become accredited by

24   CAAM-HP?

25        A     We have tried, but the government of Montserrat do
```

Case 1:18-2706   Document 45-2   Page 458   Date Filed 01/16/2020
Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 276 of 304

92

1    not accept CAAM as an accrediting body until September 13th,

2    2018.

3        Q    I'm sorry, I didn't quite hear you.  Did you say we

4    have tried or we haven't tried?

5        A    I have attempted, but the government in Montserrat

6    would not accept CAAM as an accrediting body until September

7    13th of 2018.

8        Q    Do you --

9        A    Therefore, they would not endorse any accreditation

10   by CAAM.  We were inspected by CAAM.  We passed it with flying

11   colors.

12       They interviewed between 15 and 20 students on campus each

13   time that they were there, but only one surveyor showed up.  He

14   had always Alzheimer's.  He took no notes.  He took no

15   pictures.  He even forgot to pay his hotel bill.  I had to.

16       Q    Had you seen this letter before or this

17   determination?

18       A    I've seen it before.

19       Q    You have?

20       A    And I would like to remark that there were more than

21   100 violations of the LCME protocol, which they said that they

22   applied when they conducted the site visit.

23       They're required to have three surveyors.  They have only

24   one, a retired physician from Canada.  And the other two

25   surveyors allegedly indicated here have never been to

Case: 19-2706   Document: 45-2   Page: 459   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-49   Filed 05/03/19   Page 279 of 340

93

```
1    Montserrat.

2              MS. MCENROE:  Your Honor, I'd like to try strike as

3    nonresponsive everything after the witness said he's seen his

4    document before?

5              THE COURT:  It's stricken.

6              MS. MCENROE:  Thank you, Your Honor.  I'd like to

7    move for admission of this document as Exhibit D-7?

8              THE COURT:  Any objection?

9              MR. SWATE:  No objection.

10             THE COURT:  It's admitted.

11        (Defendant's Exhibit D-7 admitted into evidence)

12   BY MS. MCENROE:

13        Q    I'd like the record direct your attention to the red

14   paragraphs in the middle.

15        A    Uh-huh.

16        Q    See the second paragraph there?

17        A    Yeah.

18        Q    It says, "Following discussions of the reviewers

19   report, CAAM-HP determined that this whole had not provided

20   sufficient evidence to indicate that teaching activities were

21   actually taking place in Montserrat."  Do you see that?

22        A    I see that.  That is an incorrect statement.  They

23   interviewed 15 students.  They observed classes in session.

24   They were there for three days.

25             MS. MCENROE:  Your Honor, permission to approach?
```

```
 1                THE COURT:  You may.

 2   BY MS. MCENROE:

 3        Q    Dr. Tulp, what I just handed you is an email chain

 4   that includes a message that starts with "dear students" and

 5   then has your signature block at the bottom of the first page.

 6        A    Uh-huh.

 7        Q    Do you see this?

 8        A    I see that.

 9        Q    Is this a message that you've seen before?

10        A    I don't know if I've seen this or not.

11        Q    I'm going to read a little bit to you --

12        A    Yeah.

13        Q    -- to see if it refreshes your recollection?

14        A    Yeah.

15        Q    If that's all right?

16        A    I did not write this.

17        Q    Okay, but do you see your signature block there?

18        A    My signature block appears on everything, whether

19   I've signed or seen it or not.

20        Q    Okay, well, I want to see if I can refresh your

21   recollection.

