**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2706
_____

DR. ORIEN L. TULP, PRESIDENT OF THE UNIVERSITY
OF SCIENCE, ARTS, AND TECHNOLOGY,
Appellant

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES;
DR. WILLIAM W. PINSKY, PRESIDENT AND CEO, EDUCATIONAL
COMMISSION FOR FOREIGN MEDICAL GRADUATES

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-18-cv-05540)
District Judge: Hon. Wendy Beetlestone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 19, 2020

Before: McKEE, BIBAS, and COWEN, *Circuit Judges*

(Opinion filed: August 17, 2020)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

1

McKEE, *Circuit Judge*.

Dr. Orien Tulp is president of the University of Science, Arts, and Technology, a medical school ostensibly located in Montserrat, a volcanic isle in the British Virgin Islands. Tulp claims his due process rights were violated by the Education Commission for Foreign Medical Graduates. The district court granted summary judgment for ECFMG. Because we find the record completely belies Tulp's claims, we will affirm.

## I.

First, a jurisdictional note. For cases that were originally filed in federal court, the bar for dismissal for failure to meet the amount-in-controversy requirement is high: "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."[1] When this suit was initially filed, jurisdiction was based on federal question jurisdiction due to the § 1983 claim.[2] The complaint also alleged diversity jurisdiction because the parties were diverse. But, on appeal, after the uncontested dismissal of the § 1983 claim, Tulp's only remaining ground for jurisdiction is diversity. However, he has never pled an amount in controversy.

Although jurisdiction is not contested by the parties, we nevertheless have an independent responsibility to consider it and to dismiss when it is lacking.[3] Tulp did not

---

[1] *Suber v. Chrysler Corp.*, 104 F.3d 578, 583 (3d Cir. 1997), *as amended* (Feb. 18, 1997) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)) (emphasis omitted).

[2] 28 U.S.C. § 1331.

[3] "[A]n objection to subject matter jurisdiction may be raised at any time, a court may raise jurisdictional issues *sua sponte*, and a court may consider evidence beyond the pleadings such as testimony and depositions when considering a jurisdictional challenge." *Group Against Smog and Pollution, Inc. v. Shenango Inc.*,

earn a salary from his work at USAT, and he testified to never having earned money from

USAT.[4] When pressed to describe his damages, Tulp provided unsubstantiated figures

showing substantial declines in enrollment for USAT.[5] However, Tulp did not bother to

supply the court with any information about the monetary impact of those enrollment

changes. Since Tulp owns a 50% ownership stake in the school, we can presume that

such enrollment losses (assuming the school netted money per student enrolled) will

eventually harm him financially. The extent of that financial impact is unclear, and it is

neither practical nor appropriate for us to attempt to quantify these claims. Nevertheless,

given the number or students involved and the scope of USAT's activities, we cannot

conclude to a legal certainty that Tulp does not satisfy the $75,000 jurisdictional limit.

Therefore, although the precise amount of damages remains doubtful, we conclude that

we do have subject matter jurisdiction and will proceed to consider Tulp's state law due

process claims.[6] After doing so, we have no doubt that they are meritless.

    Given this is a non-precedential opinion, we would normally only briefly state the

procedural history and the underlying facts, if at all. However, it is impossible to

appreciate the "flavor" of this dispute without mentioning in greater detail some of what

has transpired to get us here. Moreover, much of the conduct that we summarize falls far

below the minimum standards we expect of seasoned attorneys, and we will not let the

---

810 F.3d 116, 122 n.6 (3d Cir. 2016) (citing *Henderson ex rel. Henderson v.
Shinseki,* 562 U.S. 428, 434–35 (2011); *Gotha v. United States,* 115 F.3d 176, 179 (3d
Cir. 1997)).
[4] S. App. at 205, 747–49.
[5] S. App. at 913-15.
[6] We have jurisdiction to do so under 28 U.S.C. § 1291.

conduct pass without comment. Thus, we begin with the fabled inquiry of Justice

Frankfurter: How did we get here?[7]

**A.**

Tulp's school, and all other foreign medical schools, require certification from the

ECFMG as a condition of their graduates being eligible to apply for medical residencies

in the United States. In 2018, ECFMG began receiving reports that Tulp's school was

offering medical school classes *within* the United States. This would violate its status as a

foreign medical school. ECFMG started an investigation.

It sent affidavits to USAT students asking where their medical training had taken

place. More than 300 students responded that classes had been offered in different

locations within the United States. Not a single respondent reported receiving a complete

medical education in Montserrat.[8] These responses also revealed further discrepancies in

the data USAT had provided to become certified.

