In The
# United States Court of Appeals
# For the Third Circuit

## 19-2706

ORIEN TULP

*Plaintiff-Appellant*

v.

EDUCATIONAL COMMISSION FOREIGN, ET AL

*Defendants-Appellees*

*On Appeal from Order and Judgment entered in the United States District Court for the Eastern District of Pennsylvania at No. 2-18-cv-05540*

## BRIEF AND APPENDIX FOR PLAINTIFF-APPELLANT
## Volume I of III (pgs. 1a-20a)

WILLIAM C. REIL, Esq.
LAW OFFICES OF WILLIAM C. REIL
1515 Market St, Suite 1200
Philadelphia, PA 19102
(215) 564-1635
*Attorney for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................... i

TABLE OF CITATIONS ........................................................ ii, iii

STATEMENT OF JURISDICTION ................................................ 1

STATEMENT OF THE QUESTIONS INVOLVED ................................. 2

STATEMENT OF THE CASE ..................................................... 3

STATEMENT OF SCOPE AND STANDARD OF REVIEW ..................... 8

SUMMARY OF ARGUMENT ..................................................... 9

ARGUMENT FOR APPELLANT .............................................. 12

CONCLUSION ................................................................... 26

## <u>**TABLE OF AUTHORITIES**</u>

**Cases:**                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986)…………………………………………………………13,14

*Biliski v. Red Clay Consolidated Board of Education*, 574 F.3d 214 (3d Cir. 2009)……………………………………………………………..22,23

*Boehm v. University of PA. School of Vet. Med.*, 392 Pa. Superior Ct. 502 (1990)…………………………………………………………………23

*Celotex Corp. v. Cartarett*, 477 U.S. 317, 106 S.Ct. 2548 (1986)…………13

*Country Floors, Inc. v. Gepner*,930 F.2d 1056, 1060 (3d Cir. 1991)……….8

*Healy v. New York Life Insurance Co.*, 860 F.2d 1209 (Third Circuit 1988).8

*Lexion Med. LLC v. Northgate Techs, Inc.*,641 F 3d 1352, 1358(Fed.Cir. 2011)……………………………………………………………..13

*Nicini v. Morra*, 212 F 3d 798, 805-06(3rd Cir. 2000)……………………...14

*Psi Upsilon v. University of PA.*,404 Pa. Superior Ct. 604 (1991)……..23,24

*Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991)………………………………………………………..13

## <u>CONSTITUTION, STATUTES AND OTHER REFERENCES</u>

Fourteenth Amendment to the US Constitution....................................1

42 USC § 1983............................................................................1

FRCP 56(c)..............................................................................13

## **STATEMENT OF JURISDICTION**

This appeal is from a final judgment of the District Court and is within the jurisdiction of this Honorable Court pursuant to the Due Process Clause of the United States Constitution, 42 USC § 1983, and Diversity of Citizenship. The District Court granted judgment as to all defendants. The Honorable Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE QUESTIONS INVOLVED

### I.  Summary Judgment Standard

The Court erred by treating appellee's account of the facts as **undisputed** for the purpose of resolving the Motion for Summary Judgment, and improperly weighing the evidence on key issues of material fact.

### II. Due Process

a. There was a substantial issue of material fact as to whether appellant received a fair hearing before the Educational Commission for Foreign Medical Graduates (ECFMG).

b. The submission of the Internet sponsor note by the ECFMG to the World Directory of Medical Schools (WDOMS) deprived appellant of due process prior to his hearing.

c. The scope of "irregular behavior", as applied by the ECFMG to Dr. Tulp, violated due process.

## STATEMENT OF THE CASE

An overview of the case can be found in paragraph 10 of the complaint

(249a), titled "Summary" (251a). It reads as follows:

> 10. In an attempt to close down the USAT [University of the Sciences, Arts and Technology] and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [See Exhibit D (271a).] to coerce information from students. [Pinsky letter, See Exhibit A (259a).] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. See Exhibit B (263a).

Paragraphs 11 through 20 of the complaint give a factual background of the

general allegations.

> 11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

> 12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a

governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E (273a). On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F (276a).

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

Instructive is paragraph 58 which reads:

The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:
    (a) banning Dr. Tulp without a proper hearing;
    (b) banning Dr. Tulp without an evidentiary basis;
    (c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
    (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
    (e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
    (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

An administrative hearing was held by the ECFMG on 11/28/18 (418a-1) in

Philadelphia. Only Dr. Tulp was present as a witness. The ECFMG – Appointed

Committee then found against Dr. Tulp without introducing any evidence, even

though the ECFMG should have had the burden of proof by a preponderance of

evidence. Procedurally, a federal complaint was filed on 12/24/18. Plaintiff then

filed a motion for a preliminary and/or permanent injunction, which was answered

by a memorandum of law by defendants. A hearing was held before the Court on

01/24/19 at which plaintiff Tulp, defendant Pinsky, and Kara Corrado, an

administrator and attorney for defendant, testified. The Court denied plaintiff's

motion for injunction, and then conducted a scheduling conference in Court.

Defendants filed a motion to dismiss (60a), which was timely answered by

plaintiffs, and the Court ruled on the motion to dismiss on 03/26/19 (Opinion at

20a-1). In summary, the Court found that the only claim which survived was

plaintiff's cause of action for common law due process against the ECFMG. Dr.

Pinsky was dismissed as a plaintiff. ECFMG then answered plaintiff's complaint.

Discovery was conducted by the parties, including a videotaped deposition of Dr.

Tulp and a deposition of Dr. Pinsky. The Court issued an Order granting Summary

Judgment (5a) on 06/25/19 dismissing the final issue of common law due process.

Appellants filed a Notice of Appeal to the Third Circuit Court of Appeals on

07/23/19. Very little, if any, new light was shed on the administrative hearing of

Dr. Tulp before the ECFMG on 11/28/18, which is preserved in the attached

transcript.

Defendants filed a Motion for Summary Judgment (148a) of over 500 pages with exhibits, most of which consisted of attachments or exhibits in the form of a "Joint" Appendix, as well as a Statement of "Undisputed" Material Facts. Plaintiff vigorously denies that the Appendix was joint or that the statements were undisputed, but rather these documents were sent by defendant to plaintiff shortly before their time for summary judgment was up. The proposed Joint Appendix and stipulations were received on or about 05/02/19. (301a). The Court's Scheduling Order (302a) set 05/03/19 for defendant's Motion for Summary Judgment. (301a).

Plaintiff submitted a Statement of "Undisputed" Material Facts (233a), as well as an Appendix (236a), but these are not referenced by the Court in its Opinion.

## STATEMENT OF SCOPE AND STANDARD OF REVIEW

The Supreme Court has held that summary judgment is appropriate where the non-moving party has not adequately set forth and defended the elements of the prima facie case. It is an abuse of discretion for the District Court to grant summary judgment where there are genuine issues of material fact. See *Healy v. New York Life Insurance Co.*, 860 F.2d 1209 (Third Circuit 1988).

The District Court's decision on summary judgment is subject to plenary review. *Country Floors, Inc. v. Gepner*, 930 F.2d 1056, 1060 (3d Cir. 1991).

## SUMMARY OF ARGUMENT

Did defendant ECFMG deny plaintiff Dr. Orien Tulp his right of common law due process, in finding plaintiff culpable of "irregular behavior" and imposing sanctions on Dr. Tulp, USAT and its students? These sanctions essentially destroyed the 15-year career of plaintiff as a medical school administrator, as well as USAT as a viable institution. Dr. Pinsky, in his letter of 12/14/18 (36a) also imposed onerous sanctions on the students of USAT. Neither USAT the institution, nor its students, were allowed to testify at the hearing of Dr. Tulp on 11/28/18.

The transcript of the hearing for Dr. Tulp (418a-1), before the ECFMG, indicates that the hearing does not comport with fundamental fairness, including notice and opportunity to be heard. In many ways, the hearing before the ECFMG on 11/28/18 was a virtual "black box" from appellant's perspective. For example, according to ECFMG's Policies and Procedures (211a-212a), Dr. Tulp was allowed to have a hearing, but the ECFMG presented no evidence at that hearing, even to incorporate the evidence which was allegedly given to the plaintiff prior to the hearing or at the hearing. Appellant was allowed to have counsel, but there was no evidence or witnesses for counsel to challenge. Again, it was never stated in the ECFMG's Policies and Procedures that the ECFMG would offer no evidence or witnesses for the attorneys to cross-examine or even question. In appellant's case, the right to counsel at the hearing was a nullity. Nothing in the ECFMG's Policies

9

and Procedures described who had the burden of proof or the order of proof, even though the ECFMG states that the decision of its committee would be by a preponderance of evidence. (212a). An attorney and administrator for the ECFMG, Kara Corrado, testified (470a-471a) as follows concerning these due process rights at the injunction hearing for Dr. Tulp: There was no evidence or witnesses presented by the ECFMG at Dr. Tulp's hearing of 11/28/18, Ms. Corrado further testified.

Nothing has changed, in terms of the Summary Judgment record on due process, since the Court concluded in its Opinion on the Motion to Dismiss that there was a plausible claim for deprivation of common law due process. (20a9-20a12). This claim should have also survived the Motion for Summary Judgment and been an issue for the fact-finder. Notice and opportunity to be heard are hollow if the committee members for the ECFMG received no evidence at the hearing and had been biased by publication of the ECFMG on the WDOMS that implies the culpability of the appellant. (245a).

This is particularly so because there was no notice in the official Policies and Procedures of the ECFMG that Dr. Tulp was expected to testify first and exclusively, even though the ECFMG had the burden of proof by a preponderance of the evidence. The ECFMG admits that it is not an accrediting agency, but exists to certify medical students. When the ECFMG seeks to take away a vested right of

Dr. Tulp, such as his ownership, reputation and stewardship of USAT, then due process requires that the ECFMG have the burden of proof. Furthermore, there was nothing in the ECFMG's written description of policies and procedures that indicated the nature of the hearing, including the fact that no cross-examination was allowed or evidence or witnesses would be presented by the ECFMG. This notice should have been clearly stated in the rules of the ECFMG governing the conduct of the hearing and the order of proof.

