In The

# United States Court of Appeals
# For the Third Circuit

## 19-2706

ORIEN TULP

*Plaintiff-Appellant*

v.

EDUCATIONAL COMMISSION FOREIGN, ET AL

*Defendants-Appellees*

*On Appeal from Order and Judgment entered in the United States District Court for the Eastern District of Pennsylvania at No. 2-18-cv-05540*

## APPENDIX FOR PLAINTIFF-APPELLANT
## Volume II of III (pgs. 21a-448a)

WILLIAM C. REIL, Esq.
LAW OFFICES OF WILLIAM C. REIL
1515 Market St, Suite 1200
Philadelphia, PA 19102
(215) 564-1635
*Attorney for Plaintiff-Appellant*

i

# TABLE OF CONTENTS

**Page**

Notice of Appeal, filed July 23, 2019 ............ 1a

Memorandum Opinion, filed June 25, 2019 .. 5a

Opinion, filed March 26,2019 ....................... 20a-1

District Court Docket Entries ........................ 21a

Complaint, filed December 24, 2018 ............. 25a

Defendant's Motion to Dismiss Plaintiff's
   Complaint, filed January 22, 2019 .............. 60a

Scheduling Order, filed January 25, 2019 ..... 90a

Plaintiff's Answer to Defendant's Motion to
   Dismiss the Complaint, filed February 4,
   2019 ............................................................. 93a

Reply in Support of Defendant's Motion to
   Dismiss Plaintiff's Complaint, filed
   February 21, 2019 ....................................... 112a

Defendant Educational Commission for
   Foreign Medical Graduates Answer to
   Complaint and Affirmative Defenses, filed
   April 9, 2019 ............................................... 128a

Memorandum of Law in Support of
   Defendant Educational Commission for
   Foreign Medical Graduates Motion for
   Summary Judgment, filed May 3, 2019 ...... 148a

Plaintiff's Memorandum of Law in
   Opposition to Defendant's Motion for
   Summary Judgment, filed June 3, 2019 ...... 217a

Reply in Support of Defendant's Motion for
   Summary Judgment, filed June 20, 2019 .... 390a

Transcript, dated November 28, 2018 ........... 418a

ii

**Page**

Hearing, dated November 28, 2018 ............... 418a-1

Transcript, dated January 24, 2019 ................ 449a

Transcript, Deposition of William W.
   Pinsky, M.D., dated February 6, 2019 ......... 584a

Transcript of Video Deposition, of Orien L.
   Tulip, PH.D., M.D., dated April 17, 2019 ... 729a

**Defendant**

**DR. WILLIAM W. PINSKY**
*PRESIDENT AND CEO EDUCATIONAL*
*COMMISSION FOR FOREIGN MEDICAL*
*GRADUATES*

represented by **ELISA P. MCENROE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**MATTHEW DANIEL KLAYMAN**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/24/2018 | 1 | COMPLAINT against EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY ( Filing fee $ 400 receipt number 189872.), filed by ORIEN L. TULP. (Attachments: # 1 Civil Cover Sheets)(ahf) (Entered: 12/26/2018) |
| 12/24/2018 | | Summons Issued as to EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. 2 Forwarded To: Counsel on 12/26/2018 (ahf) (Entered: 12/26/2018) |
| 12/24/2018 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 by ORIEN L. TULP.(ahf) (Entered: 12/26/2018) |
| 12/24/2018 | | DEMAND for Trial by Jury by ORIEN L. TULP. (ahf) (Entered: 12/26/2018) |
| 01/02/2019 | 3 | First MOTION for Permanent Injunction , First MOTION for Preliminary Injunction filed by ORIEN L. TULP.Memorandum of Law. (Attachments: # 1 Text of Proposed Order Order, # 2 Memorandum Memo of Law)(REIL, WILLIAM) (Entered: 01/02/2019) |
| 01/03/2019 | 4 | SUMMONS Returned Executed by ORIEN L. TULP re: James Davis served Summons and Complaint upon EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY by Personal Service. EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES served on 1/2/2019, answer due 1/23/2019; WILLIAM W. PINSKY served on 1/2/2019, answer due 1/23/2019. (fdc, ) (Entered: 01/03/2019) |
| 01/03/2019 | 5 | Praecipe to Attach Certificate of Service by ORIEN L. TULP. (Attachments: # 1 Memorandum, # 2 Certificate of Service Cert of Service)(REIL, WILLIAM) (Entered: 01/03/2019) |
| 01/03/2019 | 6 | APPLICATION for Admission Pro Hac Vice of Tommy Swate by ORIEN L. TULP.. (REIL, WILLIAM) (Entered: 01/03/2019) |
| 01/04/2019 | 7 | AMENDED DOCUMENT by ORIEN L. TULP. Amendment to 6 Application for Admission Pro Hac Vice . (Attachments: # 1 Text of Proposed Order, # 2 Certificate of Service)(REIL, WILLIAM) (Entered: 01/04/2019) |
| 01/04/2019 | 8 | ORDER THAT THE APPLICATION OF TOMMY SWATE, ESQ. TO PRACTICE IN THIS COURT PURSUANT TO LRCP 83.5.2(B) IS GRANTED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/4/19. 1/4/19 ENTERED AND COPIES MAILED AND E-MAILED. COPIES MAILED TO UNREPS. ECF APPLICATION MAILED TO SWATE. (fdc) (Entered: 01/04/2019) |
| 01/04/2019 | 9 | ORDER THAT A HEARING ON PLAINTIFF'S FIRST MOTION FOR PERMANENT INJUNCTION (ECF # 3 ) SHALL TAKE PLACE ON FRIDAY, 1/11/2019 AT 10:00 AM IN COURTROOM 3B OF 601 MARKET STREET, PHILADELPHIA, PA 19106. SIGNED BY HONORABLE WENDY BEETLESTONE ON 01/04/2019. 01/04/2019 |

| | | |
|---|---|---|
| | | ENTERED AND COPIES MAILED, E-MAILED.(nd, ) Modified on 1/4/2019 (nd, ). (Entered: 01/04/2019) |
| 01/04/2019 | 10 | AFFIDAVIT of Service by Theresa DeTommaso re: served Summons & Complaint upon Educational Commission for Foreign Medical Graduates, Dr. William W. Pinsky by Personal Service on 12/31/18. (fdc) (Entered: 01/07/2019) |
| 01/08/2019 | 11 | NOTICE of Appearance by ELISA P. MCENROE on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY with Certificate of Service(MCENROE, ELISA) (Entered: 01/08/2019) |
| 01/10/2019 | 12 | RESPONSE in Opposition re 3 First MOTION for Permanent Injunction First MOTION for Preliminary Injunction *with Certificate of Service* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (Attachments: # 1 Text of Proposed Order Proposed Order, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Exhibit Exhibit 6, # 8 Exhibit Exhibit 7, # 9 Exhibit Exhibit 8, # 10 Exhibit Exhibit 9, # 11 Exhibit Exhibit 10, # 12 Exhibit Exhibit 11, # 13 Exhibit Exhibit 12, # 14 Exhibit Exhibit 13, # 15 Exhibit Exhibit 14, # 16 Exhibit Exhibit 15, # 17 Exhibit Exhibit 16)(MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | 13 | MOTION to Quash *Subpoena for the Appearance of Dr. William W. Pinsky* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY.Memorandum, Declaration, Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Text of Proposed Order, # 3 Exhibit A, # 4 Exhibit B, # 5 Exhibit C, # 6 Exhibit D, # 7 Exhibit E)(MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | 14 | Disclosure Statement Form pursuant to FRCP 7.1 with Certificate of Service by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (MCENROE, ELISA) (Entered: 01/10/2019) |
| 01/10/2019 | 15 | AFFIDAVIT of Service by National Association of Professional Process Servers re: served Praecipe to Attach upon Education Commission for Foreign Medical Graduates, Dr. William W. Pinsky by Personal Service on 1/4/19 (fdc, ) (Entered: 01/10/2019) |
| 01/10/2019 | 16 | NOTICE OF RESCHEDULED HEARING ON PRELIMINARY INJUNCTION - HEARING HAS BEEN RESCHEDULED UNTIL THURSDAY, JANUARY 24, 2019 AT 2:00 P.M. IN COURTROOM 3B. PLEASE MAKE NOTE OF THIS CHANGE IN DATE AND TIME. THANK YOU. (amw, ) (Entered: 01/10/2019) |
| 01/10/2019 | 17 | NOTICE of Appearance by MATTHEW DANIEL KLAYMAN on behalf of EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY with Certificate of Service(KLAYMAN, MATTHEW) (Entered: 01/10/2019) |
| 01/15/2019 | 18 | NOTICE OF CONFERENCE FOLLOWING HEARING: PRETRIAL CONFERENCE SET FOR 1/24/2019 04:00 PM FOLLOWING SCHEDULED PRELIMINARY INJUNCTION HEARING IN COURTROOM 3B BEFORE HONORABLE WENDY BEETLESTONE. (Attachments: # 1 Electronic Discovery Order, # 2 Joint Report of Rule 26(f) Meeting and Proposed Discovery Plan)(amw, ) (Entered: 01/15/2019) |
| 01/18/2019 | 19 | Report Of *Rule 26(f) Meeting and Proposed Discovery Plan* by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (KLAYMAN, MATTHEW) (Entered: 01/18/2019) |
| 01/22/2019 | 20 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Proposed Order)(MCENROE, ELISA) (Entered: 01/22/2019) |

| 01/25/2019 | 21 | SCHEDULING ORDER. ORDER THAT ALL FACT DISCOVERY IS DUE BY 4/19/19, ANY MOTIONS FOR SUMMARY JUDGMENT SHALL BE FILED BY 5/3/19. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/24/19. 1/25/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 01/25/2019) |
|---|---|---|
| 01/25/2019 | 22 | ORDER THAT PLAINTIFF'S 3 MOTION FOR A PERMANENT AND PRELIMINARY INJUNCTION IS DENIED. IT IS FURTHER ORDERED THAT DEFENDANTS' 13 MOTION TO QUASH SUBPOENA FOR THE APPEARANCE OF DR. WILLIAM W. PINSKY IS DISMISSED AS MOOT. SIGNED BY HONORABLE WENDY BEETLESTONE ON 1/24/19.1/25/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 01/25/2019) |
| 01/25/2019 | 23 | Minute Entry for proceedings held before HONORABLE WENDY BEETLESTONE. Preliminary Pretrial Conference & Injunction Hearing held on 1/24/19 Court Reporter: ESR. (fdc) (Entered: 01/28/2019) |
| 02/14/2019 | 24 | RESPONSE in Opposition re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *with Memorandum of Law, Proposed Order, and Certificate of Service* filed by ORIEN L. TULP. (REIL, WILLIAM) (Entered: 02/14/2019) |
| 02/21/2019 | 25 | REPLY to Response to Motion re 20 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES, WILLIAM W. PINSKY. (MCENROE, ELISA) (Entered: 02/21/2019) |
| 02/25/2019 | 26 | TRANSCRIPT of Preliminary Injunction Hearing held on 1/24/19, before Judge Beetlestone. Court Reporter/Transcriber Chris Hwang. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.. Redaction Request due 3/18/2019. Redacted Transcript Deadline set for 3/28/2019. Release of Transcript Restriction set for 5/28/2019. (fdc) (Entered: 02/25/2019) |
| 02/25/2019 | 27 | Notice of Filing of Official Transcript with Certificate of Service re 26 Transcript - PDF, 2/25/19 Entered and Copies Emailed and Mailed. (fdc) (Entered: 02/25/2019) |
| 03/26/2019 | 28 | MEMORANDUM AND OPINION. SIGNED BY HONORABLE WENDY BEETLESTONE ON 3/26/19. 3/26/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 03/26/2019) |
| 03/26/2019 | 29 | MEMORANDUM AND ORDER THAT DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMMON LAW DUE PROCESS CLAIM AGAINST ECFMG IS DENIED; DEFENDANTS' MOTION TO DISMISS THE REMAINDER OF PLAINTIFF'S CLAIMS AGAINST DEFENDANTS IS GRANTED. SUCH CLAIMS ARE DISMISSED WITHOUT PREJUDICE. SIGNED BY HONORABLE WENDY BEETLESTONE ON 3/26/19. 3/26/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 03/26/2019) |
| 04/09/2019 | 30 | ANSWER to 1 Complaint *and Affirmative Defenses* by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.(MCENROE, ELISA) (Entered: 04/09/2019) |
| 05/03/2019 | 31 | MOTION for Summary Judgment filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES.Certificate of Service. (Attachments: # 1 Memorandum of Law, # 2 Proposed Order, # 3 Statement of Undisputed Material Facts, # 4 Joint Appendix)(MCENROE, ELISA) (Entered: 05/03/2019) |
| 05/17/2019 | 32 | STIPULATION AND ORDER THAT PLAINTIFF WILL RECEIVE A 10-DAY EXTENSION (UNTIL JUNE 3, 2019) OF THE DEADLINE TO RESPOND TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 31 . SIGNED BY |

| | | HONORABLE WENDY BEETLESTONE ON 5/14/19. 5/17/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 05/17/2019) |
|---|---|---|
| 06/03/2019 | 33 | Answer to defendants' re 31 MOTION for Summary Judgment filed by ORIEN L. TULP. Memorandum of law, Statement of Disputed Facts, Certificate of service. (Attachments: # 1 Memorandum, # 2 Text of Proposed Order, # 3 Statement of Disputed Material Facts, # 4 Appendix-Table of Contents, # 5 Plaintiff's Appendix, # 6 Certificate of Service)(REIL, WILLIAM) Modified on 6/5/2019 (afm, ). (Entered: 06/03/2019) |
| 06/20/2019 | 34 | REPLY to Response to Motion re 31 MOTION for Summary Judgment *with Certificate of Service* filed by EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES. (Attachments: # 1 Reply Statement of Undisputed Material Facts, # 2 Supplement to Joint Appendix and Table of Contents)(MCENROE, ELISA) (Entered: 06/20/2019) |
| 06/25/2019 | 35 | MEMORANDUM AND OPINION. SIGNED BY HONORABLE WENDY BEETLESTONE ON 6/25/19. 6/25/19 ENTERED AND COPIES MAILED & E-MAILED.(fdc) (Entered: 06/25/2019) |
| 06/25/2019 | 36 | MEMORANDUM AND ORDER THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT 33 IS GRANTED. IT IS FURTHER ORDERED THAT THE CLERK OF COURT SHALL MARK THIS CASE AS CLOSED. SIGNED BY HONORABLE WENDY BEETLESTONE ON 6/25/19. 6/25/19 ENTERED AND COPIES MAILED AND E-MAILED.(fdc) (Entered: 06/25/2019) |
| 07/23/2019 | 37 | NOTICE OF APPEAL by ORIEN L. TULP. Filing fee $ 505, receipt number 0313-13687584. Copies to Judge, Clerk USCA, Appeals Clerk and Appeal Record due by 7/25/2019. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Certificate of Service)(REIL, WILLIAM) (Entered: 07/23/2019) |
| 07/26/2019 | 38 | NOTICE of Docketing Record on Appeal from USCA re 37 Notice of Appeal (Credit Card Payment), filed by ORIEN L. TULP. USCA Case Number 19-2706 (dmc, ) (Entered: 07/29/2019) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/19/2019 15:35:02 | | |
| **PACER Login:** | billreil:2663916:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:18-cv-05540-WB |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635          ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## COMPLAINT – CIVIL ACTION

### PARTIES

1. The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO 80033. At all times material herein, plaintiff was President of the University of Science, Arts, and Technology ("USAT"), and had an ownership interest in the University. USAT is located in Montserrat, but its US administrative office is located at the address in the caption, and students take classes in Montserrat and the US via a distance education format.

2. A defendant is the Educational Commission for Foreign Medical Graduates, hereafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their mission statement, the ECFMG is an organization which purports to certify medical school students and graduates to practice medicine in the United States.

25a

3. A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG, whose address for service of process is indicated in the caption. *See* Exhibit A, attached and incorporated herein.

4. ECFMG is an organization sponsored by various medical organizations, including the Federation of State Medical Boards. Through the ECFMG's certification process, it gives medical students and medical graduates a certification of eligibility (essentially a license) to apply for a ACGME [Accreditation Council for Graduate Medical Education] certified residency program of postgraduate specialty training that can lead to medical licensure of the applicant. A residency program is a certified program that trains students who have graduated from a medical school and taken a series of examinations or tests administered by way of the United States Medical Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

5. The action of the ECFMG is in granting authority to apply for a residency program is state action. The ECFMG's authority, which is in essence a license to apply for a residency program, has a close nexus to the various state medical boards. Without the ECFMG certificate, the ACGME postgraduate programs will not permit the applicant to start the training that will in essence allow the gate to be closed to obtaining a medical residency and eventual license to practice medicine in the USA. Without the residency training, the medical graduate cannot obtain a full unrestricted medical license. The state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure. State action is established because of this delegation of screening power. *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351.

6. The ECFMG has placed itself in a position of interdependence with the state medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG reports to the state medical boards but also reports to the National Practitioner Data Bank. The ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority*, 365 U.S. 715, 725 (1961).

7. Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

### JURISDICTION AND VENUE

8. The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

9. Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

## SUMMARY

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

## GENERAL ALLEGATIONS

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". *See* Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of

Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 4 of 32

alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

## FIRST CAUSE OF ACTION
### Plaintiff v. ECFMG

21. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

22. This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

23. The Board allegedly refused to release scores of necessary medical exams to students and graduates of USAT, de facto, closing the University.

24. The Board published, in the World Directory of Medical Schools, a warning to students that it would not recognize USAT with respect to necessary medical qualifying examinations after January 1, 2019. *See* Exhibit B.

25. The Board sent illegal "affidavits" to students in an attempt to intimidate them from continuing as students at USAT. These alleged affidavits threatened medical students with perjury, as well as "irregular behavior", and also directed the students to provide certain documentary evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process, and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena duces tecum" without first having a legal proceeding. The Board had no power to issue these so-called affidavits. These affidavits are also a violation of Federal Education Records Protection Act (FERPA). Students are predominantly US citizens and are entitled to such protection under FERPA.

26. The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as President of the University by discouraging students from registering or continuing their education at USAT, including verbal recommendations from ECFMG case workers. The Board issued "affidavits" and threatened to find students of USAT guilty of "irregular behavior".

27. There was no hearing before the students of USAT were sent emails by the ECFMG telling them that they may have been assigned "irregular behavior" and that their scores would not be released to medical institutions to be accepted for residency applications or other ECFMG services.

28. ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity

29. As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

30. Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

32. This cause of action is for violation of due process by the ECFMG (the Board).

33. The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

34. The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

35. The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

36. The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of

30a

affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Com., State Bd. Of Medicine* 529 Pa. 535 (1992).

37. ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

38. The Board has acted as a governmental entity, and is estopped from denying the same.

39. When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

40. Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

41. The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

42. As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

### THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

44. This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

45. As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

(a) representing itself as an official governmental agency;
(b) distributing affidavits to intimidate USAT students, which affidavits did not
    have a disclaimer or conform to law;
(c) placing misleading information about USAT into the World Directory of
    Medical Schools without notice, and which was designed to intimidate
    students and to effectively force closure of USAT;
(d) using illegal affidavits whose purpose was to gather documents and evidence
    of alleged culpable behavior by USAT and Dr. Tulp, all of which was in
    violation of FERPA, the Family Educational Rights and Privacy Act;
(e) violating FERPA by not receiving the requisite consent of students to their
    educational records.

46. As indicated in the prior counts, the Board has held itself out as a governmental
agency. The Board has never indicated to those that it dealt with, in particular the
students, that it is not an official governmental agency.

47. Accordingly, the Board is estopped by its conduct to deny that it is required to
show due process, as if it were a governmental entity.

WHEREFORE, the Court is requested to order ECFMG to immediately resume
processing the medical examinations of students of USAT, and release their examination
scores, and remove the negative advisory from the sponsor notes on the World Directory
of Medical Schools listing for the USAT College of Medicine, and to award such other
injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

49. This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky,
which is attached and incorporated as Exhibit A.

50. Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he
authorized the illegal actions of the ECFMG, heretofore described.

51. On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing
him as Professor and President of USAT at its main location in Montserrat.

52. In this letter, Dr. Pinsky indicated, *inter alia*, essentially, that the ECFMG
Committee had determined that, for a minimum period of five years, from the date of the
letter, that Dr. Tulp was banned from submitting any documents or having any dealings
with the ECFMG on behalf of USAT or otherwise.

53. This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

54. This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

55. This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

56. Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

57. The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

58. The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

   (a) banning Dr. Tulp without a proper hearing;
   (b) banning Dr. Tulp without an evidentiary basis;
   (c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
   (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
   (e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
   (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
FOR: Tommy Swate, Esquire
Attorneys for Plaintiff
File I.D. No. WCR1962
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

December 24, 2018

# EXHIBIT A



| | EDUCATIONAL COMMISSION FOR | 3624 Market Street |
|---|---|---|
| | FOREIGN MEDICAL GRADUATES | Philadelphia PA 19104-2685 USA |
| | | 215-386-5900 | 215-386-9767 Fax |
| | | www.ecfmg.org |

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

December 14, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

Dr. Orien L. Tulp
December 14, 2018
Page 2 of 2

> *In 2018, ECFMG determined that a certain official of the University of Science Arts & Technology engaged in irregular behavior in connection with providing false information to ECFMG.*

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

Sincerely,

William W. Pinsky, MD FAAP FACC
President and CEO

CC: Tommy Swate, Esq. swatemd@aol.com
    William Reil, Esq. billreillaw@gmail.com

Encl: As noted.

37a

# EXHIBIT B

# University of Science, Arts & Technology (USAT) Faculty of Medicine

Montserrat

---

School Details     Contact Information     Program Details     Sponsor Notes

The information below has been provided by the World Directory's sponsoring organizations.

- Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certification and for examination, provided that:
  - For medical school students officially enrolled in this school, the graduation years are listed below as "current".
  - For graduates of this medical school, their graduation year is included in the graduation years listed below.
        Graduation Years:
            2003 - 2018
  - All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detailed information.
- **Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**
- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

# EXHIBIT C



AN AGREEMENT

BETWEEN

THE GOVERNMENT OF MONTSERRAT

AND

MEDICAL COLLEGE OF

LONDON (MCL),

UNIVERSITY OF SCIENCE, ARTS

AND

TECHNOLOGY

(MONTSERRAT) LTD. (USAT)

MONTSERRAT

A.D. 2003

A G R E E M E N T

THIS AGREEMENT made the ....2nd.... day of .....September...., 2003 between:

THE GOVERNMENT OF MONTSERRAT (hereinafter referred to as 'the Government' which expression shall where the context so admits include its assigns and successors) whose address for service is THE CHIEF MINISTER'S OFFICE, BRADES, MONTSERRAT and MEDICAL COLLEGE OF LONDON (MCL), UNIVERSITY OF SCIENCE, ARTS AND TECHNOLOGY (Montserrat) LTD (USAT), a duly incorporated company (hereinafter referred to as 'the MCL-USAT' which expression shall where the context so admits include its assigns and successors) whose address is BRADES, Montserrat.

WITNESSETH AS FOLLOWS: -

1.    DEFINITIONS

In this agreement the following expressions shall have the meaning herein ascribed to them.

"Agreement Period" means a period of 20 years commencing with the date on which this agreement is executed. The MCL-USAT will have the option to review and renew the Agreement.

"Contributions" means a contribution payable to the Social Security Fund.

"Expatriate Staff" means staff recruited from overseas who are not citizens of Montserrat or are not ordinarily resident in Montserrat for tax purposes.

"USAT" means UNIVERSITY OF SCIENCE, ART AND TECHNOLOGY (MONTSERRAT) LTD.

2.    TAX EXEMPTIONS

(1)

6.    WORK PERMIT FOR EXPATRIATE EMPLOYEES

6.1    MCL-USAT will at the beginning of each year of the agreement period provide a list of names of its academic and administrative staff requiring work permits and in addition shall supply all relevant information needed for the processing of the work permits.

6.2    Government of Montserrat shall issue the necessary work permits and visas to enable MCL-USAT staff, students and families to remain on island for the period of their employment or study subject to the significance of any information provided on Police Records.

3

7.2   MCL-USAT will ensure that income tax is paid in respect of each of its employees.

8.   **GENERAL**

8.1   The Government undertakes to establish a registry to record certification obtained by medical graduates of MCL-USAT.

8.2   The Government of Montserrat will at the request of MCL-USAT request the listing of MCL-USAT with the World Directory of Medical Schools published by WHO, Geneva, Switzerland.

4

8.13   MCL-USAT agrees to maintain operations in Montserrat with regard to its Medical and other Programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not affect any permission granted to the MCL-USAT by the Government of Montserrat.

8.14   The MCL-USAT may grant academic and professional degrees to duly qualified students of the institution and commensurate with an institution of higher education who have completed the academic and professional requirements of the degree for which they have been considered, and who have been recommended for such by the faculty and directors of MCL-USAT. The specific degrees authorized shall include Doctor of Philosophy (PH.D.), the Doctor of Medicine (M.D.) or Bachelor of Surgery (M.B.B.S), Bachelor of Dental Surgery (B.D.S.), the Master of Public Health (M.P.H.), the Master of Science (M.Sc.), the Master of Arts (M.A.), the Bachelor of Science (B.Sc.) and the Bachelor of Arts (B.A.).

IN WITNESS whereof the parties or the duly authorised representative of the parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Dr. Orien L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Before and in the presence of:

Esco Henry-Greer
Attorney General

Esco Henry-Greer
Attorney General

7

9.5    At the end of the agreement period MCL-USAT shall have the
       option to extend the agreement for a further period to be
       determined by MCL-USAT and GOM.

9.6    Notwithstanding the above, the offer included in this agreement
       shall be valid for a period of one (1) year from the date of this
       agreement after which the terms and conditions may be subject to
       re-negotiation however, if MCL-USAT makes any substantial
       property investment or undertakes any major contractual obligation
       referable to and in reliance on this Agreement, then the terms set
       out shall become final and binding on the Government.

IN WITNESS whereof the parties or the duly authorised representative of the
parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Before and in the presence of:

Esco Henry-Greer
Attorney General

Dr. Orion L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Esco Henry-Greer
Attorney General

7

(7/203)
COMPANY NO.

# COMPANIES ACT OF MONTSERRAT

## CERTIFICATE OF INCORPORATION

### UNIVERSITY OF SCIENCE, ARTS AND TECHNOLOGY (MONTSERRAT) LTD.

**NAME OF COMPANY**

I hereby certify that the above-mentioned Company, the Articles of Incorporation of which are attached, was incorporated under the Montserrat Companies Act 1998.

Registrar of Companies

18th September 2003
Date of Incorporation



# EXHIBIT D

ECFMG®
EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES
3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

# AFFIDAVIT ATTESTING TO MEDICAL SCHOOL ATTENDANCE

I, ______________________________________________

*ECFMG Applicant Name* *ECFMG ID Number*

hereby declare, under penalty of perjury under the laws of all applicable jurisdictions, including the United States of America, and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations, that:

**Section 1: Attendance Dates at University of Science, Arts & Technology (USAT) Faculty of Medicine**

I attended University of Science, Arts & Technology (USAT) Faculty of Medicine located in Montserrat during the following dates:

| From (Month/Year) | To (Month/Year) |
|---|---|
| | |

**Section 2: Dates and Location of Basic Sciences Courses Taken in Montserrat**

I was physically present and took basic sciences courses in Montserrat, during the following dates and at the following location *(If you did not complete your basic sciences course work at a facility located in Montserrat, complete Section 3)*:

**Dates of Basic Sciences Courses Taken while Physically Located In Montserrat**
(Do not include dates if you were not physically present in Montserrat. Do not include breaks in time where you were not physically located in Montserrat. Only list the beginning and end date for when you were physically present in Montserrat attending basic sciences courses.)

| From (Month/Year) | To (Month/Year) | Address of Facility Where Basic Sciences Classes Were Held |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

While I took my basic sciences classes in Montserrat, I resided at the following location(s):

| Residence Address in Montserrat | Residence Dates in Montserrat | |
|---|---|---|
| | From (Month/Year) | To (Month/Year) |
| | | |
| | | |

I am attaching the following documentation to demonstrate my physical presence in Montserrat during the time I was taking basic sciences classes at University of Science, Arts & Technology (USAT) Faculty of Medicine. *(check all that apply)*:

- ☐ My passport, showing travel to Montserrat and visas for Montserrat
- ☐ My airline tickets/boarding passes documenting travel to Montserrat
- ☐ My lease, utility bills, etc. for my housing
- ☐ Other (please specify)

**Section 3: TO BE COMPLETED ONLY IF YOU CANNOT COMPLETE SECTION 2**

I did *not* take basic sciences courses at a facility located in Montserrat because:

I also declare that this information is comprehensive, complete and accurate as of the date of my signature.

______________________________________________ ______________________
*Signature of Applicant* *(day) (month) (year)*

**Certification by Official**

I certify that on the date set forth below the individual named above did appear personally before me and that the statements in this document are subscribed and sworn to before me by the individual on this____ day, of the month of ________ in the year ________.

______________________________________________
*Signature of Notary Public*

______________________________________________
*Printed Name of Offical*

Official Seal

WHAT YOU NEED TO DO
Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification, including registration for the United States Medical Licensing Examination (USMLE), release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, you must complete the attached affidavit, attesting to the accuracy of your medical school attendance information to ECFMG's satisfaction. Completion of the affidavit is required and will facilitate ECFMG's review.

The affidavit must also be notarized by NotaryCam, which provides secure on-line notarization of documents. To use NotaryCam, go to https://www.notarycam.com/ecfmg-affidavit/ and follow NotaryCam's instructions. NotaryCam will e-mail your affidavit to ECFMG directly.

YOU MUST COMPLETE AND SUBMIT THIS AFFIDAVIT NO LATER THAN NOVEMBER 1, 2018.

Please allow two to four weeks processing time after the above-described affidavit has been submitted to ECFMG. ECFMG will notify you in writing after your affidavit has been processed.

ECFMG reserves the right to bring allegations of irregular behavior against you, in accordance with its policies and procedures, should ECFMG obtain information that indicates that you have engaged in irregular behavior with respect to any documentation submitted as part of this process.

If you have any questions, please contact MECCsupport@ecfmg.org and you will be assigned a Case Manager. If you prefer, you may call 215-386-5900 and ask to be transferred to a Case Manager for USAT.

Sincerely,

ECFMG

# EXHIBIT E

 EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

VIA EMAIL: swatemd@aol.com

November 21, 2018

Mr. Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013

Dear Mr. Swate:

Thank you for the email confirmation on November 16, 2018 that you received the complete file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") in the matter related to Dr. Orien Tulp. As previously communicated, Dr. Tulp is scheduled to make a personal appearance (accompanied by you and Mr. Reil, his attorneys) before the ECFMG Committee on Wednesday, November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, PA 19103. Please arrive with Dr. Tulp at 8:45 AM.

I am writing in response to your letter dated November 13, 2018, which is rife with misstatements. There are two important issues of concern which require clarification at this time: (1) ECFMG's authority to conduct its activities, including the ECFMG Certification program and making allegations of irregular behavior pertaining to Dr. Tulp; and (2) the "activity of the ECFMG in regards to the USAT" related to ECFMG's update of USAT's *World Directory of Medical Schools* ECFMG Sponsor Note.

**Concern (1):    ECFMG's Authority to Conduct the ECFMG Certification Program & Irregular Behavior**

In your letter, you request ECFMG to "identify by what legal authority [ECFMG] has to claim and report that Dr. Tulp - engaged in 'irregular behavior'." For some additional context regarding ECFMG's responsibility and its mission to protect the public, ECFMG (formally the Evaluation Service for Foreign Medical Graduates) was established as a private, non-profit organization in 1956 by the Federation of State Medical Boards (FSMB), the American Hospital Association (AHA), the Association of American Medical Colleges (AAMC), and the American Medical Association (AMA). It was established to validate medical credentials, assess basic medical knowledge and determine English language proficiency for graduates of international medical schools. As you may already know, medical licensing authorities in the United States require that international medical graduates (IMGs) be certified by ECFMG, among other requirements, to obtain an unrestricted license to practice medicine.

In support of its mission to protect the public, individuals that have or have attempted to subvert ECFMG's policies and procedures are subject to ECFMG's Policies and Procedures on Irregular Behavior. These were previously shared with you and are also available on ECFMG's web-site at https://www.ecfmg.org/programs/irregular-behavior.html. As communicated in our prior correspondence, it is under these policies that Dr. Tulp is charged with irregular behavior for providing false information to ECFMG. I trust that the files you received on November 16 help clarify the charges and evidence of irregular behavior.

Mr. Tommy Swate
November 21, 2018
Page 2 of 2

**Concern (2): ECFMG's Update to USAT's World Directory ECFMG Sponsor Note**

As previously communicated to you, ECFMG's update to USAT's World Directory Sponsor note is *not* related to a charge of irregular behavior for Dr. Tulp.

ECFMG updated its sponsor note on October 18, 2018 because ECFMG learned that USAT was operating a medical school campus located in the United States. Before taking this action, ECFMG had requested USAT to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school campuses and educational programs in the United States. To date, USAT has failed to deliver such documentation.

It appears from the information gathered from you (e.g. your statement that USAT has conducted classes "in locations other than Montserrat *for 15 years* without incident...") and corroborated by USAT students that USAT has primarily operated and conducted its educational activities in the United States. Based on this information, USAT may not even be an international medical school. However, as previously communicated, if you are able to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will consider this information.

Also, in your letter dated November 13, 2018 you state "ECFMG has taken the position that ECFMG has the right to accredit a medical school." We must clarify for you that ECFMG is not an accrediting agency and does not purport to accredit international medical schools.

Please contact me if you have any additional questions regarding our ECFMG Committee meeting scheduled next week.

Sincerely,

Ms. Kara Corrado, JD
Vice President for Operations

# EXHIBIT F



| ECFMG | EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES | 3624 Market Street<br>Philadelphia PA 19104-2685 USA<br>215-386-5900<br>www.ecfmg.org |

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

October 18, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to advise you of the allegation that you, individually and in your capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified. The details of ECFMG's allegation are set forth below.

**Details of Allegation**
*False Information Regarding U.S. Branch Campuses*
On August 21, 2018, ECFMG advised you that we had become aware that USAT was operating a "branch" campus in Miami, Florida. We advised you that in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country. Therefore, we requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. We indicated that this documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

In response to ECFMG's August 21, 2018 letter, you replied:

"This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 4

> Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
>
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas. We note that there are no lectures scheduled for Montserrat. We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original]. Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

Dr. Orien L. Tulp
October 18, 2018
Page 3 of 4

agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

**Certification of False Information Regarding Students Attendance Dates**

During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.

It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior*. See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*. Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG. ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.

The review into the matters described in this letter are ongoing. ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

**ECFMG Medical Education Credentials Committee Review of this Allegation**

This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*.

You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;

Dr. Orien L. Tulp
October 18, 2018
Page 4 of 4

- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

**Please provide a response to ECFMG by November 1, 2018.** In your response, please note whether you wish to make a personal appearance before the ECFMG Committee. All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org. If you have any questions, please do not hesitate to call me at (215) 883-7318.

Sincerely,

*Lisa L. Cover*

Lisa L. Cover
Senior Vice President for Business
Development and Operations

Encl: As noted.

56a

JS 44 (Rev 08/18)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS | 18   5540 |
|---|---|---|

**(b)** County of Residence of First Listed Plaintiff _Colorado_
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _Philadelphia_
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question *(U.S. Government Not a Party)*
☐ 2  U.S. Government Defendant
☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for Nature of Suit Code Descriptions.

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
☐ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PERSONAL INJURY**
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
*Other:*
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
_Diversity_

Brief description of cause:
_Injunctive relief and damages for "Tortious Behavior"_

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P
DEMAND $ _None at this_
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE ____    DOCKET NUMBER ____

DEC 24 2018

DATE _12/21/18_
SIGNATURE OF ATTORNEY OF RECORD _[signature]_

FOR OFFICE USE ONLY

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG JUDGE ____

57a

Case 2:18-cv-05540-WB  Document 1-1  Filed 12/24/18  Page 2 of 3

**WB**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

18  5540

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 4-288 Youngfield Street Wheat Ridge, CO 80033

Address of Defendant: 3624 Market Street Philadelphia, PA 19104

Place of Accident, Incident or Transaction: Philadelphia

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☐

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 12/24/18   _signature_ Attorney-at-Law / Pro Se Plaintiff   26833 Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

**A.    Federal Question Cases:**

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases (Please specify) _____

**B.    Diversity Jurisdiction Cases:**

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify) _____
7. ☒ Products Liability
8. ☐ Products Liability – Asbestos
9. ☒ All other Diversity Cases (Please specify) Injunctive Relief "Irregular Behavior"

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _William C Reil_, counsel of record or pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☒ Relief other than monetary damages is sought.

DEC 24 2018

DATE: 12/21/18   _signature_ Attorney-at-Law / Pro Se Plaintiff   26833 Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

58a



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

TULP

v.                                                    CIVIL ACTION

ECFMG, et al                                          **18    5540**

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.            ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.            ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)            (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.            ( )

12/24/18     William C. Reil     Plaintiff
**Date**       **Attorney-at-law**     **Attorney for**

215-564-1635    215-564-4292    billreillaw@gmail.com
**Telephone**      **FAX Number**     **E-Mail Address**

(Civ. 660) 10/02

DEC 24 2018

59a

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:18-cv-05540-WB |
| | ) |
| v. | ) Hon. Wendy Beetlestone |
| | ) |
| EDUCATIONAL COMMISSION FOR | ) |
| FOREIGN MEDICAL GRADUATES and | ) |
| DR. WILLIAM W. PINSKY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

For the reasons set forth in the attached memorandum of law, Defendants Educational Commission for Foreign Medical Graduates ("ECFMG") and Dr. William W. Pinsky, by and through their undersigned counsel, move to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state any claim against ECFMG or Dr. Pinsky.

Dated: January 22, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or U.S. mail:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiff*

DATED:  January 22, 2019                    */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DR. ORIEN L. TULP,<br><br>       Plaintiff,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES and<br>DR. WILLIAM W. PINSKY,<br><br>       Defendants. | Case No. 2:18-cv-05540-WB<br><br>Hon. Wendy Beetlestone |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

January 22, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:   +1.215.963.5917
Facsimile:   +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates and Dr. William
W. Pinsky*

# TABLE OF CONTENTS

Page

I.      Introduction .................................................................................................... 1

II.     Background ...................................................................................................... 1

        A.      The Educational Commission for Foreign Medical Graduates............................. 1

        B.      Dr. Orien L. Tulp and USAT ..................................................................... 2

        C.      ECFMG Investigates Allegations of Unauthorized USAT Operations in
                the United States. ...................................................................................... 2

        D.      ECFMG Modifies Its Sponsor Note for USAT in the World Directory of
                Medical Schools. ....................................................................................... 4

        E.      Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded.......... 5

        F.      Dr. Tulp Sues ECFMG and Moves for Injunctive Relief. ............................... 6

III.    Legal Standard ................................................................................................ 6

IV.     Argument ........................................................................................................ 7

        A.      Dr. Tulp Has Not Stated A Claim for Tortious Interference. ............................ 7

        B.      Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent
                Misrepresentation. .................................................................................... 10

        C.      Dr. Tulp Has Not Stated A Claim for Abuse of Process. ............................... 13

        D.      Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for
                Deprivation of Due Process. ....................................................................... 15

        E.      Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky. .............................. 19

V.      Conclusion ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009).................................................................................6, 7

*Bahleda v. Hankison Corp.,*
323 A.2d 121 (Pa. Super. 1974)..................................................................9

*Barnum v. Milbrook Care Ltd. Partnership,*
850 F. Supp. 1227 (S.D.N.Y. 1994)...........................................................7

*Bd. of Regents of State Colls. v. Roth,*
408 U.S. 564 (1972)...................................................................................17

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)....................................................................................6

*Biliski v. Red Clay Consol. School Dist. Bd. of Educ.,*
574 F.3d 214 (3d Cir. 2009)................................................................18, 19

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.,*
946 F. Supp. 2d 402 (E.D. Pa. 2013) .........................................................8

*Brown v. Fed'n of State Med. Bds.,*
No. 82-7398, 1985 WL 1659 (N.D. Ill. May 31, 1985).............................17

*Byers v. Intuit, Inc.,*
No. 07-4753, 2009 WL 948651 (E.D. Pa. March 18, 2009)........................7

*Elias v. ECFMG,*
No. C-82-08, 2010 WL 4340640 (N.J. Super. Nov. 4, 2010)..........15, 17, 18

*Fed. Deposit Ins. Corp. v. Mallen,*
486 U.S. 230 (1988)...................................................................................19

*Feingold v. State Farm Mutual Ins. Co.,*
No. 1573 EDA 2015, 2016 WL 4690712 (Pa. Super. June 24, 2016)........14

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009)...............................................................1, 6, 8

*Gibbs v. Ernst,*
647 A.2d 882 (Pa. 1994) ...........................................................................10

## TABLE OF AUTHORITIES

Page(s)

*Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.,*
119 A.3d 1070 (Pa. Super. 2015)......................................................................11, 13

*Gonzaga Univ. v. Doe,*
536 U.S. 2731 (2002).........................................................................................13

*Grayson v. Mayview State Hospital,*
293 F.3d 103 (3d Cir. 2002)...............................................................................20

*Joyce v. Erie Ins. Exchange,*
74 A.3d 157 (Pa. Super. 2013)............................................................................12

*Klemow v. Time Inc.,*
352 A.2d 12 (Pa. 1976).......................................................................................12

*LeDonne v. Kessler,*
389 A.2d 1123 (Pa. Super. 1978)........................................................................12

*Lerner v. Lerner,*
954 A.2d 1229 (Pa. Super. 2008)........................................................................13

*Liss & Marion, P.C. v. Recordex Acquisition Corp.,*
983 A.2d 652 (Pa. 2009).....................................................................................12

*Loftus v. SEPTA,*
843 F. Supp. 981 (E.D. Pa. 1994).......................................................................16

*Lum v. Bank of America,*
361 F.3d 217 (3d Cir. 2004)..................................................................................7

*Matthews v. Eldridge,*
424 U.S. 319 (1976).......................................................................................18, 19

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,*
24 F.3d 519 (3d Cir. 1994)..............................................................................16, 17

*Neopart Transit, LLC v. CBM N.A. Inc.,*
314 F. Supp. 3d 628 (E.D. Pa. 2018)....................................................................9

*Nicholas v. Pa. State Univ.,*
227 F.3d 133 (3d Cir. 2000)................................................................................15

*Opoku v. ECFMG,*
574 F. App'x 197 (3d Cir. 2014) .....................................................................15, 16

*Osei v. Temple Univ.,*
518 F. App'x. 86 (3d Cir. 2013) ..........................................................................19

# TABLE OF AUTHORITIES

Page(s)

*Phillips v. Selig,*
959 A.2d 420 (Pa. Super. 2008).........................................................................8, 9

*Plasko v. City of Pottsville,*
852 F. Supp. 1258 (E.D. Pa. 1994) ..............................................................7, 11, 13

*Rendell-Baker v. Kohn,*
457 U.S. 830 (1982)..................................................................................15, 20

*Rockman v. Aciukewicz,*
No. 1434 MDA 2013, 2014 WL 10937492 (Pa. Super. Apr. 1, 2014)...................14

*Santiago v. Warminster Twp.,*
629 F.3d 121 (3d Cir. 2010)........................................................................20

*Schmoltze v. County of Berks,*
No. 99-cv-1069, 2000 WL 62600 (E.D. Pa. January 14, 2000)........................14

*Shiner v. Moriarty,*
706 A.2d 1228 (Pa. Super. 1998).............................................................13, 14

*Simply Snackin, Inc. v. S-L Distributors,*
No. 17-cv-0381, 2017 WL 6039734 (M.D.Pa. Dec. 6, 2017) .................................9

*Staudinger v. ECFMG,*
No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) ..................................16

*Synthes, Inc. v. Emerge Med., Inc.,*
No. 11-1566, 2014 WL 2616824 (E.D.Pa June 11, 2014)......................................9

*Thomas v. NBME-Nat'l Bd. of Medical Examin'rs,*
No. 13-3946, 2015 WL 667077 (E.D. Pa. Feb. 13, 2015) .....................................15

*In re Thorne's Estate,*
25 A.2d 811 (Pa. 1942) .............................................................................12

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,*
20 A.3d 468 (Pa. 2011) ...........................................................................9, 10

*West v. Atkins,*
487 U.S. 42 (1988)..................................................................................20

*Winer Family Trust v. Queen,*
503 F.3d 319 (3d Cir. 2007).......................................................................7

**Statutes and Rules**

42 U.S.C. § 1983 ........................................................................................15, 20

## TABLE OF AUTHORITIES

**Page(s)**

Federal Education Records Protection Act, 20 U.S.C. § 1232g ....................................................13

Federal Rule of Civil Procedure 8 ...............................................................................................7

Federal Rule of Civil Procedure 12(b)(6) ........................................................................1, 6, 7, 20

**Other Authorities**

U.S. Const. amend. XIV ........................................................................................................15, 18

Restatement (Second) of Torts § 772, cmt. b.............................................................................10

5B Wright & Miller, Federal Practice and Procedure, § 1357 (3d 2004).......................................7

## I.    INTRODUCTION

Plaintiff Dr. Orien L. Tulp sued the Educational Commission for Foreign Medical Graduates ("ECFMG")—a private non-profit organization that certifies whether international medical graduates ("IMGs") have met minimum requirements to be eligible for residency programs in the United States—and ECFMG's President and CEO Dr. William W. Pinsky. Through this lawsuit, Dr. Tulp is trying to force ECFMG to recognize the University of Science, Arts and Technology ("USAT") of Montserrat—a school owned and run by Dr. Tulp—as a legitimate *foreign* medical school, despite ECFMG's findings that USAT provided medical education at unauthorized satellite locations *in the United States* and that Dr. Tulp lied to ECFMG about those locations.

Though Dr. Tulp is apparently frustrated with the actions taken by ECFMG as a consequence of his own misconduct, that does not mean that he has stated any viable claim against ECFMG or Dr. Pinsky. To the contrary, Dr. Tulp's Complaint is deficient as a matter of law and cannot be resuscitated through amendment; Dr. Tulp fails to allege facts supporting key elements of his claims and many of the allegations in the Complaint are plainly and directly contradicted by the documents attached to the Complaint as exhibits or referenced therein.

Because Dr. Tulp has failed to state any claim against ECFMG or Dr. Pinsky, this Court should dismiss Plaintiff's Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    BACKGROUND[1]

### A.    The Educational Commission for Foreign Medical Graduates

ECFMG is a private not-for-profit corporation that promotes quality health care for the

---

[1] In ruling on a motion to dismiss, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203,

public by certifying physicians who received their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical education. Compl. ¶ 4. At times the Complaint mistakenly conflates ECFMG Certification with a license to practice medicine. *See id.* But ECFMG Certification is merely a necessary precursor to admission into many U.S. graduate medical education programs. ECFMG Certification signals to directors of accredited residency and fellowship programs that an IMG has satisfied certain minimum eligibility requirements; it is not a license for an IMG to practice medicine in the United States. *See id.* (recognizing that ECFMG Certification allows an IMG to "start the process of being licensed as a physician in the United States"). ECFMG is not an accrediting agency and does not purport to accredit international medical schools. *See* Compl. Ex. E.

Dr. Pinsky is the President and CEO of ECFMG.

**B.    Dr. Orien L. Tulp and USAT**

Dr. Orien L. Tulp is the President and CEO of the University of Science, Arts, and Technology ("USAT"), which is alleged to be located in Montserrat. Compl. ¶¶ 1, 10. It is alleged that he has an ownership interest in USAT. *Id.* ¶¶ 1, 10. USAT has its administrative office in the United States and allegedly offers courses to students in both Montserrat and the United States. *Id.* ¶ 1.

**C.    ECFMG Investigates Allegations of Unauthorized USAT Operations in the United States.**

On August 21, 2018, ECFMG advised Dr. Tulp of allegations that USAT was operating a

---

210–11 (3d Cir. 2009). Accordingly, the "Background" set forth herein assumes the truth of Plaintiff's "well-pleaded facts" and does not accept as true the allegations in the Complaint that constitute no more than "legal conclusions." Defendants' Opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction (ECF No. 12) sets forth a more detailed description of the factual background that does not assume the truth of Plaintiff's allegations.

campus in Miami and that ECFMG had no documentation from the proper U.S.-based authorities

authorizing such a campus.  *See* Compl. ¶ 12 & Ex. F.  ECFMG advised Dr. Tulp that "in order

for students and graduates of an international medical school, such as USAT to have eligibility to

apply for ECFMG Certification," ECFMG policy requires confirmation that the appropriate

government authority in the branch campus country authorized the operation of that medical

school.   Compl. Ex. F.   Consistent with its policy, ECFMG requested that USAT "provide

documentation from the United States Department of Education and/or the Florida Department of

Education confirming that USAT's Miami branch campus is authorized to operate as a medical

school in the United States." *Id*.

> Later that day, Dr. Tulp responded to ECFMG via email:
>
> This is incorrect information.  The Miami location is an information and testing site only,
> where a pre-usmle examination [an NBME] may be administered, and an Orientation for
> new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus.
> Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
>
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in
> September, 2003 DOES actually permit the establishment of off-campus lecture and
> administrative sites as needed.  USAT has students on island on a year round basis in its
> origination.

*See* Compl. ¶ 13 & Ex. F.

On October 18, 2018, in light of additional information ECFMG received confirming

USAT's unauthorized campuses in the United States, ECFMG advised Dr. Tulp that ECFMG was

continuing its review of the matter to "ensure that information regarding international medical

schools and their students provided to ECFMG complies with ECFMG policies and requirements."

*See* Compl. Ex. F.  As part of the ongoing review, ECFMG informed Dr. Tulp that it had contacted

USAT students and graduates to collect information on their attendance at USAT and that ECFMG

"would require USAT students and graduates [seeking ECFMG services] to complete an affidavit,

attesting to the accuracy of the medical school information provided to ECFMG." *Id.* ECFMG

provided the affidavit only to those USAT students and graduates who submitted a formal

application to ECFMG to engage in the ECFMG Certification process. *See* Compl. Ex. D

("Effective immediately, as a USAT student or graduate seeking a service or services related to

ECFMG Certification . . . you must complete the attached affidavit . . . ."). The affidavit asked

the USAT students and graduates to certify under penalty of perjury and under penalty of a finding

of "irregular behavior" (a designation in ECFMG's policies for conduct subversive to ECFMG)

(1) their dates of attendance at USAT, and (2) the location where they took their basic science

courses. *Id.* Many USAT students submitted affidavits to ECFMG indicating that they took USAT

classes in the United States. Compl. Ex. F. ECFMG also received a copy of the 2018 USAT

Lecture Conference Schedule showing lectures occurring in Florida and Texas, with graduation to

occur in Miami, Florida. *See id.* There were no lectures or graduations scheduled for Montserrat.

*Id.*

During the investigation into USAT's activities in the United States, ECFMG also

discovered that Dr. Tulp had provided false information to ECFMG regarding the attendance dates

of some USAT students in connection with their United States Medical Licensing Examination

("USMLE") applications. *Id.*

### D.    ECFMG Modifies Its Sponsor Note for USAT in the World Directory of Medical Schools.

As ECFMG continued to receive additional information confirming that USAT was

operating campuses in the United States without disclosing those campuses to ECFMG and

without proof of authority from the proper authorities, ECFMG announced that students graduating

from USAT as of January 1, 2019 or later would no longer be eligible for ECFMG Certification

or to register for USMLE examinations as a step toward ECFMG Certification. *See* Compl. Ex.

B. This information was published as a Sponsor Note in the World Directory of Medical Schools. *See id.*

### E.    Allegations of Irregular Behavior Against Dr. Tulp Are Deemed Founded.

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that he individually and in his capacity as an official at USAT engaged in irregular behavior by providing false information to ECFMG. *See* Compl. Ex. F. The letter advised Dr. Tulp that the ECFMG Medical Education Credentials Committee, a sub-committee of ECFMG's Board of Trustees, would hold a hearing to address the allegations of irregular behavior on November 28, 2018. *Id.* Before the hearing, Dr. Tulp and his counsel were sent the file that was to be reviewed by the Credentials Committee. *See* Compl. Ex. E. Dr. Tulp was also notified that he was permitted to make a personal appearance before the Credentials Committee and to submit additional documents for consideration. Compl. Exs. E, F.

At the hearing, Dr. Tulp offered no testimony, no witnesses, and no evidence whatsoever. Compl. ¶ 15. Dr. Tulp admits that he presented no evidence at the hearing, but he does ***not*** allege that he was denied the opportunity to present evidence or argument to the Credentials Committee. The hearing was adjourned shortly after it began, with Dr. Tulp having failed to provide any evidence explaining or clarifying why the evidence previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular behavior.

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior. *See* Compl. Ex. A. As a result, and consistent with its policies, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the

ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." *Id.*

### F.    Dr. Tulp Sues ECFMG and Moves for Injunctive Relief.

On December 24, 2018, Dr. Tulp filed suit against ECFMG and Dr. Pinsky, alleging various tort claims and violations of due process. The crux of Plaintiff's Complaint is his allegation that ECFMG has attempted to shutdown USAT by sanctioning Dr. Tulp, refusing to allow USAT students to take necessary medical examinations, and refusing to release test scores for students who have already paid for such examinations. Compl. ¶ 10.

Dr. Tulp also filed a Motion for Preliminary and/or Permanent Injunction on January 2, 2019, and Defendants filed their Opposition on January 10, 2019. Presently, ECFMG moves to dismiss Dr. Tulp's case in its entirety with prejudice pursuant to Rule 12(b)(6).

## III.    LEGAL STANDARD

To survive a motion to dismiss, a complaint must state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Rather, to survive a motion to dismiss, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). The Court thus must conduct a two-part analysis. *Fowler*, 578 F.3d at 210. The Court must first accept Plaintiff's factual allegations as true, and disregard legal conclusions or mere recitations of the elements. *Id.* at 210–11. The Court must then determine whether the facts alleged make out a "plausible" claim for relief. *Id.* at 211.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and

documents that form the basis of a claim." *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d

Cir. 2004); *see Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).   "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678; *see also* 5B Wright & Miller, Federal Practice and Procedure, §

1357 (3d 2004) (noting that courts have ignored a pleading's "legal conclusions," "unsupported

conclusions," "unwarranted inferences," "unwarranted deductions," or "sweeping legal

conclusions cast in the form of factual allegations."). Similarly, "[w]hen allegations in a complaint

are contradicted by the materials appended to or referenced in the complaint, 'the document

controls and the court need not accept as true the allegations of the complaint.'" *Byers v. Intuit,

Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. March 18, 2009) (citing *Barnum v. Milbrook

Care Ltd. Partnership*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)); *see also Plasko v. City of

Pottsville*, 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable

. . . where no facts are alleged to support the conclusion or where the allegations are contradicted

by the facts themselves."). The pleading standard of Rule 8 "does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

## IV.    ARGUMENT

Plaintiff's efforts to attack in federal court both the Credentials Committee's decision and

ECFMG's policies—tailored to address the public interest in accurately assessing the

qualifications of IMGs—fall far short of stating any viable claim against ECFMG or Dr. Pinsky.

The Complaint consists largely of unsupported legal conclusions and exaggerated

characterizations. It should be dismissed in its entirety with prejudice pursuant to Federal Rule of

Civil Procedure 12(b)(6).

### A.    Dr. Tulp Has Not Stated A Claim for Tortious Interference.

Dr. Tulp alleges that ECFMG tortiously interfered with "the educational contract between

the students of USAT, the University, and Dr. Tulp" by sending blank affidavits to USAT students as part of the ECFMG Certification process and by updating the ECFMG Sponsor Note for USAT in the World Directory of Medical Schools. Compl. ¶¶ 10, 20, 22. Dr. Tulp's tortious interference claim fails.

To prove tortious interference with an existing or prospective contract, a plaintiff must establish:

> (1) the existence of a contractual relationship or prospective contractual relationship between the plaintiff and another party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship or preventing the relationship from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of defendant's conduct.

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013) (citing *Phillips v. Selig*, 959 A.2d 420, 428–29 (Pa. Super. 2008)). Dr. Tulp's tortious interference claim should be dismissed because he has not plausibly pleaded the existence of an existing or prospective contractual relationship and has not pleaded the absence of a justification or privilege.

*First*, Dr. Tulp has alleged no facts supporting the conclusory allegation that he has existing or prospective contractual relationships with USAT students. Compl. ¶¶ 20, 22; *see also Fowler*, 578 F.3d at 210 (directing Courts to disregard formulaic recitation of the elements of a cause of action). Because Dr. Tulp is the plaintiff in this lawsuit, he can only bring a claim for tortious interference based on a contract to which he is (or expects to be) a party. *BP Envtl. Servs.*, 946 F. Supp. 2d at 412 ("To satisfy this first element, a plaintiff must show that it is reasonably probable that, but for the wrongful acts of the defendant, *the plaintiff* would have had a contractual relationship with a third party" (emphasis added)). Other than Dr. Tulp's conclusory allegations regarding his contracts with *unidentified USAT students*, the Complaint contains no allegations or exhibits demonstrating the existence of any such relationship. Moreover, it is implausible that a medical school President would enter into separate contractual relationships with its students,

when the students presumably contract with the school itself on issues such as tuition, fees, and services. A prospective contractual relationship is "something less than a contractual right, [yet] something more than mere hope." *Phillips*, 959 A.2d at 428. Dr. Tulp has not alleged that his purported contractual relationship with USAT students extends beyond a mere hope. *See Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 639 (E.D. Pa. 2018) (dismissing tortious interference claim when allegations on whether there was a prospective contractual relationship was based solely on historical relationship with clients and optimism that plaintiff could win prospective clients through bidding process).

       ***Second***, Dr. Tulp has not sufficiently alleged that ECFMG lacked a privilege or justification to act as it did, *i.e.*, that its actions "were improper under the circumstances presented." *Phillips*, 959 A.2d at 429. In determining whether alleged interference was "improper or not," consideration is given to numerous factors, including:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 476 (Pa. 2011). Dr. Tulp fails to allege that ECFMG had no privilege or justification and fails to address the factors enumerated above. This is fatal to his claim, as the absence of a privilege or justification "is an element of the cause of action which must be pleaded" by the plaintiff. *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2014 WL 2616824, at *19 (E.D.Pa June 11, 2014) (quoting *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122–23 (Pa. Super. 1974)); *see also Simply Snackin, Inc. v. S-L Distributors*, No. 17-cv-0381, 2017 WL 6039734, at *7 (M.D.Pa. Dec. 6, 2017) (dismissing claim because "merely stating that Defendant's conduct was 'without justification'" was insufficient). Indeed, the allegations and exhibits of the Complaint demonstrate that ECFMG's actions were ***proper*** in light

of ECFMG's well-supported findings that USAT has not proven it is a *bona fide* international medical school and that Dr. Tulp lied to ECFMG about USAT's operations in the United States. Compl. ¶¶ 10, 12; Compl. Exs. A, D, E, F.

*Third*, the information contained in the Sponsor Note about USAT and the affidavits sent to USAT students is true—Plaintiff has not alleged otherwise as discussed in Section IV.D—and "[t]here is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information to another."  Restatement (Second) of Torts § 772, cmt. b.  Indeed, "courts in a majority of states"—including Pennsylvania—"have held that an action for tortious interference may not be based on truthful statements." *Walnut St. Assocs.*, 20 A.3d at 479 & n.13. Because the Sponsor Note and the affidavits contain only ***truthful*** information (*e.g.*, that beginning on January 1, 2019, USAT students and graduates would not be eligible for ECFMG Certification), they cannot constitute tortious interference.  *Id.*

**B.    Dr. Tulp Has Not Stated Claims for Fraudulent and/or Negligent Misrepresentation.**

Dr. Tulp alleges that ECFMG is liable for fraudulent or negligent misrepresentation because it supposedly (a) misrepresented itself as a government agency, and (b) placed misleading information about USAT in the World Directory of Medical Schools. Compl. ¶ 45.  Plaintiff again fails to support these claims with sufficient factual allegations, requiring dismissal.

To prevail on a claim for fraudulent misrepresentation, Dr. Tulp must demonstrate:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994) (internal citations omitted).  To prevail on a claim for negligent misrepresentation, he must prove "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresented ought to have known its falsity; (3) with an intent

to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Gongloff Contracting, L.L.C. v. L. Robert Kimball & Assocs., Architects and Eng'rs, Inc.*, 119 A.3d 1070, 1076 (Pa. Super. 2015). Dr. Tulp has failed to state a claim against ECFMG for either fraudulent or negligent misrepresentation.

*First*, Dr. Tulp has failed to allege any actionable misrepresentation. This alone is a basis to dismiss his claims of fraudulent and negligent misrepresentation. Regarding his contention that ECFMG misrepresented itself as a government agency, none of the ECFMG correspondence Dr. Tulp attaches to his Complaint reflect any representation by ECFMG that it is a government agency. *See* Compl. Exs A, D, E, F; *see also Plasko v. City of Pottsville*, 852 F. Supp. 1258, 1262 (E.D. Pa. 1994) ("Conclusory allegations are not acceptable . . . where no facts are alleged to support or *where the allegations are contradiccted by the facts themselves*.") (emphasis added). Moreover, the absence of a disclaimer in ECFMG's correspondence and affidavit that ECFMG is a private party—a disclaimer Plaintiff implausibly alleges was necessary—certainly does not constitute a representation that ECFMG *is* a governmental entity. Regarding the second alleged misrepresentation—the Sponsor Note published in the World Directory of Medical Schools—Dr. Tulp has not alleged how it was false. The Sponsor Note said only that: "As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations as a step toward ECFMG Certification," and that some USAT students and graduates would be subject to enhanced procedures in order to be eligible for ECFMG Certification related services. *See* Compl. Ex. B. There is nothing untrue or false about this statement.

*Second,* Dr. Tulp has not alleged that (a) he, personally, relied on ECFMG's alleged misrepresentations to his detriment, or (b) the alleged misrepresentations were made knowingly or with the intent to mislead him. As "[t]he successful maintenance of a cause of action for fraud includes, *inter alia,* a showing that *the plaintiff* acted in reliance *on the defendant's misrepresentations,*" the Court should dismiss these misrepresentation claims. *Klemow v. Time Inc.,* 352 A.2d 12, 16 n.17 (Pa. 1976) (emphasis added); *see Liss & Marion, P.C. v. Recordex Acquisition Corp.,* 983 A.2d 652, 665 (Pa. 2009) (same). Even on a generous reading of the Complaint, the only reliance on alleged misrepresentations that is potentially alluded to is that of *USAT students or prospective students,* which is insufficient as a matter of law for *Dr. Tulp* to state a misrepresentation claim. *See Joyce v. Erie Ins. Exchange,* 74 A.3d 157, 167 (Pa. Super. 2013) (dismissing misrepresentation claim for failure to "allege that the recipient of the misrepresentation was the individual or entity damaged as a proximate result of reasonable reliance upon the misrepresentation"). And even if Dr. Tulp could claim that he relied on any alleged misrepresentations, which he does not, his claims would still fail because such reliance could not possibly be reasonable or justifiable. *See, e.g., LeDonne v. Kessler,* 389 A.2d 1123, 1129–30 (Pa. Super. 1978) (ruling that a plaintiff's reliance on a representation cannot be justifiable if the plaintiff had personal knowledge that the representation was false). It is not plausible that the President and CEO of a medical school, with vast exposure to the ECFMG Certification process, would believe any of the alleged misrepresentations—especially when correspondence shows he received information about ECFMG's background and status as a private, non-profit organization and was familiar with ECFMG's investigation of USAT. Compl. Ex. E; *see also In re Thorne's Estate,* 25 A.2d 811, 816 (Pa. 1942) ("No one is deceived by a declaration he disbelieves.").

*Third*, Dr. Tulp has not sufficiently alleged that ECFMG failed to make a reasonable investigation, as is necessary to establish liability under Dr. Tulp's negligent misrepresentation claim. *See Gongloff Contracting*, 119 A.3d at 1076. Dr. Tulp alleges ECFMG has "never requested any curricula, student records, or any documentation from USAT." Compl. ¶ 17. This is plainly contrary to the allegations of Dr. Tulp's own Complaint and contrary to the wealth of correspondence referenced by the Complaint. *See* Compl. ¶¶ 36, 45(d) & Exs A, D, E, F. Accordingly, the Court can disregard Dr. Tulp's contradictory allegation and dismiss his negligent misrepresentation claim. *See Plasko*, 852 F. Supp. at 1262.

## C.    Dr. Tulp Has Not Stated A Claim for Abuse of Process.

"To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998)). Dr. Tulp has not alleged any of these elements, so his abuse of process claim must also be dismissed.[2]

Dr. Tulp has not alleged that ECFMG used any legal process against him. At most, Dr. Tulp characterizes the blank affidavits sent to USAT students as part of their application for ECFMG Certification as "tantamount to a subpoena duces tecum without first having a legal proceeding." Compl. ¶ 25. As the text of the affidavit shows, the affidavit was intended for USAT students and graduates "seeking a service or services related to ECFMG certification." Compl.

---

[2] Dr. Tulp also alleges in conclusory fashion that ECFMG is liable for violating the Federal Education Records Protection Act ("FERPA"), 20 U.S.C. § 1232g. This baseless allegation fails for a number of reasons, including that the U.S. Supreme Court has held that private parties like Dr. Tulp may not sue to enforce that statute. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 29091 (2002). Defendants do not read Plaintiff's Complaint as alleging a claim based on FERPA, and if this Court finds otherwise (and finds that claim is somehow sufficient), Defendants would respectfully request an opportunity to present argument to the Court.

Ex. D.  Further, the affidavit made clear to USAT students and graduates seeking ECFMG

Certification that "attesting to the accuracy of [their] medical school attendance . . . will facilitate

ECFMG's review" of their application.  *Id.*  Requesting that an applicant complete a notarized

form as part of an application is not the use—let alone abuse—of legal process.  *See Rockman v.*

*Aciukewicz*, No. 1434 MDA 2013, 2014 WL 10937492, at *6 (Pa. Super. Apr. 1, 2014) ("Neither

correspondence nor an affidavit is legal process," especially when the affidavit is never used in

litigation); *see also Schmoltze v. County of Berks*, No. 99-cv-1069, 2000 WL 62600, at *8 (E.D.

Pa. January 14, 2000) ("[T]he word 'process' as used in the tort of abuse of process encompasses

the entire range of procedures incident to the ***litigation*** process.") (emphasis added) (citing *Shiner*,

706 A.2d at 1237).

Furthermore, Dr. Tulp has not alleged how ECFMG's use of the affidavit (1) differs from

the purpose for which it was designed, or (2) or has caused him harm.  It is implausible that

ECFMG's primary purpose in sending out these affidavits was anything other than to make sure it

had adequate, truthful information to certify foreign medical school graduates for study in the

United States—a purpose Dr. Tulp acknowledges.  *See* Compl. ¶ 2.  Determining the "accuracy of

[their] medical school attendance" was necessary to help ECFMG ascertain whether certification

of these applicants would be proper, especially in light of the false information Dr. Tulp was

providing to ECFMG about USAT's locations and the attendance dates of USAT students and

graduates.  Compl. Ex. A, Ex. D.  Dr. Tulp has not sufficiently alleged that the use of this affidavit

deviated from this intended purpose.  *See Feingold v. State Farm Mutual Ins. Co.*, No. 1573 EDA

2015, 2016 WL 4690712, at *6 (Pa. Super. June 24, 2016) (affirming dismissal of abuse of process

claim despite plaintiff's allegations that pleadings and motions were filed to "harass and vex"

plaintiff when there was no explanation on how the challenged documents "were used to

accomplish anything they were not designed for"). Finally, although he contends that the affidavits were distributed "to intimidate USAT students," "coerce information from students," and "gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp," such contentions do not identify any actionable harm. Compl. ¶¶ 10, 45(b), 45(d).

**D.    Dr. Tulp Has Not Stated Claims Pursuant to 42 U.S.C. § 1983 for Deprivation of Due Process.**

In Counts Two and Four of the Complaint, Dr. Tulp identifies a list of alleged procedural deficiencies in how ECFMG conducted Dr. Tulp's irregular behavior hearing and alleges that ECFMG violated Dr. Tulp's and USAT students' due process rights.[3] *See* Compl. ¶¶ 35, 36, 41, 58. Dr. Tulp has not, however, stated a viable § 1983 claim against Defendants for three reasons.

*First*, ECFMG is not a state actor, and the due process requirements of the Fourteenth Amendment apply only to state actors. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982). Multiple courts, including the Third Circuit and Courts in this District have previously held that ***ECFMG is not a state actor*** and that its functions ***do not constitute state action***. *See, e.g., Opoku v. ECFMG*, 574 F. App'x 197, 201 (3d Cir. 2014) ("Grese and ECFMG, a private not-for-profit organization, are private parties and not state actors."); *Thomas v. NBME-Nat'l Bd. of Medical Examin'rs*, No. 13-3946, 2015 WL 667077, at *4 (E.D. Pa. Feb. 13, 2015) ("Because neither ECFMG nor NBME is a state actor, Plaintiff cannot prevail on this claim."); *Elias v. ECFMG*, No. C-82-08, 2010 WL 4340640, at *1 (N.J. Super. Nov. 4, 2010) (finding insufficient evidence "to

---

[3] Dr. Tulp refers in passing, without any explanation, to an alleged violation of "substantive due process." Compl. ¶ 58. He has not identified how ECFMG's actions implicate a fundamental right subject to this protection. *See Nicholas v. Pa. State Univ.*, 227 F.3d 133, 140 (3d Cir. 2000) ("Whether a certain property interest [is worthy of protection under the substantive due process clause] . . . depends on whether that interest is 'fundamental' under the United States Constitution."). Absent some effect on a fundamental right, the action at issue "is entirely outside the ambit of substantive process." *Id.* at 142.

establish that the ECFMG is a state actor"); *Staudinger v. ECFMG*, No. 92-8071, 1993 WL 138954 (S.D.N.Y. Apr. 28, 1993) (dismissing § 1983 claims because ECFMG is not a state actor and does not act under the color of state law).

As ECFMG is a private actor, based on this overwhelming authority, the next question is whether ECFMG's actions can be viewed as state actions because they are "fairly attributable" to the state. *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 524 (3d Cir. 1994). The U.S. Supreme Court has identified only three possible ways for private action to be attributable to the state and therefore constitute state action: (1) "if the private party acted with the help of or in concert with state officials," (2) "when the private party has been 'delegated a power traditionally exclusively reserved to the State,'" or (3) "if 'there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may be fairly treated as the state itself.'" *Id.* (internal citations omitted).

ECFMG's actions do not meet any of these tests, despite Dr. Tulp's conclusory allegations that they do. *See* Compl. ¶¶ 4–7. ECFMG did not act or conspire with a state actor to carry out its actions. *See Opoku*, 74 F. App'x at 201 ("Liability would only attach if a private party conspired with a state actor" and vague allegations of conspiracy between ECFMG and a state actor are not sufficient); *Loftus v. SEPTA*, 843 F. Supp. 981, 983–84 (E.D. Pa. 1994). Nor were ECFMG's actions delegations of "a power traditionally exclusively reserved to the State." *McKeesport Hosp.*, 24 F.3d 519 at 525. Rather, its actions were limited sanctions tied to ECFMG's role in assessing the qualifications of IMGs and certifying their readiness to enter the U.S. graduate medical education system, which is not a power exclusive to the state. *See Staudinger*, 1993 WL 138954, at *4; *see also McKeesport Hosp.*, 24 F.3d at 525 ("The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state action."). And

despite Dr. Tulp's contention that there is a sufficiently close nexus between ECFMG's actions

and state medical boards to establish state action, this is not the case. "ECFMG is not a subdivision

of or affiliated with any governmental entity, its Board of Trustees receives no funding from any

governmental entity . . . and it sets its own standards for an [IMG]'s eligibility to take the United

States Medical Licensing Examination (USMLE)." *Elias*, 2010 WL 4340640, at *1; *see*

*McKeesport Hosp.*, 24 F.3d at 525 ("The ACGME is self-governed and financed, and its standards

are independently set; the state Board simply recognizes and relies upon its expertise."). That state

medical boards rely on ECFMG Certifications does not render ECFMG a state actor. *See Brown*

*v. Fed'n of State Med. Bds.*, No. 82-7398, 1985 WL 1659, at *5 (N.D. Ill. May 31, 1985) (holding

that ECFMG is "not [a] state agenc[y]" and "do[es] not participate in a state activity" because

"[t]he actual state actors here are the state licensing boards, which have complete control over

whether or not to use the defendants' tests, and if so, how to use these tests" and "[t]he state boards

are at most [ECFMG's] consumers").[4]

**Second**, even if ECFMG's actions constituted state actions, which they do not, Dr. Tulp's

due process claims also fail because he has not identified a sufficient liberty or property interest of

which he has been deprived. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)

("The requirements of procedural due process apply only to the deprivation of interests

encompassed by the Fourteenth Amendment's protection of liberty and property."). ECFMG's

---

[4] Dr. Tulp's suggestion that ECFMG is "estopped from denying that it is a government or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect [sic] was placed on the affidavits sent to thousands of USAT students" is baseless. Compl. ¶¶ 37–38. ECFMG sent affidavits only to those USAT students and graduates who were "seeking a service or services related to ECFMG Certification." Compl. Ex. D. Such students are familiar with the role ECFMG certification plays for IMGs seeking to enter U.S. graduate medical education and have had prior access to ECFMG's resources. ECFMG never presented itself as a government or quasi-governmental entity.

decision not to accept documents signed by Dr. Tulp, especially given Dr. Tulp's history of falsehoods, does not implicate any liberty or property concerns which would trigger due process protections. Nor do USAT students have any property right to ECFMG Certification. *See Elias*, 2010 WL 4340640, at *3 (applicant for ECFMG certification did not have a right to a medical license as "a protected right in a professional license comes into existence only after a license has been obtained").

***Third***, even if ECFMG actions were state actions and did implicate interests protected by the Fourteenth Amendment—again, they do not—Dr. Tulp would still not succeed on his due process claims because he was afforded due process, as is clear from the allegations of Dr. Tulp's Complaint and the materials attached thereto. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Matthews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal citations omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333.

Dr. Tulp received prior notification of the allegations against him and concerns about USAT. *See* Compl. Exs. E, F. Dr. Tulp and USAT were both invited to submit whatever explanation or evidence they thought were necessary to address ECFMG's concerns regarding the irregularities concerning USAT's operations in the United States and Dr. Tulp's misrepresentations regarding same. *See id.* Dr. Tulp also received numerous letters explaining ECFMG's process for investigating and evaluating allegations of irregular behavior, was provided with copies of ECFMG's policies and procedures, and was sent a copy of the materials to be reviewed by the Credentials Committee in assessing the allegations against him. *See* Compl. Exs. A, E, F. This constitutes ample notice of the accusations made against him and how they would be resolved. *See, e.g., Biliski v. Red Clay Consol. School Dist. Bd. of Educ.*, 574 F.3d 214, 221–

22 (3d Cir. 2009) (holding that a discharged employee was given "constitutionally sufficient notice

of the reasons" his dismissal was sought when he was provided with multiple disciplinary memos

which described the bad conduct and what body would decide whether dismissal was appropriate).

Moreover, Dr. Tulp had an opportunity to appear personally before the Credentials

Committee with an attorney of his choosing. *See* Compl. Exs. A, E, & F; *see also Matthews*, 424

U.S. at 334, 344–346 (explaining that some form of hearing with safeguards such as the

opportunity to submit documentation, access to the file under review, and ability to be represented

are safeguards which speak to whether adequate procedures were in place). And even if Dr. Tulp

had not been given a hearing, there is no constitutional right to present oral responses at a formal

hearing. *See Biliski*, 574 at 222 ("There is no inexorable requirement that oral testimony must be

heard in every administrative proceeding in which it is tendered." (quoting *Fed. Deposit Ins. Corp.

v. Mallen*, 486 U.S. 230, 247–48 (1988))).

Process was afforded to Dr. Tulp. For this reason, and because Dr. Tulp has not identified

a valid liberty or property interest or alleged facts establishing that ECFMG is a state actor,

dismissal of Dr. Tulp's due process claims is warranted. *See also Osei v. Temple Univ.*, 518 F.

App'x 86, 88–89 (3d Cir. 2013) (affirming dismissal of due process claim when allegations

showed Plaintiff was given "notice of the charges," "an explanation of the evidence" against him,

and "an opportunity to present his side of the story.")

### E.   Dr. Tulp Has Not Alleged Any Claim Against Dr. Pinsky.

Dr. Tulp's sole claim against Dr. Pinsky is for a due process violation. For the reasons set

forth above, Dr. Tulp has failed to state a due process claim against either Defendant, and Count

4 should be dismissed. With respect to Dr. Pinsky, Dr. Tulp's allegations are especially deficient

and dismissal is particularly warranted. Dr. Tulp has made no allegations that Dr. Pinsky is a state

actor, that Dr. Pinsky acted under color of state law, or that Dr. Pinsky's actions constituted state

action as is required for § 1983 liability based on a violation of due process. *See West v. Atkins*, 487 U.S. 42, 48–49 (1988); *Rendell-Baker v. Kohn*, 457 U.S. 830, 837 (1982).

Moreover, Dr. Tulp's own description of Dr. Pinsky's actions demonstrate that there is no viable claim against Dr. Pinsky. Dr. Tulp alleges that Dr. Pinsky sent a letter on December 14, 2018 in which Dr. Pinsky communicated the determination of the *Credentials Committee* that Dr. Tulp "was banned from submitting any documents or having any dealings with the ECFMG on behalf of behalf of USAT or otherwise." Compl. ¶¶ 51–52. There are *no* allegations that the letter announcing the Credentials Committee's decision is in itself a due process violation. To the extent that Plaintiff alleges that "Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG," this is not sufficient to show § 1983 liability. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131–34 (3d Cir. 2010) (affirming dismissal of § 1983 claim as allegation that an individual developed and authorized actions taken against plaintiff without more was a conclusory assertion that was "not entitled to the assumption of truth"). Accordingly, given the limited scope of Dr. Pinsky's involvement as alleged in the Complaint, even if some claim remains against ECFMG, Plaintiff has failed to show that he is entitled to relief from Dr. Pinsky, and dismissal of this sole claim against Dr. Pinsky is appropriate.

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dr. Tulp's Complaint does not state any claim upon which relief can be granted. Moreover, because the defects in the Complaint cannot be cured by amendment, Defendants ask that the dismissal be with prejudice. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 108 (3d Cir. 2002).

Dated: January 22, 2019

Respectfully submitted,

/s/ Elisa P. McEnroe
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates and Dr. William
W. Pinsky*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, ) | |
| ) | Case No. 2:18-cv-05540-WB |
| Plaintiff, ) | |
| ) | Hon. Wendy Beetlestone |
| v. ) | |
| ) | |
| EDUCATIONAL COMMISSION FOR ) | |
| FOREIGN MEDICAL GRADUATES and ) | |
| DR. WILLIAM W. PINSKY, ) | |
| ) | |
| Defendants. ) | |

### [PROPOSED] ORDER

**AND NOW**, this __ day of _____ 2019, upon consideration of Defendants' Motion to

Dismiss Plaintiff's Complaint, **IT IS HEREBY ORDERED** that the Motion to Dismiss Plaintiff's

Complaint is **GRANTED**.  The Complaint is **DISMISSED with prejudice**.


BY THE COURT:


_____

Beetlestone, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. ORIEN L. TULP,                          CIVIL ACTION
      **Plaintiff,**

    v.

EDUCATIONAL COMMISSION FOR          NO. 18-5540
FOREIGN MEDICAL GRADUATES AND
DR. WILLIAM W. PINSKY,
      **Defendants.**

**FILED**

**JAN 2 5 2019**

KATE BARKMAN, Clerk
By_____Dep. Clerk

## SCHEDULING ORDER

**AND NOW**, this 24th day of January, 2019, following a Preliminary Pretrial Conference,

**IT IS ORDERED** as follows:

1.    All fact discovery shall be completed by April 19, 2019.

2.    Any motions for summary judgment motions shall be filed and served on or

before May 3, 2019. If the parties do not plan on filing summary judgment motions, they shall

so report to the Court (Chambers, Room 3809) on or before May 3, 2019. In all summary

judgment filings, the parties shall comply with the provisions of this Court's Policies and

Procedures regarding the submission of a joint appendix and of statements of undisputed and

disputed material facts.

    A.    When one party intends to move for summary judgment, that party
        shall initiate a process whereby the parties shall meet, confer and
        develop a single, joint appendix of all exhibits, including any and all
        exhibits that may be referenced in their respective briefs.

    B.    The joint appendix shall be filed by the movant no later than the date
        the initial motion for summary judgment is docketed. All pages of
        the joint appendix shall be consecutively "Bates stamped" and
        referenced in the motions and briefs by the Bates number assigned
        each page. The joint appendix shall include a table of contents. The
        parties shall make every effort to include all necessary exhibits in the
        initial joint appendix. Should it become necessary for the non-moving
        party to submit additional exhibits, however, it may do so at the time
        it files its opposition brief. Any addendum to the joint appendix shall

be consecutively Bates stamped, beginning at the page number where the joint appendix left off, and shall include a table of contents. Judge Beetlestone will not consider material not included in the appendix.

C.   Statements of Facts

1.   Upon motion for summary judgment, counsel shall also submit a separate Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts as to which the moving party contends no genuine issue exists.

2.   Counsel opposing a motion for summary judgment shall also submit a separate Statement of Disputed Material Facts, stating in similar paragraph form whether that party accepts or rejects that each fact as stated by the moving party is undisputed. If a party contends that a fact is in dispute, citation must be made to the joint appendix that supports the party's view that that particular fact is in dispute. The party should then list its own additional disputed facts in the same format with specific citations to the joint appendix.

3.   Counsel for the moving party shall then submit—even if not filing a reply brief—a separate Reply Statement of Undisputed Material Facts stating in similar paragraph form whether that party accepts or rejects that each additional fact as stated by the opposing party is disputed. If a party contends that a fact is undisputed, citation must be made to the joint appendix that supports that party's view that the particular fact is undisputed.

3.   For all filings submitted and conferences held pursuant to this scheduling order, and for all pretrial and trial proceedings referred to herein, counsel shall follow Judge Beetlestone's Policies and Procedures, a copy of which can be found online at www.paed.uscourts.gov.

BY THE COURT:

ENT'D JAN 25 2019

_____

**WENDY BEETLESTONE, J.**

2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## ORDER

NOW, on this ____ day of _____, 2019, upon consideration of

Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to F.R.C.P. 12(b)(6), and

Plaintiff's Response thereto, it is hereby ORDERED and DECREED that Defendants'

Motion to Dismiss Plaintiff's Complaint is DENIED.


By the Court:


_____
Honorable Wendy Beetlestone
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                     ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

For the reasons set forth in the attached memorandum of law, Plaintiff Dr. Orien

L. Tulp, by his undersigned counsel, moves to deny Defendants' Motion to Dismiss

Plaintiff's Complaint.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                              ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | : | |
| | : | |
| Plaintiff, | : | Case No. 2:18-cv-05540-WB |
| | : | |
| v. | : | |
| | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES, | : | |
| | : | |
| and | : | |
| | : | |
| DR. WILLIAM PINSKY, | : | |
| | : | |
| Defendants | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

Plaintiff, Dr. Orien L. Tulp, through his undersigned counsel, submits this

Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint,

under F.R.C.P. 12(b)(6), and in support thereof, it is averred as follows:

**CASE OVERVIEW**

Preliminarily, it should be noted that defendants did not file a motion with

numbered averments for plaintiff to answer individually, but filed a Memorandum of

Law requesting dismissal of plaintiff's complaint under F.R.C.P. 12(b)(6).

An overview of the case can be found in paragraph 10 of the complaint, titled

"Summary", and in paragraphs 11 through 20, titled "General Allegations". They read as

follows:

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant
ECFMG has refused to allow students of USAT to take necessary medical

examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

In the complaint, the first cause of action deals with tortious interference of contract by the ECFMG with regard to Dr. Tulp. The second cause of action is for violation of due process, including fundamental fairness with respect to the rights of Dr. Tulp by the ECFMG. The third cause of action deals with state torts, including fraudulent misrepresentation, abuse of process, and misrepresentation by defendant. It should be

noted that there is a dual basis for jurisdiction here, based on diversity and on violation of

plaintiff's civil rights. The fourth cause of action is titled "plaintiff v. all defendants",

including Dr. Pinsky, and incorporates the prior averments. Instructive is paragraph 58

which reads:

> The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a
> violation of procedural and substantive due process, as follows:
> (a) banning Dr. Tulp without a proper hearing;
> (b) banning Dr. Tulp without an evidentiary basis;
> (c) forcing closure of USAT and causing its students to be dismissed in an
> arbitrary and capricious manner;
> (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof
> and allotting 20 minutes for the hearing;
> (e) terminating the hearing on 11/28/18 without receiving any evidence from
> Dr. Tulp;
> (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and
> due process, and effectively forcing closure of USAT College of
> Medicine without legal process, and constructively dismissing the students
> of USAT in violation of the law.

**EVIDENTIARY STANDARD FOR A MOTION TO DISMISS**

A court should only dismiss a suit under F.R.C.P. 12(b)(6) if "it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, (1957).

Similarly, "The district court must construe the complaint in a light most favorable to the

plaintiff, accept all the factual allegations as true, and determine whether the plaintiff

undoubtedly can prove no set of facts in support of his claims that would entitle him to

relief. ... When an allegation is capable of more than one inference, it must be construed

in the plaintiff's favor. ... Hence, a judge may not grant a Rule 12(b)(6) motion based on

a disbelief of a complaint's factual allegations." *Columbia Nat Resources, Inc. v. Tatum*,

58 F.3d 1101, 1109 (6th Cir.1995)."

The *Conley* standard above was replaced by the United States Supreme Court in

the case of *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 (2007). *Twombly*

is somewhat more restrictive, but it still requires that the Court take the well-pled

allegations of the complaint as true, along with any reasonable inferences thereof. The

Court is required to determine whether the complaint alleges facts which give rise to

relief, as opposed to mere speculation.

Plaintiff argues that the complaint is sufficiently specific to apprise defendants of

the nature of this lawsuit and enunciates plausible claims sufficient to overcome a motion

to dismiss. A plaintiff is not required to plead all the evidence necessary to prove their

case in the complaint. *H.M. Bickford Company V. Speigle*, 120 A.2d 167, 384 Pa. 227

(1956). While *Bickford* is a state case, it is averred that federal law, with respect to a

motion to dismiss, is substantially the same.

A defendant moving to dismiss under F.R.C.P. 12(b)(6) bears the burden of

proving that the plaintiff has failed to state a claim for relief. See F.R.C.P. 12(b)(6);

see also, e.g., *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). To survive a

Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as

true, to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Southeastern Pennsylvania Transportation Authority v. Gilead Sciences, Inc.*, Civil

Action 14-6978 (E.D.Pa. 05/04/2015). As such, "[t]he touchstone of the pleading

standard is plausability." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

Dismissal is appropriate only if, accepting as true all the facts alleged in the

complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955, meaning enough factual allegations "to raise a reasonable expectation that discovery will reveal evidence of "each necessary element. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)." The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679, 129 S.Ct. 1937.

Federal pleading rules call for "a short and plain statement of the claim showing that the pleader is entitled to relief," F.R.C.P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted. Supreme Court. *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346 (2014).

### PLAUSIBLE CLAIMS AND WELL-PLEADED ALLEGATIONS

Among the plausible claims asserted by the complaint with its exhibits, are the following:

1. A decision was made by the ECFMG to find Dr. Tulp guilty of "irregular behavior", with a mandate that he be barred as a medical educator for at least five years. "Irregular behavior" is a permanent sanction. Importantly, before any hearing occurred with the ECFMG, it already found Dr. Tulp guilty of "irregular behavior". *See* complaint at paragraph 58(a) and Exhibit "A". The exhibit from the WDOMS was published on the Internet at the behest of the ECFMG well before the 11/28/18 hearing. *See* Exhibit "B" to the complaint.

2. Virtually no hearing was given to Dr. Tulp after the ECFMG extended an invitation to him to attend a hearing on 11/28/18. *See* complaint at paragraph 15. This is underscored by the fact that there is no evidence or witnesses cited by defendants that took place at the so-called "hearing". In point of fact, plaintiff alleges that no evidence was introduced at the hearing even though the Board or Credentials Committee was represented by the main defense counsel in this case. Dr. Tulp never addressed the ECFMG Board before the hearing was terminated by defense counsel. The ECFMG charged Dr. Tulp with "irregular behavior" and put the burden of proof on him to show his innocence.

Also, defendants never assert a failure to exhaust administrative remedies on appeal, because there was no evidence of any kind admitted at Dr. Tulp's hearing. There is a factual issue as to what occurred at the hearing, or even if an evidentiary hearing took place. Dr. Tulp was not afforded even the most rudimentary due process, which would apply to ECFMG, whether it be deemed a state actor in this particular instance, or a private actor. ECFMG, by extending an invitation for a hearing to Dr. Tulp, assumed a duty that such a hearing would not be a sham.

3. There was an abuse of process when the ECFMG issued affidavits to hundreds of students at USAT, the university that Dr. Tulp founded and owned half of its assets. *See* complaint at paragraph 10. This so-called "affidavit" (Exhibit "D" to the complaint), concocted by the ECFMG, requested documents, including passports of students, and threatened "irregular behavior" if they did not comply. A reasonable USAT student could believe they had to cooperate with the ECFMG, attempting to pose as a governmental agency, or put their desire for a United States medical license in permanent jeopardy. No

disclaimer that the ECFMG was a private entity was ever communicated to a USAT student or on the WDOMS Internet site.

The abuse of process arises from what is termed an "affidavit" by defendants, but what is actually more akin to a subpoena duces tecum, or a grand jury subpoena. It is averred that this document was designed to portray ECFMG as a governmental body and to undermine Dr. Tulp with the students of his university.

4. Dr. Pinsky wrote in his letter of 12/14/18 that "in 2018, the ECFMG determined that a certain individual of the University of Science, Art, and Technology engaged in "irregular behavior" with providing false information to the ECFMG." Similar postings by the ECFMG in sponsor notes on the WDOMS (Internet) sufficiently identified and defamed plaintiff, even before his alleged due process hearing. *See* complaint Exhibits "A" and "B".

5. The charges of "irregular behavior" against Dr. Tulp exceeded the authority of the ECFMG, and were vague and overbroad. "Irregular behavior", in reality, amounts to any actions by one who opposes the authority of the ECFMG or even does something of which the organization disapproves. "It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs, or services of ECFMG to be *irregular behavior*." See Exhibit "F", letter of Lisa L. Cover, Senior Vice President for Business Development and Operations.

Generally, the complaint must set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithen*, 395 U.S. 411, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969); *Pennsylvania ex. Rel. Zimmerman v. Pepsico, Inc.*, 836 F. 2d 173, 179 (3d Cir. 1988). The court can

dismiss plaintiff's complaint **"only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."** *Hishon v. King & Spalding*, 467 U.S. 69 (1984). (emphasis supplied)

### AFFIRMATIVE DEFENSES

Defendants have asserted a variety of affirmative defenses, such as a privilege to defame, as well as truth as a defense to Dr. Tulp's defamation claim against Dr. Pinsky and ECFMG. These are affirmative defenses, and not the subject of the 12(b)(6) inquiry. In addition, the voluminous exhibits that defendants have attached from the injunction hearing to their motion to dismiss should not be considered.

Under Federal Rules of Civil Procedure, an 8(a) complaint need not anticipate or overcome affirmative defenses. Thus, a complaint does not fail to state a claim simply because it omits facts that would defeat a statute of limitations defense. *See In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004).

The District Court in *Robinson* erred in considering certain documents attached to defendants' Rule 12(b)(6) motions. Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss. *See Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir 2002).

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. V. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 199); *see also Mayer v. Belichick*, 605 F.3d 223, 230 (3d. Cir. 2010).

## ACTIONS OF ECFMG IMPLICATE DUE PROCESS IN THIS CASE

Plaintiff argues that the abuse of authority by the ECFMG in this case creates a sufficient nexus with state action to render the organization a state actor.

1. The "affidavit" is an abuse of authority designed to make the ECFMG appear like a governmental agency. *See* Exhibit "D".

2. The ECFMG sponsor notes in the World Directory of Medical Schools were designed for viewing by USAT students, and it already implied that Dr. Tulp was guilty well before his hearing date. It is suggested that the Court may take judicial notice of a matter of public notice that the ECFMG and the WDOMS have the same address: 3624 Market Street.

3. The actions of the ECFMG violate FERPA ("Family Educational Rights and Privacy Act") with respect to its "homemade" affidavit designed to illegally coerce private information from USAT students.

## CIVIL RIGHTS CLAIM

The ECFMG is liable for plaintiff's injuries under Section 1983, as set forth in plaintiff's complaint, because defendants' employees or agents executed a governmental policy that directly resulted in the deprivation of plaintiff's civil rights. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978). If a city official causes a deprivation of life or liberty upon another because he was following a city policy reflecting the policymakers' deliberate indifference to constitutional rights, then the city is directly liable under Section 1983 for causing a violation of plaintiff's Fourteenth Amendment rights. *Fagan v. City of Vineland*, 22 F.3d at 17 (3d Cir. 1993) Liability may be based on actions of an official with final policy-making authority, which is then

attributed to the municipality, and even a *single action* by the policymaker may be enough to trigger municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292 (1986). (emphasis supplied)

It is not required to find that individual defendants violated the rights of plaintiff to find that the government bodies and corporate entities named in plaintiff's complaint had a policy whose implementation violated those civil rights. *Pembaur*, *supra*; *Tennessee v. Guiner*, S. Ct. 1694 (1985); *Simmons v. City of Philadelphia*, 947 F. 2d 1042 (3rd Cir. 1991). In his excellent analysis at p. 28–45 of *Simmons v. Philadelphia*, *supra*, Judge Becker rejects the City's argument that an employee must have primary liability for a constitutional violation. The Supreme Court in both *Pembaur* and *Guiner*, *supra*, considered civil rights liability of the municipality alone, where all individual defendants had been dismissed.

In order to state a valid claim under Section 1983, plaintiff must allege the following: (1) that the conduct complained of was committed by a person acting under the color of state law; and (2) the conduct deprived plaintiff of rights, privileges or immunities secured by the United States Constitution. *Coates v. Jeffers*, 822 F. Supp. 1189 (E.D. Pa. 1993) citing *Parratt v. Taylor*, 451 U.S. 527, 535 101 S. Ct. 1908, 1912, 68 L. Ed.2d 420 (1980).

A deprivation of a property interest without due process of law is a violation of 42 U.S.C. 1983. *Bradshaw v. Pennsylvania State University*, Eastern District, 10-4839. The complaint delineates that plaintiff had a one-half property interest in the university and was its founder.

**ECFMG FUNCTION**

ECFMG is an organization sponsored by state medical organizations, including

the federation of state medical boards. Through its process, it gives students what is a

license to apply for a residency program. A residency program is a certified program that

trains students who have graduated from medical school and who have taken a series of

tests known as the United States Medical Licensing Examination. The various state

boards have given the power to test and certify international medical graduates as

competent to undertake residency training. New Jersey requires a foreign

medical graduate to demonstrate to the New Jersey State Board of Medical Examiners

that he or she holds a certificate issued by the ECFMG which was granted following the

attainment of a passing score on an acceptable examination and verification of his or her

credentials by the ECFMG.

ECFMG issues a de facto license (certification) which renders a foreign medical

graduate eligible to apply for admission to a residence program in the United States.

Without this license, a foreign medical graduate can not apply for a residency program.

Without training in a residency program, the foreign medical graduate can not obtain a

state medical license.

The actions of the ECFMG should be considered state actions under the

circumstances. The ECFMG's procedure in granting, what is the initial license

to eventually obtain a full medical license, has a significantly close nexus to the various

state medical boards. Without the ECFMG certificate, the gate is closed to obtaining a

medical residency. The state medical boards have granted the power to the ECFMG to

screen foreign medical students for licensure. State action is established. *Jackson v.*

*Metro Edison Co.* 419 u.s.345, 351.

The ECFMG has insinuated itself into a position of interdependence with the state

medical boards. The ECFMG can not be considered to be purely private. Not only does

the ECFMG report to state medical boards, it also reports to the National Physician Data

Bank. The ECFMG would not exist if it was not delegated powers by the state medical

boards. *Burton v. Wilmington Parkway Authority* 365 U.S. 715, 725 (1961).

Because the ECFMG actions in this case should be treated as state actions, the

ECFMG violated both procedural and substantial Fourteenth Amendment procedures and

substantive due process rights.

Procedural due process rights were violated because at a minimum, a right to

notice of the charges of "irregular behavior" and a right to present evidence to refute the

charges is required by the Fourteenth Amendment. Neither notice of charges nor the right

to present evidence was allowed by the ECFMG.

State action determination is necessarily a fact-bound inquiry. *McKeesport Hosp.*

*v. Accreditation Council for Graduate Medical Educ.*, 24 F.3d 519 (3d Cir. 05/17/1994).

The point is that while ECFMG has often been found to be a private party (in cases

mostly involving *pro se* medical students), the facts in this case indicate that ECFMG

exceeded its authority and acted as if it were a governmental entity.

When the ECFMG chose to portray itself to USAT students, through threats of

"irregular behavior", coercive affidavits, and misuse of social media, as an apparent

governmental agency in this case, it abnegated the ability to defend against liability by

donning the mantle of a private entity.

**AMENDED COMPLAINT**

Plaintiff requests the Court to allow amendment of the complaint, if necessary. If the complaint is insufficient due to a dearth of factual allegations, then there is a strong policy favoring the allowance of an amended complaint. "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). In *Grayson*, The District Court did not follow these principles. Before it dismissed the case, the Court should have--absent inequity or futility of amendment--specifically advised Grayson that he could amend his complaint and given him a chance to do so. Neither inequity nor futility of amendment is present. *Grayson v. Mayview State Hospital*, 3rd Cir. Crt. Of Appeals (2002).

**DEFENDANTS' BRIEF**

Defendants cited in the table of authorities, two Third Circuit cases to support that ECFMG is a private party. These are *Opoku* and *Osei*. Both are non-precedential and thus not allowed to be cited. In the instant case, a core issue is whether the ECFMG overstepped its authority, and acted with apparent governmental authority.

**AUTHORITY OF ECFMG OVER DR. TULP**

There is no basis to exercise jurisdiction over Dr. Tulp if ECFMG is a private party, as defendants argue. There is no contractual relationship between the parties and defendants claim there is no state action. If that is true, there is no basis to exercise jurisdiction over Dr. Tulp. He is not a medical student, nor did he ever enter into an agreement with the ECFMG. Defendants can not with one hand proclaim that ECFMG has jurisdiction over Dr. Tulp, but with the other hand, assert that it is a private party.

## TORTIOUS INTERFERENCE WITH CONTRACT

Plaintiff alleges in the first cause of action of the complaint that defendants tortiously interfered with contract. This is more broadly known as intentional interference with contractual relations. Pennsylvania Standard Suggested Jury Instructions, Section 17.280 Civil, in pertinent part states: "One who intentionally induces or otherwise intentionally prevents another from performing a contract with a third person or makes the performance of the contract more expensive is responsible to the other for the loss he or she suffered as a result of the prevention or interference with the contract. The intentional tort of interference with contractual relations has been recognized by the Pennsylvania Supreme Court." *Caskie v. Philadelphia Rapid Transcit Co.*, 184 A. 17 (Pa. 1936); *Capecci v. Liberty Corp.*, 176 A.2d 664 (Pa. 1962).

The contention in plaintiff's first cause of action involves the efforts by the ECFMG to destroy the medical education career of Dr. Tulp and close his university, USAT. Dr. Tulp had a property interest in USAT, and as stated in the complaint (paragraphs 1 and 10), he was not only the founder, but also had a significant property interest in the university. Dr. Tulp had a contract as the President and CEO with USAT, his university. Furthermore, the students at USAT had implied contracts with the university and Dr. Tulp arising out of their payment of tuition.

It is alleged that the efforts by ECFMG to illegally find that Dr. Tulp committed "irregular behavior", to use a so-called "affidavit" and the threat of "irregular behavior" to bully students into cooperation, as well as the relationship between the World Directory of Medical Schools and the ECFMG, which share a common address, indicate an illegal and duplicitous attempt to interfere with the contract between Dr. Tulp and the

USAT, by destroying the man and his university. *See* complaint exhibits "A", "B", and

"D".

### SUMMARY AND CONCLUSION

The Court should not dismiss the complaint under Rule 12(b)(6), since there are

plausible claims by plaintiff which support viable causes of action.

1. There was no hearing at all and the decision on Dr. Tulp was made before the
purported hearing, as indicated in the WDOMS website, Exhibit "D". The hearing was a
sham, which was arbitrary and capricious. This is evidenced by the fact that defendants
did not claim that plaintiff did not try to exhaust his administrative remedies on appeal to
the administrative body, because there was nothing to appeal in the record. The three
salient points here are: A decision was made and posted on the WDOMS before the
hearing; no evidence was presented at the hearing; and Dr. Tulp was given no
opportunity to be heard or to present evidence, as indicated in the transcript.

2. Defendants violated the right to due process, and to a fair hearing even if
defendants were private actors. In this particular instance, the ECFMG overstepped its
authority and essentially acted as an agent of the state medical boards. The ECFMG has a
monopoly, in the sense that no foreign medical student can practice medicine in the U.S.
without the ECFMG certifying them. The ECFMG is essentially a kind of gatekeeper. If
the ECFMG is seen to be a private actor, it did not even achieve the minimum standard of
notice and a hearing. If the ECFMG affords a hearing, then it has assumed a duty to
provide a fair hearing. If it indeed has authority to charge Dr. Tulp with "irregular
behavior" (a permanent sanction), then the abuse of that authority is a violation of Dr.
Tulp's civil rights.

3. There are state tort actions based on diversity of jurisdiction, as well as pendent
jurisdiction, including defamation, the abuse of process and misrepresentation. Liability
for Dr. Pinsky is indicated because he is the President, CEO, and a policymaker for the
organization. Under diversity jurisdiction, the doctrine of respondeat superior applies.
The abuse of process claim flows from the misuse of the affidavits, which were
essentially used as subpoenas, and appeared to be issued by a state actor.

Dr. Tulp has a property interest in the USAT. The nexus between ECFMG and the

state medical boards makes ECFMG a gatekeeper which has a monopoly on the

admission of any foreign medical student to practice in the United States. If the ECFMG

was a state actor, then there are rights of due process. If ECFMG was a private actor that

extended a hearing, then the hearing may not be a sham. Interestingly, defendants do not

raise failure to exhaust administrative remedies for appeal, because there is no evidence

in the record from which to appeal.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was

served upon all other parties or their counsel of record by:

                         Regular First Class Mail

                         Facsimile

                         Certified Mail

                         Hand-Delivered

X         Electronic Filing

X         Email

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
February 14, 2019
For: Tommy Swate, Esquire

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:18-cv-05540-WB |
| | ) |
| v. | ) Hon. Wendy Beetlestone |
| | ) |
| EDUCATIONAL COMMISSION FOR | ) |
| FOREIGN MEDICAL GRADUATES and | ) |
| DR. WILLIAM W. PINSKY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

February 21, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:     +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates and Dr. William
W. Pinsky*

## TABLE OF CONTENTS

I.    INTRODUCTION..................................................................................... 1

II.   ARGUMENT ........................................................................................... 1

       A.    Dr. Tulp Mischaracterizes the Allegations and Exhibits of the Complaint ........... 1

       B.    Nothing In the Opposition Changes That Dr. Tulp's Allegations Fail ................. 4

              1.    Dr. Tulp's Due Process Claims Fail as a Matter of Law ........................... 4

              2.    Dr. Tulp's Misrepresentation Claims Fail as a Matter of Law .................. 7

              3.    Dr. Tulp's Abuse of Process Claims Fail as a Matter of Law ................... 7

              4.    Dr. Tulp's Tortious Interference Claims Fail as a Matter of Law ............. 8

       C.    Dr. Tulp Should Not Be Granted Leave to File an Amended Complaint............. 9

III.  CONCLUSION ...................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................................4

*Barnum v. Milbrook Care Ltd. Partnership,*
    850 F. Supp. 1227 (S.D.N.Y. 1994).................................................................................1

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 554 (2007)............................................................................................................4

*Biliski v. Red Clay Consol. School Dist. Bd. Of Educ.,*
    574 F.3d 214 (3d Cir. 2009).............................................................................................5

*BP Envtl. Servs., Inc. v. Republic Servs., Inc.,*
    946 F. Supp. 2d 402 (E.D. Pa. 2013).............................................................................8

*Budhun v. Reading Hosp. & Med. Ctr.,*
    765 F.3d 245 (3d Cir. 2014).............................................................................................3

*Byers v. Intuit, Inc.,*
    No. 07-4753, 2009 WL 948651 (E.D. Pa. Mar. 18, 2009) .........................................1

*Gonzaga Univ. v. Doe,*
    536 U.S. 290 (2002)............................................................................................................8

*Grayson v. Mayview State Hospital,*
    293 F.3d 103 (3d Cir. 2002).............................................................................................9

*Hawksbill Sea Turtle v. FEMA,*
    126 F.3d 461 (3d Cir. 1997).............................................................................................5

*Hishon v. King & Spalding,*
    467 U.S. 69 (1984)..............................................................................................................4

*McKeesport Hospital v. Accreditation Council for Graduate Medical Education,*
    24 F.3d 519 (3d Cir. 1994)...............................................................................................6

*McTernan v. City of York, Pennsylvania,*
    577 F.3d 521 (3d Cir. 2009).............................................................................................5

*Monell v. Dep't of Soc. Servs. of the City of New York,*
    436 U.S. 658 (1978)............................................................................................................4

## TABLE OF AUTHORITIES
(continued)

Page

*Opoku v. ECFMG,*
    574 F. App'x 197 (3d Cir. 2014) ......................................................... 6

*Rockman v. Aciukewicz,*
    No. 1434 MDA 2013, 2014 WL 10937492 (Pa. Super. Apr. 1, 2014), and (2) ........................ 7

*Santiago v. Warminster Twp.,*
    629 F.3d 121 (3d Cir. 2010)............................................................... 7

*Sciarra v. Reliance Standard Life Ins. Co.,*
    No. 97-1363, 1998 WL 564481 (E.D. Pa. Aug. 26, 1998) ......................................... 6

*Smith v. NCAA,*
    139 F.3d 180 (3d Cir. 1998)............................................................... 9

*Snyder v. Baxter Healthcare, Inc.,*
    393 F. App'x. 905 (3d Cir. 2010) ......................................................... 3

*Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.,*
    20 A.3d 468 (Pa. 2011) .................................................................. 9

**Statutes**

42 Pa. Cons. Stat. § 8343(b)(1) ............................................................. 3

42 U.S.C. § 1983 ......................................................................... 7

Federal Education Records Protection Act .................................................... 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ............................................. 1, 7, 10

Restatement (Second) of Torts § 772, cmt.................................................... 9

## I.    INTRODUCTION

Dr. Tulp's Opposition does not meaningfully address any of the arguments raised in Defendants' Motion to Dismiss.  He cites inapplicable legal standards and mischaracterizes both the allegations and claims purportedly set forth in the Complaint, but he fails to explain away the deficiencies in his pleading that Defendants identified in the Motion to Dismiss.  Because those deficiencies are fatal to each of Dr. Tulp's claims, Dr. Tulp has failed to state any claim against ECFMG or Dr. Pinsky, and this Court should dismiss the Complaint in its entirety and with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    ARGUMENT

### A.    Dr. Tulp Mischaracterizes the Allegations and Exhibits of the Complaint.

As an initial matter, Dr. Tulp's Opposition contains numerous factual assertions that are belied by the actual allegations and exhibits of the Complaint.  Those mischaracterizations – described in detail below – should be rejected.  *See Byers v. Intuit, Inc.*, No. 07-4753, 2009 WL 948651, at *2 (E.D. Pa. Mar. 18, 2009) ("When allegations in a complaint are contradicted by the materials appended to or referenced in the complaint, 'the document controls and the court need not accept as true the allegations of the complaint.'" (quoting *Barnum v. Milbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994)).

Dr. Tulp mischaracterizes the limited sanction ECFMG imposed on him after it found that he engaged in irregular behavior.  Dr. Tulp was not, as he claims, "barred" by ECFMG from serving "as a medical educator for at least five years."  Opp. 7.  Nor was Dr. Tulp subjected to a "permanent sanction" as he contends in the Opposition.  *Id.*  Rather, per the letter from ECFMG attached to the Complaint and on which Dr. Tulp relies, ECFMG's only action with respect to Dr. Tulp was to decide that it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today;

thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." Compl. Ex. A. The Complaint and its exhibit thus undermine the unsupported assertions in the Opposition that Dr. Tulp is facing a "permanent sanction" and that ECFMG has "barred" Dr. Tulp from serving as a medical educator.

In support of Dr. Tulp's mischaracterization of the limited sanction, Dr. Tulp contends that ECFMG has "no basis to exercise jurisdiction over Dr. Tulp" and act as it did. Opp. 15. This mischaracterizes ECFMG's action. As is clear from the Complaint and its exhibits, ECFMG decided, following its own investigation and a hearing, that it would no longer accept his signature. That is not a question of jurisdiction, but rather a question of whether ECFMG must believe Dr. Tulp notwithstanding its finding that he lied to ECFMG. The notion of "jurisdiction" is a red herring.

Dr. Tulp also mischaracterizes the timing of ECFMG's decision to punish Dr. Tulp and the extent to which ECFMG's limited sanction on him was made public. In the Opposition, Dr. Tulp relies on an October 2018 update to the ECFMG Sponsor Note about USAT in the World Directory of Medical Schools to argue that ECFMG decided to punish him before his November 2018 hearing. *See* Opp. 7. But the Sponsor Note, attached to the Complaint, makes **no** reference to Dr. Tulp whatsoever. *See* Compl. Ex. B. To the extent Dr. Tulp relies on his mischaracterization of the Sponsor Note to argue that ECFMG prejudged Dr. Tulp's case and decided he was guilty of irregular behavior before the November 2018 hearing, the argument is – again – directly contradicted by Dr. Tulp's own pleading.

Dr. Tulp also mischaracterizes the content of the affidavits issued by ECFMG, claiming that ECFMG threatened USAT students who failed to complete affidavits with "irregular

-2-

117a

behavior." Opp. 16. This, again, is directly contradicted by Dr. Tulp's own pleading. The affidavit, which Dr. Tulp attached to his Complaint, contains a warning that any student who included **false information** on an affidavit could face allegations of "irregular behavior." Compl. Ex. D. The claim that ECFMG forced students to complete affidavits under threat of "irregular behavior" is thus belied by the affidavit itself.

Dr. Tulp further contends that "neither notice of charges nor the right to present evidence was allowed by the ECFMG" at Dr. Tulp's irregular behavior hearing. Opp. 14. That is contrary not just to the allegations in the Complaint, but also to the Court's findings at the preliminary injunction hearing, which are preclusive on this issue. *See infra.*

Beyond mischaracterizing the facts, Dr. Tulp's Opposition also misstates his own claims. Dr. Tulp suggests repeatedly that the Complaint contains a defamation claim. *See* Opp. 10, 17. But the Complaint does not purport to state a defamation claim[1], and Dr. Tulp cannot try to overcome Defendants' Motion to Dismiss based on a claim not alleged in the Complaint. *See Snyder v. Baxter Healthcare, Inc.*, 393 F. App'x. 905, 907 n. 4 (3d Cir. 2010) ("[A] motion to dismiss attacks claims contained by the four corners of the complaint.").

---

[1] Even if Dr. Tulp had included a defamation claim in his Complaint, such a claim would fail based on the factual allegations already asserted. In Pennsylvania, truth is an affirmative defense to a defamation claim and may be raised at the motion to dismiss stage if it is true on the face of the Complaint. 42 Pa. Cons. Stat. § 8343(b)(1); *see Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245,259 (3d Cir. 2014). As laid out in Defendants' Memorandum of Law, Dr. Tulp has failed to identify any falsehood or misrepresentation ECFMG made: (1) none of the ECFMG correspondence attached to the Complaint supports Plaintiff's contention that ECFMG held itself out as a government agency; and (2) the Sponsor Note at issue is completely accurate in that it describes ECFMG's process for considering USAT students and graduates after January 1, 2019, and Dr. Tulp has not alleged how it is inaccurate. Defs.' MOL 11. As the Complaint does not allege an untrue statement, had Plaintiff brought a defamation claim it would fail.

**B.    Nothing In the Opposition Changes That Dr. Tulp's Allegations Fail.**

In his Opposition, Dr. Tulp urges the Court to dismiss his Complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69 (1984). After *Bell Atl. Corp. v. Twombly* and *Ashcroft v. Iqbal*, however, this is no longer the applicable standard for evaluating the adequacy of a pleading. 550 U.S. 554, 563 (2007) (explaining that the "no set of facts" standard "described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."). Accordingly, the Court shall dismiss all of Dr. Tulp's claims against ECFMG because they fail under the appropriate standard: Dr. Tulp does not state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**1.    Dr. Tulp's Due Process Claims Fail as a Matter of Law.**

The arguments set forth in Dr. Tulp's Opposition do not save his due process claims from dismissal for several reasons.

***First***, the Court ruled at the preliminary injunction hearing that ECFMG is not a state actor. *See* Jan. 24, 2019 Hr'g Tr. 131: 2–4 ("While the lack of state action ultimately dooms Plaintiff's constitutional claims, it if far from the only problem with the § 1983 clai[m]s.").[2] **That ruling has preclusive effect and Dr. Tulp's due process claims should therefore be dismissed.** The Third Circuit has held that a district court's findings and conclusions on a preliminary injunction motion may "have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting them to

---

[2] Although Plaintiff now cites *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978) as a way that ECFMG can be held liable for the actions of its employers, *Monell* is not applicable here given that ECFMG is neither a municipal corporation nor a local government unit.

be litigated again." *Hawksbill Sea Turtle v. FEMA*, 126 F.3d 461, 474 n.11 (3d Cir. 1997). Where the issues in a motion to dismiss and a motion for preliminary injunction are "exactly the same" and the plaintiff "had a full opportunity to present their arguments at the hearing on the preliminary injunction, . . . there is no reason to prolong the inquiry." *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009).

Here, at the preliminary injunction hearing, the Court heard extensive testimony[3] and received numerous documents into evidence, ultimately ruling that Dr. Tulp was unlikely to succeed on the merits of his due process claim because, *inter alia*, Defendants were not state actors and even if they were Dr. Tulp received ample procedural protections, including notice and an opportunity to be heard.[4] *See* Jan. 24, 2019 Hr'g Tr. 129:18–131:1 (mentioning that the Third Circuit "has held that as a private not-for-profit organization, ECFMG is a private party and not a state actor" and that none of the circumstances apply under which a private actor can be found to engage in state action); 131:10–11 ("In this case, there was notice and an opportunity to be heard."). Nothing in the Opposition suggests that the inquiry at the motion-to-dismiss stage would be any different or that the Court's ruling should be set aside. It therefore has preclusive effect, and Dr. Tulp's due process claims should be dismissed with prejudice.

---

[3] *See, e.g.*, Jan. 24, 2019 Hr'g Tr. 9:21–10:3 (receiving testimony from K. Corrado that ECFMG "is a nonprofit, private organization," that is not an accrediting agency); 10:11–15 (receiving testimony from K. Corrado that "Generally, the licensing boards in the United States will require ECFMG certification for international medical students, but it's the discretion of each state board who they license.").

[4] In the Opposition, Dr. Tulp contends that there was "virtually no hearing." Opp. 8. As laid out in the exhibits attached to the Complaint and as found by the Court at the preliminary injunction hearing, Dr. Tulp was given repeated notice of the charges against him, the policies and procedures that would guide the Medical Credentials Committee's decision, and his opportunity to be heard. Compl. Exs. A, E, & F. This was more than adequate process, especially since "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." *Biliski v. Red Clay Consol. School Dist. Bd. Of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009).

***Second***, even absent the Court's ruling, Dr. Tulp's contention that ECFMG was delegated

powers by state medical boards – and that its actions should therefore be deemed that of a state

actor – is contrary to Third Circuit case law regarding entities analogous to ECFMG in the medical

education field.   Opp. 14.   As already discussed in Defendants' Memorandum of Law, in

*McKeesport Hospital v. Accreditation Council for Graduate Medical Education*, "the evaluation

and accreditation of medical education in this country is neither a traditional nor an exclusive state

action," so such actions are not delegations of state power.   24 F.3d 519, 524 (3d Cir. 1994).

Accordingly, ECFMG's limited role in graduate medical education – a step removed from

accreditation – does not rise to the level of an entity exercising a delegated state power which

would subject it to the requirements of the Fourteenth Amendment.   Dr. Tulp has not identified a

single case in which ECFMG or its executives have been held to be state actors.   Nor has Dr. Tulp

articulated a compelling justification for rejecting the many cases from numerous jurisdictions –

including the Third Circuit – holding that ECFMG is not a state actor.[5]   Absent the existence of

any delegation of a state power and/or authority, ECFMG could not have exceeded a state authority

in these circumstances, despite Plaintiff's multiple attempts to argue so.

***Third***, Dr. Tulp has failed to respond to Defendants' arguments that the absence of

allegations against Dr. Pinsky makes dismissal of the claim against him especially appropriate.

Dr. Tulp briefly argues that liability is appropriate under the doctrine of *respondeat superior* that

applies to state tort actions.   *See* Opp. 3.   But Dr. Tulp has not brought any state tort claims **against**

---

[5] Indeed, the Court relied on the Third Circuit's decision in *Opoku v. ECFMG*, 574 F. App'x 197
(3d Cir. 2014) when denying Dr. Tulp's preliminary injunction motion and holding that
Defendants are not state actors.   Jan. 24, 2019 Hr'g 129:18–23.   Although district courts are not
bound by the Third Circuit's unpublished opinions, there is no bar to citing to such opinions and
many courts do so, finding such opinions "instructive," particularly where the ruling involves the
same party and issue.   *Sciarra v. Reliance Standard Life Ins. Co.*, No. 97-1363, 1998 WL 564481,
at *8 n.7 (E.D. Pa. Aug. 26, 1998).

**Dr. Pinsky**. Rather, Dr. Tulp summarizes the fourth cause of action – the only cause of action against Dr. Pinsky – "as violation of procedural and substantive due process." Opp. 5. Accordingly, liability is controlled by 42 U.S.C. § 1983, and Dr. Pinsky cannot be held liable for a constitutional violation on a theory of *respondeat superior*. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 131-34 (3d Cir. 2010).

### 2.   Dr. Tulp's Misrepresentation Claims Fail as a Matter of Law.

The Opposition includes no arguments in connection with Dr. Tulp's claims for fraudulent and/or negligent misrepresentation. As noted in Defendants' Memorandum of Law, Dr. Tulp has failed to allege any misrepresentations. Defs.' MOL 11. The closest Dr. Tulp comes to addressing this deficiency in his misrepresentation claims is his argument that the absence of a misrepresentation is really an "affirmative defense" that is "not the subject of the 12(b)(6) inquiry." Opp. 10. But the existence of misrepresentation is an element of the *prima facie* case of fraudulent or negligent misrepresentation, and for the reason set forth in Defendants' Memorandum of Law, Dr. Tulp simply has not plausibly alleged a false statement by Defendants. Defs.' MOL 10-11. Nor did Dr. Tulp address the arguments in Defendants' Memorandum of Law that his misrepresentation claims must be dismissed for failure to allege reliance, fraudulent intent, or failure to make a reasonable investigation.

### 3.   Dr. Tulp's Abuse of Process Claims Fail as a Matter of Law.

In support of his claim for abuse of process, Dr. Tulp relies on the conclusory allegation that ECFMG was "attempting to pose as a governmental agency" in the affidavits it issued to USAT students, despite the absence of any factual basis in the Complaint to support such a conclusion. Opp. 8; *see also* Defs.' MOL 13–14. Similarly, Dr. Tulp's Opposition fails to address (1) Pennsylvania case law stating that an affidavit does not constitute "legal process" to trigger an abuse of process claim, *see Rockman v. Aciukewicz*, No. 1434 MDA 2013, 2014 WL 10937492,

at *6 (Pa. Super. Apr. 1, 2014), and (2) direction from the Supreme Court that private parties like Dr. Tulp may not sue to enforce the Federal Education Records Protection Act ("FERPA"), thus weakening his reliance on FERPA as a basis for his abuse of process claim, *see Gonzaga Univ. v. Doe*, 536 U.S. 290–91 (2002). The Opposition does not explain how the bare allegations in the Complaint are sufficient to set forth a claim for abuse of process claim. As a result, that claim should be dismissed.

### 4.   Dr. Tulp's Tortious Interference Claims Fail as a Matter of Law.

The Opposition also does nothing to rectify the glaring deficiencies in Dr. Tulp's claims for tortious interference. In the Opposition, Dr. Tulp asserts without any citation to the Complaint that he "had a contract as the President and CEO with USAT, his university." Nowhere in the Complaint does Dr. Tulp allege that he has a contractual relationship with USAT or that his interference claim is premised on that contractual relationship. Next, Dr. Tulp argues that "the students at USAT had implied contracts with the university and Dr. Tulp arising out of their payment of tuition." Opp. 16. The Complaint makes no mention of any alleged implied contracts and, as explained in Defendants' MOL, it is implausible to believe that Dr. Tulp had a contractual relationship with USAT students when the students presumably contract with the school itself.

Dr. Tulp also ignores entirely the argument in Defendants' MOL that it is plain on the face of the Complaint that ECFMG was privileged and justified to act as it did. To the extent Dr. Tulp tries to argue that such privilege or justification is an affirmative defense not proper at the motion to dismiss stage, he misunderstands Pennsylvania law because "the absence of privilege or justification" is an element of his *prima facie* case. *See BP Envtl. Servs., Inc. v. Republic Servs., Inc.*, 946 F. Supp. 2d 402, 407 (E.D. Pa. 2013). And as was the case with respect to the misrepresentation claims, Dr. Tulp has not alleged that any information provided by Defendants was false, and "[t]here is of course no liability for interference with a contract . . . on the part of

one who merely gives truthful information to another." Restatement (Second) of Torts § 772, cmt.

b; *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 479 & n.13 (Pa. 2011).

### C.    Dr. Tulp Should Not Be Granted Leave to File an Amended Complaint.

A district court may deny leave to amend on the ground that an amendment would be futile.

*See Smith v. NCAA*, 139 F.3d 180, 190 (3d Cir. 1998).    An amendment is considered futile "if the

pleading, as amended, would not survive a motion to dismiss for failure to state a claim upon which

relief could be granted."    *Id.*    Here, granting Dr. Tulp's request for an opportunity to amend his

Complaint would be futile for at least two reasons.

*First*, Dr. Tulp has given no indication as to how any of the allegations in the Complaint

would be amended to successfully state a claim when the Complaint in its current form fails to

state any claims for relief.    Thus, for example, it has already been ruled that ECFMG is not a state

actor, and it would be futile to permit Dr. Tulp a renewed opportunity to allege a due process claim

when ECFMG's status as a private actor under the circumstances is fatal to that claim.

*Second*, the Court has already heard testimony and evidence from Dr. Tulp in the context

of a preliminary injunction hearing, which hearing resulted in a ruling that Dr. Tulp is unlikely to

succeed on the merits of his due process claim.    Dr. Tulp had every opportunity to present some

evidence to successfully state a claim against Defendants and he failed to do so.    Unlike the *pro se*

plaintiff who was granted leave to amend in *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114

(3d Cir. 2002), Dr. Tulp is represented by counsel and still has not made any efforts to cure his

admitted "dearth of factual allegations."    Opp. 16.    There is no reason to believe that given an

opportunity to replead, Dr. Tulp would set forth sufficient facts now to state a claim against

Defendants.

Dr. Tulp's deficient Complaint is not merely an "imperfect statement of the legal theor[ies]

supporting the claim[s] asserted," as he contends, *see* Opp. 7; he has not and will not be able to

include sufficient factual allegations in his pleading to support key elements of the constitutional and tort claims he has sought to bring against Defendants.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant the Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice and without leave to file an amended complaint.

Dated: February 21, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates and Dr. William W. Pinsky*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

> TOMMY SWATE
> 403 WILD PLUM
> HOUSTON, TX 77013
>
> WILLIAM C. REIL
> 1515 MARKET ST SUITE 1200
> PHILADELPHIA, PA 19102
> 215-564-1635
> Fax: 215-564-4292
> Email: billreillaw@gmail.com
>
> *Attorneys for Plaintiff*

DATED:  February 21, 2019          */s/ Elisa P. McEnroe*
                                    Elisa P. McEnroe

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG"),[1] by and

through its undersigned counsel, hereby answers the Complaint filed by Dr. Orien L. Tulp in

accordance with the numbered paragraphs thereof as follows:

### PARTIES

1.     The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult
individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO
80033. At all times material herein, plaintiff was President of the University of Science, Arts, and
Technology ("USAT"), and had an ownership interest in the University. USAT is located in
Montserrat, but its US administrative office is located at the address in the caption, and students
take classes in Montserrat and the US via a distance education format.

**ANSWER**:     ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. Orien L. Tulp is the plaintiff in this lawsuit.  ECFMG denies that USAT

students "take classes in Montserrat and the US via a distance education format."  ECFMG lacks

---

[1] On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky.  As a result,
this filing is made by and on behalf of ECFMG only, the sole remaining defendant.

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of this paragraph and they are, therefore, denied.

2.    A defendant is the Educational Commission for Foreign Medical Graduates,
hereafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose
address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their
mission statement, the ECFMG is an organization which purports to certify medical school
students and graduates to practice medicine in the United States.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that is headquartered at 3624 Market Street, Philadelphia, PA 19104. ECFMG

further admits that, among other things, it certifies that foreign medical graduates have met certain

minimum criteria for entry into graduate medical education in the United States. ECFMG denies

that it is an unincorporated association and that it "certif[ies] medical school students and graduates

to practice medicine in the United States." ECFMG denies the remaining allegations of this

paragraph.

3.    A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG,
whose address for service of process is indicated in the caption. *See* Exhibit A, attached and
incorporated herein.

**ANSWER**:    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. William W. Pinsky is the President and CEO of ECFMG and that ECFMG

is headquartered at 3624 Market Street, Philadelphia, PA 19104. ECFMG denies that Dr. Pinsky

is a defendant in this lawsuit because the Court has dismissed all claims against Dr. Pinsky.

ECFMG denies the remaining allegations of this paragraph.

4.    ECFMG is an organization sponsored by various medical organizations, including
the Federation of State Medical Boards. Through the ECFMG's certification process, it gives
medical students and medical graduates a certification of eligibility (essentially a license) to apply
for a ACGME [Accreditation Council for Graduate Medical Education] certified residency
program of postgraduate specialty training that can lead to medical licensure of the applicant. A
residency program is a certified program that trains students who have graduated from a medical
school and taken a series of examinations or tests administered by way of the United States Medical
Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to
examine and certify international medical graduates [IMGs] as competent to undertake residency

training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

**ANSWER**: ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that, among other things, it certifies that foreign medical graduates have met

certain minimum criteria for entry into graduate medical education in the United States. ECFMG

further admits that ACGME has elected to require foreign medical graduates who enter ACGME-

accredited programs to be certified by ECFMG. ECFMG specifically denies that "[t]he state

medical boards have given ECFMG the power to examine and certify international medical

graduates [IMGs] as competent to undertake residency training in the USA." ECFMG denies the

remaining allegations of this paragraph.

5.    The action of the ECFMG is in granting authority to apply for a residency program
is state action. The ECFMG's authority, which is in essence a license to apply for a residency
program, has a close nexus to the various state medical boards. Without the ECFMG certificate,
the ACGME postgraduate programs will not permit the applicant to start the training that will in
essence allow the gate to be closed to obtaining a medical residency and eventual license to practice
medicine in the USA. Without the residency training, the medical graduate cannot obtain a full
unrestricted medical license. The state medical boards have granted the power to the ECFMG to
screen foreign medical students for licensure. State action is established because of this delegation
of screening power. *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351.

**ANSWER**: The allegations of this paragraph contain conclusions of law to which no

response is required and they are, therefore, denied. To the extent that a response is required,

ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that

ACGME has elected to require foreign medical graduates who enter ACGME-accredited programs

to be certified by ECFMG. ECFMG specifically denies that "[t]he state medical boards have

granted the power to the ECFMG to screen foreign medical students for licensure." ECFMG

denies the remaining allegations of this paragraph.

6.    The ECFMG has placed itself in a position of interdependence with the state
medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG
reports to the state medical boards but also reports to the National Practitioner Data Bank. The

ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority,* 365 U.S. 715, 725 (1961).

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

7.    Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

9.    Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG admits that it is headquartered and conducts business in the Eastern District of Pennsylvania.

## SUMMARY

10.    In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular

behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit DI to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. Moreover, the allegations of this paragraph refer to written documents that speak for themselves, and Plaintiff's characterization of them is, therefore, denied. To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that it imposed a limited sanction on Plaintiff after finding that he engaged in "irregular behavior" (as defined by and consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior), which finding was made after Plaintiff was given notice of the allegations of "irregular behavior," copies of ECFMG's Policies and Procedures Regarding Irregular Behavior and documentary evidence considered making the finding of "irregular behavior," and an opportunity to be heard at an in-person hearing before ECFMG's Medical Education Credentials Committee. ECFMG further admits that it sent blank affidavit forms to USAT students applying to ECFMG for services to gather information about their medical school coursework. ECFMG denies that it "has refused to allow students of USAT to take necessary medical examinations." ECFMG denies that it "has effectively closed USAT, by refusing to release scores for students who paid for the examinations." ECFMG denies that "[d]octors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification." ECFMG denies that the blank affidavits sent to USAT students were "misleading," "threatened" students with "irregular behavior," were sent "to sanction Dr. Tulp and force closure of" USAT. ECFMG lacks knowledge or information

sufficient to form a belief about the truth of the allegation that Plaintiff "is President, CEO, and an

equal owner of" USAT.   ECFMG specifically denies that Plaintiff was denied due process.

ECFMG denies the remaining allegations of this paragraph.

## GENERAL ALLEGATIONS

11.   ECFMG sent to USAT a letter implying that the school would be closed on or about
01/01/19 because the Board would no longer recognize the scores of its students in taking the
three-part United States Medical Licensing Examination. This action prohibits applicants from
sitting for the USMLE, which is required for unrestricted medical licensure.

**ANSWER**:   The allegations of this paragraph refer to a letter that is a written document

that speaks for itself, and Plaintiff's characterization of it is, therefore, denied.   To the extent that

a response is required, ECFMG denies the allegations of this paragraph.

12.   On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent
a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its
medical education program amounted to "irregular behavior" because USAT had not been certified
by a governmental entity in the United States, and 2) the allegation that USAT was operating
medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a
Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that
he engaged in "irregular behavior". *See* Exhibit F.

**ANSWER**:   The allegations of this paragraph refer to letters that are written documents

that speaks for themselves, and Plaintiff's characterization of them is, therefore, denied.   To the

extent that a response is required, ECFMG admits in part and denies in part the allegations of this

paragraph.   ECFMG admits that Kara Corrado, the ECFMG Vice President of Operations, sent a

letter to counsel for Plaintiff on November 21, 2018 that, *inter alia*, (i) confirmed Plaintiff would

make personal appearance with his attorneys at a hearing before the ECFMG Medical Education

Credentials Committee on November 28, 2018 in connection with allegations of "irregular

behavior" against Plaintiff, (ii) corrected numerous misstatements set forth in a letter from counsel

for Plaintiff dated November 13, 2018, and (iii) as ECFMG had already done multiple times,

invited Plaintiff and USAT to provide evidence to ECFMG that USAT's operations in the United

States were authorized.  ECFMG further admits that Lisa Cover, the ECFMG Senior Vice

President for Business Development and Operations, sent a letter to Plaintiff on October 18, 2018,

which (i) gave Plaintiff notice of the allegations of "irregular behavior" against Plaintiff, (ii)

enclosed numerous documents supporting the allegations of "irregular behavior" against Plaintiff,

and (iii) invited Plaintiff to make a personal appearance before the ECFMG Medical Education

Credentials Committee at a hearing regarding the allegations of "irregular behavior" against

Plaintiff, pursuant to the Committee's policies and procedures.  ECFMG denies the remaining

allegations of this paragraph.

13.    USAT has a certification from the government of Montserrat, allowing it to operate
temporary venues due to an active volcano on the island. Such certification had been recognized
by the Board without incident since 2003. USAT also operates online courses for the majority of
its basic sciences course requirements via a specially developed SPOC [small platform online
courses, developed by USAT]. A true and correct copy of the certification from Montserrat is
attached and incorporated as Exhibit C.

**ANSWER**:    The allegations of this paragraph refer to a written document that speaks for

itself, and Plaintiff's characterization of it is, therefore, denied.  To the extent that a response is

required, ECFMG admits in part and denies in part the allegations of this paragraph.  ECFMG

admits that before ECFMG learned of USAT's unauthorized operations in the United States,

ECFMG treated USAT as a foreign medical school located in Montserrat based on authorization

by Montserrat to operate there.  ECFMG lacks knowledge or information sufficient to form a belief

about the truth of the remaining allegations of this paragraph and they are, therefore, denied.

14.    Students from USAT have each paid well over $1,000 to the Board to take
necessary medical exams, and the Board has refused to release their scores because of alleged
misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an
illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition
on a student or physician's official record, and make residency difficult, if not impossible.

**ANSWER**:   ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that a finding of "irregular behavior" results in a permanent annotation of that

finding in ECFMG's records.  ECFMG denies the remaining allegations of this paragraph.

15.     The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the
address in the caption to address so-called "irregular behavior". After a few minutes, with no
witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing,
the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular
behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration
of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel
terminated the hearing. No Transcript of the proceedings has been received. The Board indicated
that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing
USAT.

**ANSWER**:   ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that a hearing about the allegations of "irregular behavior" against Plaintiff was

held on November 28, 2018 before ECFMG's Medical Education Credentials Committee pursuant

to the Committee's policies and procedures.  ECFMG admits that it allotted 20 minutes for the

hearing (consistent with ECFMG's ordinary practice) and that the hearing concluded sooner

because Plaintiff (through his counsel) refused to engage and became argumentative.  ECFMG

denies the remaining allegations of this paragraph.

16.     There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to
attend the hearing by the Board, and he made a special appearance while not agreeing to
jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the
power to enter any sanction against him. The Board has no contractual or statutory authority over
Dr. Tulp.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no

response is required and they are, therefore, denied.  To the extent that a response is required,

ECFMG denies the allegations of this paragraph.

17.     The Board would not give Dr. Tulp sufficient discovery to conduct an adequate
defense. Also, the Board has never requested any curricula, student records, or any documentation
from USAT.

**ANSWER**:   ECFMG denies the allegations of this paragraph.

18.     The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

19.     There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

20.     The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

**ANSWER**:     The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

### FIRST CAUSE OF ACTION
### Plaintiff v. ECFMG

21.     Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:     ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

22.     This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

23.    The Board allegedly refused to release scores of necessary medical exams to students and graduates of USAT, de facto, closing the University.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

24.    The Board published, in the World Directory of Medical Schools, a warning to students that it would not recognize USAT with respect to necessary medical qualifying examinations after January 1, 2019. *See* Exhibit B.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

25.    The Board sent illegal "affidavits" to students in an attempt to intimidate them from continuing as students at USAT. These alleged affidavits threatened medical students with perjury, as well as "irregular behavior", and also directed the students to provide certain documentary evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process, and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena duces tecum" without first having a legal proceeding. The Board had no power to issue these so-called affidavits. These affidavits are also a violation of Federal Education Records Protection Act (FERPA). Students are predominantly US citizens and are entitled to such protection under FERPA.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

26.    The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as President of the University by discouraging students from registering or continuing their education at USAT, including verbal recommendations from ECFMG case workers. The Board issued "affidavits" and threatened to find students of USAT guilty of "irregular behavior".

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

27.    There was no hearing before the students of USAT were sent emails by the ECFMG telling them that they may have been assigned "irregular behavior" and that their scores would not be released to medical institutions to be accepted for residency applications or other ECFMG services.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

28.    ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

29.    As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no

response to this paragraph is required.

30.    Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER**:    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this WHEREFORE clause is required.

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER**:    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

32.    This cause of action is for violation of due process by the ECFMG (the Board).

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

33.    The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

34.    The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

35.    The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

**ANSWER**:    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

36.    The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Corn., State Bd. of Medicine* 529 Pa. 535 (1992).

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

37.    ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia,* because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

38.    The Board has acted as a governmental entity, and is estopped from denying the same.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

39.    When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

40.    Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

41.    The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

42.    As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

**ANSWER**:   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**   In response to this WHEREFORE clause, ECFMG denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever, including the relief requested in this WHEREFORE clause.  ECFMG denies the remaining allegations of this paragraph.

### THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**   ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

44.    This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

45.    As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

(a)    representing itself as an official governmental agency;

(b)    distributing affidavits to intimidate USAT students, which affidavits did not have a disclaimer or conform to law;

(c)    placing misleading information about USAT into the World Directory of Medical Schools without notice, and which was designed to intimidate students and to effectively force closure of USAT;

(d)    using illegal affidavits whose purpose was to gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp, all of which was in violation of FERPA, the Family Educational Rights and Privacy Act;

(e)    violating FERPA by not receiving the requisite consent of students to their educational records.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph and its subparts is required.

46.    As indicated in the prior counts, the Board has held itself out as a governmental agency. The Board has never indicated to those that it dealt with, in particular the students, that it is not an official governmental agency.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

47.    Accordingly, the Board is estopped by its conduct to deny that it is required to show due process, as if it were a governmental entity.

**ANSWER**:    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing

for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**  The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this WHEREFORE clause is required.

### FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

49.    This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky, which is attached and incorporated as Exhibit A.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

50.    Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG, heretofore described.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

51.    On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing him as Professor and President of USAT at its main location in Montserrat.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

52.    In this letter, Dr. Pinsky indicated, *inter alia,* essentially, that the ECFMG Committee had determined that, for a minimum period of five years, from the date of the letter, that Dr. Tulp was banned from submitting any documents or having any dealings with the ECFMG on behalf of USAT or otherwise.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.

53.    This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

54.    This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

55.    This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

56.    Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

**ANSWER**: The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

57.    The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the

actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

**ANSWER**:   The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

58.    The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

(a)    banning Dr. Tulp without a proper hearing;

(b)    banning Dr. Tulp without an evidentiary basis;

(c)    forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;

(d)    requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;

(e)    terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;

(f)    finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

**ANSWER**:   The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph and its subparts is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph and its subparts.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this WHEREFORE clause is required.    To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiff, and expressly denying any and all wrongdoing, ECFMG alleges the following affirmative defenses.    ECFMG presently has insufficient knowledge or information to form a belief as to whether there are additional defenses than those stated below.    Therefore, ECFMG expressly reserves the right to assert additional defenses.

1.    The Complaint fails to state a due process claim upon which relief may be granted.

2.    Plaintiff's due process claim fails because ECFMG afforded Plaintiff due process.

3.    Plaintiff's due process claim fails because Plaintiff had notice and an opportunity to be heard.

4.    Plaintiff's due process claim is barred because Plaintiff has not suffered any actual injury or damage.

5.    Plaintiff is not entitled to relief under the doctrine of unclean hands.

6.    Plaintiff failed to mitigate his purported damages.

Respectfully submitted,

DATED:  April 9, 2019

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5917
Facsimile:     +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for*
*Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

TOMMY SWATE
403 WILD PLUM
HOUSTON, TX 77013

WILLIAM C. REIL
1515 MARKET ST SUITE 1200
PHILADELPHIA, PA 19102
215-564-1635
Fax: 215-564-4292
Email: billreillaw@gmail.com

*Attorneys for Plaintiffs*

DATED:  April 9, 2019          */s/ Elisa P. McEnroe*
                              Elisa P. McEnroe

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' MOTION FOR SUMMARY JUDGMENT

Dated: May 3, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

**TABLE OF CONTENTS**

<div align="right">

**Page**

</div>

I. INTRODUCTION ................................................................................ 1

II. BACKGROUND .............................................................................. 2

 A. The Educational Commission for Foreign Medical Graduates............................ 2

 B. ECFMG's Policies and Procedures Regarding Irregular Behavior ...................... 3

 C. Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States. .................................. 5

 D. ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior............ 7

 E. Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of His Irregular Behavior. ......................................................................... 7

 F. ECFMG Determined Dr. Tulp Engaged in Irregular Behavior. ........................ 9

 G. The USAT Sponsor Note in the World Directory of Medical Schools ................ 9

 H. Procedural History ........................................................................ 10

III. LEGAL STANDARD........................................................................ 11

IV. ARGUMENT.................................................................................. 12

 A. Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard. ................................................................................ 12

  1. This Court Already Ruled Dr. Tulp Was Afforded Notice and an Opportunity to Be Heard......................................................... 13

  2. Dr. Tulp Received Notice of the Irregular Behavior Allegations........... 14

  3. Dr. Tulp Had Multiple Opportunities to be Heard................................ 15

  4. ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation......................................................... 17

 B. The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Interference Is Appropriate. .............................. 19

 C. Dr. Tulp Is Not Entitled To Legal Or Equitable Relief. ..................... 20

V. CONCLUSION.................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144 (1970)......................................................................................................11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)......................................................................................................11

*Biliski v. Red Clay Consol. Sch.Dist. Bd. of Educ.,*
  574 F.3d 214 (3d Cir. 2009)..............................................................................14, 16, 17

*Boehm v. Univ. of Pa. Sch. of Veterinary Med.,*
  573 A.2d 575 (Pa. Super. Ct. 1990).............................................................................13

*Brewer v. Quaker State Oil Ref. Corp.,*
  72 F.3d 326 (3d Cir. 1995).....................................................................................11-12

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985)......................................................................................................13

*Celotex Corp. v. Caltrett,*
  477 U.S. 317 (1986)......................................................................................................11

*David v. Neumann Univ.,*
  177 F. Supp. 3d 920 (E.D. Pa. 2016) ...........................................................................14

*EBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ...............................................................................................20-21

*ECRI v. McGraw–Hill, Inc.,*
  809 F.2d 223 (3d Cir. 1987)..........................................................................................21

*Fed. Deposit Ins. Corp. v. Mallen,*
  486 U.S. 230 (1988)......................................................................................................17

*Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.,*
  765 F.3d 205 (3d Cir. 2014)..........................................................................................21

*Fireman's Ins. Co. of Newark v. Du Fresne,*
  676 F.2d 965 (3d Cir. 1982)..........................................................................................12

*Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n,*
  No. 3:18-cv-00621-BJD-JBT, ECF No. 39 (M.D. Fla. July 9, 2018)......................22

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Guttenberg v. Emergy,*
26 F. Supp. 3d 88 (D.D.C. 2014) ........................................................................ 22

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*
882 F.2d 797 (3d Cir. 1989) .............................................................................. 21

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,*
909 F.2d 1524 (3d Cir. 1990) ............................................................................ 11

*Kimberg v. Univ. of Scranton,*
411 F. App'x 473 (3d Cir. 2010) ....................................................................... 14

*Marlboro Corp. v. Ass'n of Indep.Colleges and Schools,*
556 F.2d 78 (1st Cir. 1977) ............................................................................... 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .......................................................................................... 12

*Matthews v. Eldridge,*
424 U.S. 319 (1976) .......................................................................................... 16

*McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.,*
24 F.3d 519 (3d Cir. 1994) ................................................................... 13, 15, 20

*Osei v. Temple Univ.,*
518 F. App'x 86 (3d Cir. 2013) ......................................................................... 15

*Pallante v. Those Certain Underwriters at Lloyd's, London,*
311 F. Supp. 3d 692(E.D. Pa. 2018) ................................................................. 21

*Psi Upsilon of Phila. v. Univ. of Pa.,*
591 A.2d 755 (Pa. Super. Ct. 1991) .......................................................... passim

*Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n,*
309 A.2d 353 (Pa. 1973) ............................................................................. 19, 20

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n,*
No. 17-13708, 2017 WL 6342629 (E.D. Mich. Dec. 12, 2017) ................... 22, 23

*Whitmore v. Liberty Mut. Fire Ins. Co.,*
No. 07-5162, 2008 WL 4425227 (E.D. Pa. Sept. 30, 2008) ............................. 12

*Winter v. Nat. Res. Def. Counsel, Inc.,*
555 U.S. 7 (2008) .............................................................................................. 22

## TABLE OF AUTHORITIES
(continued)

Page(s)

**Rules**

Fed. R. Civ. P. 56(a) ...................................................................................................11

Fed. R. Civ. P. 56(c)(1)(A) .........................................................................................11

## I.    **INTRODUCTION**

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") moves for summary judgment as to Plaintiff Dr. Orien L. Tulp's common law due process claim, the sole claim remaining in this action, because the undisputed material facts confirm that Dr. Tulp was afforded due process and he is not entitled to any relief.[1]

In his Complaint, Dr. Tulp alleges that ECFMG violated his due process rights by deciding not to accept documents signed by Dr. Tulp after finding that he made false representations to ECFMG in violation of ECFMG's policies and procedures. But it is undisputed that ECFMG took action as to Dr. Tulp after giving Dr. Tulp (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him. Indeed, following a lengthy hearing earlier in this case on Dr. Tulp's Motion for a Preliminary and/or Permanent Injunction (which was denied) and considering the facts here, this Court already concluded that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 79. Discovery confirms that the Court's conclusion cannot genuinely be disputed. Moreover, discovery established that Dr. Tulp is entitled to neither legal nor equitable relief given the complete absence of proof of damages resulting from the alleged due process violation and Dr. Tulp's failure to satisfy the requirements for a permanent injunction.

Accordingly, there remain no genuine issues of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim. This Court should grant summary

---

[1]    On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky. *See* ECF No. 29. As a result, the Motion for Summary Judgment is brought by and on behalf of ECFMG only, the sole remaining defendant.

1

judgment in favor of ECFMG on Dr. Tulp's common law due process claim, dismissing the
remainder of Dr. Tulp's case in its entirety.

## II.  **BACKGROUND**

### A.  **The Educational Commission for Foreign Medical Graduates**

ECFMG is a private non-profit organization that promotes quality health care for the public
by certifying physicians who receive their basic medical degree from an international medical
school (known as international medical graduates or "IMGs") for entry into U.S. graduate medical
education. SOF ¶¶ 1-2. ECFMG's responsibilities include (among other things): (i) certifying the
readiness of IMGs for entry into graduate medical education and health care systems in the United
States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible
information to IMGs regarding entry into graduate medical education in the United States, and (iii)
verifying credentials and providing other services to health care professionals worldwide.  SOF
¶ 3.

To verify an applicant's credentials as part of ECFMG's certification process, ECFMG
collects documentation, including records relating to an applicant's attendance at a recognized
international medical school. SOF ¶ 4. An "international medical school" is "an education facility
located in a country *outside of the United States and Canada* with its primary campuses and main
operations *located in that country*." SOF ¶ 5 (emphasis added).  If an international medical school
has a branch campus outside the country where its primary campus is located, ECFMG "may
require confirmation from the appropriate government authority" in the branch campus country
that "the branch campus is authorized to operate as a medical school in the branch campus country"
and that the international medical school "awards degrees that meet the medical education
eligibility requirements for licensure to practice medicine in the branch campus country."  SOF
¶ 6.

Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate. SOF ¶ 7. This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school. SOF ¶ 8.

**B.    ECFMG's Policies and Procedures Regarding Irregular Behavior**

ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior define irregular behavior as "all actions or attempted actions on the part of applicants . . . or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG." SOF ¶ 9. Examples of irregular behavior include, but are not limited to, failing to comply with an ECFMG policy, procedure and/or rule, or providing false information to ECFMG. SOF ¶ 10.

ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

- Once ECFMG becomes aware of potential irregular behavior, ECFMG staff investigates the situation. SOF ¶ 13(a). Depending on the specific circumstances of the potential irregular behavior, that investigation can involve the gathering of additional information. SOF ¶ 13(a).

- "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee[,]" a sub-committee of the ECFMG Board of Trustees. SOF ¶ 13(b).

- Individuals alleged to have engaged in irregular behavior are "advised in writing of the nature of the alleged irregular behavior and provided with a copy of the *Policies and*

3

*Procedures Regarding Irregular Behavior*." SOF ¶ 13(c). In practice, they are also provided with a copy of materials supporting the allegation of irregular behavior that are to be provided to the Medical Education Credentials Committee. SOF ¶ 45.

- Individuals alleged to have engaged in irregular behavior are also given "an opportunity to provide written explanation and to present other relevant information" to ECFMG. SOF ¶ 13(d). They "may also request the opportunity to appear personally before the Medical Education Credentials Committee" to testify under oath (with representation by counsel, if desired) about the allegations of irregular behavior. SOF ¶ 13(e).

- After the Medical Education Credentials Committee reviews the evidence—including any written explanation, testimony, or other relevant information provided by the individual alleged to have engaged in irregular behavior—the Medical Education Credentials Committee votes on whether the allegations of irregular behavior are founded. SOF ¶ 13(h).

- If the Medical Education Credentials Committee determines that the allegations of irregular behavior are founded, "the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior," and ECFMG notifies the individual as to the Medical Education Credentials Committee's decisions. SOF ¶ 13(h)-(i).

- Individuals found to have engaged in irregular behavior may appeal the Medical Education Credentials Committee's finding to ECFMG's Review Committee for Appeals, another sub-committee of the ECFMG Board of Trustees made up of members independent of the Medical Education Credentials Committee. SOF ¶ 13(j).

They also may petition the Medical Education Credentials Committee to reconsider its finding.  SOF ¶ 14.

**C.    Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.**

Plaintiff Dr. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  SOF ¶ 15.  Even though Dr. Tulp is affiliated with USAT, he testified in this case that he has never earned money from USAT.  SOF ¶¶ 18-19.  Rather, he has been retired for decades and his income is derived entirely from pensions.  SOF ¶ 20.

In mid-2018, ECFMG received information indicating that USAT was operating a campus and providing medical education in Miami, Florida.  SOF ¶ 21.  ECFMG had never received evidence demonstrating that USAT had authorization from the United States or Florida to operate a branch campus in Miami.  SOF ¶ 23.

Accordingly, on August 21, 2018, ECFMG sent a letter to Dr. Tulp requesting that Dr. Tulp "provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States."  SOF ¶ 22.  ECFMG requested information covering "the whole time period that the USAT Miami branch campus has been in operation."  SOF ¶ 23.

Later that day, Dr. Tulp responded to ECFMG via email:

This is incorrect information.  The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. [sic] It is NOT a campus.  Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed.  USAT has students on island on a year round basis in its origination.

SOF ¶ 24.

In the weeks that followed, ECFMG received additional information suggesting that Dr. Tulp's statement to ECFMG regarding USAT purportedly not providing education in the United States was false and that USAT was actually operating multiple satellite campuses in cities across the United States.  SOF ¶ 25.  In light of the additional information confirming that Dr. Tulp's representations to ECFMG were false, ECFMG sent another letter to Dr. Tulp on September 14, 2018, advising him that ECFMG was continuing its review of the matter to "ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements."  SOF ¶ 26.  As part of that ongoing review, ECFMG informed Dr. Tulp that it had "reached out to students and graduates of USAT in order to collect information from them regarding their attendance at USAT" and that "USAT students and graduates seeking services related to ECFMG Certification . . . must complete and submit an affidavit attesting to the accuracy of the medical school information provided to ECFMG."  SOF ¶ 26.  The affidavit asked USAT students and graduates to certify (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses.  SOF ¶ 27.

More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat.  SOF ¶ 28.  There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students."  SOF ¶ 29.  As a result, ECFMG circulated a second affidavit to USAT students and graduates, in which ECFMG sought information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT.  SOF ¶ 30.

**D.    ECFMG Gave Dr. Tulp Notice of Allegations of His Irregular Behavior.**

On October 18, 2018, ECFMG sent a letter to Dr. Tulp advising him of an allegation that

he engaged in irregular behavior by providing false information to ECFMG.  SOF ¶¶ 31-36.  The

letter summarized the allegations in the opening paragraph as follows:

> Specifically, you provided false information to ECFMG when you (1) notified ECFMG
> that USAT does not operate a branch campus in Miami, Florida and (2) certified to the
> attendance dates of several USAT students and graduates when ECFMG has information
> that these students were not attending USAT during some of the time periods to which you
> certified.  The details of ECFMG's allegation are set forth below.

SOF ¶ 32.  The letter went on to describe at length the allegations against Dr. Tulp.  SOF ¶¶ 33-

35.

The letter informed Dr. Tulp that ECFMG's Medical Education Credentials Committee

would be meeting on November 28, 2018 to address the allegations of irregular behavior against

him.  SOF ¶ 35.  The letter also listed and included many of the documents that would be presented

to the Medical Education Credentials Committee in connection with their review of the allegations

concerning Dr. Tulp.  SOF ¶ 35.  All of the documents that would be presented to the Medical

Education Credentials Committee were provided later to Dr. Tulp's attorneys before the November

28 meeting.  SOF ¶¶ 45-46.

**E.    Dr. Tulp Received an Opportunity to Be Heard Regarding Allegations of His
      Irregular Behavior.**

In its October 18, 2018 letter, ECFMG invited Dr. Tulp to submit to ECFMG a written

response to the allegations of irregular behavior and any relevant information that he wanted

ECFMG to consider in connection with the allegations of irregular behavior.  SOF ¶ 35.  It also

invited Dr. Tulp to appear personally and with counsel before the Medical Education Credentials

Committee on November 28, 2018, which Dr. Tulp elected to do.  SOF ¶ 35.

Before the meeting of the Medical Education Credentials Committee, Dr. Tulp's counsel communicated with ECFMG about the allegations of irregular behavior and the Medical Education Credentials Committee. SOF ¶¶ 37-46. ECFMG also provided Dr. Tulp's counsel with copies of materials that the Medical Education Credentials Committee would review in connection with the allegations of irregular behavior concerning Dr. Tulp. SOF ¶¶ 45-46.

On November 28, 2018, Dr. Tulp appeared before the Medical Education Credentials Committee along with his two attorneys. SOF ¶ 47. ECFMG typically allows only one attorney to attend these meetings on behalf of an individual suspected of irregular behavior, but in this instance, it granted Dr. Tulp's request to bring both of his attorneys. SOF ¶ 39. One of his attorneys made an opening statement, in which he objected to the Medical Education Credentials Committee's authority and procedures; he did not present a substantive response to the allegations of irregular behavior. SOF ¶¶ 51-54. He concluded by stating, "That is our opening statement. If you have any questions, you can address them to me. *Dr. Tulp will not be answering any questions.*" SOF ¶ 54 (emphasis added). Counsel for ECFMG repeatedly invited Dr. Tulp's counsel (and Dr. Tulp himself) to present a substantive response to the allegations of irregular behavior or the materials provided to Dr. Tulp and his counsel before the meeting. SOF ¶ 55. After much back and forth, Dr. Tulp's counsel stated on the record, "*Dr. Tulp is not going to be talking today. The next time you hear him talk is going to be in federal court.*" SOF ¶ 56 (emphasis added). After several more unsuccessful attempts by counsel for ECFMG to elicit a substantive response from Dr. Tulp and his counsel regarding the allegations of irregular behavior, counsel for ECFMG adjourned the meeting. SOF ¶¶ 57-62. A full read of the transcript gives a complete picture of Dr. Tulp's opportunity (and refusal) to be heard. *See* JA0139-JA0171.

**F.    ECFMG Determined Dr. Tulp Engaged in Irregular Behavior.**

By letter dated December 14, 2018, ECFMG notified Dr. Tulp that the Medical Education Credentials Committee had completed its review and determined that Dr. Tulp had engaged in irregular behavior. SOF ¶ 63. As a result, ECFMG decided it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SOF ¶ 63. The action taken by ECFMG does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor or administrator at a medical school because any medical school affiliated with Dr. Tulp could authorize a different official to sign documents for ECFMG. SOF ¶¶ 64-65. Indeed, USAT may continue to submit documents to ECFMG because it has other "authorized signatories." SOF ¶ 65. Thus, the limited practical effect of the irregular behavior finding is that ECFMG will not accept representations or certifications *by Dr. Tulp* as valid in connection with the ECFMG's certification process (at least for a period of five years).

**G.    The USAT Sponsor Note in the World Directory of Medical Schools**

The World Directory of Medical Schools is a listing of the world's medical schools. SOF ¶ 69. ECFMG uses a "Sponsor Note" in the World Directory to inform the public generally and students or graduates of the school specifically whether students and graduates from particular schools in particular years are eligible to apply for ECFMG certification. SOF ¶ 69.

On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT to reflect the use of affidavits in the certification process as follows:

Currently students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG certification,

and Electronic Residency Application Service (ERAS) Support Services. ECFMG will
provide information and instructions to applicants upon receipt of application.

SOF ¶ 70. USAT was given notice of the "enhanced procedures" described in the Sponsor Note

via letter from Ms. Corrado. SOF ¶ 71.

Then, as ECFMG's investigation continued into USAT's authorization (or lack thereof) to

operate as it had, on or around October 18, 2018, ECFMG updated its Sponsor Note for USAT

again, this time to reflect ECFMG's decision that beginning on January 1, 2019, future USAT

students and graduates would not be eligible for ECFMG certification unless and until USAT

provided satisfactory documentation from U.S.-based authorities allowing USAT to operate

branch campuses in the United States. SOF ¶ 72. Accordingly, ECFMG updated its Sponsor Note

to include the following language:

> Note: As of January 1, 2019, students and graduates of this medical school with a
> graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG
> Certification, which also renders them ineligible to apply to ECFMG for the United States
> Medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

SOF ¶ 72. USAT was given notice of the change to ECFMG's Sponsor Note via letter from Ms.

Corrado. SOF ¶ 73. In that same letter, Ms. Corrado again invited USAT to provide the requested

documentation. *See* JA0113-JA0114. USAT did not then and has never since provided the

requested documentation. SOF ¶ 23.

ECFMG's Sponsor Note for USAT currently has both the language added in September

2018 and the language added in October 2018. SOF ¶ 74. ECFMG did not update its Sponsor

Note for USAT to reflect the finding of irregular behavior against Dr. Tulp. SOF ¶ 75.

## H.    Procedural History

On December 24, 2018, Dr. Tulp sued ECFMG and its President, Dr. William W. Pinsky,

alleging that they committed various constitutional and common law torts in the course of

investigating and then taking action against Dr. Tulp. *See* ECF No. 1. Dr. Tulp moved for

injunctive relief on January 2, 2019, and following a full hearing on the motion on January 24, 2019, this Court denied Dr. Tulp's motion. *See* SOF ¶ 78. In explaining that Dr. Tulp had not proven a likelihood of success on his constitutional due process claim, the Court specifically noted that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 78.

On March 26, 2018, the Court granted in part Defendants' Motion to Dismiss and dismissed all of Dr. Tulp's claims against ECFMG and Dr. Pinsky, except for a single common law due process claim against ECFMG. *See* ECF No. 29. In its opinion allowing the common law due process claim to proceed, the Court focused on Dr. Tulp's allegations regarding his appearance before the Medical Education Credentials Committee, specifically his allegation in the Complaint that ECFMG ended the hearing "before allowing [Dr. Tulp] an opportunity to present his side of the story." *See* ECF No. 28 at 12. Presently, ECFMG moves for summary judgment on this sole remaining claim.

## III.   **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Then, the nonmoving party has the burden of showing there is a genuine issue for trial by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) (holding that once the movant discharges its burden, the non-movant "must establish the existence of each element on which it bears the burden of proof") (citing *Celotex Corp. v. Caltrett*, 477 U.S. 317, 323 (1986)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir.

1995) (recognizing that a genuine issue exists solely if the nonmoving party "provides sufficient

evidence to allow a reasonable jury to find for him at trial").

The party opposing summary judgment must "do more than simply show that there is some

metaphysical doubt as to the material facts." *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). He must present more than just "bare assertions, conclusory

allegations or suspicions" to show the existence of a genuine dispute. *Fireman's Ins. Co. of*

*Newark v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Rather, "[t]he party opposing summary

judgment must support each essential element of that party's opposition with concrete evidence in

the record. If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted. This requirement upholds the underlying purpose of summary judgment which

is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and

expense." *Whitmore v. Liberty Mut. Fire Ins. Co.*, No. 07-5162, 2008 WL 4425227, at *1 (E.D.

Pa. Sept. 30, 2008) (citations and internal punctuation omitted).

## IV.   ARGUMENT

### A.   Dr. Tulp Was Afforded Due Process, Including Notice and an Opportunity to Be Heard.

Assuming for purposes of this Motion that ECFMG owes common law due process

obligations to Dr. Tulp,[2] Dr. Tulp cannot succeed on his common-law due process claim because

there is no genuine dispute that he was afforded due process. In Pennsylvania, the common law

---

[2]      Indeed, it is not clear that Dr. Tulp in fact pleaded a due process claim under the common law as opposed to under the United States Constitution. At the injunction hearing on January 24, 2019, this Court asked Dr. Tulp's counsel to confirm "exactly what causes of action are being asserted." SOF ¶ 76. When the Court twice described Dr. Tulp's due process claim as "a § 1983 claim alleging that ECFMG violated [Dr.] Tulp's procedural and substantive due process rights as protected by the 14th Amendment," Dr. Tulp's counsel twice responded, "Yes, Your Honor." SOF ¶ 77. Because Dr. Tulp failed to plead a common law due process claim in the Complaint, summary judgment in favor of ECFMG is also warranted on that basis.

duty of due process emerges from the private school and university context, in which "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides," provided that such procedures are "fundamentally fair." *Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 758 (Pa. Super. Ct. 1991) (quoting *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575, 577 (Pa. Super. Ct. 1990)). Whether procedures are "fundamentally fair" is determined by whether a student being disciplined was given notice of the charges and an opportunity to be heard. *Id.* at 759–60.

"[T]he requirements of common law due process are quite similar to those for constitutional due process, and most courts treat them interchangeably." *McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F.3d 519, 535 (3d Cir. 1994) (concurring, J. Becker). Constitutional due process similarly focuses on whether there was notice and opportunity for hearing appropriate to the nature of the case. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

### *1.    This Court Already Ruled Dr. Tulp Was Afforded Notice and an Opportunity to Be Heard.*

In denying Dr. Tulp's request for injunctive relief in this case, this Court concluded that ECFMG's disciplinary hearing met the requirements of constitutional due process and that there was notice and opportunity to be heard. *See* SOF ¶ 78; JA0306 (Injunction Hr'g Tr. 131:5-11 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985))). Indeed, the Court specifically stated in its ruling that "*[i]n this case, there was notice and an opportunity to be heard.*" SOF ¶ 78 (emphasis added). This is confirmed by the facts discussed below, *see infra*, and Dr. Tulp can point to no evidence or disputes of material fact to disturb the Court's prior

conclusion.   Thus, Dr. Tulp's irregular behavior proceeding also satisfies the notice and
opportunity to be heard requirements of the common law duty of due process.[3]

### 2.   *Dr. Tulp Received Notice of the Irregular Behavior Allegations.*

Dr. Tulp received notice of the allegations that he engaged in irregular behavior.
Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, on October 18,
2018, ECFMG sent a letter to Dr. Tulp summarizing and describing in detail the allegations of
irregular behavior against him.   SOF ¶¶ 31-36.   Prior to the November 28, 2018 meeting of the
Medical Education Credentials Committee, Dr. Tulp's counsel received copies of materials to be
considered by the Medical Education Credentials Committee in reaching a decision regarding
irregular behavior.   SOF ¶¶ 45-46.   Moreover, Dr. Tulp and his counsel received numerous letters
explaining ECFMG's process for investigating and evaluating allegations of irregular behavior.
SOF ¶¶ 37-46.   Indeed, ECFMG's Policies and Procedures Regarding Irregular Behavior are both
publicly available on the internet and were sent to Dr. Tulp in connection with the allegations of
irregular behavior.[4]   SOF ¶¶ 9, 35.

Courts routinely find that similar activities constitute sufficient notice of accusations and
the procedures through which the accusations of misconduct may be resolved.   *See, e.g.*, *Biliski v.
Red Clay Consol. Sch. Dist. Bd. of Educ.*, 574 F.3d 214, 221–22 (3d Cir. 2009) (holding that a
discharged employee was given sufficient notice of the reasons for his dismissal when he was

---

[3]      ECFMG met these requirements despite the fact that "[p]rivate institutions need not
endow their students with the constitutional due process protections that state [entities] are
obliged to provide." *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 926 (E.D. Pa. 2016)
(quoting *Kimberg v. Univ. of Scranton*, 411 F. App'x 473, 481 (3d Cir. 2010)).

[4]      ECFMG's actions complied with its Policies and Procedures Regarding Irregular Behavior.
Because private entities bear "no obligation to afford [plaintiffs] protections in addition to those
expressly embodied in" their written policies and procedures, *Kimberg v. Univ. of* Scranton, 411
F. App'x 473, 481 (3d Cir. 2010), ECFMG afforded Dr. Tulp due process.

provided with multiple disciplinary memos which described the alleged misconduct and what body would decide whether dismissal was appropriate); *McKeesport Hosp.*, 24 F.3d at 532 (defendant accrediting council's use of detailed letters to communicate areas in which plaintiff hospital needed to improve, coupled with allowance of opportunity for hospital to submit additional information to address these concerns, constituted adequate notice of deficiencies before withdrawal of accreditation) (Becker, J., concurring); *Psi Upsilon of Phila.*, 591 A.2d at 758–59 (holding that University's procedure of sending a statement explaining charges and violations to disciplined fraternity members before a disciplinary hearing was sufficient notice of pending charges); *Osei v. Temple Univ.*, 518 F. App'x 86, 89 (3d Cir. 2013) (holding that even a one-day notice of witness testifying against plaintiff at hearing was sufficient notice under the school disciplinary context and constituted due process).

It cannot be disputed that Dr. Tulp received a letter from ECFMG detailing the allegations of irregular behavior. SOF ¶¶ 31-36. It also cannot be disputed that Dr. Tulp received that letter more than a month before the meeting of the Medical Education Credentials Committee and nearly two months before a decision regarding the allegations of irregular behavior. SOF ¶ 47. This, along with the entire record of ECFMG's communications with Dr. Tulp and his counsel, confirms that Dr. Tulp received adequate notice of the allegations against him.

### 3. *Dr. Tulp Had Multiple Opportunities to be Heard.*

Consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior, Dr. Tulp had ample opportunity to be heard in connection with the allegations of his irregular behavior.

***First***, Dr. Tulp had an opportunity to present a written response to the allegations of irregular behavior and provide any relevant information that he wanted the Medical Education Credentials Committee to consider. SOF ¶¶ 13(d), 35. Because "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is

15

tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247-48 (1988)), Dr. Tulp's opportunity to provide a written submission and relevant information in response to the allegations of irregular behavior constitute an adequate opportunity to be heard. *See Matthews v. Eldridge*, 424 U.S. 319, 334, 344-46 (1976) (explaining that some form of hearing with safeguards such as the opportunity to submit documentation, access to the file under review, and ability to be represented are safeguards which speak to whether adequate procedures were in place).

**Second**, Dr. Tulp also had an opportunity to appear personally before the Credentials Committee with two attorneys of his choosing. SOF ¶ 13(e)-(f), 35, 47. *See, e.g., Psi Upsilon*, 591 A.2d at 759 (presence of legal counsel at hearing speaks to adequacy of process given). Dr. Tulp's counsel made a full opening statement and had the opportunity to present whatever argument or substantive response he wished. SOF ¶¶ 51-62. Indeed, counsel for ECFMG repeatedly invited Dr. Tulp to give testimony and Dr. Tulp's counsel to address specific parts of the materials presented for the Committee's consideration. SOF ¶ 55-61. It was only after Dr. Tulp's counsel refused to allow Dr. Tulp to testify and refused to address specific documents that the meeting was adjourned.

That Dr. Tulp did not take full advantage of his personal appearance before the Medical Education Credentials Committee to provide evidence or argument in his favor, does not change the fact that he had an opportunity to be heard on the allegations of irregular behavior. If a plaintiff is "given ample opportunity to present its position by written submission and to argue it orally," and fails to "make the best use of those opportunities . . . the blame cannot be placed on the Commission." *Marlboro Corp. v. Ass'n of Indep.Colleges and Schools*, 556 F.2d 78, 82 (1st Cir. 1977). Here, Dr. Tulp failed to make the best use of his opportunities to present his case to the

Medical Education Credentials Committee in that he failed to provide any substantive response to the allegations of irregular behavior, let alone "make best use of those opportunities" to be heard. That failure does not mean he was denied due process.

Nor does the due process analysis change simply because no witnesses were called to testify. For starters, "[t]here is no inexorable requirement that oral testimony must be heard in every administrative proceeding in which it is tendered," *Biliski*, 574 F.3d at 223 (quoting *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 247 – 48 (1988)). Moreover, counsel for ECFMG repeatedly invited Dr. Tulp to speak or offer evidence, but he refused to do so. *See* SOF ¶¶ 54-56. In *Psi Upsilon of Philadelphia*, members of a disciplined fraternity argued that they were denied a fair opportunity to be heard at a disciplinary hearing because they invoked their privilege against self-incrimination given pending criminal charges, and thus did not testify or present evidence. 591 A.2d at 760. The court there found this contention to be without merit. *Id.* Similarly, Dr. Tulp's failure to testify at his own hearing or present any evidence, even though he was given multiple opportunities to do so, does not mean that he was denied a fair opportunity to be heard.

Because Dr. Tulp had an opportunity to be heard by the Medical Education Credentials Committee, both in writing and in person, he was afforded an opportunity to be heard consistent with his common law due process rights.

### 4.   *ECFMG's Updates to the USAT Sponsor Note Cannot Establish A Due Process Violation.*

It is expected that Dr. Tulp may argue that the timing of ECFMG's updates to its Sponsor Note for USAT in the World Directory of Medical Schools somehow demonstrates that Dr. Tulp was denied due process. Not so. At all times, ECFMG updated its Sponsor Note to accurately reflect steps taken by ECFMG to validate that USAT students and graduates attended a *bona fide*

international medical school and were thus eligible for ECFMG certification. At no point was the Sponsor Note updated in violation of Dr. Tulp's common law due process rights.

In September 2018, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know to expect that additional procedures would be necessary to secure ECFMG certification. In October 2018, after USAT failed to provide the documentation ECFMG repeatedly requested to prove that its operations in the United States complied with ECFMG policy, ECFMG updated the USAT Sponsor Note so that USAT students and graduates would know that starting on January 1, 2019, future USAT students and graduates would not be eligible for ECFMG certification unless and until USAT proved it was in compliance with ECFMG policy. Neither of these updates to the USAT Sponsor Note violated Dr. Tulp's common law right to any form of due process.

Indeed, to the extent ECFMG notified Dr. Tulp of its intent to update the USAT Sponsor Note to reflect that Dr. Tulp had been found to have engaged in irregular behavior, that intent was made clear only *after* the finding of irregular behavior had been made, and the language was not been incorporated into the USAT Sponsor Note. SOF ¶¶ 63, 75. Thus, updates to the USAT Sponsor Note do not create any genuine dispute of material fact as to whether Dr. Tulp was denied due process and any argument to the contrary would be unavailing.

                              *        *        *

As this Court previously concluded, Dr. Tulp was afforded notice of the allegations and evidence of irregular behavior, as well as an opportunity to be heard. This satisfies his common law right to due process in proceedings before the ECFMG and warrants summary judgment in favor of ECFMG on the sole remaining claim in this case.

**B.     The Action Taken as to Dr. Tulp Is Not One Of The Limited Circumstances Where Judicial Intervention Is Appropriate.**

Pennsylvania recognizes that "judicial interference in the affairs of private associations . . . is appropriate only under limited circumstances, as where the private association has deprived a member or prospective member of substantial economic or professional advantages or fundamental constitutional rights." *Sch. Dist. of City of Harrisburg v. Pa. Interscholastic Athletic Ass'n*, 309 A.2d 353, 357 (Pa. 1973); *see also Psi Upsilon of Phila. v. Univ. of Pa.*, 591 A.2d 755, 760 (Pa. Super. Ct. 1991) ("[C]ourts should not interfere with internal procedure and discipline unless real prejudice, bias or denial of due process is present."). This is a case in which judicial interference in the affairs of ECFMG, a private association, would not be appropriate.

There is no dispute that ECFMG took action as to Dr. Tulp by deciding it would "not accept any documents signed/certified by [Dr. Tulp] for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years . . . thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG policies." SOF ¶ 63. This does not deprive Dr. Tulp of a substantial economic or professional advantage or a fundamental constitutional right. It does not prevent Dr. Tulp from operating a medical school in Montserrat or otherwise serving as a professor of medicine. Indeed, it is undisputed that USAT has other authorized signatories, and there is no evidence to suggest that Dr. Tulp needs to serve as an authorized signatory in order for him or USAT to succeed. SOF ¶¶ 64-65. Moreover, Dr. Tulp has never derived income from USAT, SOF ¶¶ 18-20, so any interference with Dr. Tulp's ability to fulfil his duties as President of USAT could not possibly result in substantial economic harm to Dr. Tulp. Accordingly, ECFMG's action does not deprive Dr. Tulp of "substantial economic or professional advantages" or a "fundamental constitutional right[]," and judicial intervention is thus not appropriate here.

*See Sch. Dist. of City of Harrisburg*, 309 A.2d at 357; *see also McKeesport Hosp. v. Accreditation Council for Graduate Med. Educ.*, 24 F. 3d 519, 534 (3d Cir. 1994) (Becker, J., concurring) ("Courts must pay special deference to a professional accreditation organization's substantive decisions in light of the special expertise required to determine professional competency.").

### C.   Dr. Tulp Is Not Entitled To Legal Or Equitable Relief.

Even if Dr. Tulp could establish a common law due process violation (and, as explained above, he cannot), ECFMG is also entitled to summary judgment because the undisputed material facts confirm that Dr. Tulp is not entitled to legal or equitable relief.

Dr. Tulp is not entitled to recover damages because there is no evidence in the record to support a damages award. ECFMG requested that Dr. Tulp produce any and all documents he would use to support a damages award; no such documents were produced. SOF ¶ 79. To the contrary, Dr. Tulp testified that he never earned any money from USAT and that his income is derived entirely from pensions and has been for many years. SOF ¶¶ 18-20. Dr. Tulp has no evidence to substantiate a damages award, so summary judgment in favor of ECFMG is warranted on any claim for damages resulting from Dr. Tulp's common law due process claim.

Nor is Dr. Tulp entitled to equitable relief in the form of an injunction that would require ECFMG to grant an exception to its policies and procedures, which are in place to protect the health of the U.S. public. In addition to demonstrating *actual* success on the merits (which Dr. Tulp cannot do), Dr. Tulp would only be entitled to permanent injunctive relief if he demonstrates that "(1) [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *EBay Inc. v. MercExchange*,

*L.L.C.*, 547 U.S. 388, 391 (2006).[5] Here, ECFMG is entitled to summary judgment on Dr. Tulp's claim for injunctive relief because the undisputed facts show that Dr. Tulp cannot satisfy any of these requirements.

*First*, to make a showing of irreparable harm, the requisite feared injury or harm must not be merely serious or substantial, but rather "must be of a peculiar nature so that compensation in money cannot atone for it." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). In denying Dr. Tulp's Motion for Preliminary and/or Permanent Injunction, this Court concluded that Dr. Tulp had "not shown immediate irreparable injury resulting from ECFMG's action . . . ." JA0309 (Injunction Hr'g Tr. 134:2-4). The evidence gathered in discovery confirms that conclusion. Dr. Tulp can present no evidence whatsoever of irreparable injury, which alone is grounds for denying injunctive relief. *See Pallante v. Those Certain Underwriters at Lloyd's, London*, 311 F. Supp. 3d 692, 695 n.3 (E.D. Pa. 2018) (denying injunction where movant "filed no relevant affidavit or verified pleading showing immediate and irreparable injury, loss, or damage"); *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).

The types of harm allegedly suffered by Dr. Tulp are not irreparable as a matter of law. To the extent Dr. Tulp suggests that he would be irreparably harmed absent injunctive relief by virtue of his "removal . . . as a medical educator under the cloud of an indefinite sentence of 'irregular behavior' for a duration of not less than 5 years," Compl. ¶ 29, this argument fails as a matter of fact and law. Contrary to his naked allegations, the evidence shows that ECFMG's limited action did not cause the "removal of Dr. Tulp as a medical educator" for any period of time. SOF ¶¶ 63-

---

[5] "The standard for a preliminary injunction is essentially the same as for a permanent injunction with the expception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Ferring Pharmaceuticals, Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d 205, 215 n.9 (3d Cir. 2014).

64. Notwithstanding ECFMG's actions, Dr. Tulp remains free to teach medicine, and ECFMG has no say over whether Dr. Tulp continues to teach medicine at USAT in Montserrat or elsewhere. Indeed, Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands. SOF ¶ 66. Moreover, as a matter of law, any injury to Dr. Tulp's reputation is not irreparable and would not be avoided through injunctive relief. ECFMG's finding of irregular behavior has already been made public, at the very least through Dr. Tulp having filed this lawsuit without filing under seal, and Dr. Tulp "is free to try to mitigate any reputational injury" as he sees fit, but it does not rise to the level of irreparable harm. *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, No. 17-13708, 2017 WL 6342629, at *4 (E.D. Mich. Dec. 12, 2017); *Fla. Coastal Sch. of Law, Inc. v. Am. Bar Ass'n*, No. 3:18-cv-00621-BJD-JBT, ECF No. 39, at 14 (M.D. Fla. July 9, 2018) (removal of information that "is already published and available to the public and has been for nearly two months . . . will not undo whatever harm [movant] claims has already occurred"); *Guttenberg v. Emergy*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014) ("As for injury to reputation, that chicken has already flown the coop. . . . Any adverse effects on [movant's] professional life . . . can be redressed through monetary compensation—if he is entitled to any—and hence that harm is by definition not irreparable.").

**Second**, Dr. Tulp cannot point to evidence showing that an injunction would be in the public interest. *See, e.g., Winter v. Nat. Res. Def. Counsel*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). It would be contrary to the public interest for this Court to mandate that ECFMG continue to credit Dr. Tulp's signature when it has concluded, following a thorough investigation and hearing process, that Dr. Tulp made misrepresentations to ECFMG. ECFMG has determined that Dr. Tulp made false statements to

ECFMG about USAT, and Dr. Tulp has failed to present any evidence to alleviate ECFMG's concerns. *See* SOF ¶ 62. ECFMG endeavors to protect the health of the public through application of its policies and procedures, *see* SOF ¶¶ 1-3, and an end-run around them would be adverse to the public interest.

*Third*, the balance of harms weighs against injunctive relief. As to Dr. Tulp, ECFMG only restricted his authority to sign documents to be relied upon by ECFMG in connection with ECFMG's certification process. SOF ¶¶ 63-64. This does not interfere with his ability to earn a living, teach medicine, or work at a medical school. By contrast, ECFMG would suffer *substantial* harm if it were forced to accept Dr. Tulp's signature on documents notwithstanding his record of falsehoods. Numerous courts have held that orders interfering with a certification process like that of ECFMG poses a serious risk of harm to the certifying body and weighs against injunctive relief. *See, e.g., Thomas M. Cooley Law Sch.*, 2017 WL 6342629, at *4 (refusing to grant injunction interfering with the ABA's decision to sanction a law school because doing so would harm the ABA by preventing it from executing its duties).

## V.    CONCLUSION

There remains no genuine issue of material fact, and ECFMG is entitled to judgment as a matter of law on Dr. Tulp's sole remaining claim. Accordingly, ECFMG respectfully requests that the Court grant ECFMG's Motion for Summary Judgment and enter an Order in the form attached.

Dated: May 3, 2019                          Respectfully submitted,

                                            */s/ Elisa P. McEnroe*
                                            Elisa P. McEnroe, PA Bar No. 206143
                                            Matthew D. Klayman, PA Bar No. 319105
                                            MORGAN, LEWIS & BOCKIUS, LLP
                                            1701 Market Street
                                            Philadelphia, PA  19103-2921
                                            Telephone:    +1.215.963.5917
                                            Facsimile:    +1.215.963.5001
                                            elisa.mcenroe@morganlewis.com
                                            matthew.klayman@morganlewis.com

                                            *Attorneys for the Educational Commission for
                                            Foreign Medical Graduates*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:18-cv-05540-WB |
| | ) |
| v. | ) Hon. Wendy Beetlestone |
| | ) |
| EDUCATIONAL COMMISSION FOR | ) |
| FOREIGN MEDICAL GRADUATES and | ) |
| DR. WILLIAM W. PINSKY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' MOTION FOR SUMMARY JUDGMENT**

**I.    The Educational Commission for Foreign Medical Graduates**

1.    Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") is a private non-profit organization based in Philadelphia, Pennsylvania.  *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html, Dkt. No. 12-2).

2.    ECFMG promotes quality health care for the public by, among other things, certifying physicians who received their basic medical degree from an international medical school (known as international medical graduates or "IMGs") for entry into graduate medical education in the United States.  *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html, Dkt. No. 12-2); *see also* JA0184-JA0185 (Tr. of Jan. 24, 2019 Preliminary Injunction Hearing (hereinafter "Injunction Hr'g. Tr.") 9:21-10:1).

3.    ECFMG's responsibilities include (among other things): (i) certifying the readiness of IMGs for entry into graduate medical education and healthcare systems in the United States through an evaluation of their qualifications, (ii) providing complete, timely, and accessible information to IMGs regarding entry into graduate medical education in the United States, and (iii) verifying credentials and providing other services to health care professionals world wide. *See* JA0001 (*About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html, Dkt. No. 12-2).

4.    To verify an applicant's credentials as part of ECFMG's certification process, ECFMG collects documentation, including records relating to an applicant's attendance at a recognized international medical school. *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

5.    An "international medical school" is "an education facility located in a country **outside of the United States and Canada** with its primary campuses and main operations **located in that country**." JA0003 (ECFMG Medical School Policy, Dkt. No. 12-3) (emphases added).

6.    If an international medical school has a branch campus outside the country where its primary campus is purportedly located, ECFMG "may require confirmation from the appropriate government authority" in the branch campus country that "the branch campus is authorized to operate as a medical school in the branch campus country" and that the international medical school "awards degrees that meet the medical education eligibility requirements for licensure to practice medicine in the branch campus country." JA0003 (ECFMG Medical School Policy, Dkt. No. 12-3).

2

7.      Once an applicant's record is verified and complete and the applicant passes certain required substantive exams, ECFMG issues the applicant a certificate.  *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

8.      This certificate signals that an IMG seeking admission to a U.S. graduate medical program has met certain minimum standards of eligibility, including graduation from a *bona fide* international medical school.  *See* JA0010-JA0012 (ECFMG, *2019 Information Booklet* 5-7 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

## II.    ECFMG's Policies and Procedures Regarding Irregular Behavior

9.      ECFMG's publicly available Policies and Procedures Regarding Irregular Behavior define "irregular behavior" to include:

> all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG.  Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG.

JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

10.     ECFMG's Policies and Procedures Regarding Irregular Behavior provide: "Examples of irregular behavior include, but are not limited to, ***submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual***; failing to comply with United States Medical Licensing Examination or ECFMG policies, procedures, and/or rules; ***falsification of information on applications, submissions, or other materials to ECFMG***; taking an examination when not

3

eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals." JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4) (emphases added); *see* JA0032-JA0033 (ECFMG, *2019 Information Booklet* 27-28 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4) (irregular behavior includes providing false information or documents to ECFMG)); *see also* JA0204 (Injunction Hr'g Tr. 29:9-14).

11.    Irregular behavior charges can be brought against any individuals who are involved in the process of application for ECFMG certification or "any other person that would or could subvert the examination, certification or other processes programs or services of ECFMG," including medical school officials. JA0029 (ECFMG, *2019 Information Booklet* 24 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0351-JA0352, JA0355-JA0356 (Tr. of Deposition of Dr. William W. Pinsky (hereinafter "Pinsky Dep.") 41:24-42:3, 45:22-46:7).

12.    ECFMG's Policies and Procedures Regarding Irregular Behavior describe ECFMG's process for investigating suspected irregular behavior, determining whether an individual engaged in irregular behavior, and taking appropriate action if a finding of irregular behavior is made. *See* JA0029-JA0033 (ECFMG, *2019 Information Booklet* 24-28 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

13.    ECFMG's Policies and Procedures Regarding Irregular Behavior set forth the following steps for addressing suspected irregular behavior:

a.    "After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and

feasible, staff will conduct a follow-up investigation to gather additional information." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

b. "If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

c. The individual who may have engaged in irregular behavior "will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0199 (Injunction Hr'g Tr. 24:10-17).

d. "The individual will be given an opportunity to provide written explanation and to present other relevant information. Any such written explanation or other relevant information must be received by ECFMG by the deadline set forth in ECFMG's writing to the individual. Submissions received after the deadline will be considered by the Medical Education Credentials Committee at its discretion." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

e. "The individual may also request the opportunity to appear personally before the Medical Education Credentials Committee, and may be represented by legal

counsel, if the individual so wishes." JA0030 (ECFMG, *2019 Information Booklet* 25 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4); *see* JA0199 (Injunction Hr'g Tr. 24:10-17).

f.    "In instances in which the individual appears personally before the Medical Education Credentials Committee, a stenographic or audio recording will be made of that portion of the proceedings during which the individual is in attendance. Any statements made by the individual during a personal appearance before the Medical Education Credentials Committee will be under oath." JA0030-JA0031 (ECFMG, *2019    Information    Booklet*    25-26    (last    updated    Sept.    13,    2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

g.    "All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the Medical Education Credentials Committee.    The Medical Education Credentials Committee, based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior." JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

h.    "If the Medical Education Credentials Committee determines that the individual engaged in irregular behavior, the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior." JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

i.  "ECFMG will notify the individual whether the Medical Education Credentials Committee determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto." JA0031 (ECFMG, *2019 Information Booklet* 26 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

j.  "The Medical Education Credentials Committee's determination of irregular behavior and any action(s) taken pursuant thereto (a 'decision' of the Medical Education Credentials Committee) may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the Medical Education Credentials Committee did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the Medical Education Credentials Committee's decision was clearly contrary to the weight of the evidence before it. The notice of appeal must be received by ECFMG within thirty (30) days of the date on which the notification advising the individual of the Medical Education Credentials Committee's decision was mailed to the individual. The appeal of a decision of the Medical Education Credentials Committee is governed by the Rules of Appellate Procedure." JA0031-JA0032 (ECFMG, *2019 Information Booklet* 26-27 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

14.  ECFMG's Policies and Procedures Regarding Irregular Behavior also allow individuals to submit petitions for reconsideration of a decision of the Medical Education Credentials Committee. *See* JA0032 (ECFMG, *2019 Information Booklet* 27 (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf, Dkt. No. 12-4).

7

### III.  Dr. Orien L. Tulp

15.     Plaintiff Dr. Orien L. Tulp is the President of the University of Science, Arts, and Technology Montserrat ("USAT"), a medical school with its primary campus and main operations supposedly in Montserrat.  JA0451 (Tr. of Deposition of Dr. Orien L. Tulp (hereinafter "Tulp Dep.") 24:2-6).

16.     For years, Dr. Tulp was an "authorized signatory" for USAT, meaning that ECFMG would accept his signature on submissions to ECFMG made on behalf of USAT.  *See* JA0474-JA0477 (Tulp Dep. 47:16-50:13).

17.     Dr. Tulp was one of several "authorized signatories" for USAT.  *See* JA0474-JA0475 (Tulp Dep. 47:16-48:23); *see also* JA0212-JA0213 (Injunction Hr'g Tr. 37:2-16).

18.     Dr. Tulp has never earned money from USAT.  JA0519 (Tulp Dep. 92:21-23).

19.     Dr. Tulp is not, and has not previously been, paid by USAT.  JA0519 (Tulp Dep. 92:10-15).

20.     Dr. Tulp retired 20 years ago, and his income is derived entirely from pensions, including a military pension, Social Security, and a teacher's retirement pension.  JA0519-0521 (Tulp Dep. 92:16-94:10).

### IV.  Dr. Tulp Provided False Information to ECFMG During Its Investigation of USAT's Unauthorized Operations in the United States.

21.     In July and August of 2018, ECFMG received information indicating that USAT was offering classes in Miami, Florida.  *See* JA0092 (Aug. 8, 2018 email to ECFMG); JA0093-JA0097 (Aug. 14, 2018 email from C. Ostwalt to S. Mealy).

22.     On August 21, 2018, D. Scott Mealey, ECFMG's Manager of Medical Education Resources & Operations Support, sent a letter to Dr. Tulp via email, which stated:

Dear Dr. Tulp,

It has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida.

In order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country.

In light of this, ECFMG requests that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the whole time period that the USAT Miami branch campus has been in operation.

JA0098; *see* JA0219 (Injunction Hr'g Tr. 44:9-18); JA0256, (Injunction Hr'g Tr. 81:4-82:11 (Dr. Tulp testifying that he received the August 21, 2018 letter)).

23.   The letter asked Dr. Tulp to provide the requested documentation "confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States" by September 3, 2018. JA0098. ECFMG never received documentation showing that USAT is authorized to conduct education in the United States. JA0220 (Injunction Hr'g Tr. 45:6-9).

24.   Later on August 21, 2018, Dr. Tulp responded to Mr. Mealey via email, writing:

Dear Mr. Mealey

This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may be administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis in its origination.

I hope this will clarify your concern.

JA0099; *see* JA0260-JA0262 (Injunction Hr'g Tr. 85:16-87:8 (Dr. Tulp testifying that he sent this email)).

25.     Between August 21, 2018 and September 14, 2018, ECFMG received information

that USAT was providing medical education lectures not only at its Miami site, but also at sites in

Tampa, Florida and Dallas, Texas.  *See* JA0102 (Sept. 14, 2018 letter from K. Corrado to Dr. O.

Tulp).

26.     On September 14, 2018, Kara Corrado, ECFMG's Vice President for Operations,

sent a letter to Dr. Tulp via email, which stated:

> Dear Dr. Tulp:
>
> This is a follow-up to our August 21, 2018 letter in which ECFMG requested information
> from you about the University of Science, Arts & Technology (USAT) Faculty of
> Medicine's satellite (or branch) campus in Miami, FL.  In response, you indicated, 'The
> Miami location is an information and testing site only, where a pre-usmle examination [an
> NBME] may [be] administered, and an Orientation for new students is conducted prior to
> their traveling to the Caribbean.  It is NOT a campus.  Our ONLY Campus is located in
> Olveston, Montserrat, British West Indies.'  We thank you for your quick reply.'
>
> ECFMG has since received information that USAT is providing medical education lectures
> not only at its Miami site, but also at sites in Tamp, FL, and Dallas, TX.
>
> It is critical that ECFMG ensure that information regarding international medical schools
> and their students provided to ECFMG complies with ECFMG policies and requirements.
> Therefore, ECFMG continues its review of this matter.  This letter is to advise you that, as
> part of its review, ECFMG has reached out to students and graduates of USAT in order to
> collect information from them regarding their attendance at USAT.
>
> Effective today, USAT students and graduates seeking services related to ECFMG
> Certification, including registration for USMLE examinations, release of USMLE scores,
> issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to
> residency programs, must complete and submit an affidavit attesting to the accuracy of the
> medical school information provided to ECFMG.  Services will not be provided to
> individuals who do not complete the affidavit.  ECFMG has provided instructions about
> this process directly to the students and graduates.

JA0102; *see* JA0216 (Injunction Hr'g Tr. 41:5-13 ("We had had information that USAT was

operating a campus in the United States in Florida.  And Dr. Tulp had indicated that that was not

correct.  So we still were getting information contrary to that.  So we decided to send the affidavit

to the students to get information from the students about where they actually did their basic

sciences.")).

27.    ECFMG sent an affidavit to USAT students and graduates seeking ECFMG services, asking them to certify under penalty of perjury and under penalty of a finding of irregular behavior (1) their dates of attendance at USAT, and (2) the location where they took their basic science courses. *See* JA0119 (Affidavits Attesting to Medical School Attendance and Education Received at USAT); *see also* JA0191, JA0223 (Injunction Hr'g Tr. 16:1-6, 48:2-8 ("Essentially, in order to receive ECFMG services, they need to complete that affidavit and submit to ECFMG. And once ECFMG has reviewed it and accepted it, then we will continue to provide services to those graduates and students.")).

28.    More than 300 students submitted affidavits to ECFMG indicating that they took classes in the United States, and not a single student indicated that he or she took all of his or her basic science courses in Montserrat. *See* JA0175 (Jan. 10, 2019 Declaration of K. Corrado ¶ 4, Dkt. No. 12-10).

29.    There were also a "number of affidavits" from USAT students where "Dr. Tulp ha[d] provided information that conflicted with the affidavit information that ECFMG got from the students." JA0193 (Injunction Hr'g Tr. 18:7-16).

30.    A second affidavit was later circulated to USAT students and graduates, in which ECFMG sought information about whether USAT students and graduates were given "advance standing" or exempted from taking required courses at USAT based on credits earned outside of USAT. JA0120-JA0121 (Affidavits Attesting to Medical School Attendance and Education Received at USAT).

**V.    ECFMG Initiated Irregular Behavior Proceedings Concerning Dr. Tulp.**

31.    On October 18, 2018, Lisa Cover, ECFMG's Senior Vice President for Business Development and Operations, sent a letter to Dr. Tulp advising him of allegations that he

individually and in his capacity as an official at USAT engaged in irregular behavior by providing

false information to ECFMG. *See* JA0115-JA0118 (Oct. 18, 2018 letter from L. Cover to Dr. O.

Tulp).

      32.      At the beginning of the letter, Ms. Cover detailed the allegations of irregular

behavior as follows:

> Dear Dr. Tulp:
>
> I am writing to advise you of the allegation that you, individually and in your capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified. The details of ECFMG's allegation are set forth below.

JA0115.

      33.      The letter included a section entitled "**Details of Allegation**" that summarized the

allegation of "*False Information Regarding U.S. Branch Campuses*" as follows:

> **Details of Allegation**
> *False Information Regarding U.S. Branch Campuses*
>    On August 21, 2018, ECFMG advised you that we had become aware that USAT was operating a "branch" campus in Miami, Florida. We advised you that in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country. Therefore, we requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. We indicated that this documentation should cover the whole time period that the USAT Miami branch campus has been in operation.
>
> In response to ECFMG's August 21, 2018 letter, you replied:
>
> "This is incorrect information. The Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the

Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.

Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas. We note that there are no lectures scheduled for Montserrat. We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original]. Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

> agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

JA0115-JA0117.

34.    The letter then summarized the allegation of "*Certification of False Information*

*Regarding Students Attendance Dates*" as follows:

> **Certification of False Information Regarding Students Attendance Dates**
> During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.
>
> It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior*. See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures*. Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG. ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.
>
> The review into the matters described in this letter are ongoing. ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

JA0117.

35.    The letter concluded by summarizing the forthcoming "**ECFMG Medical**

**Education Credentials Committee Review of this Allegation**" as follows:

**ECFMG Medical Education Credentials Committee Review of this Allegation**

   This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures.*

   You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

   The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;
- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

   Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

   **Please provide a response to ECFMG by November 1, 2018.** In your response, please note whether you wish to make a personal appearance before the ECFMG Committee. All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org. If you have any questions, please do not hesitate to call me at (215) 883-7318.

JA0117-JA0118.

36.     The letter was sent to o.tulp@usat.edu, which is one of the email addresses used by Dr. Tulp. *See* JA0115; JA0260 (Injunction Hr'g Tr. 85:16-19); JA0479 (Tulp Dep. 52:12-16).

37.     In the time period between Ms. Cover's October 18, 2018 letter and the November 28, 2018 meeting of the Medical Education Credentials Committee, counsel for Dr. Tulp exchanged numerous letters with ECFMG relating to the allegations of irregular behavior against Dr. Tulp and the November 28, 2018 irregular behavior proceeding. *See, e.g.,* JA0124-JA0126 (Oct. 23, 2018 letter from T. Swate to K. Corrado, incorrectly dated Sept. 23, 2018); JA0127-JA0129 (Oct. 26, 2018 letter from K. Corrado to T. Swate); JA0130-JA133 (emails between K. Corrado ECFMG and counsel for Dr. Tulp dated Nov. 9-14, 2018); JA0134-JA0136 (emails between ECFMG and counsel for Dr. Tulp dated Nov. 9-16, 2018).

38.     On October 23, 2018, ECFMG received a letter from attorney Tommy Swate dated September 23, 2018. *See* JA0124-JA0126 (letter from T. Swate to K. Corrado, incorrectly dated Sept. 23, 2018); JA0127 (letter from K. Corrado confirming receipt on Oct. 23, 2018 of letter from T. Swate dated Sept. 23, 2018). In that letter, Mr. Swate explained that he represented USAT and would attend the November 28, 2018 proceeding described in Ms. Cover's October 18, 2018 letter to Dr. Tulp. He also sought to confirm that Ms. Cover's October 18, 2018 letter to Dr. Tulp contained all the allegations to be discussed at the November 28, 2018 proceeding and requested the complete file to be reviewed by the Medical Education Credentials Committee at that proceeding. JA0124-JA0126.

39.    On October 26, 2018, Ms. Corrado responded to Mr. Swate in a letter sent via email,

writing:

Dear Mr. Swate:

    I am writing in response to your letters dated September 15, 2018 and September 23, 2018. These letters were received at ECFMG on October 16, 2018 and October 23, 2018 respectively. We understand from your letters that you have been retained as counsel for University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat. Your letters appear to conflate the issue that USAT is operating branch campuses in the United States without appropriate documentation with the allegations of irregular behavior for Dr. Tulp. We take this opportunity to clarify these issues for you.

*Allegations of Irregular Behavior for Dr. Orien Tulp*

    ECFMG has *not* alleged irregular behavior on the part of USAT (the institution). The allegations of irregular behavior are specific to Dr. Tulp, both individually and in his capacity as an official of USAT. Therefore, before providing you with any materials relating to allegations of irregular behavior concerning Dr. Tulp, we ask that you advise ECFMG whether you also represent Dr. Tulp individually, in addition to USAT. We will be happy to share the entire case file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") with you once you have officially advised that you are Dr. Tulp's legal counsel.

    Please note that only Dr. Tulp is entitled to request a personal appearance at the ECFMG Committee hearing, with his legal counsel, as outlined in ECFMG's Policies and Procedures for Irregular Behavior. ECFMG will not permit any other person or official, from USAT or otherwise, to appear instead of Dr. Tulp at his hearing. If you are Dr. Tulp's legal counsel, Dr. Tulp has the right for you to appear with him at the hearing. There is no right or need for "local counsel" or "paralegals" to attend; therefore, they will not be permitted to attend Dr. Tulp's hearing.

    Further, in your September 23, 2018 letter, you indicate that "a decision has already been made regarding October 18, 2018 allegations because the ECFMG has posted on various websites warning to USAT students that after January 1, 2018 USAT students will no longer be eligible to apply for the various Step tests." This is incorrect. No decision regarding the allegations against Dr. Tulp has been made as the ECFMG Committee has not yet reviewed these allegations. ECFMG carefully follows its policies and procedures, maintaining fairness and integrity throughout its processes. We trust this information disabuses you of the notion that ECFMG's "proceedings are not neutral."

JA0127.

17

193a

40.    On November 9, 2018, Ms. Corrado emailed Mr. Swate and William Reil, another

attorney who had communicated with ECFMG on behalf of Dr. Tulp and USAT, writing:

> Gentleman:
>
> I am following up on ECFMG's October 26, 2018 letter to you regarding USAT. We understand that you both are counsel for USAT.
>
> As you know, ECFMG will review the allegations of irregular behavior for Dr. Tulp on November 28, 2018.   Dr. Tulp has a right to a personal appearance at that meeting with his legal counsel.
>
> Please reply to this email by November 14, 2018 and indicate:
> If you are representing Dr. Tulp in this matter; and
> If Dr. Tulp plans to attend the meeting in person (and if so, which of his attorneys will be present).
>
> If we do not receive a reply from you on or before November 14, 2018, we will assume that Dr. Tulp is not making a personal appearance.  Dr. Tulp's case is scheduled to be reviewed on November 28, 2018 whether or not he makes a personal appearance.

JA0132.

41.    Later that day, Mr. Swate responded via email and wrote, in part:  "Mr. Riel [sic]

and I will represent Dr. Tulp at the hearing on October [sic] 28th.  Please send a copy of the

October [sic] 28 agenda and written policy and procedure to my attention at swatemd@aol.com.

Please forward copies of all documents submitted to the committee members prior to the hearing."

JA0131.

42.    On November 14, 2018, Ms. Corrado responded via email and wrote, "Thank you

for your email. As we understand that you and Mr. Reil are representing Dr. Tulp in the matter

related to the allegations of irregular behavior, I am sending the materials that the ECFMG

Committee will review when considering these allegations. I will send the attachments in 5

separate emails, as they are quite large. Please let me know if you have not received them. Please note that this email will also be provided to the Committee." JA0130.

43.    In the email, Ms. Corrado also wrote, "**Dr. Tulp is scheduled to appear before the ECFMG Committee with you and Mr. Reil (Dr. Tulp's attorneys) on Wednesday November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, PA 19103. Please arrive by 8:45 AM.** In accordance with ECFMG's standard practice, Dr. Tulp will be scheduled for 20 minutes, during which time he will have the opportunity to present his response to these allegations (either personally or through his counsel) and the ECFMG Committee members, ECFMG counsel, and staff will have the opportunity to ask questions. After that, Dr. Tulp may provide a brief, closing statement." JA0130 (emphasis in original).

44.    On November 14, 2018, ECFMG emailed to Tommy Swate the materials that the Medical Education Credentials Committee would review at its meeting on November 28, 2018 relating to the allegations of irregular behavior concerning Dr. Tulp. JA0134.

45.    On November 16, 2018, Ms. Corrado emailed Dr. Tulp's counsel and wrote, "I am writing to confirm that you have received the materials that the ECFMG Committee will review at its meeting on November 28, 2018 related to the allegations of irregular behavior for Dr. Tulp." JA0134. Ms. Corrado also wrote, "All documents were emailed to you on Wednesday, November 14, 2018. I have also sent the documents to you via Federal Express today." JA0134. *See* JA 0215 (Injunction Hr'g Tr. 40:10-15 ("Yes, so we provide the materials to individuals prior to the hearing. Those materials were sent via email to Dr. Tulp's counsel.")).

46.    That same day, Mr. Swate responded, "Thank you. I have received documents[.]" JA0134.

**VI.   Dr. Tulp and His Counsel Appeared Before the Medical Education Credentials Committee.**

47.      On November 28, 2018, Dr. Tulp appeared before the Medical Education

Credentials Committee. *See* JA0144 (Tr. of Medical Education Credentials Committee Hr'g

Regarding Dr. Orien L. Tulp (hereinafter "MECC Hr'g Tr.") 6:18-22); JA0521-JA0522 (Tulp Dep.

94:17-95:20).   He was accompanied by his attorneys, Mr. Swate and Mr. Reil.   JA0135

(ECFMG00000506).

48.      Dr. Tulp and his counsel were again provided with a copy of the materials that

would be considered by the Medical Education Credentials Committee. *See* JA0145-JA0148

(MECC Hr'g Tr. 7:13-8:15, 8:19-24, 9:24-10:4); *see also* JA0361-JA0362, JA0365-JA0363

(Pinsky Dep. 51:24-52:3, 55:17-56:8 ("[T]he board received the same documents that had been

sent to Dr. Tulp and his attorneys.  The board had that material and they reviewed that prior to

coming to the committee meeting.")); JA0134 (Nov. 16, 2018 email from T. Swate confirming

receipt of documents from ECFMG).

49.      At the outset of the hearing, the members of the Medical Education Credentials

Committee and ECFMG's representatives introduced themselves to Dr. Tulp and his counsel.

JA0142-JA0143 (MECC Tr. 4:6-5:23).

50.      Ms. Corrado then summarized the allegations of irregular behavior for the

Committee as follows: "The allegation is that Dr. Orien Tulp, professor and president of USAT

engaged in irregular behavior in connection with providing false information to ECFMG,

specifically that Dr. Tulp provided false information to ECFMG regarding USTAT's [sic] United

States branch campuses and certifying to the attendance dates of several USTAT [sic] students and

graduates when ECFMG has information that these students were not attending USTAT [sic]."

JA0144 (MECC Tr. 6:1-22).

51.     Mr. Swate then made an opening statement on behalf of Dr. Tulp. He began by stating, "I've asked and I've asked and I've asked for the packet that was presented to the committee members. I would like a copy of the packet, the information that was submitted to the committee members so that I will know what was considered by the committee before we came here today because you're considering information that I may or may not know about." JA0145-JA0146 (MECC Tr. 7:14-8:1).

52.     Counsel for ECFMG directed Mr. Swate to the copy of the materials printed for him and reminded Mr. Swate that the materials had been provided to him "on more than one occasion prior to this proceeding, which is our usual practice even without you asking." JA0146 (MECC Tr. 8:10-14); *see* JA0147-JA0148 (MECC Tr. 9:24-10:4 (explaining that the materials were sent by email on November 14 and by Federal Express)).

53.     Mr. Swate then presented a series of arguments on behalf of Dr. Tulp, including that (a) ECFMG lacked jurisdiction over Dr. Tulp, (b) ECFMG had no written contract with Dr. Tulp, (c) ECFMG should have the "sole and exclusive burden of proof," and (d) ECFMG appeared to be "co-mingling . . . the prosecutorial and jury functions." JA0149-JA0155 (MECC Tr. 11:17-17:2).

54.     Mr. Swate concluded, "That is our opening statement. If you have any questions, you can address them to me. ***Dr. Tulp will not be answering any questions.***" JA0154-JA0155 (MECC Tr. 16:22-17:2) (emphasis added).

55.     Counsel for ECFMG repeatedly invited Dr. Tulp and his counsel to present a substantive response or statement regarding the charges of irregular behavior against Dr. Tulp. *See, e.g.,* JA0155-JA0158, JA0162-JA0163 (MECC Tr. 17:3-7; 18:5-8, 17-21; 19:9-14; 19:23-20:2; 20:18-21; 24:9-25:1; 25:11-16).

56.     At one point during the proceeding, counsel for ECFMG asked whether "USTAT [sic] provide[d] any student with any medical school basic science education in the United States." JA0157-JA0158 (MECC Tr. 19:23-20:2). Mr. Swate responded, "Well, yes, it did," but counsel for ECFMG noted for the record that Dr. Tulp was "shaking his head, no, and you [Mr. Swate] just said, yes. So maybe you should let your client speak to respond." JA0158 (MECC Tr. 20:3-8). In response, Mr. Swate stated, "*Dr. Tulp is not going to be talking today. The next time you hear him talk is going to be in federal court.*" JA0158 (MECC Tr. 20:9-12).

57.     Counsel for ECFMG specifically asked for clarification of what Dr. Tulp meant when he used the word "campus" in his email to ECFMG, but Dr. Tulp and his counsel refused to provide any clarification. JA0162-JA0164 (MECC Tr. 24:16-26:11).

58.     Indeed, Dr. Tulp's counsel also refused to answer questions, stating, "I'm not a witness. So you don't get to cross-examine me." JA0160 (MECC Tr. 22:12-14).

59.     Mr. Swate repeatedly stated that he was "prepared to go through every page" of the evidence presented to the Medical Education Credentials Committee. JA0161 (MECC Tr. 23:17-18); *see* JA0162 (MECC Tr. 24:6-7); JA0169 (MECC Tr. 31:10-11). But when asked by counsel for ECFMG to explain how the materials showed that Dr. Tulp did not provide false information to ECFMG, Mr. Swate responded repeatedly that he did not bear the burden of proof. *See, e.g.,* JA0157 (MECC Tr. 19:7-17); JA0161-JA0162 (MECC Tr. 23:19-24:1).

60.     Toward the end of the hearing, in response to Mr. Swate again referencing his "ability to go through" the materials, counsel for ECFMG again asked Mr. Swate whether "there [was] anything in particular you [Mr. Swate] want to go through." JA0164 (MECC Tr. 26:20-22).

61.     When counsel for ECFMG finally attempted to terminate the hearing, Mr. Swate said, "ECFMG is terminating this prior to us presenting our evidence." JA0169 (MECC Tr. 31:2-

4).  In response, counsel for ECFMG stated, "We asked you to present evidence, and all you did was present legal argument.  What's your offer of proof?  What would you like to provide?" JA0169 (MECC Tr. 31:5-9).  Mr. Swate responded, "We'll go through every page of this."  JA0169 (MECC Tr. 31:10-11).  But when counsel for ECFMG asked Mr. Swate to identify specifically the evidence he wanted to address, Mr. Swate responded, "I'm asking your evidence.  You're the one presenting the evidence and I'm asking what it is?"  JA0169-JA0170 (MECC Tr. 31:23-32:2).

62.     Counsel for ECFMG then adjourned the hearing.  Dr. Tulp refused to testify or present any evidence explaining or clarifying why the evidence previously gathered by ECFMG and disclosed to Dr. Tulp did not warrant a finding of irregular behavior.  JA0170 (MECC Tr. 32:3-10).

## VII.    ECFMG Determines that Dr. Tulp Engaged in Irregular Behavior.

63.    On December 14, 2018, ECFMG notified Dr. Tulp that the Medical Education

Credentials Committee had completed its review and determined that Dr. Tulp had engaged in

irregular behavior, writing:

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

*In 2018, ECFMG determined that a certain official of the University of Science Arts & Technology engaged in irregular behavior in connection with providing false information to ECFMG.*

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior,* a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure,* decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

JA0172-JA0173.

64.     The action taken regarding Dr. Tulp in connection with the finding of irregular behavior was limited to Dr. Tulp's role as an authorized signatory on behalf of USAT. *See* JA0214 (Injunction Hr'g Tr. at 39:7-14).

65.     The action does not disqualify USAT from having an authorized signatory. *See* JA0214-JA0215 (Injunction Hr'g Tr. at 39:24-40:1); *see also* JA0475-JA0476 (Tulp Dep. 48:24-49:11). Excluding Dr. Tulp, USAT has two authorized signatories who can sign documents submitted to ECFMG on behalf of USAT. JA0476 (Tulp Dep. 48:24-49:11).

66.     Dr. Tulp testified that he is involved in opening a new medical school in the British Virgin Islands. JA0271-JA0272, JA0274 (Injunction Hr'g Tr. 96:15-97:4, 99:3-12); JA0455 (Tulp Dep. 28:21-24).

67.     Dr. Tulp never appealed from the decision of the Medical Education Credentials Committee as permitted by ECFMG's Policies and Procedures Regarding Irregular Behavior. JA0549 (May 2, 2019 Declaration of K. Corrado ¶ 3).

68.     Dr. Tulp never petitioned for reconsideration of the Medical Education Credentials

Committee's decision as permitted by ECFMG's Policies and Procedures Regarding Irregular

Behavior. JA0549-JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 4).

**VIII.   The ECFMG Sponsor Note for USAT in the World Directory of Medical Schools**

69.     The World Directory of Medical Schools is a listing of the world's medical schools.

ECFMG uses "a sponsor note in the World Directory on a medical school to indicate to the public

and to the students and graduates of that school whether or not those students and graduates are

eligible to apply to ECFMG for certification. So it's the way in which [ECFMG] communicate[s]

publicly the eligibility, if you will, of the school's graduates to start the process of ECFMG

certification." JA0220-JA0221 (Injunction Hr'g Tr. 45:17-46:6).

70.     On or around September 24, 2018, ECFMG updated its Sponsor Note for USAT to

include the following language:

> Currently students and graduates of USAT are subject to enhanced procedures that
> must be met in order to be eligible for ECFMG Certification related services,
> including but not limited to: ECFMG Certification, USMLE examinations that lead
> to ECFMG certification, and Electronic Residency Application Service (ERAS)
> Support Services. ECFMG will provide information and instructions to applicants
> upon receipt of application.

JA0103-JA0107 (ECFMG00000498-ECFMG00000502); JA0550 (May 2, 2019 Declaration of K.

Corrado ¶ 5).

71.     USAT was given notice of the "enhanced procedures" described in the Sponsor

Note via letter from Ms. Corrado dated September 14, 2018. JA0550 (May 2, 2019 Declaration

of K. Corrado ¶ 6); *see* JA0102 (Sept. 14, 2018 letter from K. Corrado to Dr. O. Tulp).

72.     On or around October 18, 2018, ECFMG updated its Sponsor Note for USAT again,

to include the following language:

> Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States medical Licensing Examinations (USMLE) as a step towards ECFMG Certification.

JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 7); *see* JA0122-JA0123 (Oct. 18, 2018 email from C. Bede to S. Mealey and K. Corrado).

73.     USAT was given notice of the change to the Sponsor Note via letter from Ms. Corrado dated October 18, 2018.  JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 8); *see* JA0113-JA0114 (Oct. 18, 2018 letter from K. Corrado to Dr. O. Tulp).

74.     ECFMG's Sponsor Note currently has both the language added in September 2018 and the language added in October 2018.  *See* JA0548.

75.     ECFMG did not update its Sponsor Note for USAT to reflect the finding of irregular behavior against Dr. Tulp.  JA0550 (May 2, 2019 Declaration of K. Corrado ¶ 9); *see* JA0548; JA0390-JA0391 (Pinsky Dep. 80:17-81:4).

## IX.   Procedural History

76.     At the injunction hearing on January 24, 2019, the Court asked Dr. Tulp's counsel to confirm "exactly what causes of action are being asserted."  JA0180 (Injunction Hr'g Tr. 5:3-7).

77.     The Court twice described Dr. Tulp's due process claim as "a § 1983 claim" alleging that ECFMG violated Dr. Tulp's "procedural due process" or "procedural and substantive due process" rights "as protected by the 14th Amendment," and Dr. Tulp's counsel twice responded, "Yes, Your Honor."  JA0180 (Injunction Hr'g Tr. 5:18-22); JA0181 (Injunction Hr'g Tr. 6:5-11).

78.     The Court denied Dr. Tulp's Motion for a Preliminary and/or Permanent Injunction
at the conclusion of the January 24, 2019 hearing.  In explaining its decision, the Court specifically
noted that "[i]n this case, there was notice and an opportunity to be heard."  JA0306 (Injunction
Hr'g Tr. 131:5-11).

79.     ECFMG served discovery requests on Dr. Tulp asking him to describe in detail his
alleged damages and produce any and all documents he would use to support a damages award,
but Dr. Tulp provided no such description or documents.    JA0413 (ECFMG Request for
Production No. 37 seeking "[a]ll documents and communications relating to the remedies you
seek, including each element of damages or other relief to which you allegedly are entitled");
JA0409 (ECFMG Interrogatory No. 10 asking Dr. Tulp to "[d]escribe in detail any and all remedies
that you seek in connection with this lawsuit"); JA0416-JA0427 (Dr. Tulp's discovery responses).

Dated: May 3, 2019                                    Respectfully submitted,

                                                      /s/ Elisa P. McEnroe
                                                      Elisa P. McEnroe, PA Bar No. 206143
                                                      Matthew D. Klayman, PA Bar No. 319105
                                                      MORGAN, LEWIS & BOCKIUS, LLP
                                                      1701 Market Street
                                                      Philadelphia, PA  19103-2921
                                                      Telephone:    +1.215.963.5917
                                                      Facsimile:    +1.215.963.5001
                                                      elisa.mcenroe@morganlewis.com
                                                      matthew.klayman@morganlewis.com

                                                      *Attorneys for the Educational Commission for
                                                      Foreign Medical Graduates*

28
204a

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP,<br><br>            Plaintiff,<br><br>v.<br><br>EDUCATIONAL COMMISSION FOR<br>FOREIGN MEDICAL GRADUATES and<br>DR. WILLIAM W. PINSKY,<br><br>            Defendants. | Case No. 2:18-cv-05540-WB<br><br>Hon. Wendy Beetlestone |

## JOINT APPENDIX – TABLE OF CONTENTS

| Tab | Document | Page(s) |
|---|---|---|
| 1. | *About ECFMG: Statement of Values, Mission, and Purposes*, ECFMG, https://www.ecfmg.org/about/statement-of-values.html | JA0001-JA0002 |
| 2. | ECFMG Medical School Policy | JA0003 |
| 3. | ECFMG, *2019 Information Booklet* (last updated Sept. 13, 2018), https://www.ecfmg.org/2019ib/2019ib.pdf | JA0004-JA0089 |
| 4. | *University of Science, Arts & Technology (USAT), Montserrat: Not Accredited*, CAAM-HP | JA0090 |
| 5. | 2018 USAT Lecture Conference Schedule | JA0091 |
| 6. | Email to ECFMG (Aug. 8, 2018) | JA0092 |
| 7. | Email from C. Ostwalt to S. Mealy (Aug. 14, 2018) | JA0093-JA0097 |
| 8. | Letter from S. Mealey to Dr. O. Tulp (Aug. 21, 2018) | JA0098 |

| Tab | Document | Page(s) |
|---|---|---|
| 9. | Email from Dr. O. Tulp to S. Mealy & C. Konyk (Aug. 21, 2018) | JA0099-JA0100 |
| 10. | Email to S. Mealey (Aug. 22, 2018) | JA0101 |
| 11. | Letter from K. Corrado to Dr. O. Tulp (Sept. 14, 2018) | JA0102 |
| 12. | Emails between S. Mealey to C. Bede (Sept. 21-24, 2018) | JA0103-JA0107 |
| 13. | Letter from T. Swate to K. Corrado (Oct. 15, 2018) | JA0108-JA0112 |
| 14. | Letter from K. Corrado to Dr. O. Tulp (Oct. 18, 2018) | JA0113-JA0114 |
| 15. | Letter from L. Cover to Dr. O. Tulp (Oct. 18, 2018) | JA0115-JA0118 |
| 16. | Affidavits Attesting to Medical School Attendance and Education Received at USAT | JA0119-JA0121 |
| 17. | Email from C. Bede to S. Mealey and K. Corrado (Oct. 18, 2018) | JA0122-JA0123 |
| 18. | Letter from T. Swate to K. Corrado (dated Sept. 23, 2018) | JA0124-JA0126 |
| 19. | Letter from K. Corrado to T. Swate (Oct. 26, 2018) | JA0127-JA0129 |
| 20. | Emails between K. Corrado, W. Reil, C. Konyk, F. Katz, and T. Swate (Nov. 9-14, 2018) | JA0130-JA0133 |
| 21. | Emails between K. Corrado, W. Reil, C. Konyk, F. Katz, and T. Swate (Nov. 9-16, 2018) | JA0134-JA0136 |
| 22. | Email from K. Corrado to Dr. O. Tulp, W. Reil, and T. Swate (Jan. 10, 2019) | JA0137-JA0138 |

| Tab | Document | Page(s) |
|---|---|---|
| 23. | Nov. 28, 2018 Tr. of Dr. Tulp Irregular Behavior Proceeding before the Medical Education Credentials Committee | JA0139-JA0171 |
| 24. | Letter from Dr. W. Pinsky to Dr. O. Tulp (Dec. 14, 2018) | JA0172-JA0173 |
| 25. | Jan. 10, 2019 Declaration of Kara Corrado | JA0174-JA0175 |
| 26. | Jan. 24, 2019 Tr. of Preliminary Injunction Hrg before the Hon. Wendy Beetlestone | JA0176-JA0310 |
| 27. | Feb. 6, 2019 Tr. of Dep. Dr. William Pinsky | JA0311-JA0403 |
| 28. | Feb. 19, 2019 Defendants' First Interrogatories and Requests for Production to Dr. O. Tulp | JA0404-JA0415 |
| 29. | Mar. 27, 2019 Dr. Tulp's Responses to Defendants' First Interrogatories and Requests for Production | JA0416-JA0427 |
| 30. | Apr. 17, 2019 Tr. of Dep. Dr. Orien Tulp | JA0428-JA0547 |
| 31. | Apr. 19, 2019 Sponsor Note | JA0548 |
| 32. | May 2, 2019 Declaration of Kara Corrado | JA0549-JA0551 |

# About ECFMG

Overview | Statement of Values, Mission, and Purposes | Board of Trustees | ECFMG Leadership | Initiatives | History | Careers at ECFMG

## Statement of Values, Mission, and Purposes

### Values

The values of ECFMG are expressed in its vision statement:

"Improving world health through excellence in medical education in the context of ECFMG's core values of collaboration, professionalism and accountability."

### Mission

The charge of ECFMG is expressed in its mission statement:

"The ECFMG promotes quality health care for the public by certifying international medical graduates for entry U.S. graduate medical education, and by participating in the evaluation and certification of other physicians and care professionals nationally and internationally. In conjunction with its Foundation for Advancement of Interna Medical Education and Research (FAIMER), and other partners, it actively seeks opportunities to promote medic education through programmatic and research activities."

### Purposes

The purposes (goals) that actuate and accomplish ECFMG's mission are to:

- Certify the readiness of international medical graduates for entry into graduate medical education and healt systems in the United States through an evaluation of their qualifications.
- Provide complete, timely, and accessible information to international medical graduates regarding entry intc graduate medical education in the United States.
- Assess the readiness of international medical graduates to recognize the diverse social, economic and cultur needs of U.S. patients upon entry into graduate medical education.
- Identify the needs of international medical graduates to become acculturated into U.S. health care.
- Verify credentials and provide other services to health care professionals worldwide.
- Provide international access to testing and evaluation programs.
- Expand knowledge about international medical education programs and their graduates by gathering data, conducting research, and disseminating the findings.
- Improve international medical education through consultation and cooperation with medical schools and otł institutions relative to program development, standard setting, and evaluation.
- Improve assessment through collaboration with other entities in the United States and abroad.
- Improve the quality of health care by providing research and consultation services to institutions that evalua international medical graduates for entry into their country.
- Enhance effectiveness by delegating appropriate activities in international medical education to FAIMER.

208a

1/10/2019

Case: 19-2706 Document: 003113419289 Page: 192 Date Filed: 11/27/2019
Case 2:18-cv-05540-WB Document 31-4 Filed 09/03/19 Page 5 of 55 A0002

Back to top

Last updated December 16, 2011.

® Registered in the US Patent and Trademark Office.

Copyright © 1996-2018 by the Educational Commission for Foreign Medical Graduates. All rights reserved.

209a

# Irregular Behavior

## Policies and Procedures Regarding Irregular Behavior

### A. Policies Regarding Irregular Behavior

1. *Irregular behavior* includes all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs, or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG. Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG. Examples of irregular behavior include, but are not limited to, submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual; failing to comply with United States Medical Licensing Examination® (USMLE®) or ECFMG policies, procedures, and/or rules; falsification of information on applications, submissions, or other materials to ECFMG; taking an examination when not eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals.

2. The Medical Education Credentials Committee's determination of irregular behavior is sufficient cause for ECFMG to bar an individual from future examinations, to bar an individual from other ECFMG programs and services, to withhold and/or invalidate the results of an examination, to withhold an ECFMG Certificate, to revoke an ECFMG Certificate, or to take other appropriate actions for a specified period of time or permanently. ECFMG may report the Medical Education Credentials Committee's determination of irregular behavior to the USMLE Committee for Individualized Review, Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

3. If the Medical Education Credentials Committee determines that an individual engaged in irregular behavior, a permanent annotation to that effect will be included in the individual's ECFMG record. This annotation will appear on the ECFMG Certification Verification Service (CVS) and ECFMG Status Reports for the individual. If the individual

has an EPIC Portfolio, a permanent annotation will be included on all EPIC Reports with respect to that individual. Additional information explaining the basis for the determination of irregular behavior and the resulting action(s) will accompany every ECFMG Status Report, CVS Report, and EPIC Report, and may also be provided to legitimately-interested entities; this additional information may be provided, regardless of the date of the conduct or activity that comprises the irregular behavior. Notice of the Medical Education Credentials Committee's determination of irregular behavior is periodically reported to the ECFMG Board of Trustees.

## B. Procedures Regarding Irregular Behavior

1. After receipt of a report or other information suggesting irregular behavior on the part of an individual, ECFMG staff will review the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and feasible, staff will conduct a follow-up investigation to gather additional information.

2. If the individual is an examinee and the review referenced above will not be concluded until after the typical period for the reporting of exam scores, the examinee will be notified that the reporting of the exam scores in question is being delayed.

3. If ECFMG staff finds that there exists a reasonable basis to conclude that an individual may have engaged in irregular behavior, the matter will be referred to the Medical Education Credentials Committee. ECFMG may withhold services from the individual pending a determination from the Medical Education Credentials Committee. If the individual is an examinee, the examinee's exam scores will be withheld, if not already released, and the examinee may not be permitted to sit for subsequent examinations, nor will applications for examination be processed.

4. Using the individual's last known address, the individual will be advised in writing of the nature of the alleged irregular behavior and will be provided with a copy of the *Policies and Procedures Regarding Irregular Behavior*. If the alleged irregular behavior is related to a shared ECFMG and USMLE policy, the USMLE Program will also be advised of the allegation. The individual will be given an opportunity to provide written explanation and to present other relevant information. Any such written explanation or other relevant information must be received by ECFMG by the deadline set forth in ECFMG's writing to the individual. Submissions received after the deadline will be considered by the Medical Education Credentials Committee at its discretion. The individual may also request the opportunity to appear personally before the Medical Education Credentials Committee, and may be represented by legal counsel, if the individual so wishes. In instances in which the individual appears personally before the

Medical Education Credentials Committee, a stenographic or audio recording will be made of that portion of the proceedings during which the individual is in attendance. Any statements made by the individual during a personal appearance before the Medical Education Credentials Committee will be under oath.

5. Individuals who have been charged with irregular behavior who wish to request a deferral of the ECFMG Committee's review of the allegation must (1) submit the request in writing and (2) provide the reason for the request. If ECFMG staff determine that the granting of the request could have a material impact on the individual's opportunity to refute the allegation then staff, at its discretion, can grant the request and defer an ECFMG action for up to six (6) months. Unless the individual can demonstrate compelling circumstances, ECFMG staff should not grant more than two deferral requests. Notwithstanding the foregoing, if the individual charged with irregular behavior is ECFMG Certified, a candidate for residency, or practicing medicine, ECFMG staff will only grant the request for deferral if, in its sole discretion, ECFMG believes that public health and safety is not at risk. If the deferral request is granted, ECFMG will notify appropriate institutions and authorities of the individual's pending irregular behavior charge.

6. All pertinent information regarding the irregular behavior, including any explanation or other information that the individual may provide, will be provided to the Medical Education Credentials Committee. The Medical Education Credentials Committee, based on the information available to it, will determine whether the preponderance of the evidence indicates that the individual engaged in irregular behavior. If the Medical Education Credentials Committee determines that the individual engaged in irregular behavior, the Medical Education Credentials Committee will determine what action(s) will be taken as a result of the irregular behavior. ECFMG will notify the individual whether the Medical Education Credentials Committee determined the individual engaged in irregular behavior and of any action(s) taken pursuant thereto.

7. The Medical Education Credentials Committee's determination of irregular behavior and any action(s) taken pursuant thereto (a "decision" of the Medical Education Credentials Committee) may be appealed to the Review Committee for Appeals if the individual has a reasonable basis to believe the Medical Education Credentials Committee did not act in compliance with the Medical Education Credentials Committee Policies and Procedures or that the Medical Education Credentials Committee's decision was clearly contrary to the weight of the evidence before it. The notice of appeal must be received by ECFMG within thirty (30) days of the date on which the notification advising the individual of the Medical Education Credentials Committee's decision was mailed to

212a

the individual. The appeal of a decision of the Medical Education Credentials Committee is governed by the Rules of Appellate Procedure.

8. Petitions for reconsideration of a decision of the Medical Education Credentials Committee will be reviewed by the Medical Education Credentials Committee only in extraordinary cases. Any such petition must first be considered by ECFMG staff, who, after discussion with the Medical Education Credentials Committee Chair, may deny the request or place it on the agenda for consideration by the full Medical Education Credentials Committee at a regularly scheduled meeting. Absent the submission of newly discovered material evidence not previously available to the petitioner and, therefore, not available to the Medical Education Credentials Committee, petitions for reconsideration typically will be denied.

## C. Representative Examples of Irregular Behavior

Representative examples of allegations of irregular behavior and actions taken by the ECFMG Medical Education Credentials Committee include, but are not limited to, the following:

- **Providing false information on an application submitted to ECFMG**

  The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who provided false information on an application submitted to ECFMG as part of the certification process. In that application, the individual certified he was a student enrolled in medical school when, in fact, he previously had been dismissed from medical school and, therefore, was no longer a student.

  Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

- **Providing false information to ECFMG as part of the ECFMG On-line Authentication Process, which is a prerequisite to submitting an application for examination**

  The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who provided false information to ECFMG as part of the ECFMG On-line Authentication Process, which is used to obtain a USMLE/ECFMG Identification Number and is a prerequisite to submitting an application for examination. During the on-line authentication process, the individual certified he had

213a

A0033

not previously submitted an application for examination to ECFMG when he had not only previously applied for, but had taken examinations.

Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

- **Submitting a fraudulent medical diploma and providing false information on an application submitted to ECFMG**

The ECFMG Medical Education Credentials Committee reviewed an allegation of irregular behavior in connection with an individual who submitted a fraudulent medical diploma and provided false information on an application submitted to ECFMG.

Following review, the ECFMG Medical Education Credentials Committee determined the individual had engaged in irregular behavior and **took action to bar the individual from ECFMG Certification, thereby rendering the individual ineligible to apply for USMLE examinations leading to ECFMG Certification. A permanent annotation was added to the individual's ECFMG record.**

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

# Application for ECFMG Certification

To be eligible for ECFMG Certification, you must complete an Application for ECFMG Certification. The Application for ECFMG Certification consists of an on-line application available through ECFMG's Interactive Web Applications (IWA) and the Certification of Identification Form (Form 186) that must be completed and notarized using NotaryCam. Instructions on how to complete Form 186 using NotaryCam are included with the form. You must have your *USMLE/ECFMG Identification Number* before you can begin the Application for ECFMG Certification. For the current fee for submitting an Application for ECFMG Certification, see the Fees page of the ECFMG website.

As part of the Application for ECFMG Certification, you will be asked to confirm the name, date of birth, and gender in your ECFMG record. If this information is incorrect, you must have the information in your ECFMG record changed to reflect your correct name, date of birth, and/or gender before you can complete the Application for ECFMG Certification. Instructions for how to correct this information will be provided at the time of application.

If you are a medical school **student**, you will be asked to confirm that you are officially enrolled in a medical school located outside the United States and Canada that is listed in the *World Directory of Medical Schools (World Directory)* as meeting ECFMG eligibility requirements, and that the "Graduation Years" in the ECFMG note in your medical school's *World Directory* listing are listed as "Current." If you are a medical school **graduate**, you will be asked to confirm that you are a graduate of a medical school located outside the United States and Canada that is listed in the *World Directory* as meeting ECFMG eligibility requirements, and that your graduation year is included in the ECFMG note in your school's *World Directory* listing. See *Medical School Requirements*.

The Application for ECFMG Certification also will require you to confirm your understanding of the purpose of ECFMG Certification and release certain legal claims.

**The information submitted in your Application for ECFMG Certification will become a part of your permanent ECFMG record.**

An Application for ECFMG Certification will not be considered complete until ECFMG receives and processes both the on-line part of the application and the notarized Form 186 from NotaryCam. A notification will be sent to the e-mail address in your ECFMG record confirming receipt of the on-line part of your Application for ECFMG Certification. Once your Application for ECFMG Certification, including Form 186, has

215a

JA0035

been accepted by ECFMG, it typically remains valid throughout the certification process. If you are a student when you submit your Application for ECFMG Certification, you do not need to submit another one when you graduate. You can use OASIS or the MyECFMG mobile app to confirm that you have submitted an Application for ECFMG Certification and have a valid Form 186 on file.

Last updated September 13, 2018.

Copyright © 2018 by the Educational Commission for Foreign Medical Graduates (ECFMG®). All rights reserved.

| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN |
| vs. | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| EDUCATION COMMISSION FOR | : | CASE NO: 2:18-cv-05540-WB |
| FOREIGN MEDICAL GRADUATES | : | |
| and DR. WILLIAM C. PINSKY | : | HONORABLE WENDY BEETLESTONE |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Dr. Orien L. Tulp, through his undersigned counsel, submits this

memorandum of law in opposition to defendants' motion for summary judgment, and in

support thereof, it is averred as follows:

### INTRODUCTION: NOMENCLATURE DIFFICULTIES

There was no meeting or conference to develop a single joint appendix of exhibits

as the Court directed in paragraph 2A of its Scheduling Order. (Document 21, filed

01/25/19 by Judge Beetlestone, PA0615). There is a serious disconnect between the

parties with respect to defendants' alleged Joint Appendix and alleged Statement of

Undisputed Facts. Neither of plaintiff's counsel ever agreed to any Statement of

Undisputed Facts which is referenced as "SOF" in defendants' motion. It is undersigned

counsel's recollection that he saw this Statement of Undisputed Facts for the first time on

05/03/19, the date on which the motion for summary judgment was filed. Plaintiff never

agreed to defendants' Statement of Undisputed Facts or Joint Appendix.

There is no written indication, or otherwise, confirming that plaintiff agreed to

these so-called undisputed facts of defendants, which would be tantamount to agreeing to

defendants' motion for summary judgment. The same thing is true for the Joint Appendix.

Plaintiff's counsel was sent a proposed Joint Appendix of over 500 pages only two days

1

before the 05/03/19 deadline. He indicated to defense counsel that he needed time to read through these. For example, plaintiff would not agree to a joint appendix that omitted both the complaint and the answer to the complaint, as in the instant case.

Plaintiff is attempting to keep the nomenclature for exhibits, etc., as specified by the Court. Plaintiff's exhibits will start with Bates stamp PA0552 (Plaintiff's Appendix). A true and correct copy of an email on defendants' "Undisputed Facts" between plaintiff's co-counsel, Tommy Swate, Esquire, and defense co-counsel, Matthew D. Klayman, Esquire, is attached and incorporated as a plaintiff's exhibit, as well as the Reil-McEnroe letter. (PA0612-PA0614). The bottom line is that is is difficult to respond to a so-called Joint Appendix, which is not joint, and alleged issues of undisputed facts, which were never agreed to.

**CASE OVERVIEW**

An overview of the case can be found in paragraph 10 of the complaint, titled "Summary". It reads as follows:

> 10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [See Exhibit D] to coerce information from students. [Pinsky letter, See Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. See Exhibit B.

2

Paragraphs 11 through 20 of the complaint give a factual background of the

general allegations. They read as follows:

> 11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

> 12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. See Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". See Exhibit F.

> 13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

> 14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

> 15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

3

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

Instructive is paragraph 58 which reads:

The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:
  (a) banning Dr. Tulp without a proper hearing;
  (b) banning Dr. Tulp without an evidentiary basis;
  (c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
  (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
  (e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
  (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

4

Plaintiff references the phrase "due process" several times in the complaint (PA0559) and such due process is not restricted to constitutional due process under Section 1983. The Court, in its Opinion on the defendants' motion to dismiss, found that the only issue for summary judgment was whether there were material issues of fact concerning common law due process. Defendants mention, several times in their brief, that the Court has already found that there was due process and opportunity to be heard.

This is misleading. Where defendants get this notion is from the Court's directions after the injunction hearing in January. While there may have been, at the time, sufficient notice and opportunity to be heard as part of the reason for denying the injunction, this is not dispositive for the motion for summary judgment. Not only is there a heightened standard of proof for a preliminary injunction, but the elements for a preliminary injunction are different than those for a motion for summary judgment. The Court indicates that "common law due process is the only issue remaining" in the Opinion on the motion to dismiss. If the Court had already found that there was notice and opportunity to be heard, which is tantamount to common law due process, there would not be a motion for summary judgment.

It should also be mentioned that plaintiff pled jurisdiction both under federal question and under diversity of citizenship. The parties in this case reside in different states. (Complaint at paragraph 8, PA0560).

An administrative hearing was held by the ECFMG on 11/28/18 in Philadelphia. Only Dr. Tulp was present as a witness. (PA0670-PA0702). Procedurally, a complaint was filed on 12/24/18. Plaintiff then filed a motion for a preliminary and/or permanent injunction, which was answered by a memorandum of law by defendants. A hearing was

5

221a

held before the Court on 01/24/19 at which plaintiff Tulp, defendant Pinsky, and Kara

Corrado, an administrator and attorney for defendant, testified. The Court denied

plaintiff's motion for injunction, and then conducted a scheduling conference in Court.

Defendants filed a motion to dismiss, which was timely answered by plaintiffs,

and the Court ruled on the motion to dismiss on 03/26/19. In summary, the Court found

that the only claim which survived was plaintiff's cause of action for common law due

process against ECFMG, only. Dr. Pinsky was dismissed as a plaintiff. ECFMG then

answered plaintiff's complaint.

Discovery was conducted by the parties, including a videotaped deposition of Dr.

Tulp and a deposition of Dr. Pinsky. Plaintiff served two sets of discovery, including

interrogatories, requests for production of documents and admissions. Defendants served

written discovery in the form of interrogatories and requests for production of documents.

Very little, if any, new light was shed on the hearing of Dr. Tulp before the ECFMG,

which is preserved in the attached transcript. (PA0670-PA0702).

Defendants filed a motion for summary judgment of over 500 pages, most of

which consisted of attachments or exhibits in the form of a Joint Appendix, as well as a

Statement of Undisputed Material Facts. Plaintiff vigorously denies that the Appendix

was joint or that the statements were undisputed, but rather these documents were sent by

defendant to plaintiff shortly before their time for summary judgment was up.

**STANDARD FOR SUMMARY JUDGMENT**

In order to prevail on a motion for summary judgment, defendants must show,

taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact

finder could find for the plaintiff on an issue which is case determinative. *Thomas v.*

6

*Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991). Summary

judgment is inappropriate when credibility is at issue or different ultimate inferences can

be reached. FRCP 56(c). In addition to the evidence cited in Rule 56(c), a court may take

into account any material that would be admissible or usable at trial. *Wright and Miller,*

*Federal Practice and Procedure*, Section 2721 at 40 (2d. Ed. 1983). In evaluating a

summary judgment motion, the record will be viewed in the light most favorable to the

opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986).

Summary judgment is appropriate only if there is no genuine issue of material fact such

that a reasonable fact finder could find for the non-moving party, *Celotex Corp. v.*

*Cartarett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

It is argued that there are several issues of material fact which would mitigate

against summary judgment, and would require resolution by the trial court and or jury,

depending upon whether the relief sought by plaintiff requires a Court Order. For

example, it would be expected that the factual issues involving whether the ECFMG

hearing comported with common law due process, would be decided by a jury.

Summary judgment is governed by Federal Rule of Civil Procedure 56. Summary

judgment is appropriate when "there is no genuine dispute as to material fact and the

movant is entitled to judgment as a matter of law". A genuine issue of material fact exists

"if the evidence is such that a reasonable jury could return a verdict for the non-moving

party". *See Anderson v. Liberty Lobby, supra.*

It should be mentioned that defendants have included in their so-called joint

memorandum, letters from ECFMG, not in the record or exhibits. Such material should

not be considered.

In 15 years, the ECFMG had found no violations by USAT or Dr. Tulp. There were no allegations that students at USAT were not passing the ECFMG gatekeeping test at an unacceptable level. There were no requests by ECFMG to visit the USAT campus in Montserrat. The allegations about the branch campuses in Florida are anonymous allegations and should be entitled no weight, as such. The term "campus", let alone "branch campus", is never defined in ECFMG's rules and regulations. This is particularly important when there are commonly online courses offered by colleges and universities. ECFMG states that it wrote to the Florida Department of Education about accreditation for USAT in Florida. There is no indication that the Florida Department of Education ever did anything or made any findings as a result of this inquiry.

It should be underscored that the alleged, "false statements" concerning backdating of students' time spent at USAT are based on the student affidavits sent to ECFMG. The affidavits that plaintiff received were redacted, and plaintiff never received all of them. The students filled these out and there is no indication that it was in variance with the records from USAT, because the ECFMG never got the complete, unredacted records from USAT.

**COMMON LAW DUE PROCESS**

It is difficult to exercise the common law due process rights that require notice and an opportunity to be heard, if no witnesses or evidence are allowed to be presented at the hearing. Notice of a hearing is not meaningful if the hearing is a sham. The opportunity to be heard rings hollow when it is limited to 20 minutes and then the hearing is prematurely adjourned. This is precisely what the hearing with the ECFMG consisted of. Instructive is the Court's inquiry in this area of Kara Corrado. Ms. Corrado testified at

8

the "Injunction Hearing" on 01/24/19 before the Court. She is an attorney and an

administrator for the ECFMG, who was present at the hearing for Dr. Tulp on 11/28/18.

She was also involved in the correspondence in the case. The testimony of Ms. Corrado,

at the injunction hearing on 01/24/19, beginning at page 22, line 5, in response to the

questions of clarification by the **Court,** speak for themselves:

> **Q    Did the ECFMG Board of Physicians present any witnesses at the
> hearing?**
>
> **A    No, that — we don't normally present witnesses at our hearings.**
>
> **Q    I see, did the ECFMG board present any documents at the hearing?**
>
> **A    No, the documents are always produced before the hearing.**

**(emphasis supplied).**

(Corrado testimony, lines 5-12 inclusive, JA0197).

The unblemished record of Dr. Tulp and the USAT for the 15 years of its

existence, in addition to the societal interests involving competent doctors indicates that

there is an issue of material fact for a jury, as to whether the hearing afforded Dr. Tulp

crosses the threshold for common law due process.

The Court in its Opinion on the Motion to Dismiss references several cases

which are instructive on the parameters of the common law right of due process. Perhaps,

the case most like the instant case, is *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459

F.3D 705, 712 (6th Cir. 2006). This is a 6th circuit case which dealt with a law school

which sued the ABA arising out of allegations, inter alia, that Cooley was denied due

process for failing to accredit two proposed satellite campuses and imposing sanctions on

Cooley for operating without ABA approval. Although Cooley lost the case, this was

9

largely because the ABA provided substantial due process in the form of cross-examination, presentation of witnesses and documents, and the ABA assumed the burden to prove that Cooley had violated written ABA procedures. The point here is that the law school was given full notice and opportunity to be heard, in stark contrast to the sham hearing provided by the ECFMG.

Another case cited by the Court, which plaintiff believes is useful, is *Psi Upsilon of Philadelphia v. University of Pennsylvania*, 591 A.2d 755 (Pa. Super. 1991). This is a case that deals with the common law right of due process for a college fraternity whose members were involved in assaulting a non-fraternity member. The *Psi Upsilon* Court noted that where there is a matter of public interest, even though we have a private entity such as the University of Pennsylvania, that the basic principles of due process and fundamental fairness were required. Again, a hearing, in this case by faculty, where the fraternity was allowed to call their own witnesses and cross-examine witnesses against them, was allowed. Not only is this in stark contrast to the hearing provided by the ECFMG, but in terms of the public interest component of common law due process, it is asserted that the public interest involving USAT and the gate-keeping function involving certification of future doctors, far outweighs the situation involving the continuation of a fraternity.

Another case cited by the Court is *Prof'l Massage Training Ctr., Inc. v. Accreditation All. Of Career Sch. & Colleges*, 781 F.3d 161, 169 (4th Cir 2015). This case comes out of the Fourth Circuit Court of Appeals is relevant as a recent case in which a private accrediting agency denies reaccreditation for a massage training center.

10

226a

The case has some similarities to the instant case. While this case is persuasive only, excerpts from the case are particularly relevant:

"This is not to say however that accreditation agencies are wholly free of judicial oversight. They, like all bureaucratic entities, can run off the rails. We thus recognize, along with our sister circuits, that there exists a "common law duty on the part of 'quasi-public' private professional organizations or accreditation associations to employ fair procedures when making decisions affecting their members." *McKeesport Hosp. V. Accreditation Council for Graduate Medical Education*, 24 F.3d 519., 534-35 (3d Cir. 1994); *see also Cooley*, 459 F. 3d at 711-12; *Wilfred*, 957 F. 2d at 214; *Med. Inst. Of Minn.*, 817 F.2d at 1314 (finding that accreditation agencies "nevertheless must conform [their] actions to fundamental principles of fairness'); *Marjorie Webster Jr, Coll., Inc. V. Middle States Ass'n of Colls. & Secondary Schools., Inc.*, 432 F.2d 650, 655-58 (D.C.Cir.1970).

That the Courts will not uphold accreditation decisions if "arrived at arbitrarily and without sufficient evidence" The duty was meant to operate as a "check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing." *Cooley*, 459 F. 3d at 712. In may ways, the ECFMG used its sweeping "irregular behavior" power and control of the World Directory of Medical Schools (WDMS) website to act like a monopolistic accrediting agency.

In the case of *Falcone v. Middlesex Cnty. Med. Soc.*, 170 A.2d 791, 800 (N.J. 1961), the Supreme Court of New Jersey in 1961, found in favor of plaintiff who was an osteopathic physician who sought to be admitted to a County Medical Society. The

11

227a

County Medical Society denied plaintiff admission because he did not have a traditional M.D. degree. The Court found that plaintiff made out a case requiring that he be admitted, otherwise it would be difficult for him to practice medicine. The Court makes a point here that the Medical Society had monopolistic power to destroy a medical career and that there are substantial public interests involved here.

None of the above-cited cases involve a hearing like the instant case. It is undisputed that Dr. Tulp had a longstanding and significant interest at stake in the ECFMG administrative hearing; yet the ECFMG placed the burden of proof on Dr. Tulp, the non-charging party. (ECFMG transcript at page 6, PA0675). In all of the above cases, the burden was placed on the charging party.

**DAMAGES**

In terms of damages, paragraphs 29 and 30, together with the prayer of the complaint, set forth not only injunctive and equitable relief, but also the tangible and intangible effects of the ECFMG on Dr. Tulp. Plaintiff requests that the finding of "irregular behavior" be reversed. It is too late now to have another hearing, since USAT has basically been destroyed by the actions of the ECFMG. Dr. Tulp indicated in his deposition with regards to damages the following: when the ECFMG posted a warning on the WDOMS before the hearing with ECFMG. At that time, virtually all payments to USAT stopped and there was a mass exodus of students. Dr. Tulp indicated that ECFMG cost USAT over a thousand students and their medical careers. (Tulp deposition at JA0511). Dr. Tulp also indicated "The uncollectible tuitions as of October 1st up to, you know, from at that point over $41.2 million. These are students that are paying a little bit each month as they could, waiting to get their documents." (Tulp deposition at JA0513).

12

Plaintiff is requesting not only Court-ordered relief in the form of an injunction or

equitable relief, but damages from a jury, as well. Dr. Tulp testified that he was a 50%

owner of the ECFMG, based in Montserrat. As a result of the actions of the ECFMG, put

on its website on two occasions before Dr. Tulp's hearing, and the subsequent finding of

irregular behavior, plaintiff's interests in USAT has been vastly diminished. That plaintiff

did not choose to draw a salary for his past tenure as president of USAT, does not

abrogate the fact that he has lost the present and future right to draw a salary. In addition,

it is argued that violation of due process rights particularly when intentional, give rise to

nominal damages and attorney fees.

### ECFMG FUNCTION

Ecfmg is an organization sponsored by state medical organizations, including the

federation of state medical boards. Through its process, it gives students what is a license

to apply for a residency program. A residency program is a certified program that trains

students who have graduated from medical school and who have taken a series of tests

known as the United States Medical Licensing Examination. The various state boards

have given the power to test and certify international medical graduates as competent to

undertake residency training. New Jersey requires a foreign

medical graduate to demonstrate to the New Jersey State Board of Medical Examiners

that he or she holds a certificate issued by the ecfmg which was granted following the

attainment of a passing score on an acceptable examination and verification of his or her

credentials by the ecfmg.

ECfmg issues a de facto license (certification) which renders a foreign medical

graduate eligible to apply for admission to a residence program in the United States.

13

229a

Without this license, a foreign medical graduate can not apply for a residency program. Without training in a residency program, the foreign medical graduate can not obtain a state medical license.

### CONCLUSION

Defendants have submitted a motion of over 500 pages with attachments, in an effort to obfuscate the main issue in this case, as set forth in the Court's Opinion on the motion to dismiss: Did defendant ECFMG deny plaintiff Dr. Orien Tulp his right of common law due process, in finding plaintiff culpable of "irregular behavior" and imposing sanctions on Dr. Tulp, USAT and its students? These sanctions essentially destroyed the 15-year career of plaintiff as a medical school administrator, as well as USAT as a viable institution. Dr. Pinsky, in his letter of 12/14/18 (PA0552) also imposed onerous sanctions on the students of USAT. Neither USAT the institution, nor its students, were allowed to testify at the hearing of Dr. Tulp on 11/28/18.

The transcript of the hearing for Dr. Tulp (PA0670-PA0702), before the ECFMG, indicates that it does not comport with fundamental fairness, including notice and opportunity to be heard. Nothing has changed, in terms of the summary judgment record on this issue, since the Court concluded in its Opinion that there was a plausible claim for deprivation of common law due process. Notice and opportunity to be heard are hollow if the committee members for the ECFMG received the defendants' evidence **before** the hearing.

> 1. The hearing before the ECFMG was a sham, without any evidence in the administrative record, or witnesses and cross-examination allowed.
>
> 2. The 20-minute hearing for Dr. Tulp was terminated prematurely by counsel for the ECFMG without plaintiff making any statement.

14

3. The ECFMG put notices on the WDOMS, an Internet site which appears to be controlled by the ECFMG, in each of the two months before the hearing for Dr. Tulp, which implied that plaintiff had already been found culpable.

4. Anonymous charges about a branch campus were leveled against USAT, but no site visit by the ECFMG was ever documented.

5. Allegations based on redacted affidavits, allegedly filled-out by USAT students under the threat of punishment by the ECFMG, were used against Dr. Tulp to suggest backdating of attendance by students, but the ECFMG never attempted to compare these records to the original records at USAT.

All of these allegations appear to be contested by the ECFMG and they constitute issues of material fact, which should be determined by a jury. The hearing by ECFMG for Dr. Tulp resembled not so much an adversary process, but a preordained result in which Dr. Tulp had basically a right of "allocution" only. The core purpose of the hearing appeared to be that Dr. Tulp would be given a maximum of 20 minutes to address the committee in an attempt to persuade them that he was innocent, in light of the investigation that the ECFMG had conducted before the hearing.

Respectfully submitted,

William C. Reil

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
06/03/19
For: Tommy Swate, Esquire

| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
|---|---|---|
| | : | COURT FOR THE EASTERN |
| vs. | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| EDUCATION COMMISSION FOR | : | CASE NO: 2:18-cv-05540-WB |
| FOREIGN MEDICAL GRADUATES | : | |
| and DR. WILLIAM C. PINSKY | : | HONORABLE WENDY BEETLESTONE |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of

Defendants' Motion for Summary Judgment and Plaintiff's Answer thereto, it is hereby

ORDERED that Defendants' Motion is DENIED.


By the Court:


_____
Honorable Wendy Beetlestone
United States District Court Judge

| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN |
| vs. | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| EDUCATION COMMISSION FOR | : | CASE NO: 2:18-cv-05540-WB |
| FOREIGN MEDICAL GRADUATES | : | |
| and DR. WILLIAM C. PINSKY | : | HONORABLE WENDY BEETLESTONE |

### STATEMENT OF DISPUTED MATERIAL FACTS IN SUPPORT OF PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1. The administrative hearing by he ECFMG on 11/28/18 for Dr. Tulp was fundamentally unfair and violated common law due process. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

2. Defendants' violated Dr. Tulp's right to common law due process by publishing on the WDOMS before his hearing. This impacted the hearing because it implied that Dr. Tulp was guilty of irregular behavior or misconduct before he had his hearing. (PA0556-PA0558, PA0573).

3. There is no evidence, in the record of the administrative hearing of Dr. Tulp, from which the ECFMG could have found him guilty of irregular behavior. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

4. ECFMG limited Dr. Tulp to 20 minutes for presentation and the hearing was unilaterally terminated by Elisa P. McEnroe, Esquire, without any evidence put in to the record. (PA0701, ECFMG Hearing; Complaint paragraph 15, PA0562).

5. Dr. Tulp never received any indication from ECFMG, nor did their rules indicate, who had the burden of proof at the administrative hearing. Accordingly, Dr.

Tulp did not know whether ECFMG intended to present witness and evidence that he could cross-examine. At the hearing, Dr. Tulp was informed that he had the burden of proof. (PA0675). See also spreadsheet of student losses at USAT. (PA0663-PA-0665).

6. ECFMG serves a public function by certifying International Medical Graduates. Not reasonably disputed.

7. The policy of the ECFMG is not to present witnesses or documents at hearings. (Injunction Hearing, testimony of Corrado, lines 5-12, JA0197).

8. In terms of damages, paragraphs 29 and 30, together with the prayer of the complaint, set forth not only injunctive and equitable relief, but also the tangible and intangible effects of the ECFMG on Dr. Tulp. Plaintiff requests that the finding of "irregular behavior" be reversed. It is too late now to have another hearing, since USAT has basically been destroyed by the actions of the ECFMG. Dr. Tulp indicated in his deposition with regards to damages the following: when the ECFMG posted a warning on the WDOMS before the hearing with ECFMG. At that time, virtually all payments to USAT stopped and there was a mass exodus of students. Dr. Tulp indicated that ECFMG cost USAT over a thousand students and their medical careers. (Tulp deposition at JA0511). Dr. Tulp also indicated "The uncollectible tuitions as of October 1st up to, you know, from at that point over $41.2 million. These are students that are paying a little bit each month as they could, waiting to get their documents." (Tulp deposition at JA0513).

9. According to ECFMG procedure, no witnesses or evidence were presented at the administrative hearing of Dr. Tulp. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

10. The ECFMG refused to define "campus" when asked prior to the 11/28/19 hearing, but insisted that Dr. Tulp define it for the ECFMG. (PA0668).

11. Nowhere in the rules or regulations of the ECFMG, is it stated who has the burden of proof at the hearing. Not reasonably disputed.

12. The ECFMG conducted the administrative hearing as if Dr. Tulp had the burden to prove his innocence without any evidence introduced against him. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
06/03/19
For: Tommy Swate, Esquire

| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
| | : | COURT FOR THE EASTERN |
| vs. | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| EDUCATION COMMISSION FOR | : | CASE NO: 2:18-cv-05540-WB |
| FOREIGN MEDICAL GRADUATES | : | |
| and DR. WILLIAM C. PINSKY | : | HONORABLE WENDY BEETLESTONE |

## PLAINTIFF'S APPENDIX – TABLE OF CONTENTS

| Tab | Document | Page(s) |
|-----|----------|---------|
| 1. | Email from Dr. Pinsky to Dr. Tulp (12-14-18) | PA0552-PA0553 |
| 2. | Email from K. Corrado, J.D. to Dr. Tulp (10-18-18) | PA0554-PA0555 |
| 3. | Sponsor Note from ECFMG on WDOMS (11-27-18) | PA0556-PA0557 |
| 4. | Email of Sponsor Note, as above from Dr. Tulp (02-10-19) | PA0558 |
| 5. | Plaintiff's Complaint with Exhibits | PA0559-PA0590 |
| 6. | Defendant's Answer to Complaint and Affirmative Defenses | PA0591-PA0611 |
| 7. | Swate-Klayman Email Chain on "Undisputed Facts" (05-03-19 and 05-06-19) | PA0612-PA0613 |
| 8. | Email to McEnroe from Reil on (Joint) Appendix and Stipulations (05-02-19) | PA0614 |
| 9. | Scheduling Order of Court (01-25-19) | PA0615-PA0616 |

| 10. | Defendants' Responses to Plaintiff's Discovery Requests | PA0617-PA0662 |
|-----|---------------------------------------------------------|---------------|
| 11. | Spreadsheet of Student Loss at USAT (06-03-19) | PA0663-PA0665 |
| 12. | Affidavit of Dr. Tulp (06-03-19) | PA0666-PA0668 |
| 13. | ECFMG Sponsor Note from Dr. Tulp (05-26-19) | PA0669 |
| 14. | Transcript of ECFMG Hearing for Dr. Tulp (11-28-18) | PA0670-PA0702 |

Respectfully submitted,

William C. Reil

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
06/03/19
For: Tommy Swate, Esquire

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was served

upon all other parties or their counsel of record by:

> Regular First Class Mail
>
> Facsimile
>
> Certified Mail
>
> Hand-Delivered
>
> X    Electronic Filing
>
> X    Email

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
06/03/19
For: Tommy Swate, Esquire

 **ECFMG** | EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

December 14, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

Dr. Orien L. Tulp
December 14, 2018
Page 2 of 2

> *In 2018, ECFMG determined that a certain official of the University of Science Arts & Technology engaged in irregular behavior in connection with providing false information to ECFMG.*

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

Sincerely,

William W. Pinsky, MD FAAP FACC
President and CEO

CC: Tommy Swate, Esq. swatemd@aol.com
    William Reil, Esq. billreillaw@gmail.com

Encl: As noted.

 | EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES | 3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

October 18, 2018

VIA EMAIL: usat.edu@gmail.com

Orien Tulp, President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston, MONTSERRAT

Dear Dr. Tulp,

This is a follow-up to my August 21 and September 14, 2018 letters to you. As you know, it has recently come to the attention of the Educational Commission for Foreign Medical Graduates (ECFMG) that USAT in Montserrat is operating a satellite (or branch) campus in Miami, Florida. ECFMG also understands that USAT is operating satellite campuses in Texas and Puerto Rico.

As I previously advised you, in order for students and graduates of an international medical school, such as USAT, to have eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from the appropriate government authority in the branch campus country that the branch campus is authorized to operate as a medical school in such branch campus country, among other requirements.

In light of this policy, ECFMG requested that USAT provide documentation from the United States Department of Education and/or the Florida Department of Education confirming that USAT's Miami branch campus is authorized to operate as a medical school in the United States. This documentation should cover the entire time period during which the USAT Miami branch campus has been in operation. To date, ECFMG has no record of receipt of such documentation from you or USAT.

**Therefore, effective today, ECFMG's Sponsor Note in the *World Directory of Medical Schools* (*World Directory*) for USAT has been updated to reflect that 2019 and later graduates of USAT are no longer eligible to apply for ECFMG Certification or USMLE examinations as a step toward ECFMG Certification.**

ECFMG is also writing to your current students to advise them that, if they graduate from USAT in 2019 or later, they will be ineligible for ECFMG Certification and ineligible to register for USMLE examinations as a step toward ECFMG Certification after December 31, 2018. We are also letting them know that in order to become eligible for ECFMG Certification (or to register for USMLE examinations as a step toward ECFMG Certification) on or after January 1, 2019, the United States Department of Education and/or the Departments of Education for Florida, Texas, and Puerto Rico

241a

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 2

must provide ECFMG with documentation that USAT is authorized to operate as a medical school in the United States. Otherwise, the students must transfer to and/or be officially enrolled in a medical school that is listed in the *World Directory* as meeting eligibility requirements for ECFMG Certification. In addition, the "Graduation Years" in the ECFMG note on the Sponsor Notes tab of the *World Directory* listing for the student's medical school must be listed as "Current" at the time he/she applies and on his/her test day.

USAT's 2018 and earlier graduates will continue to remain eligible to apply to ECFMG for ECFMG Certification.

Should the United States Department of Education and/or the Departments of Education for Florida, Texas, and Puerto Rico provide ECFMG with documentation that USAT is authorized to operate as a medical school in the United States, ECFMG will be happy to review USAT's eligibility for an ECFMG Sponsor Note in the *World Directory*.

Sincerely,

*Kcorrado*

Ms. Kara Corrado, JD
Vice President for Operations

 Gmail

Bill Reil <billreillaw@gmail.com>

**sponsor notes from WDOMS listing of USAT input by ECFMG: SEE NOTES IN RED/**

1 message

Orlen Tulp <o.tulp@usat.edu>                                          Tue, Nov 27, 2018 at 12:08 PM
To: swatemd@aol.com, billreillaw@gmail.com, Carla Konyk - Director/Student Accounts <c.konyk@usat.edu>

| School Details | Contact Information | Program Details | Sponsor Notes |

The information below has been provided by the World Directory's sponsoring organizations.

**Canada**

- Unless indicated otherwise, Medical provincial/territorial medical regulator Canada. For more information about Registration in Canada click here.

  Medical degrees obtained from this m FROM 2003 - 2018

- À moins d'avis contraire, les diplôme médecins dans les provinces et territ Canada qui œuvre dans le domaine telles que définies dans les normes r

  Les diplômes de médecine de cette f DE 2003 - 2018

**Educational Commission for Foreign Me**

- Students and graduates of this medi

- Unless indicated otherwise, Medical degrees obtained from this medical school are acceptable to the provincial/territorial medical regulatory authorities in Canada, and therefore acceptable to all medical organizations in Canada. For more information about the acceptable medical schools as defined in the Model Standards for Medical Registration in Canada click here.

  Medical degrees obtained from this medical school are acceptable to Canada between the following period: FROM 2003 - 2018

- À moins d'avis contraire, les diplômes de médecine de cette faculté de médecine sont acceptables aux ordres des médecins dans les provinces et territoires du Canada, et par conséquent acceptables à toute autre organisation au Canada qui œuvre dans le domaine médical. Pour plus d'information au sujet des facultés de médecine acceptables, telles que définies dans les normes modèles pour l'inscription médicale au Canada, cliquez ici.

  Les diplômes de médecine de cette faculté de médecine sont acceptables pour le Canada entre la période suivante: DE 2003 - 2018

**Educational Commission for Foreign Medical Graduates (ECFMG), United States of America**

- Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certification and for examination, provided that:
  - For medical school students officially enrolled in this school, the graduation years are listed below as "current".
  - For graduates of this medical school, their graduation year is included in the graduation years listed below.

243a

Graduation Years:
2003 - 2018

○ All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detailed information.

- **Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**

- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210

 Gmail

Bill Reil <billreillaw@gmail.com>

---

## sponsor note as it appeared until early January 2019
1 message

Sun, Feb 10, 2019 at 7:46 PM

**Orien Tulp** <o.tulp@usat.edu>
To: Bill Reil <billreillaw@gmail.com>, swatemd <swatemd@aol.com>, Carla Konyk - Director/Student Accounts
<c.konyk@usat.edu>

- Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.

- Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.

- Note: In 2018, ECFMG determined that certain staff / officials of the University of Science, Arts and echnology (USAT)  engaged in irregular behavior in connection with providing false information and documents to ECFMG.

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                   ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## COMPLAINT – CIVIL ACTION

### PARTIES

1.  The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO 80033. At all times material herein, plaintiff was President of the University of Science, Arts, and Technology ("USAT"), and had an ownership interest in the University. USAT is located in Montserrat, but its US administrative office is located at the address in the caption, and students take classes in Montserrat and the US via a distance education format.

2.  A defendant is the Educational Commission for Foreign Medical Graduates, hereafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their mission statement, the ECFMG is an organization which purports to certify medical school students and graduates to practice medicine in the United States.

Case: 19-2706     Document: 003113419289     Page: 230     Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 9 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 2 of 32

3. A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG, whose address for service of process is indicated in the caption. *See* Exhibit A, attached and incorporated herein.

4. ECFMG is an organization sponsored by various medical organizations, including the Federation of State Medical Boards. Through the ECFMG's certification process, it gives medical students and medical graduates a certification of eligibility (essentially a license) to apply for a ACGME [Accreditation Council for Graduate Medical Education] certified residency program of postgraduate specialty training that can lead to medical licensure of the applicant. A residency program is a certified program that trains students who have graduated from a medical school and taken a series of examinations or tests administered by way of the United States Medical Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

5. The action of the ECFMG is in granting authority to apply for a residency program is state action. The ECFMG's authority, which is in essence a license to apply for a residency program, has a close nexus to the various state medical boards. Without the ECFMG certificate, the ACGME postgraduate programs will not permit the applicant to start the training that will in essence allow the gate to be closed to obtaining a medical residency and eventual license to practice medicine in the USA. Without the residency training, the medical graduate cannot obtain a full unrestricted medical license. The state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure. State action is established because of this delegation of screening power. *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351.

6. The ECFMG has placed itself in a position of interdependence with the state medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG reports to the state medical boards but also reports to the National Practitioner Data Bank. The ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority*, 365 U.S. 715, 725 (1961).

7. Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

## JURISDICTION AND VENUE

8. The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

9. Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

## SUMMARY

10. In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit D] to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

## GENERAL ALLEGATIONS

11. ECFMG sent to USAT a letter implying that the school would be closed on or about 01/01/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

12. On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". *See* Exhibit F.

13. USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

14. Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of

Case: 19-2706    Document: 003113419289    Page: 232    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 11 of 151
Case 2:18-cv-05540-WB    Document 1    Filed 12/24/18    Page 4 of 32

alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

18. The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

19. There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

20. The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

## FIRST CAUSE OF ACTION
### Plaintiff v. ECFMG

21. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

22. This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

23. The Board allegedly refused to release scores of necessary medical exams to students and graduates of USAT, de facto, closing the University.

24. The Board published, in the World Directory of Medical Schools, a warning to students that it would not recognize USAT with respect to necessary medical qualifying examinations after January 1, 2019. *See* Exhibit B.

25. The Board sent illegal "affidavits" to students in an attempt to intimidate them from continuing as students at USAT. These alleged affidavits threatened medical students with perjury, as well as "irregular behavior", and also directed the students to provide certain documentary evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process, and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena duces tecum" without first having a legal proceeding. The Board had no power to issue these so-called affidavits. These affidavits are also a violation of Federal Education Records Protection Act (FERPA). Students are predominantly US citizens and are entitled to such protection under FERPA.

26. The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as President of the University by discouraging students from registering or continuing their education at USAT, including verbal recommendations from ECFMG case workers. The Board issued "affidavits" and threatened to find students of USAT guilty of "irregular behavior".

27. There was no hearing before the students of USAT were sent emails by the ECFMG telling them that they may have been assigned "irregular behavior" and that their scores would not be released to medical institutions to be accepted for residency applications or other ECFMG services.

28. ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity

Case: 19-2706   Document: 003113419289   Page: 234   Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 13 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 6 of 32

29. As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

30. Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

32. This cause of action is for violation of due process by the ECFMG (the Board).

33. The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

34. The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

35. The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

36. The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of

Case: 19-2706    Document: 003113419289    Page: 235    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 14 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 7 of 32

affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Com., State Bd. Of Medicine* 529 Pa. 535 (1992).

37. ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia*, because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

38. The Board has acted as a governmental entity, and is estopped from denying the same.

39. When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

40. Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

41. The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

42. As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

44. This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

45. As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

Case: 19-2706   Document: 003113419289   Page: 236   Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 15 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 8 of 32

(a) representing itself as an official governmental agency;
(b) distributing affidavits to intimidate USAT students, which affidavits did not have a disclaimer or conform to law;
(c) placing misleading information about USAT into the World Directory of Medical Schools without notice, and which was designed to intimidate students and to effectively force closure of USAT;
(d) using illegal affidavits whose purpose was to gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp, all of which was in violation of FERPA, the Family Educational Rights and Privacy Act;
(e) violating FERPA by not receiving the requisite consent of students to their educational records.

46. As indicated in the prior counts, the Board has held itself out as a governmental agency. The Board has never indicated to those that it dealt with, in particular the students, that it is not an official governmental agency.

47. Accordingly, the Board is estopped by its conduct to deny that it is required to show due process, as if it were a governmental entity.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

## FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

49. This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky, which is attached and incorporated as Exhibit A.

50. Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG, heretofore described.

51. On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing him as Professor and President of USAT at its main location in Montserrat.

52. In this letter, Dr. Pinsky indicated, *inter alia*, essentially, that the ECFMG Committee had determined that, for a minimum period of five years, from the date of the letter, that Dr. Tulp was banned from submitting any documents or having any dealings with the ECFMG on behalf of USAT or otherwise.

253a

53. This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

54. This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

55. This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

56. Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

57. The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

58. The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

   (a) banning Dr. Tulp without a proper hearing;
   (b) banning Dr. Tulp without an evidentiary basis;
   (c) forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;
   (d) requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;
   (e) terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;
   (f) finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

Case: 19-2706    Document: 003113419289    Page: 238    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 17 of 151
Case 2:18-cv-05540-WB    Document 1    Filed 12/24/18    Page 10 of 32

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorney fees.

Respectfully submitted,

William C. Reil

William C. Reil, Esquire
FOR: Tommy Swate, Esquire
Attorneys for Plaintiff
File I.D. No. WCR1962
Attorney I.D. No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635

December 24, 2018

Case: 19-2706    Document: 003113419289    Page: 239    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 18 of 151
Case 2:18-cv-05540-WB    Document 1    Filed 12/24/18    Page 11 of 32

# EXHIBIT A

 **ECFMG** | EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

December 14, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to inform you that the ECFMG Medical Education Credentials Committee ("ECFMG Committee") has completed its review of the allegation that you, individually and in your capacity as an official of University of Science, Arts & Technology (USAT) Faculty of Medicine, Montserrat, engaged in irregular behavior in connection with providing false information to ECFMG. Specifically, you provided false information to ECFMG when you (1) notified ECFMG that USAT does not operate a branch campus in Miami, FL and (2) certified to the attendance dates of several USAT students and graduates when ECFMG has information that these students were not attending USAT during some of the time periods to which you certified.

In advance of the review, the members of the ECFMG Committee were provided with the documents listed in ECFMG's October 18, 2018 letter and ECFMG's November 14, 2018 emails. A hardcopy of the complete file was also sent to your attorney, Mr. Tommy Swate, on November 16, 2018 via Federal Express. On November 16, 2018, Mr. Swate acknowledged receipt of this complete file. You made a personal appearance before the ECFMG Committee accompanied by your legal counsel, Mr. Swate. A copy of the transcript of the proceedings will be sent to you as soon as it is available.

The ECFMG Committee considered the documentation presented to it and Mr. Swate's statements. Following careful review, the ECFMG Committee determined that you engaged in irregular behavior in connection with providing false information to ECFMG.

The ECFMG Committee has determined that ECFMG will not accept any documents signed / certified by you for ECFMG on behalf of USAT, or any other medical school, for a minimum of five years from today; thereafter, the prohibition shall end only upon a petition to ECFMG conclusively demonstrating to the satisfaction of the ECFMG Committee a familiarity with, and willingness to adhere to, ECFMG polices. Your ECFMG Medical School Web Portal (EMSWP) account will remain deactivated.

In light of the ECFMG Committee's findings, the ECFMG Sponsor Note for USAT in the *World Directory of Medical Schools (World Directory)* will be updated as follows:

257a

Dr. Orien L. Tulp
December 14, 2018
Page 2 of 2

> *In 2018, ECFMG determined that a certain official of the University of Science Arts & Technology engaged in irregular behavior in connection with providing false information to ECFMG.*

This note will remain in USAT's ECFMG Sponsor Note in the *World Directory* for five years, regardless of whether USAT changes its name, ownership, and/or location.

Additionally, in accordance with the ECFMG *Policies and Procedures Regarding Irregular Behavior*, a permanent annotation that you engaged in irregular behavior will be included in your ECFMG record. ECFMG may report the ECFMG Committee's determination of irregular behavior to the Federation of State Medical Boards of the United States, U.S. state and international medical licensing authorities, directors of graduate medical education programs, and to any other organization or individual who, in the judgment of ECFMG, has a legitimate interest in such information.

As noted in the enclosed ECFMG *Rules of Appellate Procedure*, decisions of the ECFMG Medical Education Credentials Committee may be appealed within the 30-day time period specified.

Sincerely,

William W. Pinsky, MD FAAP FACC
President and CEO

CC: Tommy Swate, Esq. swatemd@aol.com
William Reil, Esq. billreillaw@gmail.com

Encl: As noted.

# EXHIBIT B

# University of Science, Arts & Technology (USAT) Faculty of Medicine

Montserrat

School Details    Contact Information    Program Details    Sponsor Notes

The information below has been provided by the World Directory's sponsoring organizations.

- Students and graduates of this medical school are eligible to apply to ECFMG for ECFMG Certification and for examination, provided that:
  - For medical school students officially enrolled in this school, the graduation years are listed below as "current".
  - For graduates of this medical school, their graduation year is included in the graduation years listed below.
    Graduation Years:
      2003 - 2018
  - All other eligibility requirements are met. Refer to the ECFMG Information Booklet for detailed information.

- **Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**

- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

PA 0573

# EXHIBIT C



Case: 19-2706     Document: 003113419289     Page: 246     Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 25 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 18 of 32



MONTSERRAT

A.D. 2003

A G R E E M E N T

THIS AGREEMENT made the .......day of ......September...... 2003 between:

THE GOVERNMENT OF MONTSERRAT (hereinafter referred to as "the Government" which expression shall where the context so admits include its designs and successors) whose address for service is THE CHIEF MINISTER'S OFFICE, BRADES, MONTSERRAT and MEDICAL COLLEGE OF LONDON (MCL), UNIVERSITY OF SCIENCE, ARTS AND TECHNOLOGY (Montserrat) LTD (USAT), a duly incorporated company (hereinafter referred to as "the MCL-USAT" which expression shall where the context so admits include its designs and successors) whose address is BRADES, Montserrat.

WITNESSETH AS FOLLOWS: -

1.    DEFINITIONS

      In this agreement the following expressions shall have the meaning herein ascribed to them.

      "Agreement Period" means a period of 20 years commencing with the date on which this agreement is executed. The MCL-USAT will have the option to review and renew the Agreement.

      "Contributions" means a contribution payable to the Social Security Fund.

      "Expatriate Staff" means staff recruited from overseas who are not citizens of Montserrat or are not ordinarily resident in Montserrat for tax purposes.

      "USAT" means UNIVERSITY OF SCIENCE, ART AND TECHNOLOGY (MONTSERRAT) LTD.

2.    TAX EXEMPTIONS

(1)

3.    WORK PERMIT FOR EXPATRIATE EMPLOYEES

      3.1   MCL-USAT will at the beginning of each year of the agreement period provide a list of names of its academic and administrative staff requiring work permits and in addition shall supply all relevant information needed for the processing of the work permits.

      3.2   Government of Montserrat shall issue the necessary work permits and visas to enable MCL-USAT staff, students and families to remain on island for the period of their employment or study subject to the significance of any information provided on Police Records.

7.2   MCL-USAT will ensure that income tax is paid in respect of each of its employees.

8.   GENERAL

8.1   The Government undertakes to establish a registry to record certification obtained by medical graduates of MCL-USAT.

8.2   The Government of Montserrat will at the request of MCL-USAT request the listing of MCL-USAT with the World Directory of Medical Schools published by WHO, Geneva, Switzerland.

8.13   MCL-USAT agrees to maintain operations in Montserrat with regard to the Medical and other Programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not affect any permission granted to the MCL-USAT by the Government of Montserrat.

8.14   The MCL-USAT may grant academic and professional degrees to only qualified students of the institution and commensurate with an institution of higher education who have completed the academic and professional requirements of the degree for which they have been considered, and who have been recommended for such by the faculty and directors of MCL-USAT. The specific degrees authorized shall include Doctor of Philosophy (PH.D.), the Doctor of Medicine (M.D.) or Bachelor of Surgery (M.B.B.S), Bachelor of Dental Surgery (B.D.S.), the Master of Public Health (M.P.H.), the Master of Science (M.Sc.), the Master of Arts (M.A), the Bachelor of Science (B.Sc.) and the Bachelor of Arts (B.A.).

IN WITNESS whereof the parties or the duly authorized representatives of the parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Before and in the presence of:

Esco Henry-Greer
Attorney General

Dr. Orien L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Esco Henry-Greer
Attorney General

8.5    At the end of the agreement period MCL-USAT shall have the option to extend the agreement for a further period to be determined by MCL-USAT and GOM.

8.6    Notwithstanding the above, the offer included in this agreement shall be valid for a period of one (1) year from the date of this agreement after which the terms and conditions may be subject to re-negotiation however, if MCL-USAT makes any substantial property investment or undertakes any major contractual obligation referable to and in reliance on this Agreement, then the terms set out shall become final and binding on the Government.

IN WITNESS whereof the parties or the duly authorised representative of the parties have signed this Deed on the day first above written.

Signed by Mr. John A. Osborne
Minister for Finance and
Economic Development on behalf
of the Government of Montserrat

Dr. Orien L. Tulp
President, USAT, and Director
Medical College of London

Before and in the presence of:

Before and in the presence of:

Baro Henry-Greer
Attorney General

Baro Henry-Greer
Attorney General

COMPANIES ACT OF MONTSERRAT

CERTIFICATE OF INCORPORATION

UNIVERSITY OF SCIENCE, ARTS
AND TECHNOLOGY (MONTSERRAT) LTD.
NAME OF COMPANY

I hereby certify that the above-mentioned Company, the Articles of Incorporation of
which are annexed, was incorporated under the Montserrat Companies Act 1998.

Registrar of Companies

Date of Incorporation

Case: 19-2706    Document: 003113419289    Page: 250    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 29 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 22 of 32

# EXHIBIT D

 EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia, PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

## AFFIDAVIT ATTESTING TO MEDICAL SCHOOL ATTENDANCE

I, _____

*ECFMG Applicant Name*                                                    *ECFMG ID Number*

hereby declare, under penalty of perjury under the laws of all applicable jurisdictions, including the United States of America, and under penalty of a finding of irregular behavior under applicable ECFMG rules and regulations, that:

**Section 1: Attendance Dates at University of Science, Arts & Technology (USAT) Faculty of Medicine**

I attended classes and/or clerkships at the University of Science, Arts & Technology (USAT) Faculty of Medicine located in Montserrat during the following dates:

| From (Month/Year) | To (Month/Year) |
|---|---|
| | |

### Section 2: Dates and Location of Basic Sciences Courses Taken in Montserrat

I was physically present and took basic sciences courses in Montserrat, during the following dates and at the following location *(if you did not complete your basic sciences course work at a facility located in Montserrat, complete Section 3):*

| Dates of Basic Sciences Courses Taken while Physically Located in Montserrat | | |
|---|---|---|
| (Do not include dates if you were not physically present in Montserrat. Do not include breaks in time where you were not physically located in Montserrat. Only list the beginning and end date for when you were physically present in Montserrat attending basic sciences courses.) | | |
| Course Start Date | From (Month/Year) | Basic Sciences Course End Date |
| | | |
| | | |
| | | |
| | | |

While I took my basic sciences classes in Montserrat, I resided at the following location(s):

| Residential Location and Address | From (Month/Year) | To (Month/Year) |
|---|---|---|
| | | |
| | | |

I am attaching the following documentation to demonstrate my physical presence in Montserrat during the time I was taking basic sciences classes at University of Science, Arts & Technology (USAT) Faculty of Medicine. *(check all that apply):*

☐ My passport, showing travel to Montserrat and visas for Montserrat          ☐ My lease, utility bills, etc. for my housing

☐ My airline tickets/boarding passes documenting travel to Montserrat          ☐ Other (please specify)

**Section 3: TO BE COMPLETED ONLY IF YOU CANNOT COMPLETE SECTION 2**

I completed my basic sciences courses not physically located in Montserrat because:

I also declare that this information is comprehensive, complete and accurate as of the date of my signature.

_____              (day) (month) (year)
*Signature of Applicant*

### Certification by Official

I certify that on the date set forth below the individual named above did appear personally before me and that the statements in this document are subscribed and sworn to before me by the individual on this _____ day, of the month of _____ in the year _____ .

_____
*Signature of Notary Public*                                                    Official Seal

_____
*Printed Name of Official*                        268a

WHAT YOU NEED TO DO

Effective immediately, as a USAT student or graduate seeking a service or services related to ECFMG Certification, including registration for the United States Medical Licensing Examination (USMLE), release of USMLE scores, issuance of an ECFMG Certificate, or issuance of ECFMG Certification Status Reports to residency programs, you must complete the attached affidavit, attesting to the accuracy of your medical school attendance information to ECFMG's satisfaction. Completion of the affidavit is required and will facilitate ECFMG's review.

The affidavit must also be notarized by NotaryCam, which provides secure on-line notarization of documents. To use NotaryCam, go to https://www.notarycam.com/ecfmg-affidavit/ and follow NotaryCam's instructions. NotaryCam will e-mail your affidavit to ECFMG directly.

YOU MUST COMPLETE AND SUBMIT THIS AFFIDAVIT NO LATER THAN NOVEMBER 1, 2018.

Please allow two to four weeks processing time after the above-described affidavit has been submitted to ECFMG. ECFMG will notify you in writing after your affidavit has been processed.

ECFMG reserves the right to bring allegations of irregular behavior against you, in accordance with its policies and procedures, should ECFMG obtain information that indicates that you have engaged in irregular behavior with respect to any documentation submitted as part of this process.

If you have any questions, please contact MECCsupport@ecfmg.org and you will be assigned a Case Manager. If you prefer, you may call 215-386-5900 and ask to be transferred to a Case Manager for USAT.

Sincerely,

ECFMG

Case: 19-2706    Document: 003113419289    Page: 253    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 32 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 25 of 32

# EXHIBIT E

 EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900 | 215-386-9767 Fax
www.ecfmg.org

VIA EMAIL: swatemd@aol.com

November 21, 2018

Mr. Tommy Swate
Attorney at Law
403 Wild Plum
Houston, Texas 77013

Dear Mr. Swate:

Thank you for the email confirmation on November 16, 2018 that you received the complete file that will be reviewed by the ECFMG Medical Education Credentials Committee ("ECFMG Committee") in the matter related to Dr. Orien Tulp. As previously communicated, Dr. Tulp is scheduled to make a personal appearance (accompanied by you and Mr. Reil, his attorneys) before the ECFMG Committee on Wednesday, November 28, 2018 at 9:00 AM at the Rittenhouse Hotel, 210 West Rittenhouse Square, Philadelphia, PA 19103. Please arrive with Dr. Tulp at 8:45 AM.

I am writing in response to your letter dated November 13, 2018, which is rife with misstatements. There are two important issues of concern which require clarification at this time: (1) ECFMG's authority to conduct its activities, including the ECFMG Certification program and making allegations of irregular behavior pertaining to Dr. Tulp; and (2) the "activity of the ECFMG in regards to the USAT" related to ECFMG's update of USAT's *World Directory of Medical Schools* ECFMG Sponsor Note.

## Concern (1):  ECFMG's Authority to Conduct the ECFMG Certification Program & Irregular Behavior

In your letter, you request ECFMG to "identify by what legal authority [ECFMG] has to claim and report that Dr. Tulp - engaged in 'irregular behavior'." For some additional context regarding ECFMG's responsibility and its mission to protect the public, ECFMG (formally the Evaluation Service for Foreign Medical Graduates) was established as a private, non-profit organization in 1956 by the Federation of State Medical Boards (FSMB), the American Hospital Association (AHA), the Association of American Medical Colleges (AAMC), and the American Medical Association (AMA). It was established to validate medical credentials, assess basic medical knowledge and determine English language proficiency for graduates of international medical schools. As you may already know, medical licensing authorities in the United States require that international medical graduates (IMGs) be certified by ECFMG, among other requirements, to obtain an unrestricted license to practice medicine.

In support of its mission to protect the public, individuals that have or have attempted to subvert ECFMG's policies and procedures are subject to ECFMG's Policies and Procedures on Irregular Behavior. These were previously shared with you and are also available on ECFMG's web-site at https://www.ecfmg.org/programs/irregular-behavior.html. As communicated in our prior correspondence, it is under these policies that Dr. Tulp is charged with irregular behavior for providing false information to ECFMG. I trust that the files you received on November 16 help clarify the charges and evidence of irregular behavior.

Case: 19-2706    Document: 003113419289    Page: 255    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 34 of 151
Case 2:18-cv-05540-WB    Document 1    Filed 12/24/18    Page 27 of 32

Mr. Tommy Swate
November 21, 2018
Page 2 of 2

## *Concern (2): ECFMG's Update to USAT's World Directory ECFMG Sponsor Note*

As previously communicated to you, ECFMG's update to USAT's World Directory Sponsor note is *not* related to a charge of irregular behavior for Dr. Tulp.

ECFMG updated its sponsor note on October 18, 2018 because ECFMG learned that USAT was operating a medical school campus located in the United States. Before taking this action, ECFMG had requested USAT to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school campuses and educational programs in the United States.    To date, USAT has failed to deliver such documentation.

It appears from the information gathered from you (e.g. your statement that USAT has conducted classes "in locations other than Montserrat *for 15 years* without incident...") and corroborated by USAT students that USAT has primarily operated and conducted its educational activities in the United States. Based on this information, USAT may not even be an international medical school. However, as previously communicated, if you are able to provide documentation from the appropriate United States authorities that USAT is authorized to operate its medical school branch campuses in the United States, ECFMG will consider this information.

Also, in your letter dated November 13, 2018 you state "ECFMG has taken the position that ECFMG has the right to accredit a medical school." We must clarify for you that ECFMG is not an accrediting agency and does not purport to accredit international medical schools.

Please contact me if you have any additional questions regarding our ECFMG Committee meeting scheduled next week.

Sincerely,

Ms. Kara Corrado, JD
Vice President for Operations

Case: 19-2706    Document: 003113419289    Page: 256    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 35 of 151
Case 2:18-cv-05540-WB   Document 1   Filed 12/24/18   Page 28 of 32

# EXHIBIT F

 EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES

3624 Market Street
Philadelphia PA 19104-2685 USA
215-386-5900
www.ecfmg.org

PERSONAL AND CONFIDENTIAL
VIA EMAIL: o.tulp@usat.edu

October 18, 2018

Dr. Orien L. Tulp
Professor and President
University of Science, Arts & Technology (USAT) Faculty of Medicine
Main Campus
S. Mayfield Estate Drive
Olveston
MONTSERRAT

Dear Dr. Tulp:

I am writing to advise you of the allegation that you, individually and in your
capacity as an official of the University of Science, Arts & Technology (USAT) Faculty of
Medicine, Montserrat, engaged in irregular behavior in connection with providing false
information to ECFMG. Specifically, you provided false information to ECFMG when
you (1) notified ECFMG that USAT does not operate a branch campus in Miami, Florida
and (2) certified to the attendance dates of several USAT students and graduates when
ECFMG has information that these students were not attending USAT during some of
the time periods to which you certified. The details of ECFMG's allegation are set forth
below.

**Details of Allegation**
*False Information Regarding U.S. Branch Campuses*
On August 21, 2018, ECFMG advised you that we had become aware that USAT
was operating a "branch" campus in Miami, Florida. We advised you that in order for
students and graduates of an international medical school, such as USAT, to have
eligibility to apply for ECFMG Certification, ECFMG policy requires confirmation from
the appropriate government authority in the branch campus country that the branch
campus is authorized to operate as a medical school in such branch campus country.
Therefore, we requested that USAT provide documentation from the United States
Department of Education and/or the Florida Department of Education confirming that
USAT's Miami branch campus is authorized to operate as a medical school in the
United States. We indicated that this documentation should cover the whole time period
that the USAT Miami branch campus has been in operation.

In response to ECFMG's August 21, 2018 letter, you replied:

"This is incorrect information. The Miami location is an information and testing
site only, where a pre-usmle examination [an NBME] may administered, and an
Orientation for new students is conducted prior to their traveling to the

Dr. Orien L. Tulp
October 18, 2018
Page 2 of 4

> Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies.
>
> Actually, recall that Montserrat is a volcanic Island, and the license issued to USAT in September, 2003 DOES actually permit the establishment of off-campus lecture and administrative sites as needed. USAT has students on island on a year round basis since its origination." [emphasis in original]

After receiving your reply, ECFMG received information that USAT was also providing medical education lectures not only at its Miami site, but also at sites in Tampa, Florida, Dallas, Texas, and Puerto Rico. As a result and to ensure that information regarding international medical schools and their students provided to ECFMG complies with ECFMG policies and requirements, ECFMG notified you that ECFMG would require USAT students and graduates to complete an affidavit, attesting to the accuracy of the medical school information provided to ECFMG.

In response to ECFMG's affidavit request, many USAT students and graduates have certified that they have not completed any courses on Montserrat, but instead completed courses on site in the United States at the direction of USAT officials due to volcanic and hurricane activity on Montserrat. ECFMG also received a copy of the "2018 University of Science, Arts and Technology Lecture Conference Schedule" which shows lectures occurring in Florida and Texas. We note that there are no lectures scheduled for Montserrat. We also note that graduation occurs in Miami, Florida.

This directly conflicts with the information that you provided, i.e. that "the Miami location is an information and testing site only, where a pre-usmle examination [an NBME] may administered, and an Orientation for new students is conducted prior to their traveling to the Caribbean.. It is NOT a campus. Our ONLY Campus is located in Olveston, Montserrat, British West Indies." [emphasis in original]. Further, though USAT's agreement with the Montserrat government indicates that USAT "agrees to maintain operations in Monserrat with regard to its Medical and other programmes for the duration of the agreement unless unforeseen circumstances and/or natural disaster arise that the MCL-USAT may choose to relocate to an area of convenience for the MCL-USAT for a time period to be determined by MCL-USAT. This would not effect any permission granted to MCL-USAT by the government of Montserrat," ECFMG has no record of receipt of any official communication from you or any other USAT official indicating that USAT relocated due to volcanic activity, from 2003 until present.

In ECFMG's September 15, 2017 announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma" ECFMG advised: "Schools that have relocated or plan to relocate their operations to the United States or elsewhere as a result of Hurricane Irma should provide ECFMG with: a) a formal notice to ECFMG that includes the address of where the school is temporarily located and the expected date of when the school will return to its home country, b) copies of approvals from the home country governmental authorities, and c) copies of approvals from the accrediting

Dr. Orien L. Tulp
October 18, 2018
Page 3 of 4

agency, if any. This information should be e-mailed to Medical Education Resources at medschoolreview@ecfmg.org, along with any questions or comments." ECFMG has no record of receipt of any correspondence from you or any other USAT official that USAT was relocating to the United States due to Hurricane Irma, or any other hurricane.

## *Certification of False Information Regarding Students Attendance Dates*

During the course of the investigation into USAT's branch campuses, ECFMG has discovered information that indicates that you provided false information to ECFMG regarding the attendance dates of some of your students on some of their applications for United States Medical Licensing Examinations (USMLE). Specifically, you certified that students were attending USAT during time periods which they were not actually attending USAT.

It is ECFMG's usual practice to consider any action or attempted actions by any person that would or could subvert the processes, programs or services of ECFMG to be *irregular behavior.* See Section A.1. of the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures.* Examples of irregular behavior include the provision of false information or falsified credentials to ECFMG.    ECFMG investigates and considers allegations of irregular behavior in order to protect the integrity of its processes, programs, and services. The ECFMG Committee can impose serious sanctions if it finds irregular behavior has been committed.

The review into the matters described in this letter are ongoing.    ECFMG reserves the right to amend or make additional allegations of irregular behavior, in accordance with its policies and procedures, should ECFMG obtain information that supports such amendment or additional allegations.

## ECFMG Medical Education Credentials Committee Review of this Allegation

This matter will be referred to the ECFMG Committee for review at its next scheduled meeting on November 28, 2018 in Philadelphia. The ECFMG Committee will consider the information presented and take action in accordance with the enclosed *ECFMG Medical Education Credentials Committee Policies and Procedures.*

You will have the opportunity to appear personally before the ECFMG Committee, accompanied by legal counsel, if you so wish. Please indicate in your response if you wish to appear personally before the ECFMG Committee in your individual and/or official capacities. If you do wish to make a personal appearance, I will notify you of the particular time and location of the meeting.

The following documents will be included in the Agenda for the ECFMG Committee's review:

- ECFMG's August 21, 2018 letter to you and your August 21, 2018 e-mail reply;

Dr. Orien L. Tulp
October 18, 2018
Page 4 of 4

- ECFMG's September 14, 2018 letter to you, including a copy of the affidavit sent to USAT students on September 14, 2018;
- Copy of "2018 University of Science, Arts and Technology Lecture Conference Schedule"
- September 15, 2017 ECFMG Announcement "Relocation of Caribbean Medical Schools Impacted by Hurricane Irma";
- Copy of "An Agreement Between the Government of Montserrat and Medical College of London (MCL) University of Science, Arts, and Technology (Montserrat) LTD. (USAT)"
- Affidavits completed by USAT students; and
- This letter.

Copies of these documents, with the exception of the completed affidavits by students, are enclosed.

**Please provide a response to ECFMG by November 1, 2018.** In your response, please note whether you wish to make a personal appearance before the ECFMG Committee. All documents should be submitted to Ms. Kara Corrado, Vice President for Operations, at the address above or via e-mail at kcorrado@ecfmg.org. If you have any questions, please do not hesitate to call me at (215) 883-7318.

Sincerely,

*Lisa L. Cover*

Lisa L. Cover
Senior Vice President for Business
Development and Operations

Encl: As noted.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, | ) |
| | ) |
| *Plaintiff,* | ) Case No. 2:18-cv-05540-WB |
| | ) |
| v. | ) Hon. Wendy Beetlestone |
| | ) |
| EDUCATIONAL COMMISSION FOR | ) |
| FOREIGN MEDICAL GRADUATES and | ) |
| DR. WILLIAM W. PINSKY, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

## DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG"),[1] by and

through its undersigned counsel, hereby answers the Complaint filed by Dr. Orien L. Tulp in

accordance with the numbered paragraphs thereof as follows:

### PARTIES

1.     The plaintiff is Dr. Orien L. Tulp, hereafter referred to as "Dr. Tulp", an adult
individual whose address for service of process is at 4288 Youngfield Street, Wheat Ridge, CO
80033. At all times material herein, plaintiff was President of the University of Science, Arts, and
Technology ("USAT"), and had an ownership interest in the University. USAT is located in
Montserrat, but its US administrative office is located at the address in the caption, and students
take classes in Montserrat and the US via a distance education format.

**ANSWER:**   ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. Orien L. Tulp is the plaintiff in this lawsuit. ECFMG denies that USAT

students "take classes in Montserrat and the US via a distance education format." ECFMG lacks

---

[1] On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky. As a result,
this filing is made by and on behalf of ECFMG only, the sole remaining defendant.

Case: 19-2706    Document: 003113419289    Page: 262    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB  Document 33-5  Filed 06/03/19  Page 41 of 151
Case 2:18-cv-05540-WB  Document 30  Filed 04/09/19  Page 2 of 21

knowledge or information sufficient to form a belief about the truth of the remaining allegations

of this paragraph and they are, therefore, denied.

2.    A defendant is the Educational Commission for Foreign Medical Graduates, hereafter referred to as "ECFMG" or "the Board", which is an unincorporated association, whose address for service of process is 3624 Market Street, Philadelphia, PA 19104. According to their mission statement, the ECFMG is an organization which purports to certify medical school students and graduates to practice medicine in the United States.

**ANSWER:**    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that is headquartered at 3624 Market Street, Philadelphia, PA 19104. ECFMG

further admits that, among other things, it certifies that foreign medical graduates have met certain

minimum criteria for entry into graduate medical education in the United States. ECFMG denies

that it is an unincorporated association and that it "certif[ies] medical school students and graduates

to practice medicine in the United States." ECFMG denies the remaining allegations of this

paragraph.

3.    A defendant is Dr. William W. Pinsky, the President and CEO of the ECFMG, whose address for service of process is indicated in the caption. *See* Exhibit A, attached and incorporated herein.

**ANSWER:**    ECFMG admits in part and denies in part the allegations of this paragraph.

ECFMG admits that Dr. William W. Pinsky is the President and CEO of ECFMG and that ECFMG

is headquartered at 3624 Market Street, Philadelphia, PA 19104. ECFMG denies that Dr. Pinsky

is a defendant in this lawsuit because the Court has dismissed all claims against Dr. Pinsky.

ECFMG denies the remaining allegations of this paragraph.

4.    ECFMG is an organization sponsored by various medical organizations, including the Federation of State Medical Boards. Through the ECFMG's certification process, it gives medical students and medical graduates a certification of eligibility (essentially a license) to apply for a ACGME [Accreditation Council for Graduate Medical Education] certified residency program of postgraduate specialty training that can lead to medical licensure of the applicant. A residency program is a certified program that trains students who have graduated from a medical school and taken a series of examinations or tests administered by way of the United States Medical Licensing Examination [the USMLE]. The state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency

Case: 19-2706    Document: 003113419289    Page: 263    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 42 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 3 of 21

training in the USA. Without the certification (license) from the ECFMG, a foreign medical graduate cannot start the process of being licensed as a physician in the United States.

**ANSWER:**   ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that, among other things, it certifies that foreign medical graduates have met certain minimum criteria for entry into graduate medical education in the United States. ECFMG further admits that ACGME has elected to require foreign medical graduates who enter ACGME-accredited programs to be certified by ECFMG. ECFMG specifically denies that "[t]he state medical boards have given ECFMG the power to examine and certify international medical graduates [IMGs] as competent to undertake residency training in the USA." ECFMG denies the remaining allegations of this paragraph.

5.    The action of the ECFMG is in granting authority to apply for a residency program is state action. The ECFMG's authority, which is in essence a license to apply for a residency program, has a close nexus to the various state medical boards. Without the ECFMG certificate, the ACGME postgraduate programs will not permit the applicant to start the training that will in essence allow the gate to be closed to obtaining a medical residency and eventual license to practice medicine in the USA. Without the residency training, the medical graduate cannot obtain a full unrestricted medical license. The state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure. State action is established because of this delegation of screening power. *Jackson v. Metro Edison Co.,* 419 U.S. 345, 351.

**ANSWER:**   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph.  ECFMG admits that ACGME has elected to require foreign medical graduates who enter ACGME-accredited programs to be certified by ECFMG.  ECFMG specifically denies that "[t]he state medical boards have granted the power to the ECFMG to screen foreign medical students for licensure."  ECFMG denies the remaining allegations of this paragraph.

6.    The ECFMG has placed itself in a position of interdependence with the state medical boards. The ECFMG cannot be considered to be a private entity because the ECFMG reports to the state medical boards but also reports to the National Practitioner Data Bank. The

Case: 19-2706    Document: 003113419289    Page: 264    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 43 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 4 of 21

ECFMG would not exist without the powers delegated by the state medical boards. *Burton v. Wilmington Parkway Authority,* 365 U.S. 715, 725 (1961).

    **ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

    7.    Because the ECFMG's actions are delegated state actions, the ECFMG is required to give both procedural and substantive Fourteenth Amendment due process rights.

    **ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## JURISDICTION AND VENUE

    8.    The Court has jurisdiction under Diversity of Citizenship, the Civil Rights Act (42 U.S.C.A. 1983) and the Due Process clause of the United States Constitution, with pendent jurisdiction to consider any claims arising under state law.

    **ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

    9.    Venue is properly before the Court, since all defendants are located and conduct business in the Eastern District of Pennsylvania.

    **ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG admits that it is headquartered and conducts business in the Eastern District of Pennsylvania.

## SUMMARY

    10.    In an attempt to close down the USAT and sanction Dr. Tulp, defendant ECFMG has refused to allow students of USAT to take necessary medical examinations. Defendant ECFMG has effectively closed USAT, by refusing to release scores for students who paid for the examinations. Doctors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification. ECFMG has also sent misleading "affidavits" to many USAT students and threatened many students with "irregular

Case: 19-2706    Document: 003113419289    Page: 265    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 44 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 5 of 21

behavior" in order to sanction Dr. Tulp and force closure of the University, which he founded. He is President, CEO, and an equal owner of the University. Thus, ECFMG tortiously interfered with the educational contract between the students of USAT, the University, and Dr. Tulp, denied due process to Dr. Tulp and the students of USAT, and improperly used an "affidavit" [*See* Exhibit DI to coerce information from students. [Pinsky letter, *See* Exhibit A.] In addition, the Board placed information in the World Directory of Medical Schools, prior to any hearing or legal process, advising that it would no longer recognize the test scores of USAT graduates after January 1, 2019. *See* Exhibit B.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. Moreover, the allegations of this paragraph refer to written documents that speak for themselves, and Plaintiff's characterization of them is, therefore, denied. To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that it imposed a limited sanction on Plaintiff after finding that he engaged in "irregular behavior" (as defined by and consistent with ECFMG's Policies and Procedures Regarding Irregular Behavior), which finding was made after Plaintiff was given notice of the allegations of "irregular behavior," copies of ECFMG's Policies and Procedures Regarding Irregular Behavior and documentary evidence considered making the finding of "irregular behavior," and an opportunity to be heard at an in-person hearing before ECFMG's Medical Education Credentials Committee. ECFMG further admits that it sent blank affidavit forms to USAT students applying to ECFMG for services to gather information about their medical school coursework. ECFMG denies that it "has refused to allow students of USAT to take necessary medical examinations." ECFMG denies that it "has effectively closed USAT, by refusing to release scores for students who paid for the examinations." ECFMG denies that "[d]octors who graduated from USAT have been unable to commence their residency due to the refusal of the Board to issue an appropriate certification." ECFMG denies that the blank affidavits sent to USAT students were "misleading," "threatened" students with "irregular behavior," were sent "to sanction Dr. Tulp and force closure of" USAT. ECFMG lacks knowledge or information

282a[5]

Case: 19-2706    Document: 003113419289    Page: 266    Date Filed: 11/27/2019

283a

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 45 of 151
Case 2:18-cv-05540-WB    Document 30    Filed 04/09/19    Page 6 of 21

6

sufficient to form a belief about the truth of the allegation that Plaintiff "is President, CEO, and an equal owner of" USAT. ECFMG specifically denies that Plaintiff was denied due process.

ECFMG denies the remaining allegations of this paragraph.

## GENERAL ALLEGATIONS

11.    ECFMG sent to USAT a letter implying that the school would be closed on or about 01/10/19 because the Board would no longer recognize the scores of its students in taking the three-part United States Medical Licensing Examination. This action prohibits applicants from sitting for the USMLE, which is required for unrestricted medical licensure.

**ANSWER:**    The allegations of this paragraph refer to a letter that is a written document that speaks for itself, and Plaintiff's characterization of it is, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

12.    On 11/21/18, Kara Corrado, J.D., Vice President for Operations of the Board, sent a letter to counsel for USAT indicating two concerns: 1) that USAT's authority to conduct its medical education program amounted to "irregular behavior" because USAT had not been certified by a governmental entity in the United States, and 2) the allegation that USAT was operating medical school campuses in the United States. *See* Exhibit E. On October 18, 2018, Lisa Cover, a Senior Vice President with ECFMG, wrote a letter to Dr. Tulp advising him of the allegation that he engaged in "irregular behavior". *See* Exhibit F.

**ANSWER:**    The allegations of this paragraph refer to letters that are written documents that speaks for themselves, and Plaintiff's characterization of them is, therefore, denied. To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that Kara Corrado, the ECFMG Vice President of Operations, sent a letter to counsel for Plaintiff on November 21, 2018 that, *inter alia,* (i) confirmed Plaintiff would make personal appearance with his attorneys at a hearing before the ECFMG Medical Education Credentials Committee on November 28, 2018 in connection with allegations of "irregular behavior", (ii) corrected numerous misstatements set forth in a letter from counsel for Plaintiff dated November 13, 2018, and (iii) as ECFMG had already done multiple times, invited Plaintiff and USAT to provide evidence to ECFMG that USAT's operations in the United

Case: 19-2706    Document: 003113419289    Page: 267    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 46 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 7 of 21

States were authorized.   ECFMG further admits that Lisa Cover, the ECFMG Senior Vice President for Business Development and Operations, sent a letter to Plaintiff on October 18, 2018, which (i) gave Plaintiff notice of the allegations of "irregular behavior" against Plaintiff, (ii) enclosed numerous documents supporting the allegations of "irregular behavior" against Plaintiff, and (iii) invited Plaintiff to make a personal appearance before the ECFMG Medical Education Credentials Committee at a hearing regarding the allegations of "irregular behavior" against Plaintiff, pursuant to the Committee's policies and procedures.   ECFMG denies the remaining allegations of this paragraph.

13.    USAT has a certification from the government of Montserrat, allowing it to operate temporary venues due to an active volcano on the island. Such certification had been recognized by the Board without incident since 2003. USAT also operates online courses for the majority of its basic sciences course requirements via a specially developed SPOC [small platform online courses, developed by USAT]. A true and correct copy of the certification from Montserrat is attached and incorporated as Exhibit C.

**ANSWER:**   The allegations of this paragraph refer to a written document that speaks for itself, and Plaintiff's characterization of it is, therefore, denied.  To the extent that a response is required, ECFMG admits in part and denies in part the allegations of this paragraph.  ECFMG admits that before ECFMG learned of USAT's unauthorized operations in the United States, ECFMG treated USAT as a foreign medical school located in Montserrat based on authorization by Montserrat to operate there.  ECFMG lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of this paragraph and they are, therefore, denied.

14.    Students from USAT have each paid well over $1,000 to the Board to take necessary medical exams, and the Board has refused to release their scores because of alleged misconduct by Dr. Tulp, and an assignment by the Board of "irregular behavior" arising out of an illegal affidavit issued to students of USAT. "Irregular behavior" may be a permanent admonition on a student or physician's official record, and make residency difficult, if not impossible.

Case: 19-2706    Document: 003113419289    Page: 268    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 47 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 8 of 21

**ANSWER:** ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that a finding of "irregular behavior" results in a permanent annotation of that finding in ECFMG's records. ECFMG denies the remaining allegations of this paragraph.

15. The Board set up a hearing on 11/28/18 for Dr. Tulp, only, in Philadelphia, at the address in the caption to address so-called "irregular behavior". After a few minutes, with no witnesses called, Board counsel announced that the hearing was terminated. Prior to the hearing, the Board took the position that Dr. Tulp had the burden of proof on the issue of "irregular behavior" for which he had been charged by the Board. The Board set 20 minutes as the duration of the hearing. No testimony was taken or exhibits received in evidence, before Board counsel terminated the hearing. No Transcript of the proceedings has been received. The Board indicated that on 01/01/19 it will issue a finding of "irregular behavior" to Dr. Tulp effectively closing USAT.

**ANSWER:** ECFMG admits in part and denies in part the allegations of this paragraph. ECFMG admits that a hearing about the allegations of "irregular behavior" against Plaintiff was held on November 28, 2018 before ECFMG's Medical Education Credentials Committee pursuant to the Committee's policies and procedures. ECFMG admits that it allotted 20 minutes for the hearing (consistent with ECFMG's ordinary practice) and that the hearing concluded sooner because Plaintiff (through his counsel) refused to engage and became argumentative. ECFMG denies the remaining allegations of this paragraph.

16. There was no jurisdiction over, or relationship with, Dr. Tulp to compel him to attend the hearing by the Board, and he made a special appearance while not agreeing to jurisdiction. ECFMG has no jurisdiction over Dr. Tulp, or legal relationship with Dr. Tulp, or the power to enter any sanction against him. The Board has no contractual or statutory authority over Dr. Tulp.

**ANSWER:** The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

17. The Board would not give Dr. Tulp sufficient discovery to conduct an adequate defense. Also, the Board has never requested any curricula, student records, or any documentation from USAT.

**ANSWER:** ECFMG denies the allegations of this paragraph.

Case: 19-2706    Document: 003113419289    Page: 269    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 48 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 9 of 21

18.     The term "irregular behavior" is void for vagueness, since "irregular behavior" is so broad that it essentially amounts to any behavior which the Board does not approve. There is no intelligible standard to ascertain "irregular behavior" with the exception of the fiat by the ECFMG. There is no due process mechanism to effectively challenge a finding of "irregular behavior" which can amount to an indefinite suspension of United States medical licenses by the Board without formal notification of such assignment to the individual concerned.

**ANSWER:**   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

19.     There is no reasonable way to ascertain the standards for "irregular behavior" in the instant case, prior to any adjudication.

**ANSWER:**   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

20.     The Board has effectively closed USAT by not allowing its students and graduates to complete the necessary medical examinations beyond January 1, 2019, and has tortiously interfered with the relationship of the students of USAT and Dr. Tulp, the President of the University.

**ANSWER:**   The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## FIRST CAUSE OF ACTION
### Plaintiff v. ECFMG

21.     Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**   ECFMG incorporates its responses to the previous paragraphs as though fully set herein.

22.     This cause of action is for the illegal actions of the ECFMG (the Board) in tortiously interfering with the contract between the students of USAT and plaintiff Dr. Orien Tulp, the University President and co-owner.

Case: 19-2706     Document: 003113419289     Page: 270     Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 49 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 10 of 21

**ANSWER:**   The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

23.   The Board allegedly refused to release scores of necessary medical exams to
students and graduates of USAT, de facto, closing the University.

**ANSWER:**   The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

24.   The Board published, in the World Directory of Medical Schools, a warning to
students that it would not recognize USAT with respect to necessary medical qualifying
examinations after January 1, 2019. *See* Exhibit B.

**ANSWER:**   The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

25.   The Board sent illegal "affidavits" to students in an attempt to intimidate them from
continuing as students at USAT. These alleged affidavits threatened medical students with perjury,
as well as "irregular behavior", and also directed the students to provide certain documentary
evidence, such as a copy of their passport. This "affidavit" by the Board was an abuse of process,
and constituted fraudulent or negligent representation, since it was tantamount to a "subpoena
duces tecum" without first having a legal proceeding. The Board had no power to issue these so-
called affidavits. These affidavits are also a violation of Federal Education Records Protection Act
(FERPA). Students are predominantly US citizens and are entitled to such protection under
FERPA.

**ANSWER:**   The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

26.   The purpose of the ECFMG doing this was to effectively remove Dr. Tulp as
President of the University by discouraging students from registering or continuing their education
at USAT, including verbal recommendations from ECFMG case workers. The Board issued
"affidavits" and threatened to find students of USAT guilty of "irregular behavior".

**ANSWER:**   The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

27.   There was no hearing before the students of USAT were sent emails by the ECFMG
telling them that they may have been assigned "irregular behavior" and that their scores would not
be released to medical institutions to be accepted for residency applications or other ECFMG
services.

Case: 19-2706    Document: 003113419289    Page: 271    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 50 of 151
Case 2:18-cv-05540-WB    Document 30    Filed 04/09/19    Page 11 of 21

**ANSWER:**    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

28.    ECFMG alleges to be a private organization which permits the administration of qualifying examinations for foreign medical students and international medical graduates and passes information to the state licensing agencies in the United States. De facto, the ECFMG is a quasi-governmental agency that issues certificates, that are essentially licenses, to foreign medical students and physicians upon completion of their certification process, and it holds itself out to medical students and others as a governmental entity.

**ANSWER:**    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

29.    As a result of the illegal actions of the Board in refusing to release the scores of the students of the plaintiff, the plaintiff has suffered, and will continue to suffer, irreparable harm including, but not limited to, the immediate closing of USAT College of Medicine and the removal of Dr. Tulp as a medical educator under the cloud of an indefinite sentence of "irregular behavior" for a duration of not less than 5 years.

**ANSWER:**    The Court dismissed Plaintiff's First Cause of Action, and thus no

response to this paragraph is required.

30.    Dr. Tulp will also suffer loss of his position as President of the University, as well as direct monetary damages resulting from the closing of USAT, arising out of the actions of ECFMG to close USAT, and to preclude its students from practicing medicine or engaging in postgraduate training in the USA, and the discouraging of any students from attending an institution where they cannot receive required certification from the ECFMG Board to qualify for licensure or registration to practice medicine in the USA.

**ANSWER:**    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    The Court dismissed Plaintiff's First Cause of Action, and thus no response

to this WHEREFORE clause is required.

Case: 19-2706    Document: 003113419289    Page: 272    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 51 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 12 of 21

## SECOND CAUSE OF ACTION
### Plaintiff v. ECFMG

31.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

32.    This cause of action is for violation of due process by the ECFMG (the Board).

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.

33.    The Board violated the due process rights of Dr. Tulp by finding him guilty of "irregular behavior" when it had no jurisdiction over Dr. Tulp, or any direct contact with him prior to a finding of "irregular behavior".

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

34.    The Board violated the due process rights of Dr. Tulp by illegally withholding necessary medical examination for USAT students and graduates in an attempt to sanction plaintiff and to force closure of USAT.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

35.    The Board violated the due process rights of Dr. Tulp by sending misleading affidavits to students of USAT, which affidavits were illegal and designed to intimidate the students from attending USAT. The Board stated that as January 1, 2019, students of USAT may not apply to ECFMG for certification. Essentially, the Board engaged in an illegal scheme to destroy USAT and Dr. Tulp by publishing the demise of the University in the World Directory of Medical Schools before any notification of such intent by the ECFMG.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

Case: 19-2706    Document: 003113419289    Page: 273    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 52 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 13 of 21

36.    The Board violated the due process rights of Dr. Tulp by failing to award him or the students of his college a legitimate hearing before taking adverse action. The Board commingled the adjudicatory and investigative functions, particularly through the use of affidavits sent to students to secure documentary evidence under the threat of "irregular behavior". *See Lyness v. Corn., State Bd. of Medicine* 529 Pa. 535 (1992).

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

37.    ECFMG is estopped from denying that it is a governmental or quasi-governmental entity, *inter alia,* because no disclaimer that it was a private entity to that effect was placed on the affidavits sent to thousands of USAT students. In point of fact, the opposite was implied.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

38.    The Board has acted as a governmental entity, and is estopped from denying the same.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

39.    When the Board corresponded with USAT and with its students, there was no disclaimer that the Board was not acting on behalf of any governmental authorization, or that it was allegedly a private entity, and the students were not required by law to respond to the affidavit or provide any documents. Students were required to complete "affidavits" under penalty of a finding of "irregular behavior" and denial of ECFMG services.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

40.    Under the doctrine of state action, the Board has failed to exercise due process in its dealings with USAT and its students as is required by the Due Process Clause of the Pennsylvania and US Constitutions.

Case: 19-2706    Document: 003113419289    Page: 274    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 53 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 14 of 21

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

41.    The Board has failed to show due process to USAT students, as heretofore mentioned. The affidavits indicated that the Board has illegally commingled the adjudicatory and prosecutorial functions, in violation of due process.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

42.    As a result of the Board acting as a quasi-governmental entity, Dr. Tulp and his University suffered the damages as previously enumerated.

**ANSWER:**    The allegations of this paragraph contain conclusions of law to which no response is required and they are, therefore, denied.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    In response to this WHEREFORE clause, ECFMG denies that Plaintiff is entitled to any type of remedy, relief, or damages whatsoever, including the relief requested in this WHEREFORE clause.  ECFMG denies the remaining allegations of this paragraph.

### THIRD CAUSE OF ACTION
### Plaintiff v. ECFMG

43.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

44.   This is a cause of action for fraudulent misrepresentation, abuse of process, and negligent representation against the ECFMG (the Board).

**ANSWER:**   The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

45.   As heretofore indicated, the Board committed the aforementioned torts through the following acts and omissions:

(a)   representing itself as an official governmental agency;

(b)   distributing affidavits to intimidate USAT students, which affidavits did not have a disclaimer or conform to law;

(c)   placing misleading information about USAT into the World Directory of Medical Schools without notice, and which was designed to intimidate students and to effectively force closure of USAT;

(d)   using illegal affidavits whose purpose was to gather documents and evidence of alleged culpable behavior by USAT and Dr. Tulp, all of which was in violation of FERPA, the Family Educational Rights and Privacy Act;

(e)   violating FERPA by not receiving the requisite consent of students to their educational records.

**ANSWER:**   The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph and its subparts is required.

46.   As indicated in the prior counts, the Board has held itself out as a governmental agency. The Board has never indicated to those that it dealt with, in particular the students, that it is not an official governmental agency.

**ANSWER:**   The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

47.   Accordingly, the Board is estopped by its conduct to deny that it is required to show due process, as if it were a governmental entity.

**ANSWER:**   The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this paragraph is required.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing

Case: 19-2706    Document: 003113419289    Page: 276    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 55 of 151
Case 2:18-cv-05540-WB    Document 30    Filed 04/09/19    Page 16 of 21

for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

**ANSWER:**    The Court dismissed Plaintiff's Third Cause of Action, and thus no response to this WHEREFORE clause is required.

## FOURTH CAUSE OF ACTION
### Plaintiff v. All Defendants

48.    Plaintiff incorporates all prior paragraphs as though fully set forth herein.

**ANSWER:**    ECFMG incorporates its responses to the previous paragraphs as though fully set forth herein.

49.    This cause of action arises out of the 12/14/18 letter by Dr. William W. Pinsky, which is attached and incorporated as Exhibit A.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

50.    Dr. Pinsky is the President and CEO of the ECFMG, and in that capacity, he authorized the illegal actions of the ECFMG, heretofore described.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

51.    On 12/14/18, Dr. Pinsky sent a letter [Exhibit A] to Dr. Orien L. Tulp, addressing him as Professor and President of USAT at its main location in Montserrat.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

52.    In this letter, Dr. Pinsky indicated, *inter alia*, essentially, that the ECFMG Committee had determined that, for a minimum period of five years, from the date of the letter, that Dr. Tulp was banned from submitting any documents or having any dealings with the ECFMG on behalf of USAT or otherwise.

Case: 19-2706     Document: 003113419289     Page: 277     Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 56 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 17 of 21

**ANSWER:** The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.

53. This indefinite ban of Dr. Tulp for allegedly engaging in "irregular behavior" was arbitrarily imposed by the ECFMG Committee for alleged unproven false statements, none of which allegations were actually documented.

**ANSWER:** The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

54. This ban effectively precludes Dr. Tulp from operating, or being involved with, any medical school, in any capacity, for an indefinite period of time, subject to the unfettered discretion of ECFMG.

**ANSWER:** The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

55. This ban effectively closes USAT, as an institution for medical students, for an indefinite period of time, if not permanently.

**ANSWER:** The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

56. Actions which allegedly are announced in Dr. Pinsky's letter have already been instituted by the ECFMG such as the ban on the World Directory of Medical Schools website and the shutdown of the portal and the blocking of student scores and the affidavits.

**ANSWER:** The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required. To the extent that a response is required, ECFMG denies the allegations of this paragraph.

57. The ban by the ECFMG, as set forth in the letter of Dr. Pinsky, also means that the operations of the USAT in the United States must be shut down, and the students from the United States will be separated from USAT, which will have to be closed if the actions of the ECFMG are not reversed. Two of the three administrative conference venues have been closed due to the

Case: 19-2706    Document: 003113419289    Page: 278    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 57 of 151
Case 2:18-cv-05540-WB    Document 30    Filed 04/09/19    Page 18 of 21

actions of the ECFMG. Students have been forced to transfer to other medical schools to continue their education past January 1, 2019. As previously mentioned, the bulk of the USAT Basic Sciences Program is delivered via an advanced SPOC [Small Program Online Course program developed by USAT and delivered worldwide, thereby negating any requirement for a fixed US Campus]. The ECFMG or Dr. Pinsky has never asked for any information about the structure or content of the Basic Sciences Program.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph.

58.    The actions of the ECFMG on Dr. Tulp and the students of USAT amount to a violation of procedural and substantive due process, as follows:

    (a)    banning Dr. Tulp without a proper hearing;

    (b)    banning Dr. Tulp without an evidentiary basis;

    (c)    forcing closure of USAT and causing its students to be dismissed in an arbitrary and capricious manner;

    (d)    requiring, at a hearing on 11/28/18, that USAT assume the burden of proof and allotting 20 minutes for the hearing;

    (e)    terminating the hearing on 11/28/18 without receiving any evidence from Dr. Tulp;

    (f)    finding Dr. Tulp guilty of "irregular behavior" without jurisdiction and due process, and effectively forcing closure of USAT College of Medicine without legal process, and constructively dismissing the students of USAT in violation of the law.

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this paragraph and its subparts is required.  To the extent that a response is required, ECFMG denies the allegations of this paragraph and its subparts.

WHEREFORE, the Court is requested to order ECFMG to immediately resume processing the medical examinations of students of USAT, and release their examination scores, and remove the negative advisory from the sponsor notes on the World Directory of Medical Schools listing for the USAT College of Medicine, and to award such other injunctive and equitable relief as appropriate, plus damages, interest, and attorneys fees.

PA 0608

Case: 19-2706    Document: 003113419289    Page: 279    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB    Document 33-5    Filed 06/03/19    Page 58 of 151
Case 2:18-cv-05540-WB    Document 30    Filed 04/09/19    Page 19 of 21

**ANSWER:**    The Court dismissed Plaintiff's Fourth Cause of Action, and thus no response to this WHEREFORE clause is required.    To the extent that a response is required, ECFMG denies the allegations of this paragraph.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any matters that would otherwise rest with Plaintiff, and expressly denying any and all wrongdoing, ECFMG alleges the following affirmative defenses.    ECFMG presently has insufficient knowledge or information to form a belief as to whether there are additional defenses than those stated below.    Therefore, ECFMG expressly reserves the right to assert additional defenses.

1.    The Complaint fails to state a due process claim upon which relief may be granted.

2.    Plaintiff's due process claim fails because ECFMG afforded Plaintiff due process.

3.    Plaintiff's due process claim fails because Plaintiff had notice and an opportunity to be heard.

4.    Plaintiff's due process claim is barred because Plaintiff has not suffered any actual injury or damage.

5.    Plaintiff is not entitled to relief under the doctrine of unclean hands.

6.    Plaintiff failed to mitigate his purported damages.

Case: 19-2706    Document: 003113419289    Page: 280    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 59 of 151
Case 2:18-cv-05540-WB   Document 30   Filed 04/09/19   Page 20 of 21

Respectfully submitted,

DATED:  April 9, 2019

/s/ Elisa P. McEnroe
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or e-mail:

> TOMMY SWATE
> 403 WILD PLUM
> HOUSTON, TX 77013
>
> WILLIAM C. REIL
> 1515 MARKET ST SUITE 1200
> PHILADELPHIA, PA 19102
> 215-564-1635
> Fax: 215-564-4292
> Email: billreillaw@gmail.com
>
> *Attorneys for Plaintiffs*

DATED:  April 9, 2019          */s/ Elisa P. McEnroe*
                              Elisa P. McEnroe

 **Gmail**

Bill Reil <billreillaw@gmail.com>

## RE: Tulp v. ECFMG - Filing
1 message

**Klayman, Matthew D.** <matthew.klayman@morganlewis.com>                Mon, May 6, 2019 at 10:56 AM
To: "swatemd@aol.com" <swatemd@aol.com>
Cc: "McEnroe, Elisa P." <elisa.mcenroe@morganlewis.com>, Bill Reil <billreillaw@gmail.com>

Mr. Swate,

We complied with Judge Beetlestone's Policies and Procedures (available online at http://www.paed.uscourts.gov/documents/procedures/beepol.pdf) and will not withdraw our filing.

Per Section V.A-B of the Civil Cases section in Judge Beetlestone's Policies and Procedures, we sent you and Mr. Reil our proposed "single, joint appendix of all exhibits that may be referenced" in the summary judgment briefing. We then spoke to Mr. Reil about how this is for the Court's convenience, per her procedures, so that we can all reference the same universe of documents. We have not represented that you stipulated to anything in that regard. Section V.B explains how you may submit additional exhibits, if you believe it is necessary to do so.

Per Section V.C.1 of the Civil Cases section in Judge Beetlestone's Policies & Procedures, we submitted "a separate **Statement of Undisputed Material Facts** containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts **as to which the moving party [(in this case, ECFMG)] contends no genuine issue exists**." (Emphases added). Section V.C.2 explains how Dr. Tulp may submit "a separate Statement of Disputed Material Facts, stating in similar paragraph form whether [Dr. Tulp] accepts or rejects that each fact as stated by the moving party is undisputed." The Court did not instruct us to share with you a copy of our statement of facts in advance of filing and we followed the proper procedures.

A courtesy copy of Defendant's filing was sent to the Court today, along with the enclosed correspondence.

Regards,

Matt

**Matthew D. Klayman**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5609 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

matthew.klayman@morganlewis.com | www.morganlewis.com

Assistant: Angela P. Garden | +1.215.963.5463 | angela.garden@morganlewis.com

**From:** swatemd@aol.com <swatemd@aol.com>
**Sent:** Friday, May 03, 2019 10:49 PM
**To:** Klayman, Matthew D. <matthew.klayman@morganlewis.com>
**Subject:** Re: Tulp v. ECFMG - Filing


[EXTERNAL EMAIL]

The motion you filed indicated that certain facts were agreed to by Dr. Tulp or his attorneys is false. Please withdraw this documents. The various documents e mailed to me on May 3, are the first time either Mr Riel or I have seen the "so called agreed facts". We certainly have agreed to no facts at this time. We will review your claims of facts. A decision will be made as to which facts we can agree and which facts we disagree. I point out to you the court instructed you to submit your version of the facts to Mr. Riel and I.  Tommy Swate


-----Original Message-----
From: Klayman, Matthew D. <matthew.klayman@morganlewis.com>
To: swatemd <swatemd@aol.com>; Bill Reil <billreillaw@gmail.com>
Cc: McEnroe, Elisa P. <elisa.mcenroe@morganlewis.com>
Sent: Fri, May 3, 2019 5:21 pm
Subject: Tulp v. ECFMG - Filing

Counsel,


Please see attached.


Regards,

Matt


**Matthew D. Klayman**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5609 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

matthew.klayman@morganlewis.com | www.morganlewis.com

Assistant: Angela P. Garden | +1.215.963.5463 | angela.garden@morganlewis.com


DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

Tulp v. ECFMG - McEnroe Letter re Courtesy Copy [5.6.2019].pdf
42K

<div align="center">

**William C. Reil, Esquire**
**1515 Market Street, Suite 1200, Philadelphia, PA 19102**
**Tel: 215-564-1635 Fax: 215-564-4292**
**BillReilLaw@gmail.com**

</div>

May 2, 2019

**BY EMAIL ONLY**
elisa.mcenroe@morganlewis.com

Elisa P. McEnroe, Esquire
Morgan, Lewis, and Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

      Re:  Dr. Tulp v. ECFMG and Dr. Pinsky
          Docket No: 2:18-cv-05540-WB
          **Joint Appendix and Stipulations**

Dear Ms. McEnroe:

I received your email captioned "Joint Appendix." There has been insufficient time to look over 500 pages of documents which you sent to us. It would be useful if you could send a list of proposed stipulations, which you wish Mr. Swate and myself to consider.

Generally, I will stipulate to the authenticity of any reasonable exhibit, but not necessarily to the truth of the entire document. Accordingly, it would be preferable to see the document to which the appendix refers. I would recommend to my client that we reserve the right to object to a stipulation, contingent upon how it is used.

Sincerely yours,

*William C. Reil*

William C. Reil

cc:  Tommy Swate, Esquire
     Dr. Orien L. Tulp

<div align="center">

301a

</div>



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DR. ORIEN L. TULP,
      **Plaintiff,**

     **v.**

EDUCATIONAL COMMISSION FOR
FOREIGN MEDICAL GRADUATES AND
DR. WILLIAM W. PINSKY,
      **Defendants.**

**CIVIL ACTION**

**NO. 18-5540**

**FILED**

**JAN 25 2019**

KATE BARKMAN, Clerk
By_____ Dep. Clerk

## SCHEDULING ORDER

AND NOW, this 24th day of January, 2019, following a Preliminary Pretrial Conference,

IT IS ORDERED as follows:

    1.    All fact discovery shall be completed by April 19, 2019.

    2.    Any motions for summary judgment motions shall be filed and served on or

before May 3, 2019. If the parties do not plan on filing summary judgment motions, they shall

so report to the Court (Chambers, Room 3809) on or before May 3, 2019. In all summary

judgment filings, the parties shall comply with the provisions of this Court's Policies and

Procedures regarding the submission of a joint appendix and of statements of undisputed and

disputed material facts.

          A.    When one party intends to move for summary judgment, that party shall initiate a process whereby the parties shall meet, confer and develop a single, joint appendix of all exhibits, including any and all exhibits that may be referenced in their respective briefs.

          B.    The joint appendix shall be filed by the movant no later than the date the initial motion for summary judgment is docketed. All pages of the joint appendix shall be consecutively "Bates stamped" and referenced in the motions and briefs by the Bates number assigned each page. The joint appendix shall include a table of contents. The parties shall make every effort to include all necessary exhibits in the initial joint appendix. Should it become necessary for the non-moving party to submit additional exhibits, however, it may do so at the time it files its opposition brief. Any addendum to the joint appendix shall

Case: 19-2706    Document: 003113419289    Page: 286    Date Filed: 11/27/2019

Case 2:18-cv-05540-WB   Document 33-5   Filed 06/03/19   Page 65 of 151
Case 2:18-cv-05540-WB   Document 21   Filed 01/25/19   Page 2 of 2

be consecutively Bates stamped, beginning at the page number where the joint appendix left off, and shall include a table of contents. Judge Beetlestone will not consider material not included in the appendix.

C.   Statements of Facts

1.   Upon motion for summary judgment, counsel shall also submit a separate Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix in support of all of those facts as to which the moving party contends no genuine issue exists.

2.   Counsel opposing a motion for summary judgment shall also submit a separate Statement of Disputed Material Facts, stating in similar paragraph form whether that party accepts or rejects that each fact as stated by the moving party is undisputed. If a party contends that a fact is in dispute, citation must be made to the joint appendix that supports the party's view that that particular fact is in dispute. The party should then list its own additional disputed facts in the same format with specific citations to the joint appendix.

3.   Counsel for the moving party shall then submit—even if not filing a reply brief—a separate Reply Statement of Undisputed Material Facts stating in similar paragraph form whether that party accepts or rejects that each additional fact as stated by the opposing party is disputed. If a party contends that a fact is undisputed, citation must be made to the joint appendix that supports that party's view that the particular fact is undisputed.

3.   For all filings submitted and conferences held pursuant to this scheduling order, and for all pretrial and trial proceedings referred to herein, counsel shall follow Judge Beetlestone's Policies and Procedures, a copy of which can be found online at www.paed.uscourts.gov.

BY THE COURT:

WENDY BEETLESTONE, J.

ENT'D JAN 25 2019

2

303a

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| *Plaintiff,* | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES' OBJECTIONS AND RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS

Pursuant to Federal Rules of Civil Procedure 26, 33, and 34, Defendant Educational Commission for Foreign Medical Graduates ("ECFMG"),[1] by and through its counsel, serves the following responses and objections to Plaintiff Dr. Orien L. Tulp's Interrogatories, Requests for Production of Documents, and Requests for Admissions ("Interrogatories and Requests").

### GENERAL RESPONSES AND OBJECTIONS

1.    All of these General Responses and Objections are incorporated into each of the Specific Responses and Objections set forth below. These General Responses and Objections, which form a part of ECFMG's Specific Responses and Objections to each individual Interrogatory and Request, are set forth here to avoid the duplication of restating them in response to each individual Interrogatory. The General Responses and Objections may also be specifically

---

[1]    On March 26, 2019, the Court dismissed all claims against Dr. William W. Pinsky. As a result, these Responses and Objections are made by and on behalf of ECFMG only, the sole remaining defendant.

1

referred to in ECFMG's Specific Responses and Objections to certain of the individual Interrogatories and Requests for purposes of emphasis and clarity. Omission from any Specific Response or Objection, however, should not be construed as a waiver of any General Response or Objection.

2.    ECFMG objects to the Interrogatories and Requests to the extent they seek to impose obligations that are inconsistent with or greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Pennsylvania, and/or the Court's rules and procedures.

3.    Unless ECFMG expressly states otherwise, neither the Requests and Interrogatories nor ECFMG's Responses and Objections to them shall be construed as admissions by ECFMG that any fact or circumstance alleged in any Request or Interrogatory occurred or existed or that Plaintiff's characterization of any facts or circumstances is correct.

4.    ECFMG objects to the Requests and Interrogatories to the extent that they seek information that is immune from disclosure, including information protected by the attorney-client privilege, the attorney work product doctrine, or any other legally cognizable privilege, protection, or immunity. Accordingly, ECFMG will not produce such information. The provision of any information that is privileged, protected, or immune from disclosure would be inadvertent and is not a waiver of any privilege, protection, or immunity.

5.    ECFMG objects to the Interrogatories and Requests as overbroad and unduly burdensome in the instances that Plaintiff has not identified an applicable time period. Where Plaintiff has not identified a time period applicable to a particular Interrogatory and Request, ECFMG will interpret the Interrogatory and Request as requesting information from August 1,

2018 to December 24, 2018, the date when the Complaint in the Action was filed, unless otherwise stated in a Response or Objection to a particular Request or Interrogatory.

6.    ECFMG objects to the Interrogatories and Requests to the extent that they seek documents and information that are not relevant to the claims or defenses of a party, and/or not proportional to the needs of this case.

7.    ECFMG objects to the Interrogatories and Requests to the extent they seek documents and information not within its possession, custody, or control, or seek documents and information that are already in the possession of Plaintiff or that are equally available to Plaintiff from other sources.

8.    These Responses and Objections reflect ECFMG's present knowledge, information, and belief. These Responses and Objections are therefore without prejudice to ECFMG's right to supplement, revise, modify, correct, add to, or clarify the Responses and Objections set forth herein and the information provided, should it discover additional documents, information, or grounds for objection. ECFMG reserves the right to rely on any facts, documents, evidence, or other contentions that may develop or come to its attention at a later time, and to supplement or amend the information contained in these Responses and Objections, including objections, at any time before trial in this Action should additional or different information become available. Moreover, if ECFMG at any time supplements or amends its Responses and Objections to these Interrogatories and Requests, by agreement or otherwise, ECFMG expressly reserves the right to assert any applicable objection, privilege, or other protection in connection with such supplementation or amendment.

9.    ECFMG objects to the Interrogatories and Requests to the extent that they purport to require ECFMG to undertake more than a reasonable good-faith search for information within

its possession, custody, or control responsive to the Interrogatories. ECFMG expressly disclaims any obligation or ability to respond to Requests and Interrogatories with information that is in the possession, custody, or control of Plaintiffs, third-parties, or former employees, except for the period of their employment at ECFMG.

10.    ECFMG objects to the Interrogatories and Requests to the extent they seek "all documents," "all written statements," or "all" of any type of material because the burden or expense of such discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Representing that "all documents," or "all" of any type of material, falling within a description have been located or identified, rather than documents that have been located or identified after a reasonably diligent search, is not proportional to the needs of the case.

11.    ECFMG objects to the Requests to the extent they purport to require ECFMG to engage in the collection or review of electronically stored information ("ESI"). Consistent with the Parties' agreement in the Joint Report of Rule 26(f) Meeting (Dkt. No. 19), ECFMG will not collect or review ESI in order to respond to the Requests.

12.    ECFMG further objects to the Interrogatories and Requests as vague and ambiguous to the extent Plaintiff does not identify with any specificity the information and material he seeks. As worded, many of the Interrogatories and Requests are so vague and ambiguous that ECFMG cannot reasonably formulate a response.

13.    In making its Objections, ECFMG does not waive, or intend to waive, but rather intends to preserve and is preserving:

   a.    All objections as to competency, relevance, materiality, or admissibility;

    b.  All rights to object on any ground to the use of any objections, responses, or

       answers;

    c.  All rights to object on any ground to any request for further responses to the

       Interrogatories or any other Interrogatories; and

    d.  The right at any time to amend, correct, add to, or clarify any of the responses,

       objections, or answers found herein.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:** WITNESSES: State the name and address of any person whom defendant believes may have any knowledge concerning the allegations made in the Complaint of the plaintiff or the defenses made by defendant.

**Response:**

    ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

further objects to this Interrogatory to the extent that it seeks information protected by the attorney-

client privilege, the attorney work-product doctrine, or other applicable privileges.

    Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

| Name | Address/Contact Information |
|---|---|
| Kara Corrado | Through ECFMG's Counsel. |
| Lisa Cover | Through ECFMG's Counsel. |
| Dr. Orien L. Tulp | Through Plaintiff's Counsel. |
| USAT Faculty / Employees (current / former) | Through Plaintiff's Counsel. |
| USAT Students (current / former) | Through Plaintiff's Counsel. |

**Interrogatory No. 2:** EVIDENCE: Identify any document, report, writing, statement, item, physical or tangible evidence which is in the possession of defendant or known to defendant, which

may be relevant to the allegations made in the Complaint of plaintiff or the defenses made by defendant.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the identity of "any" evidence "which may be relevant to the allegations made in the Complaint . . . or the defenses made by defendant," without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Interrogatory in that Plaintiff does not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has already produced (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools. ECFMG also refers to all of the exhibits used or cited in opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction and to any YouTube videos posted by USAT and/or in which Plaintiff appears.

**Interrogatory No. 3:** PHOTOGRAPHS AND DIAGRAMS: Identify any photographs, videotapes, audiotapes, slides, movies, charts or diagrams, which are in the possession of defendants or which are known to defendants.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the identity of "any" photographs and diagrams "which are in the possession of defendants or which are known to defendants," without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Interrogatory to the extent it asks ECFMG to identify documents and information in the possession of Plaintiff or that are equally available to Plaintiff from other sources, including public sources. ECFMG further objects to this Interrogatory in that Plaintiff does not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has already produced (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools. ECFMG also refers to all of the exhibits used or cited in opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction and to any YouTube videos posted by USAT and/or in which Plaintiff appears.

**Interrogatory No. 4:** STATEMENTS: Have you or any person acting on your behalf obtained from any person any statement (as defined by the Rules of Civil Procedure) or had any conversation with anyone concerning this action or its subject matter? If so, identify:

      (a)     each such person;

      (b)     when, where, by whom, and to whom each statement was made and whether it was reduced to writing or recorded;

      (c)     any person who has custody of any such statements which was reduced to writing or recorded;

      (d)     attach a copy of the statement.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the identity of "any" statement or conversation with unspecified parties "concerning this action or its subject matter," without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Interrogatory in that Plaintiff does not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has already produced (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools.

ECFMG also refers to all of the exhibits used or cited in opposition to Plaintiff's Motion for a

Preliminary and/or Permanent Injunction and to any YouTube videos posted by USAT and/or in

which Plaintiff appears. .

**Interrogatory No. 5:** EXPERTS: State the name, address and field of expertise of each expert
whose testimony you intend to present at the trial of this case. State the subject matter about
which the expert is expected to testify, the facts and opinions to which he or she is expected to
testify, and a summary of the grounds for each opinion. Identify the expert's publications and
previous cases in which the expert has appeared. Attach a copy of any report by the expert and a
curriculum vitae.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

further objects to this Interrogatory to the extent that it seeks information protected by the attorney-

client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

Plaintiff has not disclosed any expert witnesses, and Plaintiff's counsel represented at the Rule 16

conference that they did not anticipate presenting any expert witnesses. ECFMG reserves the right

to revisit its expert disclosures if something changes.

**Interrogatory No. 6:** INSURANCE: State the policy numbers, insurance company, and amount
of coverage of any insurance policy naming a defendant as an insured, or in which a defendant
has an insurable interest, or the existence of any insurance policy, which could apply to the
claims of the plaintiff, including umbrella, excess, automobile, commercial and homeowner's
policies. Attach a "Face Sheet" or equivalent documentation indicating the policy limits of each
such insurance coverage. Indicate whether there has been a disclaimer or a reservation of rights
by an insurance carrier of defendant.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Interrogatory as vague and ambiguous with respect to the undefined term "Face

Sheet." ECFMG further objects to this Interrogatory to the extent that it seeks information

protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG is investigating whether any insurance agreements exist under which an insurance business may be liable to satisfy all or part of a possible judgment in the Action or to indemnify or reimburse for payments made to satisfy a possible judgment in the Action. Given the ongoing and continuing nature of this investigation, ECFMG specifically reserves its right to supplement its response to this Interrogatory to reflect additional facts and documents.

**Interrogatory No. 7:** TRIAL WITNESSES: Identify each witness by name and address that defendant intends to call or subpoena at the trial or arbitration of this case.

**Response**:

ECFMG reasserts and incorporates each of the General Objections and Objections to Definitions and Instructions above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges. ECFMG further objects to this Interrogatory as it is premature.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG will identify persons who it may call as fact witnesses at trial pursuant to the applicable deadlines scheduled by the Court for such disclosure at the appropriate time.

**Interrogatory No. 8:** TRIAL EVIDENCE: Identify each document, item or exhibit, which defendant intends to use, refer to, mark or introduce into evidence at deposition, trial or arbitration of this case. Attach copies of any documents, photographs or other items which will be used, referred to, or introduced.

**Response**:

ECFMG reasserts and incorporates each of the General Objections above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client

privilege, the attorney work-product doctrine, or other applicable privileges. ECFMG further objects to this Interrogatory as it is premature.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG will identify its trial evidence pursuant to the applicable deadlines scheduled by the Court for such disclosure at the appropriate time.

**Interrogatory No. 9:** SOURCES: Identify all persons, documents, and sources of information that were used or consulted in answering this document, other than defendant's counsel.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG used the following sources of information to respond to the Interrogatories:

- Documents already produced by ECFMG, including (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools.

- Exhibits used or cited in connection with Plaintiff's Motion for a Preliminary and/or Permanent Injunction, including YouTube videos posted by USAT and/or in which Plaintiff appears.

- Documents filed in the action.

**Interrogatory No. 10:** DEFENSES: State the factual basis of any defense which defendant has asserted in a pleading, or which defendant intends to assert at trial.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges. ECFMG further objects to this Interrogatory to the extent it purports to compel ECFMG to draw legal conclusions in order to respond.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: The factual basis of ECFMG's defenses may be determined by examining the Background section of ECFMG's Opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction, the transcript of the January 24, 2019 injunction hearing before Judge Beetlestone, and the materials that ECFMG has already produced. *See* Dkt. No. 12, Section II.

**Interrogatory No. 11:** CONTRIBUTORY NEGLIGENCE: If defendant alleges contributory negligence by the plaintiff, then state the factual basis for this contention.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges. ECFMG further objects to this Interrogatory to the extent it purports to compel ECFMG to draw legal conclusions in order to respond.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has not alleged contributory negligence by the Plaintiff and thus will not provide the factual basis for this inapplicable defense.

**Interrogatory No. 12:** DEFENDANT'S VERSION: State briefly defendant's version of the incident described in plaintiff's Complaint, it materially differs from what plaintiff has alleged.

12
315a

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the

needs of the case because it seeks Defendant's version of the incident described in Plaintiff's

Complaint, without regard for whether such materials are in any way related to the sole remaining

due process claim in the Action. ECFMG further objects to this Interrogatory in that Plaintiff does

not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague

and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to

this Interrogatory to the extent that it seeks information protected by the attorney-client privilege,

the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

The answer to this Interrogatory may be determined by examining the Background section of

ECFMG's Opposition to Plaintiff's Motion for a Preliminary and/or Permanent Injunction, the

transcript of the January 24, 2019 injunction hearing before Judge Beetlestone, and the materials

that ECFMG has already produced. *See* Dkt. No. 12, Section II.

**Interrogatory No. 13:** DEFENDANT'S FILE: Identify any document, writing or evidence, that
is not privileged, which has been obtained by defendant in connection with this lawsuit and has
not been previously supplied to plaintiff or by plaintiff, including any document which mentions
or refers to the parties, witnesses or the subject matter of this lawsuit, or a defense asserted
thereto.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the

needs of the case because it seeks the identity of "any document, writing or evidence" "which has

been obtained by defendant in connection with this lawsuit," without regard for whether such

materials are in any way related to the sole remaining due process claim in the Action. ECFMG

further objects to this Interrogatory in that Plaintiff does not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: To the extent that this Interrogatory calls for properly discoverable information, such information would be subsumed within Plaintiff's other, more specific discovery requests.

**Interrogatory No. 14:** LIABILITY BY ANOTHER: If defendant maintains that someone or some entity, who is not a party to this lawsuit, may be liable to plaintiff, then fully identify that person or entity, and state the factual basis for the alleged liability.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges. ECFMG further objects to this Interrogatory to the extent it purports to compel ECFMG to draw legal conclusions in order to respond.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: Plaintiff is responsible for the consequences of his own actions, including providing false information to ECFMG.

**Interrogatory No. 15:** DESIGNATION OF DEFENDANT: If it is maintained that defendant has been improperly named or designated in this lawsuit, state the correct name of defendant and indicate whether defendant will stipulate to amend the Complaint to reflect the correct name. Has defendant's insurance carrier indicated that insurance coverage is not applicable based on an improper designation of defendant in this lawsuit?

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG previously moved for the dismissal of Dr. William W. Pinsky as a defendant in this Action. The Court granted ECFMG's motion in part and dismissed the sole claim against Dr. Pinsky on March 26, 2019. Dkt. No. 29. Moreover, ECFMG is not properly a defendant in this lawsuit, and all claims against ECFMG fail as a matter of law.

**Interrogatory No. 16:** <u>PRIVILEGED MATERIAL</u>: Identify any terms or material relevant to this lawsuit which defendant has not supplied, because defendant believes that such material is privileged, confidential or not subject to discovery, except material generated by counsel, and the legal basis for withholding the material.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Interrogatory as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the identity of "any" material relevant to this lawsuit, without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Interrogatory in that Plaintiff does not identify with any specificity the information he seeks. As worded, the Interrogatory is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Interrogatory to the extent it seeks to impose obligations that are inconsistent with or greater than those imposed by the Federal Rules of Civil Procedure, the Local Rules of the Eastern District of Pennsylvania, and/or the Court's rules and procedures. ECFMG further objects to this Interrogatory to the extent

that it seeks information protected by the attorney-client privilege, the attorney work-product

doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

ECFMG is open to meeting and conferring with Plaintiff regarding a mutual exchange of privilege

logs, if any.

## SPECIFIC RESPONSES AND OBJECTIONS TO
## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    TRIAL, DEPOSITION OR ARBITRATION EVIDENCE. All documents, exhibits, items
or evidence of any type which defendant intends to use, refer to, mark or introduce at deposition,
arbitration, or trial of this case. Please list any evidentiary material which defendant has or is
supplying to plaintiffs. **Plaintiffs will object to any evidence, which defense counsel has not
sent directly to plaintiffs' counsel in discovery in a timely manner, including documents
obtained from third parties by subpoena or request to produce. This request for production
is a continuing request, which requires defendant through defense counsel, to supplement
their answers and produce directly to plaintiffs' counsel in a timely manner, any evidence
received after defendant's response herein.**

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above.  ECFMG

objects to this Request to the extent it seeks information that is in the possession, custody, or

control of Plaintiff.  ECFMG further objects to this Request to the extent that it seeks information

or documents that are protected from disclosure by the attorney-client privilege and/or the work-

product doctrine.  ECFMG further objections to this Request to the extent it seeks to impose

obligations that are inconsistent with or greater than those imposed by the Federal Rules of Civil

Procedure, the Local Rules of the Eastern District of Pennsylvania, and/or the Court's rules and

procedures.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

ECFMG has already produced (1) the materials ECFMG provided to the Medical Education

Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials

RA 0632

ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools. ECFMG specifically reserves the right to use any materials that are in the public domain or that are in the possession, custody, or control of Plaintiff, have been used at any hearing or in connection with any briefing in this Action, or that have otherwise been produced in connection with the Action. ECFMG will provide its trial exhibit list pursuant to the applicable deadlines scheduled by the Court for such disclosure at the appropriate time.

2.    <u>PHOTOGRAPHS</u>: All photographs and diagrams of any person, place or thing which is directly or indirectly related to the incident set forth in the plaintiff's Complaint, or in defendant's response.

<u>Response</u>:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the production of "all" photographs and diagrams "directly or indirectly related to the incident set forth in the plaintiff's Complaint," without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Request in that Plaintiff does not identify with any specificity the materials he seeks. As worded, the Request is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Request to the extent it seeks information that is in the possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: To the extent that this Request calls for properly discoverable documents, such documents would be subsumed within Plaintiff's other, more specific discovery requests.

3.    STATEMENTS: All written statements (signed or unsigned), descriptions of statements, records and written accounts of investigations relating to this lawsuit.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the production of "all" written statements, descriptions of statements, records, and written accounts "relating to this lawsuit," without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Request in that Plaintiff does not identify with any specificity the materials he seeks. As worded, the Request is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Request to the extent it seeks information that is in the possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has already produced (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools. ECFMG specifically reserves the right to use any materials that are in the public domain or that

PA 0624

are in the possession, custody, or control of Plaintiff, have been used at any hearing or in

connection with any briefing in this Action, or that have otherwise been produced in connection

with the Action.

4.    WITNESS DOCUMENTS: Any documents or writings, which mention or refer to the
parties in this lawsuit or any witness in this lawsuit, including **all medical records obtained by
the defendant**, which refer to plaintiffs or the incident involving plaintiffs, or to defendant or the
incident involving defendant.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs

of the case because it seeks the production of any materials "which mention or refer to the parties

in this lawsuit or any witness in this lawsuit," "plaintiffs or the incident involving plaintiffs, or to

defendant or the incident involving defendant," without regard for whether such materials are in

any way related to the sole remaining due process claim in the Action. ECFMG further objects to

this Request in that Plaintiff does not identify with any specificity the materials he seeks. As

worded, the Request is so vague and ambiguous that ECFMG cannot reasonably formulate a

response. ECFMG further objects to this Request to the extent it seeks information that is in the

possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent

that it seeks information or documents that are protected from disclosure by the attorney-client

privilege and/or the work-product doctrine. ECFMG further objects to this Request to the extent

that it is not tailored to the facts or circumstances of the Action.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

ECFMG has already produced (1) the materials ECFMG provided to the Medical Education

Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials

ECFMG provided to the Medical Education Credentials Committee in connection with its review

of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain

documents pertaining to USAT's sponsor note in the World Directory of Medical Schools.

ECFMG specifically reserves the right to use any materials that are in the public domain or that

are in the possession, custody, or control of Plaintiff, have been used at any hearing or in

connection with any briefing in this Action, or that have otherwise been produced in connection

with the Action.

5.    INSURANCE: The "face-sheet" of any insurance policies, including excess or umbrella
policies, under which the defendant was an insured or had an insurable interest on or about the
time of the incident described in the Complaint by the plaintiffs, including the policy limits of all
insurance policies, and any supporting documentation if there is a reservation of rights or
disclaimer by an insurance carrier.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Request as vague and ambiguous with respect to the undefined term "face-sheet."

ECFMG further objects to this Request to the extent that it seeks information protected by the

attorney-client privilege, the attorney work-product doctrine, or other applicable privileges.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

ECFMG is investigating whether any insurance agreements exist under which an insurance

business may be liable to satisfy all or part of a possible judgment in the Action or to indemnify

or reimburse for payments made to satisfy a possible judgment in the Action. Given the ongoing

and continuing nature of this investigation, ECFMG specifically reserves its right to supplement

its response to this Request to reflect additional facts and documents.

6.    DOCUMENTS AND TANGIBLE EVIDENCE: All writings, items, memoranda, data and
tangible things which relate directly or indirectly to the incident set forth in the plaintiff's
Complaint or to the answer to a Complaint or to any defenses asserted in this lawsuit. List and
describe any items which can not be photocopied.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks the production of "all" documents and tangible evidence "which relate directly or indirectly to the incident set forth in the plaintiff's Complaint," to the answer, or to any defenses asserted in this lawsuit, without regard for whether such materials are in any way related to the sole remaining due process claim in the Action. ECFMG further objects to this Request in that Plaintiff does not identify with any specificity the materials he seeks. As worded, the Request is so vague and ambiguous that ECFMG cannot reasonably formulate a response. ECFMG further objects to this Request to the extent it seeks information that is in the possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG has already produced (1) the materials ECFMG provided to the Medical Education Credentials Committee in connection with Plaintiff's irregular behavior hearing, (2) the materials ECFMG provided to the Medical Education Credentials Committee in connection with its review of USAT, (3) other documents relating to Plaintiff's irregular behavior hearing, and (4) certain documents pertaining to USAT's sponsor note in the World Directory of Medical Schools. ECFMG specifically reserves the right to use any materials that are in the public domain or that are in the possession, custody, or control of Plaintiff, have been used at any hearing or in connection with any briefing in this Action, or that have otherwise been produced in connection with the Action.

7.    <u>EVIDENCE IN POSSESSION OF DEFENDANT</u>: Produce any item, (or identify any item which can not be produced) material or tangible evidence in the possession of defendant or defendant's agents, which is not privileged, which may lead to discoverable evidence in this lawsuit, or which is relevant to a claim, defense or the subject matter of this lawsuit, including but not limited to, any photographs, statements, contracts, accident reports, letters, diagrams, manuals, memos, rules or regulations, investigation reports, agreements, models, tapes, personnel files, or computer-generated material.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs

of the case because it seeks the production of any evidence in possession of Defendant, without

regard for whether such materials are in any way related to the sole remaining due process claim

in the Action. ECFMG objects to this Request to the extent it seeks information that is in the

possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent

that it seeks information or documents that are protected from disclosure by the attorney-client

privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

To the extent that this Request calls for properly discoverable documents, such documents would

be subsumed within Plaintiff's other, more specific discovery requests.

8.    <u>SUBPOENAS AND DOCUMENT REQUESTS</u>: Copies of all subpoenas and request for production issued by defendant or its agents in relation to this case, including witness or deposition subpoenas, and subpoenas requesting records or documents.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

objects to this Request to the extent it seeks information that is in the possession, custody, or

control of Plaintiff. ECFMG further objects to this Request to the extent that it seeks information

or documents that are protected from disclosure by the attorney-client privilege and/or the work-

product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

ECFMG has already served Plaintiff with (1) Defendants' First Set of Interrogatories and First Set

of Requests for Production of Documents to Dr. Orien L. Tulp, (2) a Notice of Deposition of

Plaintiff Dr. Orien L. Tulp, and (3) a Subpoena to Testify at a Deposition to Carla Konyk Tulp

(which was later withdrawn).

### SPECIFIC RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSIONS WITH SUPPLEMENTAL INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    **Admission**: Defendants have in their possession or in the possession of their employees, the complete file of Tony Brown.

1(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

further objects to this Request on the grounds that it is vague, ambiguous, and lacking particularity

as it does not define the term "complete file" or specifically identify the individual referred to as

"Tony Brown." ECFMG further objects to this Request as overly broad, unduly burdensome,

and/or not proportional to the needs of the case because it seeks information on an individual who

has never been mentioned in this Action before, without regard for whether such individual is

related to the sole remaining due process claim in the Action. ECFMG further objects to this

Request to the extent it purports to be more than a Request for Admission. ECFMG further objects

to this Request to the extent that it seeks information or documents that are protected from

disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

Following a reasonable inquiry, ECFMG lacks sufficient information to admit or deny this Request

because (1) the Request is unclear insofar as the term "complete file" is undefined and capable of multiple, inconsistent meanings, (2) the Request does not identify "Tony Brown" with specificity, and (3) the Request appears to be irrelevant to the sole remaining due process claim in the Action.

2.    **Admission**: List all schools that the ECFMG have brought charges against, from 1903 to the present time and the allegations against them

2(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks information extending over more than a one-hundred-year time period, without regard for whether such information is related to the sole remaining due process claim in the Action. ECFMG further objects to this Request as stated because it is an interrogatory, and not a proper request for admission, and therefore the Request is nonsensical. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG applies the "irregular behavior" standard to individuals, not institutions. This is evident from the definition of "Irregular behavior" in ECFMG's Policies and Procedures Regarding Irregular Behavior. *See* Dkt. No. 12-3 at 27.

3.    **Admission**: Kara Corrado is not an attorney.

3(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG objects to this Request to the extent it seeks information that is in the possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: Admitted. Kara Corrado has a Juris Doctor degree and is not a practicing attorney. *See* Jan. 24, 2019 Hr'g Tr. 36:12-15.

4.    **Admission**: The term "campus" is not defined by the ECFMG.

4(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks information, without regard for whether such information is related to the sole remaining due process claim in the Action. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

Denied. ECFMG uses the word campus in its common parlance. ECFMG directs Plaintiff to the

Merriam-Webster Dictionary for the definition of campus: "(1) the grounds and buildings of a

university, college, or school"; "(2) a university, college, or school viewed as an academic, social,

or spiritual entity"; "(3) grounds that resemble a campus." This is the same common meaning with

which Dr. Tulp has used the word "campus" prior to this litigation. *See* Dkt. No. 12 at 8 nn.4-5;

Dkt. No. 12-6; Jan. 24, 2019 Hr'g Tr. 79:21-24, 87:1-8.

5.    **Admission**: "Irregular behavior" is a term that is used for actions that are not in
accordance with the policies of the ECFMG.

5(a).    If the answer to the proceeding request for admissions is anything other than an
unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies
of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

further objects to this Request as overly broad, unduly burdensome, and/or not proportional to the

needs of the case because it seeks information, without regard for whether such information is

related to the sole remaining due process claim in the Action. ECFMG further objects to this

Request to the extent it purports to be more than a Request for Admission. ECFMG further objects

to this Request to the extent that it seeks information or documents that are protected from

disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of these objections, ECFMG responds as follows: ECFMG

admits in part this Request, as actions that are not in accordance with the policies of ECFMG can

constitute "Irregular behavior," although this is not a complete definition. By way of further

response, ECFMG directs Plaintiff to the definition of "Irregular behavior" in its Policies and

Procedures Regarding Irregular Behavior, which ECFMG has previously provided to Plaintiff:

"*Irregular behavior* includes all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or examinee, or any other person that would or could subvert the examination, certification or other processes, programs or services of ECFMG, including, but not limited to, the ECFMG Exchange Visitor Sponsorship Program, ECFMG International Credentials Services (EICS), the Electronic Portfolio of International Credentials (EPIC), and Electronic Residency Application Service (ERAS) Support Services at ECFMG. Such actions or attempted actions are considered irregular behavior, regardless of when the irregular behavior occurs, and regardless of whether the individual is certified by ECFMG. Examples of irregular behavior include, but are not limited to, submission of any falsified or altered document to ECFMG, whether submitted by the individual or by a third party, such as a medical school, on behalf of the individual; failing to comply with United States Medical Licensing Examination or ECFMG policies, procedures, and/or rules; falsification of information on applications, submissions, or other materials to ECFMG; taking an examination when not eligible to do so, or submission of any falsified or altered ECFMG document to other entities or individuals."

*See* Dkt. No. 12-3 at 27.

6.    **Admission:** "Irregular behavior" is directed to individuals who are involved in the process of application for ECFMG certification.

6(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response:**

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Request as overly broad, unduly burdensome, and/or not proportional to the needs of the case because it seeks information, without regard for whether such information is related to the sole remaining due process claim in the Action. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of these objections, ECFMG responds as follows: ECFMG admits in part this Request, as "Irregular behavior" can be "directed to individuals who are

involved in the process of application for ECFMG certification," although this is not a complete

list of those who ECFMG may find to have engaged in irregular behavior. By way of further

response, ECFMG directs Plaintiff to the definition of "Irregular behavior" in its Policies and

Procedures Regarding Irregular Behavior, which ECFMG has previously provided to Plaintiff:

> "*Irregular behavior* includes all actions or attempted actions on the part of
> applicants, examinees, potential applicants, others when solicited by an applicant
> and/or examinee, or **any other person** that would or could subvert the examination,
> certification or other processes, programs or services of ECFMG, . . ."

*See* Dkt. No. 12-3 at 27 (emphasis added).

7.    **Admission**: If a foreign medical student or graduate does not obtain certification by
ECFMG, it would be difficult for that person to practice medicine in the United States.

7(a).    If the answer to the proceeding request for admissions is anything other than an unqualified
"admitted," state all facts upon which the answer is based. Produce and attach copies of any
documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG

further objects to this Request as overly broad, unduly burdensome, and/or not proportional to the

needs of the case because it seeks information, without regard for whether such information is

related to the sole remaining due process claim in the Action. ECFMG further objects to this

Request because it requires knowledge and information outside of ECFMG's present possession,

custody, or control. ECFMG further objects to this Request as vague and ambiguous to the extent

it uses the undefined term "difficult," which may have multiple conflicting meanings. ECFMG

further objects to this Request as vague and ambiguous to the extent it asks ECFMG to opine on

the difficulty a hypothetical foreign medical student or graduate with unstated credentials or

abilities may have in practicing medicine in the United States. ECFMG further objects to this

Request to the extent it purports to be more than a Request for Admission. ECFMG further objects

to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG is not able to admit or deny the Request as phrased because it seeks an admission regarding the difficulties that may be faced by a hypothetical foreign medical student or graduate with unstated credentials or abilities. By way of further response, ECFMG does not control the various third parties (*e.g.*, ACGME, state medical licensing boards) who exercise their discretion in choosing what weight (if any) to afford ECFMG certification.

8.    **Admission**: The effort of the committee who heard the allegations against Dr. Tulp was not a committee where things were submitted as evidence, but basically a proceeding where Dr. Tulp has an opportunity to make a statement on his behalf.

8(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Request to the extent it is vague, compound, ambiguous, and lacking particularity because of the undefined terms "the effort of the committee," and "submitted as evidence." ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG denies the Request as stated. ECFMG directs Plaintiff to ECFMG's Policies and Procedures Regarding Irregular Behavior, which provides that an individual charged with alleged irregular behavior is given "an opportunity to provide written explanation and to present other

relevant information" to the Medical Education Credentials Committee and "may also request the opportunity to appear personally" before the Committee, "and may be represented by legal counsel." ECFMG also directs Plaintiff to the transcript of the hearing on Plaintiff's Motion for a Preliminary and/or Permanent Injunction, during which Kara Corrado testified that although there is not a process during which documents are introduced as evidence at the hearing, the Committee considers evidence that is provided to it and the individual before the hearing. Jan. 24, 2019 Hr'g Tr. 23:8–17, 26: 24–27:10, 28:18–29:3.

9.    **Admission**: In 2018, ECFMG determined that Dr. Tulp engaged in "irregular behavior" in connection with providing false information to the ECFMG.

9(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above.  ECFMG objects to this Request to the extent it seeks information that is in the possession, custody, or control of Plaintiff. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request to the extent that it seeks information or documents that are protected from disclosure by the attorney-client privilege and/or the work-product doctrine.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows:

Admitted.

10.    **Admission**: The WDMS, the World Directory of Medical Schools, is a Directory that ECFMG co-sponsors and has an office in the same building as ECFMG.

10(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

**Response**:

ECFMG reasserts and incorporates the General Objections as set forth above. ECFMG further objects to this Request to the extent it is vague, compound, ambiguous, and lacking particularity because of the undefined term "co-sponsors," and ECFMG objects to Plaintiff's characterization of the term "co-sponsors." For purposes of responding to this Request, ECFMG interprets the term "co-sponsor" to mean "sponsor" as that term is used in the ECFMG Information Booklet. *See* Dkt. No. 12-4 at 5. ECFMG further objects to this Request to the extent it purports to be more than a Request for Admission. ECFMG further objects to this Request because it requires knowledge and information outside of ECFMG's present possession, custody, or control.

Subject to and without waiver of the foregoing objections, ECFMG responds as follows: ECFMG admits that it is one of several organizations that "sponsor" the WDOMS. ECFMG denies that the WDOMS has an office in the same building as ECFMG.

DATED: April 24, 2019

/s/ Elisa P. McEnroe
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:        +1.215.963.5917
Facsimile:        +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorney for the Educational Commission for
Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2019, a copy of the foregoing was served via electronic and/or regular mail on all counsel of record.

/s/ Elisa P. McEnroe
Elisa P. McEnroe

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                                          ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| DR. ORIEN L. TULP | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, and Technology | : | DISTRICT OF PENNSYLVANIA |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| EDUCATIONAL COMMISSION FOR | : | |
| FOREIGN MEDICAL GRADUATES | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| DR. WILLIAM W. PINSKY, PRESIDENT | : | |
| AND CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : JURY TRIAL DEMANDED | |

## PLAINTIFFS' REQUEST FOR ADMISSIONS WITH SUPPLEMENTAL INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO ALL DEFENDANTS

Plaintiffs, by their undersigned attorney, hereby serves upon all defendants, this Request for Admissions with Interrogatories and Request for Production of Documents, pursuant to the Pennsylvania of Civil Procedure. Each matter set forth herein in the Request for Admissions shall be deemed admitted, unless you serve an answer or objection upon counsel within thirty (30) days of service hereof, or within forty-five (45) days from the date of service of original process.

1.      **Admission:** Defendants have in their possession or in the possession of their employees, the complete file of Tony Brown.

1(a).   If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

336a

2.    **Admission:** List all schools that the ECFMG have brought charges against, from 1903 to the present time and the allegations against them

2(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

3.    **Admission:** Kara Corrado is not an attorney.

3(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

4.    **Admission:** The term "campus" is not defined by the ECFMG.

4(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

5.    **Admission:** "Irregular behavior" is a term that is used for actions that are not in accordance with the policies of the ECFMG.

5(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

6.    **Admission:** "Irregular behavior" is directed to individuals who are involved in the process of application for ECFMG certification.

6(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

7.    **Admission:** If a foreign medical student or graduate does not obtain certification by ECFMG, it would be difficult for that person to practice medicine in the United States.

7(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

8.    **Admission:** The effort of the committee who heard the allegations against Dr. Tulp was not a committee where things were submitted as evidence, but basically a proceeding where Dr. Tulp has an opportunity to make a statement on his behalf.

8(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

9.    **Admission:** In 2018, ECFMG determined that Dr. Tulp engaged in "irregular behavior" in connection with providing false information to the ECFMG.

9(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

10.    **Admission:** The WDMS, the World Directory of Medical Schools, is a Directory that ECFMG co-sponsors and has an office in the same building as ECFMG.

10(a).    If the answer to the proceeding request for admissions is anything other than an unqualified "admitted," state all facts upon which the answer is based. Produce and attach copies of any documents, evidence or items reviewed, or relied upon, in your answer.

Respectfully submitted,

William C. Reil

William C. Reil
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was served upon all other parties or their counsel of record by:

| | |
|---|---|
| _____ | Regular First Class Mail |
| _____X_____ | Electronic Mail |
| _____ | Certified Mail |
| _____ | Hand-Delivered |
| _____ | Electronic Filing |
| _____ | Federal Express |

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635
ID: 26833
03/22/19

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1635                              ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, | : | DISTRICT OF PENNSYLVANIA |
| and Technology | : | |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## PLAINTIFFS' INTERROGATORIES ADDRESSED TO ALL DEFENDANTS

Plaintiffs, by the undersigned attorney, hereby serve upon all defendants these

Interrogatories, pursuant to the Federal Rules of Civil Procedure. You are hereby

notified to Answer the following Interrogatories within thirty (30) days from the date

hereof. These Interrogatories are continuing. You are, therefore, also notified to

supplement or amend your answers promptly upon discovery of information that any

answers are inaccurate or incomplete. The term "Defendant," for the purposes of these

Interrogatories, includes the agents, servants and employees of all defendants in this

lawsuit.

340a

### PLAINTIFFS' INTERROGATORIES ADDRESSED TO ALL DEFENDANTS

1.  WITNESSES:  State the name and address of any person whom defendant believes may have any knowledge concerning the allegations made in the Complaint of the plaintiff or the defenses made by defendant.

2.  EVIDENCE:  Identify any document, report, writing, statement, item, physical or tangible evidence which is in the possession of defendant or known to defendant, which may be relevant to the allegations made in the Complaint of plaintiff or the defenses made by defendant.

3.  PHOTOGRAPHS AND DIAGRAMS:  Identify any photographs, videotapes, audiotapes, slides, movies, charts or diagrams, which are in the possession of defendants or which are known to defendants.

4.   <u>STATEMENTS</u>:   Have you or any person acting on your behalf obtained from any person any statement (as defined by the Rules of Civil Procedure) or had any conversation with anyone concerning this action or its subject matter? If so, identify:

    (a) each such person;

    (b) when, where, by whom, and to whom each statement was made and whether it was reduced to writing or recorded;

    (c) any person who has custody of any such statements which was reduced to writing or recorded;

    (d) attach a copy of the statement.

5.   <u>EXPERTS</u>:   State the name, address and field of expertise of each expert whose testimony you intend to present at the trial of this case. State the subject matter about which the expert is expected to testify, the facts and opinions to which he or she is expected to testify, and a summary of the grounds for each opinion. Identify the expert's publications and previous cases in which the expert has appeared. Attach a copy of any report by the expert and a curriculum vitae.

6.  INSURANCE:   State the policy numbers, insurance company, and amount of coverage of any insurance policy naming a defendant as an insured, or in which a defendant has an insurable interest, or the existence of any insurance policy, which could apply to the claims of the plaintiff, including umbrella, excess, automobile, commercial and homeowner's policies. Attach a "Face Sheet" or equivalent documentation indicating the policy limits of each such insurance coverage. Indicate whether there has been a disclaimer or a reservation of rights by an insurance carrier of defendant.

7.  TRIAL WITNESSES:   Identify each witness by name and address that defendant intends to call or subpoena at the trial or arbitration of this case.

8.  TRIAL EVIDENCE:   Identify each document, item or exhibit, which defendant intends to use, refer to, mark or introduce into evidence at deposition, trial or arbitration of this case. Attach copies of any documents, photographs or other items which will be used, referred to, or introduced.

9.   SOURCES:   Identify all persons, documents, and sources of information that were used or consulted in answering this document, other than defendant's counsel.

10.   DEFENSES:   State the factual basis of any defense which defendant has asserted in a pleading, or which defendant intends to assert at trial.

11.   CONTRIBUTORY NEGLIGENCE:   If defendant alleges contributory negligence by the plaintiff, then state the factual basis for this contention.

12.   DEFENDANT'S VERSION:   State briefly defendant's version of the incident described in plaintiff's Complaint, it it materially differs from what plaintiff has alleged.

13. DEFENDANT'S FILE:    Identify any document, writing or evidence, that is not privileged, which has been obtained by defendant in connection with this lawsuit and has not been previously supplied to plaintiff or by plaintiff, including any document which mentions or refers to the parties, witnesses or the subject matter of this lawsuit, or a defense asserted thereto.

14. LIABILITY BY ANOTHER:    If defendant maintains that someone or some entity, who is not a party to this lawsuit, may be liable to plaintiff, then fully identify that person or entity, and state the factual basis for the alleged liability.

15. DESIGNATION OF DEFENDANT:    If it is maintained that defendant has been improperly named or designated in this lawsuit, state the correct name of defendant and indicate whether defendant will stipulate to amend the Complaint to reflect the correct name. Has defendant's insurance carrier indicated that insurance coverage is not applicable based on an improper designation of defendant in this lawsuit?

16. PRIVILEGED MATERIAL:    Identify any terms or material relevant to this lawsuit which defendant has not supplied, because defendant believes that such material is privileged, confidential or not subject to discovery, except material generated by counsel, and the legal basis for withholding the material.

Date: 03/15/19

William C. Reil
Attorney for Plaintiffs

345a

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
1515 Market Street, Suite 1200
Philadelphia, PA 19102
215-564-1636                 ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| Dr. Orien L. Tulp | : | UNITED STATES DISTRICT |
| President of the | : | COURT FOR THE EASTERN |
| University of Science, Arts, | : | DISTRICT OF PENNSYLVANIA |
| and Technology | : | |
| 4288 Youngfield Street | : | |
| Wheat Ridge, CO 80033 | : | CIVIL ACTION NO. |
| vs. | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | |
| and | : | |
| Dr. William W. Pinsky | : | |
| President and CEO | : | |
| Educational Commission for | : | |
| Foreign Medical Graduates | : | |
| 3624 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO ALL DEFENDANTS

Plaintiffs, by the undersigned attorney, hereby serve upon all defendants this Request for Production of Documents, pursuant to the Federal Rules of Civil Procedure. These documents and/or items are to be produced at the Offices of plaintiffs' counsel at 1515 Market St., Suite 1200, Philadelphia, PA 19102, and this request for production answered within thirty (30) days of the date of service hereof. Such requests are continuing up to and at the time of trial. The term "Defendant," for the purposes of these documents, includes the agents, servants and employees of all defendants in this lawsuit.

## PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS ADDRESSED TO ALL DEFENDANTS

1. TRIAL, DEPOSITION OR ARBITRATION EVIDENCE.  All documents, exhibits, items or evidence of any type which defendant intends to use, refer to, mark or introduce at deposition, arbitration, or trial of this case. Please list any evidentiary material which defendant has or is supplying to plaintiffs. **Plaintiffs will object to any evidence, which defense counsel has not sent directly to plaintiffs' counsel in discovery in a timely manner, including documents obtained from third parties by subpoena or request to produce. This request for production is a continuing request, which requires defendant through defense counsel, to supplement their answers and produce directly to plaintiffs' counsel in a timely manner, any evidence received after defendant's response herein.**

2. PHOTOGRAPHS:   All photographs and diagrams of any person, place or thing which is directly or indirectly related to the incident set forth in the plaintiff's Complaint, or in defendant's response.

3. STATEMENTS:   All written statements (signed or unsigned), descriptions of statements, records and written accounts of investigations relating to this lawsuit.

4. WITNESS DOCUMENTS:   Any documents or writings, which mention or refer to the parties in this lawsuit or any witness in this lawsuit, including **all medical records obtained by the defendant,** which refer to plaintiffs or the incident involving plaintiffs, or to defendant or the incident involving defendant.

5. INSURANCE:   The "face-sheet" of any insurance policies, including excess or umbrella policies, under which the defendant was an insured or had an insurable interest on or about the time of the incident described in the Complaint by the plaintiffs, including the policy limits of all insurance policies, and any supporting documentation if there is a reservation of rights or disclaimer by an insurance carrier.

6. DOCUMENTS AND TANGIBLE EVIDENCE:   All writings, items, memoranda, data and tangible things which relate directly or indirectly to the incident set forth in the plaintiff's Complaint or to the answer to a Complaint or to any defenses asserted in this lawsuit. List and describe any items which can not be photocopied.

7. EVIDENCE IN POSSESSION OF DEFENDANT:   Produce any item, (or identify any item which can not be produced) material or tangible evidence in the possession of defendant or defendant's agents, which is not privileged, which may lead to discoverable evidence in this lawsuit, or which is relevant to a claim, defense or the subject matter of this lawsuit, including but not limited to, any photographs, statements, contracts, accident reports, letters, diagrams, manuals, memos, rules or regulations, investigation reports, agreements, models, tapes, personnel files, or computer-generated material.

8.    SUBPOENAS AND DOCUMENT REQUESTS: Copies of all subpoenas and
      request for production issued by defendant or its agents in relation to this case,
      including witness or deposition subpoenas, and subpoenas requesting records
      or documents.

Date: 03/15/19

William C. Reil, Esquire
Attorney for Plaintiffs

348a

## CERTIFICATE OF SERVICE

I certify that I will serve in accordance with P.A.R.C.P. 440 all parties not served electronically. I further certify that a true and correct copy of the attached document (s) was served upon all other parties or their counsel of record by:

| | |
|---|---|
| _____X_____ | Regular First Class Mail |
| _____ | Facsimile |
| _____ | Certified Mail |
| _____ | Hand-Delivered |
| _____X_____ | Email |
| _____ | Electronic Filing |

Date: 03/15/19

William C. Reil, Esquire
Attorney for Plaintiffs



**USAT**

*MONTSERRAT*

UNIVERSITY OF SCIENCE, ARTS
&
TECHNOLOGY, MONTSERRAT

Main Campus
Camelot Estate, P.O. Box 506, South Mayfield Estate Drive, Olveston, Montserrrat
US Information Office
5400 Ward Road, Building 3-150, Arvada, CO 80002

Please be advised that the following chart summarizes the negative change in USAT basic science enrollments before and after September 14, 2018. That is the date that the first red paragraph was added to USAT's Sponsor Notes Page on the World Directory of Medical Schools list by the ECFMG.

| USAT Total Number of Students Enrolled in Basic Science Courses Prior to September 14, 2018 | USAT Total Number of Students Enrolled in Basic Science Courses from September 15, 2018 up to Dec. 15, 2018. (Fall Semester 2018) | Percentage Change |
|---|---|---|
| 419 | 372 | -11.21% |

This is Lifelong Learning This is U.S.A.T.

USA (FL Cert Nr. L12000078671), Montserrat (Cert Nr. 17-2003).
Member Institution of Med Ed Central, WHO Global Alliance on Healthcare, WDOMS World Medical Schools, ASIC (UK) & IPSP (ITALY), AAHEA. USAT is IMED/FAIMER listed.
USAT is an Equal Opportunity Employer. © USAT 2019
*Excellence and Professionalism in Research and Education.*          01/2019



**USAT**

*MONTSERRAT*

UNIVERSITY OF SCIENCE, ARTS
&
TECHNOLOGY, MONTSERRAT
Main Campus
Camelot Estate, P.O. Box 505, South Mayfield Estate Drive, Olveston, Montserrrat
US Information Office
5400 Ward Road, Building 3-150, Arvada, CO 80002

Please be advised that the following chart summarizes the negative change in
USAT basic science course enrollments **before and after** December 31, 2018. That is
the date that the ECFMG removed their sponsorship of USAT, as declared on USAT's
Sponsor Notes Page on the World Directory of Medical Schools, that USAT courses
would no longer be valid; disallowing USAT students from taking the USMLE
Examinations after that date.

| USAT Total Number of Students Enrolled in Basic Science Courses up until December 31, 2018. | USAT Total Number of Students Enrolled in Basic Science Courses from January 1, 2019 to April 30, 2019. (Spring Semester 2019) | Percentage Change |
| --- | --- | --- |
| 372 | 181 | -51.34% |

Please be advised that the following chart summarizes the negative change in USAT
clinical enrollments **before and after** December 31, 2018. That is the date that the
ECFMG removed their sponsorship of USAT, as declared on USAT's Sponsor Notes
Page on the World Directory of Medical Schools, that USAT courses would no longer be
valid; disallowing USAT students from taking the USMLE Examinations after that date.

| USAT Total Number of Students Enrolled in Clinical Science Courses up until December 31, 2018. | USAT Total Number of Students Enrolled in Clinical Science Courses from January 1, 2019 to April 30, 2019. (Spring Semester 2019) | Percentage Change |
| --- | --- | --- |
| TBD | | |

This is Lifelong Learning. This is U.S.A.T.

USA (FL Cert Nr. L12000078671), Montserrat (Cert Nr. 17-2003).
Member Institution of Med Ed Central, WHO Global Alliance on Healthcare, WDOMS World Medical Schools, ASIC (UK) & IPSP (ITALY), AAHEA. USAT is IMED/FAIMER listed.
USAT is an Equal Opportunity Employer. © USAT 2019
*Excellence and Professionalism in Research and Education.*                    01/2019



UNIVERSITY OF SCIENCE, ARTS
&
TECHNOLOGY, MONTSERRAT

Main Campus
Camelot Estate, P.O. Box 506, South Mayfield Estate Drive, Olveston, Montserrat
US Information Office
5400 Ward Road, Building 3-150, Arvada, CO 80002

Please be advised that the following chart summarizes the negative change in new
USAT applications received from January 01, 2018 up to February 28, 2019.

| USAT Monthly Enrollments from January 2018 to January 2019 | Number of Applications Received | Percentage Change |
|---|---|---|
| January 1- 31, 2018 | 75 | |
| February 1-28, 2018 | 47 | |
| March 1-31, 2018 | 58 | |
| April 1-30, 2018 | 62 | |
| May 1-31, 2018 | 84 | |
| June 1-30, 2018 | 67 | |
| July 1-31, 2018 | 75 | |
| August 1-31, 2018 | 65 | |
| September 1-13, 2018 | 26 | |
| September 14-30, 2018 | 29 | -1.81% |
| October 1-31, 2018 | 43 | -21.81% |
| November 1-30, 2018 | 28 | -34.88% |
| December 1-31, 2018 | 17 | -39.29% |
| January 1-31, 2019 | 09 | -47.05% |
| February 1-27, 2019 | 07 | -2.22% |

USA (FL Cert Nr. L12000078671), Montserrat (Cert Nr. 17-2003).
Member Institution of Med Ed Central, WHO Global Alliance on Healthcare, WDOMS World Medical Schools, ASIC (UK) & IPSP (ITALY), AAHEA. USAT is IMED/FAIMER listed.
USAT is an Equal Opportunity Employer. © USAT 2019
*Excellence and Professionalism in Research and Education.*                    01/2019

Affidavit of Dr. Orien L. Tulp
State Of Colorado, Jefferson, County

Before me, the undersigned notary, on this day personally appeared, Dr. Orien L. Tulp, the affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

1.  My name is Orien L. Tulp. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2.  I am Professor and President of USAT Montserrat. USAT was established on September 26, 2003. Exhibit 1. I own a 50% interest in USAT. USAT has a University based medical school duly licensed by the Government of Montserrat authorities. Exhibit 2. As part of my duties as USAT president, I was to be aware and review the number of students enrolled as well as oversee the general administration and operations of the school. USAT admits a significant proportion of non-traditional students including minorities. The school is culturally diverse as evidenced by over 50% percent minority students including Caribbean Nationals, approximately 10% students over 50 years of age, and over 75% percent licensed allied medical and Healthcare Professionals at the time of their admission.

3.  My formal education includes a PH.D. and other degrees. My experience that makes me qualified to be President of USAT is a military and Civilian career of over forty years duration retiring with the rank of Colonel, and my Civilian Career as a Full Professor at a top tier University. My military career consisted of administrative supervision, command, and training of Physicians and other military medical personnel, and my Civilian career as a Professor included research and teaching of Physicians and other health care professionals and including extensive publishing in the scientific literature. Exhibit 3 (copies of military rank and awards) I have personal knowledge of the USAT records and procedures due to my position as president of the school.

4.  The Educational Commission for Foreign Medical Graduates (ECFMG) is a Pennsylvania registered non-profit 501(3) entity. The ECFMG has been granted, by all the state medical boards, the exclusive authority to decide which international medical graduates are permitted to take the various tests administered by the USMLE and NBME. Exhibit 4, (ECFMG Fact Sheet) An international medical graduate cannot access graduate medical training in the United States without successfully passing a series of three examinations. The ECFMG is the gatekeeper for entry to take the various examinations. Without successfully passing the USMLE examinations, the international medical graduate cannot enter the United States medical training programs to commence post graduate specialty training. Without entry into the training system, the International medical students cannot be licensed to practice medicine in the United States.

1

5. The ECFMG defines irregular behavior to include all actions or attempted actions on the part of applicants, examinees, potential applicants, others when solicited by an applicant and/or other programs, or services of the ECFMG. This definition also includes falsification of information on applications, completed by the applicants for the examinations. Exhibit 5 (Policies and Procedures Regarding Irregular Behavior).

6. The ECFMG's policies and procedures regarding irregular behavior include the following:

a. The ECFMG staff will investigate any allegations of irregular behavior.

b. If the ECFMG staff finds that there exists a reasonable basis to conclude that an individual has engaged in irregular behavior, the matter will be referred by the staff to the Medical Education Credentials Committee of the ECFMG.

c. The Credentials Committee is the body delegated by the ECFMG to make a fact determination.

d. The ECFMG staff is required to give the person charged with irregular behavior notice of the charge and evidence.

e. The person charged with allegations of irregular behavior has the right to appear personally before the Medical Education Credentials Committee.

f. The Medical Education Credential Committee is required to base its decision on a preponderance of the evidence. Exhibit 5.

7. The ECFMG staff, prior to any notice or hearing, placed on the World Directory of Medical Schools (WDOMS) website page for USAT, beginning on or before September 14, 2018, a notice that USAT students were being subjected to special investigation and enhanced screening. Exhibit 6 (copy of website notice).

8. Prior to placing the notice on the website, the ECFMG staff did not notify USAT or myself that the ECFMG had a concern, despite the observation that for the preceding 15 years not a single error or concern had ever been reported to USAT by the ECFMG. The ECFMG's staff took disciplinary action, prior to any notice or a hearing before the ECFMG Credential's committee, by placing damaging information on the Sponsor Note section for USAT on the WDOMS website.

9. As a result of the ECFMG's staff posting the warning on the WDOMS website my interest in USAT was severely devalued and may be depleted.

10. My sworn deposition testimony established how and why the decrease in value occurred after the publication on the WDOMS website of on or before Sept. 14, 2018. Dr. Tulp's Deposition transcript Page 84, lines 2-14. The majority of Students disenrolled, stop paying tuition and left for other schools as a result of the September 14, 2018 notice. Dr. Tulp's Deposition page 71, lines 19-24, page 72 lines 1-3.

11. Prior to the November 28, 2018 hearing, I was not supplied with any affidavits from any students. The ECFMG admits in its Summary Judgment Motion that the ECFMG had received 300 student affidavits. ECFMG's Summary Judgment Motion, Page 11, issues 28.

12. The claim by the ECFMG that it provided me with all material to be considered prior to the November 28, 2018 hearing is disputed. At no time was I supplied with a definition of "campus," let alone "branch campus." My lawyer requested the ECFMG define campus prior to the November 28, 2018 hearing. The ECFMG staff refused to supply a definition. Instead the attorney conducting the hearing was attempting to have me define "campus". USAT does conduct "on-line" classes with it's private, Montserrat based Satellite Communications network including the Basic Medical Sciences of the medical curriculum, thereby negating a requirement for a fixed campus.

13. The November 28, 2018 hearing was conducted by an ECFMG lawyer that was demanding to cross examine me, but the ECFMG supplied no witnesses for my lawyers to cross examine.

14. The lawyer who conducted the hearing for the ECFMG Credential's committee presented no evidence for the committee to consider.

15. The November 28, 2018 hearing was abruptly terminated by the ECFMG's attorney when my lawyer started going through the evidence that in part was only produced after 10 AM that morning. When the first two pages were identified as a letter from a person with whom I had no contact or knowledge of, the lawyer abruptly terminated the hearing over my lawyer's protest, and before my 20 minutes of allotted time had elapsed.

16. There are no written rules by the ECFMG on who has the burden of proof. The hearing was conducted by ECFMG counsel as if I had the obligation to prove my innocence alone, without any evidence, witnesses, or cross-examination allowed.


Dr. Orien L. Tulp

Sworn to and subscribed before me by Dr. Orien L. Tulp on June 3rd, 2019


Notary Public in and for The State of Colorado My Commission Expires: 04/19/2023


TYLER DEAN SANDER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20194015188
MY COMMISSION EXPIRES 04/19/2023

 **Gmail**

Bill Reil <billreillaw@gmail.com>

---

## sponsor note as of Oct 15, 2018
1 message

**Orien Tulp** <o.tulp@usat.edu>                                    Sun, May 26, 2019 at 2:26 PM
To: Bill Reil <billreillaw@gmail.com>, swatemd <swatemd@aol.com>

This is the text that should be included in the exhibits, it appeared from mid Oct 2018 until Jan 3, 2019, after Dr Pinsky received his subpoena.

- **Note: As of January 1, 2019, students and graduates of this medical school with a graduation year of 2019 and later are not eligible to apply to ECFMG for ECFMG Certification, which also renders them ineligible to apply to ECFMG for the United States Medical Licensing Examinations (USMLE) as a step toward ECFMG Certification.**

- **Currently, students and graduates of USAT are subject to enhanced procedures that must be met in order to be eligible to apply for ECFMG Certification related services, including but not limited to: ECFMG Certification, USMLE examinations that lead to ECFMG Certification, and Electronic Residency Application Service (ERAS®) Support Services. ECFMG will provide information and instructions to applicants upon receipt of application.**

- **Note: In 2018, ECFMG determined that certain staff / officials of the University of Science, Arts and Technology (USAT)  engaged in irregular behavior in connection with providing false information and documents to ECFMG.**

Orien L Tulp, PhD, MD, FACN, CNS
Professor and President
USAT Montserrat
*www.usat.edu*
Cell: 727-252-6210

November 28, 2018

1        MEETING OF THE ECFMG MEDICAL
         EDUCATION CREDENTIALS COMMITTEE

2

                        -   -   -

3

4    RE:  ORIEN L. TULP, USAT

5                       -   -   -

6               NOVEMBER 28, 2018

7                       -   -   -

8         Hearing taken pursuant to notice,

9    was held at RITTENHOUSE HOTEL, 210 West

10   Rittenhouse Square, Philadelphia,

11   Pennsylvania, commencing at 10:00 a.m.,

12   on the above date, before LISA MARIE

13   CAPALDO, RPR, a Registered Professional

14   Reporter and Notary Public in and for the

15   Commonwealth of Pennsylvania.

16

17

18

19

20

          GOLKOW LITIGATION SERVICES
21    877.370.3377 ph | 917.591.5672 fax
              Deps@golkow.com

22

23

24

357a

November 28, 2018

```
1    APPEARANCES:
2    ECFMG STAFF
3    Mr. William W. Pinsky
     Mr. Dennis M. Donohue
4    Ms. Kara Corrado
     Ms. Lisa L. Cover
5    Ms. Svetlana Gridneva
     Mr. Scott Mealey
6    Ms. Rosemary Carlin
7
     ECFMG Board Members
8
     Dr. Maryellen Gusic
9    Dr. Ronald R. Blanck
     Dr. Barbara Barzansky
10   Dr. Peter Buckley
     Dr. Andrew Filak
11   Dr. Ram Krishna
     Dr. Dotun Ogunyemi
12   Dr. James Pelegano
13
14
15
16
17
18
19
20
21
22
23
24
```

November 28, 2018

```
 1                          -   -   -

 2                       I N D E X

 3                          -   -   -

 4

 5        Statement of:

 6              ORIEN L. TULP, USAT

 7

 8        By Mr. Swate

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

November 28, 2018

```
1                    -   -   -

2                   PROCEEDING

3                    -   -   -

4      O R I E N   T U L P, Sworn.

5                    -   -   -

6            DR. GUSIC:  We will begin by

7        asking the committee members and

8        the staff to introduce themselves.

9        We will swear in Dr. Tulp and then

10       if there are any opening

11       statements.

12           MS. McENROE:  Elisa McEnroe,

13       outside counsel for ECFMG.

14           MS. KATZ:  I'm Francis Katz.

15       I'm the general counsel at ECFMG.

16           DR. CRAIG:  Steve Craig,

17       board member.

18           DR. OGUNYEMI:  Dr. Ogunyemi,

19       ECFMG board member.

20           DR. BUCKLEY: Peter Buckley,

21       I'm also an ECFMG board member.

22           DR. PELEGANO:  Jim Pelegano,

23       ECFMG board member.

24           DR. KRISHNA:  Dr. Krishna,
```

November 28, 2018

```
 1              board member.

 2                      DR. FILIK:  Andy Filik,

 3       ECFMG board member.

 4                      DR. PINSKY:  Bill Pinsky,

 5       President and CEO of ECFMG.

 6                      DR. GUSIC:  Maryellen Gusic,

 7       board member and chair of this

 8       committee.

 9                      DR. BLANCK:  Ronald Blanck,

10       chair and board member of this

11       committee.

12                      DR. BARZANSKY:  Barbara

13       Barzansky, ECFMG board member.

14                      MS. CORRADO:  Kara Corrado,

15       ECFMG staff.

16                      MS. COVER:  Lisa Cover,

17       ECFMG staff.

18                      MR. DONOHUE:  Dennis

19       Donohue, ECFMG staff.

20                      MS. GRIDNEVA:  Svetlana

21       Gridneva, ECFMG staff.

22                      MS. CARLIN:  Rosemary

23       Carlin, ECFMG staff.

24                      MS. CORRADO:  Just briefly,
```

November 28, 2018

```
 1              I'm just going to iterate the
 2        allegations for the committee.
 3        The allegation is that Dr. Orien
 4        Tulp, professor and president of
 5        USAT engaged in irregular behavior
 6        in connection with providing false
 7        information to ECFMG, specifically
 8        that Dr. Tulp provided false
 9        information to ECFMG regarding
10        USTAT's United States branch
11        campuses and certifying to the
12        attendance dates of several USTAT
13        students and graduates when ECFMG
14        has information that these
15        students were not attending USTAT
16        during some of the time periods to
17        which Dr. Tulp certified.
18              Dr. Tulp is here today along
19        with his attorneys to address
20        these allegations and to answer
21        any questions that the committee
22        may have.
23              DR. GUSIC:  Opening
24        statements.
```

362a

```
 1              MR. SWATE:  Thank you.  I
 2       asked the name of the officer
 3       outside the door, and he refused
 4       to give me his name.  Could you
 5       tell me who the officer outside
 6       the door is?
 7              MS. McENROE:  It's a
 8       security officer we've brought in
 9       for our own protection in case we
10       need it throughout our day's
11       proceedings.  He's an off-duty
12       Philadelphia police officer.
13              MR. SWATE:  First, I would
14       like to ask for the -- I've asked
15       and I've asked and I've asked for
16       the packet that was presented to
17       the committee members.  I would
18       like a copy of the packet, the
19       information that was submitted to
20       the committee members so that I
21       will know what was considered by
22       the committee before we came here
23       today because you're considering
24       information that I may or may not
```

November 28, 2018

```
 1        know about.  And that's

 2        fundamentally unfair to my client,

 3        for my client to have to defend

 4        against potential information that

 5        we don't have.

 6             First, I would ask for a

 7        copy of that.

 8             MS. McENROE:  There's

 9        actually a black binder right in

10        front of you.  We also have

11        provided that on more than one

12        occasion prior to this proceeding,

13        which is our usual practice even

14        without you asking.  That's what

15        we do.

16             MR. SWATE:  Where is the

17        letter that you sent to the

18        committee members addressing this?

19             MS. McENROE:  The materials

20        presented to the committee

21        regarding this circumstance with

22        Dr. Tulp's charges of irregular

23        behavior are presented in that

24        binder to you.
```

364a

November 28, 2018

1          MR. SWATE:  I'm asking you

2     for the letter you sent to the

3     committee members.

4          MS. McENROE:  I don't know

5     what you're talking about.

6          MR. SWATE:  You didn't send

7     them a letter explaining what this

8     was?

9          MS. McENROE:  We sent those

10    materials.

11         MR. SWATE:  What about the

12    letter that went with the

13    materials?

14         MS. McENROE:  Those are the

15    materials including any

16    correspondence with it.

17         MR. SWATE:  All the

18    correspondence would be included

19    with this material?

20         MS. McENROE:  Correct.

21         MR. SWATE:  I'm sorry.

22    Where is the correspondence that

23    you sent to the committee?

24         MS. McENROE:  This is the

November 28, 2018

```
 1        same material that you were
 2        provided.  November 14th you got
 3        it by e-mail, and November 15th
 4        you got it by Federal Express.
 5             MR. SWATE:  I'm asking for
 6        the letters that you sent to these
 7        committee members.  You just
 8        didn't send this out to the
 9        committee members just blindly.
10             MS. McENROE:  Unfortunate
11        for them, potentially there's a
12        lot of materials they have to
13        review, and they carefully review
14        the materials presented to them as
15        presented to you.  We get an
16        electronic copy, myself included
17        which you were provided by e-mail
18        on November 14th.
19             MR. SWATE:  So you're
20        telling me that you did not send
21        them a letter explaining this
22        material and explaining the
23        allegation to the committee
24        members.
```

November 28, 2018

```
 1              MS. McENROE:  That material
 2     is as presented to the committee.
 3              MR. SWATE:  You're not
 4     answering my question.
 5              MS. McENROE:  I'm not here
 6     to answer your questions, sir.
 7     We're here for your client to
 8     explain to us the charges of
 9     irregular behavior against him.
10              If you have an opening
11     statement you would like to make,
12     we're interested in hearing it.
13     Our committee has questions for
14     your client, and then we will
15     consider the charges of irregular
16     behavior.
17              MR. SWATE:  This committee
18     has no jurisdiction over Dr. Tulp.
19     We showed up today as it stands
20     for negotiation.  You all have no
21     legal jurisdiction to determine
22     anything.
23              So accordingly, please be
24     advised that we're not waiving
```

CONFIDENTIAL    ECFMG00000521

November 28, 2018

```
 1          because we're here any
 2          jurisdictional issues that may be
 3          addressed at another forum at
 4          another day.
 5                  Since the ECFMG has made the
 6          allegation, it should have the
 7          sole and exclusive burden of
 8          proof.  So who is presenting the
 9          evidence against Dr. Tulp?
10                  This is not the U.S.
11          Congress where you can make blind
12          allegations and attempt to have
13          the person prove they are not
14          guilty.  And that's what's
15          occurring here today, just blatant
16          accusations and then assuming he's
17          guilty.  And you have him come
18          here for 20 minutes to explain why
19          he's not guilty.
20                  You have a duty of
21          presenting your evidence, credible
22          evidence before Dr. Tulp has to
23          answer anything.  It's your
24          burden.
```

368a

November 28, 2018

```
 1                    Now, you claim you are

 2           basing this on the preponderance

 3           of evidence.  What evidence are

 4           you presenting here today that Dr.

 5           Tulp violated anything?  None.

 6                    Also, there appears to be a

 7           co-mingling of the prosecutorial

 8           and jury functions.  You are both

 9           making the claims and acting as

10           judge and jury.

11                    We have asked for discovery

12           of documents, especially any

13           letters or correspondence that

14           have been sent to the committee

15           members.  The claim that you just

16           sent the committee members this

17           without any explanation doesn't

18           meet any kind of test of

19           credibility.

20                    The ECFMG is either acting

21           as quasi government entity or

22           acting under a contract basis.

23           Now, you claim that you are a

24           private nonprofit entity.  So the
```

November 28, 2018

```
 1              only reason that you could be
 2              interacting with Dr. Tulp is on
 3              the basis of contract.  Where is
 4              the contract?
 5                   Dr. Tulp's doesn't have a
 6              contract with you all.  So you
 7              have no right to tortuously
 8              interfere with his business
 9              practices or tortuously interfere
10              with his students.
11                   ECFMG has printed and
12              published derogatory information
13              about USAT.  Whether it's true or
14              not true, at least the target of
15              those accusations should have had
16              the opportunity to address those
17              accusations before you go out and
18              attempt to ruin the school, which
19              is what you have done causing
20              probably millions of dollars worth
21              of damages.
22                   If you're not a quasi
23              government entity, everybody in
24              this room is going to be liable
```

370a
CONFIDENTIAL                                   ECFMG00000524

November 28, 2018

1    for whatever damages we can prove.

2    You've already prejudged the case

3    by taking action against USAT by

4    refusing to release documents of

5    their students.  Totally have

6    refused to release documents of

7    students the students are entitled

8    to have released.

9         Again, repeating myself,

10   you're either a quasi government

11   agency or you are a private

12   agency.  A private agency you got

13   to have a contract.  Quasi

14   government agency you got to have

15   at least an assemblance of due

16   process which there's none here.

17        I asked for the rules and

18   regulations and the protocols for

19   these meetings.  Apparently, there

20   is none other than what's in the

21   eyes of the beholders of the

22   people who run the ECFMG.

23        What's the protocol?  I

24   asked for the agenda.  I got a

CONFIDENTIAL                                      ECFMG00000525

November 28, 2018

1    brief statement to show up at

2    8:45.  And here we are at

3    ten o'clock, total disrespectful

4    to my client and myself to have us

5    show up at 8:45 and then be

6    ten o'clock before you have us

7    come in and address you.

8         So we have not received the

9    rules and regulations for the

10   hearing nor have we seen any right

11   that you have other than

12   essentially blackmailing the

13   students and telling the students,

14   well, if you don't send in these

15   forms, we're going to hold your

16   records hostage, which has

17   resulted in students either being

18   accepted for residency and not

19   being able to continue with the

20   residency or not being able to be

21   interviewed for the residency.

22        That is our opening

23   statement.  If you have any

24   questions, you can address them to

November 28, 2018

1    me.  Dr. Tulp will not be

2    answering any questions.

3         MS. McENROE:  Mr. Swate, do

4    you have any substantive response

5    or statement with respect to the

6    charges of irregular behavior

7    against your client?

8         We've heard your procedural

9    concerns.  And just for the

10   purposes of the record, we

11   disagree across the board with

12   your allegations and your

13   statements about the state of

14   affairs.  I think for everybody's

15   time I'm not going to go through

16   them and enumerate each and every

17   single one of them.

18        If and when we ever ended up

19   dealing with these issues in the

20   court of law, we would deal with

21   them then and we feel very

22   confident --

23        MR. SWATE:  I can assure you

24   we're going to end up in federal

CONFIDENTIAL                                      ECFMG00000527

November 28, 2018

```
1    court.
2              MS. McENROE:  I let you
3    speak.  Can you let me speak?
4              MR. SWATE:  I'm sorry.
5              MS. McENROE:  Do you have
6    any statement with regard to the
7    actual substantive allegations of
8    irregular behavior?
9              MR. SWATE:  We can go
10   through this page by page.
11             MS. McENROE:  I don't mean
12   to go through it page by page.
13   Are you here today saying that --
14   is it Dr. Tulp?  I would say Tulp
15   with an L.
16             DR. TULP:  It's Tulp.
17             MS. McENROE:  Are you saying
18   that Dr. Tulp did not provide
19   incorrect information to ECFMG
20   with regard to branch campuses in
21   the United States?
22             MR. SWATE:  Show me your
23   evidence that he did.
24             MS. McENROE:  We have e-mail
```

November 28, 2018

1      correspondence from him in all

2      caps saying that there were not

3      campuses in the United States.

4      And we have significant evidence

5      to the contrary.  We were

6      wondering if --

7          MR. SWATE:  What's your

8      definition of campus?

9          MS. McENROE:  Maybe that's

10     something you can illuminate for

11     us about what your client's view

12     is of a campus, whether there was

13     education taking place in the

14     United States for USTAT.

15         MR. SWATE:  The burden of

16     proof is not on Dr. Tulp.  The

17     burden of proof is on the ECFMG.

18         Now, Dr. Tulp is not going

19     to address a nebulous definition

20     of campuses.  You show me your

21     written definition of campuses and

22     we'll address that.

23         MS. McENROE:  Did USTAT

24     provide any student with any

November 28, 2018

```
 1          medical school basic science
 2          education in the United States?
 3                  MR. SWATE:  Well, yes, it
 4          did.
 5                  MS. McENROE:  He's shaking
 6          his head, no, and you just said,
 7          yes.  So maybe you should let your
 8          client speak to respond.
 9                  MR. SWATE:  Dr. Tulp is not
10          going to be talking today.  The
11          next time you hear him talk is
12          going to be in federal court.
13                  MS. McENROE:  So, yes, there
14          was education in the United
15          States?
16                  MR. SWATE:  There was no
17          campus in the United States.
18                  MS. McENROE:  So my question
19          was, was there any education for
20          basic medical sciences provided in
21          the United States?
22                  MR. SWATE:  What do you mean
23          by education?
24                  MS. McENROE:  Were there any
```

```
 1              live lectures provided in the

 2              United States for USAT?

 3                   MR. SWATE:  My

 4              understanding is the lectures were

 5              for some extent was prepared by

 6              the Internet, that type of thing.

 7                   MS. McENROE:  That was not

 8              responsive to my question.  My

 9              question was --

10                   MR. SWATE:  You're not

11              cross-examining me, Counsel.

12                   MS. McENROE:  Well, I'm

13              asking you questions and trying to

14              be more specific --

15                   MR. SWATE:  We can't answer

16              the questions because you haven't

17              defined what campus is.  You

18              haven't defined what the

19              regulations for having an off-site

20              campus where you allowed other

21              schools to have off-site campuses,

22              but you attacked USTAT for some

23              reason.

24                   Now, you cannot disagree
```

November 28, 2018

```
1        that you have allowed other

2        schools to have off-site campuses

3        due to natural problems.  You've

4        been told what the natural

5        problems were.

6                MS. McENROE:  That was not

7        my question.  My question was,

8        were there any live lectures

9        provided to students of USTAT or

10       basic medical sciences in the

11       United States?

12               MR. SWATE:  I'm not a

13       witness.  So you don't get to

14       cross-examine me.

15               MS. McENROE:  I may not be

16       able to ask you questions as a

17       witness.  I would normally ask

18       your client.

19               MR. SWATE:  You're not going

20       to be able to do that because you

21       haven't given me enough

22       information to prepare my client.

23       This star chamber proceedings,

24       he's not going to participate in.
```

November 28, 2018

```
1              MS. McENROE:  Despite the
2         four inches of paper --
3              MR. SWATE:  Let's go through
4         each of the --
5              MS. McENROE:  You had some
6         concerns that by not taking you
7         exactly at 8:45 when we asked that
8         you be here for a 9:00 hearing
9         until 10:00 was a waste of time.
10        We apologize if you feel that way.
11        That was not at all the intention.
12        This is a busy committee.  We
13        don't have the time or the man
14        with to sit here and go through
15        every single page that we provided
16        you weeks ago.
17             MR. SWATE:  I'm prepared to
18        go through every page of this.
19             MS. McENROE:  Tell me where
20        in there it proves that your
21        client did not provide any medical
22        school education in the United
23        States.
24             MR. SWATE:  He doesn't have
```

CONFIDENTIAL                                    ECFMG00000533
379a

November 28, 2018

```
 1      the burden of proof.
 2            MS. McENROE:  We're just
 3      going around in circles.  I don't
 4      know that it's going to be much
 5      more helpful to try and proceed.
 6            MR. SWATE:  I'm willing to
 7      go through every page of this.
 8            MS. McENROE:  To what end?
 9      You're not answering my questions.
10      What are you hoping to get out of
11      every single page of that?
12            If you want to sit here and
13      look for something specific, tell
14      me.  We've all read the materials.
15      We can help direct you.
16            Take a look at Appendix E at
17      the e-mail from your client
18      saying, it is not a campus.  Our
19      only campus is located in
20      Olveston, Montserrat, British West
21      Indies.
22            My questions are trying to
23      understand whether there was
24      medical school education in the
```

November 28, 2018

1      United States.

2           MR. SWATE:  That's not what

3      -- what you're trying to do is ask

4      that question and then leap frog

5      to make like that's the campus.

6           Give me your definition of

7      what a campus is and then give me

8      the cases in which you've allowed

9      campuses to operate outside of

10     their original address.

11          MS. McENROE:  Perhaps your

12     client, if we would be allowed,

13     could provide us an explanation of

14     what he meant by campus in this

15     e-mail because the committee is

16     interested in hearing that.

17          MR. SWATE:  I would like to

18     know what your definition of

19     campus is.

20          MS. McENROE:  He's the one

21     who used the word here.  I'm

22     interested to know what he means

23     by it.

24          MR. SWATE:  I'm asking you,

November 28, 2018

```
 1        what's your definition of campus?
 2        Secondly, what's the exceptions to
 3        having an off-site campus?
 4             MS. McENROE:  We appreciate
 5        you being here today.  We're
 6        working on trying to understand
 7        the facts and circumstances in
 8        this case.  Apparently, we're
 9        going to be left with a cold
10        record because your client is
11        refusing to answer any questions.
12             I think at this time it
13        makes sense, unless there's any
14        closing statement you want to
15        make, that we adjourn.
16             MR. SWATE:  ECFMG is
17        adjourning this without us having
18        the ability to go through their
19        efforts.
20             MS. McENROE:  Is there
21        anything in particular you want to
22        go through?  We provided this to
23        you --
24             MR. SWATE:  I want to go
```

November 28, 2018

1    through the whole thing.

2         MS. McENROE:  Start on page

3    one.  What is it you want to talk

4    to us about it?

5         MR. SWATE:  The matter has

6    been brought to the CIE's

7    attention.  Where is the letter or

8    whatever information was brought

9    to the attention?

10        MS. McENROE:  We're not here

11   to answer questions, sir.  If you

12   have a closing statement or

13   something specific you want to

14   point out to us so we understand

15   the allegations better that are

16   lodged against your client, that

17   would be helpful.

18        That's why we're here today,

19   the due process you're saying that

20   you wanted.  We're here to try to

21   understand what it is that you're

22   trying to do here.

23        And candidly, I appreciate

24   you advocating on behalf of your

CONFIDENTIAL                                    ECFMG00000637
383a

November 28, 2018

```
1    client.  It's not productive here
2    if we can't understand the
3    underlying facts as your client
4    means them and wants ECFMG to
5    understand them.
6         So if this is your position
7    that you're just going to come
8    here and obstruct, then that's
9    just how it's going to be and
10   we're not wasting this committee's
11   time.  They have a busy agenda,
12   and we've got to keep going.
13        MR. SWATE:  It's a waste of
14   the committee's time when you're
15   going to destroy somebody's good
16   name and good reputation without
17   telling them what you're claiming.
18   At least in Texas, before we
19   execute somebody, we at least tell
20   them what the claim is for
21   executing them.
22        You've refused.  You've
23   stone walled me on the procedures.
24   I've asked for written procedures
```

November 28, 2018

```
 1          for this committee.  Apparently,

 2          there's none.  It's whatever you

 3          want to make them.

 4               MS. McENROE:  Sir, you've

 5          gotten the policy and procedures

 6          on irregular behavior multiple

 7          times.  You'd like to say that the

 8          record says what you say it says.

 9          It just doesn't.

10               We're trying to follow the

11          best procedure we possibly can,

12          and you and your client are

13          obstructing us in being able to

14          collect the information.  At this

15          point, I don't think that it's

16          productive to continue the

17          proceeding.

18               MR. SWATE:  We're entitled

19          to know what procedure this

20          committee is operating under.  You

21          just can't operate under whatever

22          you want to make it.

23               MS. McENROE:  You've gotten

24          the policies and procedures.
```

385a

November 28, 2018

```
 1              MR. SWATE:  No, I haven't.
 2         I've gotten --
 3              MS. McENROE:  They're
 4         available on the Internet.
 5              MR. SWATE:  I have received
 6         broad statements, you can do
 7         whatever you want.
 8              MS. McENROE:  The record
 9         will reflect --
10              MR. SWATE:  And that's not a
11         written policy and procedure.  And
12         that will not stand up under any
13         theory.
14              MS. McENROE:  We've provided
15         them to you in writing and the
16         link to the URL where they are
17         available publically on the
18         Internet.  I don't think at this
19         point there's anything else that's
20         worth us discussing at this
21         moment.  Thank you.
22              MR. SWATE:  You're
23         terminating --
24              MS. McENROE:  Yes, I'm
```

386a



November 28, 2018

```
1        terminating the proceeding.
2            MR. SWATE:  ECFMG is
3        terminating this prior to us
4        presenting our evidence.
5            MS. McENROE:  We asked you
6        to present evidence, and all you
7        did was present legal argument.
8            What's your offer of proof?
9        What would you like to provide?
10           MR. SWATE:  We'll go through
11       every page of this.
12           MS. McENROE:  In particular,
13       what would you like to provide?
14           MR. SWATE:  First, I'd like
15       to know who Ms. Sara Colins is?
16           MS. McENROE:  From the
17       Florida Department of Education?
18           MR. SWATE:  I don't know who
19       this is.
20           MS. McENROE:  So what
21       evidence is that that you are
22       presenting to us?
23           MR. SWATE:  I'm asking your
24       evidence.  You're the one
```



November 28, 2018

1       presenting the evidence and I'm

2       asking what it is?

3              MS. McENROE: You're not

4       providing any evidence.  So thank

5       you for coming today, Dr. Tulp.

6       We appreciate it.

7              MR. SWATE:  So you're

8       adjourning the --

9              MS. McENROE:  Yes, I'm

10      adjourning the proceeding.

11                    -    -    -

12             (Whereupon, the hearing

13      concluded at approximately 10:39

14      a.m.)

15                    -    -    -

16

17

18

19

20

21

22

23

24

388a

November 28, 2018

```
1                    C E R T I F I C A T E

2

3                       I hereby certify that

4   the witness was duly sworn by me and that

5   the deposition is a true record of the

6   testimony given by the witness.

7

8

9        _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

         LISA CAPALDO

10       Dated:

11

12  (The foregoing certification of this

13  transcript does not apply to any

14  reproduction of the same by any means,

15  unless under the direct control and/or

16  supervision of the certifying shorthand

17  reporter.)

18

19

20

21

22

23

24
```

CONFIDENTIAL                                         ECFMG00000543

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, <br><br> Plaintiff, <br><br> v. <br><br> EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL GRADUATES and DR. WILLIAM W. PINSKY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 2:18-cv-05540-WB <br><br> Hon. Wendy Beetlestone |

## REPLY IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dated:  June 20, 2019

Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA  19103-2921
Telephone:      +1.215.963.5917
Facsimile:      +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................ 1

II.  ARGUMENT................................................................................................... 1

    A.   There Is No Genuine Dispute Dr. Tulp Had Notice and Opportunity to be Heard.......................................................................................................... 1

    B.   Neither the Court's Motion to Dismiss Ruling, Nor Unverified Allegations in the Complaint Create Genuine Disputes of Material Fact................................. 5

    C.   Dr. Tulp is Not Entitled to Any Form of Relief...................................................... 6

    D.   ECFMG Followed This Court's Policies and Procedures ..................................... 7

III.  CONCLUSION................................................................................................ 9

# TABLE OF AUTHORITIES

<div align="right">Page(s)</div>

**Cases**

*Bricklayers & Allied Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.,*
 175 F. Supp. 3d 487 (E.D. Pa. 2016) ...........................................................................8

*Chung v. Park,*
 514 F. 2d 382 (3d Cir. 1975).................................................................................3, 4

*Heller v. Doe,*
 509 U.S. 312 (1993)...................................................................................................4

*Power Restoration Int'l Inc. v. PepsiCo, Inc.,*
 No. 12-1922, 2015 WL 1208128 (E.D. Pa. March 17, 2015)....................................7

*Psi Upsilon of Philadelphia v. University of Pennsylvania,*
 591 A.2d 755 (Pa. Super. 1991).................................................................................4

*Shah v. Bank of America,*
 346 F. App'x 831 (3d Cir. 2009) ...............................................................................6

*Thomas M. Cooley Law v. American Bar Ass'n,*
 459 F.3d 705 (6th Cir. 2006) .....................................................................................4

**Other Authorities**

Fed. R. Civ. P. 12.............................................................................................................5

Fed. R. Civ. P. 26.............................................................................................................6

Fed. R. Civ. P. 37.............................................................................................................6

Fed. R. Civ. P. 56..........................................................................................................8, 9

## I.    INTRODUCTION

Summary judgment is warranted and nothing in Dr. Tulp's Opposition changes that. There is no genuine dispute that ECFMG gave Dr. Tulp (a) repeated notice of the allegations and evidence against him, and (b) multiple opportunities to present a substantive response—in writing and in person—to the allegations and evidence against him. Dr. Tulp's allegations of a supposedly inadequate "record" on irregular behavior ring hollow when he comes forward with no evidence to dispute that the substantial evidence supporting the irregular behavior finding was shared with Dr. Tulp's counsel prior to and during the irregular behavior proceeding.

In denying Dr. Tulp's request for injunctive relief, this Court concluded specifically that based on the evidence presented at the injunction hearing, "*[i]n this case, there was notice and an opportunity to be heard*." SOF 78 (emphasis added). Dr. Tulp concedes that the evidence presented during the injunction hearing "may have been, at the time, sufficient notice and opportunity to be heard ...." Opp. at 5. Dr. Tulp further concedes that the discovery that has taken place since the injunction hearing has shed "[v]ery little, if any, new light . . . on the hearing of Dr. Tulp before the ECFMG." Opp. at 6. Because Dr. Tulp cannot genuinely dispute that the record before the Court on summary judgment is in all material respects the same as (if not more favorable to ECFMG than) the record that led the Court to find that "there was notice and an opportunity to be heard," summary judgment should be granted.

## II.    ARGUMENT

### A.    There Is No Genuine Dispute Dr. Tulp Had Notice and Opportunity to be Heard.

There is no genuine dispute that ECFMG gave Dr. Tulp repeated notice of the allegations and evidence against him. Dr. Tulp cites *no evidence* suggesting that he lacked notice of the irregular behavior allegations. Rather, as described in detail in ECFMG's summary judgment

submission, ECFMG sent multiple letters to Dr. Tulp before the irregular behavior proceeding to summarize and describe in detail the irregular behavior allegations against him. Def.'s Stmt. of Undisputed Material Facts ("SOF"), ECF No. 31-3, ¶¶ 31-36, 37, 39. ECFMG also sent Dr. Tulp's counsel copies of the materials that the Medical Education Credentials Committee would consider regarding the irregular behavior allegations and several explanations of ECFMG's process for investigating and evaluating irregular behavior allegations. SOF ¶¶ 31-39, 42-46.

There is no genuine dispute that ECFMG gave Dr. Tulp multiple opportunities to be heard. Dr. Tulp does not dispute that he was invited to present a written response to the irregular behavior allegations and that he had an opportunity to appear personally before the Medical Education Credentials Committee with two attorneys to address those allegations. SOF ¶¶ 35, 37, 39-43. Dr. Tulp's unsupported assertion that "no witnesses or evidence [were] allowed to be presented at the hearing" is false and insufficient to create a genuine dispute of material fact. Rather, the undisputed evidence is that *Dr. Tulp* was invited to testify and present evidence before and during the irregular behavior proceeding. SOF ¶¶ 54-56. Indeed, it is the height of *chutzpah* for Dr. Tulp to fault ECFMG for terminating his irregular behavior hearing "without plaintiff making any statement" when Dr. Tulp's counsel repeatedly and emphatically stated that Dr. Tulp was *refusing to testify* and that the next time he would speak would be in federal court. *Id.*; *see also* Opp. at 14. Dr. Tulp cites no evidence to create a genuine dispute as to what happened at the injunction hearing, which is set forth in the hearing transcript, SOF ¶¶ 47–62, and demonstrates that Dr. Tulp was afforded common law due process.[1] ECFMG respectfully encourages the Court to read that short transcript in its entirety. JA0139-JA0175.

---

[1] Dr. Tulp suggests that notice of the irregular behavior finding was posted to the World Directory prior to the hearing. ECF. No. 33-3 at ¶ 2. The evidence is insufficient to create a genuine dispute because it consists of a single email purportedly sent by Plaintiff after the close of discovery to his

Dr. Tulp makes various other arguments in an attempt to create a genuine dispute regarding the due process afforded to him. As detailed below, each fails.

**First**, Dr. Tulp argues that there was no evidence "in the administrative record" before the Medical Education Credentials Committee to support a finding of irregular behavior. Opp. at 14. That argument is misleading (and immaterial) because it is undisputed that there is no process for admitting evidence "in the record" during irregular behavior proceedings. SOF ¶¶ 48, 52; JA0198 (testimony of Kara Corrado). Dr. Tulp cannot genuinely dispute that there was substantial evidence considered by the Medical Education Credentials Committee supporting its finding that Dr. Tulp engaged in irregular behavior. SOF ¶¶ 45, 48, 59, 63. The fact is Dr. Tulp had notice of that evidence and multiple opportunities to be heard regarding the allegations of irregular behavior against him. SOF ¶¶ 35, 37, 39-46, 48, 54-56, 62.

**Second**, Dr. Tulp claims that the "burden of proof" was placed on him improperly. Opp. at 12. As a threshold matter, Dr. Tulp did not bear the "burden of proof" in connection with the irregular behavior proceeding. ECFMG presented to Dr. Tulp and the Medical Education Credentials Committee substantial evidence supporting the irregular behavior allegations against Dr. Tulp. SOF ¶¶ 35, 37, 39-46, 48, 54-56, 62. Dr. Tulp was then asked to respond to that evidence. But even if Dr. Tulp was assigned the burden of proof, that would not be improper or contrary to due process. *See Chung v. Park*, 514 F. 2d 382, 386-87 (3d Cir. 1975) (rejecting argument that university's practice of placing burden of proof on terminated professor at hearing violated due process because "[d]ue process is protean in nature" and burden of proof comported

_____

lawyer alleging that such information had been posted. PA0558. The genuine record evidence shows that it had not yet been posted, and still has not been posted. SOF ¶¶ 74-75. Moreover, the timing of changes to the World Directory are immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard with respect to the irregular behavior allegations against him.

with function of hearing "to inform professor of the grounds for his non-retention and to allow him to challenge their sufficiency"). As explained above, Dr. Tulp had notice and an opportunity to be heard—the touchstones of due process—and assigning him the burden of proof would not demonstrate a denial of due process.

**Third**, Dr. Tulp's reliance (at Opp. 9-10) on certain procedures used in other due process cases to argue that ECFMG violated Dr. Tulp's due process rights in this case is unavailing. Due process is a flexible concept that may differ from circumstance to circumstance. *See Heller v. Doe*, 509 U.S. 312, 332 (1993) ("[F]lexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error." (quoting *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 13 (1979)). "The difference in the nature of the interests implicated affects the procedural requisites for the hearing." *Chung*, 514 F.2d at 387 n. 8 (citing *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971)). ECFMG's decision to not accept paperwork with Dr. Tulp's signature given his numerous misrepresentations was an action reflecting ECFMG's determination that it could not trust information provided by Dr. Tulp. Such a decision is based on ECFMG's discretion, dissimilar from the accrediting decisions at play in *Thomas M. Cooley Law School. v. American Bar Ass'n*, which were based on violations of specific rules and regulations, or the university sanctions imposed on a student fraternity in *Psi Upsilon of Philadelphia v. University of Pennsylvania*, which were based on violations of specific obligations under the fraternity's charter. Accordingly, the irregular behavior proceeding reflected many of the processes afforded in those two circumstances, but it need not reflect all the process afforded in those circumstances, given the discretionary nature of ECFMG's action. *See Chung*, 514 F.2d at 387 n. 8 (recognizing that process required is more lenient in circumstances where the decision

is based on the discretion of the sanctioning entity, rather than whether a sanctioned party met a

set of statutory or administrative conditions that would entitle it to a particular property or liberty

interest).

> **B.     Neither the Court's Motion to Dismiss Ruling, Nor Unverified Allegations in
> the Complaint Create Genuine Disputes of Material Fact.**

Dr. Tulp argues that summary judgment is not warranted because "[n]othing has changed,

in terms of the summary judgment record" on the issue of common law due process, "since the

Court concluded in its [motion-to-dismiss] Opinion that there was a plausible claim for deprivation

of common law due process." Opp. at 14. But Dr. Tulp cannot rely on the Court's motion-to-

dismiss opinion in order to create a genuine dispute of material fact. The Court's motion-to-

dismiss ruling was based on its limited review under Federal Rule of Civil Procedure 12(b)(6) of

the mere allegations of the Complaint and its attachments. ECF. No. 28 at 1 n. 1.  To the extent

the Court declined to consider evidence from the injunction hearing when ruling on ECFMG's

Motion to Dismiss, the Court was obligated to accept as true all of the well-pleaded allegations in

Dr. Tulp's Complaint and to construe those allegations in the light most favorable to Dr. Tulp.

ECF No. 28 at 1 n. 1.  The Court could not consider or review any other evidence, including the

transcript of the irregular behavior proceeding. JA0139-JA0175. To the contrary, when the Court

considered a more complete record with evidence at the injunction hearing earlier in this case, it

concluded that Dr. Tulp's due process claims lacked merit because "[i]n this case, there was notice

and an opportunity to be heard." SOF ¶ 78.[2]

---

[2]     Dr. Tulp argues that the Court could not have found after the injunction hearing that there
was notice and an opportunity to be heard because "[i]f the Court had already found that there was
notice and opportunity to be heard, which is tantamount to common law due process, there would
not be a motion for summary judgment." Opp. at 5.  This confuses the nature of injunction hearings
and motions to dismiss.  At the motion to dismiss stage, the Court limited its analysis to the
allegations in the Complaint and its exhibits. ECF. No. 28 at 1 n. 1.  It was based on that limited
analysis that the case was permitted to proceed to discovery and summary judgment.  The fact is

Similarly, to the extent that Dr. Tulp quotes from the allegations in his unverified Complaint to argue that summary judgment is unwarranted, *see* Opp. at 2-4, such allegations are not evidence and cannot create genuine disputes of material fact. *Shah v. Bank of America*, 346 F. App'x 831, 833 (3d Cir. 2009) ("To survive a motion for summary judgment, the plaintiff cannot rely on unsupported allegations in the complaint, and must present more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). It is Dr. Tulp's burden to present *record evidence* in support of his claims to defeat summary judgment. As evidenced by the unsubstantiated assertions and sparse record citations in Dr. Tulp's Opposition, Dr. Tulp has failed to meet that burden.

### C. Dr. Tulp is Not Entitled to Any Form of Relief.

The record confirms that Dr. Tulp is not entitled to any form of relief. During discovery, Dr. Tulp failed to produce any evidence to substantiate his claim for damages. ECF No. 31-1 at 20. ECFMG served several discovery requests seeking such evidence and even served a letter before the close of discovery demanding the production of any evidence of Dr. Tulp's damages. SOF ¶ 79. Dr. Tulp produced no such documents. *Id.* Now, Dr. Tulp has included in his supplemental appendix documents that had never before been produced purporting to support Dr. Tulp's damages claim. Decl. of Elisa McEnroe ("McEnroe Decl.") ¶7, JA0703–JA0704. This attempted sandbagging is improper, and the evidence not produced in discovery should not be considered. Fed. R. Civ. P. 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) the party is not allowed to use that information or witness to supply

---

that discovery has confirmed that the record before the Court at the injunction hearing—when the Court considered all of the evidence presented and concluded there was notice and opportunity to be heard—was complete and accurate.

evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[3]

Even if the Court were to consider materials that had not been produced in discovery, those materials do not preclude summary judgment. Dr. Tulp has presented no evidence from which a reasonable jury could determine the value of Dr. Tulp's interest in USAT or any alleged damages suffered by Dr. Tulp as a result of ECFMG's alleged conduct. Sufficient evidence of damages is required to survive summary judgment for more than a nominal award. *See Power Restoration Int'l Inc. v. PepsiCo, Inc.*, No. 12-1922, 2015 WL 1208128, at *4-9 (E.D. Pa. March 17, 2015) (lost profits requires non-speculative evidence of sufficient to establish anticipated net profit). Rather, the evidence in the record demonstrates that Dr. Tulp was never paid by USAT. SOF ¶ 19. Moreover, Dr. Tulp attributes damages to ECFMG's update to the World Directory of Medical Schools, which was a factual update to students about the status of USAT. The plaintiff in this case is Dr. Tulp, not USAT.

**D.     ECFMG Followed This Court's Policies and Procedures.**

Dr. Tulp spends much energy in the Opposition arguing that ECFMG did not follow proper procedures in the filings attendant to its Motion for Summary Judgment. Dr. Tulp is wrong. ECFMG followed the Court's Policies and Procedures in submitting its Statement of Undisputed Material Facts (ECF No. 31-3) and the Joint Appendix (ECF No. 31-4).

With respect to the Statement of Undisputed Facts, in accordance with the Court's Policies and Procedures, ECFMG filed "a separate Statement of Undisputed Material Facts containing a numbered, paragraph-by-paragraph recitation of facts with specific citations to the joint appendix

---

[3]     Dr. Tulp argues that certain unidentified "letters from ECFMG" are "not in the record or exhibits" and should not be considered. Examination of the record shows that all of the letters relied upon by ECFMG were produced in discovery and are properly before the Court on summary judgment.

in support of all of those facts as to which [ECFMG] contends no genuine issue exists." Judge
Beetlestone Policies & Procedures, Civil Cases, Section V.C.1. In response, Dr. Tulp failed to
comply with the Court's Policies and Procedures because he did not submit "a separate Statement
of Disputed Material Facts, stating in similar paragraph form whether [Dr. Tulp] accepts or rejects
that each fact as stated by the moving party is undisputed." Judge Beetlestone Policies &
Procedures, Civil Cases, Section V.C.2. Dr. Tulp claims that it was "difficult to respond" to
ECFMG's Statement of Undisputed Material Facts because the facts "were never agreed to" by
Dr. Tulp and Dr. Tulp's counsel first saw ECFMG's Statement of Undisputed Material Facts when
ECFMG filed its Motion for Summary Judgment. Opp. at 1-2. That does not excuse Dr. Tulp's
failure to comply with this Court's Policies and Procedures. ECFMG was under no obligation to
share its Statement of Undisputed Material Facts with Dr. Tulp prior to filing, and Dr. Tulp had
ample time—including an extra 10 days by stipulation of the parties—to respond as required by
this Court's Policies and Procedures.[4]

Similarly, Dr. Tulp's complaints about the procedure used by ECFMG to assemble the
Joint Appendix (ECF No. 31-4) are unfounded. ECFMG followed this Court's Policies and
Procedures to the letter. Pursuant to this Court's Policies and Procedures, ECFMG conferred with
Dr. Tulp's counsel regarding the contents of the Joint Appendix. McEnroe Decl. ¶¶5–6. Initially,
ECFMG provided Dr. Tulp's counsel with a table of contents summarizing the contents of the
proposed Joint Appendix, along with an electronic version of the proposed Joint Appendix.

---

[4]     Because Dr. Tulp failed to respond as required by the Court's Policies and Procedures,
the facts set forth in ECFMG's Statement of Undisputed Material Facts should be deemed
admitted. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or
fails to properly address another party's assertion of fact as required by Rule 56(c), the court may
. . . consider the fact undisputed for purposes of the motion."); *see, e.g., Bricklayers & Allied
Craftworkers Local 1 of PA/DE v. Penn Valley Tile, Inc.*, 175 F. Supp. 3d 487 (E.D. Pa. 2016).

McEnroe Decl. ¶3; JA0705–JA0706. When Dr. Tulp's counsel sent a letter to ECFMG's counsel reflecting confusion about whether ECFMG was asking him to stipulate to anything about the documents, ECFMG's counsel called Dr. Tulp's counsel on the phone. McEnroe Decl. ¶¶4–5; JA0707–JA0708. During the call, counsel for ECFMG explained the Court's Policies and Procedures regarding the Joint Appendix, including the fact that Dr. Tulp could add materials to the Joint Appendix before filing or supplement the Joint Appendix with additional materials after it was filed (if necessary). McEnroe Decl. McEnroe Decl. ¶6. Dr. Tulp's counsel responded that he had nothing to add to the Joint Appendix at that time and that ECFMG counsel had conferred with him pursuant to the Court's Policies and Procedures. McEnroe Decl. ¶6.

In sum, ECFMG followed this Court's summary judgment procedures and Dr. Tulp did not. Dr. Tulp's dissatisfaction with those procedures is not a basis to deny ECFMG the relief it seeks, nor is it grounds to deny summary judgment.

III. CONCLUSION

For the foregoing reasons, ECFMG respectfully requests that the Court grant its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

1              MEETING OF THE ECFMG MEDICAL
              EDUCATION CREDENTIALS COMMITTEE

2

                        -   -   -

3

4    RE:   ORIEN L. TULP, USAT

5                       -   -   -

6                    NOVEMBER 28, 2018

7                       -   -   -

8              Hearing taken pursuant to notice,

9    was held at RITTENHOUSE HOTEL, 210 West

10   Rittenhouse Square, Philadelphia,

11   Pennsylvania, commencing at 10:00 a.m.,

12   on the above date, before LISA MARIE

13   CAPALDO, RPR, a Registered Professional

14   Reporter and Notary Public in and for the

15   Commonwealth of Pennsylvania.

16

17

18

19

20

                GOLKOW LITIGATION SERVICES
21        877.370.3377 ph | 917.591.5672 fax
                    Deps@golkow.com

22

23

24

Dated: June 20, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:    +1.215.963.5917
Facsimile:    +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for
Foreign Medical Graduates*

## CERTIFICATE OF SERVICE

I do hereby certify that on this date, I caused true and correct copies of the foregoing

document to be served via electronic filing upon the following counsel of record via the ECF

system and/or mail:

> TOMMY SWATE
> 403 WILD PLUM
> HOUSTON, TX 77013
> Email: swatemd@aol.com
>
> WILLIAM C. REIL
> 1515 MARKET ST SUITE 1200
> PHILADELPHIA, PA 19102
> 215-564-1635
> Fax: 215-564-4292
> Email: billreillaw@gmail.com
>
> *Attorneys for Plaintiff*

DATED:  June 20, 2019                                    */s/ Elisa P. McEnroe*
                                                         Elisa P. McEnroe

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and | ) | |
| DR. WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT EDUCATIONAL COMMISSION FOR FOREIGN MEDICAL
GRADUATES' REPLY STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Section V.C.3 of the Court's Policies and Procedures for Civil Cases,

Defendant Educational Commission for Foreign Medical Graduates ("ECFMG") submits the

following Reply Statement of Undisputed Material Facts in response to Plaintiff Dr. Orien L.

Tulp's Statement of Disputed Material Facts.

1.    The administrative hearing by the ECFMG on 11/28/18 for Dr. Tulp was
fundamentally unfair and violated common law due process. (Number 14 on Plaintiff's Appendix,
Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

**RESPONSE:** This paragraph contains improper legal conclusions. To the extent that a

response is required, this paragraph is disputed but not material. ECFMG admits that an irregular

behavior proceeding for Dr. Tulp took place on November 28, 2018. SOF ¶¶ 47. ECFMG denies

that the irregular behavior proceeding was "fundamentally unfair and violated common law due

process" for the reasons set forth in its summary judgment briefing. ECF No. 31-1, 31-3.

2.    Defendants' [sic] violated Dr. Tulp's right to common law due process by
publishing on the WDOMS before his hearing. This impacted the hearing because it implied that
Dr. Tulp was guilty of irregular behavior or misconduct before he had his hearing.

1

**RESPONSE:** This paragraph contains improper legal conclusions. To the extent that a response is required, this paragraph is disputed but not material. ECFMG denies that ECFMG violated Dr. Tulp's right to common law due process. ECF No. 31-1, 31-3. Moreover, ECFMG denies that it published information on the World Directory of Medical Schools that "implied that Dr. Tulp was guilty of irregular behavior or misconduct." The evidence shows that ECFMG posted truthful factual information on the World Directory regarding how it would proceed with applications from USAT students (so that the impacted students could be aware and proceed accordingly), not information about Dr. Tulp's irregular behavior proceedings or finding. SOF ¶¶ 69–75. Any dispute regarding the timing of postings to the World Directory is not genuine and is not material to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

3.      There is no evidence, in the record of the administrative hearing of Dr. Tulp, from which the ECFMG could have found him guilty of irregular behavior. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

**RESPONSE:** This paragraph contains improper legal conclusions. To the extent that a response is required, this paragraph is disputed but not material. Substantial evidence supporting Dr. Tulp's irregular behavior finding was presented to the Medical Education Credentials Committee and disclosed to Dr. Tulp and his counsel before and during the irregular behavior proceeding. SOF ¶¶ 21-46. Dr. Tulp's reference to evidence "in the record" is disputed as misleading because ECFMG does not have a process whereby materials presented to the Medical Education Credentials Committee can be entered into evidence in connection with irregular behavior proceedings. SOF ¶¶ 48, 52; JA0198. Any dispute regarding the evidence presented at Dr. Tulp's irregular behavior hearing is immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

4.     ECFMG limited Dr. Tulp to 20 minutes for presentation and the hearing was unilaterally terminated by Elisa P. McEnroe, Esquire, without any evidence put in to the record. (PA0701, ECFMG Hearing; Complaint paragraph 15, PA0562).

**RESPONSE:**  This paragraph is disputed but not material.  Dr. Tulp's opportunity to present his response was scheduled for 20 minutes.  SOF ¶ 43.  The hearing was terminated by counsel for ECFMG because Dr. Tulp refused to testify and his counsel became hostile and refused to present any evidence explaining or clarifying Dr. Tulp's position that an irregular behavior finding was not warranted.  SOF ¶¶ 56–59, 62.  Dr. Tulp's reference to evidence "put in to the record" is disputed as misleading because ECFMG does not have a process whereby materials presented to the Medical Education Credentials Committee can be entered into evidence in connection with irregular behavior proceedings.  SOF ¶¶ 48, 52; JA0198.  The disputed facts are immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

5.     Dr. Tulp never received any indication from ECFMG, nor did their rules indicate, who had the burden of proof at the administrative hearing. Accordingly, Dr. Tulp did not know whether ECFMG intended to present witness and evidence that he could cross-examine. At the hearing, Dr. Tulp was informed that he had the burden of proof. (PA0672). See also spreadsheet of student losses at USAT. (PA0663-PA-0665).

**RESPONSE:**  This paragraph is disputed in part but not material.  Dr. Tulp did not have the burden of proof and was never told that he had the burden of proof.  SOF ¶¶ 35, 37, 40, 42, 43, 45, 48, 51–55, 59–62. ECFMG's policies indicate the processes through which ECFMG presents the evidentiary basis underlying irregular behavior allegations and the process through which those alleged to have committed irregular behavior may respond to those allegations.  SOF ¶3. ECFMG objects to Dr. Tulp's inclusion of a spreadsheet of student losses at USAT in his supplemental appendix because it was never produced in discovery despite being responsive to numerous

3

discovery requests. SOF ¶ 79. The disputed facts are immaterial to the question of whether Dr.

Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

6.      ECFMG serves a public function by certifying International Medical Graduates.
Not reasonably disputed.

**RESPONSE:** Disputed but immaterial. ECFMG disputes that it "serves a public function"

because it is not clear what is meant by "public function." In dismissing Dr. Tulp's constitutional

due process claims, this Court already held that ECFMG is not a state actor nor does its alleged

conduct constitute state action. ECF No. 28 at 5. The disputed fact is immaterial to the question

of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular

behavior finding.

7.      The policy of the ECFMG is not to present witnesses or documents at hearing.
(Injunction Hearing, testimony of Corrado, lines 5-12, JA0197).

**RESPONSE:** Disputed in part but immaterial. ECFMG's standard practice is to present

copies of all written materials to be considered by the Medical Education Credentials Committee

and to give the subject of the irregular behavior proceedings the opportunity to be heard and make

a personal appearance before the Committee. SOF ¶ 35, 39; JA0197, JA0209. ECFMG does not

normally allow for live witnesses other than the subject of the proceedings, though it does take

written statements into account. *Id.* The disputed fact is immaterial to the question of whether Dr.

Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

8.      In terms of damages, paragraphs 29 and 30, together with the prayer of the
complaint, set forth not only injunctive and equitable relief, but also the tangible and intangible
effects of the ECFMG on Dr. Tulp. Plaintiff requests that the finding of "irregular behavior" be
reversed. It is too late now to have another hearing., since USAT has basically been destroyed by
the actions of the ECFMG. Dr. Tulp indicated in his deposition with regards to damages the
following: when the ECFMG posted a warning on the WDOMS before the hearing with ECFMG.
At that time, virtually all payments to USAT stopped and there was a mass exodus of students. Dr.
Tulp indicated that ECFMG cost USAT over a thousand students and their medical careers. (Tulp
deposition at JA0511). Dr. Tulp also indicated "The uncollectible tuitions as of October 1st up to,

4

you now, from at that point over $41.2 million. These are students that are paying a little bit each month as they could, waiting to get their documents." (Tulp deposition at JA0513).

**RESPONSE:** This statement consists of improper legal conclusions and there are no facts for ECFMG to recognize as disputed or undisputed. To the extent that a response is required, this paragraph is disputed in part but immaterial. Dr. Tulp points to no facts in the record supporting his contention that it is too late to have another hearing. Although ECFMG does not dispute that Dr. Tulp made allegations regarding his damages in his Complaint and at his deposition, ECFMG disputes Dr. Tulp's characterization of those alleged damages. The evidence shows that ECFMG posted truthful factual information on the World Directory regarding how it would proceed with applications from USAT students (so that the impacted students could be aware and proceed accordingly), not information about Dr. Tulp's irregular behavior proceedings or finding. SOF ¶¶ 69–75. Dr. Tulp has presented no evidence to support his contentions regarding a mass exodus of students from USAT and uncollected tuition payments. Even if he had, the disputed facts are immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

9.    According to ECFMG procedure, no witnesses or evidence were presented at the administrative hearing of Dr. Tulp. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

**RESPONSE:** Disputed in part but immaterial. ECFMG's standard practice is to present copies of all written materials to be considered by the Medical Education Credentials Committee and to give the subject of the irregular behavior proceedings the opportunity to be heard and make a personal appearance before the Committee. SOF ¶ 35, 39; JA0197, JA0209. Consistent with this practice, ECFMG provided the written materials considered by the Medical Education Credentials Committee and Dr. Tulp was provided with an opportunity to serve as a witness and testify, although he refused to do so. SOF ¶¶ 44–46, 48, 55–56, 62. The disputed facts are

5

immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

      10.     The ECFMG refused to define "campus" when asked prior to the 11/28/19 hearing, but insisted that Dr. Tulp define it for the ECFMG. (PA0668).

      **RESPONSE:** Disputed but immaterial. As ECFMG uses the word campus in its common parlance, ECFMG asked Dr. Tulp what *he* meant by "campus" when he said that USAT did not have a campus in the United States, especially since Dr. Tulp's answer conflicted with information that USAT had been offering classes in the United States. SOF ¶¶ 22-33, 57. Dr. Tulp himself used the same common meaning of the word "campus" prior to this litigation. JA0254. The disputed facts are immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

      11.     Nowhere in the rules or regulations of the ECFMG, is it stated who has the burden of proof at the hearing. Not reasonably disputed.

      **RESPONSE:** Disputed but immaterial. ECFMG incorporates by reference its response to Paragraph 5. ECFMG's policies indicate the processes through which ECFMG presents the evidentiary basis underlying irregular behavior allegations and the process through which those alleged to have committed irregular behavior may respond to those allegations. SOF ¶3. This disputed fact is immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

      12.     The ECFMG conducted the administrative hearing as if Dr. Tulp had the burden to prove his innocence without any evidence introduced against him. (Number 14 on Plaintiff's Appendix, Transcript of ECFMG Hearing for Dr. Tulp (11-28-18), PA0670-PA0702).

      **RESPONSE:** This paragraph is disputed but not material. ECFMG incorporates by reference its responses to Paragraphs 5 and 11. Dr. Tulp did not have the burden of proof and was never told that he had the burden of proof. SOF ¶¶ 35, 37, 40, 42, 43, 45, 48, 51-55, 59-62.

Case: 19-2706 Document: 003113419289 Page: 394 Date Filed: 11/27/2019

ECFMG's policies indicate the processes through which ECFMG presents the evidentiary basis underlying irregular behavior allegations and the process through which those alleged to have committed irregular behavior may respond to those allegations. SOF ¶3. Substantial evidence supporting Dr. Tulp's irregular behavior finding was presented to the Medical Education Credentials Committee and disclosed to Dr. Tulp and his counsel before and during the irregular behavior proceeding. SOF ¶¶ 21–46. Dr. Tulp's reference to "evidence introduced" is disputed as misleading because ECFMG does not have a process whereby materials presented to the Medical Education Credentials Committee can be "introduced" at the irregular behavior proceedings. SOF ¶¶ 48, 52; JA0198. The disputed facts are immaterial to the question of whether Dr. Tulp had notice and an opportunity to be heard in connection with his irregular behavior finding.

Dated: June 20, 2019

Respectfully submitted,

*/s/ Elisa P. McEnroe*
Elisa P. McEnroe, PA Bar No. 206143
Matthew D. Klayman, PA Bar No. 319105
MORGAN, LEWIS & BOCKIUS, LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  +1.215.963.5917
Facsimile:  +1.215.963.5001
elisa.mcenroe@morganlewis.com
matthew.klayman@morganlewis.com

*Attorneys for the Educational Commission for Foreign Medical Graduates*

7

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. ORIEN L. TULP, ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> EDUCATIONAL COMMISSION FOR ) <br> FOREIGN MEDICAL GRADUATES and ) <br> DR. WILLIAM W. PINSKY, ) <br> ) <br>       Defendants. ) <br> ) | Case No. 2:18-cv-05540-WB <br><br> Hon. Wendy Beetlestone |

## SUPPLEMENT TO JOINT APPENDIX – TABLE OF CONTENTS

| Document | Page(s) |
|---|---|
| June 20, 2019 Declaration of Elisa McEnroe | JA0703-JA0704 |
| Exhibit A:  Email from C. Barrett to W. Reil, T. Swate, E. McEnroe, and M. Klayman (May 1, 2019) | JA0705-JA0706 |
| Exhibit B:  Letter from W. Reil to E. McEnroe (May 2, 2019) | JA0707-JA0708 |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DR. ORIEN L. TULP, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:18-cv-05540-WB |
| | ) | |
| v. | ) | Hon. Wendy Beetlestone |
| | ) | |
| EDUCATIONAL COMMISSION FOR | ) | |
| FOREIGN MEDICAL GRADUATES and DR. | ) | |
| WILLIAM W. PINSKY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF ELISA P. MCENROE IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

I, Elisa P. McEnroe, declare as follows:

1.      I am an attorney in the law firm Morgan, Lewis & Bockius LLP and counsel for Defendant Educational Commission for Foreign Medical Graduates ("ECFMG").

2.      I make this Declaration in connection with the above-captioned action.  I have personal knowledge of the facts stated herein and if called as a witness could and would testify to those facts.

3.      On May 1, 2019, my colleague Caitlin Barrett sent counsel for Dr. Tulp (Bill Reil and Tommy Swate) an email entitled "Tulp v. ECFMG – Joint Appendix" concerning the Joint Appendix that would be filed in connection with ECFMG's summary judgment motion. Attached to the email were (1) a table of contents summarizing the contents of the proposed Joint Appendix, and (2) an electronic version of the proposed Joint Appendix.  I was copied on that email and received it myself.  A true and correct copy of that email (without its voluminous attachments) is attached here as **Exhibit A** (JA0705-JA0706).

4.      In response, Bill Reil, counsel for Dr. Tulp, sent a letter to counsel for ECFMG reflecting confusion about whether ECFMG was asking him to stipulate to anything about the documents.   A true and correct copy of that letter is attached here as **Exhibit B** (JA0707-JA0708).

5.      Together with my colleague Matthew D. Klayman, I called Bill Reil on the phone on the afternoon of May 2.

6.      During the call, I explained the Court's Policies and Procedures regarding the preparation of a Joint Appendix, including the fact that Dr. Tulp could add materials to the Joint Appendix before filing or supplement the Joint Appendix with additional materials after it was filed (if necessary).   Mr. Reil responded that he had nothing to add to the Joint Appendix at that time and that we had conferred with him pursuant to the Court's Policies and Procedures.

7.      The first time Dr. Tulp disclosed the "Spreadsheet of Student Loss at USAT" and the accompanying documents (PA 0663–PA 0665) was in its opposition to Defendant's Motion for Summary Judgment.   These documents were responsive to numerous requests for production but not produced in discovery.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge.

EXECUTED:  June 20, 2019

Elisa P. McEnroe

2

413a

Case: 19-2706   Document: 003113419289   Page: 398   Date Filed: 11/27/2019
Case 2:18-cv-05540-WB   Document 34-2   Filed 06/20/19   Page 4 of 7

JA0705

# EXHIBIT A

## Barrett, Caitlin

| | |
|---|---|
| **From:** | Barrett, Caitlin |
| **Sent:** | Wednesday, May 1, 2019 11:19 AM |
| **To:** | 'billreillaw@gmail.com'; 'swatemd@aol.com' |
| **Cc:** | McEnroe, Elisa P.; Klayman, Matthew D. |
| **Subject:** | Tulp v. ECFMG - Joint Appendix |
| **Attachments:** | Joint Appendix.pdf; 052766__103809714v1_5.1.2019 DRAFT Table of Contents for Joint Appendix (2).DOCX |

Counsel,

I am sending the following correspondence on behalf of Elisa McEnroe.  Defendant ECFMG intends to move for summary judgment this week in accordance with Judge Beetlestone's scheduling order.  As Judge Beetlestone's Order lays out, the Parties must develop a joint appendix which the movant for summary judgment will then file at the time it files the motion for summary judgment.  Please find attached our proposed joint appendix and a list of the contents of the proposed appendix.  Once the appendix is agreed upon, we will bates-number it and have it prepared for filing.  Please let us know whether you have any objections or additions you would like to make **by the close of business day, tomorrow, May 2, 2019.**

Best,

**Caitlin Barrett**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5930 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
caitlin.barrett@morganlewis.com | www.morganlewis.com
Assistant: Marlene E. Mackason | +1.215.963.4930 | marlene.mackason@morganlewis.com

# EXHIBIT B

**William C. Reil, Esquire**
**1515 Market Street, Suite 1200, Philadelphia, PA 19102**
**Tel: 215-564-1635 Fax: 215-564-4292**
**BillReilLaw@gmail.com**

May 2, 2019
                              **BY EMAIL ONLY**
                              elisa.mcenroe@morganlewis.com

Elisa P. McEnroe, Esquire
Morgan, Lewis, and Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921

         Re:   Dr. Tulp v. ECFMG and Dr. Pinsky
                Docket No: 2:18-cv-05540-WB
                **Joint Appendix and Stipulations**

Dear Ms. McEnroe:

I received your email captioned "Joint Appendix." There has been insufficient time to look over 500 pages of documents which you sent to us. It would be useful if you could send a list of proposed stipulations, which you wish Mr. Swate and myself to consider.

Generally, I will stipulate to the authenticity of any reasonable exhibit, but not necessarily to the truth of the entire document. Accordingly, it would be preferable to see the document to which the appendix refers. I would recommend to my client that we reserve the right to object to a stipulation, contingent upon how it is used.

Sincerely yours,

*William C. Reil*

William C. Reil

cc:  Tommy Swate, Esquire
      Dr. Orien L. Tulp

November 28, 2018

```
 1                    -   -   -

 2                I N D E X

 3                    -   -   -

 4

 5      Statement of:

 6            ORIEN L. TULP, USAT

 7

 8         By Mr. Swate

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

November 28, 2018

```
 1                 -   -   -

 2                 PROCEEDING

 3                 -   -   -

 4    O R I E N   T U L P, Sworn.

 5                 -   -   -

 6            DR. GUSIC:  We will begin by

 7       asking the committee members and

 8       the staff to introduce themselves.

 9       We will swear in Dr. Tulp and then

10       if there are any opening

11       statements.

12            MS. McENROE:  Elisa McEnroe,

13       outside counsel for ECFMG.

14            MS. KATZ:  I'm Francis Katz.

15       I'm the general counsel at ECFMG.

16            DR. CRAIG:  Steve Craig,

17       board member.

18            DR. OGUNYEMI:  Dr. Ogunyemi,

19       ECFMG board member.

20            DR. BUCKLEY: Peter Buckley,

21       I'm also an ECFMG board member.

22            DR. PELEGANO:  Jim Pelegano,

23       ECFMG board member.

24            DR. KRISHNA:  Dr. Krishna,
```

Golkow Litigation Services
CONFIDENTIAL
419a
Page 4
ECFMG00000514
PA 0673

November 28, 2018

1          board member.

2                    DR. FILIK:  Andy Filik,

3          ECFMG board member.

4                    DR. PINSKY:  Bill Pinsky,

5          President and CEO of ECFMG.

6                    DR. GUSIC:  Maryellen Gusic,

7          board member and chair of this

8          committee.

9                    DR. BLANCK:  Ronald Blanck,

10         chair and board member of this

11         committee.

12                   DR. BARZANSKY:  Barbara

13         Barzansky, ECFMG board member.

14                   MS. CORRADO:  Kara Corrado,

15         ECFMG staff.

16                   MS. COVER:  Lisa Cover,

17         ECFMG staff.

18                   MR. DONOHUE:  Dennis

19         Donohue, ECFMG staff.

20                   MS. GRIDNEVA:  Svetlana

21         Gridneva, ECFMG staff.

22                   MS. CARLIN:  Rosemary

23         Carlin, ECFMG staff.

24                   MS. CORRADO:  Just briefly,

November 28, 2018

```
1         I'm just going to iterate the
2      allegations for the committee.
3      The allegation is that Dr. Orien
4      Tulp, professor and president of
5      USAT engaged in irregular behavior
6      in connection with providing false
7      information to ECFMG, specifically
8      that Dr. Tulp provided false
9      information to ECFMG regarding
10     USTAT's United States branch
11     campuses and certifying to the
12     attendance dates of several USTAT
13     students and graduates when ECFMG
14     has information that these
15     students were not attending USTAT
16     during some of the time periods to
17     which Dr. Tulp certified.
18         [Dr. Tulp is here today along
19     with his attorneys to address
20     these allegations and to answer
21     any questions that the committee
22     may have.]
23         DR. GUSIC:   Opening
24     statements.
```

November 28, 2018

```
 1              MR. SWATE:  Thank you.  I
 2         asked the name of the officer
 3         outside the door, and he refused
 4         to give me his name.  Could you
 5         tell me who the officer outside
 6         the door is?
 7              MS. McENROE:  It's a
 8         security officer we've brought in
 9         for our own protection in case we
10         need it throughout our day's
11         proceedings.  He's an off-duty
12         Philadelphia police officer.
13              MR. SWATE:  First, I would
14         like to ask for the -- I've asked
15         and I've asked and I've asked for
16         the packet that was presented to
17         the committee members.  I would
18         like a copy of the packet, the
19         information that was submitted to
20         the committee members so that I
21         will know what was considered by
22         the committee before we came here
23         today because you're considering
24         information that I may or may not
```

CONFIDENTIAL                                   ECFMG00000517

                          422a

                                               PA 0676

November 28, 2018

1    know about.  And that's

2    fundamentally unfair to my client,

3    for my client to have to defend

4    against potential information that

5    we don't have.

6           First, I would ask for a

7    copy of that.

8           MS. McENROE:  There's

9    actually a black binder right in

10   front of you.  We also have

11   provided that on more than one

12   occasion prior to this proceeding,

13   which is our usual practice even

14   without you asking.  That's what

15   we do.

16          MR. SWATE:  Where is the

17   letter that you sent to the

18   committee members addressing this?

19          MS. McENROE:  The materials

20   presented to the committee

21   regarding this circumstance with

22   Dr. Tulp's charges of irregular

23   behavior are presented in that

24   binder to you.

November 28, 2018

1          MR. SWATE:  I'm asking you

2     for the letter you sent to the

3     committee members.

4          MS. McENROE:  I don't know

5     what you're talking about.

6          MR. SWATE:  You didn't send

7     them a letter explaining what this

8     was?

9          MS. McENROE:  We sent those

10    materials.

11         MR. SWATE:  What about the

12    letter that went with the

13    materials?

14         MS. McENROE:  Those are the

15    materials including any

16    correspondence with it.

17         MR. SWATE:  All the

18    correspondence would be included

19    with this material?

20         MS. McENROE:  Correct.

21         MR. SWATE:  I'm sorry.

22    Where is the correspondence that

23    you sent to the committee?

24         MS. McENROE:  This is the

November 28, 2018

1    same material that you were

2    provided.  November 14th you got

3    it by e-mail, and November 15th

4    you got it by Federal Express.

5         MR. SWATE:  I'm asking for

6    the letters that you sent to these

7    committee members.  You just

8    didn't send this out to the

9    committee members just blindly.

10        MS. McENROE:  Unfortunate

11   for them, potentially there's a

12   lot of materials they have to

13   review, and they carefully review

14   the materials presented to them as

15   presented to you.  We get an

16   electronic copy, myself included

17   which you were provided by e-mail

18   on November 14th.

19        MR. SWATE:  So you're

20   telling me that you did not send

21   them a letter explaining this

22   material and explaining the

23   allegation to the committee

24   members.

November 28, 2018

1    MS. McENROE:  That material

2    is as presented to the committee.

3    MR. SWATE:  You're not

4    answering my question.

5    MS. McENROE:  I'm not here

6    to answer your questions, sir.

7    We're here for your client to

8    explain to us the charges of

9    irregular behavior against him.

10    If you have an opening

11    statement you would like to make,

12    we're interested in hearing it.

13    Our committee has questions for

14    your client, and then we will

15    consider the charges of irregular

16    behavior.

17    MR. SWATE:  This committee

18    has no jurisdiction over Dr. Tulp.

19    We showed up today as it stands

20    for negotiation.  You all have no

21    legal jurisdiction to determine

22    anything.

23    So accordingly, please be

24    advised that we're not waiving

1    because we're here any

2    jurisdictional issues that may be

3    addressed at another forum at

4    another day.

5        Since the ECFMG has made the

6    allegation, it should have the

7    sole and exclusive burden of

8    proof.  So who is presenting the

9    evidence against Dr. Tulp?

10        This is not the U.S.

11    Congress where you can make blind

12    allegations and attempt to have

13    the person prove they are not

14    guilty.  And that's what's

15    occurring here today, just blatant

16    accusations and then assuming he's

17    guilty.  And you have him come

18    here for 20 minutes to explain why

19    he's not guilty.

20        You have a duty of

21    presenting your evidence, credible

22    evidence before Dr. Tulp has to

23    answer anything.  It's your

24    burden.

November 28, 2018

```
1                    Now, you claim you are
2           basing this on the preponderance
3           of evidence.  What evidence are
4           you presenting here today that Dr.
5           Tulp violated anything?  None.
6                    Also, there appears to be a
7           co-mingling of the prosecutorial
8           and jury functions.  You are both
9           making the claims and acting as
10          judge and jury.
11                   We have asked for discovery
12          of documents, especially any
13          letters or correspondence that
14          have been sent to the committee
15          members.  The claim that you just
16          sent the committee members this
17          without any explanation doesn't
18          meet any kind of test of
19          credibility.
20                   The ECFMG is either acting
21          as quasi government entity or
22          acting under a contract basis.
23          Now, you claim that you are a
24          private nonprofit entity.  So the
```

November 28, 2018

```
1      only reason that you could be
2      interacting with Dr. Tulp is on
3      the basis of contract.  Where is
4      the contract?
5           Dr. Tulp's doesn't have a
6      contract with you all.  So you
7      have no right to tortuously
8      interfere with his business
9      practices or tortuously interfere
10     with his students.
11          ECFMG has printed and
12     published derogatory information
13     about USAT.  Whether it's true or
14     not true, at least the target of
15     those accusations should have had
16     the opportunity to address those
17     accusations before you go out and
18     attempt to ruin the school, which
19     is what you have done causing
20     probably millions of dollars worth
21     of damages.
22          If you're not a quasi
23     government entity, everybody in
24     this room is going to be liable
```

Golkow Litigation Services
CONFIDENTIAL
429a
Page 14
ECFMG00000524
PA 0683

November 28, 2018

1      for whatever damages we can prove.

2      You've already prejudged the case

3      by taking action against USAT by

4      refusing to release documents of

5      their students.  Totally have

6      refused to release documents of

7      students the students are entitled

8      to have released.

9           Again, repeating myself,

10     you're either a quasi government

11     agency or you are a private

12     agency.  A private agency you got

13     to have a contract.  Quasi

14     government agency you got to have

15     at least an assemblance of due

16     process which there's none here.

17          I asked for the rules and

18     regulations and the protocols for

19     these meetings.  Apparently, there

20     is none other than what's in the

21     eyes of the beholders of the

22     people who run the ECFMG.

23          What's the protocol?  I

24     asked for the agenda.  I got a

November 28, 2018

1        brief statement to show up at

2        8:45.  And here we are at

3        ten o'clock, total disrespectful

4        to my client and myself to have us

5        show up at 8:45 and then be

6        ten o'clock before you have us

7        come in and address you.

8              So we have not received the

9        rules and regulations for the

10       hearing nor have we seen any right

11       that you have other than

12       essentially blackmailing the

13       students and telling the students,

14       well, if you don't send in these

15       forms, we're going to hold your

16       records hostage, which has

17       resulted in students either being

18       accepted for residency and not

19       being able to continue with the

20       residency or not being able to be

21       interviewed for the residency.

22             That is our opening

23       statement.  If you have any

24       questions, you can address them to

Golkow Litigation Services
CONFIDENTIAL
431a
Page 16
ECFMG00000526
PA 0685

```
 1    me.  Dr. Tulp will not be
 2    answering any questions.
 3         MS. McENROE:  Mr. Swate, do
 4    you have any substantive response
 5    or statement with respect to the
 6    charges of irregular behavior
 7    against your client?
 8         We've heard your procedural
 9    concerns.  And just for the
10    purposes of the record, we
11    disagree across the board with
12    your allegations and your
13    statements about the state of
14    affairs.  I think for everybody's
15    time I'm not going to go through
16    them and enumerate each and every
17    single one of them.
18         If and when we ever ended up
19    dealing with these issues in the
20    court of law, we would deal with
21    them then and we feel very
22    confident --
23         MR. SWATE:  I can assure you
24    we're going to end up in federal
```

Golkow Litigation Services
CONFIDENTIAL
432a
Page 17
ECFMG00000527
PA 0686

November 28, 2018

1    court.

2         MS. McENROE:  I let you

3    speak.  Can you let me speak?

4         MR. SWATE:  I'm sorry.

5         MS. McENROE:  Do you have

6    any statement with regard to the

7    actual substantive allegations of

8    irregular behavior?

9         MR. SWATE:  We can go

10   through this page by page.

11        MS. McENROE:  I don't mean

12   to go through it page by page.

13   Are you here today saying that --

14   is it Dr. Tulp?  I would say Tulp

15   with an L.

16        DR. TULP:  It's Tulp.

17        MS. McENROE:  Are you saying

18   that Dr. Tulp did not provide

19   incorrect information to ECFMG

20   with regard to branch campuses in

21   the United States?

22        MR. SWATE:  Show me your

23   evidence that he did.

24        MS. McENROE:  We have e-mail

November 28, 2018

1        correspondence from him in all

2        caps saying that there were not

3        campuses in the United States.

4        And we have significant evidence

5        to the contrary.  We were

6        wondering if --

7            MR. SWATE:  What's your

8        definition of campus?

9            MS. McENROE:  Maybe that's

10       something you can illuminate for

11       us about what your client's view

12       is of a campus, whether there was

13       education taking place in the

14       United States for USTAT.

15           MR. SWATE:  The burden of

16       proof is not on Dr. Tulp.  The

17       burden of proof is on the ECFMG.

18           Now, Dr. Tulp is not going

19       to address a nebulous definition

20       of campuses.  You show me your

21       written definition of campuses and

22       we'll address that.

23           MS. McENROE:  Did USTAT

24       provide any student with any

November 28, 2018

1    medical school basic science

2    education in the United States?

3         MR. SWATE:  Well, yes, it

4    did.

5         MS. McENROE:  He's shaking

6    his head, no, and you just said,

7    yes.  So maybe you should let your

8    client speak to respond.

9         MR. SWATE:  Dr. Tulp is not

10   going to be talking today.  The

11   next time you hear him talk is

12   going to be in federal court.

13        MS. McENROE:  So, yes, there

14   was education in the United

15   States?

16        MR. SWATE:  There was no

17   campus in the United States.

18        MS. McENROE:  So my question

19   was, was there any education for

20   basic medical sciences provided in

21   the United States?

22        MR. SWATE:  What do you mean

23   by education?

24        MS. McENROE:  Were there any

```
 1              live lectures provided in the
 2              United States for USAT?
 3                   MR. SWATE:  My
 4              understanding is the lectures were
 5              for some extent was prepared by
 6              the Internet, that type of thing.
 7                   MS. McENROE:  That was not
 8              responsive to my question.  My
 9              question was --
10                   MR. SWATE:  You're not
11              cross-examining me, Counsel.
12                   MS. McENROE:  Well, I'm
13              asking you questions and trying to
14              be more specific --
15                   MR. SWATE:  We can't answer
16              the questions because you haven't
17              defined what campus is.  You
18              haven't defined what the
19              regulations for having an off-site
20              campus where you allowed other
21              schools to have off-site campuses,
22              but you attacked USTAT for some
23              reason.
24                   Now, you cannot disagree
```

November 28, 2018

1      that you have allowed other

2      schools to have off-site campuses

3      due to natural problems.  You've

4      been told what the natural

5      problems were.

6              MS. McENROE:  That was not

7      my question.  My question was,

8      were there any live lectures

9      provided to students of USTAT or

10     basic medical sciences in the

11     United States?

12             MR. SWATE:  I'm not a

13     witness.  So you don't get to

14     cross-examine me.

15             MS. McENROE:  I may not be

16     able to ask you questions as a

17     witness.  I would normally ask

18     your client.

19             MR. SWATE:  You're not going

20     to be able to do that because you

21     haven't given me enough

22     information to prepare my client.

23     This star chamber proceedings,

24     he's not going to participate in.

November 28, 2018

1           MS. McENROE:  Despite the
2      four inches of paper --
3           MR. SWATE:  Let's go through
4      each of the --
5           MS. McENROE:  You had some
6      concerns that by not taking you
7      exactly at 8:45 when we asked that
8      you be here for a 9:00 hearing
9      until 10:00 was a waste of time.
10     We apologize if you feel that way.
11     That was not at all the intention.
12     This is a busy committee.  We
13     don't have the time or the man
14     with to sit here and go through
15     every single page that we provided
16     you weeks ago.
17          MR. SWATE:  I'm prepared to
18     go through every page of this.
19          MS. McENROE:  Tell me where
20     in there it proves that your
21     client did not provide any medical
22     school education in the United
23     States.
24          MR. SWATE:  He doesn't have

November 28, 2018

```
 1        the burden of proof.
 2            MS. McENROE:  We're just
 3        going around in circles.  I don't
 4        know that it's going to be much
 5        more helpful to try and proceed.
 6            MR. SWATE:  I'm willing to
 7        go through every page of this.
 8            MS. McENROE:  To what end?
 9        You're not answering my questions.
10        What are you hoping to get out of
11        every single page of that?
12            If you want to sit here and
13        look for something specific, tell
14        me.  We've all read the materials.
15        We can help direct you.
16            Take a look at Appendix E at
17        the e-mail from your client
18        saying, it is not a campus.  Our
19        only campus is located in
20        Olveston, Montserrat, British West
21        Indies.
22            My questions are trying to
23        understand whether there was
24        medical school education in the
```

Golkow Litigation Services
CONFIDENTIAL

Page 24
ECFMG00000534

439a

PA 0693

November 28, 2018

```
1        United States.
2             MR. SWATE:  That's not what
3        -- what you're trying to do is ask
4        that question and then leap frog
5        to make like that's the campus.
6             Give me your definition of
7        what a campus is and then give me
8        the cases in which you've allowed
9        campuses to operate outside of
10       their original address.
11            MS. McENROE:  Perhaps your
12       client, if we would be allowed,
13       could provide us an explanation of
14       what he meant by campus in this
15       e-mail because the committee is
16       interested in hearing that.
17            MR. SWATE:  I would like to
18       know what your definition of
19       campus is.
20            MS. McENROE:  He's the one
21       who used the word here.  I'm
22       interested to know what he means
23       by it.
24            MR. SWATE:  I'm asking you,
```

November 28, 2018

```
 1        what's your definition of campus?
 2        Secondly, what's the exceptions to
 3        having an off-site campus?
 4             MS. McENROE:  We appreciate
 5        you being here today.  We're
 6        working on trying to understand
 7        the facts and circumstances in
 8        this case.  Apparently, we're
 9        going to be left with a cold
10        record because your client is
11        refusing to answer any questions.
12             I think at this time it
13        makes sense, unless there's any
14        closing statement you want to
15        make, that we adjourn.
16             MR. SWATE:  ECFMG is
17        adjourning this without us having
18        the ability to go through their
19        efforts.
20             MS. McENROE:  Is there
21        anything in particular you want to
22        go through?  We provided this to
23        you --
24             MR. SWATE:  I want to go
```

Golkow Litigation Services
CONFIDENTIAL
441a
Page 26
ECFMG00000536
PA 0695

November 28, 2018

```
 1        through the whole thing.

 2             MS. McENROE:   Start on page

 3        one.   What is it you want to talk

 4        to us about it?

 5             MR. SWATE:   The matter has

 6        been brought to the CIE's

 7        attention.   Where is the letter or

 8        whatever information was brought

 9        to the attention?

10             MS. McENROE:   We're not here

11        to answer questions, sir.   If you

12        have a closing statement or

13        something specific you want to

14        point out to us so we understand

15        the allegations better that are

16        lodged against your client, that

17        would be helpful.

18             That's why we're here today,

19        the due process you're saying that

20        you wanted.   We're here to try to

21        understand what it is that you're

22        trying to do here.

23             And candidly, I appreciate

24        you advocating on behalf of your
```

Golkow Litigation Services
CONFIDENTIAL

442a

Page 27
ECFMG00000537

PA 0696

November 28, 2018

```
 1          client.  It's not productive here
 2          if we can't understand the
 3          underlying facts as your client
 4          means them and wants ECFMG to
 5          understand them.
 6               So if this is your position
 7          that you're just going to come
 8          here and obstruct, then that's
 9          just how it's going to be and
10          we're not wasting this committee's
11          time.  They have a busy agenda,
12          and we've got to keep going.
13               MR. SWATE:  It's a waste of
14          the committee's time when you're
15          going to destroy somebody's good
16          name and good reputation without
17          telling them what you're claiming.
18          At least in Texas, before we
19          execute somebody, we at least tell
20          them what the claim is for
21          executing them.
22               You've refused.  You've
23          stone walled me on the procedures.
24          I've asked for written procedures
```

1    for this committee.  Apparently,
2    there's none.  It's whatever you
3    want to make them.
4          MS. McENROE:  Sir, you've
5    gotten the policy and procedures
6    on irregular behavior multiple
7    times.  You'd like to say that the
8    record says what you say it says.
9    It just doesn't.
10         We're trying to follow the
11   best procedure we possibly can,
12   and you and your client are
13   obstructing us in being able to
14   collect the information.  At this
15   point, I don't think that it's
16   productive to continue the
17   proceeding.
18         MR. SWATE:  We're entitled
19   to know what procedure this
20   committee is operating under.  You
21   just can't operate under whatever
22   you want to make it.
23         MS. McENROE:  You've gotten
24   the policies and procedures.

November 28, 2018

1           MR. SWATE:  No, I haven't.

2      I've gotten --

3           MS. McENROE:  They're

4      available on the Internet.

5           MR. SWATE:  I have received

6      broad statements, you can do

7      whatever you want.

8           MS. McENROE:  The record

9      will reflect --

10          MR. SWATE:  And that's not a

11     written policy and procedure.  And

12     that will not stand up under any

13     theory.

14          MS. McENROE:  We've provided

15     them to you in writing and the

16     link to the URL where they are

17     available publically on the

18     Internet.  I don't think at this

19     point there's anything else that's

20     worth us discussing at this

21     moment.  Thank you.

22          MR. SWATE:  You're

23     terminating --

24          MS. McENROE:  Yes, I'm

```
1          terminating the proceeding.
2               MR. SWATE:  ECFMG is
3          terminating this prior to us
4          presenting our evidence.
5               MS. McENROE:  We asked you
6          to present evidence, and all you
7          did was present legal argument.
8               What's your offer of proof?
9          What would you like to provide?
10              MR. SWATE:  We'll go through
11         every page of this.
12              MS. McENROE:  In particular,
13         what would you like to provide?
14              MR. SWATE:  First, I'd like
15         to know who Ms. Sara Colins is?
16              MS. McENROE:  From the
17         Florida Department of Education?
18              MR. SWATE:  I don't know who
19         this is.
20              MS. McENROE:  So what
21         evidence is that that you are
22         presenting to us?
23              MR. SWATE:  I'm asking your
24         evidence.  You're the one
```

November 28, 2018

1    presenting the evidence and I'm

2    asking what it is?

3        MS. McENROE: You're not

4    providing any evidence.  So thank

5    you for coming today, Dr. Tulp.

6    We appreciate it.

7        MR. SWATE:  So you're

8    adjourning the --

9        MS. McENROE:  Yes, I'm

10   adjourning the proceeding.

11           -   -   -

12       (Whereupon, the hearing

13   concluded at approximately 10:39

14   a.m.)

15           -   -   -

16

17

18

19

20

21

22

23

24

```
 1           C E R T I F I C A T E
 2
 3                I hereby certify that
 4   the witness was duly sworn by me and that
 5   the deposition is a true record of the
 6   testimony given by the witness.
 7
 8
 9        _ _ _ _ _ _ _ _ _ _ _ _ _ _ _
         LISA CAPALDO
10       Dated:
11
12   (The foregoing certification of this
13   transcript does not apply to any
14   reproduction of the same by any means,
15   unless under the direct control and/or
16   supervision of the certifying shorthand
17   reporter.)
18
19
20
21
22
23
24
```