22        A    That includes the documents from the ECFMG that I

23   receive.  They already have my signature attached.  I have not

24   signed it.  I never gave authorization for them to sign my

25   documents.
```

Case: 19-2706   Document: 45-2   Page: 461   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-19   Filed 05/03/19   Page 279 of 304

95

1           MS. MCENROE:  Your Honor, I would move to strike as

2      nonresponsive.  I don't know what question the witness was

3      responding to.

4           THE COURT:  Stricken.

5      BY MS. MCENROE:

6      Q    So I'd like to see if I can refresh your recollection

7      about whether you've seen this before.  So where it says "dear

8      students" on the first page, then there's a paragraph that

9      starts ECFMG.  Do you see where I am?

10     A    Uh-huh.

11     Q    Okay, and it says, "ECFMG is questioning our delivery

12     of the basic sciences because some students didn't attend on

13     Montserrat due to past volcanic activity on Montserrat."  Do

14     you see that?

15     A    I see that.

16     Q    Okay, and then I'd like to go to the second paragraph

17     there.  It starts with, "We will now begin."  Do you see that?

18     A    I see that.

19     Q    It says, "We will now begin offering the basic

20     science portion of our program at our campus on Montserrat as

21     early as October 1st, 2018 and at our new British Virgin

22     Islands campus as soon as January 2019."  Do you see that?

23     A    I see that.

24     Q    Does that refresh your recollection whether you've

25     seen this message before, whether or not you've authored it?

1    Q    I didn't author it.  And I don't believe that I've

2    actually seen this before.

3    Q    Okay, so stepping away from that --

4    A    But we've have basic sciences in Montserrat for many,

5    many years.  We've just graduated the first two students who

6    completed their entire four years in Montserrat, the first two

7    that did the entire four years basic sciences and clinical

8    sciences on the island of Montserrat.

9    The volcano was quieting down until about four years ago,

10   it would erupt every -- about once a month.  That is not a safe

11   environment.

12            MS. MCENROE:  Your Honor, I'd move to strike.

13            THE COURT:  Stricken.

14   BY MS. MCENROE:

15   Q    Stepping away from the document, because I understand

16   that you say may not have seen it before, is it true that USAT

17   opened a new campus on the British Virgin Islands in 2019?

18   A    We have been licensed in the British Virgin Islands

19   for some time now.

20   Q    And is that going to be the same USAT or is that

21   going to be a new medical school?

22   A    We haven't released that information yet.

23            THE COURT:  Well, can you respond to the question,

24   please?

25            THE WITNESS:  It will not be USAT.

1    BY MS. MCENROE:

2         Q    So you're opening a new medical school on another

3    island in the Caribbean; is that correct?

4         A    Not a volcanic island.

5         Q    Is USAT still in operation?

6         A    Yes.

7         Q    Does USAT have graduates that ever practiced medicine

8    in Montserrat?

9         A    Yes.

10        Q    Does USAT have graduates that ever practiced medicine

11   outside of Montserrat or the United States?

12        A    Yes.

13        Q    Does USAT have graduates that have ever practiced

14   medicine in the United Kingdom?

15        A    I'm not aware of any.  We don't recruit from the

16   United Kingdom that much.  My recollection is the United

17   Kingdom has about 20 or 30 medical schools of its own and

18   they're excellent medical schools.

19        Q    Are you aware of any USAT students having been

20   charged with irregular behavior?

21        A    Yes.

22        Q    In connection with this circumstance that we're

23   discussing today?

24        A    Yes.

25        Q    Who was that?

Case: 19-2706  Document: 45-2  Page: 464  Date Filed: 01/16/2020
Case 2:18-cv-05540-WB  Document 314  Filed 05/03/19  Page 276 of 340

98

```
 1        A    I'm not at liberty to say.

 2             THE COURT:  Respond to the question.

 3             THE WITNESS:  The one student that told me he'd made

 4   one call, a single call to the ECFMG.  And on the basis of that

 5   single call, he was assigned irregular behavior.

 6             When he applied to take the Puerto Rico Medical Board

 7   Exam, they denied him because of irregular behavior on the

 8   basis of a single phone call to the ECFMG, when all he was

 9   asking for is guidance on how to apply for step one.

10        Q    When did that happen?

11        A    A couple years ago.

12        Q    Do you have any understanding whether that -- was it

13   all in connection with the circumstances with regard to where

14   USAT has conducted its medical education?

15        A    I am not aware that it was connected or not connected

16   to that.

17        Q    Do -- what is that student's name?

18        A    I don't know whether it was connected or not, but

19   that's -- but --

20        Q    I'm sorry, doctor, I was asking about the student's

21   name?