ECFMG informed Tulp of their suspicions and invited him to attend their

credentials committee meeting in Philadelphia on November 28, 2018.[9]  It turned out to

be a most memorable encounter. At that meeting, Tulp's attorney refused to provide any

information or to cooperate in any way. Rather than cooperating with ECFMG, Tulp's

attorney accused ECFMG of "blackmailing" USAT students by questioning the school's

truthfulness, threatened the individual committee members with personal liability

---

[7] RUGGERO J. ALDISERT, WINNING ON APPEAL: BETTER BRIEFS AND ORAL ARGUMENT, 149 (1st ed. 1992).
[8] S. App. 208, 403.
[9] S. App. 075.

("everybody in this room is going to be liable"[10]), demanded to be told the name of the security guard stationed outside the conference room,[11] and even insisted that ECFMG justify its investigation rather than offering any defense of Tulp's behavior. The attorney stated, "Dr. Tulp is not going to be talking today. The next time you hear him talk is going to be in federal court."[12]

Soon enough, Tulp filed suit against ECFMG with a rambling complaint that appeared to make a number of allegations: "(1) common law tortious interference with contract against ECFMG; (2) a claim pursuant to 42 U.S.C. § 1983 against ECFMG for violating Plaintiff's procedural due process rights as protected by the Fourteenth Amendment; (3) violation of common law due process against ECFMG; (4) common law fraud against ECFMG; (5) common law abuse of process against ECFMG; (6) common law negligent misrepresentation against ECFMG; and, (7) a claim pursuant to 42 U.S.C. § 1983 against both Defendants for violating Plaintiff's procedural and substantive due process rights as protected by the Fourteenth Amendment."[13]

The district court dismissed every count except the common law due process allegation against ECFMG based on Pennsylvania state law. Ultimately, the district court granted summary judgment to ECFMG on that count as well and this appeal followed.

---

[10] S. App. 380.
[11] *Id.* at 373.
[12] *Id.* at 386.
[13] *Tulp v. Educ. Comm'n for Foreign Med. Graduates*, 376 F. Supp. 3d 531, 538 (E.D. Pa. 2019).

Summary judgment is appropriate when there is no genuine issue of material fact.[14] A particular issue of fact is genuine if a reasonable jury could return a verdict for the non-moving party, and it is material if it would affect the outcome.[15]

**B.**

Appellees argue that ECFMG owed Tulp no duty of common law due process at all. Pennsylvania imposes a due process right on a private organization "only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional advantages . . ."[16] Arguably those conditions are satisfied here, although we note that ECFMG's disciplinary actions were against Dr. Tulp personally and did not prevent USAT from operating or prevent Tulp from teaching there or elsewhere.

More importantly, the Pennsylvania Supreme Court cautions us that "[c]ourts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present."[17] No such prejudice or unfairness of any sort existed here. Instead, the behavior of Tulip's attorney before the ECFMG committee's inquiry can best be described as a waste of time characterized by unprofessional grandstanding and legal obfuscation. Tulp received notice of the hearing, was allowed to attend with counsel, and was repeatedly invited to offer evidence in his own defense. He deliberately

---

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[16] *Sch. Dist. of City of Harrisburg v. Pennsylvania Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973).

[17] *Psi Upsilon of Philadelphia v. Univ. of Pennsylvania*, 591 A.2d 755, 760 (Pa. Super. Ct. 1991).

refused to do so. Any resultant loss of an opportunity to be heard rests squarely with Tulp and his counsel, not ECFMG, and Tulp's argument to the contrary is frivolous. There is simply no due process violation on this record.

Tulp further argues that he should have received more opportunities to be heard, and that ECFMG's public notice of their inquiry—which damaged USAT's reputation before the hearing even took place—were separate violations. The district court considered and dismissed those claims. Tulp has presented nothing that would raise a genuine issue of material fact and we therefore conclude that the district court correctly awarded summary judgment to ECFMG on both claims.[18]

### III.

For these reasons, we will affirm the district court's order granting summary judgment to ECFMG.

---

[18] Far from presenting disputed facts, Tulp's brief contains demonstrably inaccurate allegations. It suggests, for instance, that ECFMG's hearing was "a sham" that lacked "any evidence in the administrative record." Appellant's Br. at 12. Such statements are directly contradicted by the transcript of that proceeding and exceed the bounds of zealous advocacy.