In point of fact, Dr. Tulp intended to rebut a case which the ECFMG was expected to put on, and cross-examine the witnesses by the ECFMG. The ECFMG maneuvered the adjudication of Dr. Tulp so that all of its "evidence" was in written form outside of the hearing. Therefore, appellant's counsel could not test the credibility or personal knowledge of his accusers. This is critical where he is charged with supplying "false information". There was absolutely no notice in the rules of the ECFMG that all evidence would have to be submitted before the hearing. The failure of the ECFMG to describe the general nature of the hearing, in its written rules and regulations, deprived the appellant of the requisite notice to meaningfully defend against the charges of "irregular behavior". Notice and opportunity to be heard are virtually meaningless if the committee members of the ECFMG received no evidence at the hearing.

1. The hearing before the ECFMG was a sham, without any evidence in the administrative record, or witnesses and cross-examination allowed, except for Dr. Tulp.

2. The 20-minute hearing allotted by the ECFMG for Dr. Tulp was terminated prematurely by counsel for the ECFMG without any evidence being received.

3. The ECFMG put notices on the WDOMS, an Internet site which appears to be controlled by the ECFMG (Pinsky Deposition, 666a), over two months before the hearing for Dr. Tulp, which implied that appellant had already been found culpable.

4. Anonymous charges about a branch campus were leveled against USAT, but no site visit by the ECFMG was ever documented.

5. Allegations based on redacted affidavits (47a), allegedly filled-out by USAT students under the threat of punishment by the ECFMG, were used against Dr. Tulp to suggest backdating of attendance by students, but the ECFMG never attempted to compare these records to the original records at USAT.

These allegations appear to be contested by the parties, and they constitute issues of material fact, which should be determined by a jury. The "hearing" by the ECFMG for Dr. Tulp resembled a preordained determination, devoid of any evidence, in which Dr. Tulp had basically a right of "allocution" only.

## **ARGUMENT FOR APPELLANT**

### **I. Material Issues of Fact and Court Standard**

### **Standard for Summary Judgment**

In order to prevail on a Motion for Summary Judgment, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no

reasonable fact finder could find for the plaintiff on an issue which is case determinative. *Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991). Summary judgment is inappropriate when credibility is at issue or different ultimate inferences can be reached. FRCP 56(c). In addition to the evidence cited in Rule 56(c), a court may take into account any material that would be admissible or usable at trial. *Wright and Miller, Federal Practice and Procedure*, Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgment motion, the record will be viewed in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). Summary judgment is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party, *Celotex Corp. v. Cartarett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is argued that there are several issues of material fact which would mitigate against summary judgment.

### The Court Erred in its Application of the Summary Judgment Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). A grant of summary judgment is determined under the law of the regional circuit in which the district court sits. *Lexion Med. LLC v. Northgate Techs, Inc.*, 641 F 3d 1352, 1358 (Fed.Cir. 2011).

The role of the Court in a Motion for Summary Judgment is well established. The Court must view the facts and all reasonable inferences that may be drawn from the facts in a light most favorable to the non-movant and may only grant summary judgment if the judge finds that there is no dispute as to the material facts and the movant is entitled to a judgment as a matter of law. The Court erred in preforming this task because the Court became a trier of fact and rendered the Court's judgment on the facts. The Court's summary judgment order was more an order of a bench trial, where the Court weighed facts and rendered the Court's judgment.

The lower Court considered Movant's account of facts undisputed, while considering Non-Movant's sworn affidavit "conclusory assertions without citation to the record". (Memorandum Opinion of the Court, 6a; Answer to Summary Judgment Motion, Nomenclature Difficulties 217a) The standard for the Court to apply is to draw all reasonable inferences in favor of Non-Movant. *Nicini v. Morra,* 212 F 3d 798, 805-06. Instead of following the required standard, the Court erred in ignoring Non-Movant's facts and drew all inferences in favor of Movant. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255(1986). The Court ignored the competent evidence that was stated in Non-Movant's sworn affidavit: (352a-355a).

## **Issues of Disputed Fact**

1.   The ECFMG staff, prior to any notice or hearing placed on the World
Directory of Medical Schools (WDOMS) website page for USAT, beginning
on or before September 14, 2018, a notice that USAT students were being
subjected to special investigation and enhanced screening, which reflected
negatively on USAT and Dr. Tulp prior to his hearing. (WDOMS Internet
notice at 245a).

2.   Prior to placing **notice** on the website, the ECFMG staff did not notify
USAT or appellant that the ECFMG had a concern, despite the observation
that for the proceeding 15 years not a single error or concern had been
reported to USAT by ECFMG. The ECFMG's staff took disciplinary  action,
prior to any notice or a hearing before the ECFMG Credential committee, by
placing damaging information on the Sponsor note Section for USAT on the
WDOMS website.

3.   Prior to the November 28, 2018 hearing, appellant was not supplied with
any affidavits from any student. The ECFMG admits in its Summary
Judgment Motion that the ECFMG had received 300 student affidavits.
(190a). Movant's Summary Judgment Motion, Page 11, issue 28.

4.   The lawyer who conducted the hearing for the ECFMG Credentials committee presented no evidence for the committee to consider. (Transcript of ECFMG hearing, 360a).

5.   There are no written rules by the ECFMG governing the presentation of proof. The hearing was conducted by the ECFMG counsel as if appellant had the obligation to prove his innocence alone, without any evidence, witnesses, or cross-examination allowed. (Policies and Procedures of ECFMG, 214a-215a).

The Court erred in granting a summary judgment order because the Court failed to indulge every reasonable inference regarding the above facts and resolve any doubts in the Non-Movant's favor. Instead the Court resolved all doubts in favor of Movant.

By failing to credit the evidence that contradicted Movant's key factual conclusions, the Court improperly weighted the evidence and resolved the disputed issues in favor of the Movant. *Anderson,* 477 U.S. at 249.

**Undisputed Facts of the ECFMG**

The Court considered the following Movant's facts as undisputed (Court's Opinion on Summary Judgment, 6a):

1.   The Medical Education Credential Committee, based on information available to it, will determine by a preponderance of the evidence whether an individual engaged in "irregular behavior". 31/548 item 6 of Movant's

16

Undisputed facts. (References 1-10, inclusive, are to the 554-page Joint Appendix, which was adopted by the Court, but never agreed to by plaintiff.)

2.    The Committee is required to make decision based on preponderance of evidence before the Committee. Movant Undisputed Evidence, 31/548.

3.    No evidence was presented at the hearing. Movant Undisputed Evidence, 540/548.

4.    By a preponderance of the evidence, the decision was made based on evidence at the hearing. 540/548.

5.    No evidence was presented by the ECFMG at the Committee hearing. 365/548.

6.    ECFMG presented no evidence to the Committee 367/548.

7.    ECFMG took adverse action prior to November 28 hearing. 113/548, 380/548, 107/548. 123/548.

8.    ECFMG posted notice in mid September. 107/548.

9. Evidence was given to Dr. Tulp minutes before hearing that had not been given to him to review. (Tulp deposition, p110-111, 838a-839a).

10. Evidence was withheld from Dr. Tulp. 118/548.

The Movant's alleged facts established three disputed factual issues which determination is the responsibility of the jury, not the Court. The first issue is whether Non-Movant received **notice** prior to Movant taking action against Non-Movant; the second issue is whether Non-Movant received all evidence to be considered by the Credential Committee in a timely fashion; and the third issue is whether Non-Movant was giving due process when no evidence was presented before the Committee by Movant's staff, without notice, in the ECFMG's Policies and Procedures.

In *Tolan v. Cotton*, "the court improperly weighted the evidence" and resolved disputed issues in favor of the moving party. *Tolan v. Cotton*, 572 U.S. 650 (2014). Similarly, here, the court below failed to incorporate the proper standard for summary judgment as outlined in *Tolan*:

"Summary judgment is appropriate only if 'movant shows that there is  no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law' F.R.C.P 56(a). In making that determination a court must view the evidence ' in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

The Court's Opinion reflects a misapplication of the summary judgment standard. By weighing the evidence and reaching factual inferences contrary to Non-Movant's competent evidence, the Court neglected to adhere to fundamental

principles at the summary judgment stage. Reasonable inferences should be drawn in favor of the Non-Movant. There are genuine issues of material fact in this case and summary judgment should not have been granted.

## II. Due Process

### a. The "Non-Hearing" Hearing

There is a question of material fact for the jury as to whether Dr. Tulp received a fair hearing. The transcript of the administrative hearing (418a-1) reveals that the ECFMG offered no evidence or witnesses, even though the ECFMG had the burden of proof.

Nowhere in the ECFMG's "policies and procedures" does it say that the appellee does not have to offer any evidence at the hearing. In point of fact, this is what was done.

Again, the ECFMG's "policies and procedures" did not indicate the sequence of the hearing, except to say that Dr. Tulp had 20 minutes. The hearing was more like a right of allocution than a hearing.

The ECFMG gave appellant the right to bring counsel to the hearing. What use is the right of counsel at a hearing if counsel's function is relegated to that of a potted plant? If the ECFMG is to present no witnesses or evidence at the hearing, then there is very little for counsel to do, except to sit there and listen to their client.

It is disingenuous to offer a hearing, when one has the burden of proof, and then not present anything at the hearing. This similarly holds for the right of counsel when the hearing is structured so that counsel has no function. There is nothing in the ECFMG's rules which indicates that one should expect to have a "hearing" where no evidence is presented by the party that has the burden of proof. Nowhere in the ECFMG's "policies and procedures" does it state that the charge of "irregular behavior" can be decided solely on submissions prior to the hearing. Counsel for appellant asked what material was supplied to the hearing committee, and what letter was sent to the committee outlining the nature of the material and how it should be used by the committee.

Elisa McEnroe, Esquire, who conducted the committee hearing, and is an attorney for appellee in this case, and who submitted a personal affidavit along with her Surreply, refused to give such material to appellant's counsel. Furthermore, appellant had two binders placed on the desk in front of him seconds before the hearing began and ostensibly, this was supposed to be the evidence that he was to have digested.

The Court, in its Opinion, nowhere notes the deficiencies in the ECFMG's "policies and procedures". It is not enough to grant a hearing and to allow counsel to attend, if the proceedings are controlled in such a way that this right to counsel is not meaningful. It is reasonable for attorneys to assume that there will be some

20

evidence and witnesses at a hearing where the opposition bears the burden of
proof.

It is not an accident that the nature of the ECFMG's hearing is not discussed.
Kara Corrado, a lawyer for the ECFMG, who attended the hearing, states, in her
testimony at the hearing on the preliminary injunction, on 01/15/19, that neither
cross-examination nor evidence are customarily presented at ECFMG hearings.
(470a-471a) This fact is conveniently omitted from the "policies and procedures"
of the ECFMG.