22        A    I mean, I can't give you the student's name.

23             THE COURT:  Respond to the question.

24   BY MS. MCENROE:

25        Q    If you know?
```

Case 1:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 270 of 340
Case: 19-2706   Document: 45-2   Page: 465   Date Filed: 01/16/2020   40274

99

1       A     Yeah, it'll come to me.  I know his name, but it's a

2   very long Spanish name.

3       Q     Do you have an understanding of whether the action

4   ECFMG took against you with respect to the allegation of

5   irregular behavior prevents you from opening a new medical

6   school in the British Virgin Islands?

7       A     Anyone can open a medical school if they have the

8   resources to do so.

9       Q     Is it fair to say that it is not preventing you from

10  opening a new medical school in the British Virgin Islands?

11      A     It doesn't prevent us from opening it, but it would

12  prevent us from attracting students.

13      Q     So you said --

14      A     There's no chance that we could attract students with

15  that note on the World Directory.  That's only two-thirds of

16  the note.  The other third was removed after the subpoenas were

17  delivered.

18            MS. MCENROE:  Your Honor, I strike as nonresponsive

19  to any question that was pending.

20            THE COURT:  It's -- I'm not going to strike it, but

21  would you please just answer the question?

22            THE WITNESS:  Would you rephrase the question, so I

23  can understand it?

24            MS. MCENROE:  So I'm just trying to understand --

25            THE COURT:  Let me just ask a series of questions.

100

1          MS. MCENROE:  Yeah, thank you, Your Honor.

2          THE COURT:  Are you opening a new school in the

3   British Virgin Islands?

4          THE WITNESS:  None in our plan.

5          THE COURT:  And when you say our, who is our?

6          THE WITNESS:  The university.

7          THE COURT:  So USAT?

8          THE WITNESS:  USAT would sponsor it.

9          THE COURT:  USAT will sponsor the university in the

10   British Virgin Islands?

11         THE WITNESS:  Yes, we were invited about two years

12   ago to begin claiming for this.  But I mean, by British Virgin

13   Islands.

14         THE COURT:  And will the new university be called

15   USAT?

16         THE WITNESS:  No.

17         THE COURT:  What will it be called?

18         THE WITNESS:  As far as I know, it will be called the

19   University of Health and Humanities, British Virgin Islands or

20   the Virgin Islands.  You can leave out the British.

21         THE COURT:  You indicated that it would have

22   difficulty recruiting students?

23         THE WITNESS:  Yes.

24         THE COURT:  Well, when you said that, were you

25   referring to USAT in Montserrat?  Or were you suggesting that

Case: 19-2706    Document: 45-2    Page: 467    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-19    Filed 05/03/19    Page 279 of 304

101

 1    the new British Virgin Island school would have difficulty

 2    recruiting students?

 3            THE WITNESS:  It would have difficulty recruiting

 4    students because of the activities with the sponsored note on

 5    the -- for USAT Montserrat.

 6            THE COURT:  Well, the sponsor note is associated with

 7    USAT, correct?

 8            THE WITNESS:  That's correct.

 9            THE COURT:  So what is your understanding about how

10    that note can connect with the British Virgin Islands?

11            THE WITNESS:  Because the ownership of the new

12    university began with USAT.

13    BY MS. MCENROE:

14        Q    Dr. Tulp, do you have an understanding -- you

15    testified a little earlier about some graduates from USAT being

16    able to practice medicine in Montserrat and other places

17    outside the United States; is that correct?

18        A    Yes, uh-huh.

19        Q    Do you have any understanding of whether ECFMG is at

20    all involved in the licensure or certification of those

21    graduates?

22        A    In 2005, there were not.  The body there is the CAAM

23    C exam, the Caribbean Medical Board Exam.  If they were to

24    apply today, they would not be able to.

25        Q    And that's a decision of the Montserratian

102

1   government?

2       A    No, that's a decision of the ECFMG, because the ECFMG

3   sponsor note applies to the United States of America, but the

4   ECFMG cooperates with virtually every medical board in the

5   world.

6       They all refer to your services.  I've seen documents that

7   you have sent to me to certify from Australia, from Denmark,

8   from other countries, from any other -- and Canada.  Canada has

9   already suspended access for USAT graduates based on the ECFMG

10  sponsoring note.

11      Q    Dr. Tulp, has USAT sought accreditation to be a U.S.

12  medical school?

13      A    No, it has not.

14           MS. MCENROE:  I have nothing further, Your Honor.

15           THE COURT:  Redirect and cross of Ms. McEnroe's

16  direct?

17                       CROSS-EXAMINATION

18  BY MR. SWATE:

19      Q    Doctor?

20      A    Yeah.

21      Q    As we sit here in this room today, is USAT a licensed

22  medical school by Montserrat?

23      A    Yes, it is.

24      Q    And also, is there another entity other than

25  Montserrat that licensed -- that accredits USAT?

Case: 19-2706    Document: 45-2    Page: 469    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-4   Filed 05/03/19   Page 289 of 304

103

1    A    Yes, the ASIC in the U.K., the accrediting system for

2    international schools, colleges, and universities except -- and

3    that's an institutional accreditation as opposed to a

4    programmatic accreditation.

5    Q    And --

6    A    But we're also accredited by the AICP, which is in

7    the United States.  That's the American Institute for Clinical

8    Psychotherapy.  And also by the American Association for Higher

9    Education and Accreditation.  And that latter one is also

10   institutional.

11   Q    Is the ECFMG an accrediting agent of a medical

12   school?

13        MS. MCENROE:  Objection, Your Honor.  Foundation.

14        THE COURT:  You can answer the question.

15        THE WITNESS:  I may answer?

16        THE COURT:  Go ahead.

17        THE WITNESS:  No, the ECFMG is not an accrediting

18   body.

19   BY MR. SWATE:

20   Q    But they acted as an accrediting body, correct?

21   A    Yes, they do.

22   Q    Essentially what -- let's go through the process of

23   what was happening to students who were sending in requests for

24   information from the ECFMG, based on your knowledge of what was

25   happening?

1        A      They were told they should transfer it to another

2    medical school immediately.  They were told that they had to

3    complete those affidavits or they could be assigned irregular

4    behavior or be fined -- alleged for perjury.

5             There are various penalties for someone who may have

6    graduated 10 years ago and may or may or not remember the exact

7    dates that they started school.

8        Q      If you know, what was being -- what was happening to

9    the students who didn't send in the affidavit, their records?

10   What was happening to their records, if you know?

11       A      Those records are frozen and they cannot proceed any

12   farther until they complete the affidavits.

13       Q      What's the effect of having frozen records from the

14   ECFMG?

15       A      You cannot proceed to the residency or licensure.

16       Q      These letters that they presented here today, did

17   they present those letters to you?

18       A      No, they do not.

19       Q      Let me finish my question.

20       A      Oh.

21       Q      It -- by someone from the USFMG in the hearing?

22       A      No, they do not.

23       Q      They didn't give you an opportunity to respond to

24   those letters, did they?

25       A      No, they do not.

Case: 19-2706   Document: 45-2   Page: 471   Date Filed: 01/16/2020
Case 2:18-cv-05540-WB   Document 31-9   Filed 05/03/19   Page 289 of 304

105