### b. Ex Parte Actions of the ECFMG and Notice

Over two months before the hearing of Dr. Tulp on "irregular behavior" on
11/28/18, the ECFMG put language on the World Directory of Medical Schools
(WDOMS) website (245a), which implied that Dr. Tulp had already been found
culpable of "irregular behavior". This is a posting on the Internet that is routinely
viewed by foreign medical students and physicians. Not only did the ECFMG post
this message without notice to Dr. Tulp, but it was done totally on an ex parte
basis. The appearance of the message was to indicate that USAT and Dr Tulp, as
its president, had done something wrong which would require sanctions by the
ECFMG. Interestingly, the WDOMS is in the same building in Philadelphia as the
ECFMG.

It would appear to be a question of material fact as to whether the ECFMG

sought to influence or taint the hearing for "irregular behavior" by Dr. Tulp.

Certainly it is interesting that neither the WDOMS nor the ECFMG ever indicate in

their communications on the Internet that they claim to be private organizations,

and that these are not governmental actions or postings. One of the questions that

Dr. Tulp, through his attorneys, did not get to ask at the so-called hearing, was the

relationship between the ECFMG and the WDOMS, and why this sponsor note

was posted prior to the hearing of Dr. Tulp.

At the very least, it is suggested that this publication on the WDOMS

website by the ECFMG raises a question of whether Dr. Tulp received common

law due process.

### c. "Irregular Behavior" and Authorization of ECFMG

The term "irregular behavior" (210a) is void for vagueness, since "irregular

behavior" is so broad that it essentially amounts to any behavior which the Board

does not approve. There is no intelligible standard to ascertain "irregular behavior"

with the exception of fiat by the ECFMG.

There is no basis to exercise jurisdiction over Dr. Tulp if ECFMG is a

private party, as defendants argue. There is no contractual relationship between the

parties and defendants claim there is no state action. If that is true, there is no basis

to exercise jurisdiction over Dr. Tulp. He is not a medical student, nor did he ever

enter into an agreement with the ECFMG. Defendants can not with one hand

proclaim that ECFMG has jurisdiction over Dr. Tulp, but with the other hand, assert that the ECFMG is a private party.

## Due Process Cases Discussed in the Court's Opinion

*Biliski v. Red Clay Consolidated Board of Education*, 574 F.3d 214 (3d Cir. 2009), is a case where there was a computer technician who was dismissed by a school district and he argued that he did not have an opportunity to respond to the charges in the memos against him. The Third Circuit District Court granted summary judgment finding that Biliski had no protectable property interest in his job. This is distinguishable from Tulp, who clearly had a property interest in his reputation and stature as president of USAT, in which he had an ownership interest. Also, Biliski was an employee-at-will with the university, whereas Tulp had no legal nexus with the ECFMG.

Another case cited by the Court is *Boehm v. University of Pennsylvania* (573 A.2d 575 (Pa. Super. 1990)) and it involved veterinary students at Penn who were being disciplined. In *Boehm*, the students got extensive cross-examination, and witnesses were called by the University who assumed the burden of proof. Also, *Boehm* deals with the contract between a private university and its students, as opposed to the instant case, where the legal nexus between the parties is tenuous, at best. Again, *Boehm* is a case that underscores that the quantum of due process for Dr. Tulp should have been cross-examination and/or the ability to confront

witnesses with personal knowledge at the hearing. The quantum of due process afforded to Dr. Tulp should have been considerable, not reduced to a 20-minute right of allocution.

An important case cited by the Court is *Psi Upsilon v. University of Pennsylvania* (591 A.2d 755 (Pa. Super. 1991)). It involved punishment of a fraternity regarding a hazing incident. Common law due process, or the equivalent thereof, was recognized, because the Court was dealing with a private university. While the students in this case were under the jurisdiction of Penn, it is argued that Dr. Tulp was not under ECFMG jurisdiction. There is no statute which gives the ECFMG authority over Dr. Tulp, nor did he agree to any legal relationship. The ECFMG only does certification, not accreditation. In *Psi Upsilon,* there was a full evidentiary hearing, and this is much different than *Tulp,* even though the public interest in shutting down a medical school and refusing to accept the credits of hundreds of students seems to outweigh the slap on the wrist the fraternity received for misconduct in *Psi Upsilon.*

The Court ends its analysis in the summary judgment Opinion by referencing the case, *Marlboro Corp. v. Association of Independent Colleges*, 556 F.2d 78 (1st Cir. 1977). The Court implies that, like the plaintiff in *Marlboro*, Dr. Tulp got all the due process he deserved. There are several distinctions. Marlboro was seeking accreditation so it had the burden of proof, unlike Dr. Tulp. *Marlboro*

24

essentially was denied for failure to produce an expert accountant at the administrative hearing. Dr. Tulp arrived at a hearing to find that all documents gathered by the ECFMG had already been submitted to an adjudicatory committee. Tulp was unable to object to this evidence or attack the credibility or personal knowledge of anyone from the ECFMG who gathered evidence before the hearing. Such evidence never made it into the record of the hearing. Dr. Tulp was not allowed to have any witnesses. Given that the *Tulp* administrative hearing was a virtual nullity, it should be a jury issue as to whether Dr. Tulp got all the due process that he deserved.

## **CONCLUSION**

For all the foregoing reasons, it is respectfully submitted that the Court erred in

granting defendant's Motion for Summary Judgment.

Respectfully submitted,
*/s/ William C. Reil, Esq.*
William C. Reil, Esquire
For: Tommy Swate, Esquire
Counsel for Appellant
Dr. Orien L. Tulp
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
11/27/19

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 5,534 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7).

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

A virus check was performed on the .pdf file of this Brief.

The text of the electronic Brief is identical to the text in the paper copies. Service has been performed by the ECF Program.

Respectfully Submitted,

Dated:  November 27, 2019            */s/ William C. Reil, Esq.*
                                     William C. Reil Esq.

## CERTIFICATE OF BAR ADMISSIONS

In accordance with 3rd Circuit LAR 46.1(e), William C. Reil, Esq. certifies that he is a member of the bar of this Court.

Dated:  November 27, 2019              /s/ William C. Reil, Esq.
                                       William C. Reil, Esq.

# AFFIDAVIT OF SERVICE

## IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

## 19-2706

DR. ORIEN L. TULP,

*Appellant*

v.

EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, et al,

*Appellees*

COUNTY OF PHILADELPHIA

I, Frederick W. Wright, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

I am retained by William C. Reil, Esq., Attorney for Appellant, that on this 27th day of November 2019, the Brief and Appendix have been served by ECF.

Filing to the Court has been perfected on the same date as above.

/s/Frederick W. Wright
FREDERICK W. WRIGHT
Wright Appellate Services
517 Jefferson Building
1015 Chestnut Street
Philadelphia, PA 19107
(215) 733-9870*(800) 507-9020*FAX (215) 733-9872
Email address: appealfww@aol.com

# TABLE OF CONTENTS

**Page**

Notice of Appeal, filed July 23, 2019 ........... 1a

Memorandum Opinion, filed June 25, 2019 . 5a

Opinion, filed March 26,2019 ...................... 20a-1

District Court Docket Entries........................ 21a

Complaint, filed December 24, 2018 ........... 25a

Defendant's Motion to Dismiss Plaintiff's
Complaint, filed January 22, 2019 ............. 60a

Scheduling Order, filed January 25, 2019..... 90a

Plaintiff's Answer to Defendant's Motion to
Dismiss the Complaint, filed February 4,
2019 ............................................................. 93a

Reply in Support of Defendant's Motion to
Dismiss Plaintiff's Complaint, filed
February 21, 2019 ...................................... 112a

Defendant Educational Commission for
Foreign Medical Graduates Answer to
Complaint and Affirmative Defenses, filed
April 9, 2019 ................................................ 128a

Memorandum of Law in Support of
Defendant Educational Commission for
Foreign Medical Graduates Motion for
Summary Judgment, filed May 3, 2019 ..... 148a

Plaintiff's Memorandum of Law in
Opposition to Defendant's Motion for
Summary Judgment, filed June 3, 2019 ..... 217a

Reply in Support of Defendant's Motion for
Summary Judgment, filed June 20, 2019 ... 390a

Transcript, dated November 28, 2018........... 418a

|  | Page |
|---|---|
| Hearing, dated November 28, 2018 .............. | 418a-1 |
| Transcript, dated January 24, 2019 .............. | 449a |
| Transcript, Deposition of William W. Pinsky, M.D., dated February 6, 2019 ........ | 584a |
| Transcript of Video Deposition, of Orien L. Tulip, PH.D., M.D., dated April 17, 2019 .. | 729a |

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

ATTORNEY FOR PLAINTIFFS

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| | : | CIVIL ACTION NO. 2:18-cv-05540-WB |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| and | : | JURY TRIAL DEMANDED |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Education Commission for | : | |
| Foreign Medical Graduates | : | |

## NOTICE OF APPEAL

Plaintiff, Dr. Orien L. Tulp, appeals to the United States Court of Appeals for the Third

Circuit, the Orders of the Honorable Wendy Beetlestone, granting summary judgment to

defendants (DKT. #36); and the Order granting, in part, the motion to dismiss by defendants

(DKT. #29). A copy of these Orders are attached as Exhibits "A" and "B," respectfully.

Respectfully,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
I.D. # 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
For: Tommy Swate, Esquire

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. ORIEN L. TULP,
      **Plaintiff,**

    v.

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES AND
DR. WILLIAM W. PINSKY,
      **Defendants.**

**CIVIL ACTION**

**NO. 18-5540**

### ORDER

**AND NOW,** this 25th day of June, 2019, upon consideration of Defendant Education

Commission for Foreign Medical Graduates' Motion for Summary Judgment (ECF No. 31), and

Plaintiff's opposition thereto (ECF No. 33), **IT IS HEREBY ORDERED** that Defendant's

Motion is **GRANTED.**

    **IT IS FURTHER ORDERED** that the Clerk of Court shall mark this case as **CLOSED.**

                        **BY THE COURT:**

                        /S/Wendy Beetlestone, J.