```
 1        Q    And one of the letters is obviously written by
 2   someone other than you?
 3        A    Yes.
 4             MS. MCENROE:  Objection, Your Honor.  Foundation.
 5   And is that a question?
 6             THE COURT:  Sustained.
 7   BY MR. SWATE:
 8        Q    Appendix H, do you have that in front of you?
 9        A    What page would that be?
10        Q    I don't know, I just have exhibit that -- it would be
11   one of the last letters she showed you.
12             MR. SWATE:  Your Honor, can I approach the witness?
13             THE COURT:  You may.
14             THE WITNESS:  Yeah.
15             MR. SWATE:  I'm going to show you what's the what I
16   have is it's right here, Appendix H.  And on the back of that,
17   there's a letter supposedly from you.  Would you read the last
18   sentence of that letter?
19             MS. MCENROE:  Your Honor, this was a letter was not
20   authenticated --
21             THE COURT:  Yeah.
22             MS. MCENROE:  -- and not admitted into evidence.
23             THE COURT:  Yeah, this document was not admitted.  So
24   therefore, any questioning about it is not appropriate.
25             MR. SWATE:  I'm not questioning the letter or
```

Case: 19-2706    Document: 45-2    Page: 472    Date Filed: 01/16/2020
Case 2:18-cv-05540-WB    Document 31-4    Filed 05/03/19    Page 289 of 304

106

1    anything it stands for.  I'm requesting other than redirect, as

2    a cross of her redirect?  Because obviously, the letter is not

3    from him.

4                  THE COURT:  Right on direct, there was the talk about

5    authentication and admissibility.  And it was determined during

6    that examination that it was not from him.  So therefore, it

7    was not admitted.

8                  MR. SWATE:  Okay, thank you.

9    BY MR. SWATE:

10        Q    Now they talked a little bit about this CAAM

11    accreditation.

12        A    Right.

13        Q    When does that have to be in place?

14        A    2023.

15        Q    It doesn't have to be in place now, does it?

16        A    No.

17        Q    Have you got a valid license from Montserrat?

18        A    That is correct.

19        Q    At this time?

20        A    That is correct.

21        Q    In 2023, it's going to be like Cinderella?

22        A    Yeah.

23                  MS. MCENROE:  Objection.

24                  THE COURT:  Sustained.

25    BY MR. SWATE:

```
 1      Q    Okay.

 2      A    In 2023, we'll have it done.

 3           THE COURT:  So if I sustain an objection, you do not

 4   answer the question.

 5           THE WITNESS:  So.

 6   BY MR. SWATE:

 7      Q    Just one last question and I'll pass the witness.

 8   And I believe I've asked you, but just to -- they presented

 9   none of this evidence to the committee at the hearing, did

10   they?

11      A    No, they did not.

12           MR. SWATE:  Pass.

13           THE COURT:  Now Ms. McEnroe, I believe at this point,

14   it would be your redirect of their cross?

15           MS. MCENROE:  Your Honor, I have no further

16   questions.  Thank you.

17           THE COURT:  You can leave the stand.

18           Anyone else any other witnesses?  No.

19        (Witness excused)

20           MS. MCENROE:  Not from --

21           THE COURT:  Okay, from Plaintiff, any other

22   witnesses?

23           MR. SWATE:  Your Honor, before we rest, we have some

24   documents we'd like to put into evidence.

25           THE COURT:  Well, do you have a witness who can --
```