                        _____
                        **WENDY BEETLESTONE, J.**



2a

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>　　　　Defendants. | NO. 18-5540 |

## ORDER

**AND NOW**, this 26th day of March, 2019, upon consideration of Defendants' Motion to Dismiss and support thereof (ECF Nos. 20 & 25), and Plaintiff's Response in Opposition thereto (ECF No. 24), it is hereby **ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Defendants' Motion to Dismiss Plaintiff's common law due process claim against ECFMG is **DENIED**;

2. Defendants' Motion to Dismiss the remainder of Plaintiff's claims against Defendants is **GRANTED**. Such claims are **DISMISSED WITHOUT PREJUDICE.**

BY THE COURT:

/s/ Wendy Beetlestone

_____

WENDY BEETLESTONE, J.



3a

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

ATTORNEY FOR PLAINTIFFS

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| | : | CIVIL ACTION NO. 2:18-cv-05540-WB |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| and | : | JURY TRIAL DEMANDED |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Education Commission for | : | |
| Foreign Medical Graduates | : | |

## CERTIFICATE OF SERVICE

I, William C. Reil, Esquire, hereby Certify that on this 23rd day of July, 2019, a true and

correct of the Notice of Appeal was served on the following attorney for all defendants by ECF

electronic service and FedEx:

Elisa P. McEnroe, Esquire
Morgan, Lewis, and Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

Dated: July 23, 2019

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
I.D. # 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
For: Tommy Swate, Esquire

4a

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>　　　　　Plaintiff, | CIVIL ACTION |
| v. | |
| EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>　　　　　Defendants. | NO. 18-5540 |

## MEMORANDUM OPINION

This case is, in effect, Plaintiff Orien Tulp's challenge to the disciplinary action taken by

Defendant Education Commission for Foreign Medical Graduates ("ECFMG") against Plaintiff

for providing false information about the branch campuses of an overseas medical school. The

Court previously dismissed Plaintiff's various constitutional and common law claims, with the

sole exception of a common law due process claim. *See Tulp v. Educ. Comm'n for Foreign Med.*

*Graduates*, 2019 WL 1382725, at *1 (E.D. Pa. Mar. 26, 2019). ECFMG now moves for

summary judgment on this last remaining claim. For the reasons that follow, ECFMG's motion

will be granted.

### I.    LEGAL STANDARD

Summary judgment must be granted to a moving party if "there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see also Alabama v. North Carolina*, 560 U.S. 330, 344 (2010). A genuine dispute "exists

if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

*U.S. ex rel. Greenfield v. Medco Health Solutions, Inc.*, 880 F.3d 89, 93 (3d Cir. 2018).

The party opposing the motion for summary judgment must "go beyond the pleadings,"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), and demonstrate that "a fact . . . is genuinely

disputed" by "citing to particular parts of materials in the record," Fed. R. Civ. P. 56(c); *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) ("The non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."). When the non-movant "fails to properly address [the movant's] assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion," and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2); *see, e.g., Payne v. City of Philadelphia*, 2016 WL 1298951, at *2 (E.D. Pa. Apr. 4, 2016).

In accordance with this Court's policies and procedures, ECFMG submitted a statement of material facts along with its summary judgment motion, supported by citations to the record. Plaintiff's response neither meaningfully addressed ECFMG's assertions of fact nor demonstrated that any of those assertions were genuinely disputed. Instead, Plaintiff recited the allegations contained in the Complaint or else produced conclusory assertions without citation to the record. Accordingly, the Court will consider ECFMG's account of the facts undisputed for purpose of resolving this motion.

Lastly, where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

## II.    FACTS & PROCEDURAL HISTORY

### A. ECFMG's Policies & Procedures

ECFMG is a private, non-profit organization based in Philadelphia that certifies international medical graduates ("IMGs") so that those students can pursue post-graduate medical training in the United States. Specifically, ECFMG: (1) certifies the readiness of IMGs through an evaluation of their qualifications, (2) verifies IMGs' education credentials, and (3) provides that information to graduate medical programs and other health care providers. As part of the verification process, ECFMG collects certain documentation from IMGs, including documentation confirming that graduates attended a recognized international medical school.

ECFMG defines an international medical school as "an education facility located in a country outside of the United States and Canada with its primary campuses and main operations located in that country." Where an international medical school operates branch campuses, ECFMG requires confirmation that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country." Only graduates from a bona fide international medical school can obtain ECFMG certification.

To ensure the integrity of its certification process, ECFMG maintains policies to detect and snuff out "irregular behavior." The policies are set forth in ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior, which define "irregular behavior" as "all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG[.]"

"Examples of irregular behavior include . . . submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual," and "falsification of information on applications, submissions, or other materials to ECFMG." The Policies and Procures make clear that "such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG."

The Policies and Procedures also set out a specific process by which ECFMG investigates suspected irregular behavior, determines whether an individual engaged in irregular behavior, and takes remedial action if a finding of irregular behavior is made:

- After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and feasible, staff will conduct a follow-up investigation to gather additional information.

- If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee [hereinafter "Credentials Committee].

- [T]he individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior.

- The individual will be given an opportunity to provide written explanation and to present other relevant information.

- The individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes.

- All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the [Credentials Committee]. The [Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior.

- If the [Credentials Committee] determines that the individual engaged in irregular behavior, the [Credentials Committee] will determine what action(s) will be taken as a result of the irregular behavior. ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto.

- The [Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the [Credentials Committee] did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the [Credentials Committee]'s decision was clearly contrary to the weight of the evidence before it.

## B. ECFMG's Investigation of Plaintiff

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a medical school headquartered on the British Overseas Territory of Montserrat. In July and August of 2018, ECFMG received information—including an email from the parent of a USAT student—indicating that USAT was offering classes in Miami, Florida. On August 21, 2018, ECFMG emailed Plaintiff, informing him that "[i]t ha[d] recently come to the attention of [ECFMG] that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida," and requesting Plaintiff produce "documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States." ECFMG never received any such documentation.

Instead, on August 21, 2018, Plaintiff responded to ECFMG's email, as follows:

This is incorrect information. The Miami location is an information and testing site only . . . and an Orientation for new students is conducted prior to their traveling to the Caribbean. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination.
I hope this will clarify your concern.

5

On September 14, 2018, ECFMG's Vice President of Operations, Kara Corrado, sent

Plaintiff a follow-up email, stating that ECFMG "received information USAT is providing

medical education lectures not only at its Miami site, but also at sites in Tampa, FL, and Dallas,

TX." The email ECFMG would "continue[] its review of this matter," and that "as part of its

review, ECFMG has reached out to students and graduates of USAT in order to collect

information from them regarding their attendance at USAT." Corrado continued:

> Effective today, USAT students and graduates seeking services related to
> ECFMG Certification . . . must complete and submit an affidavit attesting to the
> accuracy of the medical school information provided to ECFMG. Services will
> not be provided to individuals who do not complete the affidavit. ECFMG has
> provided instructions about this process directly to the students and graduates.

Consistent with Corrado's email, ECFMG sent affidavits to USAT students and

graduates, asking them to certify their dates of attendance at USAT as well as the location where

they took their basic science courses. More than 300 students submitted affidavits indicating that

they took classes in the United States; none indicated that they took courses in Montserrat.

On September 24, 2018, ECFMG also updated its Sponsor Note for USAT on the World

Directory of Medical School—the directory maintained by ECFMG to inform the public of the

eligibility of a school's graduates to start the process of ECFMG certification. The Sponsor Note

stated that "students and graduates of USAT are subject to enhanced procedures that must be met

in order to be eligible for ECFMG Certification related services[.]"

### C. ECFMG's Irregular Behavior Proceedings Against Plaintiff

On October 18, 2018, ECFMG sent Plaintiff an email, advising him

> of the allegation that you, individually and in your capacity as an official of the
> University of Science, Arts & Technology (USAT) Faculty of Medicine,
> Montserrat, engaged in irregular behavior in connection with providing false
> information to ECFMG. Specifically, you provided false information to ECFMG
> when you (1) notified ECFMG that USAT does not operate a branch campus in

6

10a

> Miami, Florida and (2) certified to the attendance dates of several USAT students
> and graduates when ECFMG has information that these students were not
> attending USAT during some of the time periods to which you certified.

In addition, the letter summarized the procedure by which the Credential Committee would

review the allegations. The letter: explained that matter was being referred to the Credential

Committee for review at its November 28, 2018 meeting; advised Plaintiff to review the

Credentials Committee's Policies and Procedures, which were attached to the email; informed

Plaintiff that he had the opportunity to appear before the Credential Committee on November 28,

accompanied by legal counsel; listed the documents the Credential Committee would be

reviewing on that date, which were also attached to the email; and, requested Plaintiff provide a

written response to the allegations by November 1, 2018. On October 18, ECFMG also updated

USAT's Sponsor Note, as follows: "As of January 1, 2019, students and graduates of this

medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for

ECFMG Certification[.]"

Plaintiff, through counsel, responded to ECFMG's letter on October 23, 2018.[1] Plaintiff

confirmed that he would attend the November 28 hearing, requested additional documentation

about the allegations, and questioned ECFMG's decision to change USAT's Sponsor Note prior

to the hearing. On October 26, 2018, Corrado clarified that the allegations of irregular behavior

concerned only Plaintiff's actions, and not USAT more broadly. Then, on November 14, 2018,

Corrado emailed Plaintiff's counsel, confirming that:

> [Plaintiff] is scheduled to appear before the ECFMG Committee with you and Mr.
> Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM. . . . In
> accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20
> minutes, during which time he will have the opportunity to present his response to
> these allegations (either personally or through his counsel) and the ECFMG
> Committee members, ECFMG counsel, and staff will have the opportunity to ask
> questions. After that, Dr. Tulp may provide a brief, closing statement.

---

[1] The letter was incorrectly dated September 23, 2018.

Corrado also provided Plaintiff's counsel with the materials that the Credentials Committee would review at the meeting. On November 16, 2018, Corrado sent Plaintiff's counsel a follow-up email to "confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for [Plaintiff]." The same day, Plaintiff's counsel responded, stating that he had received the documents.

On November 28, 2018, Plaintiff appeared before the Credential Committee, accompanied by counsel. At the outset of the hearing, ECFMG again provided Plaintiff with copies of the materials under consideration. After Corrado summarized the allegations of irregular behavior, Plaintiff's counsel made his opening remarks, stating:

> First, I would like to ask for the—I've asked and I've asked and I've asked for the packet that was presented to the committee members. I would like a copy of the packet, the information that was submitted to the committee members so that I will know what was considered by the committee before we came here today because you're considering information that I may or may not know about.

Counsel for ECFMG directed Plaintiff's counsel to the printed materials provided at the beginning of the hearing and reiterated that all materials under consideration by the Credential Committee had been provided to Plaintiff and his counsel on several occasions.

Plaintiff's counsel then made a series of legal arguments to the effect that ECFMG: (1) had "no jurisdiction over [Plaintiff]," (2) bore "the sole exclusive burden of proof," (3) had "a duty of presenting . . . evidence . . . before [Plaintiff] has to answer anything," but failed to do so, (4) "co-mingl[ed] . . . the prosecutorial and jury functions," (5) prejudged the matter by taking action against USAT, and (6) failed to provide Plaintiff with the "regulations and protocols for these meetings[.]" Plaintiff's counsel concluded: "That is our opening statement. If you have any questions, you can address them to me. [Plaintiff] will not be answering any questions."

Counsel for ECFMG and Plaintiff then engaged in a protracted back-and-forth, in which ECFMG's counsel invited Plaintiff to provide evidence or testimony addressing the allegations of irregular behavior and Plaintiff's counsel declined, arguing ECFMG carried the burden of production. After roughly nine minutes of this back-and-forth, counsel for ECFMG terminated the hearing, by stating: "You're not providing any evidence. So thank you for coming today[.]"

### D. Irregular Behavior Determination

On December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had completed its review and determined that Plaintiff had engaged in irregular behavior. Specifically, the Credential Committee found Plaintiff provided false information when he "notified ECFMG that USAT does not operate a branch campus in Miami, FL" and "certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified."

As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1) refusing, for a minimum of five years, to accept any documents signed and/or certified by Plaintiff; (2) adding to ECFMG's Sponsor Note for USAT that "a certain official of [USAT] engaged in irregular behavior in connection with providing false information to ECFMG;" and, (3) making a permanent annotation in Plaintiff's ECFMG record that he engaged in irregular behavior. ECFMG also informed Plaintiff that he had thirty days to appeal the decision. Plaintiff did not petition for reconsideration of the Credential Committee's determination.

### E. Procedural History

On December 24, 2018, Plaintiff initiated this action against ECFMG and Dr. William

Pinsky, the President of ECFMG, and, on January 2, 2019, filed a motion for a preliminary

injunction. On January 22, 2019, Defendants moved to dismiss the Complaint. Two days later,

on January 24, 2019, the Court held a hearing on Plaintiff's preliminary injunction motion and

denied the request for preliminary relief for the reasons stated on the record. On March 26,

2019, the Court granted Defendants' motion to dismiss as to all of Plaintiff's claims against Dr.

Pinsky, and as to all of Plaintiff's claims against ECFMG, with the exception of the common law

due process claim. *See Tulp*, 2019 WL 1382725 at *1. ECFMG now moves for summary

judgment on this last claim.

## III. DISCUSSION

"The touchstone of due process is protection of the individual against arbitrary action[.]"

*Wolf v. McDonnell*, 418 U.S. 539, 5588 (1974). Many jurisdictions, Pennsylvania included,

recognize a limited common law due process cause of action in addition to the more familiar

constitutional due process cause of action. *See McKeesport Hosp. v. Accreditation Council for

Graduate Med. Educ.*, 24 F.3d 519, 534-35 (3d Cir. 1994) (Becker, J., concurring in the

judgment) (collecting cases); *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic

Ass'n*, 309 A.2d 353, 357 (Pa. 1973) (recognizing the existence of a common law duty).

Under Pennsylvania law, "private associations" owe a common law duty of due process

"only under limited circumstances." *Sch. Dist. of City of Harrisburg*, 309 A.2d at 357. One

such instance is where a private organization that serves a public function subjects a party to

disciplinary action. *See Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super.

1991) (holding that the University of Pennsylvania, a private organization, owed a common law

duty of due process to a group of college students that it subjected to disciplinary action); *Boehm

v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990) (holding that the

10

14a

University of Pennsylvania owed a common law duty to graduate students disciplined for academic misconduct). The duty "operate[s] as a 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)). Because such "quasi-public" organizations, "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight." *Id.*

"The requirements of common law due process are quite similar to those for constitutional due process[.]" *McKeesport Hosp.*, 24 F.3d at 535. Common law due process requires that the disciplining organization adhere "to those procedural safeguards which the [organization] specifically provides." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where the University "followed its Code of Rights punctiliously"). In addition, those procedural safeguards must accord with "basic principles of . . . fundamental fairness," meaning "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (holding due process met where plaintiff "had notice and an opportunity to be heard"); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (holding due process requirement where disciplined party "was afforded notice of the action taken against it and . . . availed itself

of the opportunity to be heard").[2]

The notice requirement is satisfied where the disciplinary body provides "notice of the charges against [the disciplined party] and also of the evidence against [the disciplined party]." *Boehm*, 573 A.2d at 582; *Psi Upsilon*, 591 A.2d at 759 (holding plaintiffs afforded notice where University provided statement laying out charges and reciting factual allegations underpinning charges). As for an opportunity to be heard, the disciplinary body must provide "an opportunity [for the disciplined party] to present his side of the story." *Biliski v. Red Clay Consol. Sch. Bd. of Educ.*, 574 F.3d 214, 220 (3d Cir. 2009) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)). Thus, due process requires "the opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Id.* (quoting *Loudermill*, 470 U.S. at 542); *Boehm*, 573 A.2d at 508 (explaining that an individual must be provided with the opportunity to "produce either oral testimony or written affidavits of witnesses on his behalf") (quoting *Dixon v. Al. State Bd. of Ed.*, 294 F.2d 150, 158 (5th Cir. 1961)). Where in-person testimony is permitted, such hearings "need not be elaborate," *Biliski*, 574 F.3d at 220 (quoting *FDIC v. Mallen*, 486 U.S. 230, 247 (1988)), "subject to strict rules of judicial procedure," *Psi Upsilon*, 591 A.2d at 761, or have all the trappings of "a full-dress judicial hearing," *Boehm*, 573 A.2d at 508 (quoting *Dixon*, 294 F.2d at 158).

Here, as the Court previously explained, ECFMG is a "quasi-public" private organization because it "exercises significant authority in areas of public concern," *Prof'l Massage Training*

---

[2] When dealing with constitutional due process claims, Pennsylvania courts apply the familiar balancing test set out in *Matthews v. Eldridge*, 424 U.S. 319 (1976), to determine the amount of process due. *Id.* at 335; *see, e.g., Bundy v. Wetzel*, 184 A.3d 551, 557 (Pa. 2018). But the few Pennsylvania cases to address common law due process claims have not employed the *Matthews v. Eldridge* framework. *See, e.g., Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585. Instead, those cases have employed a case-by-case analysis into whether the disciplined party was "given a fair hearing." *Boehm* 573 A.2d at 584. Accordingly, this Court predicts that Pennsylvania law would not require the Court to apply *Matthews v. Eldridge* here, but rather, requires the Court to evaluate whether Plaintiff was "given a fair hearing" by reference to those Pennsylvania cases that have evaluated common law due process claims, and cases concerning due process more generally. *Cf. McKeesport Hosp.*, 24 F.3d at 535 ("The requirements of common law due process are quite similar to those for constitutional due process[.]").

*Ctr.*, 781 F.3d at 169—namely, by certifying IMGs so that those students can pursue post-graduate medical training in the United States and ensuring the integrity of that certification process, *Tulp*, 2019 WL 1382725 at *5-6. As such, it must "employ fair procedures when making decisions," with regard to individuals—like Plaintiff—that it subjects to disciplinary action. *McKeesport*, 24 F.3d at 535. Thus, ECFMG owed Plaintiff a common law duty of due process throughout the irregular behavior investigation.

The undisputed facts demonstrate that ECFMG complied with that duty. First, its investigation and irregular behavior determination adhered to the procedural safeguards set forth in its publicly-available Policies and Procedures—specifically,

- Whereas the Policies and Procedures provide that "[i]f ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the [Credentials Committee];" here, after an investigation into USAT's Florida-based campuses revealed that Plaintiff provided false information regarding USAT's operations, ECFMG referred the issue to the Credentials Committee for a hearing;

- Whereas the Policies and Procedures provide that "the individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the Policies and Procedures Regarding Irregular Behavior;" here, on October 18, 2018, ECFMG emailed Plaintiff: a letter advising him of the irregular behavior allegations, a copy of the Policies and Procedures Regarding Irregular Behavior, and copies of the documents provided to the Credentials Committee upon which the allegations were based;

- Whereas the Policies and Procedures provide that "[t]he individual will be given an opportunity to provide written explanation and to present other relevant information;" here, in the October 18 email, ECFMG provided Plaintiff an opportunity to provide a written response to the charges of irregular behavior, and, on October 23, 2018, Plaintiff's counsel provided a written response to the allegations;

- Whereas the Policies and Procedures provide that "[t]he individual may also request the opportunity to appear personally before the [Credentials Committee], and may be represented by legal counsel, if the individual so wishes;" here, in the same October 18 email, ECFMG informed Plaintiff of that opportunity, and, on November 28, 2018, Plaintiff was afforded the opportunity to present evidence and testimony to the Credential Committee, accompanied by counsel;

- Whereas the Policies and Procedures provide that the "[Credentials Committee], based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior;" here, after reviewing the documentary evidence and Plaintiff's November 28 presentation, the Credential Committee determined that Plaintiff had engaged in irregular behavior by providing false information about USAT's activities;

- Whereas the Policies and Procedures provide that "ECFMG will notify the individual whether the [Credentials Committee] determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto;" here, on December 14, 2018, ECFMG notified Plaintiff via email that the Credential Committee had determined that he engaged in irregular behavior, explained the grounds for that decision, and informed Plaintiff of the disciplinary action being taken against him;

- Whereas the Policies and Procedures provide that the "[Credentials Committee]'s determination of irregular behavior and any action(s) taken pursuant thereto . . . may be appealed;" here, in the December 14 email, ECFMG informed Plaintiff of his ability to appeal the decision.

Thus, ECFMG followed "the procedural safeguards which [it] specifically provide[d]." *Psi Upsilon*, 591 A.2d at 759.

Second, the procedural safeguards ECFMG provided comported with "basic principles of . . . fundamental fairness" because they afforded Plaintiff both notice and an opportunity to be heard. *Id.* As to notice, ECFMG's October 18 email advised Plaintiff of the irregular behavior allegations and provided copies of the documents upon which those allegations were based, satisfying the notice requirement. *Id.*; *Boehm*, 573 A.2d at 582. As for an opportunity to be heard, ECFMG afforded Plaintiff the opportunity to provide a written response to the allegations of irregular behavior and to present oral testimony at the November 28 hearing—opportunities that Plaintiff, through his counsel, took advantage of. Accordingly, Plaintiff was provided "the opportunity to present reasons, [both] in person [and] in writing, why [ECFMG's] proposed action should not be taken," satisfying the opportunity-to-be-heard requirement. *Biliski*, 574

F.3d at 221.

Plaintiff arguments to the contrary are scattershot and, at times, difficult to follow. The gist appears to be that the November 28 hearing was inadequate and therefore deprived Plaintiff of a meaningful opportunity to be heard.[3] There are several problems with Plaintiff's position. To start—and putting the November 28 hearing aside for now—Plaintiff was afforded an opportunity to be heard when ECFMG invited him to submit a written reply to the allegations of irregular behavior. All that due process required here was the "opportunity to present reasons, *either in person or in writing*, why proposed action should not be taken," *Biliski*, 574 F.3d at 220 (emphasis added). The fact that Plaintiff was invited to present written responses to the allegations of irregular behavior puts paid to the argument that ECFMG deprived him of an opportunity to be heard.

Turning to the November 28 hearing, Plaintiff complains that the hearing was procedurally inadequate—because ECFMG allotted only twenty minutes for it, because ECFMG relied on its documentary evidence and did not present live testimony, and because ECFMG did not allow him to cross-examine witnesses. But, as already noted, due process does not require the full panoply of procedural protections available in other proceedings. *See Boehm*, 573 A.2d at 508 (holding due process does not require "a full-dress judicial hearing, with the right to cross-examine witnesses") (internal quotation marks omitted); *Sch. Dist. of City of Harrisburg*, 309 A.2d at 358 (finding due process met where petitioner "offered testimony," at "a regularly scheduled meeting" of the disciplinary body). Here, all that ECFMG was required to provide was an opportunity for Plaintiff "to present his side of the story," *Biliski*, 574 F.3d at 220 (internal quotation marks omitted), and the November 28 hearing satisfied that requirement.

---

[3] Plaintiff neither appears to argue that ECFMG failed to adhere to the procedural safeguards set forth in the publicly-available Policies and Procedures, nor that ECFMG provided inadequate notice of the allegations against him.

Lastly, Plaintiff argues that the early termination of the hearing violated his due process rights. The record demonstrates, however, that after delivering his opening statement, Plaintiff declined to provide additional evidence or testimony, and that ECFMG then terminating the hearing. Plaintiff's choice to sit on his hands, however, does not render the November 28 hearing inadequate. *Cf. Psi Upsilon*, 591 A.2d at 760 (holding disciplinary hearing did not violate due process where plaintiffs invoked privilege against self-incrimination, given pending criminal charges, and thus did not testify or present evidence). Thus, Plaintiff was given ample opportunity "to present his side of the story," *Biliski*, 574 F.3d at 220; "if [he] did not make the best use of those opportunities . . . the blame cannot be placed on [ECFMG]," *Marlboro Corp. v. Ass'n of Indep. Colls. & Sch., Inc.*, 556 F.2d 78, 82 (1st Cir. 1977).

In sum, the record demonstrates that ECFMG provided Plaintiff all the process he was due. ECFMG's motion for summary judgment on Plaintiff's common law due process claim will be granted accordingly.

June 25, 2019                                    **BY THE COURT:**

                                                /s/Wendy Beetlestone, J.

                                                _____

                                                **WENDY BEETLESTONE, J.**

16

20a

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br>**Plaintiff,** | CIVIL ACTION |
| v. | |
| EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES AND<br>DR. WILLIAM W. PINSKY,<br>**Defendants.** | NO. 18-5540 |

## OPINION

Plaintiff Dr. Orien Tulp brings this suit against Defendants Education Commission for

Foreign Medical Graduates ("ECFMG") and Dr. William Pinsky (collectively "Defendants"),

alleging Defendants committed various constitutional and common law torts in the course of

investigating and then sanctioning Plaintiff for his role in administering an overseas medical

school. Defendants now move to dismiss Plaintiff's Complaint for failing to state a claim upon

which relief can be granted. For the reasons that follow, Defendants' motion will be granted in

part and denied in part.

### I.    Background[1]

Plaintiff is President of the University of Science, Arts, and Technology ("USAT"), a

medical school located on the British Overseas Territory of Montserrat. ECFMG is a private,

non-profit organization based in Philadelphia that certifies foreign medical school graduates so

that those students can pursue post-graduate medical training in the United States. Without a

certification from ECFMG, graduates of foreign medical schools, like USAT, cannot apply to

---

[1] The following facts come from the allegations in the Complaint and the exhibits attached thereto. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). To the degree that Plaintiff's exhibits "contradict [his] allegations in the complaint, the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir 2018).

medical residency programs in the United States.  Pinsky is the President of ECFMG.

Plaintiff's suit is, in effect, a response to disciplinary action taken by ECFMG against

Plaintiff and USAT.  In August of 2018,[2] ECFMG launched an investigation into whether USAT

was operating unauthorized medical school campuses in the United States in violation of

ECFMG's Policies and Procedures.  ECFMG also inquired into whether Plaintiff had engaged in

"irregular behavior" by providing false information to ECFMG about USAT's activities.  As part

of the investigation, ECFMG sent current and former USAT students affidavits forms, requesting

information about their attendance at USAT.  The affidavit form stated that students were

required to provide such information and informed students that ECFMG reserved the right to

bring allegations of irregular behavior, if students failed to do so.

On November 28, 2018, ECFMG held a hearing on Plaintiff's alleged misconduct in

Philadelphia, Pennsylvania.  ECFMG allotted twenty minutes for the hearing, but "[a]fter a few

minutes," the hearing was cut short by ECFMG's counsel.  Plaintiff was not permitted to present

testimony or evidence concerning the alleged misconduct.

On December 14, 2018, ECFMG informed Plaintiff that it had completed its

investigation.  ECFMG concluded that USAT was operating unauthorized branch campuses

within the United States, in violation of ECFMG's Policies and Procedures.  In addition,

ECFMG concluded that Plaintiff had provided false information to ECFMG regarding USAT's

students' attendance at the Montserrat campus, also in violation of its Policies and Procedures.

As a result, ECFMG informed Plaintiff that it was taking the following disciplinary action: (1)

refusing, for a minimum of five years, to accept any documents signed and/or certified by

Plaintiff for ECFMG on behalf of USAT; (2) adding to ECFMG's Sponsor Note for USAT in the

---

[2] The complaint alleges that ECFMG informed Plaintiff of the investigation on October 18, 2018.  However, an exhibit attached to the complaint indicates that ECFMG informed Plaintiff of the investigation as early as August 21, 2018.

*World Directory of Medical Schools* a notice that USAT students and graduates would be subject to enhanced vetting procedures; and, (3) deciding that USAT students with a graduation year of 2019 and later would no longer be eligible to apply for ECFMG certification. Because students are no longer able to pursue ECFMG certification, the sanctions effectively closed USAT.

In his suit, Plaintiff alleges that Defendants' conduct constituted constitutional and common law torts. Although the Complaint is not entirely clear, read broadly it alleges: (1) common law tortious interference with contract against ECFMG; (2) a claim pursuant to 42 U.S.C. § 1983 against ECFMG for violating Plaintiff's procedural due process rights as protected by the Fourteenth Amendment; (3) violation of common law due process against ECFMG; (4) common law fraud against ECFMG; (5) common law abuse of process against ECFMG; (6) common law negligent misrepresentation against ECFMG; and, (7) a claim pursuant to 42 U.S.C. § 1983 against both Defendants for violating Plaintiff's procedural and substantive due process rights as protected by the Fourteenth Amendment.

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" will not suffice. *Id.* at 683. Rather, a plaintiff must allege some facts to raise the allegation above the level of mere speculation. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 176 (3d Cir. 2010) (citing *Twombly*, 550 U.S. at 555). When analyzing a motion to dismiss, the

3

Court must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a "plausible claim for relief." *Id.* at 211.

Where, as here, a federal court is interpreting Pennsylvania law, the federal court must follow the Pennsylvania Supreme Court. *In re Energy Future Holdings Corp.*, 842 F.3d 247, 253-54 (3d Cir. 2016). If the law is unclear and there is no controlling precedent issued by Pennsylvania's highest court, a federal court must "predict" how it would rule, giving "due regard, but not conclusive effect, to the decisional law of lower state courts." *Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d 634, 637 (3d Cir. 2000).

### III. Discussion

#### A. Constitutional Claims

Plaintiff alleges that Defendants' investigation and disciplinary action violated both his substantive and procedural due process rights as protected by the Fourteenth Amendment to the United States Constitution.[3]

To maintain a Section 1983 claim, Plaintiff must allege a violation of a right secured by the Constitution or laws of the United States committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue;

---

[3] In passing, Plaintiff avers that Defendants also violated the due process clause of the Pennsylvania Constitution. Pennsylvania law "generally treat[s] the Due Process Clause of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution as coextensive." *Com. v. Moto*, 23 A.3d 989, 1002 (Pa. 2011). Further, Pennsylvania law tracks federal law in holding that "the due process clause applies only to state action and not to private conduct." *Rosenberg v. Holy Redeemer Hosp.*, 506 A.2d 408, 410 (Pa. Super. 1986) (citing *Adler v. Montefiore Hosp. Ass'n of W. Pa.*, 311 A.2d 634, 639 (Pa. 1973)). Accordingly, to the degree that Plaintiff's claims are premised on Defendants' violation of due process rights protected by the Pennsylvania Constitution, those claims fail to state a claim upon which relief can be granted because, as discussed below, Defendants' conduct did not constitute state action.

4

there is no liability under Section 1983 for those not acting under color of law." *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).[4] Plaintiff's constitutional claims fail because the Complaint does not contain sufficient factual allegations from which the Court can conclude that Defendants' conduct constituted state action

 Plaintiff's state action argument is two-fold. First, Plaintiff argues that ECFMG, despite its private character, is actually a governmental organization such that any action ECFMG takes constitutes state action. Second, Plaintiff argues that, even if ECFMG really is a private entity, ECFMG's investigation and disciplinary proceedings constituted state action that deprived Plaintiff of his constitutional rights.[5] Neither argument is availing.

 First, Plaintiff has failed to establish that, despite its private character, ECFMG is in actuality a state actor. "The nominally private character" of an entity may be "overborne by the pervasive entwinement of public institutions and public officials in its composition and workings" such that "there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). Other courts to address the issue—including the Third Circuit, albeit in a non-precedential decision—have consistently held that ECFMG is not a state actor. *Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (finding that as a "private not-for-profit organization," ECFMG is a "private part[y] and not [a]

---

[4] "[I]f defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, that conduct is also action under color of state law and will support a suit under § 1983." *West*, 487 U.S. at 48 (internal quotation marks omitted). Accordingly, the "under color of state law" inquiry under Section 1983 and the "state action" requirement under the Fourteenth Amendment are "identical in most contexts" and "[f]or convenience [the Court] will use the terms interchangeably." *Groman*, 47 F.3d at 639 n.15.

[5] Whether ECFMG is a state actor or undertook state action dictates whether Pinsky, as President of ECFMG, is a state actor or undertook state action. *See Opoku v. Educ. Comm'n for Foreign Med. Graduates*, 574 F. App'x 197, 201 (3d Cir. 2014) (per curiam) (dismissing claim against employee of ECFMG on grounds that ECFMG was not a state actor); *see West*, 487 U.S. at 50 ("[S]tate employment is generally sufficient to render the defendant a state actor").

state actor[]"); *Thomas v. NBME-Nat'l Bd. of Med. Examiners*, 2015 WL 667077, at *4 (E.D. Pa.

Feb. 13, 2015) ("Because . . . ECFMG is [not] a state actor, Plaintiff cannot prevail on this

[constitutional claim]"); *Staudinger v. Educ. Comm'n for Foreign Med. Graduates*, 1993 WL

138954, at *2 (S.D.N.Y. Apr. 28, 1993) (concluding ECFMG is not a state actor).

While state medical boards rely on ECFMG's certification of foreign medical graduates

in determining whether to permit such graduates to begin the medical certification process in the

United States, it does not follow that these state entities are so entwined in the "composition and

workings" of ECFMG to transform ECFMG into a state actor. *Brentwood Acad.*, 531 U.S. at

298. Plaintiff does not allege, for example, that ECFMG is managed by public institutions or

officials; nor does he allege that ECFMG is publicly financed; nor does he allege that ECFMG's

standards are set by public institutions or officials. *McKeesport Hosp. v. Accreditation Council

for Graduate Med. Educ.*, 24 F.3d 519, 525 (3d Cir. 1994) (finding the Accreditation Council for

Graduate Medical Education was not a state actor because the organization was "self-governed

and financed, and its standards are independently set"). Thus, Plaintiff has failed to allege

sufficient facts to warrant a conclusion that ECFMG, despite its private character, is a state actor.

Second, Plaintiff has failed to establish that the specific actions complained of—namely,

ECFMG's investigation and disciplinary action—constituted state action. Where "the actors are

not state or municipal officials, but are private individuals or associations . . . their activity can

nevertheless be deemed to be under color of [state] law." *Groman*, 47 F.3d at 638. The Supreme

Court has identified several "tests" for when private action constitutes state action. *P.R.B.A.

Corp. v. HMS Host Toll Roads, Inc.*, 808 F.3d 221, 224 (3d Cir. 2015). Thus, private action may

transform into state action when: "the private party has acted with the help of or in concert with

state officials," "the private party has been delegated a power traditionally exclusively reserved

6

to the State," or "there is a sufficiently close nexus between the State and the challenged action

of the private entity so that the action of the latter may fairly be treated as that of the State itself."

*McKeesport*, 24 F.3d at 525 (internal citations and quotations omitted). The Complaint does not

contain sufficient factual allegations to establish that ECFMG's conduct constituted state action

under any of the applicable tests.

First, there are no allegations that Defendants acted with the help of or in concert with

state actors during the investigation and disciplinary proceedings. "Private persons, jointly

engaged with state officials in the challenged action," act under color of state law for purposes of

Section 1983 claims. *Dennis v. Sparks*, 449 U.S. 24, 28 (1980). State officials must provide

"overt, significant assistance," to transform private action into state action. *McKeesport*, 24 F.3d

at 525; *Opoku*, 574 F. App'x at 201 (noting that Section 1983 "[l]iability would only attach if

[ECFMG] conspired with a state actor"). The Complaint, however, contains no allegations that

Defendants acted jointly with state officials; indeed, it does not allege that any state actor was

involved in investigating the allegations of misconduct or participating in the November 28

hearing. Notably, no public officials were named as defendants in the action. *Flagg Bros., Inc.*

*v. Brooks*, 436 U.S. 149, 157 (1978).

Second, ECFMG's investigation and sanctions are not functions "traditionally

exclusively reserved to the State," *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). The

public function test covers only a narrow band of private action because "[w]hile many functions

have been traditionally performed by governments, very few have been 'exclusively reserved by

the State.'" *Flagg Bros.*, 436 U.S. at 158; *see, e.g., Terry v. Adams*, 345 U.S. 461, 470 (1953)

(holding that running an election is a public function that has been traditionally the exclusive

prerogative of the State). Because "[t]he evaluation and accreditation of medical education in

7

this country is neither a traditional nor an exclusive state function," investigating and sanctioning foreign medical schools are not public functions "traditionally exclusively reserved to the State." *McKeesport*, 24 F.3d at 525.

Finally, no nexus is alleged between ECFMG and a state actor such that ECFMG's action may fairly be treated as that of the State itself. "The connection between the state and a specific decision of a private entity"—such as ECFMG's decision to investigate and then discipline Plaintiff—"may render that decision chargeable to the state . . . only 'when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [private decision] must in law be deemed that of the State.'" *Id.* at 525 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). "'[M]ere approval of or acquiescence' in the decision is not enough." *Id.* (quoting *Blum*, 457 U.S. at 1004). In *McKeesport*, for example, a hospital argued that a decision of the Accreditation Council for Graduate Medical Education ("ACGME") to withdraw the hospital's accreditation constituted state action because the Pennsylvania State Board of Medicine withdrew its accreditation based on ACGME's decision. *Id.* The Third Circuit held that ACGME's decision was not state action because no state actor "control[led] or regulate[d] the ACGME's standard-setting or decision-making process." *Id.* "That the [Board of Medicine] base[d] its approval of medical residency programs on ACGME accreditation d[id] not turn the ACGME's decisions into state action." *Id.* at 525-26.

The same reasoning applies with equal force to ECFMG's decision to investigate and sanction Plaintiff. There are no allegations that a state actor controlled or regulated ECFMG's standard-setting or decision-making process; indeed, Plaintiff's claim is that ECFMG sanctioned him for failing to comply with ECFMG's internal policies. Further, that state medical boards base their approval of foreign medical graduates on ECFMG's certification does not turn

ECFMG's decision into state action. Thus, Defendant's motion to dismiss Plaintiff's Section 1983 claims will be granted.

### B. Common Law Claims

The Complaint contains sufficient factual allegations to support a claim that ECFMG violated a common law duty of due process owed to Plaintiff.[6] However, Plaintiff's claims for common law fraud, negligent misrepresentation, abuse of process, and tortious interference with contract will be dismissed.[7]

### 1. Common Law Due Process Claim

Pennsylvania law recognizes that, in disciplinary proceedings, certain private organizations owe a limited common law duty of due process to those subject to disciplinary action. *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973) ("[J]udicial interference in the affairs of private associations . . . is appropriate only under limited circumstances"). An example is *Psi Upsilon of Philadelphia v. University of Pennsylvania*, 591 A.2d 755 (Pa. Super. 1991), where a group of college students challenged the University of Pennsylvania's disciplinary action against them on the grounds that it violated due process. *Id.* at 758. The Pennsylvania Superior Court noted that, because the University was a private institution, "'students who [were] being disciplined [were] entitled only to those procedural safeguards which the school specifically provides.'" *Id.* (quoting *Boehm v. Univ. of Pa. School of Veterinary Med.*, 573 A.2d 575, 579 (Pa. Super. 1990)). Nevertheless, those "disciplinary procedures established by the institution must be fundamentally fair,"

---

[6] That ECFMG is not a state actor does not doom Plaintiff's common law due process claim because "unlike [a] constitutional due process cause of action, the common law due process cause of action has no state action requirement." *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in judgment).

[7] Plaintiff suggests in passing that ECFMG violated the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g. To the degree that Plaintiff seeks to recover for ECFMG's alleged breach of FERPA, that claim fails because FERPA does not provide a private cause of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002).

9

acknowledging that the University owed a general, common law duty of due process to the students subject to disciplinary action. *Id.*

Beyond the private university context, "[m]any courts have [also] recognized a state or common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *McKeesport*, 24 F.3d at 534-35 (Becker, J., concurring in the judgment) (collecting cases). The duty "operate[s] as 'check on organizations that exercise significant authority in areas of public concern such as accreditation and licensing.'" *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir. 2015) (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)). Because such "quasi-public" organizations "like all other bureaucratic entities, can run off the rails," the common law duty of due process ensures that such entities are not "wholly free of judicial oversight." *Id.* In line with those decisions, the Pennsylvania Supreme Court, in *School District of City of Harrisburg*, indicated that Pennsylvania law recognizes a common law duty owed by private organizations to prospective members, where the private organization serves a public function. 309 A.2d at 357 n.3 (citing approvingly a New Jersey Supreme Court case, *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791, 800 (N.J. 1961), which held that a private medical association owed a common law duty to a prospective member because the organization served a public function).

Reading the Complaint in the light most favorable to the Plaintiff it contains sufficient factual allegations to plausibly conclude that ECMFG serves a public function by certifying foreign medical school graduates so that those students can pursue post-graduate medical training in the United States and investigating the foreign medical schools that those students

10

attend. *Cf. Falcone*, 170 A.2d at 800. In furtherance of that public function, ECFMG disciplines individuals affiliated with foreign medical schools, like Plaintiff, that run afoul of ECFMG's Policies and Procedures. Thus, ECFMG—like professional membership organizations and accreditation associations—is a "quasi-public" private organization because it "exercises significant authority in areas of public concern." *Prof'l Massage Training Ctr*, 781 F.3d at 169. As such, it must "employ fair procedures when making decisions," *McKeesport*, 24 F.3d at 535 (Becker, J., concurring in the judgment), with regard to individuals—like Plaintiff—that are subject to ECFMG disciplinary action. Put differently, the Court predicts that the Pennsylvania Supreme Court would hold that ECFMG owes a common law duty of due process to Plaintiff.

The next question is what such a duty entails, and correspondingly whether ECFMG's conduct at the November 28, 2018 hearing breached that duty. Although Pennsylvania courts have not fully fleshed out the contours of the common law due process duty, in *Psi Upsilon*, the Pennsylvania Superior Court indicated that "basic principles of due process and fundamental fairness were adhered to where" the disciplined party was afforded "notice" and "an opportunity to be heard." *Psi Upsilon*, 591 A.2d at 759; *Boehm* 573 A.2d at 585 (finding due process satisfied where plaintiff "had notice and an opportunity to be heard"); *cf. School District of City of Harrisburg*, 309 A.2d at 358 (holding due process met where disciplined party "was afforded notice of the action taken against it and has availed itself of the opportunity to be heard"). Accordingly, the Court predicts that the Pennsylvania Supreme Court would hold that common law due process required ECMFG to afford Plaintiff notice of the disciplinary action and an opportunity to be heard.

The Complaint contains sufficient factual allegations to make out a viable claim that ECFMG did not provide Plaintiff an opportunity to be heard before taking disciplinary action

11

against him. The Complaint alleges that ECFMG allotted twenty minutes to the disciplinary hearing, but that "[a]fter a few minutes," ECFMG's counsel unilaterally terminated the hearing before Plaintiff could present testimony or evidence. When construed in the light most favorable to the Plaintiff, the Complaint plausibly alleges that ECMFG deviated from "basic principles of due process and fundamental fairness" by ending the hearing before allowing Plaintiff an opportunity to present his side of the story. *Cf. Psi Upsilon*, 591 A.2d at 759 (finding disciplined parties afforded an opportunity to be heard where they "were afforded the opportunity to present evidence . . . cross-examine all witnesses[, and] gave closing arguments"). Accordingly, the Complaint adequately states a claim that ECFMG's conduct at the November 29, 2018 hearing breached a common law duty of due process owed to Plaintiff because ECFMG did not "employ fair procedures" before subjecting Plaintiff to disciplinary action.

### 2. Fraud

To maintain a common law fraud claim, Plaintiff must establish: (1) ECFMG made a representation; (2) which was material to the transaction at hand; (3) falsely, with knowledge of its falsity or recklessness as to whether it was true or false; (4) with the intent of misleading Plaintiff into relying on it; (5) Plaintiff justifiably relied on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994). Plaintiff alleges that ECFMG engaged in fraudulent conduct by (1) holding itself out as a government agency in the affidavit form it sent to USAT students, and (2) placing misleading information about USAT in ECFMG's Sponsor Note in the *World Directory of Medical Schools*. Neither allegation plausibly supports a claim for fraud.

First, with respect to the affidavit form, Plaintiff does not specify where ECFMG holds itself out as a governmental agency, and the Court, on its own review, finds no such

12

representation.[8] As for the Sponsor Note's statement that USAT students and graduates would be subject to enhanced vetting procedures, Plaintiff again fails to identify any falsity in that statement. While Plaintiff contests ECFMG's decision to subject USAT students to enhanced vetting procedures, there is no allegation that ECFMG's statement in the *World Directory of Medical Schools* is in any way untrue. Thus, Plaintiff fails to identify any false representation made by ECFMG that would support a fraud claim.

Plaintiff's fraud claim also fails on the reliance prong because the Complaint contains no allegations that Plaintiff relied on a representation from ECFMG to his detriment. Instead, Plaintiff alleges that non-parties relied on ECFMG's purportedly false statements, but Plaintiff can not maintain a claim for fraud based on others' reliance. *Klemow v. Time Inc.*, 352 A.2d 12, 16 n.17 (Pa. 1976) ("The successful maintenance of a cause of action for fraud includes, inter alia, a showing that *the plaintiff* acted in reliance on the defendant's misrepresentations.") (emphasis added); *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 665 (Pa. 2009) (same). Thus, Plaintiff's fraud claim will also be dismissed because Plaintiff fails to allege that he relied on ECFMG's purportedly false statements to his detriment.

### 3. Negligent Misrepresentation

Plaintiff's negligent misrepresentation claim suffers from the same faults as his fraud claim. To bring a claim for negligent representation, Plaintiff must establish: (1) ECFMG made a misrepresentation of a material fact; (2) that ECFMG knew or should have known that the misrepresentation was false; (3) ECFMG intended the representation to induce Plaintiff to act on it; and (4) Plaintiff was injured by acting in justifiable reliance on the misrepresentation. *Gibbs*, 647 A.2d at 890. As the Pennsylvania Supreme Court has explained, "negligent misrepresentation differs from intentional misrepresentation"—that is, fraud—"in that to commit

---

[8] A copy of both the affidavit form and the Sponsor Note were attached to Plaintiff's compliant.

the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words." *Id.*

Plaintiff's negligent misrepresentation claim, like his fraud claim, fails because the Complaint fails to identify any false representations made by ECFMG and does not allege that Plaintiff, as opposed to some other party, relied on those purportedly false representations.

### 4. Abuse of Process

To maintain his abuse of process claim, Plaintiff must allege facts that plausibly establish ECFMG: (1) used a legal process against him; (2) primarily to accomplish a purpose for which the process was not designed; and, (3) harm was caused to Plaintiff. *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998). As the Pennsylvania Supreme Court has explained "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987). Thus, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Hart v. O'Malley*, 647 A.2d 542, 171 (Pa. Super. 1994) (internal quotation marks omitted).

Plaintiff contends that ECFMG engaged in abusive process by sending affidavit forms to USAT students in order to gather information about Plaintiff's alleged irregular behavior, and that the forms intimidated students into not attending USAT. Those allegations, however, are not sufficient to support an abuse of process claim. For one, "[n]either correspondence nor an affidavit is legal process." *Rockman v. Aciukewicz*, 2014 WL 10937492, at*6 (Pa. Super. Apr. 1, 2014). Second, even if sending affidavit forms constituted use of legal process, Plaintiff fails to allege ECFMG abused that legal process because, according to Plaintiff, ECFMG used the forms to gather information about USAT students, which is the purpose for which the process was

14

designed. *See Affidavit*, Black's Law Dictionary (10th ed. 2014) ("A voluntary declaration of facts written down and sworn to by a declarant . . . before an officer authorized to administer oaths"). Even crediting Plaintiff's allegation that the affidavit forms were designed to intimidate USAT students, Plaintiff has failed to state a claim because liability cannot be premised on ECFMG's bad intentions. *Hart*, 647 A.2d at 171.

Defendants' motion to dismiss Plaintiff's abuse of process claim will be granted because Plaintiff has failed to allege facts sufficient to establish a plausible claim for relief.

### 5. Tortious Interference with Contract

Finally, Plaintiff seeks to recover on a claim of tortious interference with contract. To prevail on the claim, Plaintiff must establish: (1) the existence of a contractual or prospective contractual or economic relationship between Plaintiff and a third party; (2) purposeful action by ECFMG specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of ECFMG; and, (4) legal damage to Plaintiff as a result of ECFMG's conduct. *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009). Plaintiff alleges ECFMG's investigation and sanctions harmed his contractual relations with current and prospective USAT students.[9]

Plaintiff's tortious interreference claim fails because he has not adequately alleged that ECFMG lacked a justification for interfering with Plaintiff's existing and prospective contractual relations. Under Pennsylvania law, the absence of a privilege or justification "is not an affirmative defense, rather . . . an element of the cause of action which must be pleaded and proven by the plaintiff." *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122-23 (Pa. Super. 1974).

---

[9] Plaintiff alleges that USAT students contracted with him directly, rather than with the school, an allegation that, at this point, the Court must take as true.

Because "in most cases, the defendant acts at least in part for the purpose of protecting some legitimate interest which conflicts with that of the plaintiff," in determining whether a privilege or justification exists "a line must be drawn and the interests evaluated." *Glenn v. Point Park College*, 272 A.2d 895, 899 (Pa. 1971). Although "not susceptible of precise definition," *id.*, Pennsylvania courts make the justification determination in accordance with the factors listed in Section 767 of the Restatement of Torts:

> (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

*Phillips v. Selig*, 959 A.2d 420, 429-30 (Pa. Super. 2008) (quoting Restatement (Second) of Torts § 767). The gravamen of the inquiry is whether "the defendant's actions were improper under the circumstances presented." *Id.*

Here, ECFMG's interest in investigating Plaintiff's purported failure to comply with the organization's Policies and Procedures outweighs Plaintiff's alleged contractual interest with current and prospective USAT students. "[A]ction is not improper when the interference in contractual relations fosters a social interest of greater public import than is the social interest invaded." *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 159 (3d Cir. 1988) (internal quotation marks omitted). In *Brownsville*, the Third Circuit held that a nursing home operator could not bring a claim for tortious interference with contractual relations against defendants that caused the operator to lose its license, on the grounds that "there can be no impropriety in pursuing administrative actions which cause the loss of license or certification of a facility which has been adjudged to have been in serious violation of its statutory and regulatory obligations." *Id.*

16

The Third Circuit's reasoning in *Brownsville* dictates the same outcome here. ECFMG's interest in ensuring the proper certification of foreign medical graduates "fosters a social interest of greater public import than" Plaintiff's interest in freedom of contract. And while Plaintiff may challenge the grounds of ECFMG's decision to impose sanctions against him, "administrative actions which cause[d] [USAT's] loss of license or certification" cannot be the grounds for liability. *Id.* Indeed, Plaintiff cites no authority that holds a party may recover on a tortious interference with contract claim for failing to abide by the regulations of a professional organization or accrediting agency. *See Brownsville*, 839 F.2d at 159 ("[Defendant] cites absolutely no authority in Pennsylvania or elsewhere that holds that action designed to bring a facility's noncompliance with applicable regulations to the attention of the appropriate authorities and to stimulate public interest in the matter can be the basis for a damage action.").

Thus, ECFMG's interest in regulating foreign medical graduates justifies its interference in Plaintiff's contractual relations with USAT students. Crediting Plaintiff's factual allegations, ECFMG's conduct was not "improper under the circumstances presented." *Phillips*, 959 A.2d at 429. Accordingly, Plaintiff's tortious interference claim fails because it does not adequately plead an absence of privilege or justification on the part of ECFMG.

An appropriate order follows.

**May 26, 2019**                                      **BY THE COURT:**

/s/ Wendy Beetlestone
_____
**WENDY BEETLESTONE, J.**

20a-17